IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*STATE ATTORNEYS GENERAL LITIGATION* | HON. CYNTHIA M. RUFE<br><br>Civil Action No. 19-CV-2407 |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO UNSEAL REDACTED INFORMATION
<u>IN THE PLAINTIFF STATES' COMPLAINT</u>**

Plaintiff State of Connecticut, on behalf of itself, 42 other States and the Commonwealth of Puerto Rico (collectively, "Plaintiff States"), respectfully moves this Court for an order to unseal the unredacted Complaint filed in the above-captioned matter on May 10, 2019 (the "Unredacted Complaint").

Plaintiff States seek to disclose to the public all of the information in the Unredacted Complaint because it is not commercially or competitively sensitive information traditionally protected from public disclosure. The allegations in the Complaint describe in great detail a long running conspiracy perpetrated by the Defendants – generic drug manufacturers and their senior executives (collectively, "Defendants") – that has resulted in artificially inflated prices on well over 100 generic drugs and caused significant financial harm to federal and state healthcare programs, other municipal and local government payers, large and small employers who fund their employee health plans and individuals who pay out-of-pocket for their prescription generic drugs. By definition, these *anticompetitive* actions of the Defendants are the opposite of "commercially or competitively sensitive," and thus any references to them should be unsealed.

The issues involved in this litigation are matters of paramount public significance that the public has a right to access under both the common law and the First Amendment. Accordingly, Plaintiff States – as government enforcers and officers of the Court – file this instant Motion to unseal the Unredacted Complaint.

I. **BACKGROUND AND PROCEDURAL HISTORY**

As a result of facts learned during a non-public investigation initiated by the State of Connecticut in July 2014, which is still ongoing, Plaintiff States publicly filed a redacted Complaint on May 10, 2019 in the U.S. District Court in the District of Connecticut charging the Defendants with entering into contracts, combinations and conspiracies that had the effect of restraining trade, artificially inflating prices and reducing competition in the markets for well more than 100 generic drugs. Plaintiff States allege that this conduct violates federal and state antitrust and consumer protection laws and seek, among other remedies, a permanent injunction to prevent Defendants from continuing their illegal conduct and remedying the anticompetitive effects caused by their illegal conduct, disgorgement of their ill-gotten gains, damages on behalf of various state and governmental entities and consumers, civil penalties and other equitable relief.

Simultaneous with the public filing of the redacted Complaint, Plaintiff States also filed the Unredacted Complaint along with a Motion to Seal (the "Motion to Seal"). Plaintiff States filed the Motion to Seal only to comply with provisional lodging procedures for antitrust investigative material laid out by the Connecticut Supreme Court in *Brown and Brown, Inc. v. Blumenthal*, 297 Conn. 710, 735–36 (2010). In accordance with *Brown and Brown*, in the publicly-filed Complaint, Plaintiff States redacted quoted communications and portions of documents obtained through various civil antitrust subpoenas issued under Section 35-42(a) of the Connecticut Antitrust Act (the "CAA") so that the Court could have the opportunity to

determine whether the public right to access this information outweighs the need for its continued sealing. Pursuant to a Conditional Transfer Order (CTO-6) issued by the Judicial Panel on Multidistrict Litigation on May 22, 2019, and finalized on May 30, 2019, this action has now been transferred to MDL No. 2724. Plaintiff States are now filing this Motion because the law requires that the public have access to the Unredacted Complaint.

This is the second Complaint filed by the Plaintiff States as a result of their ongoing investigation of anticompetitive conduct in the generic drug industry. It is noteworthy that in a separate case already pending in the U.S. District Court in the Eastern District of Pennsylvania – arising out of the same investigation that underlies this Complaint and alleging similar conduct and charges against some of the same Defendant generic drug manufacturers (hereinafter the "First Action") – the Consolidated Amended Complaint has already been unsealed.[1]

On May 21, 2019, the States informed the Defendants that they intended to file a Motion to Unseal the Complaint, provided them with a draft, and asked their position on such a Motion. To date, the Defendants have not provided any position, including an objection. The U.S. Department of Justice, Antitrust Division ("DOJ") has indicated that it will take no position on the States' Motion.

