**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>16-md-2724 |
| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
| *State of Connecticut, et al.*, *v. Teva Pharmaceuticals USA Inc., et al.* | Civil Action No.: 19-2407 |

**DEFENDANT PFIZER INC.'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Pfizer Inc. ("Pfizer") respectfully moves this Court for an Order dismissing all claims against Pfizer in the above-captioned action with prejudice. In support of this Motion, Pfizer submits the attached Memorandum of Law.

November 29, 2019

Respectfully submitted,

By: */s/ Ilana H. Eisenstein*

DLA PIPER LLP (US)

Ilana H. Eisenstein
Ben C. Fabens-Lassen
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3300
ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com

Edward S. Scheideman
500 Eighth Street, NW
Washington, D.C. 20004
Tel: (202) 799-4000
edward.scheideman@dlapiper.com

*Counsel for Pfizer Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724 16-md-2724 |
| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
| *State of Connecticut, et al.*, *v. Teva Pharmaceuticals USA Inc., et al.* | Civil Action No.: 19-2407 |

## DEFENDANT PFIZER INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

**TABLES OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................1

II.    THE STATES' ALLEGATIONS ......................................................................2

III.   PLEADING STANDARD..................................................................................5

IV.   ARGUMENT .....................................................................................................6

      A.    The States' Amended Complaint Does Not Plausibly Allege that
           Pfizer Engaged in Any Antitrust Misconduct ..........................................6

      B.    The States Fail to Plausibly Allege that Greenstone Is Pfizer's
           "Alter Ego" and that Corporate Veil Piercing Is Warranted....................6

           i.     The States Are Subject to a Demanding Pleading Standard
                  to Invoke the "Extraordinary" Remedy of Veil Piercing............................7

           ii.    The States Fail to Plausibly Allege the First Veil-Piercing
                 Element—that Greenstone and Pfizer Operate as a "Single Entity" ...........9

           iii.   The States Fail to Allege the Second Veil-Piercing Element—
                 Fraudulent or Inequitable Misuse of Greenstone's Corporate Form .........11

V.    DISMISSAL WITH PREJUDICE IS WARRANTED......................................13

VI.   CONCLUSION.................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*18 KT.TV, LLC v. Entest Biomedical, Inc.*,
No. 11-cv-244, 2011 WL 5374515 (M.D. Pa. Nov. 7, 2011) ..................................................10

*Anderson v. Abbott*,
321 U.S. 349 (1944) ..........................................................................................................................8

*Arthur v. Maersk, Inc.*,
434 F.3d 196 (3d Cir. 2006) ........................................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................................................5

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
154 A.2d 684 (Del. 1959) ..............................................................................................................7

*CMC GH Sisak D.O.O. v. PTC Grp. Holdings Corp*,
No. 15-cv-1357, 2016 WL 5025750 (W.D. Pa. Sept. 20, 2016) ............................................10

*Copperweld Corp. v. Indepen. Tube Corp.*,
467 U.S. 752 (1984) ..........................................................................................................................7

*Crosse v. BCBSD, Inc.*,
836 A.2d 492 (Del. 2003) ........................................................................................................9, 11

*Dreiling v. Am. Express Co.*,
458 F.3d 942 (9th Cir. 2006) ......................................................................................................3

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016) ........................................................................................................5

*In re Foxmeyer Corp.*,
290 B.R. 229 (Bankr. D. Del. 2003) ........................................................................................9

*In re Generic Pharm. Pricing Antitrust Litig.*,
338 F. Supp. 3d 404 (E.D. Pa. 2018) ........................................................................................1

*In re Generic Pharm. Pricing Antitrust Litig.*,
368 F. Supp. 3d 814 (E.D. Pa. 2019) ........................................................................................1

*In re Generic Pharm. Pricing Antitrust Litig.*,
   394 F. Supp. 3d 509 (E.D. Pa. 2019) ............................................................1, 4, 6

*Juan v. Sanchez*,
   339 F. App'x 182 (3d Cir. 2009) .........................................................................13

