**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL 2724<br>16-MD-2724 |
| **THIS DOCUMENT RELATES TO**:<br><br>*The State of Connecticut, et al.*<br>*v.*<br>*Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE<br><br>19-cv-2407-CMR |

**PLAINTIFF STATES' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT PFIZER INC.'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF FACTS ...........................................................................................1

III.    STANDARD OF REVIEW ..........................................................................................3

IV.     ARGUMENT ................................................................................................................4

    A. The Plaintiff States' Amended Complaint Plausibly Alleges that Pfizer's Alter
    Ego is Greenstone and the Corporate Veil-Piercing is Warranted ...........................4

      1.   The Plaintiff States Plausibly Allege the First Veil-Piercing Element—that
      Greenstone and Pfizer Operate as a Single Functioning Entity ...........................6

        a.   The Plaintiff States Plausibly Allege that Pfizer and Greenstone Failed to
        Observe Corporate Formalities ...................................................................7

        b.   The Plaintiff States Plausibly Allege that Pfizer's Alter Ego is Greenstone
        .....................................................................................................................8

      2.   The Plaintiff States Plausibly Allege the Second Veil-Piercing Element—that
      Pfizer Used Greenstone to Perpetrate Injustice or Unfairness .........................10

    B. The Plaintiff States' Amended Complaint Plausibly Alleges that Pfizer Engaged
    in Antitrust Misconduct ...........................................................................................12

V.      DISMISSAL WITH PREJUDICE IS NOT WARRANTED......................................13

VI.     CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................4

*In re Autobacs Strauss, Inc.*,
 473 B.R. 525 (Bankr. D. Del. 2012) ......................................................................11

*Bd. of Trustees of Teamsters 863 Pension Fund v. Foodtown, Inc.*,
 296 F.3d 164 (3d Cir. 2002) .....................................................................................5

*Bell Atlantic v. Twombly*,
 550 U.S. 544 (2007) ..............................................................................................3, 4

*Blair v. Infineon Techs. AG*,
 720 F. Supp. 2d 462 (D. Del 2010) ..........................................................7, 8, 9, 10

*Gordon v. Pearson Educ., Inc.*,
 85 F. Supp. 3d 813 (E.D. Pa. 2015) ...................................................................13, 14

*Kaplan v. First Options, Inc.*,
 19 F.3d 1503 (3d Cir. 1994) .....................................................................................6

*In re PHP Healthcare Corp.*,
 128 Fed. Appx. 839 (3d. Cir. 2005) ..........................................................................5

*Savin Corp. v. Heritage Copy Prods., Inc.*,
 661 F. Supp. 463 (M.D. Pa. 1987) ............................................................................6

*Trevino v. Merscorp, Inc.*,
 583 F. Supp. 2d 521 (D. Del. 2008) ..........................................................................5

*Trinity Indus., Inc. v. Greenlease Holding Co.*,
 903 F.3d 333 (3d Cir. 2018) .................................................................................5, 6

*United States v. Bestfoods*,
 524 U.S. 51 (1998) ....................................................................................................5

*United States v. Golden Acres, Inc.*,
 702 F. Supp. 1097 (D. Del. 1988) ...............................................................6, 11, 12

*United States v. Union Corp.*,
 194 F.R.D. 223 (E.D. Pa. 2000) .............................................................................13

**Other Authorities**

F. R. Civ. P. Rule 8(a)(2) ...............................................................................................................3

F. R. Civ. P. Rule 12(b)(6) .......................................................................................................3, 14

## I.    INTRODUCTION

Defendant Pfizer Inc.'s ("Pfizer") Motion to Dismiss should be denied.  The Plaintiff States brought this civil law enforcement action against Pfizer, a branded drug company, based upon its direct operational control of its generic subsidiary, Defendant Greenstone LLC ("Greenstone"), and its participation through that subsidiary in an industry-wide conspiracy.  Put simply, Greenstone is Pfizer.  Pfizer employees run Greenstone. The companies share the same office space. Pfizer provides Greenstone's human resources, financial analysis, and employee benefits services.  And, most importantly, Pfizer directs and controls all of Greenstone's business activities, approves its price increases, and operates Greenstone as its generic drug division. They are one and the same.

