# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>16-md-2724 |
| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
| *State of Connecticut, et al.*, v. *Teva Pharmaceuticals USA Inc., et al.* | Civil Action No.: 19-2407<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT PFIZER INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

I.    **INTRODUCTION**[1]

The States' Amended Complaint pleads no antitrust misconduct by Pfizer Inc. ("Pfizer") and does not plead facts to invoke the extraordinary remedy of piercing Greenstone LLC's ("Greenstone") corporate veil. The States cannot overcome these plain deficiencies simply by *concluding* that Pfizer was "acting through," "directed," or "controlled" Greenstone's business, without facts plausibly supporting that claim. *See, e.g.*, States' Opp. Br. ("States' Br.") at 2, 9, 10, 11, 12, No. 19-cv-2407, ECF No. 120; Am. Compl. ¶ 1232, No. 19-cv-2407, ECF No. 106.

Notably absent from the States' allegations is any plausible claim that Pfizer was aware of, much less participated in, any antitrust conspiracy. Likewise, the States have never alleged, and make no argument in their Opposition, that Pfizer or any Pfizer employees ever communicated with *any* competitor or were aware of alleged competitor communications involving Greenstone employees. The States are wrong that direct antitrust liability can be plausibly inferred from the innocuous fact that the then–Greenstone General Manager (who the States also do not allege participated in, or was aware of, any competitor communications) discussed pricing strategy with a Pfizer executive who approved a single set of price increases. *See* State's Br. at 12; Am. Compl. ¶ 762.

The States also have failed to plead facts to meet the rigorous standard for piercing Greenstone's corporate veil under Delaware and federal law, which require *the States* to bear the high burden of plausibly alleging (i) that the "single entity" factors are satisfied, and (ii) that Pfizer fraudulently misused Greenstone's corporate form. The States' bare-bones veil-piercing claim rests entirely on the States' allegations that Pfizer provides a physical "campus" for Greenstone employees, that Pfizer shares certain back-office functions with Greenstone, and that unspecified

---

[1] Pfizer respectfully requests oral argument on its Motion to Dismiss.

Greenstone employees are also part of Pfizer's Essential Health Division.  Am. Compl. ¶¶ 44, 55.  These allegations do not suggest that Greenstone is Pfizer's alter ego or reflect any fraudulent misuse of Greenstone's corporate form.  To the contrary, the Amended Complaint pleads nothing more than a typical parent-subsidiary relationship between Pfizer and Greenstone.

Because the States have failed to allege direct antitrust liability against Pfizer or facts that warrant piercing Greenstone's corporate veil, this Court should dismiss all claims against Pfizer with prejudice.  The States had years to conduct a pre-suit investigation of Greenstone and Pfizer, and Pfizer gave the States specific notice of the deficiencies in the claims against it even before the States filed their May 10, 2019 Complaint, which the States have since amended.  No leave to file a *third* pleading is warranted, particularly where the States' Opposition fails to proffer any additional allegations that could state a claim against Pfizer.  Dismissal with prejudice is accordingly appropriate as to Pfizer, a *branded-drug* company that was improperly named in this *generic-drug* antitrust litigation.

## II.     ARGUMENT

### A.     The States' Amended Complaint Fails to Plausibly Allege Any Independent Antitrust Misconduct by Pfizer

The States cite no case law and allege no facts that plausibly show Pfizer had any "*direct and independent* participation in the alleged conspiracy."  *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 688-89 (E.D. Pa. 2009) (emphasis added) (citing cases).  The States' conclusory allegations—which repeatedly conflate direct and derivative liability—do not suffice.  *See, e.g.*, *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 376 (M.D. Pa. 2008) (explaining that a plaintiff cannot state a Sherman Act claim by "sprinkling a complaint with conclusory assertions that [the defendant] was a 'participant in coordinated conduct' or a 'conspirator' or acted in 'concert' with others").

