**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL No. 2724<br>Civil Action No.: 16-md-2724-CMR<br><br>HON. CYNTHIA M. RUFE |
| **THIS DOCUMENT RELATES TO:**<br><br>*State of Connecticut, et al., v.*<br>*Teva Pharmaceuticals USA Inc., et al.* | Civil Action No.: 19-cv-2407-CMR |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MAUREEN
CAVANAUGH'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**REED SMITH LLP**
Thomas H. Suddath, Jr.
Anne E. Rollins
Thomas P. Reilly
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone:  215-851-8100
Facsimile:  215-851-1420
tsuddath@reedsmith.com
arollins@reedsmith.com
treilly@reedsmith.com

Michael E. Lowenstein
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: 412-288-3131
Facsimile: 412-388-3063
mlowenstein@reedsmith.com

Dated: February 14, 2020                    *Counsel for Defendant Maureen Cavanaugh*

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 3

  A.  Plaintiffs' Allegations Generally ................................................................. 3

  B.  Plaintiffs' Allegations Regarding Ms. Cavanaugh ..................................... 3

III.  ARGUMENT .................................................................................................... 4

  A.  Plaintiffs Fail to State a Sherman Act Conspiracy Claim against Ms. Cavanaugh ............ 4

    1.  The Applicable Legal Standard ............................................................. 4

    2.  Plaintiffs Have Failed to State a Plausible Claim that Ms. Cavanaugh Purposefully Joined and Participated in a Conspiracy .......................................... 6

      **a.**  The Conclusory Allegations Do Not Establish that Ms. Cavanaugh Purposefully Joined and Participated in a Conspiracy ................................ 6

      b.  The Allegations Regarding Ms. Cavanaugh's Communications with Competitors Do Not Establish that Ms. Cavanaugh Purposefully Joined and Participated in a Conspiracy ...................................... 7

      c.  Plaintiffs' Allegations that Ms. Cavanaugh Received Market Intelligence Do Not Support a Claim that Ms. Cavanaugh Purposefully Joined and Participated in a Conspiracy ........................................ 8

      d.  Plaintiffs' Last-Ditch Effort to Allege that Ms. Cavanaugh Knew of an Employee's Communications with Competitors Does Not Support a Claim that Ms. Cavanaugh Purposefully Joined and Participated in a Conspiracy ............. 12

    3.  All of the Plaintiffs' Allegations Against Ms. Cavanaugh, Taken Together, Do Not Nudge Their Claim "Across the Line" ............................ 13

  B.  The Sherman Act Claim against Ms. Cavanaugh is Time-Barred ................ 14

  C.  The Plaintiffs' Pendent State-Law Claims Must Be Dismissed ................... 15

IV.  CONCLUSION ................................................................................................. 15

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................1, 2, 3, 4, 5

*Bell Atlantic v. Twombly,*
550 U.S. 544 (2007) ..................................................................................1, 2, 3, 4, 5

*Burtch v. Milberg Factors, Inc.,*
662 F.3d 212 (3d Cir. 2011) ...............................................................5, 7, 8, 13

*In re Baby Food Antitrust Litig.,*
166 F.3d 112 (3d Cir. 1999) ....................................................................7, 9

*In re Domestic Drywall Antitrust Litig.,*
163 F. Supp. 3d 175 (E.D. Pa. 2016) .......................................................9

*In re Generic Pharm. Pricing Antitrust Litig.,*
386 F. Supp. 3d 477 (E.D. Pa. 2019) ..................................................5, 14

*In re Insurance Brokerage Antitrust Litigation,*
618 F.3d 300 (3d Cir. 2010) ..............................................................5, 6, 13

*In re OSB Antitrust Litig.,*
No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) .......................4

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
566 F. Supp. 2d 363 (M.D. Pa. 2008) .......................................................6

*In re Processed Egg Prod. Antitrust Litig.,*
821 F. Supp. 2d 709 (E.D. Pa. 2011) ............................................. *passim*

*Invamed, Inc. v. Barr Labs., Inc.,*
22 F. Supp. 2d 210 (S.D.N.Y. 1998) .......................................................14

*Long v. Spalding Auto. Inc.,*
337 F. Supp. 3d 485 (E.D. Pa. 2018) .......................................................2

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,*
998 F.2d 1192 (3d Cir. 1993) ....................................................................2

