UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL 2724<br>16-MD-2724 |
| **THIS DOCUMENT RELATES TO**:<br><br>*The State of Connecticut, et al.*<br>  *v.*<br>*Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE<br><br>19-cv-2407-CMR |

**PLAINTIFF STATES' SUR-REPLY BRIEF IN SUPPORT OF
THEIR MEMORANDUM IN OPPOSITION TO
DEFENDANT PFIZER INC.'S MOTION TO DISMISS**

I.     **INTRODUCTION**

The allegations in the Plaintiff States' Amended Complaint (Dkt. No. 106, 19-cv-2407) are more than sufficient to plausibly infer that Defendant Pfizer Inc. ("Pfizer"), a branded drug company, committed antitrust misconduct and that piercing the corporate veil of Pfizer's generic subsidiary, Defendant Greenstone LLC ("Greenstone"), is warranted. Accordingly, Pfizer's Motion to Dismiss the Plaintiff States' Amended Complaint should be denied.

Similar to its Motion to Dismiss, Pfizer's Reply Brief has done little to engage with the facts that the Plaintiff States allege or analyze the legal claims that the Plaintiff States present. Thus, Pfizer cannot establish that the Plaintiff States' Amended Complaint fails to plead a plausible claim of liability, and its Motion to Dismiss should be denied.

Alternatively, the Plaintiff States should be permitted to amend their Complaint in order to plead additional facts uncovered during their ongoing investigation that further support their claims against Pfizer. The Plaintiff States are prepared to amend and will amend their Complaint to add new allegations showing that Pfizer engaged directly in antitrust misconduct. Moreover, such an Amendment by Plaintiff States would be the first modification of the Complaint's substantive arguments against Pfizer—in contrast, the November 2019 amendment was procedural.

II.    **ARGUMENT**

   A. **The Plaintiff States' Amended Complaint Meets the Legal Standard for Piercing the Corporate Veil Under the Alter Ego Theory**

As stated and explained in the Plaintiff States' Opposition Brief to Pfizer's Motion to Dismiss and reasserted here, the allegations in the Plaintiff States' Amended Complaint sufficiently meet the legal standard for piercing Greenstone's corporate veil.  Relevant law

1

requires the Plaintiff States to show that "(1) a parent corporation and the subsidiary corporation operated as a single functioning entity, and (2) the parent corporation used the subsidiary corporation to perpetrate injustice or unfairness." (Pl. Opp. Br. at 5) (citing *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528–31 (D. Del. 2008)). Pfizer's claims to the contrary lack merit.

1. *The Plaintiff States Plausibly Allege that Pfizer and Greenstone Operate as a Single Functioning Entity*

Viewed in light of the relevant veil-piercing factors, including "failure to observe corporate formalities" and "whether the corporation is merely a façade for the operations of the dominant stockholder," the Plaintiff States' allegations are more than sufficient to show that Pfizer and Greenstone operate as a single functioning entity. *Trinity Indus.*, 903 F.3d, at 365 (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484–85 (3d Cir. 2001)). Moreover, case law stipulates that "[n]o single factor is dispositive, and [courts] consider whether veil-piercing is appropriate in light of the totality of the circumstances." *Id. See also Kaplan v. First Options, Inc.*, 19 F.3d 1503, 1522 (3d Cir. 1994) ("alter ego status is determined by conduct of the parties that is material to the dispute at hand.").

In the instant case, the allegations in the Plaintiff States' Amended Complaint indicate that there are viable claims that Pfizer and Greenstone disregarded corporate formalities, which involves extensive consolidation of assets, and that Greenstone is merely a facade for Pfizer's operations, which involves the parent corporation exerting significant control over the subsidiary's operations and finances. (Pl. Opp. Br. at 6–10) (citing *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469, 472–73 (D. Del 2010)). Such allegations include: Greenstone operates out of Pfizer's campus at Peapack, New Jersey; the majority of Greenstone's employees are also employees of Pfizer's Essential Health Division; Greenstone's employees rely on Pfizer for financial analysis, human resources, and employee benefits services; Pfizer participates in and

controls Greenstone's business operations, including the marketing and sale of generic drugs; Pfizer, acting through Greenstone, communicated, conspired, and coordinated with generic drug manufacturers to allocate customers and markets, fix prices, and rig bids for Azithromycin Oral Suspension, Azithromycin Suspension, Cabergoline, Fluconazole Tablets, Medroxyprogesterone Tablets, Oxaprozin Tablets, Penicillin VK Tablets, Piroxicam, and Tolterodine Tartrate; and, more specifically, the General Manager of Greenstone asked permission from a senior Pfizer executive to raise the prices for Azithromycin Oral Suspension, Azithromycin Suspension, and Medroxyprogestrone Tablets—which was granted. (*Id*. at 1–3, 7–13) (citations omitted).

