## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br>**16-MD-2724**<br><br>**HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:**<br><br>***THE STATE OF CONNECTICUT, et al. v.***<br>***TEVA PHARMACEUTICALS USA, INC., et al.*** | **Civil Action No.: 19-cv-2407-CMR** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BRECKENRIDGE PHARMACEUTICAL, INC.'S MOTION TO DISMISS THE OCTOBER 31, 2019 STATE ATTORNEYS GENERAL AMENDED COMPLAINT**

**FILED WITH REDACTIONS – PUBLIC VERSION**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................. 4

LEGAL STANDARD ........................................................................................... 8

ARGUMENT ...................................................................................................... 12

I.      THE STATES DO NOT ALLEGE THAT BRECKENRIDGE AGREED TO FIX
        THE PRICES FOR CYPROHEPTADINE OR ENA ................................................ 12

        A.      The States Fail to Allege that Breckenridge and Teva Engaged in Parallel
                Conduct ................................................................................................. 13

        B.      The States Fail to Allege Sufficient Facts to Support Any Plus Factors ............. 17

II.     THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
        PREJUDICE AS TO BRECKENRIDGE ............................................................... 23

CONCLUSION ................................................................................................... 23

**FILED WITH REDACTIONS – PUBLIC VERSION**

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................9

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999) ..........................................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................3, 9, 16

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
    985 F. Supp. 2d 612 (S.D.N.Y. 2013) ...........................................................................11

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) .......................................................................................................16

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) .....................................................................................10, 13

*In re Chocolate Confectionary Antitrust Litig.*,
    999 F. Supp. 2d 777 (M.D. Pa. 2014), *aff'd*, 801 F.3d 383 (3d Cir. 2015) .....................13, 16

*In re Flat Glass Antitrust Litig.*,
    385 F.3d 350 (3d Cir. 2004) .......................................................................11, 15, 16, 19

*In re Generic Pharm. Pricing Antitrust Litig.*,
    338 F. Supp. 3d 404 (E.D. Pa. 2018) .............................................................. *passim*

*In re GSE Bonds Antitrust Litig.*,
    396 F. Supp. 3d 354 (S.D.N.Y. 2019) ...........................................................................12

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010) .................................................................................3, 10, 11

*In re Interest Rate Swaps Antitrust Litig.*,
    261 F. Supp. 3d 430 (S.D.N.Y. 2017) ...........................................................................12

*Juan v. Sanchez*,
    339 F. App'x 182 (3d Cir. 2009) ....................................................................................23

*Just New Homes, Inc. v. Beazer Homes*,
    293 F. App'x 931 (3d Cir. 2008) ....................................................................................20

**FILED WITH REDACTIONS – PUBLIC VERSION**

*Kleen Prods. LLC v. Int'l Paper*,
  276 F. Supp. 3d 811 (N.D. Ill. 2017), *aff'd sub nom. Kleen Prods. LLC v.
  Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) ............................................................11, 19

*Lorenz v. CSX Corp.*,
  1 F.3d 1406 (3d Cir. 1993).................................................................................................23

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) ...................................................................................9, 16, 18

*In re Pa. Title Ins. Antitrust Litig.*,
  648 F. Supp. 2d 663 (E.D. Pa. 2009) ...................................................................................12

*Parker Auto Body Inc. v. State Farm Mut. Auto. Ins. Co.*,
  171 F. Supp. 3d 1274 (M.D. Fla. 2016)............................................................................14, 20

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*,
  998 F.2d 1224 (3d Cir. 1993)..............................................................................................11

*In re Processed Egg Prods. Antitrust Litig.*,
  821 F. Supp. 2d 709 (E.D. Pa. 2011) ...........................................................................9, 11, 21

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
  113 F.3d 405 (3d Cir. 1997)................................................................................................7

*Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*,
  738 F. Supp. 2d 505 (D. Del. 2010)..................................................................................15, 21

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
  873 F.3d 185 (3d Cir. 2017)......................................................................................9, 13, 15, 16

*Wash. Cty. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
  328 F. Supp. 3d 824 (N.D. Ill. 2018) ...............................................................................16, 20

*Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.*,
  No. 00 CIV. 5663, 2001 WL 1468168 (S.D.N.Y. Nov. 19, 2001) .........................................16

*In re Zinc Antitrust Litig.*,
  155 F. Supp. 3d 337 (S.D.N.Y. 2016)...............................................................................12, 19

**Statutes**

Sherman Act, 15 U.S.C. § 1 ...............................................................................................11, 12

**FILED WITH REDACTIONS – PUBLIC VERSION**

## PRELIMINARY STATEMENT

There is simply no basis for the States to have named Breckenridge Pharmaceutical, Inc. ("Breckenridge") as a defendant in their May 10, 2019 Complaint (or in the substantively identical now-operative October 31, 2019 Amended Complaint).  At no time have the States (or any regulatory entity or congressional body) conducted an investigation of Breckenridge related to claims of price fixing or market allocation.  Nor have the States (or any regulatory entity or congressional body) requested from Breckenridge any information related to any such claims.  Nor have the States (or any regulatory entity or congressional body) requested from Breckenridge a single interview of any Breckenridge personnel related to any such claims.  In fact, prior to filing the Complaint, the States never even considered a single document produced by Breckenridge — simply because they had never requested any and therefore had none.  Nevertheless, the States included Breckenridge among the laundry list of defendants they named in their sweeping Amended Complaint, despite alleging no facts to support a plausible inference that Breckenridge entered into an anticompetitive agreement with anyone about any drugs, not even the only two (of the 114 that are the subject of the Amended Complaint) that Breckenridge sold, namely Estradiol Norethindrone Acetate tablets ("ENA") and Cyproheptadine HCL tablets ("Cyproheptadine").  This kind of overzealous pleading and unsound exercise of prosecutorial discretion should not be countenanced by the Court.

