**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL No. 2724<br>Civil Action No.: 16-md-2724-CMR<br><br>HON. CYNTHIA M. RUFE |
| **THIS DOCUMENT RELATES TO:**<br><br>*State of Connecticut, et al., v.<br>Teva Pharmaceuticals USA Inc., et al.* | Civil Action No.: 19-cv-2407-CMR |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MAUREEN
CAVANAUGH'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**REED SMITH LLP**
Thomas H. Suddath, Jr.
Anne E. Rollins
Thomas P. Reilly
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone:  215-851-8100
Facsimile:  215-851-1420
tsuddath@reedsmith.com
arollins@reedsmith.com
treilly@reedsmith.com

Michael E. Lowenstein
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: 412-288-3131
Facsimile: 412-388-3063
mlowenstein@reedsmith.com

Dated: March 13, 2020

*Counsel for Defendant Maureen Cavanaugh*

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

# TABLE OF CONTENTS

I.     The Heart of Ms. Cavanaugh's Motion to Dismiss is Undisputed. ..................................... 1

II.    Plaintiffs Cannot State a Claim Against Ms. Cavanaugh Based on the Alleged Conduct of Other People..................................................................................................................... 2

III.   Plaintiffs Cannot State a Claim against Ms. Cavanaugh Based on Ms. Cavanaugh's Own Alleged Conduct. .............................................................................................................. 6

IV.    Plaintiffs' Last-Ditch Effort to Salvage a Claim Based on the Vague Allegation of Paragraph 1115 is Unavailing. ........................................................................................... 8

V.     Plaintiffs' Legal Gloss Cannot Overcome Their Lack of Factual Allegations. .................. 9

VI.    Conclusion ....................................................................................................................... 10

i

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................... *passim*

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ....................................................................... *passim*

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) ...................................................................2, 9

*Ellison v. Am. Bd. of Orthopaedic Surgery, Inc.*,
    No. 16-8441 (KM) (JBC), 2018 WL 6629764 (D.N.J. Oct. 29, 2018) ...................................4

*In re Generic Pharm. Pricing Antitrust Litig.*,
    386 F. Supp. 3d 477 (E.D. Pa. 2019) .....................................................................1

*Higbie v. Kopy-Kat, Inc.*,
    391 F. Supp. 808 (E.D. Pa. 1975) ..........................................................................10

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010) ..............................................................4, 5, 10

*In re Insurance Brokerage Antitrust Litigation*,
    618 F.3d 300 (3d Cir. 2010) ...........................................................................2

*In re Mushroom Direct Purchaser Antitrust Litig.*,
    No. 06-0620, 2017 WL 895582 (E.D. Pa. Mar. 6, 2017) .......................................................10

*In re Processed Egg Prod. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) .....................................................................1

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## I.      The Heart of Ms. Cavanaugh's Motion to Dismiss is Undisputed.

To state a claim against Ms. Cavanaugh under Section 1 of the Sherman Act, Plaintiffs must plausibly allege that Ms. Cavanaugh ***purposefully joined and participated*** in an antitrust conspiracy.  *In re Generic Pharm. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477, 482 (E.D. Pa. 2019); *In re Processed Egg Prod. Antitrust Litig.,* 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011). Because Plaintiffs cannot make this showing, Ms. Cavanaugh's motion to dismiss should be granted.

Plaintiffs' Opposition to Defendant Maureen Cavanaugh's Motion to Dismiss Plaintiffs' Amended Complaint ("the Complaint" or "AC")[1] does not dispute the heart of Ms. Cavanaugh's motion to dismiss.  (Dkt. No. 128).  Plaintiffs do not dispute that:

- the Complaint does not identify a ***single*** conversation, email or other communication between Ms. Cavanaugh and ***any*** competitor regarding ***any*** competitive issue;

- it was not improper for Ms. Cavanaugh to consider information she understood came from customers or publicly available sources in participating in strategy decisions for her company; and

- remarkably, Plaintiffs do not even reference much less dispute the email that Plaintiffs misrepresented in their Complaint that shows that Plaintiffs were well aware of their need to allege that Ms. Cavanaugh received and acted upon information that she understood came from competitors rather than from customers or publicly available sources:

| Plaintiffs' Allegation | Actual Language from Email |
|---|---|
| "That same day, Defendant Rekenthaler informed the group that he still had not received 'a call from any other manufacturer on Irbesartan.'" AC ¶ 274. |  |

