# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*THE STATE OF CONNECTICUT, et al. v.*<br>*TEVA PHARMACEUTICALS USA, INC., et al.* | Civil Action No.: 19-cv-2407-CMR |

# REPLY BRIEF IN SUPPORT OF DEFENDANT BRECKENRIDGE PHARMACEUTICAL, INC.'S MOTION TO DISMISS THE OCTOBER 31, 2019 STATE ATTORNEYS GENERAL AMENDED COMPLAINT

**TABLE OF CONTENTS**

I. THE STATES DO NOT ALLEGE THAT BRECKENRIDGE AGREED TO FIX THE PRICES FOR CYPROHEPTADINE OR ENA ...................................................... 1

    A. The Amended Complaint Alleges No Direct Evidence of an Agreement Between Breckenridge and Teva to Fix Prices of Cyproheptadine and ENA ................................................................................................................... 2

    B. The Amended Complaint Alleges No Circumstantial Evidence of an Agreement Between Breckenridge and Teva to Fix Prices of Cyproheptadine and ENA ................................................................................... 4

II. THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS TO BRECKENRIDGE ....................................................................... 10

III. CONCLUSION ........................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc.*,
    826 F.2d 1335 (3d. Cir. 1987) ................................................................................................... 3

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999) ................................................................................................. 4, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 5, 7

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) ............................................................................................ 2, 4, 5

*Dreibelbis v. Scholton*,
    274 F. App'x 183 (3d Cir. 2008) ..................................................................................... 2, 9, 10

*In re Generic Pharm. Pricing Antitrust Litig.*,
    338 F. Supp. 3d 404 (E.D. Pa. 2018) .............................................................................. passim

*In re Generic Pharm. Pricing Antitrust Litig.*,
    386 F. Supp. 3d 477 (E.D. Pa. 2019) .................................................................................. 2, 3

*Parker Auto Body Inc. v. State Farm Mut. Auto. Ins. Co.*,
    171 F. Supp. 3d 1274 (M.D. Fla. 2016) ................................................................................... 5

*Stucke v. City of Philadelphia,*
    No. 12-cv-6216, 2015 WL 2231849 (E.D. Pa. May 11, 2015), *aff'd,* 685 F.
    App'x 150 (3d Cir. 2017) ......................................................................................................... 9

*U.S. Horticultural Supply, Inc. v. Scotts Co.*,
    No. 04-cv-5182, 2009 WL 89692 (E.D. Pa. Jan. 13, 2009), *aff'd*, 367 F. App'x
    305 (3d Cir. 2010) .................................................................................................................... 4

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
    873 F.3d 185 (3d Cir. 2017) .................................................................................................... 8

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988) .................................................................................................... 4

**Statutes**

Sherman Act, 15 U.S.C. § 1 .......................................................................................................... 2, 4

Nothing in the State Plaintiffs' Memorandum of Law in Opposition to Defendant Breckenridge Pharmaceutical, Inc.'s Motion to Dismiss the October 31, 2019 State Attorneys General Amended Complaint defeats the arguments by Breckenridge Pharmaceutical, Inc. ("Breckenridge") establishing that the State Plaintiffs (the "States") fail to plead an antitrust claim against Breckenridge.[1]

As Breckenridge demonstrates in its opening Memorandum, the States have alleged no facts that would support a finding that they have sufficiently pleaded that Breckenridge violated the antitrust laws.  Indeed, in their Opposition, the States implicitly concede this insurmountable lack of allegations *about Breckenridge* by largely ignoring Breckenridge and discussing allegations *about other defendants*.  The States also entirely ignore the governing authority, including the Court's own prior Orders dismissing defendant Teligent and the McKesson defendants, that requires courts to dismiss a particular defendant from an antitrust conspiracy case whenever the allegations as to that particular defendant are insufficient to state a claim that *that particular defendant* participated in the alleged conspiracy.  The question that Breckenridge is presenting to the Court is whether the States have adequately alleged a viable antitrust claim *against Breckenridge*.  It is clear that they have not.  Accordingly, the Amended Complaint, which was filed after multiple years of investigation and the production to the States of over 7 million documents, must be dismissed with prejudice as to Breckenridge.

### I. THE STATES DO NOT ALLEGE THAT BRECKENRIDGE AGREED TO FIX THE PRICES FOR CYPROHEPTADINE OR ENA

The States' Opposition fails to refute Breckenridge's well-supported legal and factual arguments that the Amended Complaint does not state an antitrust claim against Breckenridge.

