UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br>*The State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE<br><br>19-cv-2407-CMR |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DAVID BERTHOLD'S MOTION TO DISMISS THE AMENDED COMPLAINT

KLINGEMAN CERIMELE, ATTORNEYS
Henry E. Klingeman, Esq.
60 Park Place
Suite 1100
Newark, New Jersey 07102
Phone: (973) 792-8822
henry@klingemanlaw.com
Counsel for Defendant David Berthold

On the Brief:
Henry E. Klingeman, Esq.
Ernesto Cerimele, Esq.
James Crudele, Esq.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 3

LEGAL ARGUMENT ..........................................................................................10

    I.    THE AMENDED COMPLAINT AGAINST MR. BERTHOLD MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM PURSUANT TO FED R. CIV. P. 12(B)(6) .............10

    II.    THE AMENDED COMPLAINT IS BARRED BY THE FOUR-YEAR STATUTE OF LIMITATIONS APPLICABLE TO SHERMAN ACT VIOLATIONS.................................................................................13

    III.    PLAINTIFFS' PENDENT STATE LAW CLAIMS MUST BE DISMISSED...................................................................................................14

CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Alvord-Polk, Inc. v. F. Schumacher & Co.,
37 F.3d 996 (3d Cir. 1994) .................................................................................................. 12

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ............................................................................................................ 2

Atl. Richfield Co. v. USA Petroleum Co.,
495 U.S. 328 (1990) .......................................................................................................... 10

Bell Atlantic v. Twombly,
550 U.S. 544 (2007) ................................................................................................. 2, 11, 12

Burtch v. Milberg Factors, Inc.,
662 F.3d 212 (3d Cir. 2011) .............................................................................................. 13

Hinds Cnty., Miss. v. Wachovia Bank N.A.,
708 F. Supp. 2d 348 (S.D.N.Y. 2010) ............................................................................... 12

In re Baby Food Antitrust Litig.,
166 F.3d 112 (3d Cir. 1999) .............................................................................................. 12

In re Digital Music Antitrust Litig.,
No. 06 MD 1780, 812 F.Supp.2d 390 (S.D.N.Y. July 18, 2011) ...................................... 11

In re Ins. Brokerage Antitrust Litig.,
618 F.3d 300 (3d Cir. 2010) .............................................................................................. 10

In re OSB Antitrust Litig.,
No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) .................................................. 11

In re Processed Egg Prod. Antitrust Litig.,
821 F. Supp. 2d 709 (E.D. Pa. 2011) ................................................................................ 11

Kendall v. Visa U.S.A., Inc.,
518 F.3d 1042 (9th Cir. 2008) .......................................................................................... 12

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986) .......................................................................................................... 10

NYNEX Corp. v. Discon, Inc.,
525 U.S. 128 (1998) .......................................................................................................... 10

Philadelphia Taxi Ass'n, Inc v. Uber Techs., Inc.,
886 F.3d 332 (3d Cir. 2018) .................................................................................................. 10

St. Clair v. Citizens Fin. Grp.,
340 F. App'x 62, 65 n.2 (3d Cir. 2009) ................................................................................. 15

Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.,
947 F. Supp. 2d 88 (D.D.C. 2013) ........................................................................................ 12

Vedder Software Grp. Ltd. v. Ins. Servs. Office, Inc.,
545 F. App'x 30, 32 (2d Cir. 2013) ....................................................................................... 12

W. Penn Allegheny Health Sys., Inc. v. UPMC,
627 F.3d 85 (3d Cir.2010) ..................................................................................................... 13

Zenith Radio Corp. v. Hazeltine Research, Inc.,
401 U.S. 321 (1971) .............................................................................................................. 13

**Statutes**

15 U.S.C. § 1 .................................................................................................................. 1, 10, 15

15 U.S.C. § 15b ........................................................................................................................ 13

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 13, 15

Defendant David Berthold ("Berthold") respectfully submits this memorandum of law in support of his Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim that Mr. Berthold violated the Sherman Act, 15 U.S.C. § 1.  Defendant also moves for dismissal because the claims asserted in the Amended Complaint are time-barred as a matter of law.

