**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: *The State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE 19-cv-2407-CMR ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**CERTAIN DEFENDANTS' MOTION TO DISMISS**
**THE PLAINTIFF STATES' OCTOBER 31, 2019 AMENDED COMPLAINT**
**FOR VIOLATING THE DOCTRINE AGAINST CLAIM SPLITTING**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 4

    I.    The States Filed A Consolidated Amended Complaint Seeking To Hold All Named Corporate Defendants Jointly And Severally Liable For Participating In "The Overarching Conspiracy." ............................................. 4

    II.    Rather Than Amend Their First Complaint, The States Filed A Second Action That Again Alleges the Establishment of An "Overarching Conspiracy" As A Basis For Joint And Several Liability ...................................... 5

ARGUMENT ..................................................................................................................... 10

    I.    The States' Second Action Improperly Splits Claims. ....................................... 10

        A.    The States' First And Second Complaints Each Allege A "Fair Share"-Based "Overarching Conspiracy." ................................................ 12

        B.    The Two Actions Involve Many Of The Same Parties. ........................... 14

        C.    The Factual Allegations In The First Complaint Significantly Overlap With—And Are Purportedly Incorporated By Reference Into—The Second Complaint. ................................................................. 14

    II.    The Court Should Dismiss The Second Complaint Or, Alternatively, Require Removal Of Duplicative Allegations And Overlapping Theories Of Recovery. ......................................................................................................... 17

        A.    The Appropriate Remedy Is Dismissal Of The States' Second Complaint In Its Entirety. ...................................................................... 17

        B.    In The Alternative, The Court Should Require Removal Of The States' Duplicative Allegations And Overlapping Theories Of Recovery. ............................................................................................... 20

CONCLUSION ................................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agha-Khan v. United States*,
683 F. App'x 628 (9th Cir. 2017) .............................................. 12

*Agha-Khan v. United States*,
No. 15-00042, 2015 WL 5734380 (E.D. Cal. Sept. 29, 2015) .................... 12

*Alyeska Pipeline Serv. Co. v. United States*,
688 F.2d 765 (Ct. Cl. 1982) ................................................ 20

*Berger v. Weinstein*,
No. 08-4059, 2008 WL 4858318 (E.D. Pa. Nov. 10, 2008) ...................... 17

*Brain Life, LLC v. Elekta Inc.*,
746 F.3d 1045 (Fed. Cir. 2014) ............................................. 20

*Brown & Brown, Inc. v. Blumenthal*,
1 A.3d 21 (Conn. 2010) .................................................. 6, 18

*DIRECTV, Inc. v. Kitzmiller*,
No. 03-3296, 2004 WL 834703 (E.D. Pa. Mar. 31, 2004) ...................... 13

*Dubuc v. City of Tulsa*,
No. 98-5140, 1999 WL 668823 (10th Cir. Aug. 27, 1999) ..................... 12

*Egli v. Strimel*,
251 F. Supp. 3d 827 (E.D. Pa. 2017) ....................................... 16

*Fabics v. City of New Brunswick*,
629 F. App'x 196 (3d Cir. 2015) .......................................... 17

*Finjan, Inc., v. Blue Coat Sys., LLC*,
230 F. Supp. 3d 1097 (N.D. Cal. 2017) ................................. 20, 21

*Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*,
95 F.3d 358 (5th Cir. 1996) .............................................. 18

*Gregory v. Chehi*,
843 F.2d 111 (3d Cir. 1988) .............................................. 16

*Hudson v. United States*,
522 U.S. 93 (1997) ....................................................... 22

*Hutchins v. United Parcel Serv., Inc.*,
197 F. App'x 152 (3d Cir. 2006) ................................................................................. 17

*In re Generic Pharm. Pricing Antitrust Litig.*,
394 F. Supp. 3d 509 (E.D. Pa. 2019) .................................................................. 13, 20

*Katz v. Gerardi*,
655 F.3d 1212 (10th Cir. 2011) ................................................................................. 11

*McKenna v. City of Phila.*,
304 F. App'x 89 (3d Cir. 2008) ................................................................... 14, 17, 20

*Moore v. N.Y. Cotton Exch.*,
270 U.S. 593 (1926) .................................................................................................. 11

*Prewitt v. Walgreens Co.*,
No. 12-6967, 2013 WL 6284166 (E.D. Pa. Dec. 2, 2013) .................................. 10, 20

*Protocomm Corp. v. Novell, Inc.*,
No. 94-7774, 1998 WL 351605 (E.D. Pa. June 30, 1998) ........................................ 15

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
682 F.3d 1043 (D.C. Cir. 2012) ................................................................................ 16

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
800 F. Supp. 2d 182 (D.D.C. 2011) ........................................................................... 16

*Schneider v. United States*,
301 F. App'x 187 (3d Cir. 2008) ............................................................................... 17

*Sensormatic Sec. Corp. v. Sensormatic Elec. Corp.*,
273 F. App'x 256 (4th Cir. 2008) ............................................................................. 18

*Serlin v. Arthur Andersen & Co.*,
3 F.3d 221 (7th Cir. 2012) ........................................................................................ 11

*Silva v. Yosemite Cmty. Coll. Dist.*,
No. 19-00795, 2019 WL 6878237 (E.D. Cal. Dec. 17, 2019) .................................. 16

*Stark v. Starr*,
94 U.S. 477 (1876) .................................................................................................... 10

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .................................................................................................. 14

*United States ex rel. Lisitza v. Par Pharm. Cos., Inc.*,
62 F. Supp. 3d 743 (N.D. Ill. 2014) ............................................................. 13

*United States v. Athlone Industries, Inc.*,
746 F.2d 977 (3d Cir. 1984) ......................................................................... 12

*United States v. Haytian Republic*,
154 U.S. 118 (1894) ...................................................................................... 10

*United States v. Kelly*,
892 F.2d 255 (3d Cir. 1989) ......................................................................... 19

*United States v. Mississippi*,
380 U.S. 128 (1965) ...................................................................................... 13

*Vanover v. NCO Financial Services, Inc.*,
857 F.3d 833 (11th Cir. 2017) ......................................................... 11, 12, 16

*Walton v. Eaton Corp.*,
563 F.2d 66 (3d Cir. 1977) .............................................................. 10, 14, 17

*Xerox Corp. v. SCM Corp.*,
576 F.2d 1057 (3d Cir. 1978) ................................................................ 11, 15

*Zerilli v. Evening News Ass'n*,
628 F.2d 217 (D.C. Cir. 1980) ..................................................................... 17

*Zisumbo v. Ogden Regional Med. Ctr.*,
536 F. App'x 832 (10th Cir. 2013) ............................................................... 18

**Statutes**

Conn. Gen. Stat. § 35 ............................................................................... 6, 18

NY Gen. Bus. Law § 342 ........................................................................ 21, 22

Wis. Stat. § 133.03(1) .................................................................................. 22

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4404.................... 11

Fed. R. Civ. P. 13 ............................................................................................................. 11

Restatement (Second) of Judgments § 24............................................................................ 11, 12

Restatement (Second) of Judgments § 25 .................................................................................. 15

## <u>INTRODUCTION</u>

It is well-settled that a claimant may only recover once on the same claim. Courts have fashioned doctrines such as claim and issue preclusion (*res judicata* and collateral estoppel) to prevent relitigation of claims and issues. Courts have also developed rules to prevent duplicative parallel litigation, requiring plaintiffs to assert all claims arising out of the same "transaction or occurrence" in a single action and defendants to similarly assert as compulsory counterclaims their own claims arising out of the same "transaction or occurrence" underlying the plaintiff's claims. The long-recognized rule against claim splitting, which is an essential part of the body of law designed to protect both the rights of the parties and the integrity and efficiency of the judicial system, mandates that related claims be brought together in a single cause of action. Nevertheless, the Plaintiff States (or "the States") have violated that rule by splitting across serial overlapping complaints their claims that Defendants engaged in an alleged "overarching," industry-wide price-fixing conspiracy.