---

[1] The First Action, 17-cv-3768, was initially filed in the U.S. District Court in the District of Connecticut on December 15, 2016 in the same manner as the Complaint in this case (*i.e.*, a publicly redacted version and an unredacted version, filed with a Motion to Seal). The information redacted from the publicly-filed Complaint (and later the Consolidated Amended Complaint) was the same as the type of information redacted from the publicly-filed Complaint here. On August 3, 2017, the First Action was transferred by the Judicial Panel on Multidistrict Litigation from the U.S. District Court in the District of Connecticut to MDL No. 2724 pending in this Court. On February 1, 2019, Plaintiffs in that case, including the State Plaintiffs, filed a Motion to Unseal Redacted Information in the States' Consolidated Amended Complaint (16-MD-2724, Doc. No. 842). The Court granted that Motion and ordered that the Consolidated Amended Complaint be unsealed and made public on February 27, 2019. (16-MD-2724, Doc. No. 894).

## II. LEGAL ARGUMENT

### A. Connecticut Law Does Not Require Redacted Material to Remain Under Seal After the Attorney General Files a Complaint

Connecticut filed the Complaint to comply with the provisional lodging procedures the Connecticut Supreme Court laid out in *Brown and Brown*. In *Brown and Brown*, the Connecticut Supreme Court considered the extent to which the Connecticut Attorney General could disclose to third parties, in the course of an antitrust investigation, confidential documents and information obtained pursuant to a subpoena issued pursuant to Section 35-42 of the CAA. *Id.* at 713. Brown and Brown – the recipient of the subpoena – argued that § 35-42 precluded the Attorney General from disclosing such documents or specific information to anyone outside his office, including during witness interviews or depositions conducted in furtherance of the antitrust investigation. *Id.* at 720–21. Brown and Brown objected to disclosure because the Attorney General had subpoenaed materials and information "that contained trade secrets and other valuable commercial and financial information." *Id.* at 716. The Connecticut Supreme Court shared the same concern, noting that while the legislature had conferred "broad investigatory powers" on the Attorney General, it had also intended to provide "counterbalancing protections to investigatory targets in recognition of the potential sensitivity of internal business information ...." *Id.* at 723.

The Connecticut Supreme Court held, *inter alia*, that the confidentiality protections afforded subpoena recipients under § 35-42 precluded the Attorney General from disclosing materials and information obtained pursuant to a subpoena to persons outside the Office of the Attorney General during the pendency of an antitrust investigation.[2] *Id.* at 731.

---

[2] This rule was later amended by legislation and now the Attorney General may show the materials to witnesses at depositions during an investigation. *See* Conn. Gen. Stat. §35-42(i).

However, *Brown and Brown* also recognized that certain subpoenaed information clearly should be accessible to the public after the Attorney General files a lawsuit, which implicates the public's right of access. Therefore, as the Court laid out, when the Attorney General institutes an antitrust action and intends to file materials obtained under § 35-42 or to include the substance of such materials within a complaint, the Attorney General should lodge the complaint under seal to allow the trial court an opportunity to determine "whether the materials contain any trade secrets or other sensitive information, and whether the need to maintain their confidentiality overrides the public's interest in viewing them." *Id.* at 735–36 (citing *Rosado v. Bridgeport Roman Catholic Diocesan Corp.,* 292 Conn. 1, 35, 46(2009)).

Here, and as described more fully below, the Plaintiff States complied with the lodging procedures articulated in *Brown and Brown* and filed, on the public docket, a Complaint that redacts quoted communications and portions of documents obtained through various civil antitrust subpoenas issued to Defendants and other third parties in the course of the antitrust investigation. The purpose was to provide affected parties – and ultimately this Court – with an opportunity to determine whether the public's right to access outweighs the need for continued sealing. As that purpose has been fulfilled, Third Circuit and Connecticut law require the Unredacted Complaint be unsealed.

    **B.**    **Third Circuit Law Requires Public Disclosure of the Full Unredacted Complaint**

        **1.**    **The Common Law Public Right of Access Attaches to the Unredacted Complaint**

In the Third Circuit it "is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records." *In re Cendant Corp.,* 260 F.3d 183, 192 (3d Cir. 2001) (citing *Littlejohn v. BIC Corporation,* 851 F.2d 673, 677–78 (3d Cir. 1988)). The public's right of access includes "a pervasive common law right 'to inspect

and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993)). Filing a pleading with the Court "clearly establishes ... status" as a judicial record and, accordingly, the common law public right of access attaches to the document *Id.* (citing *Enprotech Corp. v. Renda*, 983 F.2d 17, 20 (3d Cir. 1993)). The Unredacted Complaint, a pleading filed with the Court, is clearly a judicial record subject to the Third Circuit common law public right of access. *See Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132 (2d Cir. 2016) (the court was able to "easily conclude" that a complaint is a judicial record subject to the presumption of public access).