*Kaplan v. First Options of Chicago, Inc.*,
   19 F.3d 1503 (3d Cir. 1994)..................................................................................11

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
   628 F.2d 1175 (9th Cir. 1980) ...............................................................................11

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*,
   945 F.2d 635 (3d Cir. 1991)....................................................................................7

*MicroStrategy Inc. v. Acacia Research Corp.*,
   No. CIV.A. 5735-VCP, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010) ..................13

*Mobil Oil Corp. v. Linear Films, Inc.*,
   718 F. Supp. 260 (D. Del. 1989)........................................................................7, 11

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000).....................................................................................3

*In re Pa. Title Ins. Antitrust Litig.*,
   648 F. Supp. 2d 663 (E.D. Pa. 2009) .............................................................2, 6, 9

*Pearson v. Component Tech. Corp.*,
   247 F.3d 471 (3d Cir. 2001)........................................................................2, 7, 8, 11

*Precision Assoc. v. Panalpina World Transp (Holding) Ltd.*,
   No. 08-cv-42, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011).....................................6

*In re Processed Egg Prods. Antitrust Litig.*,
   821 F. Supp. 2d 709 (E.D. Pa. 2011) ...................................................................1, 6

*Richmond v. Lumisol Elec. Ltd.*,
   No. 13-cv-1944, 2014 WL 1405159 (D.N.J. Apr. 10, 2014)..................................10

*State Distributors, Inc. v. Glenmore Distilleries*,
   738 F.2d 405 (10th Cir. 1984) ...............................................................................13

*StrikeForce Techs., Inc. v. PhoneFactor, Inc.*,
   No. 13-cv-490, 2013 WL 6002850 (D. Del. Nov. 13, 2013)............................10, 12

*In re Suboxone Antitrust Litigation*,
   No. 13-md-2445, 2017 WL 4810801 (E.D. Pa. Oct. 25, 2017)...................10, 11, 12

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007)......................................................................................8

*Trevino v. Merscorp*,
    583 F. Supp. 2d 521 (D. Del. 2008)............................................2, 7, 8, 9, 10, 11, 12

*Trinity Indus., Inc. v. Greenlease Holding Co.*,
    903 F.3d 333 (3d Cir. 2018) ...........................................................................7, 8, 9, 10

*United States v. Bestfoods*,
    524 U.S. 51 (1998)................................................................................................7, 8, 10

**Rules**

Fed. R. Evid. 201(b)..........................................................................................................3

Fed. R. Evid. 201(c)..........................................................................................................3

Defendant Pfizer Inc. ("Pfizer") respectfully submits this memorandum of law in support of its Motion to Dismiss with prejudice all claims against it asserted in the November 2019 Amended Complaint filed by the State Attorneys General ("Plaintiffs" or "the States").

## I.    INTRODUCTION

Dismissal of Pfizer is clearly warranted based on a unique and clear-cut issue not yet addressed by the Court in this generic drug Multidistrict Litigation—namely, that it is improper to name a *branded* drug company like Pfizer as a defendant solely based on its parent-subsidiary relationship with Greenstone LLC ("Greenstone"), a *generic* company.  The States' November 2019 Amended Complaint (Dkt. No. 106, 19-cv-2407) does not allege that Pfizer engaged in *any* misconduct.  Rather, the States seek to hold Pfizer liable for the alleged acts of its subsidiary, Greenstone, through the extraordinary remedy of piercing Greenstone's corporate veil.  The States' conclusory allegations that Greenstone is Pfizer's "alter ego" are flatly inadequate.[1]

Pfizer, so far, has not been mentioned in this litigation for good reason.  Unlike every other corporate defendant named to date, Pfizer is a brand-name pharmaceutical company not a generic drug company.  This longstanding litigation has focused exclusively on the generic drug industry.  The States, moreover, have conducted a years-long investigation, yet only 5 out of 1,726 paragraphs of the Amended Complaint mention Pfizer at all.  Those sparse allegations contain no claim of misconduct by Pfizer and do not allege that Pfizer (1) communicated with *any* competitor at any time; (2) engaged in or had knowledge of *any* anticompetitive or unlawful conduct; or (3) "purposefully joined and participated in the [alleged] conspiracy."  *In re Processed Egg Prods.*

---

[1] Although this Court has denied numerous motions to dismiss in this MDL, it has not addressed the straightforward corporate veil-piercing issue raised in this motion.  *See, e.g.*, *In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 533 (E.D. Pa. 2019) (Dkt. No. 1070); *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 852 (E.D. Pa. 2019) (Dkt. No. 857); *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 458 (E.D. Pa. 2018) (Dkt. No. 721).