The Plaintiff States' November 2019 Amended Complaint (Dkt. No. 106, 19-cv-2407) alleges broad antitrust misconduct in the generic pharmaceutical industry. The Amended Complaint includes specific allegations and facts describing how Pfizer has dominated, controlled and directed the activities of its subsidiary Greenstone, which in turn communicated and coordinated with other generic drug manufacturers to allocate customers and markets, fix prices, and rig bids for generic drugs. Pfizer has not met its heavy burden of demonstrating that the Amended Complaint fails to plead a plausible claim of liability, and its Motion to Dismiss should be denied.  Alternatively, the States should be permitted to amend their Complaint in order to plead with much more specificity the facts supporting their claims against Pfizer.

## II.    STATEMENT OF FACTS

The Plaintiff States, in their Amended Complaint, charge various generic drug manufacturers with participating in a concerted effort to stifle competition to obtain strategic and financial advantages. (Am. Compl. ¶¶ 4–6). The Plaintiff States further accuse defendant

1

manufacturers of routinely coordinating with each other through phone calls, text messages, and emails to engage in market allocation, price fixing, and bid-rigging. (*Id*. at ¶¶ 14–19). These coordinated efforts have resulted in significantly increased prices for generic drugs purchased by consumers and from which defendant manufacturers profited. (*Id*. at ¶ 20).

The Plaintiff States accuse Pfizer of acting through its "wholly-owned subsidiary and alter ego," Greenstone, to participate in the antitrust misconduct pervading the generic pharmaceutical industry. (*Id*. at ¶ 1232). Instead of operating as a separate business entity, the Amended Complaint alleges that Greenstone operates as the generic drug division of Pfizer, sharing office space with Pfizer at its campus in Peapack, New Jersey. (*Id*. at ¶ 44). Further demonstrating the lack of corporate distinction between the two companies, the Amended Complaint alleges that most of Greenstone's "employees," including Greenstone's President, are employed by Pfizer's Essential Health Division. (*Id*.). Pfizer also acts as the de facto human resources department for Greenstone, providing financial analysis, human resources, and employee benefits services. (*Id*.).

Additionally, the Amended Complaint also alleges that Pfizer participates in, controls, and directs Greenstone's business activities, including Greenstone's marketing and sale of generic drugs – which are directly at issue in this case. (*Id*. at ¶¶ 44, 55). As such, the Plaintiff States allege that Pfizer, acting through its alter ego, Greenstone (made up of mostly Pfizer employees) – called, text messaged, and emailed Teva and other manufacturers of generic drugs to engage in market allocation, price fixing, and bid-rigging of Azithromycin Oral Suspension, Azithromycin Suspension, Cabergoline, Fluconazole Tablets, Medroxyprogesterone Tablets, Oxaprozin Tablets, Penicillin VK Tablets, Piroxicam, and Tolterodine Tartrate. (*Id*. at ¶¶ 299–328, 761–68, 950–53, 1231–37, 1336–44). To further demonstrate the control exerted by Pfizer

over Greenstone's business operations, the Plaintiff States also allege that Greenstone required approval from Pfizer before taking price increases directly at issue in the Amended Complaint. (*Id.* ¶¶ 761–62). Specifically, the Plaintiff States allege that a senior Pfizer executive signed off on a November 2013 scheme proposed by the General Manager of Greenstone to increase the prices of Azithromycin Oral Suspension, Azithromycin Suspension, and Medroxyprogesterone Tablets. (*Id.* at ¶ 762). In order to obtain that approval from Pfizer, the Greenstone General Manager had to explain the strategy behind the price increases and "socialize" Pfizer to the fact that the price increases that Greenstone wanted to take were part of a larger wave of price increases in the generic drug industry. (*Id.* at ¶ 761).