The States do not plausibly allege, as they must, that Pfizer was "aware of and committed to the essential purpose of the overarching conspiracy." *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42, 2011 WL 7053807, at *30 (E.D.N.Y. Jan. 4, 2011); *see also In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011) (citing cases). The States have never claimed that Pfizer or any Pfizer employees ever communicated with *any* competitor; nor have they alleged that Pfizer or any Pfizer employees were aware of alleged competitor communications involving Greenstone employees. The States allege only that a Pfizer executive signed off on a single set of price increases, but do not claim that executive, or even the Greenstone General Manager who proposed and approved the price increases, was aware of any competitor communications or a party to any conspiratorial agreement. Am. Compl. ¶ 762. In fact, the States' allegations of misconduct purportedly involve sales employees who, by the States' own allegations, are at least three-levels removed from Pfizer. *Id.* ¶ 761.

The States have not pled a claim for direct antitrust liability against Pfizer because these allegations thus do not state with "some *sufficiently specific degree* that [Pfizer] *purposefully joined and participated in* the conspiracy" to fix prices or allocate markets. *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 720 (emphases added); *see, e.g.*, *In re Suboxone Antitrust Litig.*, No. 13-md-2445, 2017 WL 4810801, at *11-12 (E.D. Pa. Oct. 25, 2017) (dismissing direct claims against a parent company based solely on the allegation that parent company's executive "bears responsibility for the management of the day-to-day operations of the [subsidiary], strategic planning of the [subsidiary], and supervising subsidiary teams"); *Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d at 688 (dismissing direct antitrust claims against a parent company because a parent's "assent and approval to [its] respective subsidiaries' conduct" is insufficient to allege direct

3

participation in a conspiracy). Because no plausible inference of Pfizer's direct, independent participation in any anticompetitive conduct arises from the States' allegations, their direct claims against Pfizer for antitrust violations must be dismissed.

### B. The States' Allegations Fall Far Short Of Meeting the Legal Standard for Piercing Greenstone's Corporate Veil

#### i. The States Misstate the Law Regarding Their Burden to Survive Dismissal

The States do not dispute that Pfizer and Greenstone are distinct corporate entities, properly formed under Delaware law. As explained in Pfizer's Motion to Dismiss, piercing the corporate veil is an extraordinary remedy. Pfizer Br. at 7-9 (citing cases). Delaware and federal law thus establish a strong presumption "that a corporation, even when it is a wholly owned subsidiary of another, is a separate entity," *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 643 (3d Cir. 1991), and "that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (emphasis added). To survive a motion to dismiss, the States are required to overcome that presumption by pleading facts that demonstrate not only (1) that Pfizer and Greenstone "operated as a single economic entity," but also (2) that piercing is necessary as a sanction for some fraud or injustice relating to a misuse of the corporate form. *Id.* The States' Opposition confirms that their Amended Complaint widely miss these marks.

As a preliminary matter, the States' misstate the law regarding the burden of pleading a claim based on veil-piercing. The States incorrectly assert that it is *Pfizer* who bears the "heavy burden of establishing that the Amended Complaint fails to plead a plausible claim of liability." States' Br. at 1, 15. They cite no authority for that proposition because the law is precisely the opposite: it is the *States* that bear the burden of showing that corporate veil-piercing is warranted, and that burden "*is notoriously difficult for plaintiffs to meet*." *Trinity Indus., Inc. v. Greenlease*

4

*Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 (3d Cir. 2001) (emphasis added)).

> ii. The States' Opposition Fails to Cite Facts or Law Demonstrating Pfizer and Greenstone "Operated as a Single Economic Entity"

As explained in Pfizer's opening brief, the States have failed to meet their burden of plausibly alleging that Pfizer and Greenstone "functioned as a single entity"—*i.e.*, the traditional alter-ego analysis. *Id.* at 365-66. This analysis requires courts to examine whether the plaintiffs' allegations satisfy the "single entity factors": (i) the subsidiary was adequately capitalized for the undertaking; (ii) the subsidiary was solvent; (iii) both entities observed corporate formalities; (iv) the subsidiary paid dividends to the parent; (v) the parent siphoned the subsidiary's funds; (vi) the subsidiary kept corporate records; and (vii) the subsidiary simply functioned as a façade for the parent. *Id.*; *see, e.g.*, *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008).