*Rick-Mik Enters. v. Equilon Enters., LLC,*
532 F.3d 963 (9th Cir. 2008) ..................................................................15

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*St. Clair v. Citizens Fin. Grp.*,
    340 F. App'x 62 (3d Cir. 2009) .............................................................15

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
    873 F.3d 185 (3d Cir. 2017)..............................................................8, 9

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
    No. CV 15-6480, 2019 WL 130535 (E.D. Pa. Jan. 8, 2019) ...................14

**Statutes**

15 U.S.C. §15b................................................................................................14

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

I.        **INTRODUCTION**

This action should be dismissed as to Defendant Maureen Cavanaugh ("Ms. Cavanaugh"). Plaintiffs' Amended Complaint ("the Complaint" or "AC") does not identify a ***single*** conversation, email or other communication between Ms. Cavanaugh and ***any*** competitor regarding ***any*** competitive issue.  Faced with this complete absence of direct evidence of any misconduct by Ms. Cavanaugh, Plaintiffs instead strain to cobble together circumstantial evidence linking Ms. Cavanaugh to allegedly improper conduct by other individuals.

Plaintiffs' efforts are unavailing.  Plaintiffs fail to allege (as they must to state a claim) that Ms. Cavanaugh ***purposefully joined and participated*** in an antitrust conspiracy.  Under the pleading requirements set forth by the Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), Plaintiffs' claims against Ms. Cavanaugh should be dismissed.

Only 37 of the 1,726 paragraphs of the Complaint reference Ms. Cavanaugh.  Whether viewed individually or in the aggregate, these allegations do not satisfy *Twombly* and *Iqbal*. Twenty of these 37 paragraphs can be quickly disregarded as background information, unsubstantiated conclusory assertions, or threadbare and legally irrelevant allegations that Ms. Cavanaugh merely had communications with colleagues in the industry, with no allegation as to the ***substance*** of any such communications.

The next 16 paragraphs reference communications received by Ms. Cavanaugh from other Teva employees that appear on their face to involve routine and appropriate reports of competitive intelligence obtained from customers (not competitors) or derived from publicly available information.  As to these 16 paragraphs, Plaintiffs do not allege that Ms. Cavanaugh knew that the information referenced in these reports was the product of communications between other Teva employees and competitors, much less that Ms. Cavanaugh purposefully used information from

- 1 -

competitors in her work on strategic decisions for Teva. Under *Twombly* and *Iqbal*, this "obvious alternative explanation"—that Ms. Cavanaugh took these reports as innocuous information derived from proper sources and did not knowingly use information from competitors—renders these allegations legally insufficient to state a claim that Ms. Cavanaugh purposefully joined and participated in an antitrust conspiracy. *Twombly*, 550 U.S. at 567; *Iqbal,* 556 U.S. at 682.

Plaintiffs are well aware of the crucial distinction between appropriately obtaining competitive intelligence from customers, on the one hand, and communications with competitors, on the other. Tellingly, Paragraph 274 of the Complaint misleadingly excerpts an email on which Ms. Cavanaugh was copied to appear to report information received from competitors when the *actual* email, attached here as **Exhibit 1**,[1] makes clear that the information came from customers:

| Plaintiffs' Allegation | Actual Language from Email |
|---|---|
| "That same day, Defendant Rekenthaler informed the group that he still had not received 'a call from any other manufacturer on Irbesartan.'" AC ¶ 274. | |

Plaintiffs' misleadingly crafted allegations do not bridge the gap Plaintiffs need to cross to assert a claim against Ms. Cavanaugh, but instead serve only to highlight this gap.

Plaintiffs' awareness that they need more in order to name Ms. Cavanaugh as a defendant is further highlighted by their final allegation referencing Ms. Cavanaugh—that Ms. Cavanaugh allegedly exhibited concern at a single unspecified meeting in 2013 on an unidentified subject that one employee had obtained information from competitors rather than customers, with no allegation that any such information was used for any purpose. If this vague allegation shows anything, it

---

[1] The Court may consider this document at this stage because the Plaintiffs' claims, which expressly quote this email, "are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Long v. Spalding Auto. Inc.*, 337 F. Supp. 3d 485, 490 (E.D. Pa. 2018) (Rufe, J.).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

shows only that Ms. Cavanaugh did ***not*** want to use information obtained from competitors. This last-ditch allegation does not salvage Plaintiffs' effort to state a claim against Ms. Cavanaugh.