Pfizer, nevertheless, mischaracterizes these allegations as "bare-bone[s]" and insufficient to diminish their validity under an analysis of Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def.'s Reply Br. at 1–2, 6, 9). In so doing, Pfizer misapplies the Rule 12(b)(6) pleading standard articulated by the Supreme Court whereby "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . ." and that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). Here, the Plaintiff States' allegations are neither bare-bones nor insufficient; rather, they provide enough factual content to show that Pfizer and Greenstone operate as a single functioning entity.

Additionally, Pfizer argues that "[t]he States' entirely conclusory allegations that 'Pfizer, *acting through Greenstone*, called, text messaged, and sent emails to manufacturers of generic drugs to commit antitrust misconduct . . . ." are not supported by any facts. (Def.'s Reply Br. at 7) (emphasis in original). An examination of the Plaintiff States' Amended Complaint, however,

3

shows that Pfizer is wrong. The Plaintiff States illustrate, throughout their Amended Complaint, how Pfizer used Greenstone to communicate, conspire, and coordinate with generic drug manufacturers to allocate customers and markets, fix prices, and rig bids for Azithromycin Oral Suspension, Azithromycin Suspension, Cabergoline, Fluconazole Tablets, Medroxyprogesterone Tablets, Oxaprozin Tablets, Penicillin VK Tablets, Piroxicam, and Tolterodine Tartrate. (Am. Compl. ¶¶ 299–328, 761–68, 950–53, 1231–37, 1336–44). Pfizer seems to have ignored these specific facts. Thus, the Plaintiff Stares have provided ample support for their allegations against Pfizer.

2. *The Plaintiff States Plausibly Allege that Pfizer Used Greenstone's Corporate Form to Perpetrate Injustice or Unfairness*

The Plaintiff States' allegations are more than sufficient to allege that Pfizer misused Greenstone's corporate form to perpetrate injustice or unfairness. Indeed, as noted above, the Plaintiff States describe in detail how Pfizer acted through Greenstone to commit antitrust misconduct with respect to Azithromycin Oral Suspension, Azithromycin Suspension, Cabergoline, Fluconazole Tablets, Medroxyprogesterone Tablets, Oxaprozin Tablets, Penicillin VK Tablets, Piroxicam, and Tolterodine Tartrate. (*Id*.). Because Pfizer improperly used Greenstone's corporate form to violate the antitrust laws, the prices for generic drugs purchased by consumers significantly increased—which Pfizer financially benefited from. (*Id*. at ¶¶ 1236, 1343). Notwithstanding, Pfizer incorrectly argues that the Plaintiff States' allegations "have nothing to do with an asserted abuse of Greenstone's corporate form." (Def.'s Reply Br. at 8).

Under Delaware law, "the underlying cause of action does not supply the necessary fraud or injustice." *Mobile Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 & n.15 (D. Del. 1989). A such, "the law requires that fraud or injustice be found in the defendants' use of the corporate form." *Id*. (citing *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967) (footnote omitted)).

4

In the instant case, the Plaintiff States have unequivocally provided straightforward allegations that Pfizer used Greenstone's corporate form to commit antitrust misconduct in the generic pharmaceutical industry—causing harm to consumers by forcing them to pay significantly increased prices for generic drugs and which Pfizer financially benefited from. (Am. Compl. ¶¶ 1236, 1343). Thus, the Plaintiff States have provided tangible evidence to support the piercing of Greenstone's corporate veil.