The States have chosen to expend taxpayer money to pursue claims against Breckenridge that are based on allegations rooted in rank speculation and supported only by multiple layers of implausible inferences.  The only allegations in the Amended Complaint that concern Breckenridge are those in relation to its purported participation in a price fixing agreement with

Teva Pharmaceuticals USA, Inc. ("Teva")[1] that are based merely on a handful of telephone calls between Breckenridge personnel and Teva personnel that occurred roughly around the same period of time as increases on prices of two drugs that Teva and Breckenridge each sell (i.e., ENA and Cyproheptadine).  Specifically, the Amended Complaint alleges that Breckenridge announced a wholesale acquisition cost ("WAC") price increase for ENA and Cyproheptadine on November 14, 2013, and that five months later, in April of 2014, Teva implemented a WAC price increase for those same two products to match Breckenridge's WAC prices.  Consistent with standard industry practice, Breckenridge's WAC prices had been published in industry press at the time of the November 2013 price increases, and thus, had been widely available to generic pharmaceutical companies (including Teva) for five months before Teva raised its prices on those two products.  Accordingly, Teva's WAC price increases following the published Breckenridge WAC prices does not reflect any agreement between the two companies, but rather is nothing more than legal and economically sound follow-the-leader pricing between the only two suppliers of those two products.

Notably, the Amended Complaint fails to allege any facts that would support a finding of an agreement between Breckenridge and Teva regarding these two products.  Nothing whatsoever is alleged about the content of any telephone call that Breckenridge personnel allegedly participated in.  Nor is there a single document or factual allegation that reflects the existence of any unlawful agreement not to compete entered into by Breckenridge with Teva or anyone else.[2]  To the contrary, the States affirmatively allege that during the November 2013 to

---

[1] The Amended Complaint does not allege that Breckenridge engaged in any conduct related to market allocation.

[2] In contrast to Breckenridge, which has not been investigated at all, Teva has been the subject of significant investigatory scrutiny by the States during their multi-year long investigation; Teva has produced a substantial amount of documentary evidence ███████████████████████████████████████████████████████████.  *See* Am. Compl. ¶¶ 65-66; ████████████████████████████████████████████████

**FILED WITH REDACTIONS – PUBLIC VERSION**

April 2014 time lag between the two companies' price increases, Teva competed for customers

(successfully) against Breckenridge, thereby totally undermining — specifically as to

Breckenridge — the core theory of the Amended Complaint that the alleged price fixing

conspirators agreed with one another to implement price increases on the condition that their

competitors would "play nice in the sandbox" and refrain from stealing customers away from the

first mover before the price increase was matched by the price follower.

The Amended Complaint, which does not allege any direct evidence of an agreement

between Breckenridge and Teva to fix the prices of Cyproheptadine or ENA, also fails to

plausibly allege any circumstantial evidence of such an agreement.  The States do not plead

either of the required elements:  (1) parallel conduct by Breckenridge and Teva nor (2) "plus

factors" from which the Court may plausibly infer the existence of an agreement between

Breckenridge and Teva to fix the prices on those two products.  *Twombly* requires more than

some alleged telephone calls (*without any allegations as to what was discussed*) between

employees of two companies that occurred vaguely contemporaneously with the two suppliers'

WAC price increases, which occurred five months apart from one another, the latter of which

was implemented after the prior WAC price information had been publicly available for five

months.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If such allegations were

sufficient to survive a motion to dismiss, the requirements of *Twombly* and its progeny that

plaintiffs must plead factual allegations sufficient to support a plausible inference of conspiracy

*that are inconsistent with independent competitive conduct* would be rendered wholly

meaningless.  *See, e.g.*, *id.*; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323 (3d Cir.

---

███████████████████████████████████████████████████████

FILED WITH REDACTIONS – PUBLIC VERSION

2010).  For all of these reasons, as expanded upon herein, the Amended Complaint must be dismissed as to Breckenridge with prejudice.[3]

## BACKGROUND

On May 10, 2019, numerous State Attorneys General (the "States") filed a Complaint against many defendants, including Breckenridge, in the District of Connecticut (*Connecticut v. Teva Pharmaceuticals USA, Inc.*, No. 19-cv-710 (D. Conn.) (Dkt. No. 1) ("Complaint")).  That Complaint was subsequently transferred to the Eastern District of Pennsylvania and, on June 4, 2019, was consolidated into the existing *In re Generic Pharmaceuticals Pricing Antitrust Litigation* multi-district litigation (E.D. Pa. No. 16-MD-2724) ("MDL"), and docketed as Case No. E.D. Pa. 19-cv-02407.  On October 31, 2019, the States filed the Amended Complaint (Dkt. No. 106) that is the subject of this motion to dismiss.[4]  The substantive allegations as to Breckenridge, such as they are, did not change as a result of the amendment.

The Amended Complaint suggests that twenty pharmaceutical drug manufacturers, sellers and distributors, as well specific individuals employed by certain corporate defendants,[5] conspired to fix prices and/or allocate markets for approximately 114 generic pharmaceutical products.  As to Breckenridge, the Amended Complaint, at most, claims only that Breckenridge conspired with one other defendant, Teva, regarding only *two* of the 114 challenged products.  However, even as to these two products, the claims concerning this purported conspiracy

---

[3] Breckenridge is among the very few defendants for whom motions to dismiss remain pending that, if granted, would result in complete dismissal of all complaints on file in this MDL before May 2019 that name Breckenridge as a defendant.  When permitted to do so by the Court, Breckenridge intends to move to dismiss the follow-on complaints that have been filed since the States filed their May 2019 Complaint.

[4] As the Court knows, the States previously filed another complaint that was transferred into this MDL alleging claims centered around Heritage.  *See* Pl. States' Consolidated Am. Compl., *Connecticut v. Aurobindo Pharma USA, Inc.*, No. 17-cv-3768 (E.D. Pa.) (Dkt. No. 14).  Breckenridge is not named as a defendant in that case, nor in any of the follow-on private plaintiff cases to that earlier filed complaint by the States.

[5] No employees of Breckenridge are named as defendants.

FILED WITH REDACTIONS – PUBLIC VERSION

between Breckenridge and Teva teeter precariously on a few bald allegations that lack any content.  Moreover, the alleged conspiracy as to Breckenridge is implausible and inconsistent with the States' own allegations in the Amended Complaint.