Plaintiffs also do not dispute the relevant legal standard, including that:

- to assert a claim under Section 1 of the Sherman Act, a complaint must contain "enough ***factual*** matter (taken as true) to suggest that an agreement was made." *Bell Atlantic v.*

---

[1] States' Opposition to Defendant Maureen Cavanaugh's Motion to Dismiss the States' Amended Complaint (hereinafter, "Opposition" or "Opp."). (Dkt. No. 137).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*Twombly*, 550 U.S. 544, 556 (2007) (emphasis added);

- the plausibility standard set forth in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) requires "more than a sheer possibility that a defendant has acted unlawfully" and a complaint which pleads facts "'merely consistent with' a defendant's liability, stops short of the line between possibility and plausibility of 'entitlement of relief.'"  *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); and

- where there is an obvious alternative explanation, a plaintiff's allegation does not satisfy the plausibility standard.  *Iqbal*, 556 U.S. at 682; *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 322-23 (3d Cir. 2010).

Based upon these undisputed facts and legal principles, Ms. Cavanaugh's opening brief meticulously addressed each of the 37 paragraphs of Plaintiffs' 1726 paragraph Complaint that mention her, as well as the Complaint in the aggregate, to show that Plaintiffs have failed to state a claim against Ms. Cavanaugh.  This analysis addressed in detail *every* communication in which the Complaint alleges Ms. Cavanaugh participated and *every* piece of information the Complaint alleges Ms. Cavanaugh received.

## II.   Plaintiffs Cannot State a Claim Against Ms. Cavanaugh Based on the Alleged Conduct of Other People.

Rather than respond directly to Ms. Cavanaugh's careful exposition of the paragraphs of the Complaint that actually are directed to Ms. Cavanaugh, Plaintiffs' Opposition relies primarily on allegations directed to *other defendants* in attempting to state a claim against Ms. Cavanaugh. The alleged conduct of other people does not state a claim against Ms. Cavanaugh.  Indeed, Plaintiffs' Opposition admits and in fact highlights the efforts of others to *prevent* Ms. Cavanaugh from learning about communications these other people were having with competitors:

> On July 16, Patel emailed a pricing recommendation, which was later forwarded to Cavanaugh, using the term "rumors" to describe a future Wockhardt price increase and obfuscate that Wockhardt and Teva had spoken directly.  [AC] ¶¶ 659-660.

Opp. at 8.  Plaintiffs also admit (Opp. at 8 n.4) that this obfuscation was not a one-time event but instead was "consistently" done to "camouflage" communications with competitors:

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

"Rumors" was a term consistently used by Patel in internal documents to camouflage that she and her co-conspirators within Teva were communicating with competitors about future price increases.  [AC] ¶ 644.

Plaintiffs' Opposition further claims that the Complaint alleges that a spreadsheet prepared for Ms. Cavanaugh was altered before it was sent to her, because Ms. Patel's supervisor allegedly asked her to "delete the incriminating references" (putting aside that the supervisor's instructions actually were benign):

> Patel prepared a summary of these price increases for Cavanaugh, which included competitively sensitive information about competitors' plans regarding future price increases that (again) could have only been learned by communicating with competitors.  [AC] ¶ 668.  Her supervisor then instructed Patel to delete the incriminating references.  [AC] ¶ 669.

Opp. at 4.  Although Plaintiffs inexplicably rely upon these allegations in opposition to Ms. Cavanaugh's motion to dismiss, these allegations do not support and, instead, fundamentally undercut Plaintiffs' claim.  ***Why would others at Teva "obfuscate" and "consistently" "camouflage" that they were having communications with competitors, and "delete incriminating references," if Ms. Cavanaugh was part of the alleged conspiracy?***

Despite these admitted efforts to camouflage any communications with competitors and keep this information from Ms. Cavanaugh, Plaintiffs baldly assert that Ms. Cavanaugh nevertheless knew that other Teva employees were engaging in collusive conduct:

> The Amended Complaint alleges that Cavanaugh, as well as other Teva high-level executives, were aware that Cavanaugh's subordinates were engaging in collusive conduct in violation of the antitrust laws.  [AC] ¶¶ 741 (price increase strategy based on "leveraging Teva's collusive relationships with high-quality competitors" was well known, understood, and authorized by Cavanaugh), 1065, 1110, 1111.