---

[1] Breckenridge filed its Motion to Dismiss the October 31, 2019 State Attorneys General Amended Complaint at Dkt. No. 130 ("Motion to Dismiss"), with the supporting Memorandum at Dkt. No. 129-1 ("Memorandum" or "Mem.").  The States' Opposition was filed at Dkt. No. 136 ("Opposition" or "Opp.").

In contravention of all governing law, including this Court's prior dismissal decisions in this MDL (*In re Generic Pharm. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477, 483 & n.36 (E.D. Pa. 2019); *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 438-40 (E.D. Pa. 2018)), and in complete disregard of the actual allegations in their Amended Complaint, the States assert that they have alleged direct evidence that Breckenridge agreed with defendant Teva Pharmaceuticals USA, Inc. ("Teva") to fix the prices of Cyproheptadine HCL tablets ("Cyproheptadine") and Estradiol Norethindrone Acetate tablets ("ENA"). *See* Opp. at 10-11. Alternatively, the States offer a tortured argument that they have pleaded circumstantial evidence sufficient to support a finding that Breckenridge participated in that supposed conspiracy, relying exclusively on speculation and a few internal Teva documents, but not a shred of evidence from Breckenridge. *Id.* at 12-15. Their Opposition, however, actually confirms that the States have failed to plead *both* of the required elements for circumstantial evidence of a Section 1 claim: (1) parallel conduct *and* (2) "plus factors." *See* Mem. at 12-23. Indeed, as to many of the arguments advanced by Breckenridge in its Memorandum, the States remain silent, thereby conceding the validity of these arguments, and warranting dismissal. *See, e.g.*, *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008).

### A. The Amended Complaint Alleges No Direct Evidence of an Agreement Between Breckenridge and Teva to Fix Prices of Cyproheptadine and ENA

In order to argue that they have alleged direct evidence of a conspiracy between Breckenridge and Teva to fix the prices of Cyproheptadine and ENA, the States ignore this Court's prior Orders resolving motions to dismiss in this MDL, and completely misapply the law. "Direct evidence of a conspiracy is 'evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 324

2

n.23 (3d Cir. 2010)). "Examples [of direct evidence] are 'a document or conversation explicitly manifesting the existence of the agreement in question.'" *In re Generic Pharm.*, 338 F. Supp. 3d at 439 (quoting *In re Ins. Brokerage*, 618 F.3d at 324 n.23). After noting the high bar for allegations of direct evidence in an earlier decision resolving motions to dismiss in this MDL, this Court held that the only allegations of direct evidence of an agreement to conspire were the guilty pleas of two former executives of a corporate defendant (i.e., Heritage), in which those former executives *admitted* that they conspired with competitors as to certain specific drugs. *Id.*

In contrast, the States allege no direct evidence of any agreement entered into between Breckenridge and Teva to fix the prices of Cyproheptadine and ENA. Unlike the case they cite in their Opposition, *Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1338 (3d. Cir. 1987),[2] in which there was an actual written communication *between the alleged co-conspirators memorializing the alleged agreement*, here, there is no written agreement, no recording of an agreement, and no other *direct evidence* of the existence of *any agreement about anything* between Breckenridge and Teva.[3] Instead, the States baselessly argue that internal Teva documents that, at best, contain Teva's own musings about Breckenridge as a competitor regarding two products for which Breckenridge and Teva were the only suppliers at the time, and that reference Teva's unilateral strategy regarding those two products, somehow constitute direct evidence of an agreement. Opp. at 10-11. These allegations, however, are not direct evidence of

---

[2] The writing found to be direct evidence of the conspiracy in that case was a formal memorandum from one alleged co-conspirator to another that specifically referred to the agreement formed at a meeting of the alleged co-conspirators. *Id.* at 1336, 1338.

[3] The States' recitation of allegations about defendants other than Breckenridge (*see* Opp. 10-11 & n.3) are wholly irrelevant to the question of whether the Amended Complaint adequately alleges an agreement between Breckenridge and Teva to fix the prices of Cyproheptadine and ENA. *See In re Generic Pharm.*, 386 F. Supp. 3d at 485 (dismissing claims against McKesson Corporation and McKesson Medical Surgical, Inc. (collectively, "McKesson") and holding that allegations of antitrust violations against defendant Heritage failed to support a plausible inference that McKesson participated in the alleged antitrust conspiracy).