## PRELIMINARY STATEMENT

The Amended Complaint (Dkt. 106) (the "Amended Complaint") alleges a conspiracy by Teva Pharmaceuticals USA, Inc. ("Teva"), one of the world's largest generic pharmaceutical companies, to maintain control over the generic drug market.  For its role, Teva has been indicted, along with other alleged co-conspirators, Taro Pharmaceuticals U.S.A., Inc., Sandoz, Inc., and Glenmark Pharmaceuticals Inc., among others.

Scattered throughout the behemoth 515-page, 1726-paragraph Amended Complaint are innocuous references to David Berthold, the Vice President of Sales at Defendant Lupin Pharmaceuticals, Inc.  The Amended Complaint states that on occasion, Mr. Berthold attended dinners and trade association meetings and periodically spoke with his counterparts at other pharmaceutical manufacturers about market-sensitive information.

The Amended Complaint attempts to allege the steps taken by Teva to control the generic pharmaceutical market, including identifying its highest quality competitors who would be most likely to follow Teva's lead in artificially raising drug prices.  To that end, the Amended Complaint identifies internal communications by Teva employees regarding pricing and market share.  Whatever the Amended Complaint alleges against Teva, Taro, Glenmark, and Sandoz (i.e. those who controlled the market), the allegations against Mr. Berthold fail as a matter of fact and law.

1

First, the allegations in the Amended Complaint fall far short of alleging that Mr. Berthold, as an executive at Lupin, entered into an agreement with Teva or any of its employees to commit violations of the Sherman Act.  The speculative allegations that Mr. Berthold conspired with competitors, merely because he regularly communicated with his competitors, fails as a matter of law.  Plaintiffs fail to identify: 1) a single communication made by Mr. Berthold to price-fix; 2) a single communication made by Mr. Berthold to control a market share; and 3) a single actual or potential competitor that was excluded or otherwise foreclosed from competing or receiving a "fair share" as a result of his conduct.  Under the pleading requirements set forth by the Supreme Court in Bell Atlantic v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), Plaintiffs' claims against Mr. Berthold should be dismissed.

Second, the Amended Complaint concedes, as it must, that Mr. Berthold's purported conspiratorial conduct with Teva ceased in March 2014.  Because the Complaint was not filed until May 2019, one year after the statute of limitations expired, it is time-barred as a matter of law.

For the reasons set forth herein, the Court should dismiss the Amended Complaint against Mr. Berthold.

**STATEMENT OF FACTS**

David Berthold is named only in Count Twenty of a Thirty-Five Count Amended Complaint.[1]  Count Twenty reads:

> **(BY CERTAIN PLAINTIFF STATES AGAINST DEFENDANT DAVID BERTHOLD) – HORIZONTAL CONSPIRACY TO ALLOCATE MARKETS AND FIX PRICES FOR MULTIPLE GENERIC DRUGS IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT**

(Count Twenty of the Amended Complaint, ¶ ¶ 1282 to 1290)

Plaintiffs allege that Mr. Berthold 1) entered into agreements to violate the Sherman Act; and 2) the agreements "constitute unreasonable restraints of trade that are per se illegal." (Amended Complaint ¶ 1288). Plaintiffs do not explain how Mr. Berthold's conduct constitutes a violation.  Rather, Plaintiffs argue, "No elaborate analysis is required to demonstrate the anti-competitive character of these agreements." Id.

Instead, Plaintiffs argue in conclusory fashion that David Berthold conspired with Teva and others to "artificially raise prices" on the following eleven drugs:

- Cefdinir Capsules
- Cefdinir Oral Suspension
- Cefprozil Tablets
- Fenofibrate
- Irbesartan
- Cephalexin Suspension (price increase – lupin lead)
- Pravastatin Sodium Tablets
- Drospirenone and ethinyl estradiol (Ocella) – entry no increase
- Lamivudine/Zidovudine (generic Combivir)
- Niacin ER Tablets
- Norethindrone/ethinyl estradiol (Balziva)

(¶ 1285).