The States' pleading tactics have caused delay, spawned numerous overlapping private complaints, and consumed the Court's resources. If not corrected now (or later barred by *res judicata*), these tactics risk subjecting Defendants to duplicative litigation and duplicative recovery. And to the extent the States now suggest that each of their complaints asserts different, distinct claims, their pleadings fail to identify the boundaries between them. In the interest of due process, effective case management, and faithful application of binding precedent, this Court must reject the States' attempts to split claims across multiple complaints.

In July 2018, the States filed a consolidated amended complaint, alleging an "overarching conspiracy" among generic manufacturers ("First Complaint"). That action, which remains pending, alleges that defendants had a general understanding on pricing and allocation of business that is purportedly conducive to conspiratorial behavior. Based on that alleged understanding, the

States claim that the named defendants fixed prices and/or allocated customers for fifteen specific products.   In addition, the States claim that each corporate defendant named in that case participated in an alleged industry-wide "overarching conspiracy" based on the purported understanding of each defendant's "fair share" of the market, and seek to hold each named corporate defendant jointly and severally liable for the conduct of all other named corporate defendants (even for products they did not manufacture), based on the alleged participation in the "overarching conspiracy."

Approximately one year later, the States filed a new action in the District of Connecticut against many of the same defendants and certain other defendants not named in the First Complaint ("Second Complaint" or "Second Action").   The States did not amend the First Complaint— presumably because of (a) this Court's scheduling order limiting amendments to existing complaints, and (b) Connecticut's prohibition against using post-complaint evidence gathered through Connecticut's state-law-based investigative subpoenas as a means to prosecute the First Complaint.   Nor did the States limit the Second Complaint to new and distinct conduct that did not have a "common nucleus of operative facts" or overlapping claims with the First Complaint. Rather, the Second Complaint, like the First Complaint, claims that Defendants—many of which are named in both complaints—participated in an industry-wide "overarching conspiracy," effectuated through the same underlying mechanism: a "fair share" understanding.   The Second Complaint contains numerous entire paragraphs lifted verbatim from the First Complaint and goes so far as to purport to incorporate the entirety of the First Complaint by reference.[1]

---

[1] See Second Compl. ¶ 937 ("Heritage's successful effort to coordinate price increases with Teva on seven drugs … is described in the Plaintiff States' Consolidated Amended Complaint dated

Undersigned Defendants respectfully submit that the proper remedy for the States' claim splitting is dismissal of the Second Complaint in its entirety.  In the alternative, Defendants request that the Court dismiss the Second Complaint without prejudice with to leave to refile subject to the removal of (i) overlapping factual allegations, claims, and legal theories (*e.g.*, removal of the States' incorporation of the First Complaint by reference and the States' demand for joint and several liability based on an "overarching conspiracy" that has already been pled), and (ii) any duplicative statutory penalties or other duplicative relief sought.[2]

---

June 15, 2018, MDL No. 2724, 2:17-cv-03768 (E.D. Pa.), which is incorporated herein by reference.").

In June 2020, the Plaintiff States filed yet another complaint in the District of Connecticut (the "Third Complaint"), one year after the Second Complaint.  The Third Complaint again seeks to hold each named corporate defendant jointly and severally liable for the conduct of the other named corporate defendants as participants in "the overarching conspiracy."  As with the Second Complaint, Defendants in that case also requested that the JPML transfer the States' Third Complaint to the MDL, which is now docketed at 20-cv-03539 (E.D. Pa.).  That complaint involves some of the same products as the Second Complaint.  The Court has not yet scheduled motions to dismiss the Third Complaint, which is therefore not at issue in this Motion, and this Motion to Dismiss is filed without waiver of any other pending motions to dismiss.

[2] Under this alternative form of relief, the States would still be afforded the opportunity to refile their complaint after the removal of overlapping elements and pursue non-duplicative relief for product-specific conspiracies alleged in the Second Complaint that do not factually overlap with the allegations in the First Complaint.  Such a result would not affect the Court's current schedule for bellwether trials, but would provide necessary relief to avoid prejudice to Defendants' from the States' claim splitting.  Any alternative relief, such as ordering consolidation of the States' complaints, would violate Connecticut law, prejudice defendants not named in all of the States' complaints, and impermissibly allow the States to make an end-run around the Court's prior case management orders.

## BACKGROUND

I.     **The States Filed A Consolidated Amended Complaint Seeking To Hold All Named Corporate Defendants Jointly And Severally Liable For Participating In "The Overarching Conspiracy."**

In November 2017, the States sought leave to file a consolidated amended complaint that would expand their first complaint from two products to fifteen. *See State of Connecticut, et al. v. Aurobindo Pharma USA, Inc., et al.*, No. 17-cv-3768 (ECF No. 3); June 5, 2018 Order (ECF No. 6) (granting leave to amend); Pls.' Consl. Am. Compl. (ECF Nos. 14, 15) ("First CAC" or "First Complaint"). The States' First Complaint centers around fifteen specific products manufactured and sold by defendant Heritage Pharmaceuticals, Inc. ("Heritage") and names nineteen other companies and individuals as defendants. The First Complaint alleges individual conspiracies regarding these fifteen products and also seeks to hold all named corporate defendants "jointly and severally liable" for all conduct alleged in the First Complaint pursuant to an alleged "overarching conspiracy," even where a corporate defendant did not manufacture or sell a particular product. *See, e.g.*, First CAC ¶ 597.

The States claim that the overarching, industry-wide conspiracy alleged in the First Complaint was implemented through "interactions at various and frequent industry trade shows, customer conferences and other similar events[.]" First CAC ¶ 9. While Heritage is alleged to be a "consistent participant in conspiracies identified" the First Complaint also alleges that the "conduct is pervasive and industry-wide" and thus "part of a larger, overarching understanding about how generic manufacturers fix prices and allocate markets to suppress competition[.]" *Id.* ¶ 11. Defendants' conduct, the States allege, "falls principally into two categories, the overarching goal being to avoid price erosion and maintain inflated pricing within and across their respective broad product portfolios and, at times, increase pricing for targeted products without triggering a 'fight to the bottom' among existing competitors." *Id.* ¶ 12. The States allege that the defendants

would "communicate[] with each other to determine and agree on how much market share and which customers each competitor was entitled to." *Id.* According to the States, defendants "then implemented the agreement by either refusing to bid for particular customers or by providing a cover bid that they knew would not be successful." *Id.*

The underlying mechanism of the alleged overarching conspiracy, according to the States, was a shared understanding to establish market allocation based on a competitor's "fair share" of the market. According to the States, this mechanism existed as to all products:

> Defendants here understood and acted upon an underlying code of conduct that is widespread in the generics industry: an expectation that any time a company is entering a particular generic drug market, it can contact its competitors and allocate the market according to a generally agreed-upon standard of "**fair share**" in order to avoid competing and keep prices high. **While different drugs may involve different sets of companies, this background understanding remains constant and is an important component of the Defendants' ability to reach agreements for specific drugs**.