### 2. The Defendants Cannot Show Good Cause to Override the Public Right of Access

Although the Third Circuit common law right to public access is "a recognized and venerated principle", it can be overridden under limited circumstances. *Cendant Corp.*, 260 F.3d at 194. To override the common law public right of access to judicial documents courts in the Third Circuit follow a rigorous "compelling countervailing interests" standard "with the additional requirement of specific findings." *Id.* "Good cause [to override the public right of access] is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). Further, "[t]he burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order." *Id.* at 786–87.[3]

---

[3] Connecticut law provides a similarly robust common law right of public access. *See Brown & Brown, Inc. v. Blumenthal*, 297 Conn. 710, 735–36, 1 A.3d 21, 38–39 (2010) (citing *Rosado v. Bridgeport Roman Catholic*

The Defendants cannot demonstrate that there is good cause to maintain the redacted information under seal. In the Unredacted Complaint the Plaintiff States redacted quotes from intracompany and intercompany communications between competitors – e-mails, text messages and records of telephone calls – that confirm the existence of the anticompetitive agreements at the heart of the Complaint. It is not enough to overcome the common law right of access that the records contain unflattering, embarrassing and even presumably false references to third parties. *U.S. v. Criden*, 681 F.2d 919, 922 (3d Cir. 1992). Furthermore, the redacted information is a far cry from the legitimate trade secrets that deserve confidential protection. *See Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 308 (6th Cir. 2016) (holding that "financial and negotiating information" about a price-fixing scheme is "not entitled to protection as a legitimate trade secret"); *Publicker*, 733 F.2d at 1074 ("However, we will point out that the 'sensitive' information at issue here is not the kind of confidential commercial information that courts have traditionally protected, *e.g.,* trade secrets … It simply involves a matter of poor management."); *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("The potential harm asserted by the corporate defendants is in disclosure of poor management in the past. That is hardly a trade secret.").

Additionally, when a case involves issues important to the public, that fact alone "weigh[s] against entering or maintaining an order of confidentiality." *Pansy*, 23 F.3d at 788 (following *FTC v. Standard Fin. Management Corp.*, 830 F.2d 404, 412 (1st Cir. 1987)

---

*Diocesan Corp.*, 292 Conn. 1 at 35, 970 A.2d 656). Like courts in the Third Circuit, Connecticut courts seek to safeguard the legitimate interest of a target of an antitrust investigation in preserving the confidentiality of its trade secrets, but balance that interest with the public's right of access to judicial documents. *Id.* (trial court determines "whether the materials contain any trade secrets or other sensitive information, and whether the need to maintain their confidentiality overrides the public's interest in viewing them.") Further, like courts in the Third Circuit, Connecticut courts modify or vacate sealing orders when "the original basis for the sealing orders no longer exists; … or the interests protected by sealing the information no longer outweigh the public's right to access." *Rosado*, 292 Conn. 1 at 66, 970 A.2d at 693.

(applying an elevated threshold for sealing to matters of public concern)). In this context, even privacy interests are "diminished when the party seeking protection is subject to legitimate public scrutiny." *Haber v. Evans*, 268 F. Supp. 2d 507, 511 (E.D. Pa. 2003) (Rufe, J.) (citing and following *Pansy*'s instruction to weigh "issues important to the public"). Public access to judicial records is particularly vital where the government is a party and taxpaying members of the public are among the consumers who are the real parties in interest. *See United States ex rel Schweizer v. Océ, N.V.*, 577 F. Supp. 2d 169, 172 (D.D.C. 2008).

Here, the charges against Defendants are made by State Attorneys General, the chief law enforcers of the respective State Plaintiffs, who are invoking state power, on behalf of 43 States and the Commonwealth of Puerto Rico. The charges follow a nearly five (5) year investigation that has required, and continues to require, a significant commitment of public resources, including, *inter alia*, the issuance of more than 300 hundred investigatory subpoenas and the review of millions of documents, phone records, and countless hours spent developing cooperating witnesses.

Moreover, the issues presented here are unquestionably matters of public concern. They implicate one of our nation's most important and vital markets – the generic drug industry – and allege that the Defendants devised and implemented a long-term scheme to manipulate prices and allocate markets for over 100 generic drugs that cost countless government and private payers, taxpayers and individual consumers billions of dollars in financial harm. With respect to the unsealing of the Consolidated Amended Complaint in this case, the court emphasized the significant public interests at stake in actions involving generic drug price fixing:

> [t]he public . . . are paying much more for generic drugs, and if that ever is proven to be true, that couldn't be a more public issue. So, why anything is redacted or sealed in this, besides trade secrets and

> ordinary protective order content, is still a mystery to me, and that will be changing in the future.