*Antitrust Litig.*, 821 F. Supp. 2d 709, 720, 747-50 (E.D. Pa. 2011); *see also In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688 (E.D. Pa. 2009) (requiring facts establishing the parent corporation's "direct and independent participation in the alleged conspiracy").

To the contrary, the States' claim against Pfizer rests on the conclusory assertion that Greenstone, a separate and distinct Pfizer subsidiary, was somehow Pfizer's "alter ego." Am. Compl. ¶ 1232. The States' bare allegations are utterly insufficient to satisfy the demanding veil-piercing standard. As a matter of law, a plaintiff may only pierce a subsidiary's corporate veil and impute liability to the parent if it makes two distinct showings: (1) that the parent and subsidiary "functioned as a single entity" (or as an "alter ego") under a multi-factor analysis; and (2) that the parent company misused the subsidiary's corporate form for fraudulent or unjust purposes. *See, e.g.*, *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 (3d Cir. 2001); *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 529-31 (D. Del. 2008). The Amended Complaint does not plausibly allege either element.

Given this complete pleading failure, the States' claim against Pfizer should be dismissed with prejudice. The States have conducted a years-long pre-suit investigation and have now filed multiple complaints—all of which they have amended—yet their claims against Pfizer are unsubstantiated, wholly conclusory, and implausible. Given the long history of this litigation, any further amendment would be futile.

## II.    THE STATES' ALLEGATIONS

Pfizer is a global, publicly traded manufacturer of branded pharmaceuticals incorporated under the laws of Delaware. *See* Am. Compl. ¶ 55; *see also id.* ¶ 79 (distinguishing brand and

generic drugs). Pfizer does not distribute or sell generic drugs. Greenstone is a separate, wholly owned Pfizer subsidiary formed as a limited liability company under Delaware law.[2] *Id.* ¶ 44.

The States' 35-Count Amended Complaint sprawls across more than 1,700 paragraphs. The five paragraphs that allude to Pfizer do not allege Pfizer engaged in any anticompetitive conduct. *Id.* ¶¶ 44, 55, 194, 196, 762. Even though the States have been investigating the generic drug industry for years and have served hundreds of subpoenas, they do not allege that *any* Pfizer employee had *any* communication with *any* competitor about *any* topic—much less improper communications with other defendants about generic drugs.[3] Nor do the States allege that Pfizer was aware of any purported competitor communications or anticompetitive agreements involving Greenstone. In fact, Pfizer is one of the only defendants in this MDL not alleged to have communicated with any competitor. The Amended Complaint names one current and one former Greenstone employee who purportedly communicated with competitors, but the Amended Complaint does not assert that either was a Pfizer employee. To the contrary, the States allege that these individuals were *Greenstone* employees at all relevant times. *Id.* ¶¶ 45, 50, 300, 1072.[4]

---

[2] *See* Pfizer Inc.'s 2018 Annual Report on Form 10-K, Ex. 21 available at: https://www.sec.gov/Archives/edgar/data/78003/000007800319000015/pfe-exhibit21x12312018x10k.htm ("Subsidiaries of the Company" as of December 31, 2018); *see also Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of SEC filings); *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (explaining that courts may take judicial notice of SEC filings); Fed. R. Evid. 201(b), (c).

[3] The absence of such allegations of misconduct is particularly telling given that the States have "compiled over 7 million documents" and have "issued more than 300 subpoenas to various telephone carriers" and "over 30 subpoenas to various generic drug manufacturers, individuals and third parties." Am. Compl. ¶¶ 65, 66.