As noted above, because Pfizer improperly used Greenstone to conspire with the manufacturers of generic drugs to commit antitrust misconduct, the end result was significantly increased prices for generic drugs purchased by consumers – from which Pfizer profited. (*Id.* at ¶¶ 1236, 1343).

## III.    STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint if the defendant is able to show that the plaintiff "fail[ed] to state a claim upon which relief can be granted . . . ." FED. R. CIV. P. 12(b)(6). Moreover, a complaint is subject to a notice pleading standard under Rule 8(a)(2) of the Federal Rules of Civil Procedure—which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2).

In *Bell Atlantic v. Twombly*, the Supreme Court confirmed that the factual allegations set forth in a complaint must be construed as true under a Rule 12(b)(6) analysis. 550 U.S. 544, 556 (2007). While the Court cautioned that deference does not apply to "labels and conclusions" or

3

"a formulaic recitation of the elements of a cause of action . . . .," the opinion makes clear that a complaint need only include enough factual allegations "to raise a right to relief above the speculative level . . . ." *Id*. at 555–56 (citations omitted). The Court stressed that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

In *Ashcroft v. Iqbal*, the Court reaffirmed *Twombly*, holding that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S., at 570). Under this pleading standard, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S., at 556). The Court further noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S., at 556).

As set forth above, and discussed more fully below, the Plaintiff States' Amended Complaint does not present mere labels and conclusions, or formulaic recitations of the elements underlying a cause of action. Instead, the Plaintiff States allege sufficient facts throughout their Amended Complaint to state a plausible claim for relief against Pfizer.

## IV.    ARGUMENT

### A.  The Plaintiff States' Amended Complaint Plausibly Alleges that Pfizer's Alter Ego Is Greenstone and that Corporate Veil-Piercing Is Warranted

The allegations in the Plaintiff States' Amended Complaint are more than sufficient to plausibly allege that Pfizer's alter ego is Greenstone and corporate veil-piercing is warranted. Pfizer's claims to the contrary lack merit.

Although generally[1] "a parent corporation . . . is not liable for the acts of its subsidiaries," *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citations omitted), an exception applies when the corporate form is harmed. *Bd. of Trustees of Teamsters 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002). Indeed, "[t]he purpose of alter ego liability and piercing the corporate veil 'is to prevent an independent corporation from being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law. . .'" *Id.* (quoting *State, Dept. of Environmental Protection v. Ventron Corp.*, 94 N.J. 473, 500 (1983)). Moreover, "[p]iercing the corporate veil is a 'tool of equity,' a 'remedy that is involved when [a subservient] corporation is acting as an alter ego of [a dominant corporation].'" *Id.* (citations omitted).

Thus, in order to state a claim for piercing the corporate veil under the alter ego theory, a plaintiff must allege sufficient facts showing that (1) a parent corporation and the subsidiary corporation operated as a single functioning entity, and (2) the parent corporation used the subsidiary corporation to perpetrate injustice or unfairness. *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528–31 (D. Del. 2008).

Pfizer argues that the Plaintiff States fail to plausibly allege that Pfizer treats Greenstone as its alter ego and that piercing the corporate veil is warranted under the circumstances. (Def.'s Mot. to Dismiss at 7). Pfizer, in particular, argues that the Plaintiff States neglect to present any facts that could support any of their claims—ignoring what the Plaintiff States already pled in the process. (*Id.* at 7–13). Pfizer is mistaken. The Plaintiff States have alleged sufficient facts with respect to each of the veil-piercing elements.

---

[1] The Third Circuit, when determining whether to pierce the corporate veil, follows the laws of the state of incorporation and federal common law. *See e.g., Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018)*; In re PHP Healthcare Corp.,* 128 Fed. Appx. 839, 842–44 (3d Cir. 2005). In the present case, Pfizer was incorporated and Greenstone was formed under the state laws of Delaware. (Am. Compl. ¶¶ 44, 55).  Thus, Delaware law and federal common law apply to the veil-piercing analysis.