The States' Opposition utterly fails to address *all but two* of these factors, basing their claim on the unsupported conclusion that Pfizer and Greenstone failed to observe corporate formalities and that Greenstone somehow functions merely as a "façade" for Pfizer. States' Br. at 6. As recognized in one of the only cases cited by the States, any inquiry into observance of corporate formalities focuses on "whether adequate corporate records were kept, directors and shareholders met regularly, and corporate directors and officers functioned properly." *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1105 (D. Del. 1988) (citing *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981)). And to show a subsidiary is a mere façade for its parent, the subsidiary must be a sham entity dominated by the parent "to such a degree that the corporation had 'no separate mind, will or existence of its own.'" *N. Am. Steel Connection, Inc. v. Watson Metal Prods. Corp.*, 515 F. App'x 176, 181 (3d Cir. 2013) (quoting *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988)).

Although the States argue that they have pled "specific allegations and facts describing how Pfizer has dominated, controlled and directed the activities of Greenstone," States' Br. at 1, they have done no such thing. They rely only on *three* paragraphs of their entire 1,700-paragraph Amended Complaint relating to Pfizer or Pfizer employees.[2] Am. Compl. ¶¶ 44, 55, 762; States' Br. at 2-3. The few facts alleged by the States fail to demonstrate that there was any failure to observe corporate formalities or that Greenstone was a sham entity. The use of a shared campus and back-office functions (like finance, human resources, and benefits) and high-level pricing approvals are hardly indicative of a disregard of corporate formalities, and certainly do not demonstrate that Greenstone is merely a "sham" entity. *Suboxone Antitrust Litig.*, 2017 WL 4810801, at *11. Nothing in corporate law prohibits—much less punishes—parent companies from exercising oversight over the policies or significant decisions of their subsidiaries. Indeed, well-established and robust case law shows just the opposite—that courts will not pierce the parent-subsidiary veil under these circumstances.[3]

---

[2] Throughout their Opposition, the States puff up and mischaracterize the allegations in the Amended Complaint. For instance, they now argue that Pfizer and Greenstone "share the same office space," States' Br. at 1, but the Amended Complaint alleges only that "Greenstone operates out of Pfizer's Peapack, New Jersey campus" and that *Pfizer's headquarters are in New York City*. Am. Compl. ¶¶ 44, 55. Moreover, the States have jumped to the conclusion that "Pfizer employees run Greenstone," States' Br. at 1, but they alleged only that "most" Greenstone employees are also employed by a "Division" of Pfizer. Am. Compl. ¶ 44. And they argue that Pfizer failed to observe corporate formalities by "act[ing] as the de facto human resources department for Greenstone," States' Br. at 2, 7-8, but have merely alleged that "Greenstone employees also use Pfizer for financial analysis, human resources and employee benefit purposes." Am. Compl. ¶ 55. Even as mischaracterized, however, none of these allegations come close to substantiating the sweeping legal conclusion in the States' Opposition that "Pfizer directs and controls *all of Greenstone's business activities*." States' Br. at 1 (emphasis added).

[3] *See, e.g.*, Pfizer Br. at 6-12 & n.6 (citing cases); *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466 (3d Cir. 1988) (refusing to pierce veil even though subsidiaries were "required to secure approval from their parent corporations for large investments and acquisitions or disposals of major assets"); *Craig*, 843 F.2d at 151 (refusing to pierce veil despite parent's "widespread involvement" in financial and management decisions, including "close scrutiny of new capital expenditure projects"); *Akzona Inc. v. E.I. Du Pont De Nemours & Co.*, 607 F. Supp. 227, 238 (D.