In addition to being insubstantial, Plaintiffs' allegations directed to Ms. Cavanaugh also are time-barred. Finally, upon dismissal of Plaintiffs' federal claim, their supplemental state law count directed to Ms. Cavanaugh should be dismissed in turn.

It is a serious matter, with grave reputational consequences, to name an individual as a defendant in an antitrust conspiracy, especially in a case as highly-publicized as this one. There simply is no basis to allege that Ms. Cavanaugh purposefully joined and participated in an antitrust conspiracy. Despite having combed through thousands of emails before drafting their Complaint, AC ¶ 4, Plaintiffs' allegations against Ms. Cavanaugh do not meet the standards of *Twombly* and *Iqbal* and, as to Ms. Cavanaugh, the Complaint should be dismissed.

## II.     BACKGROUND

### A.     Plaintiffs' Allegations Generally

The Complaint alleges that certain manufacturers of generic pharmaceuticals engaged in a horizontal conspiracy to fix prices and allocate markets for certain drugs between 2012 and 2015. *See, e.g.*, AC ¶¶ 2, 536-40. The Complaint alleges a number of "drug-specific" conspiracies between different subsets of the manufacturer defendants. *Id.* ¶ 5; *see also id*. ¶¶ 168-535. Plaintiffs aver that each drug-specific conspiracy was part of a larger "overarching conspiracy" in the industry, "which ties together all of the agreements on individual drugs." *Id.* ¶ 116; *see also id*. ¶¶ 115-61. The Complaint seeks to assert claims under Section 1 of the Sherman Act (Counts 1-34) and supplemental state law claims (Count 35). Only Counts 22 and 35 of the Complaint are directed to Ms. Cavanaugh. *See* AC ¶¶ 1300-1308, 1417-1726.

### B.     Plaintiffs' Allegations Regarding Ms. Cavanaugh

- 3 -

Plaintiffs allege that "[a]t all times relevant to the Amended Complaint, Cavanaugh was the Senior Vice President, Commercial Officer, North America, for Defendant Teva Pharmaceuticals USA, Inc." AC ¶ 37. The remaining 36 paragraphs of the Complaint referencing Ms. Cavanaugh are summarized in the Introduction above and discussed in detail in the Argument section below.

## III.   ARGUMENT

### A.   Plaintiffs Fail to State a Sherman Act Conspiracy Claim against Ms. Cavanaugh

#### 1.   The Applicable Legal Standard

Ms. Cavanaugh moves to dismiss Plaintiffs' claims against her pursuant to Federal Rule of Civil Procedure 12(b)(6) which provides for dismissal of a complaint for failure to state a claim when a plaintiff's "plain statement" lacks enough substance to show that it is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task." *Aschcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In the context of an antitrust claim under Section 1 of the Sherman Act, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.

Plaintiffs must have a sufficient basis to sue each person or entity named as a defendant. *See In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007) (an antitrust "plaintiff must allege that ***each individual defendant*** joined the conspiracy and played some role in it" (emphasis added)). Thus, the "plaintiff's pleading burden is to offer allegations that plausibly suggest that the defendant agreed to the conspiracy," which requires demonstrating that each defendant made "a conscious commitment to a common scheme designed to achieve an unlawful objective." *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D.

- 4 -

Pa. 2011).  A complaint must be dismissed if it fails to "'delineate[] to some sufficiently specific degree that a defendant ***purposefully joined and participated in the conspiracy***.'" *In re Generic Pharm. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477, 482 (E.D. Pa. 2019) (emphasis added) (quoting *Processed Egg*, 821 F. Supp. 2d at 720).  Where a complaint alleges a larger "overarching conspiracy," the plaintiff must allege "particularized facts that ***each Defendant*** undertook certain acts, or engaged in certain conduct . . . that plausibly suggest that particular Defendant's embrace of that overarching conspiracy." *Processed Egg*, 821 F. Supp. 2d at 721 (emphasis added).

On a motion to dismiss, the Court considers plausibility, not probability.  *See Twombly*, 550 U.S. at 556.  A claim is plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, the plausibility standard set forth in *Twombly* and *Iqbal* requires "more than a sheer possibility that a defendant has acted unlawfully" and a complaint which pleads facts "'merely consistent with' a defendant's liability, stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

As the Supreme Court held in *Iqbal*, where there is an obvious alternative explanation, a plaintiff's allegation does not satisfy the plausibility standard:

> On the facts respondent alleges the arrests Mueller oversaw were likely lawful and justified by his nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts.  As between that "obvious alternative explanation" for the arrests, *Twombly*, [550 U.S.] at 567, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.