### B. The Plaintiff States' Amended Complaint Plausibly Alleges that Pfizer Committed Independent Antitrust Misconduct

To reiterate and reaffirm what the Plaintiff States provided in their Opposition Brief to Pfizer's Motion to Dismiss, the allegations in the Plaintiff States' Amended Complaint sufficiently allege that Pfizer directly participated in and was fully aware of the antitrust misconduct in the generic pharmaceutical industry. (Pl. Opp. Br. at 12–13) (citations omitted). Specifically, the Plaintiff States allege that the General Manager of Greenstone sought and received permission from a senior Pfizer executive to raise the prices for Azithromycin Oral Suspension, Azithromycin Suspension, and Medroxyprogestrone Tablets—which was granted. (Am. Compl. ¶ 762). In making such a request, the General Manager of Greenstone explained the strategy behind the price increase— "socializ[ing]" Pfizer to Greenstone's intention to participate in a larger wave of price increases for generic drugs. (*Id*. at ¶ 761). Thus, despite Pfizer's attempts to claim to the contrary, the Plaintiff States have alleged—in detail—that Pfizer independently participated in and was fully aware of antitrust misconduct in the generic pharmaceutical industry.

5

### C. The Allegations in the Plaintiff States' Amended Complaint Should Not Be Dismissed with Prejudice

For all the forgoing reasons, the dismissal of Plaintiff States' Amended Complaint is not warranted. However, if this Court find otherwise, the Plaintiff States should be permitted to amend their Complaint in order to plead additional facts uncovered during their ongoing investigation that supports the claims against Pfizer.[1]

As a general matter, "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative amendment unless such an amendment would be inequitable or futile." *Gordon v. Pearson Educ., Inc.*, 85 F. Supp. 3d 813, 824 (E.D. Pa. 2015) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Indeed, "[d]ismissal without leave to amend is justified only on grounds of bad faith, undue delay, prejudice, and futility. *Id* (citing *Alston*, 363 F.3d, at 236).

Pfizer disparages the Plaintiff States' ability to provide "any additional allegations that could state a claim against Pfizer." (Def.'s Reply Br. at 2). Specifically, Pfizer criticizes the Plaintiff States' identification of Defendant Jill Nailor, the Senior Director of Sales and Nation Accounts at Greenstone and the individual who was directing and/or participating in the collusive conduct, as an employee of Pfizer and as being listed in Pfizer's organizational charts. (*Id*. at 10 & n.5). In so doing, Pfizer fails to acknowledge how Jill Nailor—an employee of Pfizer and Greenstone—facilitated Pfizer's participation in the antitrust misconduct pervading the generic pharmaceutical industry. (Pl. Opp. Br. at 9 n.3). Simply put, Jill Nailor's role in the illicit schemes illustrates how Pfizer participated in and directed Greenstone's business operations, including the marketing and sale of generic drugs. (*Id*. at 9) (citations omitted).

---

[1] The Plaintiff States' investigation of the antitrust misconduct pervading the generic pharmaceutical industry is still ongoing, and the Plaintiff States have advised this Court that they plan to file at least one additional Complaint with respect to what they are investigating. (Pl. Opp. Br. at 15) (citing Am. Compl. ¶ 7) (footnote omitted).

In addition to the example listed above, the Plaintiff States, if necessary, are prepared to allege, among other things, that:

- Pfizer performs many of the essential business functions for Greenstone that an independent corporate entity would typically perform on its own, including but not limited to: (1) financial and sales analysis, (2) business technology, (3) customer service, (4) legal, (5) intellectual property, (6) supply chain, (7) human resources, and (8) employee benefits.

- Most, if not all, of Greenstone's employees are actually employed by Pfizer. Importantly, the two primary individuals identified in the Plaintiff States' Amended Complaint as having conspired with competitors on behalf of Pfizer and Greenstone—Defendants Jill Nailor and Robin Hatosy—are Pfizer employees, received their W-2 Wage and Tax Statements directly from Pfizer, received shares of Pfizer stock as compensation for their work, were reimbursed and/or compensated by Pfizer through its account payable system for membership in trade associations, used Pfizer cell phones and/or iPads, and used Pfizer teleconference and Webex services to conduct their work.

- Jill Nailor received her regular performance evaluations directly from Pfizer and participated in a Pfizer corporate management program.

- During the Relevant Time Period, Greenstone has not had its own President, Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, Chief Commercial Officer or any Vice Presidents. The highest-ranking position at Greenstone has been the General Manager, a position held by a Pfizer employee who reports directly to higher-level executives at Pfizer.