The Amended Complaint attempts to allege that Breckenridge entered into an agreement with Teva to fix prices for two generic drugs:  Estradiol Norethindrone Acetate tablets ("ENA")[6] and Cyproheptadine HCL tablets ("Cyproheptadine").  *Id*. ¶¶ 540-41, 740, 745, 748-50, 797-803, 964-69, 1218-19, 1221-23.  The Amended Complaint alleges that Breckenridge increased its WAC prices for ENA and Cyproheptadine in November 2013,[7] and that Teva followed with its own WAC price increases for those two products five months later, in April 2014, to match Breckenridge's WAC prices.  *See id.* ¶¶ 745, 748-50, 797-803, 967-69.[8]  Without any factual support, the Amended Complaint concludes that the price increases *must have been* implemented as a result of an agreement allegedly reached between Breckenridge and Teva.

 It is crucial to note that, although the States allege that a necessary part of the price fixing conspiracy was the commitment between the co-conspirators that the price increase follower would not compete with, and take customers away from, the price increase leader during the time the price increase follower had a pricing advantage, i.e., lower prices, the States concede (as they must) that Teva actively competed with and took customers from Breckenridge

---

[6] Teva calls its ENA product Mimvey.  *See, e.g.*, Am. Compl. ¶ 803.

[7] "On November 14, 2013, Breckenridge increased its pricing on both Estradiol/Norethindrone Acetate Tablets ('Mimvey') and Cyproheptadine HCL Tablets."  *Id.* ¶ 798.

[8] The Amended Complaint alleges that Teva increased its price for ENA in July 2012, and concludes that it did so in coordination with Breckenridge based on an alleged telephone call on July 17, 2012 between Teva employee Defendant Rekenthaler and a Breckenridge employee (identified only by initials).  *See id.* ¶¶ 540-41.  Yet, the States do not allege what the supposed nature of the coordination was or what was discussed during the alleged telephone call in July of 2012.  It does not allege what the prices were before or after Teva's supposed ENA price increase.  Furthermore, the Amended Complaint does not even allege that Breckenridge raised its price for ENA at this time; in fact, it does not anything at all regarding Breckenridge's ENA pricing in 2012, nor does it connect the alleged Breckenridge November 2013 ENA price increase to any alleged Teva ENA price increase *sixteen months earlier*.

FILED WITH REDACTIONS – PUBLIC VERSION

following Breckenridge's price increase in November of 2013 through the time of its own price

increase in April of 2014.  Specifically, the Amended Complaint alleges that, following

Breckenridge's November 2013 price increase for ENA, "Teva sought to pick up a few [ENA]

customers to level the playing field – before raising its own prices to follow Breckenridge."  *Id.* ¶

802.[9]  Such competition is completely inconsistent with the States' theory regarding the alleged

anticompetitive agreement entered into between Teva and Breckenridge.[10]

As to Cyproheptadine, the Amended Complaint alleges that "Breckenridge had acquired

the ANDA for Cyproheptadine HCL Tablets in September 2013 from another manufacturer, and

immediately sought to raise the prices previously charged by the prior manufacturer as it began

to sell the product under its own label."  *Id.* ¶ 798 n.6.  The Amended Complaint further alleges

that "Teva had approximately 54% market share in a two-player market" and "Teva consistently

refused to bid or take on any additional market share [for Cyproheptadine] after the Breckenridge

increase."  *Id.* ¶ 801.  In an apparent attempt to support that allegation, the Amended Complaint

alleges that: (1) "on February 7, 2014, a customer gave Teva an opportunity to pick up new

business on Cyproheptadine," (2) when Defendant Patel (a Teva employee) heard this, she

allegedly called and spoke with a Breckenridge employee (identified only by initials) twice, and

(3) following those telephone calls, Defendant Patel allegedly sent an internal Teva email, also

dated February 7, 2014, stating: "Let's hold off on providing a bid.  We can provide a bid when

we are in a position to do so (post increase)."  *Id.* ¶ 801; *see also id.* ¶¶ 744, 749, 1076.  Merely

---

[9] At that time, only Teva and Breckenridge supplied generic ENA; branded ENA, which is sold under the name Activella®, had been implementing its own series of price increases during that period.

[10] If the Court were, nevertheless, to find these allegations sufficient to support an inference of anticompetitive agreement, a competitor would essentially be legally precluded from unilaterally implementing a price increase. Here, Breckenridge could not prevent a competitor (Teva) from matching its published WAC prices.  And for five months after Breckenridge's November 2013 WAC price increase, Teva competed on price to successfully take customers away before it ultimately matched the published WAC price increase that Breckenridge had been successfully able to implement.  *Id.*  These facts demonstrate a ***competitive***, not anticompetitive, dynamic.

**FILED WITH REDACTIONS – PUBLIC VERSION**

based on this alleged conduct by Teva to maintain more than a majority of the sales for Cyproheptadine (but stating no alleged conduct by Breckenridge other than implementation of the price increase itself) and two calls about which we know nothing, the States conclude that there *must have been* an agreement with Breckenridge regarding prices.

In an effort to try to support the conclusion that there must have been an agreement between Breckenridge and Teva, the Amended Complaint alleges that two Teva employees, Defendant Patel and Defendant Rekenthaler, had relationships with two senior sales executives at Breckenridge, "so Breckenridge was a prime candidate to coordinate pricing." *Id.* ¶ 797.[11] The Amended Complaint alleges that there were three telephone calls in October 2013 (two on October 14, 2013 and one on October 24, 2013). *Id.* ¶¶ 799, 966. The Amended Complaint alleges that on January 15, 2014, one Breckenridge employee (identified only by initials) spoke to Defendant Rekenthaler, and, as mentioned above, on February 7, 2014, a different Breckenridge employee spoke to Defendant Patel twice. *Id.* ¶¶ 799, 801, 968.

The Amended Complaint then alleges that, on April 4, 2014, nearly five months after Breckenridge's November 14, 2013 published WAC price increases, Teva "followed the Breckenridge price increases" by raising its own prices for ENA and Cyproheptadine "to exactly match Breckenridge's WAC price on both products." *Id*. ¶ 803; *see also id.* ¶ 967.[12] Thus, the

---

[11] The allegation that Teva thought Breckenridge was a "prime candidate to coordinate pricing" is unsupported by the Amended Complaint; out of the 114 drugs regarding which Teva is alleged to have coordinated prices, it only supposedly entered into an anticompetitive agreement with Breckenridge about ***two***, among the fewest of any of Teva's alleged co-conspirators according to the States.