Opp. at 2.  Yet this assertion is not supported by any ***factual*** allegations.  Two of the four paragraphs of the Complaint cited in support of this assertion, Paragraphs 1110 and 1111, do not even ***mention*** Ms. Cavanaugh.  The third cited paragraph is based on a chart of various contacts

- 3 -

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

between Ms. Cavanaugh and others in the industry that does not indicate the subject matter of any such communications.  AC ¶ 1065.  This chart does not show any wrongful conduct by Ms. Cavanaugh or any awareness by Ms. Cavanaugh of any wrongful conduct of others.  The fourth cited paragraph states that the strategy of Teva's leading price increases was well known to Ms. Cavanaugh.  AC ¶ 741.  A unilateral strategy of leading price increases in an oligopolistic market does not support the Section 1 claim Plaintiffs seek to allege.  Even if Paragraph 741 could be stretched to say that it alleges that Ms. Cavanaugh knew of collusion by others with competitors, there are no factual allegations to support this assertion.  To the contrary, the purported factual support in Paragraph 741 is a version of a pricing strategy document (that Plaintiffs do not even allege was sent to Ms. Cavanaugh) that says nothing about communications with competitors.

Under *Twombly* and *Iqbal*, to survive a motion to dismiss, "it does not suffice to simply say that the defendant[] had knowledge; there must be factual allegations to plausibly suggest as much."  *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010) (affirming dismissal where the plaintiffs' amended complaint made only conclusory allegations that the defendants "conspired and knew about the alleged plan to maintain Dentsply's market position"); *see also Ellison v. Am. Bd. of Orthopaedic Surgery, Inc.*, No. 16-8441 (KM) (JBC), 2018 WL 6629764, at *5 (D.N.J. Oct. 29, 2018) (dismissing plaintiffs' claim because "[t]he Amended Complaint states only in a conclusory manner that northern New Jersey hospitals conspired and knew about the alleged plan to bolster ABOS's market position.").  Plaintiffs' allegations do not satisfy this standard.

Plaintiffs devote other large portions of their Opposition to allegations related to the conduct of other people that also do not meet the legal standard for alleging knowledge and participation by Ms. Cavanaugh.  Pages 3 and 4 of Plaintiffs' Opposition include color-coded

- 4 -

charts of alleged communications between competitors regarding lists of proposed price increases. Plaintiffs point to lists of proposed price increases transmitted to Ms. Cavanaugh relating to these color-coded charts that allegedly used information from competitors.

These color-coded charts and the list of proposed price increases show ***nothing*** with respect to Ms. Cavanaugh, whose name does ***not*** appear on either of these color-coded charts. There is no ***factual*** allegation that she knew about or was involved in these alleged communications with competitors, much less that she took any action based on information she knew came from competitors.

Indeed, as to the second list of proposed price increases, Plaintiffs admit that the "incriminating references" showing that information that allegedly came from competitors were directed to be deleted from the list before transmittal to Ms. Cavanaugh. Opp. at 4. As to the first list of proposed price increases, there was no need to remove incriminating references because, Plaintiffs' conclusory assertions notwithstanding, there were no incriminating references. Plaintiffs simply declare with respect to the first list of proposed price increases that: "Cavanaugh approved those price increases, recommended by Patel, based specifically on certain information and assurances that could have only come from competitors, such as 'Sandoz also bidding high [on Nabumetone]' and '[r]umors of a Taro increase [on Adapalene Gel].'" Opp. at 3. The contention that this information could "only have come from competitors" is demonstrably false and this Court need not accept this conclusory assertion. *Howard Hess*, 602 F.3d at 258 ("It is an axiom of antitrust law [] that merely saying so does not make it so for pleading-sufficiency purposes."). To the contrary, either statement on its face could have come from a customer or public information and, indeed, the Taro reference includes the "rumors" language that Plaintiffs admit that Ms. Patel used to "camouflage" her communications with competitors. AC ¶ 644.