3

any agreement between Breckenridge and Teva, and any finding to the contrary would upend the law on pleading direct evidence. *See, e.g.*, *Burtch*, 662 F.3d at 225-26 (holding that plaintiff's allegations about twenty-seven telephone conversations that did not "specify a time or place that any actual agreement to fix credit terms occurred" and that did not "indicate that any particular individuals or Factors made such an agreement" were insufficient to plead direct evidence of an agreement, and that "the mere exchange of credit information, without an agreement, does not violate Section 1 of the Sherman Act"); *U.S. Horticultural Supply, Inc. v. Scotts Co.*, No. 04-cv-5182, 2009 WL 89692, at *10 (E.D. Pa. Jan. 13, 2009), a*ff'd*, 367 F. App'x 305 (3d Cir. 2010) (holding that an internal note describing a unilateral desire to form an anticompetitive agreement was not direct evidence of an agreement).[4]

### B. The Amended Complaint Alleges No Circumstantial Evidence of an Agreement Between Breckenridge and Teva to Fix Prices of Cyproheptadine and ENA

The States fare no better with their alternative argument that the Amended Complaint sufficiently alleges circumstantial evidence. To plausibly allege circumstantial evidence, the States must allege (1) parallel conduct, and (2) "plus factors." *In re Generic Pharm.*, 338 F. Supp. 3d at 440-41. The States fail to allege either element.

As the States concede, "circumstantial evidence of parallel conduct 'must be placed in a context that raises a suggestion of a preceding agreement, *not merely parallel conduct that could just as well be independent action*.'" Opp. at 12 (quoting *In re Ins. Brokerage*, 618 F.3d at 322

---

[4] The States' new and totally unsupported assertion that Defendant Patel's internal notes included non-public contract price points (Opp. at 11) is not alleged in the Amended Complaint and should not now be considered. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (refusing to consider factual assertions made in an opposition to a motion to dismiss that were not alleged in the operative complaint). Moreover, the States do not argue, let alone allege, that Teva obtained any non-public price data *from Breckenridge*. But, even if the States did make those allegations, the exchange of non-public price data is not direct evidence of an agreement. *See, e.g.*, *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 120-21 (3d Cir. 1999) (holding that sharing non-public data of planned price increases was merely "an exchange of information among the defendants," and was *not* direct evidence of a conspiracy).

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (emphasis added).  As Breckenridge explained in its opening Memorandum, allegations such as those made by the States, that supposedly coordinating defendants (i.e., Breckenridge and Teva) acted differently and at different times, fail to plausibly allege parallel pricing.  Mem. at 13; *see also, e.g.*, *Burtch*, 662 F.3d at 228.  A gap of five months between the alleged Breckenridge and Teva price increases renders these alleged price increases temporally non-parallel.  *See In re Generic Pharm.*, 338 F. Supp. 3d at 446 (dismissing Teligent and finding that a gap of four months between alleged price increases was temporally non-parallel); *see also Parker Auto Body Inc. v. State Farm Mut. Auto. Ins. Co.*, 171 F. Supp. 3d 1274, 1286 (M.D. Fla. 2016) (finding that price increases implemented only one or two months apart were not parallel).

      The States nevertheless argue, based on the Court's analysis of the motion to dismiss filed in the Clobestasol class actions, that the five-month period between the alleged Breckenridge and Teva Cyproheptadine and ENA price increases is sufficiently proximate to constitute parallel conduct.  Opp. at 12.  In so arguing, the States disregard critical aspects of the Court's consideration of the context of the pertinent allegations in those class actions.  There, this Court found that the pricing allegations against Perrigo alone were likely "*insufficient* to aver parallel conduct." *In re Generic Pharm.*, 338 F. Supp. 3d at 444 (emphasis added).  The context that the Court cited as crucial for it to nevertheless draw an inference of parallel conduct were allegations that Perrigo's alleged price increase (in supposed coordination with Actavis, among others) occurred while Perrigo's Executive Vice President and General Manager (who was also formerly the President and CEO of Actavis) served on the Generic Pharmaceutical Association Board ("GPhA"), where he had also served while he was employed by Actavis. *Id.*  The Court noted that plaintiffs also alleged that Perrigo, Actavis and the other alleged Clobetasol co-

conspirators were "regular members of the GPhA during the Class Period," and attended GPhA, National Association of Chain Drug Stores, and other trade association meetings during the time of the Clobetasol price increases. *Id.* at 428, 444. Here, however, the Amended Complaint contains no such allegations about Breckenridge.