---

[1] The Complaint also alleges state law claims in Count Thirty-Five against "all Defendants."  It is unclear what, if any allegations, are alleged against Mr. Berthold.  To the extent that Mr. Berthold is a Defendant in Count Thirty-Five, it also must be dismissed for the reasons set forth herein.

3

For three of these drugs – Cefdinir Capsules, Cefdinir Oral Suspension, Cefprozil Tablets– Plaintiffs do not set forth a single allegation against Mr. Berthold.

With respect to the remaining nine drugs, the Amended Complaint alleges two distinct types of conduct by Teva and others.

**A.   The Market Entry Scheme**

First, the Amended Complaint alleges that Teva sought to maintain a "fair share" over the generic drug market by offering new competitors a percentage of their market share (the "Market Entry Scheme"). The Amended Complaint alleges that "a new competitor will either approach or be approached by the existing competitors." (¶ 134). Teva would then "agree to 'walk away' from a specific customer or customers by either refusing to bid or submitting a cover bid." (Id.) In turn, the Amended Complaint alleges that the new entrant "is ceded market share and immediately charges a supra-competitive price." (Id.) The competitors then continue this process of dividing up customers until the market reaches a new artificial equilibrium. (Id.)

As to the "Market Entry Scheme", the Amended Complaint concedes that Lupin never maintained a dominant share of the market to relinquish.  The Amended Complaint merely alleges that when Lupin entered the market and began to manufacture Combivir, Ocella, Norethindrone/ethinyl estradiol (Balziva®), Niacin ER, Fenofibrate, and Irbesartan, Teva ceded a portion of their market share.  The Amended Complaint does not allege that Mr. Berthold conspired to keep any other competitors out of the market.  The Amended Complaint also does not allege that Mr. Berthold took steps to artificially raise the price of the drugs.  Rather, the Complaint concedes that the price of drugs dropped after Lupin began marketing and selling the products.  (see e.g. ¶ 269). The specific allegations regarding Combivir, Ocella,

4

Norethindrone/ethinyl estradiol (Balziva®), Niacin ER, Fenofibrate, and Irbesartan are as follows:

1. **Lamivudine/Zidovudine (generic Combivir)**

Lamivudine/Zidovudine, also known by the brand name Combivir, is a combination of medications used in the treatment of human immunodeficiency virus (HIV) infection. (¶ 257).

Plaintiffs identify 29 telephone calls between Mr. Berthold and colleagues at Aurobindo and Teva to support the allegation that Mr. Berthold and others "conspired" to allocate market share when Lupin began manufacturing Combivir in 2012. 22 of the 29 calls were made between Mr. Berthold and Jim Grauso, who is a Commercial Operation employee at Aurobindo. The remaining seven telephone calls were between Mr. Berthold and Kevin Green of Teva. Messrs. Grauso and Green are Mr. Berthold's close, personal friends. Mr. Berthold talks with them by telephone nearly every day, often more than once a day. (*See e.g.* ¶ 1063). All of these calls were less than eight minutes long, and five were less than five minutes long.

Plaintiffs do not allege what was discussed or how these communications, amongst friends, is evidence of collusion.

2. **Drospirenone and ethinyl estradiol (Ocella)**

Drospirenone and ethinyl estradiol, commonly known by the brand name Ocella®, is a pair of drugs used in combination as an oral contraceptive. (¶ 276).

Plaintiffs allege that Lupin and Teva agreed to allocate customers for this drug in 2013, a year after Lupin began manufacturing the drug. They allege that Mr. Berthold called Green of Teva on April 24, 2013, and that they spoke for over three minutes. (¶ 279.) They also allege that Mr. Berthold spoke twice with Nisha Patel of Teva and once with Green on May 6, and once with Patel on May 7. (¶ 282.) Green spoke with Mr. Berthold twice on May 9, the first call for

5

one minute and the second for twelve minutes. (¶ 283.) Plaintiffs do not identify any statements Mr. Berthold made in any of these calls.