First CAC ¶ 14 (emphasis added).

**II.    Rather Than Amend Their First Complaint, The States Filed A Second Action That Again Alleges the Establishment of An "Overarching Conspiracy" As A Basis For Joint And Several Liability.**

This Court entered an order on November 20, 2018 that any "amendment to any currently outstanding complaint ***must*** be made on or before December 21, 2018." Pretrial Order No. 61 ¶ I.1 (ECF No. 775) (emphasis added). The Court ordered that, absent leave, "[n]o further amendments [were] permitted after that date." *Id.* The States let that amendment deadline pass without action. Nearly five months after that deadline expired, the States filed another complaint in the District of Connecticut, asserting, verbatim, many of the same allegations as in their First Complaint—and, in fact, purporting to incorporate the entire First Complaint by reference. *See*

*State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, No. 19-cv-710 (D. Conn.) (ECF No. 1) ("Second Complaint" or "Second Action") ¶ 937.[3]

The Plaintiff States appear to have filed the Second Action instead of seeking leave to amend their First Complaint not only to avoid this Court's deadline for amended complaints but also because the Connecticut Attorney General continued to issue investigative subpoenas following the filing of its initial action.  As noted by the Court in response to Defendants' Motion to Enforce Procedural and Discovery Orders, Connecticut law permits investigative subpoenas only to be used to obtain pre-complaint discovery.  *See* Nov. 14, 2018 Order (No. 16-md-2724 ECF No. 758) at 8 (quoting Conn. Gen. Stat. § 35-42(a)) (noting that the Connecticut attorney general may only issue investigatory subpoenas "*prior* to instituting *any* action or proceeding") (emphasis added); *see also Brown & Brown, Inc. v. Blumenthal*, 1 A.3d 21, 25-26 (Conn. 2010) ("General Statutes § 35-42 . . . authorizes the attorney general to demand, *prior to the institution of any action or proceeding*, discovery from any person whom he has reason to believe has violated any portion of the Connecticut Antitrust Act") (emphasis added).  During a hearing on Defendants' Motion to Enforce, counsel for the States represented to the Court that "[a]ny subpoenas that have been issued by the States since we initiated the lawsuit have not been intended to further discovery in [this] litigation."  July 11, 2018 Tr. at 36:17-20 (No. 16-md-2724 ECF No. 652).

---

[3] After the States filed their Second Complaint in the District of Connecticut, Defendants requested that the Judicial Panel on Multidistrict Litigation transfer the States' Second Complaint to this MDL, and it was subsequently transferred and docketed as No. 19-cv-02407 (E.D. Pa.).  Several months later, the States amended their Second Complaint, which is now subject to this Motion to Dismiss pursuant to the applicable scheduling order.  *See* ECF No. 106 ("Second Am. Compl."); ECF No. 181 (setting responsive pleading deadline).  For brevity, the Second Amended Complaint is also referred to as the "Second Complaint."

The States' Second Complaint belies that representation.  Although encompassing many additional generic products, the Second Complaint relies on a common nucleus of factual allegations and asserts an alleged "overarching conspiracy" that substantially overlaps with the "overarching conspiracy" alleged in the States' First Complaint.  Just as in the First Complaint, the States rely on these factual allegations and legal theories in an attempt to establish an overarching conspiracy against many—but not all—of the same named corporate defendants.  A comparison of allegations in the two Complaints is instructive:

| Plaintiff States' First Complaint | Plaintiff States' Second  Complaint |
|---|---|
| "Defendant Heritage is a consistent participant in the conspiracies identified in this Complaint, but the conduct is pervasive and industry-wide and **the schemes identified herein are part of a larger, overarching understanding about how generic manufacturers fix prices and allocate markets to suppress competition**."  First CAC ¶ 11 (emphasis added). | "Defendant Teva is a consistent participant in the conspiracies identified in this Amended Complaint, but the conduct is pervasive and industry-wide.  **The schemes identified herein are part of a larger, overarching understanding about how generic manufacturers fix prices and allocate markets to suppress competition**."  Second Am. Compl. ¶ 15 (emphasis added). |
| "Plaintiff States … allege that Defendants participated in an overarching conspiracy, the effect of which was to minimize if not thwart competition across the generic drug industry."  *Id.* ¶ 2. | "Plaintiff States … allege that Defendants participated in an overarching conspiracy, the effect of which was to minimize if not thwart competition across the generic drug industry."  *Id.* ¶ 6. |
| "The overarching conspiracy was effectuated by a series of conspiracies that affected and continue to affect the market for a number of generic drugs identified in this Consolidated Amended Complaint."  *Id.* | "The overarching conspiracy was effectuated by a series of conspiracies that affected and continue to affect the market for a number of generic drugs identified in this Amended Complaint."  *Id.* |

| Plaintiff States' First Complaint | Plaintiff States' Second Complaint |
|---|---|
| "High-level executives of many generic drug manufacturers get together periodically for what some of them refer to as 'industry dinners.' For example, in January 2014, at a time when the prices of a number of generic drugs were reportedly soaring, at least thirteen (13) high-ranking executives, including CEOs, Presidents and Senior Vice Presidents of various generic drug manufacturers, met at a steakhouse in Bridgewater, New Jersey." *Id.* ¶ 83. | "High-level executives of many generic drug manufacturers get together periodically for what some of them refer to as 'industry dinners.' For example, in January 2014, at a time when the prices of a number of generic drugs were reportedly soaring, at least thirteen (13) high-ranking executives, including CEOs, Presidents and Senior Vice Presidents of various generic drug manufacturers, met at a steakhouse in Bridgewater, New Jersey." *Id.* ¶ 108. |
| "Some generic pharmaceutical sales representatives also get together regularly for what they refer to as a 'Girls Night Out' ('GNO'), or alternatively 'Women in the Industry' meeting or dinner. During these events, the sales representatives meet with their competitors and discuss competitively sensitive information." *Id.* ¶ 85. | "Some generic pharmaceutical sales representatives also get together regularly for what they refer to as a 'Girls Night Out' ('GNO'), or alternatively 'Women in the Industry' meeting or dinner. During these events, the sales representatives meet with their competitors and discuss competitively sensitive information." *Id.* ¶ 111. |
| "Many 'Women in the Industry' dinners were organized by a salesperson from Defendant Heritage, A.S., who resides in the State of Minnesota." *Id.* ¶ 86. | "Many 'Women in the Industry' dinners were organized by A.S., a salesperson from non-Defendant Heritage Pharmaceuticals, Inc. who resides in the State of Minnesota." *Id.* ¶ 112. |
| **"The overarching conspiracy among generic manufacturers, however – which ties together all of the agreements on individual drugs identified in this Complaint – is an agreement that each competitor is entitled to its 'fair share' of the market**, whether the market is a particular generic drug, or a number of generic drugs. 'Fair share' is an approximation of how much market share each competitor is entitled to, based on the number of competitors in the particular drug market, with a | **"The overarching conspiracy among generic manufacturers, however – which ties together all of the agreements on individual drugs identified in this Complaint – is an agreed-upon code that each competitor is entitled to its 'fair share' of the market**, whether that market is a particular generic drug, or a number of generic drugs. Coined 'fair share,' the term is generally understood as an approximation of |

| Plaintiff States' First Complaint | Plaintiff States' Second Complaint |
|---|---|
| potential adjustment based on the timing of their entry." *Id.* ¶ 90 (emphasis added). | how much market share each competitor is entitled to, based on the number of competitors in the market, with a potential adjustment based on the timing of entry." *Id.* ¶ 116 (emphasis added). |
| "As participants in **the overarching conspiracy**, the corporate Defendants are **jointly and severally liable** for any harm caused as a result of the conspiracy." *See, e.g., id.* ¶ 476 (emphasis added). | "As participants in **the overarching conspiracy**, the corporate Defendants are **jointly and severally liable** for any harm caused as a result of the conspiracy." *See, e.g., id.* ¶ 1153 (emphasis added). |