*In Re: Generic Pharmaceuticals Pricing Antitrust Litig.*, Case No. 2:16-md-02724 (CMR), January 4, 2019, Tr. of Oral Argument on the Defendants' Mot. For an Order Limiting Extrajudicial Statements at 22:13-19 (Rufe, J.). As noted earlier, this Court ordered the Consolidated Amended Complaint (with very similar types of redactions) unsealed so that the public could access it.

It may be appropriate to temporarily redact judicial documents to allow time for parties to raise objections to disclosure or for courts to perform the required fact-finding. However, "[e]ven if the initial sealing was justified, when there is a subsequent motion to remove such a seal, the district court should closely examine whether circumstances have changed sufficiently to allow the presumption allowing access to court records to prevail." *Indiana Hosp.*, 16 F.3d at 551–52. Therefore, "the sealing order must be lifted at the earliest possible moment when the reasons for sealing no longer obtain." *Cendant Corp.*, 260 F.3d at 196 ("continued sealing must be based on '*current evidence* to show how public dissemination of the pertinent materials *now* would cause the competitive harm [they] claim'" quoting *Leucadia*, 998 F.2d at 167 with emphasis in original).[4]

### C. The First Amendment Supports Public Disclosure of the Unredacted Complaint

The Third Circuit also recognizes "the right of access to civil trials … as a First Amendment right" and requires "it is to be accorded the due process protection that other fundamental rights enjoy." *Publicker*, 733 F.2d at 1070 (citations omitted). This right is

---

[4] Even assuming, counterfactually, that the redacted information was, at an earlier point in time, competitively sensitive information, it would no longer be due to the passage of time. *See, e.g., US v. IBM*, 67 FRD 39, 40 (S.D.N.Y. 1975).

independent of the common law right of access. *Cendant Corp.*, 260 F.3d at 198 n.13. However, like the analogous common law right of access, the Constitutional right, while fundamental, is not absolute: "[T]o limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest. *Id.* (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 (1982), and *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (1983)).

In order to limit the public's access, procedural and substantive prongs must be satisfied. Procedurally, the Court must articulate the countervailing interest it seeks to protect and make specific findings similar to those required to override the common law right of public access. *Id.* at 1071. Substantively, "the record must demonstrate 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest'." *Id.* (quoting *Criden*, 648 F.2d at 824). Importantly, the overriding interest also must be one that courts traditionally protect from disclosure. *Id.* at 1073.

There is no overriding interest here sufficient to overcome the First Amendment right to public access. *Publicker*'s holdings concerning the redaction of hearing transcripts are instructive. Publicker's asserted interest for redaction of the transcript was the fact that a subsidiary of Publicker was "manufacturing scotch without a permit." *Id.* at 1075. On review, while the Third Circuit vacated the protection order for lack of the requisite findings, it also "point[ed] out that the 'sensitive' information at issue here is not the kind of confidential commercial information that courts have traditionally protected, *e.g.,* trade secrets." *Id.* at 1074 (citing *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 529 F. Supp. 866, 890 & n.42 (E.D. Pa. 1981)). Rather, "[i]t simply involves a matter of poor management" and the "potential

harm ... in disclosure of poor management in the past ... is hardly a trade secret." *Id.* (citation omitted). Underscoring the requirement of a proper purpose, the Third Circuit warned that "federal courts should not deny access to trial evidence of a bad business practice …. The presumption of openness plus the policy interest in protecting unsuspecting people from investing in Publicker in light of its bad business practices are not overcome by the proprietary interest of present stockholders in not losing stock value or the interest of upper-level management in escaping embarrassment." *Id.* at 1074. Thus, when the asserted interest is not "traditionally protected," courts must be particularly alert to the risk that it is an improper private or proprietary interest that cannot ever justify a restriction on the public's fundamental right to access judicial records. *See also Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3d Cir. 1991) ("we believe it unlikely that such embarrassment qualifies as irreparable injury in the case of corporate defendants").

### III.   CONCLUSION

Plaintiff States respectfully request this Court enter the proposed Order authorizing public access to the Unredacted Complaint.

Dated:   June 6, 2019

Respectfully submitted,

PLAINTIFF

WILLIAM TONG
ATTORNEY GENERAL

BY:    /s/ W. Joseph Nielsen
W. Joseph Nielsen
Federal Bar No. ct20415
Laura J. Martella
Federal Bar No. ct27380
Assistant Attorneys General
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5033
Joseph.Nielsen@ct.gov