[4] That is perhaps the reason the States, after issuing hundreds of subpoenas, did not investigate Pfizer for the conduct at issue during their extensive investigation. Yet much to Pfizer's surprise, the States not only named Pfizer as a defendant, but also prominently publicized that fact days later in a 60 Minutes segment about the lawsuit, during which the broadcaster prominently displayed an image of Pfizer's corporate headquarters.

Also entirely absent from the Amended Complaint are any facts alleging other circumstances this Court has considered in determining the sufficiency of previous "overarching conspiracy" claims.  In particular, the States do not allege that Pfizer: (1) participated in the "market for generic drugs"; (2) engaged in any "trade association leadership, membership, and meeting attendance"; or (3) has been the subject of any "ongoing state and federal investigations into generic drug pricing."  *See In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d at 525 (Dkt. No. 1070).

Instead of alleging any wrongdoing by Pfizer, the States' claims against Pfizer rest on their assertion that Greenstone is somehow Pfizer's "alter ego" for veil-piercing purposes.  Am. Compl. ¶ 1232.  Specifically, in their sole count against Pfizer and Greenstone (*i.e.*, Count Thirteen), the States allege that "Defendant Pfizer, *acting through its wholly-owned subsidiary and alter ego*, Defendant Greenstone, entered into agreements with Teva and various other competitors to allocate and divide customers and markets for various generic drugs . . . and to fix and raise prices, and rig bids, for numerous generic drugs."  *Id.* (emphasis added).

The Amended Complaint makes only a handful of allegations regarding Pfizer and Greenstone's relationship, none of which are relevant to the factors required to prove Greenstone was Pfizer's alter-ego.  The States allege only (i) that Greenstone "operates out of Pfizer's Peapack, New Jersey campus" as the "generic drug division of Pfizer," (ii) that "a majority of Greenstone's employees are also employees of Pfizer's Essential Health Division," (iii) that "Greenstone employees also use Pfizer for financial analysis, human resources and employee benefit purposes," and (iv) that a Pfizer executive approved a single set of generic drug price increases proposed by Greenstone.  Am. Compl. ¶¶ 44, 50, 762.  Moreover, the Amended Complaint contains no factual

allegations suggesting any fraud or injustice in the use of Greenstone's corporate form—a pleading requirement for a veil-piercing claim.

## III.   PLEADING STANDARD

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained the requirements for properly pleading an antitrust case.  550 U.S. 544 (2007).  As a threshold matter, a plaintiff must plead "facts" that are sufficient to "nudge the[] claims across the line from conceivable to plausible."  *Id*. at 570.  A plaintiff's obligation in this regard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555.  In *Ashcroft v. Iqbal*, the Supreme Court reaffirmed the rule announced in *Twombly* that only a complaint stating a "plausible" claim for relief will survive a motion to dismiss.  556 U.S. 662, 678 (2009).

The Supreme Court prescribed a "two-pronged" approach that should be employed by the lower courts in evaluating the sufficiency of allegations to withstand a Rule 12(b)(6) challenge. *Id.* at 678-79. First, a lower court considering a motion to dismiss can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*. at 678.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"—a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.  This framework recognizes the "difference between allegations that stand on well-pleaded facts and allegations that stand on nothing more than supposition." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 201 (3d Cir. 2016).  That distinction is especially important in the antitrust context, where dismissal is warranted unless the complaint contains "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556.