1.   *The Plaintiff States Plausibly Allege the First Veil-Piercing Element—that Greenstone and Pfizer Operate as a Single Functioning Entity*

As a preliminary matter, "[a]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that corporation." *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988). These factors consist of: "'gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of [subsidiary] corporation, siphoning of funds from the [subsidiary] corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.'" *Trinity Indus.*, 903 F.3d at 365 (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484–85 (3d Cir. 2001)).[2] Moreover, "[n]o single factor is dispositive, and [courts] consider whether veil piercing is appropriate in light of the totality of the circumstances." *Id.*

Determining which factors apply and how much weight should be given to a relevant factor depends on the facts of the case and the claims alleged. *Kaplan v. First Options, Inc.*, 19 F.3d 1503, 1522 (3d Cir. 1994). Here, an examination of the facts and the Plaintiff States' allegations in light of the alter ego factors indicates that there are viable claims that Pfizer and Greenstone operate as a single functioning entity. Specifically, the Plaintiff States allege sufficient facts to show a failure by Pfizer and Greenstone to observe corporate formalities and that Greenstone is merely a facade for Pfizer's operations.

---

[2] Other courts have "listed several characteristics or factors which, if present, would be determinative of an alter-ego relationship. Gleaned from several opinions, some of those characteristics are as follows: 1) ownership of all or most of the stock of the related corporation; 2) common officers and directors; 3) a common marketing image; 4) the common use of a trademark or logo; 5) the common use of employees; 6) an integrated sales system; 7) the interchange of managerial and supervisory personnel; 8) the performance of the related corporation of business functions which the principal corporation would normally conduct through its own agents or departments; 9) the acting of the related corporation as a marketing arm of the principal corporation, or as an exclusive distributor; and 10) receipt by the officers of the related corporation of instructions from the principal corporation." *Savin Corp. v. Heritage Copy Prods., Inc.*, 661 F. Supp. 463, 468-69 (M.D. Pa. 1987).

a.  *The Plaintiff States Plausibly Allege that Pfizer and Greenstone Failed to Observe Corporate Formalities*

Pfizer wholly ignores the straightforward allegations in the Plaintiff States' Amended Complaint that demonstrate how Pfizer and Greenstone disregard corporate formalities. Pfizer mistakenly argues that the "[t]here are no facts in the Amended Complaint to support the Plaintiff States' conclusion that Greenstone is Pfizer's 'alter ego' under the governing multi-factor framework." (Def.'s Mot. to Dismiss at 9). In arguing that the States "do not allege *any* facts relating to *any* of the applicable alter ego factors," Pfizer asks this Court to turn a blind eye to the obvious disregard of corporate formalities between Pfizer and Greenstone described in the Amended Complaint.  (*Id.* at 10) (emphasis in original).

A failure to observe corporate formalities customarily involves an extensive consolidation of business operations with respect to financial, human resources, legal, and strategic matters. *See Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469, 472–73 (D. Del 2010). In *Blair*, the plaintiffs alleged that the Infineon defendants and the Qimonda subsidiaries disregarded corporate formalities because the Qimonda subsidiaries were expected to work in the Infineon defendants' fabrication facility in Germany, purchase the Infineon defendants' products, and pay severance to the Infineon defendants' employees. *Id*. at 472–73. The plaintiffs further alleged that the Infineon defendants considered the Qimonda subsidiaries' employees as their own in their annual report; and the Infineon defendants maintained general support services for the Qimonda subsidiaries' employees. *Id*. The court subsequently held that the plaintiffs sufficiently pled that a failure to observe corporate formalities had occurred. *Id*. at 472 – 73.

Here, the Plaintiff States, like the plaintiffs in *Blair*, allege sufficient facts to show that Pfizer and Greenstone extensively consolidated their business operations to such a degree that they failed to observe corporate formalities. Those facts include that: Greenstone operates out of

7

Pfizer's campus in Peapack, New Jersey; the majority of Greenstone's employees, including Greenstone's President, are actually employees of Pfizer's Essential Health Division; and Greenstone employees also use Pfizer for financial analysis, human resources, and employee benefit purposes. (Am. Compl. ¶ 44).