6

Without legal authority or sufficient allegations, the States try to pass off legal conclusions as facts throughout their Opposition, repeatedly asserting that Pfizer was "acting through" its subsidiary Greenstone and that it "directed" and "controlled" all aspects of Greenstone's business. *See, e.g.*, States' Br. at 1, 2, 9, 10, 11, 12. The States' entirely conclusory allegations that "Pfizer, *acting through Greenstone*, called, text messaged, and sent emails to manufactures of generic drugs to commit antitrust misconduct" (*id.* at 10 (emphasis added)) are entitled to no weight, as these allegations are unsupported by any facts whatsoever, and simply beg the question whether Greenstone and Pfizer are alter egos. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). If *Twombly* and *Iqbal* stand for anything, it is that the States cannot bring Pfizer—a *branded-drug* company—into this *generic-drug* MDL by simply concluding without support that "Greenstone is Pfizer." States' Br. at 1.

        iii.        *The States Also Fail to Plausibly Allege Fraud or Injustice Relating to a Misuse of the Corporate Form, Which Is a Required Element of Any Veil-Piercing Claim*

As explained in Pfizer's opening brief, the States have failed to plead the second "inequitable conduct" element of veil piercing, which requires them to "plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003); *see Pearson*, 247 F.3d at 485 (similar); *Trevino*, 583 F. Supp. 2d at 528-29; Pfizer Br. at 10-12. This equitable requirement recognizes that "[n]ot every disregard of corporate formalities or failure to maintain corporate records justifies piercing the corporate veil." *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1521 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995).

---

Del. 1984) (citing cases refusing to pierce veil despite that the parent had "general executive responsibilities for the operations of the subsidiary, approved major policy decisions, guaranteed the subsidiary's bank loans and worked closely with the subsidiary on approving decisions").

7

Through their Opposition, the States ask this Court to disregard the law and, instead, find an "element of injustice or unfairness" based on their unsupported conclusion that "Pfizer, *acting through Greenstone*, communicated and collaborated with the manufacturers of generic drugs to allocate, fix, and rig bids."  States' Br. at 11-12 (emphasis added).  Aside from being entirely conclusory, and therefore, insufficient to survive a motion to dismiss (as explained above), this alleged conduct is insufficient *as a matter of law* to warrant corporate veil-piercing.  That is because, under Delaware law, the "underlying cause of action *does not supply the necessary fraud or injustice*."  *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 & n.15 (D. Del. 1989) (emphasis added).  The States therefore cannot rely on alleged antitrust misconduct as the predicate fraud or injustice for veil-piercing purposes.  Rather, the fraud or injustice at issue *must* involve an alleged misuse by Pfizer of Greenstone's corporate form, as the States concede.  States' Br. at 10; *see also In re Foxmeyer Corp.* 290 B.R. 229, 236 (Bankr. D. Del. 2003).  Yet, the alleged antitrust violations at issue have nothing to do with an asserted abuse of Greenstone's corporate form.  Accordingly, they cannot be used to satisfy the second prong of the veil-piercing test.

    iv.  *The Only Two Cases Cited by The States Are Entirely Distinguishable.*

As mentioned above, the States fail to address, let alone refute, the myriad of cases cited by Pfizer, which plainly show that Pfizer should be dismissed from this litigation.  Pfizer Br. at 6-13 (citing cases).  Instead, the States address only two cases in their entire Opposition.  States' Br. at 7-11 (discussing *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462 (D. Del 2010); *Golden Acres*, 702 F. Supp. at 1104)).  Neither of these cases provides support for piercing Greenstone's corporate veil.

In *Golden Acres*, the court addressed the separate issue of whether veil-piercing of a closely held corporation was warranted to allow recovery from an individual shareholder, not "whether to pierce the corporate veil in the parent-subsidiary context."  702 F. Supp. at 1104.