*Iqbal*, 556 U.S. at 682; *see also In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 322-23 (3d Cir. 2010) ("[A]llegations of conspiracy are deficient if there are 'obvious alternative explanation[s]' for the facts alleged." (quoting *Twombly,* 550 U.S. at 567)).

- 5 -

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

> **2.     Plaintiffs Have Failed to State a Plausible Claim that Ms. Cavanaugh Purposefully Joined and Participated in a Conspiracy**

Here, as explained in detail below, beyond Plaintiffs' preliminary and conclusory allegations, there are "obvious alternative explanations" for all of Plaintiffs' allegations of supposed wrongdoing directed to Ms. Cavanaugh.  Plaintiffs' claims against Ms. Cavanaugh therefore should be dismissed.

> **a.     The Conclusory Allegations Do Not Establish that Ms. Cavanaugh Purposefully Joined and Participated in a Conspiracy**

Plaintiffs make nine conclusory assertions that Ms. Cavanaugh joined the alleged price-fixing and market allocation agreements.  *See* AC ¶¶ 14, 1301-08.[2]  These are simply introductory or summary paragraphs that incorporate by reference and rely upon other allegations which, as discussed below, also do not state a claim against Ms. Cavanaugh.  These conclusory allegations are insufficient to state an antitrust conspiracy claim against Ms. Cavanaugh.  *See, e.g. Ins. Brokerage*, 618 F.3d at 326 ("Because these conclusory averments do not show but merely assert plaintiffs' entitlement to relief, they cannot carry plaintiffs' pleading burden."); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 376 (M.D. Pa. 2008) ("*Twombly* made clear that sprinkling a complaint with conclusory assertions that a party was a 'participant in coordinated conduct' or a 'conspirator' or acted in 'concert' with others does not make the requisite showing of entitlement to relief mandated by Rule 8(a)(2).").  Nor are Plaintiffs' numerous, generic references to all "Defendants," *see, e.g.*, AC ¶¶ 13, 16, sufficient to state a plausible antitrust claim

---

[2] Paragraph 14 is an introductory paragraph which makes the conclusory assertion that "[t]he anticompetitive conduct – schemes to fix and maintain prices, allocate markets and otherwise thwart competition – has caused, and continues to cause, significant harm to the United States healthcare system, which is ongoing" and further states that a list of 15 defendants including Ms. Cavanaugh, "among others, conceived, directed and ultimately benefited from these schemes."  AC ¶ 14.  Paragraphs 1301-08 are the boilerplate allegations of Count 22, directed to Ms. Cavanaugh, and are based on the incorporation by reference of the allegations directed to Ms. Cavanaugh, which, as discussed in detail below, are insufficient to state a claim against Ms. Cavanaugh.  AC ¶¶ 1301-08.

- 6 -

against Ms. Cavanaugh.  As Judge Pratter of this Court has explained, a party should not be subjected to the burdens of antitrust litigation based on such conclusory, collective language:

> The Court properly looks for more than mere repetitive generic reference to "Defendants" tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy.  ***Simply using the global term "defendants" to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient. . . .*** Conclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust (and other) cases.

*In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 721 (E.D. Pa. 2011) (emphasis added) (citations omitted).

> **b.     The Allegations Regarding Ms. Cavanaugh's Communications with Competitors Do Not Establish that Ms. Cavanaugh Purposefully Joined and Participated in a Conspiracy**

Another 11 of the 37 paragraphs of the Complaint referencing Ms. Cavanaugh cite alleged contacts between Ms. Cavanaugh and colleagues at other generic manufacturers over a six-year period ***but contain no discussion whatsoever of the substance of these communications***.  *See* AC ¶¶ 419, 477, 590, 849, 1065, 1066, 1068, 1070, 1073, 1128, 1133.