- Pfizer operated with multiple business units, one of which was responsible for overseeing the marketing and sale of established products, including the generic drugs sold by Greenstone. Greenstone "employees" were part of this Pfizer unit and were included on Pfizer's organizational chart, showing that Greenstone was acting as an internal division within Pfizer.

- Greenstone promotes itself publicly as a marketing or distribution wing of Pfizer, specifically adopting the Pfizer logo on its marketing materials.

- Greenstone's internal training and marketing documents regularly carry Pfizer's trademarked logo and brand name.

- Pfizer is directly involved in the generics business and extensively evaluates generic competitors, price erosion in the generic industry, and other strategic issues on behalf of Greenstone.

- Greenstone and Pfizer management regularly coordinate on strategy, and communicate about concepts demonstrating Pfizer's awareness of the industry-wide agreement regarding fair share, as well as following other competitors' price increases in particular generic drug markets.

- Pfizer employees work directly with the United States Food and Drug Administration on Greenstone's behalf to obtain approval for the drugs that Greenstone sells.

- Pfizer performs all financial analysis, sales reports, revenue projections, and other finance functions for Greenstone.

- In every important respect, Pfizer directly controls the decision-making of Greenstone. Greenstone does not even have the authority to implement its own price increases without first obtaining approval from Pfizer.

These recently discovered facts, combined with the existing allegations in the Plaintiff States' Amended Complaint, show that Greenstone is the alter ego of Pfizer. As such, allowing Plaintiff States to amend their complaint would not be futile and strongly weighs in favor of such an amendment if the Court determines its current claims are insufficient as to Pfizer. *See Gordon*, 85 F. Supp. 3d at 824 (explaining that a curative amendment is usually permitted unless it would be futile or unjust).

Pfizer also argues that "[t]he States are not entitled to a *third* attempt to keep Pfizer in this lawsuit." (Def.'s Reply Br. at 10) (emphasis in original). What Pfizer fails to acknowledge is that allowing the Plaintiff States to amend would be only the first time the substantive arguments relating to Pfizer are modified. In contrast, the November 2019 amendment consisted of procedural changes to add a number of additional states and territories as plaintiffs, and add one additional defendant.

Thus, taking the above into account, the Plaintiff States respectfully request that Pfizer's Motion to Dismiss be denied or alternatively be granted without prejudice and the Plaintiff States be permitted to amend and provide more specificity with respect to Pfizer's involvement in the alleged schemes.

### III. CONCLUSION

Based on the forgoing, the Plaintiff States respectfully submit that Pfizer has not established that the Plaintiff States' Amended Complaint fails to plead a plausible claim of liability. Thus, Pfizer's Motion to Dismiss should be denied.

                                                Respectfully submitted,

| | |
|---|---|
| STATE OF CONNECTICUT<br>WILLIAM TONG<br>ATTORNEY GENERAL | STATE OF OHIO<br>DAVE YOST<br>ATTORNEY GENERAL |
| By:   /s/ W. Joseph Nielsen<br>      Federal Bar No. ct20415<br>      Assistant Attorney General<br>      55 Elm Street<br>      P.O. Box 120<br>      Hartford, CT 06141-0120<br>      Tel: (860) 808-5040<br>      Fax: (860) 808-5391<br>      Joseph.Nielsen@ct.gov<br><br>*Liaison Counsel for the Plaintiff States* | By:   /s/ Edward J. Olszewski<br>      Edward J. Olszewski<br>      Matthew K. McKinley<br>      Robert J. Yaptangco<br>      Assistant Attorneys General<br>      150 East Gay Street, 22nd Floor<br>      Columbus, OH 43215<br>      Tel: (614) 466-4328<br>      Fax: (866) 533-7140<br>      edward.olszewski@ohioattorneygeneral.gov<br>      matthew.mckinley@ohioattorneygeneral.gov<br>      robert.yaptangco@ohioattorneygeneral.gov |

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of February, 2020, I caused Plaintiff States' Sur-Reply Brief Supporting their Memorandum of Law in Opposition to Defendant Pfizer Inc.'s Motion to Dismiss to be filed with the Clerk of Court of the United States District Court for the Eastern District of Pennsylvania using the ECF system which will serve a copy on all interested parties registered for electronic filing, and is available for viewing and downloading from the ECF system.

/s/ Edward J. Olszewski
Edward J. Olszewski
Assistant Attorney General