[12] The Court need not accept as true any of the States allegations regarding the amount of Teva's alleged price increases for ENA and Cyproheptadine because they are internally contradictory. *See, e.g., Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (in affirming decision granting motion to dismiss, finding that the court was not required to accept as true internally contradictory allegations). *Compare* Am. Compl. ¶ 803 ("On April 4, 2014, . . . Teva increased the WAC price on Mimvey (Estradiol/Norethindrone Acetate Tablets) by ***26%*** and the WAC price on Cyproheptadine HCL Tablets by ***as much as 95%*** — to exactly match Breckenridge's WAC price on both products." (emphasis added)), *with id.* ¶ 967 ("On April 4, 2014, Teva followed the Breckenridge price increases on Mimvey Tablets (increasing the WAC pricing by ***over 100%***) and

**FILED WITH REDACTIONS – PUBLIC VERSION**

Amended Complaint affirmatively alleges that Breckenridge and Teva raised prices not in parallel, but at materially different times.

Apart from the allegations about an alleged agreement between Breckenridge and Teva, the Amended Complaint also contains scattered allegations about Breckenridge's supposed contacts with other generic pharmaceutical companies, including:  (1) allegations of some telephone calls at various times from September 2011 through August 2018 between certain Breckenridge employees with certain other employees of Teva and with employees of other defendants named in the Amended Complaint (*id.* ¶¶ 1063-64, 1067-69, 1075, 1077, 1079); (2) that Breckenridge was physically headquartered near other generic drug companies (*id.* ¶ 107); (3) that one unidentified Breckenridge executive attended an "industry dinner" in January 2014 (*id.* ¶ 108);[13] and (4) that "Defendants" attend various "industry trade shows, customer conferences and other similar events, to develop relationships and sow the seeds for their illegal agreements" and engage in regular additional communications with each other (*id.* ¶ 13; *see also id.* ¶¶ 102-05, 111-12).  Notably, there are no allegations regarding any conversations or illegal agreements entered into by Breckenridge with Teva (or any other defendant) at any of these events.

## **LEGAL STANDARD**

As the Court has already held, to plead an antitrust conspiracy claim, a plaintiff must allege the existence of (1) a contract, combination, or conspiracy that (2) imposes an unreasonable restraint on trade.  *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d

---

Cyroheptadine HCL Tablets (increasing the WAC pricing by **_over 90%_**), to match Breckenridge's WAC pricing on both products.  Teva raised prices even higher on its customer contracts." (emphasis added)).

[13] The Amended Complaint does not even allege that Teva or any executive of Teva — the only generic drug manufacturer with which Breckenridge is alleged to have conspired to fix prices — attended this dinner.

**FILED WITH REDACTIONS – PUBLIC VERSION**

404, 451 (E.D. Pa. 2018) (16-MD-2724, Dkt. No. 721, at 40) ("Dismissal Order") (citing cases). As to the conspiracy element, the "crucial question" is "whether the challenged anticompetitive conduct stems from independent decision or from an agreement." *Id.* (quoting *Twombly*, 550 U.S. at 553). Indeed, "a single firm's independent action, no matter how anticompetitive its aim, does not implicate § 1." *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 191 (3d Cir. 2017). Plaintiffs must allege the "who, did what, to whom (or with whom), where, and when" of the alleged agreement. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015) (internal citations omitted); *see also* Dismissal Order at 40-41.

To survive a motion to dismiss, a plaintiff must allege facts that "tend to rule out the possibility that the defendants were acting independently." *Twombly*, 550 U.S. at 553-54; *see also* Dismissal Order at 40. The complaint must "delineate[] to some sufficiently specific degree" that *each defendant* "purposefully joined and participated in the conspiracy." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011). In determining whether a complaint alleges "enough facts" to support the existence of an agreement that is *plausible rather than just conceivable*, the Court should consider context and "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also In re Musical Instruments*, 798 F.3d at 1194 (citing *Twombly* and holding that plaintiff must allege factual allegations that are "largely inconsistent with unilateral conduct [and] largely consistent with explicitly coordinated action"). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

Where, as here, the States lack direct evidence of a conspiracy, they must plead circumstantial evidence, which requires pleading *both* (1) parallel conduct among the allegedly conspiring defendants (here, Teva and Breckenridge), *and* (2) circumstantial evidence ("plus

FILED WITH REDACTIONS – PUBLIC VERSION

factors") from which the Court may plausibly infer that Breckenridge entered into an agreement

to fix prices with Teva.  *See* Dismissal Order at 44-45 (citing cases).  In order to allege parallel

conduct, a plaintiff must demonstrate that each defendant raised prices at approximately the same

time to approximately the same value.  *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228

(3d Cir. 2011) (affirming dismissal where "allegations fall far short of demonstrating parallel

behavior").

    In addition to having to allege the requisite parallel conduct, the States must plead plus

factors from which the existence of the alleged agreement can be inferred.  *See, e.g.*, Dismissal

Order at 55-56.  The Third Circuit has identified three relevant types of plus factors:  "(1)

evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that

the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy."

*Id.* at 58 (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 322 (internal quotation

omitted)).  Where, as here, the States allege an oligopolistic market, allegations showing the first

two factors, "motive" or "actions against self-interest," become unimportant because they merely

restate the *unremarkable fact that sellers in concentrated markets make decisions that take into

account the anticipated reaction of their competitors*.  *See* Dismissal Order at 57-58.  As such,

the Amended Complaint must plead "[e]vidence implying a traditional conspiracy."  *Id*. at 58.

"Evidence implying a traditional conspiracy consists of non-economic evidence that there was an

*actual, manifest agreement not to compete*, which may include proof that the defendants got

together and exchanged assurances of common action or otherwise adopted a common plan even

though no meetings, conversations, or exchanged documents are shown."  *Id.* (quoting *In re Ins.

Brokerage Antitrust Litig.*, 618 F.3d at 322 (internal quotation marks omitted) (emphasis added)).

In other words, "plus factors are, by definition, facts that 'tend[ ] to ensure that courts punish

FILED WITH REDACTIONS – PUBLIC VERSION

*concerted action* — an actual agreement — *instead of the unilateral, independent conduct of competitors*.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 323 (quoting *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004) (emphases added)).