- 5 -

Plaintiffs also discuss alleged conspiracies involving several drugs—Capecitabine, Niacin Extended Release, "May-July 2013 price increases for twelve drugs" and Enalapril—as to which Plaintiffs reference no allegation of any communication by Ms. Cavanaugh and provide no factual basis to allege that Ms. Cavanaugh knew that anyone at Teva was communicating with any competitor.  Opp. at 5-8.  Plaintiffs' allegations as to these drugs are addressed in the detailed paragraph-by-paragraph analysis of all allegations mentioning Ms. Cavanaugh in our opening brief, and, as set forth therein, they do not state a claim against Ms. Cavanaugh.

## III.   Plaintiffs Cannot State a Claim against Ms. Cavanaugh Based on Ms. Cavanaugh's Own Alleged Conduct.

Although Plaintiffs' Opposition is primarily directed to attempting to hold Ms. Cavanaugh responsible for the alleged conduct of others, Plaintiffs also make a passing effort to state a claim against Ms. Cavanaugh based on her own conduct.  This effort also fails.

Plaintiffs make two allegations that attempt to tie the timing of Ms. Cavanaugh's communications with specific events.  First, Plaintiffs seek to allege a claim based on communications between Ms. Cavanaugh and Marc Falkin of Actavis, a company later acquired by Teva.  Plaintiffs do not identify the subject matter of any of these communications, and the fact that these communications could have been on any subject inherently means that there is "an obvious alternative explanation" for these communications and defeats any attempt to state a claim based on these communications.[2]

Nevertheless, Plaintiffs attempt to seize upon three of Ms. Cavanaugh's hundreds of

---

[2] Plaintiffs chide our opening brief for pointing out that a substantial percentage of these communications occurred during the period in which Teva was acquiring Actavis, including in 2016, after the period of any alleged wrongful conduct.  Opp. at 10 n.5.  Notwithstanding Plaintiffs' efforts to go well beyond their own Complaint to muse on what the communications might have involved, there is absolutely no showing of a single improper communication with Mr. Falkin.  Moreover, Plaintiffs have now made clear that, of the hundreds of communications between Ms. Cavanaugh and Mr. Falkin on unspecified subjects, they actually rely the timing of only three text messages on unspecified subjects.  *Id.*  As discussed herein, these provide no basis for a claim against Ms. Cavanaugh.

- 6 -

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

unspecified communications with Mr. Falkin and contend that they occurred at the same time as others at Teva were in alleged "discussions of how to accommodate Taro into the Nortriptyline market." AC ¶ 419. Plaintiffs' allegation is based on the pure coincidence of timing. Coincidence equates to conjecture but conjecture does not equate to a plausible claim under *Iqbal* and *Twombly*. There is no factual basis to allege that Ms. Cavanaugh knew that anyone at Teva was having discussions with anyone at Actavis or Taro regarding any competitive issue. Plaintiffs also do not allege that Ms. Cavanaugh communicated anything that she discussed with Mr. Falkin with anyone else at Teva. Moreover, Plaintiffs' allegations regarding Nortriptyline are directed to the re-entry of ***a different company***, Taro. The allegation that three texts between Ms. Cavanaugh and Mr. Falkin of Actavis in November 2013 involved this different company and this particular drug is utter speculation that does not rule out alternative explanations, as Plaintiffs must do to meet the plausibility standard of *Twombly* and *Iqbal*.

Similarly, Plaintiffs allege that Ms. Cavanaugh exchanged six text messages and had one 39 second phone call with "K.R." of Zydus around the time that Zydus entered the market for Etodolac ER. AC ¶ 477. As with the alleged communications with Mr. Falkin, these allegations are conjecture based on the pure coincidence of timing and do not state a plausible claim under *Iqbal* and *Twombly*. Plaintiffs do not identify the content of a single communication between Ms. Cavanaugh and K.R. They do not allege that whatever was discussed between Ms. Cavanaugh and K.R. was communicated to anyone else at Teva, and have no factual basis to allege that Ms. Cavanaugh knew that anyone from Teva was having any communications on any competitive issue with anyone at Zydus. In these circumstances, Plaintiffs again do not rule out obvious alternative explanations for these unspecified communications, as they must do to satisfy the plausibility