The States insist, however, that the Breckenridge November 2013 and the Teva April 2014 price increases should still be considered parallel because the States argue (but do not allege) that "Teva's delay in following the Breckenridge price increases was due to Nisha Patel being out of the office on maternity leave for several months and Teva's decision not to plan or implement any new price increases during that time." Opp. at 13. This newly manufactured argument fails because it is contradicted by the Amended Complaint, in which the States allege that Defendant Patel returned from maternity leave in November 2013, at around the time of the challenged alleged Breckenridge price increases, and five months before Teva implemented its allegedly matching price increases. *See* Am. Compl. ¶ 725. Accordingly, the States' new argument about Defendant Patel's maternity leave is both legally irrelevant and factually unsupported.

Moreover, there is additional context alleged in the Amended Complaint that compels dismissal. The States argue in their Opposition that the purported conspirators allegedly communicated with each other "not only to secure an agreement to raise prices, but also to reinforce the *essential tenet* underlying the fair share agreement—*i.e.*, that *they would not punish a competitor for leading a price increase or steal a competitor's market share on an increase*." Opp. at 3 (citing Am. Compl. ¶ 538) (emphasis added). However, as the States affirmatively allege, during the five months between the allegedly coordinated price increases by Breckenridge and Teva, Teva did *not* adhere to that "*essential tenet underlying the fair share agreement*"

6

(Opp. at 3 (emphasis added)), but instead, successfully competed for customers of ENA against Breckenridge. Am Compl. ¶ 802; *see also* Mem. at 14 & n.14. The States now try to distance themselves from their own allegations of this competitive conduct by suggesting that Teva was entitled to compete despite the alleged "fair share" agreement because it wanted more ENA customers. *See* Opp. at 5. But this competitive conduct is more plausibly consistent with independent, unilateral competitive conduct "that could just as well be independent action." *Twombly*, 550 U.S. at 557.[5] Thus, the context demonstrates that the Amended Complaint fails to allege the requisite parallel conduct to support a finding that it was plausible (and not just merely possible) that Breckenridge participated in any price fixing conspiracy with Teva regarding Cyproheptadine and ENA. *See id.*

The Amended Complaint fails to allege any required plus factors, instead alleging only telephone calls between employees of Breckenridge and employees of Teva, an internal Teva email that does not mention Breckenridge, and that Defendants generally (but not Breckenridge specifically) attended various industry trade shows and customer conferences. Mem. at 17-23. The States' arguments that these conclusory assertions and group pleading allegations are sufficient to satisfy the plus factor pleading obligations are not supported by the law. *Id.* at 19.

There are three types of plus factors: "(1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy." *In re Generic Pharm.*, 338 F. Supp. 3d at 447-48. Where, as here, the States allege an oligopolistic market, allegations concerning the first two factors are irrelevant to the analysis because they merely restate the unremarkable fact that

---

[5] If the Court were to accept the States' argument, the States would be able to establish antitrust liability *regardless* of whether suppliers compete for and win customers after a competitor increases its prices. This would result in *chilling the ability of companies to compete*. This anticompetitive result is not supported by the antitrust laws.

7

sellers in concentrated markets make decisions that consider the anticipated reaction of their competitors. *See id*. at 449. Thus, the Amended Complaint must plead "[e]vidence implying a traditional conspiracy." *Id.*

Despite the fact that the Court has already held that allegations regarding supposed actions against self-interest are legally irrelevant in this MDL (*id.*), the States contend that they viably allege such conduct by arguing that Breckenridge's price increases were irrational unless they were done pursuant to the supposed "fair share" agreement. Opp. at 14-15. In order to advance such an argument, the States have had to disregard this Court's law-of-the-case precedent, and an entire body of antitrust law that establishes that in highly concentrated markets, like Cyproheptadine and ENA,[6] follow-the-leader pricing is legal. *See, e.g.*, *In re Generic Pharm.*, 338 F. Supp. 3d at 449; *see also Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 190 (3d Cir. 2017) ("[O]ligopolists will naturally follow a competitor's price increase in the hopes that each firm's profits will increase."); *In re Baby Food Antitrust Litig.*, 166 F.3d at 121 ("Conscious parallelism, sometimes called oligopolistic price coordination, is described as the process 'not in itself unlawful, by which firms in a concentrated market might in effect share monopoly power, setting their prices at a prefixed maximizing, supracompetitive level by recognizing their shared economic interests and their interdependence with respect to price and output decisions.'") (quoting *Brooke Group v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993)); Mem. at 2, 15. In addition, in so arguing, the States completely disregard the more plausible rationale for Breckenridge's price increase of Cyproheptadine, i.e., that upon commencing sales of the product after acquiring it, Breckenridge was setting its own price reflecting its own cost structure. *See* Mem. at 15-16.