Plaintiffs allege that Green spoke to Mr. Berthold two times on July 10, 2013, for eight and two minutes, respectively, and that Patel called Mr. Berthold on the same day and spoke for more than four minutes. (¶ 286.) Patel spoke again with Mr. Berthold the next morning for less than one minute. (Id.)

Plaintiffs allege that on July 11, 2013, Lupin and Teva negotiated an agreement to allocate the market for Ocella. (¶ 287). Curiously, however, Plaintiffs further allege that on July 29, 2013, Defendant Green announced to his colleagues: "Lupin has entered and we need to evaluate" (¶ 289.) contradicting any suggestion that the calls between Berthold and others were in furtherance of a conspiracy to allocate the market.

Plaintiffs go on to allege that Green spoke to Mr. Berthold twice on September 6, 2013 (¶ 290), but do not identify any statement by Mr. Berthold. They also allege some kind of communication between Teva and Lupin in September and October, but do not allege who from Lupin participated, the dates of the communication, the method of the communication, or the substance of the communication.

### 3. Irbesartan

Irbesartan is a drug used in the treatment of hypertension. It prevents the narrowing of blood vessels, thus lowering the patient's blood pressure. Irbesartan is also known by the brand name Avapro®. (¶ 270).

Plaintiffs allege that Lupin entered into an agreement to allocate customers for Irbesartan in March 2012. The alleged conspiratorial conduct took place on two calls over the course of 24 hours. Specifically, Mr. Green of Teva called Mr. Berthold on March 6, 2012, and they talked

6

for 17 minutes. There is no record of what they discussed, but Plaintiffs allege that Green soon thereafter emailed his Teva colleagues that "Lupin is looking for a 15% share." Plaintiffs do not allege that Mr. Green was conveying a statement of Mr. Berthold or was surmising something from a collection of sources. Plaintiffs further allege that Mr. Green contacted Mr. Berthold a second time on March 7, 2012, and that they talked for nearly seven minutes. (¶ 275.) Ninety minutes later, Green told his Teva colleagues "which competitors were launching/not launching the drug" (id.) but the Plaintiffs do not allege that Green learned these details from Mr. Berthold.

Plaintiffs do not allege what was discussed or how these communications, amongst friends, is evidence of collusion.

4. **Norethindrone/ethinyl estradiol (Balziva®)**

Norethindrone/ethinyl estradiol, also known by the brand name Ovcon®35, is a combination of medications used as an oral contraceptive. Teva markets its generic version of this combination medication under the name Balziva®. (¶ 293).

Plaintiffs allege that on January 23, 2014, "a customer informed Teva that a new market entrant was seeking a share of its business." (¶ 294.) Plaintiffs admit that Teva "surmised" that the new entrant was Lupin. (¶ 294.) Although they allege that Patel talked with Mr. Berthold twice on January 24, 2014 (¶ 296), and twice on February 4, 2014 (¶ 298), they have no evidence beyond the existence of the calls themselves to support their allegations of market allocation. They do not allege any statement by Mr. Berthold. Plaintiffs also do not identify the customers Teva conceded, the date of the alleged agreement, or anything that Mr. Berthold did or said to consummate an agreement.

7

5. **Niacin**

Niacin Extended Release (ER), also known by the brand name Niaspan Extended Release, is a medication used to treat high cholesterol. (¶ 729).

Plaintiffs allegations against Lupin with respect to Niacin ER are sparse. Plaintiffs allege that Lupin entered the market for Niacin in March 2014 – at lower price than Teva – and Teva conceded a portion of the market to Lupin. (¶ 735). Plaintiffs allege calls to and from Mr. Berthold beginning in March 2014, but they do not identify any substance for the calls or any action he took as a result of those calls.

6. **Fenofibrate**

Fenofibrate—also known by brand names such as Tricor—is a medication used to treat cholesterol conditions by lowering "bad" cholesterol and fats (such as LDL and triglycerides) and raising "good" cholesterol (HDL) in the blood. (¶ 168).