While each complaint alleges product-specific conduct related to various individual products primarily manufactured by Heritage and Teva, respectively (*see* First CAC ¶ 11; Second Am. Compl. ¶ 15),[4] they both rest on the establishment of an "overarching conspiracy" based on an alleged "fair share" understanding, covering the same basic time period, and thereby seek to hold each named corporate defendant jointly and severally liable for conduct related to products they did not manufacture. *Compare* First CAC ¶ 476 *with* Second Am. Compl. ¶ 1153. The States also allege in each complaint that the claimed overarching conspiracy "minimize[d] if not thwart[ed] competition across the generic drug industry," First CAC ¶ 2, Second Am. Compl. ¶ 6, at a minimum, blurring any distinction between the scope of the conspiracies asserted in each pleading.

_____

[4] Of note, Teva is alleged to have manufactured most—but not all—of the products in the Second Complaint. The States' inclusion of approximately seven products in the Second Complaint that Teva does not manufacture belies any suggestion that the Second Complaint is purely focused on a "Teva-centric" conspiracy.

As discussed below, the proper remedy for the Plaintiff States' inclusion of claims and facts that had already been pled in an earlier complaint is dismissal or, alternatively, striking overlapping elements. While courts have at times ordered the consolidation of complaints that involve split claims, consolidating the two complaints in this case would be inequitable to defendants named in a single complaint only, *see infra* at 18-19, and would violate Connecticut's statutory prohibition that investigatory subpoenas may not be used to gather discovery for pending litigation.

## ARGUMENT

I.    **The States' Second Action Improperly Splits Claims.**

The prohibition on claim splitting is a "longstanding rule" that forbids plaintiffs "from prosecuting [a] case piecemeal and requires that all claims arising out of a single alleged wrong be presented in one action." *Prewitt v. Walgreens Co.*, No. 12-6967, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013) (citing *United States v. Haytian Republic*, 154 U.S. 118, 123-24 (1894)). The prohibition on claim splitting is a "rule against duplicative litigation." *Id.*

Under this rule, plaintiffs have "no right to maintain two separate actions involving the same subject matter at the same time in the same court against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977); *see also Stark v. Starr*, 94 U.S. 477, 485 (1876) (a plaintiff is "not at liberty to split up his demand and prosecute it by piecemeal[] or present only a portion of the grounds upon which special relief is sought").

Like *res judicata*, which applies after a final judgment, the rule against claim splitting applies the same test before a final judgment to promote "judicial economy by protecting defendants from having to defend against multiple identical, or nearly identical, lawsuits and by protecting courts from having to expend judicial resources on piecemeal litigation." *Prewitt*, 2013

WL 6284166, at *5;[5] *see also Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) (claim splitting wastes "scarce judicial resources" and undermines "the efficient and comprehensive disposition of cases").[6]

A second action runs afoul of the doctrine against claim splitting if it arises from the same transaction or series of transactions or involves "the same nucleus of operative facts." *Vanover v. NCO Financial Services, Inc.*, 857 F.3d 833, 842 (11th Cir. 2017); *see Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 2012) ("[A] suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions."). Whether a series of multiple occurrences involves a single transaction or common nucleus of operative facts depends on "their logical relationship." *See* Restatement (Second) of Judgments § 24 Reporter's Note (1982) (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)); *see also Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978) (a "logical relationship" exists where separate trials would involve duplication of effort and time by parties and courts).[7]

---

[5] *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4404 (noting that a "growing trend" among courts is to "import the tests of claim preclusion into a 'claim-splitting' doctrine … to dismiss an action that presents the same claim, as measured by claim-preclusion tests, as another pending action"). A similar standard applies to compulsory counterclaims. *See* Fed. R. Civ. P. 13(a) (a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim").

[6] Judicial economy is particularly relevant here where, following the States' lead, private plaintiffs have similarly split claims across a variety of complaints and continue to file new—and often overlapping—complaints long after the initial deadlines set by the Court. The "moving target" from these various complaints has consumed significant time and resources of both the parties and the Court.

[7] While there is no "mathematically precise definition" of "transaction, or series of transactions," what "factual grouping" counts as such is "determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties'

Here, the States have brought separate lawsuits asserting the existence of an "overarching understanding" that is "pervasive and industry-wide" to allocate customers and/or maintain and fix prices for generic products based on a common "fair share" understanding.  *Compare, e.g.*, First CAC ¶ 11 *with* Second Am. Compl. ¶ 15; *see also id.* ¶ 143 (alleging the "truly industry-wide nature of the agreement").  As a matter of logic, however, there can be only one *industry-wide* "overarching conspiracy" through a common understanding or agreement to fix prices or refrain from competition based on each defendant's "fair share" of the market—and the States have pled no basis to distinguish the overarching conspiracies claimed in the First and Second Complaints.

A.     **The States' First And Second Complaints Each Allege A "Fair Share"-Based "Overarching Conspiracy."**

Courts have held that where, as here, the "same alleged conspiracy" is asserted in multiple complaints, the "operative facts" test is satisfied.  *See, e.g.*, *Agha-Khan v. United States*, No. 15-00042, 2015 WL 5734380, at *3-4 (E.D. Cal. Sept. 29, 2015) (granting motion to dismiss where the second complaint involved "the same alleged massive overarching conspiracy of fraud and the same alleged nucleus of facts"), *aff'd*, 683 F. App'x 628 (9th Cir. 2017); *Dubuc v. City of Tulsa*, No. 98-5140, 1999 WL 668823, at *2 (10th Cir. Aug. 27, 1999) (same transaction where second action involves "same alleged conspiracy").  Moreover, alleged acts in furtherance of the "overarching conspiracy" are "substantially of the same sort and similarly motivated[.]" Restatement (Second) of Judgments § 24, cmt. d; *see also United States v. Mississippi*, 380 U.S.

---

expectations."  Restatement (Second) of Judgments § 24 (2) & cmt. b (1982); *see also Vanover*, 857 F.3d at 842; *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984).  While no factor is dispositive, courts consider the overlap in witnesses and proof between the actions—if "there is substantial overlap, the second action should ordinarily be excluded[.]"  Restatement (Second) of Judgments § 24, cmt. b.  In all events, the pragmatic test is meant to compel parties with the capacity to do so "to present their 'entire controversies'" in one case.  *Id.* cmt. a.

128, 142-43 (1965) (state registrars acting over time "as part of a state-wide system designed to enforce registration laws" in a discriminatory manner constitutes one "series of transactions or occurrences").

By contrast, courts have held that a second case involves a *separate* transaction or nucleus of operative facts where the second complaint does *not* allege that "defendants acted pursuant to a common plan or scheme," *DIRECTV, Inc. v. Kitzmiller*, No. 03-3296, 2004 WL 834703, at *1 n.1 (E.D. Pa. Mar. 31, 2004), or where the two complaints involve "separate alleged schemes with different financial incentives." *United States ex rel. Lisitza v. Par Pharm. Cos., Inc.*, 62 F. Supp. 3d 743, 750-52 (N.D. Ill. 2014). Those circumstances do not apply here. The States claim, in both their First and Second Complaints, that multiple overlapping defendants participated in the "overarching conspiracy" affecting the entire generic pharmaceutical industry during the same general time period based on a purported "fair share" understanding of market allocation. *See supra* at 7-9 (quoting verbatim allegations regarding Defendants' participation in the "overarching conspiracy").