IV.     ARGUMENT

A.      **The States' Amended Complaint Does Not Plausibly Allege that Pfizer Engaged in Any Antitrust Misconduct**

As a preliminary matter, the States do not allege Pfizer's "direct and independent participation in the alleged conspiracy." *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d at 688-89 (citing cases).  The relevant inquiry is whether the States "delineate[] to some sufficiently specific degree that [Pfizer] *purposefully joined and participated in* the conspiracy." *In re Processed Egg Prods.*, 821 F. Supp. 2d at 720 (emphasis added).  The States do not allege that any Pfizer employee participated in or knew about any of the thousands of competitor communication alleged in their Amended Complaint.  *Precision Assoc. v. Panalpina World Transp, (Holding) Ltd.*, No. 08-cv-42, 2011 WL 7053807, at *30 (E.D.N.Y. Jan. 4, 2011) (explaining that direct antitrust liability requires the defendant to be "aware of and committed to the essential purpose of the overarching conspiracy"); *In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d at 531 (concluding that plaintiffs pleaded a plausible overarching conspiracy "through detailed allegations regarding [competitor] communications").  As a result, there can be no serious contention that the Amended Complaint plausibly alleges *any* direct or independent participation by Pfizer in any conspiracy.  *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 720 (emphasis added); *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d at 673, 688-89.

B.      **The States Fail to Plausibly Allege that Greenstone Is Pfizer's "Alter Ego" and that Corporate Veil Piercing Is Warranted**

Without any allegation of misconduct by Pfizer, the States assert this Court should pierce Greenstone's corporate veil and impute Greenstone's alleged conduct to Pfizer.  *See* Am. Compl. ¶ 1232.  Because Pfizer was incorporated and Greenstone was formed under the laws of the State

of Delaware, Delaware law and general principles of federal common law govern the veil-piercing analysis.[5]

Piercing the corporate veil is an extraordinary remedy, which requires facts that show not only (1) that Pfizer and Greenstone "operated as a single economic entity," but also (2) that piercing is necessary as a sanction for some fraud or injustice relating to a misuse of the corporate form. *See, e.g.*, *Trevino*, 583 F. Supp. 2d at 529-31. Because the States fail to set forth any facts plausibly showing that either veil-piercing factor exists, let alone both, Pfizer should be dismissed.

    i.    *The States Are Subject to a Demanding Pleading Standard to Invoke the "Extraordinary" Remedy of Veil Piercing*

The States bear a heavy burden to establish that Greenstone is the alter ego of its parent, Pfizer. As the Supreme Court has long recognized, "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that *a parent corporation . . . is not liable for the acts of its subsidiaries*." *United States v. Bestfoods*, 524 U.S. 51, 63 (1998) (emphasis added) (citations omitted); *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 686-87 (Del. 1959) (similar). The law thus recognizes a strong "presumption that a corporation, even when it is wholly owned subsidiary of another, is a separate entity." *Mellon Bank, N.A. v. Metro Commc'ns, Inc*., 945 F.2d 635, 643 (3d Cir. 1991). This presumption of corporate separateness applies with particular force in the antitrust context. *See, e.g.*, *Copperweld Corp. v. Indepen. Tube Corp*., 467 U.S. 752, 773 (1984) ("[A] business enterprise should be free to structure

---

[5] The Third Circuit applies the law of the State of incorporation (here, Delaware) and principles of federal common law when determining whether corporate veil piercing is warranted. *See, e.g.*, *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018); *Pearson*, 247 F.3d at 484-85. The Delaware and federal standards for corporate veil piercing are materially identical, so no choice-of-law analysis is necessary. *See, e.g.*, *Mobil Oil Corp. v. Linear Films, Inc*., 718 F. Supp. 260, 268 (D. Del. 1989) ("[The court] is convinced that regardless of which law is applied to the alter ego question—whether *federal, Delaware* or Oklahoma common law—the outcome is the same. Fraud or something like it is required." (emphasis added)).

itself in ways that serve efficiency of control, economy of operations, and other factors dictated by business judgment without increasing its exposure to antitrust liability.").

It is exceedingly difficult for a plaintiff to overcome this presumption because "[l]imited liability is the rule, not the exception." *Anderson v. Abbott*, 321 U.S. 349, 362 (1944). As a result, any plaintiff seeking to hold a parent liable for its subsidiary's independent acts *must* show that the court can pierce the corporate veil. *See, e.g.*, *Bestfoods*, 524 U.S. at 63. "Proving that a corporation is merely an alter ego is a burden that 'is notoriously difficult for plaintiffs to meet.'" *Trinity Indus.*, 903 F.3d at 365 (quoting *Pearson*, 247 F.3d at 485). Indeed, the Third Circuit repeatedly has held that a corporation's "'veil may be pierced' *only in extraordinary circumstances*, such as when the corporate form would otherwise be misused to accomplish certain wrongful purposes." *Id.* (quoting *Bestfoods*, 524 U.S. at 63) (emphasis added); *see In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 371 (3d Cir. 2007) ("It is a bedrock principle of corporate law . . . that courts must respect entity separateness unless doing so would work inordinate inequity.").