Additionally, the Plaintiff States unequivocally allege that Pfizer participates in, controls, and directs Greenstone's business activities, including Greenstone's marketing and sale of generic drugs. (*Id*. at ¶¶ 44, 55, 761).  Indeed, the Amended Complaint alleges that "Defendant Pfizer was directly involved in the approval process for [the] price increases [for Azithromycin Oral Suspension, Azithromycin Suspension, and Medroxyprogestrone Tablets]."  (*Id.* at ¶¶761 – 762).  Moreover, the Amended Complaint describes an incident in which the General Manager of Greenstone "sent a message to a senior Pfizer executive for sign off, and wanted 'to socialize this with him'. . . ." and "[p]art of that socialization process included the strategy behind the price increases. Pfizer approved the price increase on November 23, 2013."  (*Id.* at ¶762).  Although Pfizer would like to ignore these specific factual allegations—which are far from labels or conclusions— they support the conclusion that Greenstone and Pfizer disregarded corporate formalities.

## b.  *The Plaintiff States Plausibly Allege that Pfizer's Alter Ego Is Greenstone*

The Plaintiff States allege specifics about the significant control that Pfizer exercises over Greenstone, supporting the proposition that Pfizer's alter ego is Greenstone.  A subsidiary corporation typically becomes a facade for the parent corporation when the parent corporation exercises significant control over the subsidiary corporation's operations and finances. *Blair*, 720 F. Supp. 2d, at 472. In *Blair*, the plaintiffs alleged that the Infineon defendants operated the Qimonda subsidiaries as facades by indicating in their corporate profile and a filing that the

Qimonda subsidiaries were under their direct control and supervision; counting the Qimonda subsidiaries' employees as their own employees in their annual report; and administering general support services to the Qimonda subsidiaries' employees. *Id*. at 471–72. The plaintiffs further alleged that the Qimonda subsidiaries were expected to work in the Infineon defendants' fabrication facility in Germany, purchase the Infineon defendants' products, and pay severance to the Infineon defendants' employees. *Id*. Moreover, the plaintiffs alleged that the Infineon defendants made the final decision to close the Qimonda subsidiaries' plants in the United States. *Id*. at 472. The court subsequently held that the plaintiffs' allegations were more than enough at the pleading stage to withstand the defendants' motion to dismiss. *Id.* at 473.

In the instant case, the Plaintiff States, like the plaintiffs in *Blair*, allege sufficient facts to show that Pfizer's alter ego is Greenstone. The Plaintiff States allege that Pfizer exercises significant control over Greenstone's finances and operations.  Among the Amended Complaint's specific allegation are: that the majority of Greenstone's employees, including Greenstone's President, are also employees of  Pfizer's Essential Health Division; that Pfizer also provides key business resources for Greenstone including the human resources department, employee benefits, and financial analysis functions; and that Pfizer participates in, directs, and controls Greenstone's business activities, including Greenstone's marketing and sale of generic drugs.[3] (Am. Compl. ¶¶ 44, 55). Moreover, the Plaintiff States allege that Pfizer, acting through Greenstone (which is made up of mostly Pfizer employees), called, text messaged, and emailed the manufacturers of generic drugs to solicit their participation in market allocation, price fixing, and bid-rigging schemes concerning Azithromycin Oral Suspension, Azithromycin Suspension,

---

[3] Although not alleged in the Amended Complaint, if necessary the States will amend and are prepared to allege, among other things, that Defendant Jill Nailor – the Senior Director of Sales and National Accounts at Greenstone and the individual who was directing and/or participating in the collusive conduct involving Greenstone – was an employee of Pfizer and was listed in Pfizer's organizational charts as such.