Additionally, unlike here, the defendants in *Golden Acres* admitted that the subsidiary was not only "undercapitalized," but outright insolvent. *Id.* at 1104-06. "Even more significant to the alter ego analysis [wa]s the reason why [the subsidiary] was insolvent and incapable of paying dividends: *defendants were siphoning funds out of the corporation at regular intervals*." *Id.* at 1106 (emphasis added). Under these circumstances, the court found that the individual shareholders "act[ed] with total disregard for corporate formalities," had "no concern for [the subsidiary's] balance sheet," and "effectively used the corporation as an incorporated pocketbook." *Id.*

*Blair* is similarly unhelpful to the States. The States' selectively cite the factors relied upon in that case to pierce the subsidiary's corporate veil. States' Br. at 7. But the States fail to mention that in *Blair*, the Court found veil-piercing was warranted only after considering at least *fifteen* additional facts relating to the alter-ego factors, including "gross undercapitalization; failure to observe corporate formalities; insolvency; and siphoning."[4] 720 F. Supp. 2d at 472. But that was not all; in *Blair*, the Court found veil-piercing appropriate only after also finding fraud and injustice in the use of the corporate form where the "defendants misdirected funds, exercised crippling control, and purposely siphoned profits from the . . . [s]ubsidiaries in favor of propping up" the parent. *Id.* at 473.

There can be no serious contention that the States' barebones allegations about Pfizer and Greenstone here remotely approximates the abuses of the corporate form found in *Golden Acres* or *Blair*. To the contrary, the States' allegations show a garden-variety, parent-subsidiary relationship recognized as entirely appropriate under the law.

---

[4] In *Blair*, the court also noted that, "[f]or reasons of public policy," it applied a "more lenient" alter-ego standard because the plaintiff's claims arose under ERISA—a cause of action not asserted here. 720 F. Supp. 2d at 471.

### C. The Claims Against Pfizer Should Be Dismissed with Prejudice

The States are not entitled to a *third* attempt to keep Pfizer in this lawsuit. Pfizer Br. at 13. Pfizer, a branded-drug manufacturer, is not properly named in this generic-drug lawsuit. Although the States vaguely assert that they could "plead with much more specificity the facts supporting" their claims, States' Br. at 1 (emphasis added), those purported facts are conspicuously absent from their brief.[5] *See Centifanti v. Nix*, 865 F.2d 1422, 1431 n.10 (3d Cir. 1989) (explaining that the court may determine whether to grant leave "more effectively and quickly if it has before it a copy of the proposed amendment").

Lacking any facts that would warrant further amendment, the States improperly urge this Court to consider "the evidence presented to the Court to date" when assessing the viability of the States' claims *at the pleading stage*. States' Br. at 14-15. That is not only procedurally improper, but also substantively of no help to the States because none of that evidence suggests that *Pfizer* engaged in antitrust misconduct. The States Opposition demonstrates that further amendment would be futile, and basic fairness warrants dismissal with prejudice of the unsubstantiated claims against Pfizer.

### III. CONCLUSION

For these reasons, this Court should dismiss all claims against Pfizer with prejudice.

---

[5] The only new fact the States suggest adding is the allegation that an individual Defendant—who the States explicitly allege was "the Senior Director of Sales and National Accounts *at Greenstone*"—was listed [in *a post-2016* organizational chart] as an employee of Pfizer. States' Br. at 9 n.3 (emphasis added). This proposed allegation is outside the relevant time period with respect to Pfizer and Greenstone and, in any event, does not change the alter-ego analysis or the propriety of dismissal with prejudice.

| | |
|---|---|
| February 11, 2020 | Respectfully submitted,<br><br>By: */s/ Ilana H. Eisenstein*<br><br>DLA PIPER LLP (US)<br><br>Ilana H. Eisenstein<br>Ben C. Fabens-Lassen<br>1650 Market Street, Suite 5000<br>Philadelphia, PA 19103<br>Tel: (215) 656-3300<br>ilana.eisenstein@dlapiper.com<br>ben.fabens-lassen@dlapiper.com<br><br>Edward S. Scheideman<br>500 Eighth Street, NW<br>Washington, D.C. 20004<br>Tel: (202) 799-4000<br>edward.scheideman@dlapiper.com<br><br>***Counsel for Pfizer Inc.*** |