These allegations show ***nothing***.  The Third Circuit has "held previously that communications between competitors do not permit an inference of an agreement to fix prices unless 'those communications rise to the level of an agreement, tacit or otherwise.'"  *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) (quoting *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1013 (3d Cir. 1994)).  By definition, where, as here, there is no allegation as to the substance of a communication, there is an alternative, entirely lawful explanation for such communication. *See, e.g.*, *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

(3d Cir. 2011) ("Appellant does not adequately plead circumstantial evidence of an agreement. Conversations between the [Defendants] do not alone raise an inference of an agreement.").[3]

> c.     **Plaintiffs' Allegations that Ms. Cavanaugh Received Market Intelligence Do Not Support a Claim that Ms. Cavanaugh Purposefully Joined and Participated in a Conspiracy**

The third category of averments mentioning Ms. Cavanaugh are 16 paragraphs containing allegations that Ms. Cavanaugh received information obtained by other Teva employees from competitors and was involved in strategy decisions based on this information. *See* AC ¶¶ 158, 200, 211, 273-74, 311, 471, 605, 639, 660, 668, 697, 732, 738, 741, 1114. Because these allegations do not provide a basis to show that Ms. Cavanaugh knew that any such information came from competitors, much less that she purposefully joined and participated in a conspiracy to improperly use any such information, these allegations also do not meet the plausibility standard articulated in *Twombly* and *Iqbal*.

As the Complaint describes, for each drug, there typically are only a small number of competitors. In this setting, competitors typically follow the actions of other competitors very closely, including, for example, taking into account who is in the marketplace, who may be entering or exiting the marketplace, what prices are being offered, what customers' preferences are, and what type of capacity issues or other circumstances competitors and customers are facing. *See, e.g.*, *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 199-200 (3d Cir. 2017) ("To forbid firms in an oligopoly from considering conscious parallelism in its internal pricing

---

[3] Plaintiffs overreach in their effort to substitute an aura of suspicion for the absence of any actual substantive allegations against Ms. Cavanaugh. Notably, 96% of the texts or calls listed for Ms. Cavanaugh in Plaintiffs' summary table (AC ¶ 1065) were with employees of Actavis, a company that Teva acquired during the period covered by the table. AC ¶ 28. Thus, in addition to the overarching obvious alternative explanation that all of the communications in Plaintiffs' table could have been on subjects unrelated to any competitive issue, the Actavis acquisition provides an additional obvious alternative explanation for a high percentage of these communications: that Ms. Cavanaugh, a Senior Executive at Teva (AC ¶ 37), had significant acquisition-related business integration responsibilities. Furthermore, Plaintiffs' summary table extends to July 2016, just before Teva's acquisition of Actavis was finalized, despite the fact that the alleged collusive conduct at issue occurred between 2012 and 2015.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

decisions would be to require a firm to do the impossible: 'set its prices *without regard* to the likely reactions of its competitors.'" (emphasis in original) (quoting *Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*, 851 F.2d 478, 484 (1st Cir. 1988) (Breyer, J.))); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) ("In a highly competitive industry . . . it makes common sense to obtain as much information as possible of the pricing policies and marketing strategy of one's competitors."). In this dynamic and fast-moving setting, obtaining information from customers and publicly available sources is essential to effective competition, routine, and unquestionably lawful. *See, e.g., In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175, 247 (E.D. Pa. 2016) ("[T]his statement reflects the constant communications all Defendants were having about prices with customers, which by themselves are not at all illegal or improper.").

Plaintiffs do not contend otherwise. Rather, they contend that this lawful process was polluted by communications that went beyond the lawful gathering of competitive intelligence from customers and public sources and instead involved communications between and agreements with competitors. This is the essence of Plaintiffs' complaint.

Whatever the merits of Plaintiffs' claim as to other defendants, this claim simply does not apply to Ms. Cavanaugh. There is not a single allegation in the 1,726-paragraph Complaint that Ms. Cavanaugh had a single communication with a competitor on any competitive subject. And the 16 paragraphs at the heart of Plaintiffs' efforts to drag Ms. Cavanaugh into the alleged conspiracy on their face appear to be routine reports of competitive intelligence that could be obtained from customers or derived from publicly available information. Even if this information instead came from competitors, as the Complaint alleges, the facially innocuous information contained and strategy issues discussed in these 16 paragraphs do not show that Ms. Cavanaugh knew this, much less that she made a "conscious commitment" to purposefully join or participate

- 9 -

in any such conduct.  *See In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 719-20

(E.D. Pa. 2011).