In order to connect any communication to an alleged conspiracy, a plaintiff must specify *what was discussed* and by whom. *See, e.g.*, *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 618 (S.D.N.Y. 2013) (dismissing complaint because plaintiffs' failure to "specify who participated in these hypothetical discussions or agreements . . . falls well short of the line between possibility and plausibility of entitlement to relief") (internal quotations omitted).  It is not enough to allege that Breckenridge and Teva had an opportunity to conspire with each other.  *See* Dismissal Order at 58-59; *see also Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*, 998 F.2d 1224, 1235 (3d Cir. 1993).  Moreover, even contemporaneous communications with competitors and price increases are not enough to plead the existence of a conspiracy.  *See, e.g.*, *Kleen Prods. LLC v. Int'l Paper*, 276 F. Supp. 3d 811, 834 (N.D. Ill. 2017), *aff'd sub nom. Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) (holding that price announcements coinciding with trade association meetings did not create an inference of an antirust conspiracy because "something more than temporal proximity is required to infer conspiracy").

Courts routinely dismiss a particular defendant from a case in which the plaintiff alleges a violation of Section 1 of the Sherman Act because the allegations as to that particular defendant are insufficient to state a claim.  *See, e.g.*, Dismissal Order at 60-61, 70; *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d at 746-47 (dismissing Section 1 conspiracy claims against certain defendants for whom plaintiffs did "not directly allege[] that any of [those defendants] individually agreed to or participated in the conspiracy" and finding there was "an absence of

11

specific factual allegations in the SAC to connect each (or any) of [those particular defendants] directly to the conspiracy"); *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 689 (E.D. Pa. 2009) (dismissing Section 1 conspiracy claims against certain defendants as to whom "Plaintiffs have not sufficiently alleged participation in the conspiracy"); *see also In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 360, 363-65, 368 (S.D.N.Y. 2019) (dismissing antitrust claims against defendants against whom there were no "allegations relating to specific actions," while permitting claims to go forward against defendants identified in transcripts of direct seemingly anticompetitive communications with competitors); *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 484 (S.D.N.Y. 2017) (dismissing Section 1 conspiracy claims against certain defendants where the allegations merely stated those particular defendants "communicated with representatives of the [other defendants] in the late spring and early summer of 2009" and that "[a]s a result of their discussions" the parties "agreed to a détente") (internal quotation marks omitted); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016) (dismissing claims because plaintiffs had "resort[ed] to . . . group pleading").

## ARGUMENT

## I.   THE STATES DO NOT ALLEGE THAT BRECKENRIDGE AGREED TO FIX THE PRICES FOR CYPROHEPTADINE OR ENA

The Amended Complaint does not allege any direct evidence of an agreement between Breckenridge and Teva (or any other generic pharmaceutical company) to fix the prices of Cyproheptadine or ENA (or any other generic drug).  *See* Dismissal Order at 41-44 (recognizing that no direct agreement was alleged other than as to the two products implicated by the DOJ plea agreements).  Therefore, to survive this motion to dismiss, the States must plausibly allege circumstantial evidence of an agreement between Breckenridge and Teva to fix the prices of ENA or Cyproheptadine by adequately pleading (1) parallel conduct by Breckenridge and Teva

FILED WITH REDACTIONS – PUBLIC VERSION

*and* (2) "plus factors" from which the Court may plausibly infer the existence of an agreement between Breckenridge and Teva to fix prices on those two products. *Id.* at 44-45 (citing cases). The States completely fail to satisfy both of these pleading requirements.

> ### A.    <u>The States Fail to Allege that Breckenridge and Teva Engaged in Parallel Conduct</u>

The States fail to plausibly allege parallel pricing because they allege that Breckenridge and Teva increased their prices at notably different times. *See, e.g.*, *Burtch*, 662 F.3d at 228 (holding plaintiffs had not alleged parallel conduct when defendants acted differently and at different times); *In re Chocolate Confectionary Antitrust Litig.*, 999 F. Supp. 2d 777, 787 (M.D. Pa. 2014), *aff'd*, 801 F.3d 383 (3d Cir. 2015) (price increases must be "reasonably proximate in time and value"); *cf. Valspar*, 873 F.3d at 196 ("[I]t is generally unremarkable for the pendulum in oligopolistic markets to swing from less to more interdependent and cooperative.") (internal quotations omitted). Breckenridge's price increases for ENA and Cyproheptadine are alleged to have occurred in November 2013 (Am. Compl. ¶ 798), while Teva's price increases for those products are alleged to have occurred five months later, in April 2014. *Id.* ¶ 803.

In its Dismissal Order, under similar (but less extreme) facts, the Court held that plaintiffs failed to allege parallel pricing as to Teligent regarding Econazole. In dismissing plaintiffs' claims against Teligent, the Court considered "the context of the timing of Teligent's Econazole price increases (which are alleged to have peaked *several months* after those instituted by either Perrigo or Taro)." Dismissal Order at 61 (emphasis added). The allegations in Econazole were that Teligent implemented its price increases two months after the preceding increases, and two months before the only subsequent alleged price increase (*see id.* at 53 (citing *Ahold USA, Inc. v. Perrigo New York, Inc.*, No. 16-EC-27241 (E.D. Pa.) (Dkt. No. 65) Consolidated Class Action Compl. ¶ 63; *West Val Pharmacy v. Perrigo New York, Inc.*, No. 16-EC-27243 (E.D. Pa.) (Dkt.