- 7 -

standard of *Twombly* and *Iqbal*.[3]

## IV.  Plaintiffs' Last-Ditch Effort to Salvage a Claim Based on the Vague Allegation of Paragraph 1115 is Unavailing.

Although Plaintiffs' Opposition is filled with distracting allegations about conduct of other people, Plaintiffs know that, to state a claim against Ms. Cavanaugh, they must show that *Ms. Cavanaugh* purposefully joined and participated in an antitrust conspiracy, not that others may have done so.  This is clear from the Complaint, from Plaintiffs' Opposition, and, most tellingly, from the misrepresented email that Plaintiffs altered in a failed effort to allege that Ms. Cavanaugh purposefully joined and participated in an antitrust conspiracy, and that, remarkably, Plaintiffs do not even mention in their Opposition:

| Plaintiffs' Allegation | Actual Language from Email |
| --- | --- |
| "That same day, Defendant Rekenthaler informed the group that he still had not received 'a call from any other manufacturer on Irbesartan.'" AC ¶ 274. | |

This misrepresentation cannot be excused as an inadvertent mistake or sloppy drafting.  Rather, it is a failed effort by Plaintiffs to *concoct* facts on the crucial issue as to which Plaintiffs must allege, and cannot allege, *actual* facts in order to state a claim against Ms. Cavanaugh: that Ms. Cavanaugh had direct knowledge of an alleged communication by another Teva employee with a competitor and acted based on this knowledge.

---

[3] Because they do not have an actual claim against Ms. Cavanaugh, Plaintiffs cast about in an effort to find a way to keep Ms. Cavanaugh in this case.  Remarkably, Plaintiffs also include an allegation of "spoliation" based on alleged conduct by Ms. Patel in 2015, with no allegation whatsoever that Ms. Cavanaugh had anything to do with whatever Ms. Patel allegedly did.  Opp. at 8; AC ¶ 1128.  Plaintiffs also attempt without success to make something of the fact that another defendant, David Rekenthaler, allegedly contacted Ms. Cavanaugh in 2017, long after the end of the alleged wrongful conduct, and with no allegations as to what was discussed.  Opp. at 8; AC ¶ 1133.  These allegations likewise do not support any claim against Ms. Cavanaugh.  Further, adding these insubstantial allegations do not save Plaintiffs from dismissal based on reviewing Plaintiffs' allegations in the aggregate.  Viewing Plaintiffs Complaint in the aggregate, Plaintiffs have failed in a basic way to provide a factual basis to allege that Ms. Cavanaugh purposefully joined and participated in an antitrust conspiracy.  These insubstantial allegations do not change that.

- 8 -

Once these failed efforts by Plaintiffs to buttress their unsubstantiated contention that Ms. Cavanaugh purposely joined and participated in an antitrust conspiracy are stripped away, Plaintiffs are left to rely upon the same last-ditch effort to state a claim based on the vague allegation of Paragraph 1115 of the Complaint that was addressed in our opening brief. Plaintiffs attempt to link this vague allegation of alleged gestures by Ms. Cavanaugh at an unspecified meeting regarding unspecified products at some unspecified time in 2013 (over five years before suit was filed) to alleged conduct in the years prior to and after this unspecified meeting. Opp. at 2.

This paper-thin allegation simply cannot carry the weight Plaintiffs need it to bear for Plaintiffs to survive dismissal. Paragraph 1115 indicates that Ms. Cavanaugh did not want to use information obtained from competitors, as Ms. Patel knew in consistently camouflaging her communications with competitors from Ms. Cavanaugh. There is no evidence that Ms. Cavanaugh (or anyone else) took any action, on that day or any other, based on whatever Ms. Patel allegedly said that day to allegedly cause Ms. Cavanaugh's reaction. The allegations of Paragraph 1115 fail to state a claim because none of these allegations specify a time or place that any actual agreement involving Ms. Cavanaugh occurred. *Burtch*, 662 F.3d at 225. Thus, Paragraph 1115 of the Complaint does not save Plaintiffs' claim against Ms. Cavanaugh from dismissal.[4]