---

[6] As the States have affirmatively alleged, at the time of the challenged alleged price increases, only Breckenridge and Teva were selling ENA and Cyproheptadine. *See* Am. Compl. ¶ 745.

The States contend that they allege the existence of a traditional conspiracy by alleging that Teva and Breckenridge regularly sent employees to trade shows and customer conferences to communicate and interact with competing generic drug manufacturers. Opp. at 8, 15. Absent from the States' Amended Complaint, however, are any allegations that *Breckenridge* attended any trade shows or customer conferences. Moreover, the States fatally fail to allege that Breckenridge was active on the Boards or was a member of any of the supposedly relevant trade associations. *See In re Generic Pharm.*, 338 F. Supp. 3d at 451. Furthermore, as to the sole allegation about Breckenridge attending a meeting, i.e., that one unidentified Breckenridge executive attended an "industry dinner" in January 2014, the States fail to address how any such attendance could further an agreement *with Teva* because the Amended Complaint *does not allege that Teva or any executive of Teva* attended that dinner. *See* Am. Compl. ¶¶ 107-08. By failing to respond to this point, the States have conceded the irrelevance of the alleged attendance by Breckenridge at the dinner to any purported conspiracy between Breckenridge and Teva. *See* Mem. at 8 & n.13; *see also, e.g.*, *Dreibelbis*, 274 F. App'x at 185 (affirming waiver and dismissal based upon District Court's finding that the plaintiff "had ample opportunity to make this argument in response to defendants' motion to dismiss and failed to do so").[7]

As to the alleged communications between Breckenridge and Teva, the States do not even attempt to respond to Breckenridge's argument that the Amended Complaint's failure to allege what was discussed in those alleged communications is fatal to the States' suggestion that the supposed communications support a finding of conspiracy. Mem. at 11, 17-18. This point is particularly notable given that the Amended Complaint was filed *after* the States' multi-year

---

[7] Any attempt by the States to address arguments advanced by Breckenridge in its Motion to Dismiss for the first time in a sur-reply, should be rejected. *See Stucke v. Philadelphia*, No. 12-cv-6216, 2015 WL 2231849, *4 n.4 (E.D. Pa. May 11, 2015), *aff'd*, 685 F. App'x 150 (3d Cir. 2017) ("The Court declines to address a new argument raised for the first time in a sur-reply brief.").

9

investigation. There are numerous additional arguments advanced by Breckenridge that the States have conceded by their failure to respond, including those summarized below:

- Even if Teva's alleged increased WAC prices "matched' those of Breckenridge, such WAC price "matching" would not support a finding of a conspiracy because Breckenridge's WAC prices were published at the time of its price increase announcement and were therefore available to Teva for nearly five months prior to Teva's WAC price increase. *Id*. at 14-15.

- Breckenridge was a new entrant for Cyproheptadine when it announced its price for that product (Am. Compl. ¶ 798 n.6), and therefore, its decision to test a Cyproheptadine price increase is more consistent with unilateral conduct, rendering the allegations regarding Cyproheptadine insufficient to support a finding of conspiracy. Mem. at 15-16.

- The States' failure to allege a structural price change is fatal to their argument that an anticompetitive inference can be drawn from the alleged follow-the-leader price increases. *Id*. at 16-17.

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AS TO BRECKENRIDGE

The States do not refute Breckenridge's argument that further amendment would be futile because the States have already amended their Complaint and because they have been investigating the generic drug industry for years. Accordingly, dismissal of the claims against Breckenridge with prejudice is warranted. Mem. at 23; *see also Dreibelbis*, 274 F. App'x at 185.

## CONCLUSION

For the foregoing reasons, Breckenridge's Motion to Dismiss all claims advanced against it by the State Attorneys General in their October 31, 2019 Amended Complaint should be granted. Furthermore, the dismissal should be with prejudice.

Dated:  March 20, 2020 		Respectfully submitted,

/s/ *Stacey Anne Mahoney*
Stacey Anne Mahoney
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
Telephone:  (212) 309-6000
Facsimile:   (212) 309-6001
stacey.mahoney@morganlewis.com

*Counsel for Defendant Breckenridge Pharmaceutical, Inc.*

11