It is unclear what Plaintiffs are alleging against Lupin and Mr. Berthold with respect to Fenofibrate.  Plaintiffs merely allege "On or about March 7, 2014, Defendant Zydus entered the Fenofibrate market at WAC pricing that matched Defendants Teva, Mylan, and Lupin. In the days leading up to the launch, Defendants from all four competitors were in regular contact with each other to discuss pricing and allocating market share to Zydus."  Plaintiffs allege that Teva conceded business to Zydus and Mylan, but do not allege any action Mr. Berthold or Lupin took as part of the alleged agreement to allocate markets.  Rather, Plaintiffs allege a number of telephone calls involving Mr. Berthold (¶¶ 172, 175, 177, 436, 441-42), but fail to identify the substance of the calls and fail to identify anything Lupin and Mr. Berthold did in preparation for, or in response to, those calls.

8

B. **The Price Fixing Scheme**

Second, the Complaint alleges that Teva conspired with its competitors to raise generic drug prices once the market had been established. (the "Price Fixing Scheme").  Specifically, the Amended Complaint outlines Teva's alleged attempt to artificially raise prices between 2012 and 2015 on several occasions: July 31, 2012, April 2013, May 24, 2013, July 3, 2013, July 19, 2013, August 9, 2013, March 7, 2014, April 4, 2014, April 15, 2014, July 1, 2014, August 28, 2014, and January 28, 2015.  On those occasions, Teva raised prices on at least 90 drugs.

Upon information and belief, of the 90+ generic drugs alleged to have been price fixed, Plaintiffs only allege that Mr. Berthold and Lupin conspired to price fix the price for two: Pravastatin and Cephalexin.

With respect to Cephalaxin, Plaintiffs concede that Lupin made an independent decision to raise its price in October 2013. (¶ 753).  Lupin did so without consideration of market share and without an agreement on whether or not other defendants would follow.  Several months later, in April 2014, Teva made a separate decision to raise prices on 22 drugs.  Of those drugs, Lupin only manufactured Cephalaxin, and had already made the independent business determination to raise the price on that drug the year prior.  Plaintiffs do not allege how Mr. Berthold conspired to artificially raise the price of Cephalaxin.

With respect to Pravastatin, other manufacturers -- Teva, Glenmark, Zydus, and Apotex --owned 95% of the market share for the drug's manufacture and sale.  Plaintiffs only allege that Teva, Glenmark, Zydus and Apotex entered an agreement to raise the price of the drug in 2013 and Lupin, who owned less than 5% of the market share "would follow." (¶ 668).  Plaintiffs do not allege how Mr. Berthold conspired to artificially raise the price of Pravastatin.

# ARGUMENT

I. **THE AMENDED COMPLAINT AGAINST MR. BERTHOLD MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM PURSUANT TO FED R. CIV. P. 12(B)(6)**

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . . is declared to be illegal." 15 U.S.C. § 1.

To sufficiently plead a Sherman Act claim pursuant to Section 1, "two essential requirements" must be satisfied. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 315 (3d Cir. 2010). First, the plaintiff must show "that the defendant was a party to a contract, combination ... or conspiracy." Second, the plaintiff must show "that the conspiracy to which the defendant was party imposed an unreasonable restraint on trade." Id.

Competition is at the heart of the antitrust laws; it is only *anticompetitive* conduct, or "a competition-reducing aspect or effect of the defendant's behavior," that antitrust laws seek to curtail. Philadelphia Taxi Ass'n, Inc v. Uber Techs., Inc., 886 F.3d 332, 338 (3d Cir. 2018) citing Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 344 (1990) (emphasis added). To that end, Section 1 "prohibits only agreements that unreasonably restrain trade." NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 133 (1998); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986) ("Conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy.").