Indeed, in this Court's order denying Defendants' motion to dismiss the overarching conspiracy claims from the States' First Complaint (and other private-plaintiff complaints), the Court noted that the States' First Complaint purports to "reach[] beyond [the Defendants'] individual drugs." *See In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 526 (E.D. Pa. 2019). The Second Complaint purports to do the same. In practical terms, each of these two separate cases thus raises, and will have to address, whether and when the alleged industry-wide understanding was reached, and by whom. The rule against claim splitting exists to prevent precisely such duplication.

**B.      The Two Actions Involve Many Of The Same Parties.**

While the Second Complaint adds several new defendants and omits a handful of defendants named only in the First Complaint, most of the same entities—plaintiffs and defendants—are common to both complaints.[8]   And the States seek to hold the corporate defendants named in each complaint "jointly and severally" liable for all harm alleged in each complaint.  *See, e.g.*, First CAC ¶ 541; Second Am. Compl. ¶ 1153.  This is improper.  *See McKenna v. City of Phila.*, 304 F. App'x 89, 93 (3d Cir. 2008) (quoting *Walton*, 563 F.2d at 71) (*Walton* prohibits prosecution of different complaints involving the same "subject matter").  The presence of additional Plaintiff States in the Second Amended Complaint does not alter the analysis:  such states are "adequately represented" by States that have "the same interests[.]"  *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008).

**C.      The Factual Allegations In The First Complaint Significantly Overlap With—And Are Purportedly Incorporated By Reference Into—The Second Complaint.**

It is well-settled that plaintiffs must allege "all facts forming the underlying transactions" in the first case; plaintiffs cannot withhold additional acts arising out of the same "scheme" and later raise them in a new case.  *See Protocomm Corp. v. Novell, Inc.*, No. 94-7774, 1998 WL

---

[8]  Overlapping Plaintiff States include: Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.  Overlapping Defendants include: Actavis Holdco US, Inc.; Actavis Pharmaceuticals, Inc.; Apotex Corp.; Aurobindo Pharmaceuticals USA., Inc.; Dr. Reddy's Laboratories, Inc.; Glenmark Pharmaceuticals, Inc., USA; Lannett Company, Inc.; Mylan Pharmaceuticals, Inc.; Par Pharmaceutical Companies, Inc.; Sandoz, Inc.; Teva Pharmaceuticals USA, Inc.; and Zydus Pharmaceuticals (USA), Inc.

351605, at *6 (E.D. Pa. June 30, 1998); *see also* Restatement (Second) of Judgments § 25, cmt. a (1982) ("The rule of § 24 puts some pressure on the plaintiff[s] to present all [their] material relevant to the claim in the first action; this is similar to the coercion on the defendant to produce all [its] defenses[.]").  Even if plaintiffs plan, in a second action, to "present [additional] evidence [i.e., 'facts'] or grounds [i.e. 'facts grouped under a legal characterization']" or to seek additional remedies, they cannot maintain the second action if they could have raised those facts, grounds, or remedies in the related first action.  Restatement (Second) of Judgments § 25, cmt. a.

Here, the factual allegations in the States' two complaints are far more than "offshoots of the same basic controversy." *Xerox Corp.*, 576 F.2d at 1059.  For example, each complaint alleges that (1) there is an industry-wide, overarching scheme to "fix prices and allocate markets to suppress competition," First CAC ¶ 11; Second Am. Compl. ¶ 15; (2) this overarching scheme arose from connections made at "industry trade shows, customer conferences and similar events," along with industry dinners, "girls nights out," and frequent calls and emails, First CAC ¶¶ 9, 83, 85-86; Second Am. Compl. ¶¶ 13, 108, 111-12; (3) defendants agreed on how much market share any given participant would have in certain generic markets, First CAC ¶ 12; Second Am. Compl. ¶ 16; (4) defendants agreed to collectively raise or maintain specific prices for particular generic pharmaceutical products, First CAC ¶ 13; Second Am. Compl. ¶ 17; and (5) the underlying conduct at issue is primarily alleged to have taken place in the same time period, First CAC ¶ 110; Second Am. Compl. ¶ 536.  An alleged "fair share" code of conduct is alleged in both complaints to define the same alleged conspiracy to divvy up market share and set or raise specific prices.  First CAC ¶ 14; Second Am. Compl. ¶ 18.  And both complaints seek to hold all defendants jointly and severally liable for all harm caused by this same alleged conspiracy.  First CAC ¶ 476; Second Am. Compl. ¶ 1153.

15

The addition of facts that could have been presented in the first case is generally insufficient to overcome either "res judicata's bar," *see Egli v. Strimel*, 251 F. Supp. 3d 827, 839–40 (E.D. Pa. 2017) (Rufe, J.), or the related prohibition on claim splitting.[9]   Nor should courts focus on "technical differences between" two actions; they instead should "take a broad view of the subject, and bear in mind the actual purpose to be attained."  *Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir. 1988) (citations omitted); *see Silva v. Yosemite Cmty. Coll. Dist.*, No. 19-00795, 2019 WL 6878237, at *8 (E.D. Cal. Dec. 17, 2019) (introducing additional examples of where actions furthering "the same alleged conspiracy" cannot overcome the res judicata, or claim splitting, hurdle).

So long as the alleged wrongs "occurred consecutively in time and prior to filing the [first] complaint," even if the timeframes differed somewhat, they are still substantially related.  *See Vanover*, 857 F.3d at 842-43.  This applies even to new facts, still part of the same nucleus, that are discovered during the first case.  *See, e.g.*, *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182, 192-93 (D.D.C. 2011), *aff'd*, 682 F.3d 1043 (D.C. Cir. 2012).

---

[9] As discussed above, the test for *res judicata* is similar to the test for claim splitting, but is applied prior to a final judgment.  *See supra* at 10.  The two related doctrines, however, may yield different results in this case.  If the Court were to deny Defendants' Motion to Dismiss and instead rely on principles of *res judicata* to address the issue of overlapping claims, the Court's current bellwether schedule would result in a potential trial relating to claims that would have, in the normal course, been litigated after the First Complaint and thereby subject to preclusion.  Because the Second Complaint has been selected as a bellwether case, it is all the more imperative for the Court to apply the prohibition against claim splitting to the Second Complaint without waiting for *res judicata* to attach to a final judgment.

II.     **The Court Should Dismiss The Second Complaint Or, Alternatively, Require Removal Of Duplicative Allegations And Overlapping Theories Of Recovery.**

      A.     **The Appropriate Remedy Is Dismissal Of The States' Second Complaint In Its Entirety.**

The proper remedy for Plaintiff States' improper claim splitting is dismissal of the Second Complaint.  As the Third Circuit has explained, a district court has the "power to administer its docket and dismiss a suit that is duplicative of another suit in federal court." *Schneider v. United States*, 301 F. App'x 187, 190 (3d Cir. 2008) (per curiam) (affirming dismissal of duplicative lawsuit); *see also Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980) (affirming dismissal of second case on account of claim splitting (citing *Walton*, 563 F.2d at 70)).