To meet this heightened pleading standard, the States must satisfy a stringent two-part test. First, they are required to plausibly allege that Pfizer and Greenstone "functioned as a single entity"—*i.e.*, the traditional alter-ego analysis. *Trinity Indus.*, 903 F.3d at 365-66. In evaluating the sufficiency of a complaint in this regard, courts examine whether several "single entity factors" concerning the parent-defendant's relationship with its subsidiary are plausibly alleged. *Id.* at 365. These factors are whether: (i) the subsidiary was adequately capitalized for the undertaking; (ii) the subsidiary was solvent; (iii) both entities observed corporate formalities; (iv) the subsidiary paid dividends to the parent; (v) the parent siphoned the subsidiary's funds; (vi) the subsidiary kept corporate records; and (vii) the subsidiary simply functioned as a façade for the parent. *Id.*; *see, e.g.*, *Trevino*, 583 F. Supp. 2d at 528. "No single factor is dispositive, and [courts] consider

whether veil piercing is appropriate in light of the totality of the circumstances." *Trinity Indus.*, 903 F.3d at 365.

Even when those factors are met, to pierce the corporate veil, the States must also plausibly allege a second factor: that veil piercing is necessary to sanction the parent company for a fraud, injustice, or unfairness relating to its misuse of subsidiary's corporate form. *See, e.g.*, *Trinity Indus.*, 903 F.3d at 366 & n.26; *Trevino*, 583 F. Supp. at, 528; *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). Veil piercing is warranted only where the subsidiary's corporate form is misused by the parent to "defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law." *Trevino*, 583 F. Supp. 2d at 530 (internal citations omitted) (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002)); *see In re Foxmeyer Corp.*, 290 B.R. 229, 234-37 (Bankr. D. Del. 2003).

      ii.     *The States Fail to Plausibly Allege the First Veil-Piercing Element—that Greenstone and Pfizer Operate as a "Single Entity"*

As a matter of law, the States "cannot rely merely on the [Pfizer's] ownership interest in" Greenstone "to sustain a § 1 [Sherman Act] claim" against Pfizer. *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d at 687. Instead, they must set forth facts plausibly showing that Pfizer and Greenstone operated as a single entity.

There are no facts in the Amended Complaint to support the States' conclusion that Greenstone is Pfizer's "alter ego" under the governing multi-factor framework. The States merely assert that (i) Greenstone uses Pfizer's New Jersey campus; (ii) Greenstone employees "use Pfizer for financial analysis, human resources and employee benefit purposes"; (iii) "a majority of Greenstone's employees"—none whom are specifically identified in the Amended Complaint or alleged to have communicated with any competitors—"are also employees of Pfizer's Essential

Health Division"; and (iv) a Pfizer executive signed off on single set of generic drug price increases that had been proposed by Greenstone.  *Id.* ¶ 55, 762; *see id.* ¶¶ 300, 1072.

These allegations do not plausibly show that Greenstone and Pfizer "operated as a single entity" for liability purposes, since the States' do not allege *any* facts relating to *any* of the applicable alter-ego factors.  *Trevino*, 583 F. Supp. 2d at 528-29 (citing the alter-ego factors).  For instance, there are no allegations about Greenstone's capitalization, solvency, or record keeping; no suggestion that either entity disregarded corporate formalities; and no implication that Pfizer "siphoned" or otherwise diverted Greenstone's funds.  *See Trinity Indus.*, 903 F.3d at 365.  Courts within the Third Circuit and elsewhere have routinely dismissed claims against a parent company at the pleading stage where, as here, there are no facts addressing the alter-ego factors.[6]

At bottom, the States' bare-bones allegations about Pfizer show only that it maintained an ordinary parent-subsidiary relationship with Greenstone.  As the Supreme Court has long observed, activities that "are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability."  *Bestfoods*, 524 U.S. at 72.  Courts routinely reject claims that a parent and subsidiary are "indistinct" merely because the parent shared certain resources with its subsidiary, exercised high-level oversight over its subsidiary's decision making, or approved business decisions made by its subsidiary.