Cabergoline, Fluconazole Tablets, Medroxyprogesterone Tablets, Oxaprozin Tablets, Penicillin VK Tablets, Piroxicam, and Tolterodine Tartrate. (*Id.* at ¶¶ 299–328, 761–68, 950–53, 1231–37, 1336–44). The Plaintiff States also allege a specific instance where Pfizer, acting through Greenstone, communicated and collaborated with Teva, a manufacturer of generic drugs, to increase the prices of Azithromycin Oral Suspension, Azithromycin Suspension, and Medroxyprogesterone Tablets. (*Id.* ¶ 761). This scheme required the General Manager of Greenstone to ask a senior Pfizer executive for approval to increase prices—which was granted. (*Id.* at ¶ 762).

Pfizer argues that the States' allegations merely show that Pfizer maintained an ordinary parent-subsidiary relationship with Greenstone. (Def.'s Mot. to Dismiss at 10). Pfizer supports its assertion by pointing out that "[c]ourts routinely reject claims that a parent and subsidiary are 'indistinct' merely because the parent shared certain resources with its subsidiary, exercised high-level oversight over its subsidiary's decision making, or approved business decisions made by its subsidiary." (*Id.*). Pfizer's argument is not well-taken. The Amended Complaint contains multiple allegations of how Pfizer, acting through Greenstone, called, text messaged, and sent emails to manufactures of generic drugs to commit antitrust misconduct. These allegations demonstrate convincingly that Pfizer is engaged in far more than an ordinary parent-subsidiary behavior with Greenstone.

Thus, the Plaintiff States, as demonstrated above, allege sufficient facts to show that Pfizer's alter ego is Greenstone.

> 2. *The Plaintiff States Plausibly Allege the Second Veil-Piercing Element—that Pfizer Used Greenstone to Perpetrate Injustice or Unfairness*

To pierce the corporate veil under the alter ego theory, an element of injustice or unfairness "must 'be found in the defendants' use of the corporate form.'" *Blair*, 720 F. Supp. 2d

at 473 (quoting *In re Foxmeyer Corp.* 290 B.R. 229, 236 (Bankr. D. Del. 2003)). Moreover, the

"presence of [alter ego] factors may itself be sufficient evidence of injustice or unfairness."

*Golden Acres*, 702 F. Supp. at 1106 (citing *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir.

1981)).

     For instance, the plaintiff in *Golden Acres* brought a breach of contract claim against

Golden Acres, Inc. ("Golden Acres") for defaulting on a loan held by the United States

Department of Housing and Urban Development ("HUD"). *Id*. at 1101. The plaintiff sought to

pierce the corporate veil to impute liability onto Golden Acres' shareholders (the

"shareholders"). *Id*. at 1104–07. Subsequently, the court held that corporate veil-piercing was

warranted under the circumstances and, in the process, found that the shareholders used Golden

Acres to perpetrate injustice or unfairness. *Id*. at 1106. The court reasoned that:

> [w]hen it agreed to insure the loan to Golden Acres, HUD naturally assumed that
> Golden Acres would be managed like a normal corporation, with sufficient regard
> for solvency, corporate formalities, and corporate obligations. Refusal to pierce
> the corporate veil in this case would be unfair in that it would punish HUD for its
> misplaced trust and reward defendants for their abuse of the corporate form.

*Id*. at 1107. *See also In re Autobacs Strauss, Inc.*, 473 B.R. 525, 559 (Bankr. D. Del. 2012)

(holding that the plaintiffs could pierce the corporate veil in bankruptcy action because the

plaintiffs were able to sufficiently allege injustice or unfairness.).

     Here, Pfizer argues that "[n]owhere in the Amended Complaint is it alleged that it would

be unfair or unjust to treat Greenstone and Pfizer as distinct entities for liability purposes."