Plaintiffs are plainly aware of the critical difference between information that appears on

its face to be innocuous information from customers and public sources, on the one hand, and

information obtained from competitors, on the other.  In Paragraph 274 of the Complaint, Plaintiffs

misrepresent the contents of an email received by Ms. Cavanaugh by cropping and misquoting the

email to make it appear to report information received from competitors when the ***actual*** email

makes clear that the information came from customers:

| Plaintiffs' Allegation | Actual Language from the Email Excerpted |
|---|---|
| "That same day, Defendant Rekenthaler informed the group that he still had not received 'a call from any other manufacturer on Irbesartan.'"  AC ¶ 274. | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ████████████████████     |

When accurately stated, this email establishes nothing.

The rest of these 16 paragraphs fare no better.  On their face these allegations involve what

appear to be innocuous information from customers or public sources, decisions based thereon, or

routine strategy discussions:

- Paragraph 158, repeated at Paragraph 200: "Mylan's language is vague.  'Pricing subject to change at Mylan's sole discretion.'"  This is contract language that on its face could have come from customers without, to Ms. Cavanaugh's knowledge, information obtained from a competitor.

- Paragraph 211:  "Hearing Mylan to get approval this week."  This high-level information could have come from customers or public sources without, to Ms. Cavanaugh's knowledge, information obtained from a competitor.

- Paragraph 311: Email from Dave Rekenthaler indicating that the competitive price challenge a Teva customer had received on a particular drug came from Greenstone, a new market entrant, without any indication that the information came from a competitor.  Moreover, this very allegation describes an exchange of information between Teva and its customer, CVS.  *Id.* ("Teva was informed by CVS that it had received a competitive price challenge on Tolterodine.").

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

- Paragraph 471:  "Per Dave [Rekenthaler], Maureen [Cavanaugh] has agreed to concede this item," based on strategic new market entrant, with no reference to information from any competitor.

- Paragraph 605:  File of proposed price increases sent (by "K.G.", who is not a named defendant) to and approved by Ms. Cavanaugh, with no reference that Ms. Cavanaugh knew that any information contained therein came from a competitor.

- Paragraph 639:  After a discussion with Ms. Cavanaugh, Ms. Patel added four products to the Teva price increase list, with no reference to communications with any competitor.

- Paragraphs 659-60.[4]  Strategy email forwarded to Ms. Cavanaugh discussing how to respond to an announced price increase and marketplace rumors of how competitors will react, with no reference that Ms. Cavanaugh knew of any information from any competitor contained therein, ***and, to the contrary, alleging that Ms. Patel used "the term 'rumors' to obfuscate the true source of her information."***

- Paragraph 697.  After a conversation with Ms. Cavanaugh, Ms. Patel added a drug to a price increase list, with no reference that Ms. Cavanaugh knew of any communications with any competitor.

- Paragraph 732:  Ms. Cavanaugh instructed K.G. and others at Teva that "[w]e need to do the Niacin ER price increase before Lupin comes to market and sends offers out," with no reference that Ms. Cavanaugh knew of any information from any competitor.

- Paragraph 738:  Ms. Cavanaugh copied on an email sent by someone with a redacted name:  "I want to make sure our strategy has not changed> we are conceding correct?", with no reference that Ms. Cavanaugh knew of any information from any competitor.

- Paragraph 741:  Patel's "Pricing Strategy Brainstorm" memo, discussing strategy of leading more price increases, with no reference to communications with competitors.[5]

- Paragraphs 1113-14:  Ms. Cavanaugh approved a price increase based on one competitor bidding high and rumors of a price increase by another competitor, with no reference that Ms. Cavanaugh knew of any information from any competitor.

Whatever communications other Teva employees allegedly may have had with competitors, these paragraphs provide no basis for alleging that Ms. Cavanaugh knew that they

---

[4] In addition to the 16 allegations that expressly mention Ms. Cavanaugh, three paragraphs mentioning Ms. Cavanaugh explicitly reference the immediately-preceding paragraph, and are cited herein to provide context.

[5] The sole, purely conclusory reference to Ms. Cavanaugh in Paragraph 741 also suffers from the same infirmities as the conclusory allegations discussed *supra* at Section III.A.2.a.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

had done so, much less that Ms. Cavanaugh joined in or supported any such conduct.  Indeed, to

the contrary, in Paragraphs 659 and 660 of the Complaint, Plaintiffs allege that an employee, Ms.