**FILED WITH REDACTIONS – PUBLIC VERSION**

No. 2) Consolidated Class Action Compl. ¶ 65)), rendering them insufficiently temporally proximate to support a finding of parallel conduct.  Dismissal Order at 61.  In contrast, the States allege a substantially greater passage of time here between the supposed Breckenridge and Teva price increases, since Breckenridge's price increases allegedly occurred nearly *five months* before Teva's price increases.  *See supra* at 2, 5, 7, 13.  Such a time difference renders the increases temporally non-parallel.  *See also Parker Auto Body Inc. v. State Farm Mut. Auto. Ins. Co.*, 171 F. Supp. 3d 1274, 1286 (M.D. Fla. 2016) (granting motion to dismiss where competitors matched a price increase "over the next month or two").  This conclusion is bolstered by considering the context of the price increases, as the Court has correctly recognized that it must.  *See* Dismissal Order at 61.  Particularly as to ENA, during that lengthy five-month period, as the Amended Complaint itself alleges, Teva competed successfully on price and took customers away from Breckenridge.  Am. Compl. ¶ 802.  This context demonstrates that five months is a material time difference in this industry regarding these products, as it was a period of time during which the supposed co-conspirators, according to the States' own allegations, were actively competing against one another, both on price and for customers.[14]

Assuming for the purposes of this motion to dismiss that the allegation that Teva's increased WAC prices "matched" those of Breckenridge was true, such WAC price "matching" would be totally unremarkable because Breckenridge's WAC prices had been published at the time of its price increase announcement in November of 2013 through various trade reporting

---

[14]  Thus, the much greater *five-month time lag* between the alleged price increases here, particularly given the allegations of competition between Breckenridge and Teva (the supposed co-conspirators) during that time, conclusively determines that these price increases were not sufficiently contemporaneous to support a finding of parallel pricing.  *See, e.g.*, Dismissal Order at 60-61.  Any other finding would result in a holding that would render a generic pharmaceutical company liable under the antitrust laws for implementing any price increase, regardless of interim vigorous competition, as long as the competitor at some undefined time in the future chose to match that increase.  This is indisputably not the law.

FILED WITH REDACTIONS – PUBLIC VERSION

services (as is the case with all generic pharmaceutical WAC price increase announcements) and was therefore available to the industry, including Teva, for nearly five months prior to Teva's WAC price increase.  Moreover, Breckenridge and Teva are alleged to have been the only suppliers of ENA and Cyproheptadine at the time of Breckenridge's alleged 2013 price increases and Teva's alleged 2014 price increases.  *See* Am. Compl. ¶ 745.  That Teva may have increased its prices to match a successfully implemented price increase by its only competitor for that product, five months after the implementation of that increase, is completely consistent with a unilateral economically-sound business strategy known as follow-the-leader pricing.  *See, e.g.*, *In re Flat Glass*, 385 F.3d at 359-60 (explaining that interdependent firms in an oligopolistic market could independently decide to follow a competitor's price increase); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 122 (3d Cir. 1999) ("In an oligopolistic market, meaning a market where there are few sellers, interdependent parallelism can be a necessary fact of life but be the result of independent pricing decisions."); *Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*, 738 F. Supp. 2d 505, 510, 515 (D. Del. 2010) (granting motion to dismiss claims alleging "lawful unilateral and independent conduct of competitors, where [defendant-competitors'] decisions are interdependent").

Furthermore, the Amended Complaint alleges that, as to Cyproheptadine, Breckenridge was a new entrant when it announced its price in November 2013.[15]  A decision by a new entrant selling a generic pharmaceutical product with only one competing supplier to test a price increase is just as consistent with unilateral conduct as it is with conspiratorial conduct.  *See, e.g.*, *Valspar*, 873 F.3d at 191-92 (a competitor that tests price increases in an oligopoly is acting

---

[15] Am. Comp. ¶ 798 n.6 ("Breckenridge had acquired the ANDA for Cyproheptadine HCL Tablets in September 2013 from another manufacturer, and immediately sought to raise the prices previously charged by the prior manufacturer as it began to sell the product under its own label.").

FILED WITH REDACTIONS – PUBLIC VERSION

rationally, so such increases do not support a finding of conspiracy) (citing *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993)); *In re Musical Instruments*, 798 F.3d at 1194 (citing *Twombly* and holding plaintiff must allege factual allegations that are "*largely inconsistent with unilateral conduct* [and] largely consistent with explicitly coordinated action") (emphasis added); *see also In re Flat Glass*, 385 F.3d at 359-60 ("'oligopolistic rationality' cannot only forestall rivalrous price reductions, it can also provide for price increases through, for example, price leadership").  Thus, these pricing allegations as to Cyproheptadine and ENA weigh against any inference of parallel pricing and reflect conduct that is consistent with unilateral, competitively sound decision-making.

Importantly, the States do not allege a structural shift in how Breckenridge and Teva priced their drugs, but instead, only allege that Teva increased its ENA and Cyproheptadine WAC prices to match the previously announced Breckenridge WAC prices.  Am. Compl. ¶ 803. Courts regularly hold that mere pricing increases, even if done in parallel, are insufficient to support a conspiracy claim.  *See, e.g.*, *Valspar*, 873 F.3d at 193 ("evidence of conscious parallelism cannot alone create a reasonable inference of a conspiracy") (quoting *In re Chocolate Confectionary Antitrust Litig*., 801 F.3d 383, 398 (3d Cir. 2015)); *Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 CIV. 5663, 2001 WL 1468168, at *14 (S.D.N.Y. Nov. 19, 2001) (holding that uniformity of pricing practices "does not permit an inference of a conspiracy"). Indeed, in dismissing plaintiffs' antitrust conspiracy claim in *Washington County Health Care*, the court emphasized that "[t]he absence of a structural shift is significant because anomalous price hikes in highly concentrated industries are often the result of typical, non-conspiratorial market behavior."  *Wash. Cty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, 328 F. Supp. 3d 824, 842 (N.D. Ill. 2018).  Accordingly, based on the pricing allegations in the Amended Complaint,

**FILED WITH REDACTIONS – PUBLIC VERSION**

the Court cannot find that Breckenridge and Teva engaged in the requisite parallel pricing for ENA or Cyproheptadine.

B.    **The States Fail to Allege Sufficient Facts to Support Any Plus Factors**

The States also completely fail to allege any required "plus factors."  As discussed above and as this Court has previously held, the critical plus factor in this context is evidence implying the existence of a traditional conspiracy.  *See* Dismissal Order at 57-58; *see supra* at 10.  The Amended Complaint is utterly lacking in any showing of a requisite plus factor.