## V.     Plaintiffs' Legal Gloss Cannot Overcome Their Lack of Factual Allegations.

Finally, Plaintiffs attempt to apply a legal gloss to their factually unsupported claims. From the unsupported factual premises that Ms. Cavanaugh was personally involved in anticompetitive conduct and that she "approved price increases based specifically on information and assurances that could only have come from competitors, and ratified other illicit anticompetitive conduct even

---

[4] Plaintiffs' scant response on the issues of the statute of limitations and state law claims is based on the incorrect premise that Plaintiffs had adequately alleged wrongful conduct by Ms. Cavanaugh, and requires no further response.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

after being specifically made aware that her subordinates were coordinating with competitors," Plaintiffs argue that Ms. Cavanaugh can be held liable "'where [s]he participated in the unlawful acts, or where [s]he has acquiesced or ratified the actions of other officers or agents of the corporation which were in violation of the anti-trust laws.'"  Opp. at 10-11 (quoting *Higbie v. Kopy-Kat, Inc.*, 391 F. Supp. 808, 810 (E.D. Pa. 1975)).

The problem with Plaintiffs' argument is not *Higbie*, which stands for the unremarkable proposition that a corporate officer can be held liable for a company's antitrust violation on the basis of the officer's knowledge and participation in the anticompetitive conduct.  *Higbie*, 391 F. Supp. at 810; *see also Howard Hess*, 602 F.3d at 255 ("to survive dismissal" there "must be factual allegations to plausibly suggest" that "the defendants had knowledge"); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2017 WL 895582, at \*10 (E.D. Pa. Mar. 6, 2017) (*Higbie* requires "knowledge and participation").  Instead, the problem with Plaintiffs' argument is that Plaintiffs have no *factual* basis for their premises that Ms. Cavanaugh engaged in anticompetitive conduct or "approved price increases based specifically on information and assurances that could only have come from competitors, and ratified other illicit anticompetitive conduct even after being specifically made aware that her subordinates were coordinating with competitors."  Because Plaintiffs' factual premises are unsupported, this legal gloss adds nothing to Plaintiffs' position.

## VI.    Conclusion

With years to review an enormous trove of documents, Plaintiffs have demonstrably failed to state a claim against Ms. Cavanaugh upon which relief can be granted.  Nor have Plaintiffs requested leave to amend or cited any basis for doing so.  Plaintiffs' claims against Ms. Cavanaugh therefore should be dismissed, with prejudice.  Pursuant to Local Rule of Civil Procedure 7.1(f), Ms. Cavanaugh respectfully requests oral argument with respect to the within motion.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Dated: March 13, 2020                    Respectfully submitted,

                                         /s/ Thomas H. Suddath, Jr.
                                         Thomas H. Suddath, Jr.
                                         Anne E. Rollins
                                         Thomas P. Reilly
                                         REED SMITH LLP
                                         Three Logan Square
                                         1717 Arch Street, Suite 3100
                                         Philadelphia, PA 19103
                                         tsuddath@reedsmith.com
                                         arollins@reedsmith.com
                                         treilly@reedsmith.com

                                         Michael E. Lowenstein
                                         REED SMITH LLP
                                         Reed Smith Centre
                                         225 Fifth Avenue
                                         Pittsburgh, PA 15222
                                         mlowenstein@reedsmith.com

                                         *Counsel for Defendant Maureen Cavanaugh*

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## CERTIFICATE OF SERVICE

I, Thomas H. Suddath, Jr., hereby certify that a copy of the foregoing Reply Memorandum of Law in Support of Defendant Maureen Cavanaugh's Motion to Dismiss the Amended Complaint was filed via the Court's electronic filing system on March 13, 2020, with redactions made to Discovery Material designated as "HIGHLY CONFIDENTIAL," in accordance with Paragraph 9.2 of Pretrial Order No. 7.  I further certify that, pursuant to Paragraph 9.2 of Pretrial Order No. 7, an unredacted copy of the foregoing Reply Memorandum of Law in Support of Defendant Maureen Cavanaugh's Motion to Dismiss the Amended Complaint was served via email on all counsel of record using the following email distribution lists: MDL2724AllDeftsService@pepperlaw.com and MDL2724plaintiffsleadsetc@ag.ny.gov.


/s/ *Thomas H. Suddath, Jr.*