Here, Plaintiffs attempt to allege a horizontal conspiracy between Mr. Berthold and others. Plaintiffs cannot, however, plead a horizontal conspiracy by pointing to supposedly parallel conduct by other corporate or individual defendants, which alone is insufficient to allege an agreement. Plaintiffs must allege wrongful, conspiratorial conduct by each individual

defendant.  See In re OSB Antitrust Litig., No. 06-826, 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007) (an antitrust "plaintiff must allege that each individual defendant joined the conspiracy and played some role in it.").   Allegations "of merely parallel conduct and a 'bare assertion of conspiracy' are insufficient" under the antitrust pleading standard, because "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." In re Processed Egg Prod. Antitrust Litig., 821 F. Supp. 2d 709, 718 (E.D. Pa. 2011) citing Twombly, 550 U.S. at 556–57.

Where, as here,  a complaint alleges a larger "overarching conspiracy," Plaintiffs must allege "particularized facts that each Defendant undertook certain acts, or engaged in certain conduct . . . that plausibly suggest that particular Defendant's embrace of that overarching conspiracy." Processed Egg, 821 F. Supp. 2d at 721; see also In re Digital Music Antitrust Litig., No. 06 MD 1780, 812 F.Supp.2d 390, 417 (S.D.N.Y. July 18, 2011) (recognizing that "generic references to 'defendants' " are "insufficient" in alleging direct involvement of individual defendants in the alleged conspiracy); Twombly, 550 U.S. at 565 n. 10 (recognizing that "a defendant seeking to respond to ... allegations in the § 1 context would have little idea where to begin" when a complaint fails to give notice of the claims against it).

Here, Plaintiffs do not, because they cannot, allege sufficient facts supporting even an inference of collusion by Mr. Berthold.  That is why they resort to arguing, in purely conclusory fashion that: 1) his participation in trade associations; and 2) his innocuous telephone calls presented an opportunity to conspire. Neither of those arguments meets the requisite pleading standard.

With regard to trade associations, Plaintiffs allege "[T]rade shows and customer conferences provide generic drug manufacturers, including but not limited to the Defendants,

11

with ample opportunity to meet, discuss, devise and implement a host of anti-competitive schemes that unreasonably restrain competition in the United States' market for generic drugs." (¶ 105). Courts routinely hold, however, that membership in trade associations is insufficient to create a plausible inference of conspiracy. Twombly, 550 U.S. at 567 n.12 (merely "belong[ing] to the same trade guild as one['s] . . . competitors" does not render conspiracy plausible); Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp., 947 F. Supp. 2d 88, 102 (D.D.C. 2013); Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1048 (9th Cir. 2008) (membership in association and participation on its board do not establish a horizontal agreement in violation of Section 1); Hinds Cnty., Miss. v. Wachovia Bank N.A., 708 F. Supp. 2d 348, 362 (S.D.N.Y. 2010) ("mere presence at industry associations and meetings" is insufficient to state a Section 1 claim). Plaintiffs' allegations that Mr. Berthold and others participated in trade association meetings and events shows little more than they are "capable of conspiring," not that they did in fact conspire. Vedder Software Grp. Ltd. v. Ins. Servs. Office, Inc., 545 F. App'x 30, 32 (2d Cir. 2013)

Because presence at trade associations and shows is insufficient as a matter of law, Plaintiffs seek to rely on innocuous, inconclusive telephone calls between defendants, arguing: "[I]n conjunction with the market allocation schemes, competitors in a particular market communicated -- either in person, by telephone, or by text message – and agreed to collectively raise and/or maintain prices for a particular generic drug." (¶ 13). Those allegations, too, must fail. Communications between competitors do not permit an inference of an agreement to fix prices unless "those communications rise to the level of an agreement, tacit or otherwise.'" In re Baby Food Antitrust Litig., 166 F.3d 112, 126 (3d Cir. 1999) (quoting Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1013 (3d Cir. 1994)).

Here, there is no record of what Mr. Berthold and other friends and competitors within the industry discussed on their calls, and there is no basis to conclude from the scant circumstantial evidence that he entered into an agreement to allocate customers or raise prices. In any event, the calls were not of the length or frequency necessary to negotiate and consummate a complex agreement to allocate customers. Such a scheme would require that the companies share sufficient information not only on contract pricing being offered, but also on any applicable discounts and rebates so that the other company could determine what it would need to offer in a artificial bid. Certainly, the amount of information that would need to be shared would not and could not have occurred over such sporadic phone calls. See, e.g., Burtch v. Milberg Factors, Inc., 662 F.3d 212, 228 (3d Cir. 2011) ("Appellant does not adequately plead circumstantial evidence of an agreement. Conversations between the [Defendants] do not alone raise an inference of an agreement.").