Indeed, dismissal with prejudice is appropriate where, as here, the States not only split their claims, but made an end-run around the proper procedures and deadline for filing a motion to amend the First Complaint.  In that circumstance, dismissal is the appropriate remedy to vindicate the Third Circuit's directive that a "District Court [is] bound by *Walton* to 'insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints.'"  *McKenna*, 304 F. App'x  at 93 (quoting *Walton*, 563 F.2d at 71); *see also Fabics v. City of New Brunswick*, 629 F. App'x 196, 198 (3d Cir. 2015); *Hutchins v. United Parcel Serv., Inc.*, 197 F. App'x 152, 160 (3d Cir. 2006).[10]

---

[10] While district courts facing duplicative complaints as a result of claim splitting have exercised their discretion to stay the subsequent case or dismiss without prejudice in circumstances not present here, *see, e.g.*, *Berger v. Weinstein*, No. 08-4059, 2008 WL 4858318, at *4 (E.D. Pa. Nov. 10, 2008) (staying second case instead of dismissing where there was no attempt "to circumvent any procedural rules"), dismissal is the appropriate remedy when the plaintiffs are making an end-run around the Court's rules or other procedural requirements.  *See McKenna*, 304 F. App'x at 94; *Fabics*, 629 F. App'x at 198.

Other circuits follow the same rule.  For example, the Tenth Circuit rejected a plaintiff's attempt to file a new complaint and then move to consolidate that complaint with the first one—noting the appropriate remedy was dismissal because the plaintiff "sought to achieve indirectly what he couldn't achieve directly."  *Zisumbo v. Ogden Regional Med. Ctr.*, 536 F. App'x 832, 832-33 (10th Cir. 2013) (Gorsuch, J.) (explaining that claim splitting should not be used to "expand the procedural rights" plaintiffs "would have otherwise enjoyed").[11]  Similarly here, allowing the States to consolidate their two complaints would impermissibly permit the States to make an end-run around the Court's prior scheduling order regarding amended complaints.  *See supra* at 2.

Moreover, as discussed above, consolidation would also effectively allow the Plaintiff States to have bypassed Connecticut's statutory prohibition that investigatory subpoenas may not be used to gather discovery for pending litigation.  *See* Conn. Gen. Stat. § 35-42(a); *see also Brown & Brown*, 1 A.3d at 25-26.  Nothing the States acquired by investigative subpoena after filing of the First Complaint may be used to litigate the claims, including the "overarching conspiracy" claims, in that complaint.  *See id.*  Any consolidation of the two complaints at this juncture would run afoul of this law and would prejudice Defendants.  The Court specifically determined that it would not interfere with the States' continued extrajudicial investigation in reliance on the States' assertion that they were investigating different alleged conduct.  *See* Nov. 14, 2018 Order (No. 16-md-2724 ECF No. 758) at 10.

---

[11] *See also Sensormatic Sec. Corp. v. Sensormatic Elec. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008) (holding dismissal appropriate because second complaint was improper claim splitting and "apparent" attempt to circumvent prior court's decision to deny leave to amend prior complaint); *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir. 1996) ("[W]e find no error in the district court's order dismissing [the plaintiff's] second complaint as duplicative of the first," particularly "where, as here, the plaintiff files the second complaint to achieve procedural advantage by 'circumventing the rules pertaining to the amendment of complaints.'").

Finally, corporate defendants that are named in the First Complaint only, and therefore are alleged to be jointly and severally liable for conduct related to fifteen specific products by operation of an alleged "overarching conspiracy" (involving products that most defendants did not manufacture), would be severely prejudiced by combining all allegations into a single complaint, thereby increasing those defendants' potential exposure through joint and several liability from only fifteen products to more than one hundred.  That obvious prejudice, and the absence of factual allegations connecting such defendants to conduct concerning products they did not sell or have any other connection to, precludes such alternative relief.[12]  It also, however, illustrates the Court's essential gatekeeping role at the motion to dismiss stage to ensure that only "plausible" claims are allowed to proceed to discovery.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).[13]  It would be an absurd result if a defendant alleged to have participated in an "overarching" conspiracy in a complaint regarding only fifteen products could face an exponential increase in potential exposure simply as a result of consolidation with a later complaint involving more than one hundred products—and without any factual basis to support such consolidation.

---

[12] Similar prejudice would attach to the defendants named only in the Second Complaint if the two complaints were to be consolidated.

[13] Defendants are mindful that the Court has instructed the parties to avoid raising issues that have been litigated in previous motions to dismiss.  Accordingly, for preservation purposes, Defendants respectfully note that the "overarching" conspiracy alleged in the Second Complaint suffers from the same fatal flaws as the "overarching conspiracy" alleged in the First Complaint and Defendants hereby incorporate those arguments by reference.  *See* Defs.' Mot. to Dismiss Overarching Conspiracy Claims (No. 17-cv-3768 ECF Nos. 70, 93); *see also United States v. Kelly*, 892 F.2d 255, 258-59 (3d Cir. 1989) (in assessing whether a series of events constitutes a single, overarching conspiracy, courts must assess, *inter alia*, whether the individual conspiracies operated in a manner such that the success of one was related to the success of another).  Defendants would welcome the opportunity to submit additional briefing on this point if it would be of assistance to the Court.

Because the filing of the Second Complaint "was simply an end-run around" this Court's deadline for amendments and requirement to seek leave of court, "[a]llowing the case to proceed, or consolidating the two suits, would effectively allow the [States] to amend [their] complaint without" following the Federal Rules and this Court's orders.  *Prewitt*, 2013 WL 6284166, at *6. The claim splitting doctrine forbids that result.  Plaintiff States' failure to timely amend their First Complaint with any allegations that, given the States' multi-year investigation, could have been raised by the Court's deadline counsels in favor of dismissing the Second Complaint.

**B.    In The Alternative, The Court Should Require Removal Of The States' Duplicative Allegations And Overlapping Theories Of Recovery.**

Courts also have ordered various remedies to address violations of the claim splitting doctrine.  *See, e.g.*, *McKenna*, 304 F. App'x at 92 (discussing potential remedies); *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1059 (Fed. Cir. 2014) (affirming claim preclusion dismissal of some claims, but allowing other claims to continue); *Finjan, Inc., v. Blue Coat Sys., LLC*, 230 F. Supp. 3d 1097, 1103 (N.D. Cal. 2017) (applying the claim splitting doctrine to strike a plaintiff's infringement contentions in its second complaint because the same patents and products were at issue in the plaintiff's first); *Alyeska Pipeline Serv. Co. v. United States*, 688 F.2d 765, 770-71 (Ct. Cl. 1982) (dismissing one claim based on impermissible claim-splitting, but allowing other claims to go forward).

If the Court declines to dismiss the States' Second Complaint, Defendants respectfully request that the Court strike allegations of the "overarching" conspiracy from the Second Complaint.  The States are already pursuing that overarching conspiracy claim as a basis for joint and several liability in the First Complaint, and indeed this Court has already evaluated that claim on a motion to dismiss the States' First Complaint.  *See In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d at 532.  It is fundamentally inconsistent with the doctrine against claim

splitting to allow the States to pursue allegations regarding an overarching, industry-wide conspiracy against many of the same defendants in two separate actions in an effort to increase recovery against the defendants named in the Second Complaint.