For example, in *In re Suboxone Antitrust Litigation*, the court found the plaintiff failed to plead alter-ego liability for a drug manufacturer where the plaintiff alleged only that the parent

---

[6] *See, e.g.*, *In re Suboxone Antitrust Litig.*, No. 13-md-2445, 2017 WL 4810801, at *11 (E.D. Pa. Oct. 25, 2017); *CMC GH Sisak D.O.O. v. PTC Grp. Holdings Corp*, No. 15-cv-1357, 2016 WL 5025750, at *3 (W.D. Pa. Sept. 20, 2016); *Richmond v. Lumisol Elec. Ltd.*, No. 13-cv-1944, 2014 WL 1405159, at *4 (D.N.J. Apr. 10, 2014); *StrikeForce Techs., Inc. v. PhoneFactor, Inc.*, No. 13-cv-490, 2013 WL 6002850, at *5 (D. Del. Nov. 13, 2013); *18 KT.TV, LLC v. Entest Biomedical, Inc.*, No. 11-cv-244,2011 WL 5374515, at *8-*10 (M.D. Pa. Nov. 7, 2011); *Trevino*, 583 F. Supp. 2d at 529-31.

company received assets from the subsidiary's drug sales, released consolidated financial statements, and had overlapping directors and employees.   2017 WL 4810801, at *11. Specifically, the court ruled that these allegations were wholly insufficient and did not "allow any reasonable inference that [the parent] exercises a greater than normal degree of control over [the subsidiary], such that [it] is [the parent's] 'alter ego.'"   *Id.*   That case follows legions of similar decisions dismissing parent companies absent plausible allegations that satisfy the veil-piercing factors.[7]   The States' failure to plausibly assert that Pfizer and Greenstone operated as a single entity likewise requires dismissal of their claim against Pfizer.

> iii.   *The States Fail to Allege the Second Veil-Piercing Element—Fraudulent or Inequitable Misuse of Greenstone's Corporate Form.*

Similarly, the States do not assert that Pfizer misused the corporate form by engaging in fraudulent or inequitable conduct—the second essential element required at the pleading stage to pierce the corporate veil.

To satisfy the inequitable conduct element, the States "must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors."   *Crosse*, 836 A.2d at 497; *see Pearson*, 247 F.3d at 485 (similar); *Trevino*, 583 F. Supp. 2d at 528-29.   This equitable requirement recognizes that "[n]ot every disregard of corporate formalities or failure to maintain corporate records justifies piercing the corporate veil." *Kaplan v. First Options of Chicago, Inc*., 19 F.3d 1503, 1521 (3d Cir. 1994).   Because "the fraud or injustice requirement for alter ego liability" *must be* adequately pleaded to survive a motion to

---

[7] *See*, *supra*, note 6; *see e.g.*, *Mobil Oil Corp*., 718 F. Supp. at 268 (explaining that parent approval of major subsidiary expenditures merely demonstrated that parent and subsidiary were "closely connected" and did not warrant piercing the veil); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175 (9th Cir. 1980) (rejecting as insufficient alter-ego allegations premised on evidence the parent had "general executive responsibilities" for the operations of the subsidiary, approved major policy decisions, and worked closely with the subsidiary on approving other decisions).

dismiss, courts often dismiss claims against parent companies on the ground that such allegations are lacking.  *See, e.g.*, *StrikeForce Techs.*, 2013 WL 6002850, at *4-5 (citing cases) (emphasis added); *In re Suboxone Antitrust Litig.*, 2017 WL 4810801, at *10.  The States' glaring omission of this necessary element of a veil-piercing claim requires Pfizer's dismissal.