(Def.'s Mot. to Dismiss at 12). Pfizer, in particular, argues that there are no facts in the Amended

Complaint that suggest that Pfizer used Greenstone to perpetrate injustice or unfairness. (*Id*.). In

making these assertions, Pfizer blatantly ignores the Plaintiff States' allegations that Pfizer,

acting through Greenstone, communicated and collaborated with the manufacturers of generic

drugs to allocate, fix, and rig bids for Azithromycin Oral Suspension, Azithromycin Suspension, Cabergoline, Fluconazole Tablets, Medroxyprogesterone Tablets, Oxaprozin Tablets, Penicillin VK Tablets, Piroxicam, and Tolterodine Tartrate. (*Id.* at ¶¶ 299–328, 761–68, 950–53, 1231–37, 1336–44). Pfizer also disregards the Plaintiff States' allegation that Pfizer's improper use of Greenstone led to significantly increased prices for generic drugs purchased by consumers and from which Pfizer profited. (*Id.* at ¶¶ 1236, 1343).

Thus, contrary to Pfizer's argument, the Plaintiff States, like the plaintiff in *Golden Acres*, allege sufficient facts to show that Pfizer used Greenstone to perpetrate injustice or unfairness.

**B.  The Plaintiff States' Amended Complaint Plausibly Alleges that Pfizer Engaged in Antitrust Misconduct**

Next, the allegations in the Plaintiff States' Amended Complaint are more than sufficient to plausibly allege that Pfizer engaged in antitrust misconduct. Pfizer, nevertheless, argues that the Plaintiff States "do not allege Pfizer's 'direct and independent participation in the alleged conspiracy'" described in the Amended Complaint. (Def.'s Mot. to Dismiss at 6). Specifically, Pfizer asserts that the Plaintiff States fail to present sufficient facts to establish that Pfizer was aware of or participated in any of the competitor communications that precipitated the antitrust misconduct in the generic pharmaceutical industry. (*Id.*). An examination of the Amended Complaint, however, shows that Pfizer is wrong.

As noted above, the Plaintiff States allege a specific example of antitrust misconduct involving a senior Pfizer executive and the General Manager of Greenstone. (Am. Compl. ¶¶ 761–62). Indeed, the Plaintiff States allege that, in November 2013, Pfizer's alter ego, Greenstone, and a co-conspirator, Teva, conspired to increase the prices of the drugs at issue. (*Id.* at ¶ 761). Moreover, "it was understood between the two that if Greenstone raised prices Teva

12

would follow and would not seek to poach Greenstone's customers after the increase." (*Id.*). The Plaintiff States then allege that on or around November 18, 2013, the General Manager of Greenstone "sent a message to a senior Pfizer executive for sign off, and wanted 'to socialize this with him' and let him know that the price increases that Greenstone was seeking to take were consistent with other price increases currently happening with great frequency in the U.S. generic industry." (*Id.* at ¶ 762). The Plaintiff States maintain that "[p]art of the socialization process included explaining the strategy behind the price increases." (*Id.*). The Amended Complaint alleges that Pfizer approved the price increases that were subject to Greenstone's illegal agreement with Teva for Azithromycin Oral Suspension, Azithromycin Suspension, and Medroxyprogesterone Tablets on November 22, 2013. (*Id.*). In the face of such allegations, Pfizer has no reasonable support for its contention that it had no awareness of, or participation in, the misconduct at issue.

Thus, despite Pfizer's continued attempts to ignore the Plaintiff States' allegations, the Plaintiff States have alleged sufficient facts that Pfizer engaged in antitrust misconduct.

## V.    DISMISSAL WITH PREJUDICE IS NOT WARRANTED

For the foregoing reasons, dismissal of the Plaintiff States' Amended Complaint is not warranted because the allegations in the Amended Complaint are more than sufficient to state plausible claims for relief against Pfizer. To the extent, however, that this Court finds that the Plaintiff States' have not alleged sufficient facts to support their claims against Pfizer, it should not grant Pfizer's Motion to Dismiss with prejudice. *See United States v. Union Corp.*, 194 F.R.D. 223, 232 (E.D. Pa. 2000).