Patel, used "the term 'rumors' to obfuscate the true source of her information."  Likewise,

Paragraphs 668 and 669 of the Complaint allege efforts by others at Teva to alter documents so

that Ms. Cavanaugh *would not be aware* of any such communications with competitors.

In sum, these paragraphs show nothing more than routine decision making based on

information that, on its face and as far as Ms. Cavanaugh knew, came from routine and innocuous

customer and public information sources, and the alleged acts of others to shield Ms. Cavanaugh

from the alleged source of the competitive intelligence.  Under *Twombly* and *Iqbal*, given these

"obvious alternative explanations," these paragraphs do not raise a plausible inference that Ms.

Cavanaugh purposefully joined and participated in an antitrust conspiracy.

> ### d.   Plaintiffs' Last-Ditch Effort to Allege that Ms. Cavanaugh Knew of an Employee's Communications with Competitors Does Not Support a Claim that Ms. Cavanaugh Purposefully Joined and Participated in a Conspiracy

Plaintiffs make one last-ditch effort to satisfy the standards of *Twombly* and *Iqbal*.  This

effort is likewise unavailing and serves only to highlight that Plaintiffs knew that they needed more

than they had alleged in the preceding paragraphs.  In Paragraph 1115 of the Complaint, Plaintiffs

allege that Ms. Cavanaugh must have known of communications between Teva employee Ms.

Patel and competitors because Ms. Cavanaugh allegedly put her hands over her ears when Ms.

Patel allegedly discussed her communications with certain competitors about price increases at an

unspecified meeting regarding unspecified products at some unspecified time in 2013.  AC ¶ 1115.

There is no allegation that Ms. Cavanaugh (or anyone else) took any action based on whatever Ms.

Patel allegedly said that day to cause Ms. Cavanaugh's reaction.  This vague, unsubstantiated

allegation—bereft of any meaningful detail—is plainly insufficient to state an antitrust claim,

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

because "none of these allegations specify a time or place that any actual agreement [involving Ms. Cavanaugh] occurred, nor do they indicate that any particular individuals . . . made such an agreement." *Burtch*, 662 F.3d at 225.

If this vague allegation shows anything, it shows only Ms. Cavanaugh did ***not*** want to be a part of any use of information obtained from competitors.  There simply are no plausible allegations, in Paragraph 1115 or anywhere else in the Complaint, that Ms. Cavanaugh took ***any*** action based on information she knew came from a competitor.  Because there are no such allegations, Plaintiffs fail to "delineate[] to some sufficiently specific degree that [Ms. Cavanaugh] purposefully joined and participated" in any price-fixing or market allocation conspiracy.  *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011).

### 3. All of the Plaintiffs' Allegations Against Ms. Cavanaugh, Taken Together, Do Not Nudge Their Claim "Across the Line"

As shown in detail above, each of the above categories of allegations, standing alone, fails to state a plausible claim against Ms. Cavanaugh.  As a final step, this Court must "examine the entirety of the complaints' factual allegations and determine whether, taken as true, they support a plausible inference" that Ms. Cavanaugh purposefully joined and participated in the alleged conspiracies.  *Ins. Brokerage*, 618 F.3d at 326.  Even if the Court concludes that Plaintiffs have plausibly alleged an "overarching conspiracy" or any drug-specific conspiracies against other Defendants named in the Complaint, this Court must assess the separate question of "whether Plaintiffs adequately alleged particularized facts that [Ms. Cavanaugh herself] undertook certain acts, or engaged in certain conduct . . . that plausibly suggest [her] embrace of that overarching conspiracy" or of any drug-specific conspiracy.  *Processed Egg*, 821 F. Supp. 2d at 721.

Where, as here, there are extensive allegations regarding the alleged antitrust conspiracy as a whole but insufficient allegations about a particular defendant's role and participation therein,

- 13 -

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

courts within the Third Circuit routinely grant those specific defendants' motions to dismiss.  *See,*
*e.g.*, *In re Generic Pharm. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477, 484 (E.D. Pa. 2019) (Rufe,
J.) (dismissing complaint that "include[d] no factual allegations that would give substance to
McKesson's purported role in the alleged conspiracy"); *Winn-Dixie Stores, Inc. v. E. Mushroom*
*Mktg. Coop.*, No. CV 15-6480, 2019 WL 130535, at *5 (E.D. Pa. Jan. 8, 2019) (dismissing antitrust
complaint against two corporate officers where "the Court cannot say that [] Plaintiffs' Complaint
'delineates to some sufficiently specific degree that' either of the [individuals] 'purposefully joined
and participated in the conspiracy.'" (quoting *Processed Egg*, 821 F. Supp. 2d at 720)); *Processed*
*Egg*, 821 F. Supp. 2d at 750 ("The SAC's few specific allegations as to [these] Entities in no way
imply that the entities directly agreed to or participated in the conspiracy . . . .").