In their unsuccessful attempt to demonstrate the requisite plus factors, the States offer, at best, only allegations regarding an opportunity to conspire that are insufficient.  For example, the States allege six telephone calls between employees of Breckenridge and employees of Teva that were supposedly in furtherance of the alleged agreement to fix prices, but, despite many years of investigation and over seven million documents produced to the States — including substantial productions by Teva — as part of that investigation, the Amended Complaint does not allege a single fact about what was discussed on those telephone calls.  *See id.* ¶¶ 565-66, 40, 744, 749, 799, 801, 966-69.[16]  Furthermore, these alleged telephone calls were not close in time to the alleged price increases.  The Amended Complaint contends that three telephone calls in October 2013 (two on October 14, 2013 and one on October 24, 2013) were for the purpose of coordinating a price increase that allegedly occurred almost one month later, on November 14, 2013.  *Id.* ¶¶ 799, 966.  And the Amended Complaint alleges that one telephone call on January

---

[16] Other allegations in the Amended Complaint are even less detailed and are also totally unconnected to the claims asserted against Breckenridge.  *See, e.g., id.* ¶¶ 1063-64, 1067-69, 1075, 1077, 1079 (allegations of telephone calls between certain Breckenridge employees and employees of Teva and other generic drug manufacturers); *id.* ¶ 13 ("Defendants" allegedly attended industry events); *id.* ¶ 108 (one unnamed Breckenridge executive allegedly attended one "industry dinner" in 2014); *see also id.* ¶ 107 (Breckenridge was headquartered nearby other generic drug manufacturers); *but cf. id.* ¶ 35 (contradicted by allegation that Breckenridge "is a Florida corporation with its principal place of business at 15 Massirio Drive, Berlin, Connecticut").  Accordingly, none of these supports a finding of any adequately pleaded plus factor.

**FILED WITH REDACTIONS – PUBLIC VERSION**

15, 2014 and two telephone calls on February 7, 2014 were for the purpose of coordinating a price increase that occurred either months before, on November 14, 2013, or months later, on April 4, 2014.  *Id*. ¶¶ 799, 801, 968.  As to the alleged telephone calls between certain Breckenridge employees with employees of other generic drug companies throughout the seven-year period addressed by the Amended Complaint, the States do not allege anything at all about their substance, merely that they happened.  *See id*. ¶¶ 1063-64, 1067-69, 1075, 1077, 1079.

As the sole documentary support for a supposed inference of conspiracy as to Breckenridge, the Amended Complaint asserts that, following two alleged telephone calls on February 7, 2014 between Teva employee Defendant Patel and a Breckenridge employee (*id*. ¶¶ 749, 801), Defendant Patel allegedly sent an email internally at Teva stating: "Let's hold off on providing a bid.  We can provide a bid when we are in a position to do so (post increase)."  *Id*. ¶ 801.  But this document lacks sufficient detail to support any inference of a conspiracy with Breckenridge.  First, there is no indication in the quoted email regarding the product to which the potential bid refers.  Second, there is no reference to Breckenridge at all in the email.  Third, there is no indication that the Teva "increase" referenced in the email is related in any way to an *agreement with Breckenridge* to increase prices, or even whether it has anything at all to do with Breckenridge's alleged November 2013 price increases.  In other words, the alleged internal Teva email is entirely consistent with an independent decision by Teva to provide a bid on whatever product was being discussed when it chose to do so after it had increased its prices.  It simply does not support an inference of a conspiracy with Breckenridge.  *See, e.g.*, *In re Musical Instruments*, 798 F.3d at 1194 ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a § 1 violation.") (internal quotations omitted); *In re Flat Glass*, 385 F.3d at

18

359-60 (explaining that, in an oligopolistic market, a firm may independently legally decide to follow a competitor's price increase).

Moreover, the Amended Complaint's allegations about Teva's procompetitive behavior toward Breckenridge undermine any inference of alleged coordination.  Indeed, the Amended Complaint affirmatively alleges that, following Breckenridge's November 2013 price increases, Teva increased its share of sales for ENA by picking up multiple customers from Breckenridge. *Id*. ¶ 802.  Thus, the allegations as to the alleged six telephone calls do not provide evidence implying a traditional conspiracy or establish the existence of any plus factor.

In the States' alternative, but equally unsuccessful, effort to plead that a traditional conspiracy exists in which Breckenridge was involved, they generally allege that "Defendants" attend various industry trade shows and customer conferences throughout the year, in addition to so-called "Girls Night Out" and/or "Women in the Industry" meetings or dinners.  *See id*. ¶¶ 102-14.  The States, however, do not actually allege that *Breckenridge* attended such industry trade shows or conferences.[17]  These allegations fail on their face as conclusory and unsupported group pleading allegations.  *See In re Zinc Antitrust Litig.*, 155 F. Supp. 3d at 384 (dismissing claims because plaintiffs had "resort[ed] to . . . group pleading").  In any event, mere attendance at industry meetings and conferences is insufficient to support an inference that Breckenridge participated in any conspiracy, and similarly does not establish the existence of any plus factor. *See, e.g.*, *Kleen Prods.*, 276 F. Supp. 3d at 834.

---

[17] Because the Amended Complaint fails to assert any allegations whatsoever regarding any anticompetitive communication or agreement that supposedly occurred during the one dinner that some unidentified Breckenridge executive is alleged to have attended — at which no Teva employee is alleged to have been present (Am. Compl. ¶ 108) — this allegation certainly cannot even form the basis for any opportunity to have conspired with Teva, and is wholly insufficient to support the existence of any plus factor.  *See, e.g.*, *Kleen Prods.*, 276 F. Supp. 3d at 834.

FILED WITH REDACTIONS – PUBLIC VERSION

Consistent with this Court's prior Dismissal Order, the allegations in the Amended Complaint are insufficient to allege the required plus factors as to Breckenridge.  In dismissing Teligent from the Econazole cases, the Court held that plaintiffs pleaded insufficient plus factor allegations against Teligent.  *See* Dismissal Order at 60-61, 70.  Specifically, the Court found that the trade association plus factor allegations were insufficient to demonstrate that "Teligent had an opportunity to conspire with the other econazole Defendants."  *Id.* at 61 (emphasis added).  Here, the Court should come to the same conclusion with respect to Breckenridge.

The States' allegations against Breckenridge are closely aligned with (but even less detailed than) the allegations against Teligent that were previously found to be insufficient by the Court:

- As was the case with Teligent, Breckenridge is not specifically alleged to have regularly attended industry conferences, trade shows, or meetings.  *See* Am. Compl. ¶¶ 13, 102-05; Dismissal Order at 60-61.