Accordingly, the Court should find that Plaintiffs have failed to plead an antitrust violation against David Berthold pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  THE AMENDED COMPLAINT IS BARRED BY THE FOUR-YEAR STATUTE OF LIMITATIONS APPLICABLE TO SHERMAN ACT VIOLATIONS

As set forth *supra*, Mr. Berthold is accused of a horizontal conspiracy to allocate markets and fix prices for generic drugs, in violation of section 1 of the Sherman Act. (Count Twenty of Amended Complaint, ¶ ¶ 1282 to 1290).

A suit under the Sherman Act must be "commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. An action "accrues" for Sherman Act purposes "when a defendant commits an act that injures a plaintiff's business." W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 105–06 (3d Cir.2010) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971)).

Here, the original Complaint was filed on May 10, 2019. (Dkt. 1). Accordingly, the last act in furtherance of the conspiracy necessarily must have been committed after May 10, 2015. There is no question here that Plaintiffs' injury—assuming they suffered one—occurred well outside the four years allotted by statute.

The most generous reading of the Amended Complaint concludes that the last act alleged against Mr. Berthold occurred on March 25, 2014, fourteen months before the statutory period. Specifically, the Amended Complaint alleges:

> On March 25, 2014, Patel e-mailed Rekenthaler stating "Need to discuss. NC pending, and new request for Ahold. We may not be aligned." Patel then sent an internal e-mail directing that Teva "concede" the Ahold business. Later that day, Patel called Green. He returned the call and they spoke for nearly eight (8) minutes. Patel also called Defendant Berthold of Lupin and they spoke for five (5) minutes.

(¶ 442).

Plaintiffs do not attribute any statements to Mr. Berthold for the "five (5) minutes" he and Patel spoke on March 24, 2014 and Mr. Berthold denies any conspiratorial objective for receiving the phone call. Nevertheless, even if Mr. Berthold's mild conduct could be considered conspiratorial, it still remains far outside the scope of the statute of limitations period.

Generously, giving the Plaintiffs the benefit of any plausible reading of the Amended Complaint, the claim against Mr. Berthold is still be barred by the applicable statute of limitations period.

### III.    PLAINTIFFS' PENDENT STATE LAW CLAIMS MUST BE DISMISSED

County Thirty-Five of the Amended Complaint purports to allege state law claims against "all Defendants." Although Mr. Berthold is not referenced, and it is unclear what, if any allegations, are alleged against Mr. Berthold, Plaintiffs' failure to state a claim under federal law

also warrants dismissal of their state claims in Count 35, because those claims are derivative of the federal claim.  See, e.g., St. Clair v. Citizens Fin. Grp., 340 F. App'x 62, 65 n.2 (3d Cir. 2009).

## CONCLUSION

For the foregoing reasons, Defendant David Berthold respectfully requests the Court dismiss the Plaintiffs' Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 15 U.S.C. § 1.

          **KLINGEMAN CERIMELE, ATTORNEYS**

          /s/ Henry E. Klingeman

          Henry E. Klingeman, Esq.
          Ernesto Cerimele, Esq.
          James Crudele, Esq.
          Attorneys for David Berthold
          60 Park Place, Suite 1100
          Newark, NJ 07102

**CERTIFICATE OF SERVICE**

      I, Henry E. Klingeman, hereby certify that a copy of Defendant David Berthold's Motion to Dismiss the October 31, 2019 State Attorneys General Plaintiffs' Amended Complaint was filed via the Court's electronic filing system on November 2, 2020 for all counsel of record and is available for viewing and downloading via the Court's ECF System.

                                                     /s/ *Henry E. Klingeman*