This is not merely an academic matter. By repleading their "overarching" conspiracy theory against the corporate defendants named in the States' Second Complaint, the States seek to hold each named corporate defendant jointly and severally liable for conduct related to more than one hundred products, which many of the corporate defendants neither made nor sold. In the absence of the "overarching" theory based on the use of the common business phrase of "fair share," the States would have no factual basis to assert that defendants should be held liable for overcharges for products they did not sell. *See, e.g.*, Second Am. Compl. ¶ 1153 ("As participants in the overarching conspiracy, the corporate Defendants are jointly and severally liable for any harm caused as a result of the conspiracy.").

In addition, all defendants named in the Second Complaint face potential prejudice from duplicative claims because the States purport to incorporate the First Complaint by reference, which purports to include all of the allegations from the First Complaint in the Second Complaint and thus *explicitly* splits claims between the two complaints. That incorporation should be stricken. *See, e.g.*, *Finjan,* 230 F. Supp. 3d at 1103 (striking duplicative allegations).

Finally, at least certain Defendants face substantial prejudice due to the duplicative relief sought by the States. For example, multiple states appear to be seeking duplicative statutory penalties based on both alleged participation in the "Heritage" conspiracy and again based on participation in the "Teva" conspiracy—even though those claims are, by the terms of the complaints, premised on the same industry-wide "overarching" conspiracy. *See, e.g.*, NY Gen. Bus. Law § 342-a (incorporating criminal penalties pursuant to NY Gen. Bus. Law § 341 not to

exceed $1,000,000 per corporate defendant); First CAC ¶¶ 770-71 (seeking penalties under New York law); Second Am. Compl. ¶¶ 1584-85 (same); Wis. Stat. § 133.03(1) (setting $100,000 maximum criminal or civil statutory fine for engaging in a conspiracy in restraint of trade); First CAC ¶ 884 (seeking penalties under Wisconsin law); Second Am. Compl. ¶ 1721 (same).[14]  The Court should strike the duplicative relief sought between the two complaints to the extent the relief is premised on involvement in the same "overarching conspiracy" as the earlier-filed complaint.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the States' Second Complaint in its entirety or, alternatively, dismiss the Second Complaint without prejudice with leave to refile subject to the removal of (i) overlapping factual allegations, claims, and legal theories or incorporation of any other complaints by reference and (ii) any duplicative statutory penalties or other duplicative relief sought.

---

[14] To the extent that the States seek the enforcement of functionally criminal penalties against defendants, seeking those punishments in two separate actions will likely implicate due process under the Double Jeopardy Clause.  *See Hudson v. United States*, 522 U.S. 93, 99 (1997) (where a punishment is labeled criminal, or where the punishment is plainly punitive in purpose or effect, Double Jeopardy applies).  For example, New York seeks application of NY Gen. Bus. Law § 342-a in each complaint, which incorporates criminal penalty levels set forth in § 341, including fines not to exceed $1,000,000 for corporations.  *See* First CAC ¶¶ 770-71; Second Am. Compl. ¶¶ 1584-85.  The significant constitutional issues that will likely arise if Defendants are subjected to duplicative penalties further counsels in favor of dismissing the Second Complaint or granting the alternative relief of striking overlapping elements.

Date: November 2, 2020

Respectfully submitted,

/s/ Sheron Korpus

Sheron Korpus
Seth A. Moskowitz
Seth Davis
David M. Max
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com
smoskowitz@kasowitz.com

*Counsel for Defendants*
*Actavis Holdco U.S., Inc. and*
*Actavis Pharma, Inc.*

/s/ Raymond A. Jacobsen, Jr.

Raymond A. Jacobsen, Jr.
Paul M. Thompson
Lisa (Peterson) Rumin
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, NW
Washington, D.C. 20001
Telephone: (202) 756-8000
rayjacobsen@mwe.com
pthompson@mwe.com
lrumin@mwe.com

Nicole L. Castle
**MCDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, NY 10173
Telephone: (212) 547-5400
ncastle@mwe.com

*Counsel for Defendants Amneal*
*Pharmaceuticals, Inc. and Amneal*
*Pharmaceuticals LLC*

/s/ G. Robert Gage, Jr.

G. Robert Gage, Jr.
**GAGE SPENCER & FLEMING LLP**
410 Park Avenue
New York, New York 10022
Tel: 212-768-4900
grgage@gagespencer.com

*Counsel for Defendant Ara Aprahamian*

/s/ Wayne A. Mack

Wayne A. Mack
Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1152
wamack@duanemorris.com
spmcconnell@duanemorris.com
sckulik@duanemorris.com

*Counsel for Defendant Aurobindo Pharma*
*USA, Inc.*

/s/ Henry E. Klingeman

Henry E. Klingeman
Ernesto Cerimele
James Crudele
**KLINGEMAN CERIMELE,**
**ATTORNEYS**
60 Park Place, Suite 1100
Newark, NJ 07102
henry@klingemanlaw.com
ernesto@klingemanlaw.com
james@klingemanlaw.com

*Counsel for Defendant David Berthold*

/s/ Stacey Anne Mahoney
Stacey Anne Mahoney
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
stacey.mahoney@morganlewis.com

*Counsel for Defendant Breckenridge*
*Pharmaceutical, Inc.*


/s/ Larry H. Krantz
Larry H. Krantz
Jerrold L. Steigman
**KRANTZ & BERMAN LLP**
747 Third Avenue, 32nd Floor
New York, NY 10017
(212) 661-0009
(212) 355-5009 (fax)
lkrantz@krantzberman.com
jsteigman@krantzberman.com

*Counsel for Defendant James Brown*

/s/ Thomas H. Suddath, Jr.
Thomas H. Suddath, Jr.
Anne E. Rollins
Thomas P. Reilly
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
tsuddath@reedsmith.com
arollins@reedsmith.com
treilly@reedsmith.com

Michael E. Lowenstein
**REED SMITH LLP**
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
mlowenstein@reedsmith.com

*Counsel for Defendant Maureen Cavanaugh*


/s/ Roger B. Kaplan
Roger B. Kaplan
Jason Kislin
Aaron Van Nostrand
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07931
Tel: (973) 360-7900
Fax: (973) 295-1257
kaplanr@gtlaw.com
kislinj@gtlaw.com
vannostranda@gtlaw.com

Brian T. Feeney
**GREENBERG TRAURIG, LLP**
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Tel: (215) 988-7812
Fax: (215) 717-5265
feeneyb@gtlaw.com

*Counsel for Defendant*
*Dr. Reddy's Laboratories, Inc.*

/s/ James A. Backstrom
James A. Backstrom
**JAMES A. BACKSTROM,
COUNSELLOR AT LAW**
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1923
(215) 864-7797
jabber@backstromlaw.com

*Counsel for Defendant Marc Falkin*

/s/ Steven A. Reed
Steven A. Reed
R. Brendan Fee
Melina R. DiMattio
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001
steven.reed@morganlewis.com
brendan.fee@morganlewis.com
melina.dimattio@morganlewis.com

Wendy West Feinstein
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre
Thirty-Second Floor
Pittsburgh, PA 15219-6401
Telephone: +1.412.560.7455
Facsimile: +1.412.560.7001
wendy.feinstein@morganlewis.com

*Counsel for Defendant
Glenmark Pharmaceuticals Inc., USA*

/s/ Robert E. Connolly
Robert E. Connolly
**LAW OFFICE
OF ROBERT CONNOLLY**
301 N. Palm Canyon Dr.
Palm Springs, CA 92262
bob@reconnollylaw.com
(215) 219-4418