Case law addressing this issue is instructive.  In *In re Suboxone Antitrust Litigation*, the Court dismissed alter-ego claims against a parent company because the plaintiffs failed to allege that the parent operated its subsidiary as "a mere sham corporation."  2017 WL 4810801, at *11.  The same result followed in *StrikeForce*, where the court dismissed alter-ego claims against a parent because the plaintiffs "fail[ed] to address any of these [veil piercing] factors in the amended complaint or allege anything suggesting fraud or other similar injustice in the structure of" the parent and subsidiary.  2013 WL 6002850, at *4.  And in *Trevino*, the court dismissed alter-ego claims against a parent company, despite undercapitalization of the subsidiary, because there was no suggestion that the subsidiary "was established for a [il]legitimate purpose."  583 F. Supp. 2d at 528.

Nowhere in the Amended Complaint is it alleged that it would be unfair or unjust to treat Greenstone and Pfizer as distinct legal entities for liability purposes.  Nor are there any facts which remotely suggest that Pfizer misused Greenstone's corporate form or engaged in any fraud-like conduct relating to its Greenstone subsidiary.  To the contrary, the States *admit* that Pfizer formed Greenstone for the entirely proper purpose of "operat[ing] as the generic drug division of Pfizer."  Am. Compl. ¶ 44; *see Trevino* 583 F. Supp. 2d at 530.  Because the States have failed to plead this necessary element of alter-ego liability, their claim against Pfizer must be dismissed.

*     *     *     *     *

Since corporate law "does not lightly disregard the separate legal existence of corporations," parent company liability cannot be predicated on conclusory alter-ego allegations. *MicroStrategy Inc. v. Acacia Research Corp.,* No. CIV.A. 5735-VCP, 2010 WL 5550455, at *11-*12 (Del. Ch. Dec. 30, 2010).  Yet that is all the States have done here—they simply conclude that Greenstone is Pfizer's alter ego, but do not plead any facts substantiating that conclusion. Accordingly, the States' claim against Pfizer—which relies on the States' flatly inadequate alter-ego theory—must be dismissed in its entirety.

## V.    DISMISSAL WITH PREJUDICE IS WARRANTED

The States have been investigating the generic drug industry for many years, armed with subpoena power and other coercive means to obtain information in support of their claims.  The States have been well aware that it lacked a legal or factual basis to name Pfizer.  Yet their May 2019 Complaint and their November 2019 Amended Complaint fail to plead a case for direct liability or a viable veil-piercing theory against Pfizer.

If the States had facts to support a claim against Pfizer, they would have pled them by now. *See, e.g.*, *State Distributors, Inc. v. Glenmore Distilleries*, 738 F.2d 405, 416 (10th Cir. 1984) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.").  Because any further amendment would be both futile, dismissal with prejudice is warranted.  *See Juan v. Sanchez*, 339 F. App'x 182, 187 (3d Cir. 2009) (concluding that leave to amend is properly denied where "(1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other part[ies]"); *cf. Arthur v. Maersk, Inc.*, 434 F.3d 196, 205 (3d Cir. 2006) (finding amendment permitted where delay in adding allegations was justified and based on information not previously known).

13

VI.     **CONCLUSION**

For the foregoing reasons, all claims against Pfizer in the States' Amended Complaint, including the claim asserted in Count Thirteen, must be dismissed with prejudice.

November 29, 2019                                    Respectfully submitted,

By: */s/ Ilana H. Eisenstein*

DLA PIPER LLP (US)

Ilana H. Eisenstein
Ben C. Fabens-Lassen
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3300
ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com

Edward S. Scheideman
500 Eighth Street, NW
Washington, D.C. 20004
Tel: (202) 799-4000
edward.scheideman@dlapiper.com

***Counsel for Pfizer Inc.***

14

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of November, 2019, I caused Pfizer Inc.'s Motion to Dismiss to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania using the ECF system, it is available for viewing and downloading from the ECF system, and a true and correct copy was served via ECF on all counsel of record registered with the ECF system.

/s/ *Ben C. Fabens-Lassen*