To illustrate, the plaintiffs in *Gordon v. Pearson Educ., Inc.* sought leave to amend their complaint against Pearson Education, Inc. for vicarious copyright infringement. 85 F. Supp. 3d

813, 823 (E.D. Pa. 2015). This Court, when reviewing the plaintiffs' request, noted that "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative amendment unless such an amendment would be inequitable or futile." *Id*. at 824 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). This Court further noted that "[d]ismissal without leave to amend is justified only on grounds of bad faith, undue delay, prejudice, and futility. *Id* (citing *Alston*, 363 F.3d, at 236). As such, this Court ultimately granted the plaintiffs leave to amend their complaint because the plaintiffs had never acted in bad faith, caused undue delay, committed prejudice, or indicated that amending the complaint would be futile. *Id*.

In the instant case, Pfizer argues that dismissal with prejudice is warranted under the circumstances because the Plaintiff States failed to present any facts to support their claims against Pfizer in a timely manner. (Def.'s Mot. to Dismiss at 13). Pfizer supports its argument by pointing out that the Plaintiff States failed to conduct their due diligence despite having subpoena power and being involved in multi-year investigation of the generic pharmaceutical industry. (*Id*.). Pfizer's argument, however, is without merit. The Plaintiff States, like the plaintiffs in *Gordon*, never acted in bad faith. Moreover, allowing the Plaintiff States to amend would not cause undue delay or prejudice to Pfizer. The Plaintiff States' investigation of the antitrust misconduct pervading the generic pharmaceutical industry is still ongoing,[4] and the Plaintiff States have advised this Court that they plan to file an additional case with respect to what they are investigating (Am. Compl. ¶ 7).

Thus, considering the antitrust misconduct at issue and the evidence presented to this Court to date, the Plaintiff States respectfully request that Pfizer's Motion to Dismiss be denied

---

[4] Indeed, the States served an investigatory subpoena on Greenstone on April 17, 2018, seeking numerous documents from Greenstone prior to filing its lawsuit. Greenstone produced relatively few documents in response to the subpoena. Thus, the States have not yet had the ability to fully investigate Greenstone or Pfizer, particularly with respect to the corporate relationship between the two companies.

or alternatively be granted without prejudice and the Plaintiff States be permitted to amend and provide more particularity as to Pfizer's direct involvement in the alleged schemes.

## VI.   CONCLUSION

Based on the forgoing, the Plaintiff States respectfully submit that Pfizer has not met the heavy burden of establishing that the Amended Complaint fails to plead a plausible claim of liability. Thus, Pfizer's Motion to Dismiss should be denied.

Respectfully submitted,

| STATE OF CONNECTICUT | STATE OF OHIO |
|---|---|
| WILLIAM TONG | DAVE YOST |
| ATTORNEY GENERAL | ATTORNEY GENERAL |

By:   /s/ W. Joseph Nielsen
      Federal Bar No. ct20415
      Assistant Attorney General
      55 Elm Street
      P.O. Box 120
      Hartford, CT 06141-0120
      Tel: (860) 808-5040
      Fax: (860) 808-5391
      Joseph.Nielsen@ct.gov

*Liaison Counsel for the Plaintiff States*

By:   /s/ Edward J. Olszewski
      Edward J. Olszewski
      Matthew K. McKinley
      Robert J. Yaptangco
      Assistant Attorneys General
      150 East Gay Street, 22nd Floor
      Columbus, OH 43215
      Tel: (614) 466-4328
      Fax: (866) 533-7140
      edward.olszewski@ohioattorneygeneral.gov
      matthew.mckinley@ohioattorneygeneral.gov
      robert.yaptangco@ohioattorneygeneral.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of January, 2020, I caused Plaintiff States'

Memorandum of Law in Opposition to Defendant Pfizer Inc.'s Motion to Dismiss to be filed

with the Clerk of Court of the United States District Court for the Eastern District of

Pennsylvania using the ECF system which will serve a copy on all interested parties registered

for electronic filing, and is available for viewing and downloading from the ECF system.


<u>/s/ Edward J. Olszewski</u>
Edward J. Olszewski
Assistant Attorney General