For all the above reasons, the Sherman Act Conspiracy Claim against Ms. Cavanaugh
should be dismissed.

## B.       The Sherman Act Claim against Ms. Cavanaugh is Time-Barred

Alternatively and additionally, Plaintiffs' Sherman Act claim against Ms. Cavanaugh is
time-barred.  A four-year statute of limitations applies to civil claims under the Sherman Act.  *See*
15 U.S.C. §15b.  Plaintiffs filed the original Complaint in this action on May 10, 2019.  (Dkt. No.
1).  Each of the specific allegations made against Ms. Cavanaugh in the Complaint occurred more
than four years prior to that date.[6]  Moreover, Plaintiffs cannot rely on the overt acts of other
alleged co-conspirators to make their claims against Ms. Cavanaugh timely, because they have
failed to assert a plausible claim that Ms. Cavanaugh ever joined and participated in the conspiracy.
*See, e.g.*, *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 222 (S.D.N.Y. 1998) (rejecting the

---

[6] Although Plaintiffs assert in a chart (AC ¶1065; *see also supra* n.3) that Ms. Cavanaugh had some unspecified
communications with employees of other companies within four years of suit, as discussed above, these allegations
show nothing.  Plaintiffs cannot rely upon such insubstantial allegations to render their otherwise stale claims timely.
*See supra* § III.A.2.b.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

argument "that a conspirator at one phase of the conspiracy is liable for subsequent actions taken during the conspiracy" as "beside the point" where the plaintiff "has not adequately alleged that the [particular defendant] engaged in a conspiracy in the first instance").

The statute of limitations is an independently sufficient basis to dismiss the claims against Ms. Cavanaugh. But it also reinforces a larger point. The allegations directed to Ms. Cavanaugh are paper thin and patently insubstantial. These allegations also are very old. A person simply should not be dragged into a massive antitrust litigation based on cropped, misleading and contorted readings of a few emails and a supposed gesture five or more years before suit was filed.

### C.     The Plaintiffs' Pendent State-Law Claims Must Be Dismissed

Plaintiffs' failure to state a claim under federal law also warrants dismissal of their state antitrust and state consumer protection claims, because those claims are derivative of the federal claim. *See, e.g., St. Clair v. Citizens Fin. Grp.,* 340 F. App'x 62, 65 n.2 (3d Cir. 2009) (dismissing state antitrust claim, after dismissing federal claim, because "the state law antitrust claims are only viable if the corresponding federal claims are sufficient"); *Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 976 n.5 (9th Cir. 2008) ("[S]tate law antitrust claims are derivative of the federal law claims. Because the federal claims fail, the state law claims fail."). Moreover, given the absence of any allegations showing any wrongdoing whatsoever by Ms. Cavanaugh, all state-law claims against Ms. Cavanaugh fail regardless of the legal theory asserted.

## IV.     CONCLUSION

It is a grave matter to name an individual as a defendant in an antitrust suit. Ms. Cavanaugh has already suffered irreparable injury to her reputation by being named as a defendant here. Plaintiffs included Ms. Cavanaugh as a defendant without a valid basis to do so, and the claims against her should be dismissed.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Dated: February 14, 2020                              Respectfully submitted,

                                                      */s/ Thomas H. Suddath, Jr.*
                                                      Thomas H. Suddath, Jr.
                                                      Anne E. Rollins
                                                      Thomas P. Reilly
                                                      REED SMITH LLP
                                                      Three Logan Square
                                                      1717 Arch Street, Suite 3100
                                                      Philadelphia, PA 19103
                                                      tsuddath@reedsmith.com
                                                      arollins@reedsmith.com
                                                      treilly@reedsmith.com

                                                      Michael E. Lowenstein
                                                      REED SMITH LLP
                                                      Reed Smith Centre
                                                      225 Fifth Avenue
                                                      Pittsburgh, PA 15222
                                                      mlowenstein@reedsmith.com

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**