- As was the case with Teligent, Breckenridge is not specifically alleged to have engaged in the so-called "Girls Night Out" or "Women in the Industry" meetings.  *See* Am. Compl. ¶¶ 13, 111-14; Dismissal Order at 60.

Even if Breckenridge was a member in a trade association (which is not alleged), "[m]embership in a trade association, without more, does not violate the antitrust laws."  *Just New Homes, Inc. v. Beazer Homes*, 293 F. App'x 931, 934 (3d Cir. 2008); *see also Wash. Cty. Health Care*, 328 F. Supp. 3d at 843 (dismissing antitrust conspiracy claim where "[t]he plaintiffs assert only that the defendants were members of two of the same [trade] organizations, and that those organizations held meetings attended by defendants"); *Parker Auto Body*, 171 F. Supp. 3d at 1285 ("participation in trade associations and similar organizations provides no

20

**FILED WITH REDACTIONS – PUBLIC VERSION**

indication of a conspiracy"); *Superior Offshore Int'l*, 738 F. Supp. 2d at 516 (holding that the mere allegation that "Defendants had numerous opportunities to conspire" is insufficient to "permit a reasonable inference of collusion").  Moreover, the Amended Complaint does not allege that Breckenridge was an active participant in any trade association or any association committee, and mere attendance at a handful of meetings is not a plus factor.  *See In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 723 (citing defendant's active membership and leadership roles in a trade group in denying dismissal).  The States, therefore, have not alleged sufficient facts to establish that Breckenridge even had an opportunity to conspire with Teva or any of the other Defendants.  *See* Dismissal Order at 58-61.

Furthermore, the case for dismissal of Breckenridge is even stronger than that for Teligent because the specific arguably inculpatory allegations against Teligent described in the Court's Dismissal Order simply do not exist as concerns Breckenridge.  For example, plaintiffs alleged that Teligent executives made various public statements reflecting their agreement to raise Econazole prices.  *See, e.g.*, 16-EC-27243, Dkt. No. 2 (Consolidated Class Action Compl.) ¶¶ 86-90.  In contrast, there is no allegation that Breckenridge ever made any such public statements.

In addition, like Teligent, Breckenridge has not been the subject of any investigation relating to alleged price fixing or market allocation (not by the States, Congress, the Department of Justice, or any other entity), nor has Breckenridge ever received any request for information related to any such allegations from any State (or any regulatory entity or congressional body). *See* Dismissal Order at 61 (finding that "given the absence of any allegation that Teligent has received a subpoena or has been specifically touched by a government investigation, the Court

**FILED WITH REDACTIONS – PUBLIC VERSION**

finds that econazole Plaintiffs have not sufficiently alleged that Teligent had an opportunity to conspire with the other econazole Defendants").

In sum, the States have alleged none of the requisite plus factors that would support a finding that Breckenridge has engaged in any conspiracy to fix the prices of ENA or Cyproheptadine.  The Court should reject the States' attempt to impose conspiracy-based antitrust liability on Breckenridge for increasing its prices on ENA and Cyproheptadine nearly five months before its only other competitor for those products raised its prices, and for successfully testing its own initial price upon beginning to sell Cyproheptadine after acquiring that product from a third party — especially in view of the fact that Breckenridge's increased WAC prices were published five months before its competitor raised its prices.  At its core, the States' circumstantial evidence to support their claims against Breckenridge amounts to nothing more than that:  (1) Breckenridge sells ENA and Cyproheptadine and increased the prices for those two generic pharmaceutical products; (2) certain Breckenridge employees allegedly had communications, including through telephone calls, with certain employees of Teva or other competitors at various times ranging from 2011 through 2018; and (3) five months after Breckenridge raised its prices for ENA and Cyproheptadine, and publicly announced these WAC price increases consistent with long-standing industry practice, Teva did so as well.  A determination that these sparse allegations are sufficient to sustain the Amended Complaint and thereby compel Breckenridge to defend a full-blown antitrust lawsuit that purports to impose liability for a conspiracy related to 114 drugs (almost all of which Breckenridge does not even sell), and incur the accompanying overwhelming drain on its corporate resources, will undoubtedly chill good corporate citizens from engaging in lawful price competition.  The

**FILED WITH REDACTIONS – PUBLIC VERSION**

Amended Complaint does not present allegations of an antitrust conspiracy as to Breckenridge that even remotely meet what is required under the law.

## II.   THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS TO BRECKENRIDGE

The Amended Complaint should be dismissed with prejudice as to Breckenridge because the States have had ample opportunity to assert sustainable allegations against Breckenridge but have failed to do so.  Thus, further amendment would be futile.

The States have already amended their Complaint once.  Moreover, the States have been investigating the generic drug industry for many years, armed with subpoena power and other coercive means to obtain information in support of their claims; as a result of that investigation, over seven million documents have been produced to the States ██████████████████████ ████████████████████████ will support the claims asserted in the Amended Complaint.  If the States had facts to support well-pleaded factual allegations against Breckenridge, they would have pled them by now.  *See, e.g.*, *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (affirming denial of leave to amend where "[m]ost of the facts were available to plaintiff [] before she filed her original complaint").  But they have not.  Because any further amendment would be futile, dismissal with prejudice is warranted.  *See Juan v. Sanchez*, 339 F. App'x 182, 187 (3d Cir. 2009) (concluding that leave to amend is properly denied where "the amendment would be futile").

## CONCLUSION

For the foregoing reasons, Breckenridge's motion to dismiss all claims advanced against it by the State Attorneys General in the October 31, 2019 Amended Complaint should be

**FILED WITH REDACTIONS – PUBLIC VERSION**

granted.  Furthermore, the dismissal should be with prejudice because the States have already amended their Complaint at least once.

Dated:  February 14, 2020                                    Respectfully submitted,


                                                            /s/ *Stacey Anne Mahoney*
                                                            Stacey Anne Mahoney
                                                            MORGAN, LEWIS & BOCKIUS LLP
                                                            101 Park Avenue
                                                            New York, New York  10178
                                                            Telephone:  (212) 309-6000
                                                            Facsimile:  (212) 309-6001
                                                            stacey.mahoney@morganlewis.com

                                                            *Counsel for Defendant Breckenridge*
                                                            *Pharmaceutical, Inc.*

**FILED WITH REDACTIONS – PUBLIC VERSION**