*Counsel for Defendant James Grauso*

/s/ Robert E. Welsh, Jr.
Robert E. Welsh, Jr.
Alexandra Scanlon Kitei
**WELSH & RECKER, P.C.**
306 Walnut Street
Philadelphia, PA 19106
(215) 972-6430
(215) 972-6436 (fax)
rewelsh@welshrecker.com
akitei@welshrecker.com

*Counsel for Defendant Kevin Green*

/s/ Jeffrey D. Smith
Jeffrey D. Smith
Alice Bergen
**DECOTIIS, FITZPATRICK, COLE &
GIBLIN, LLP**
61 South Paramus Road
Paramus, New Jersey 07652
(201) 907-5228
jsmisth@decotiislaw.com
abergen@decotiislaw.com

*Counsel for Defendant Robin Hatosy*

*/s/ Erica S. Weisgerber*
Erica S. Weisgerber
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
Facsimile: 212-909-6836
eweisgerber@debevoise.com

Edward D. Hassi
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202-383-8000
Facsimile: 202-383-8118
thassi@debevoise.com

*Counsel for Defendant Armando Kellum*

*/s/ George G. Gordon*
George G. Gordon
Stephen D. Brown
Julia Chapman
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Tel. 215-994-2000
george.gordon@dechert.com
stephen.brown@dechert.com
julia.chapman@dechert.com

Gerald E. Arth
Ryan T. Becker
**FOX ROTHSCHILD LLP**
2000 Market Street
Philadelphia, PA 19103
Tel: (215) 299-2720
Fax: (215) 299-2150
garth@foxrothschild.com
rbecker@foxrothschild.com

*Counsel for Defendant*
*Lannett Company, Inc.*

*/s/ Leiv Blad*
Leiv Blad
Zarema Jaramillo
Meg Slachetka
**LOWENSTEIN SANDLER LLP**
2200 Pennsylvania Avenue
Washington, DC 20037
Tel.: (202) 753-3800
Fax: (202) 753-3838
lblad@lowenstein.com
zjaramillo@lowenstein.com
mslachetka@lowenstein.com

*Counsel for Defendant*
*Lupin Pharmaceuticals, Inc.*

*/s/ Benjamin F. Holt*
Benjamin F. Holt
Adam K. Levin
Justin W. Bernick
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
benjamin.holt@hoganlovells.com
adam.levin@hoganlovells.com
justin.bernick@hoganlovells.com

Jasmeet K. Ahuja
**HOGAN LOVELLS US LLP**
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

*Counsel for Defendant Mylan Pharmaceuticals Inc.*

*/s/ Michael G. Considine*
Michael G. Considine
Laura E. Miller
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, NY 10004
considine@sewkis.com
millerl@sewkis.com

*Counsel for Defendant Jill Nailor*

*/s/ L. Barrett Boss*
L. Barrett Boss
Peter M. Ryan
S. Rebecca Brodey
Thomas J. Ingalls
**COZEN O'CONNOR P.C.**
1200 19th Street NW, Suite 300
Washington, DC 20036
(202) 912-4814
(866) 413-0172 (fax)
bboss@cozen.com
pryan@cozen.com
rbrodey@cozen.com
tingalls@cozen.com

*Counsel for Defendant James Nesta*

*/s/ David Schertler*
David Schertler
Lisa Manning
**SCHERTLER ONORATO MEAD & SEARS, LLP**
901 New York Avenue, N.W.
Suite 500 West
Washington, DC 20001
(202) 628-4199
(202) 628-4177 (fax)
dschertler@schertlerlaw.com
lmanning@schertlerlaw.com

*Counsel for Defendant Konstantin Ostaficiuk*

*/s/ John E. Schmidtlein*
John E. Schmidtlein
Sarah F. Kirkpatrick
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5901
Fax: (202) 434-5029
jschmidtlein@wc.com

*Counsel for Defendant Par Pharmaceutical Companies, Inc.*

*/s/ Bradley Love*
Bradley Love
Larry Mackey
Neal Brackett
Alyssa C. Hughes
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
(317) 236-1313
bradley.love@btlaw.com
larry.mackey@btlaw.com
neal.brackett@btlaw.com
alyssa.hughes@btlaw.com

*Counsel for Defendant Nisha Patel*

*/s/ Ilana H. Eisenstein*
Ilana H. Eisenstein
Ben C. Fabens-Lassen
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3300
ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com

Edward S. Scheideman
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Tel: (202) 799-4000
edward.scheideman@dlapiper.com

*Counsel for Defendants Pfizer Inc. and Greenstone LLC*

*/s/ Thomas H. Lee, II*
Thomas H. Lee, II
Jeffrey J. Masters
Carla G. Graff
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
Fax: (215) 994-2222
thomas.lee@dechert.com
jeffrey.masters@dechert.com
carla.graff@dechert.com

*Counsel for Defendant David Rekenthaler*

*/s/ David Reichenberg*
David Reichenberg
**COZEN O'CONNOR P.C.**
277 Park Avenue, 20th Floor
New York, NY 10172
(212) 883-4956
dreichenberg@cozen.com

Stephen A. Miller
Calli Jo Padilla
**COZEN O'CONNOR P.C.**
1650 Market Street
Suite 2800
Philadelphia, PA 19103
(215) 665-6938
(215) 253-6777 (fax)
samiller@cozen.com
cpadilla@cozen.com

*Counsel for Defendant Richard Rogerson*

*/s/ Saul P. Morgenstern*
Saul P. Morgenstern
Margaret A. Rogers
**ARNOLD & PORTER
KAYE SCHOLER LLP**
250 W. 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
saul.morgenstern@arnoldporter.com
margaret.rogers@arnoldporter.com

Laura S. Shores
**ARNOLD & PORTER
KAYE SCHOLER LLP**
601 Massachusetts Avenue
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
laura.shores@arnoldporter.com

*Counsel for Defendant Sandoz Inc.*

*/s/ Amy B. Carver*
Amy B. Carver
**WELSH & RECKER, P.C.**
306 Walnut Street
Philadelphia, PA 19106
(215) 972-6430
abcarver@welshrecker.com

*Counsel for Defendant
Tracy Sullivan DiValerio*

/s/ Erik T. Koons

John M. Taladay
Erik T. Koons
Stacy L. Turner
Christopher P. Wilson
**BAKER BOTTS LLP**
700 K Street NW
Washington, DC 20001
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
john.taladay@bakerbotts.com
erik.koons@bakerbotts.com
stacy.turner@bakerbotts.com
christopher.wilson@bakerbotts.com

Lauri A. Kavulich
Ann E. Lemmo
**CLARK HILL PLC**
2001 Market St, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
Facsimile: (215) 640-8501
lkavulich@clarkhill.com
alemmo@clarkhill.com

Lindsay S. Fouse
**CLARK HILL PLC**
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7711
Facsimile: (412) 394-2555
lfouse@clarkhill.com

*Counsel for Defendant Taro*
*Pharmaceuticals U.S.A., Inc.*

/s/ J. Gordon Cooney, Jr.

J. Gordon Cooney, Jr.
John J. Pease, III
Alison Tanchyk
William T. McEnroe
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
amanda.robinson@morganlewis.com

*Counsel for Defendant Teva*
*Pharmaceuticals USA, Inc.*

/s/ Damon W. Suden

William A. Escobar
Damon W. Suden
Clifford Katz
**Kelley Drye & Warren LLP**
101 Park Avenue
New York, NY 10178
Tel.: 212-808-7800
Fax: 212-808-7987
dsuden@kelleydrye.com

*Counsel for Defendant Wockhardt USA LLC*