IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL No. 2724<br>Civil Action No. 16-md-2724-CMR<br><br>HON. CYNTHIA M. RUFE |
| **THIS DOCUMENT RELATES TO:**<br><br>*State of Connecticut, et al. v. Teva Pharmaceuticals USA Inc., et al.* | Civil Action No. 19-cv-2407-CMR |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TRACY DIVALERIO'S MOTION TO DISMISS THE AMENDED COMPLAINT**

　　　　　　　　　　　　　　　　　　　　　WELSH & RECKER, P.C.
　　　　　　　　　　　　　　　　　　　　　Amy Carver
　　　　　　　　　　　　　　　　　　　　　306 Walnut Street
　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19106
　　　　　　　　　　　　　　　　　　　　　(215) 972-6430
　　　　　　　　　　　　　　　　　　　　　abcarver@welshrecker.com

Dated: November 2, 2020　　　　　　　　　　　*Counsel for Tracy Sullivan DiValerio*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. THE STATES' ALLEGATIONS RELATED TO MS. DIVALERIO................................... 2

III. ARGUMENT ........................................................................................................................ 4

   A. The Applicable Legal Standard. ..................................................................................... 4

   B. The States' Allegations Do Not Plausibly Suggest that Ms. DiValerio Agreed to Any Conspiracy. ...................................................................................................................... 5

      i. The States' Levothyroxine Allegations Fail. .................................................... 6

      ii. The States' Baclofen Allegations Fail. ............................................................ 6

      iii. The Remaining Allegations Related to Ms. DiValerio Do Not Plausibly Suggest that Ms. DiValerio Agreed to a Conspiracy. ................................................................ 9

   C. The States' Claims Against Ms. DiValerio are Time-Barred. ....................................... 11

      i. The Allegations Fall Outside the Limitations Period. .................................... 11

      ii. The "Fraudulent Concealment" Doctrine is Inapplicable. ............................. 11

      iii. The "Continuing Violation Exception" is Inapplicable. ................................ 14

   D. The States' Pendent State Law Claims Must be Dismissed. ......................................... 14

   E. The Complaint Should Be Dismissed with Prejudice. .................................................. 14

IV. CONCLUSION................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 1, 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 1, 4, 15

*Forbes v. Eagleson*,
    228 F.3d 471 (3d Cir. 2000) ..................................................................................... 12, 13

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007) ........................................................................................... 12

*In re Aspartame Antitrust Litig.*,
    416 F. App'x 208 (3d Cir. 2011) .................................................................................... 11

*In re Generic Pharm. Pricing Antitrust Litig.*,
    386 F. Supp. 3d 477 (E.D. Pa. 2019) ............................................................................... 4

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......................................................................... 10

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010) ......................................................................................... 4, 5

*In re K-Dur Antitrust Litig.*,
    No. 01-1652, 2016 WL 755623 (D.N.J. Feb. 25, 2016) ................................................... 5

*In re Pharmaceuticals Pricing Antitrust Litig.*,
    338 F. Supp. 3d 404 (E.D. Pa. 2018) ............................................................................... 9

*In re Processed Egg Prods. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ................................................................. 4, 5, 9, 10

*In re Processed Egg Prods. Litig.*,
    MDL No. 2002, No. 08-md-02002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) ........ 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................................................................ 4

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993) ............................................................................................. 15

*Midwestern Mach. Co. v. Northwest Airlines, Inc.*,
    392 F.3d 265 (8th Cir. 2004) .................................................................................... 14
*Oshiver v. Levin, Fishbein, Sedran & Berman*,
    38 F.3d 1380 (3d Cir. 1994) ...................................................................................... 12
*Rick-Mik Enters. v. Equilon Enters., LLC*,
    532 F.3d 963 (9th Cir. 2008) .................................................................................... 14
*St. Clair v. Citizens Fin. Grp.*,
    340 F. App'x 62 (3d Cir. 2009) ................................................................................ 14
*United States v. Kelly*,
    892 F.2d 255 (3d Cir. 1989) ................................................................................... 5, 9
*White v. PNC Fin. Servs. Grp.*,
    No. 11-7928, 2013 WL 3090823 (E.D. Pa. June 20, 2013) ...................................... 13

**Statutes**

15 U.S.C. § 15b .................................................................................................................. 11

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................................ 12
Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 2

I.     **INTRODUCTION**

The Amended Complaint (Dkt. 106, the "Complaint"), filed by 48 states, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and two overseas territories, (collectively, the "States"), must be dismissed as to Defendant Tracy Sullivan DiValerio ("Ms. DiValerio")[1] because the scant allegations against Ms. DiValerio do not come close to satisfying the pleading standards as required for an individual defendant alleged to have participated in an antitrust conspiracy. The States allege factual background in 1,146 paragraphs of the Complaint, implicating over 100 generic pharmaceutical products and seeking sprawling relief under both the Sherman Act and various state laws. Ms. DiValerio, an employee of Defendant Lannett Company, Inc., is mentioned in only 17 of those 1,146 paragraphs, many of which provide only background, legal conclusions, or allegations that she merely had communications with colleagues in the industry, without any allegation as to the substance of any such communications. The substantive allegations center on only two products. Not only are the allegations against Ms. DiValerio sparse, they also fail to allege with specificity and particularity that she purposefully joined and participated in an antitrust conspiracy or even that she had any agreement at all. The handful of allegations implicating Ms. DiValerio do not satisfy *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal* 556 U.S. 662 (2009).

As an individual defendant, Ms. DiValerio is being held jointly and severally liable for monetary damages on two drug products. The allegations in the Complaint against Ms. DiValerio cannot justify holding an individual defendant to such detrimental and life-changing liability. For example, the States attempt to hold Ms. DiValerio jointly and severally liable together with some of the largest generic drug manufacturers in the country for a conspiracy to

---

[1] The States refer to Ms. Sullivan DiValerio as "Sullivan" throughout the Complaint.

fix prices and allocate the market for Levothyroxine, "the second most prescribed drug . . . in the United States in the first quarter of 2010." Compl. ¶ 1013. They do this based on two e-mails: one received *from a customer* and one *from her boss* – not on any communications with a competitor. As discussed herein, the pleadings are not sufficient to state a claim for relief and should be dismissed with prejudice under Rule 12(b)(6).

Moreover, the allegations concern conduct that is alleged to have happened in 2014 at the latest – more than four years before the Complaint was filed and thus outside the four-year statute of limitations for Sherman Act violations. The Complaint should thus be dismissed as time-barred.

Finally, the pendent state law claims against Ms. DiValerio are derivative of the Sherman Act claims and likewise should be dismissed based on the same pleading deficiencies of the federal claim.

## II.   THE STATES' ALLEGATIONS RELATED TO MS. DIVALERIO

Count 34 is directed at Ms. DiValerio and alleges a horizontal conspiracy to allocate markets and fix prices for Baclofen and Levothyroxine, in violation of Section 1 of the Sherman Act. The Count alleges in boilerplate fashion that Ms. Sullivan "participated directly or indirectly" in the conspiracies by "communicating with competitors, directing others at Lannett to communicate with competitors, or tacitly approving of those communications by other Lannett employees, about market entry, loss of exclusivity, price increases, supply disruptions, and other significant markets [sic] events affecting Defendant Lannett and its competitors." ¶ 1410.

The bulk of the States' factual allegations involving Ms. DiValerio do not set forth any direct evidence that she agreed to join a vast, overarching conspiracy – or any conspiracy at all. The States set forth her address and employment history (¶¶ 38, 1079); that she once inquired about attending a "Women in the Industry" dinner (¶ 112); that she attended a "Girls Night Out"

2

at a trade conference in February 2015; and that she "regularly communicated with competitors and maintained relationships with executives at many of the corporate Defendants" (¶1079). None of those allegations are referenced in the context of any conspiracy or agreement to fix prices or allocate the market for any generic drug.

The only alleged conduct alleged to be part of a horizontal conspiracy to allocate markets and fix prices is related to two drugs: Levothyroxine and Baclofen. The States' narrative about Levothyroxine concerns several executives at generic pharmaceutical companies who were allegedly in contact with one another leading up to a price increase. ¶¶ 1012-31. Of the twenty paragraphs containing allegations of near constant communications between competitors and cooperating witnesses, the States attempt to pull Ms. DiValerio into the conspiracy in just one paragraph that details a legitimate communication *with a customer*, not a competitor. ¶ 1030.

The only communications with a *competitor* that the States refer to in any detail are 4 Facebook messages, 3 phone calls, and 3 text messages (10 total communications) with just one competitor – Defendant Nisha Patel of Teva – and relate to only one drug – Baclofen. Three more phone calls were placed but did not connect. *See* ¶¶ 499, 500. The substance of these communications reflect only that Ms. DiValerio "was hoping to touch base" with Ms. Patel "about some industry news" and, in a later communication, Ms. DiValerio says "Definitely Mid July" and that she will touch base in a few weeks. As discussed at greater length below, these communications do not demonstrate that there was any agreement between Ms. Patel and Ms. DiValerio and fall well short of the standard required to bring a claim against her. [2]

---

[2] Count 35 contains supplemental state law claims directed against all defendants based on the same conduct as the Sherman Act claims.

3

### III. ARGUMENT

Ms. DiValerio moves to dismiss the States' claims against her for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, the Court should dismiss the claims against Ms. DiValerio because the alleged conduct falls outside of the four-year statute of limitations for claims for violations of Section 1 of the Sherman Act.[3]

#### A. The Applicable Legal Standard.

A claim for relief based on a violation of Section 1 of the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 557. Moreover, "lawful parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* As to individual defendants within a conspiracy, "a plaintiff's pleading burden is to offer allegations that plausibly suggest that the defendant agreed to the conspiracy, which, in the antitrust context, is a conscious commitment to a common scheme designed to achieve an unlawful objective." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709 (E.D. Pa. 2011) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010)). A complaint must be dismissed if it fails to "'delineate[] to some sufficiently specific degree that a defendant purposefully joined and participated in the conspiracy.'" *In re Generic Pharm. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477, 482 (E.D. Pa. 2019) (quoting *Processed Egg*, 821 F. Supp. 2d at 720); *see also id.* at n.185 ("The complaint must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008)).

---

[3] Ms. DiValerio also joins, adopts, and incorporates by reference as though fully set forth herein the three joint motions to dismiss and memoranda of law in support thereof filed by Defendants today.

In addition, to show an overarching conspiracy, the States must plead facts showing that each alleged conspirator was aware of, and committed to, a common goal that transcended the individual agreements in which it is specifically alleged to have participated, *United States v. Kelly*, 892 F.2d 255, 258-59 (3d Cir. 1989); *Ins. Brokerage Antitrust Litig.*, 618 F.3d at 348-51; *In re K-Dur Antitrust Litig.*, No. 01-1652, 2016 WL 755623, at *18 (D.N.J. Feb. 25, 2016), as well as "particularized facts that each Defendant undertook certain acts, or engaged in certain conduct . . . that plausibly suggest that particular Defendant's embrace of that overarching conspiracy." *Processed Egg*, 821 F. Supp. 2d at 721.

### B. The States' Allegations Do Not Plausibly Suggest that Ms. DiValerio Agreed to Any Conspiracy.

The Complaint alleges that Ms. DiValerio's communications with competitors "resulted in agreements between Defendant Lannett and various competitors to allocate and divide customers and markets for various generic drugs in accordance with the fair share principles discussed above, and to fix and raise prices, and rig bids, for certain generic drugs. The generic drugs subject to these market allocation and price-fixing agreements include at least the following: Baclofen Tablets [and] Levothyroxine[.]" Compl. ¶ 1411. The allegations against Ms. DiValerio related to Baclofen and Levothyroxine are not pled with sufficient particularity and specificity to suggest that she made any agreement. Moreover, the communications that form the basis of the allegations tend to suggest that there was no agreement between Ms. DiValerio and Lannett's competitors. Likely aware of this fact, the States do not allege that Ms. DiValerio *agreed* at all, rather they allege that her communications "*resulted in* agreements between Defendant Lannett and various competitors." Compl. ¶ 1411 (emphasis added). That allegation is not based on the legal standard necessary to state a claim for a violation of Section 1 of the Sherman Act and must be dismissed.

5

### i. The States' Levothyroxine Allegations Fail.

Paragraph 1030 of the Complaint alleges that on April 25, 2014 Mylan increased its price for Levothyroxine. Compl. ¶ 1030. That same day, Ms. DiValerio allegedly heard from a sourcing manager at a customer, Cardinal Health – not Mylan – that Mylan was increasing its price that very same day. Compl. ¶ 1030. There is no allegation that the information was relayed to Ms. DiValerio in advance, and no allegation that the information come from anyone at Mylan. The receipt of information about a price increase from a customer the day of the increase cannot support a claim that Ms. DiValerio conspired to fix the price and allocate the market. The allegation that Ms. DiValerio heard about the increase from her supervisor prior to the increase similarly fails to allege any wrongdoing by Ms. DiValerio or form the basis of an allegation that Ms. DiValerio purposefully joined and participated in any conspiracy to fix the price of Levothyroxine or allocate the Levothyroxine market.

### ii. The States' Baclofen Allegations Fail.

A plain reading of the alleged communications between Nisha Patel and Ms. DiValerio, allegedly related to their respective employers' sale of Baclofen, does not plausibly suggest that Ms. DiValerio agreed to a conspiracy. The States allege that in June 2014, Lannett, Ms. DiValerio's employer, planned to start selling Baclofen. Compl. ¶ 497. The Complaint alleges that Ms. DiValerio received an email[4] from her supervisor at Lannett which stated: "Baclofen launch in four weeks, need market intelligence. We can only take a 10% market share." *Id*. On June 12, 2014, Ms. DiValerio sent a message to Nisha Patel on Facebook, writing "I was hoping to touch base with you about some industry news." (¶ 498), and during a phone call that same day, Ms. DiValerio told Nisha Patel that Lannett would be entering the market for Baclofen

---

[4] The States do not allege the exact date on which the e-mail from K.S. was received.

6

"shortly." ¶ 498. That afternoon, Ms. DiValerio sent another message that read "Definitely Mid July.. I'll touch base with you in a few weeks." *Id*. On July 1, 2014 Ms. DiValerio allegedly called Ms. Patel on the phone. The Complaint does not contain any averment as to the substance of that conversation. Indeed, there is no allegation that Ms. DiValerio and Ms. Patel came to any alleged agreement during that conversation – because there was no agreement.

Paragraph 500 of the Complaint alleges that just ten days later, on July 11, 2014, Ms. DiValerio received a text message from Ms. Patel that asked "Around?" Ms. DiValerio then called Ms. Patel and left a voicemail. Ms. Patel returned the call and they spoke briefly, or, as the Complaint alleges, "for more than three (3) minutes." ¶ 500. Ms. Patel then texted Ms. DiValerio "Thank you!!" and Ms. DiValerio replied, "No prob!" The Complaint does not contain any allegation as to the substance of that conversation. However, the Complaint does attempt to color the July 11, 2014 exchange with three points of context: 1) "Teva was evaluating future forecasting and whether to try and take on additional Baclofen business with a large wholesaler" 2) Nisha Patel wrote to a colleague "[n]ot sure if it helps your review, but there is another entrant coming to market (Lannett)." and 3) Nisha Patel wrote "*I'm not sure about their share targets, but I know it's probably soon.*" *Id*. (emphasis added).

There is no allegation that Ms. DiValerio was aware of any of these internal Teva communications or plans. Further, the States fail to allege that Teva acted on the basis of any agreement with Ms. DiValerio in its decision – if it ever even made one – "whether to try and take on additional Baclofen business with a large wholesaler." *Id*. The States fail to allege that Ms. DiValerio had any knowledge of Teva's position as it related to any wholesaler whatsoever, and there is no allegation that Lannett was even competing for that particular unnamed wholesaler's business.

7

In fact, the cited communications suggest that Ms. Patel did not have an agreement with Ms. DiValerio. The States allege that as early as June 2014, when her boss emailed Ms. DiValerio, she knew Lannett's target market share for Baclofen was ten percent. ¶ 497. And yet despite allegedly speaking twice on the phone between June 12, 2014, and July 1, 2014, when it came time to share what Ms. Patel had learned through her alleged agreement with Ms. DiValerio, Ms. Patel merely stated of Lannett's upcoming entry "I'm **not sure** about their targets" and "I know it's **probably** soon." ¶ 500 (emphasis added). Those statements do not demonstrate that the substance of the phone calls between Ms. DiValerio and Ms. Patel included sharing market share targets or launch dates, and fail to plausibly suggest that the two had come to an agreement to allocate the market or fix prices.

Paragraph 501 of the Complaint details Teva and Ms. Patel's conduct as it relates to Teva's decisions about its sale of Baclofen, contains allegations that are irrelevant to Ms. DiValerio, and should not be considered to form the basis of any allegation of wrongdoing against her. Moreover, the allegations again show that 1) there was no agreement between Ms. DiValerio and Ms. Patel; and 2) Teva's actions did not evidence an agreement between Ms. DiValerio and Ms. Patel, two employees who are not alleged to have had any decision-making authority. First, the Complaint alleges that on July 22, 2014, eleven days after speaking on the phone with Ms. DiValerio, Teva was told *by a customer* that "another [manufacturer]" would be launching Baclofen "in the coming weeks." ¶ 501. According to the Complaint, Teva declined to bid, and then further alleges that Ms. Patel "agreed with the decision to concede" after the fact by adding "I believe this is Lannett." *Id*.

Based on the States' allegations, even after July 11, 2014, when Ms. Patel allegedly expressed that she was not sure of Lannett's targets or its entry timing, *see supra*, at 8, and then

8

spoke to Ms. DiValerio again (Compl. ¶ 500), Ms. Patel's communications fail to convey any information that could plausibly suggest that there was an agreement to allocate the Baclofen market.  If there was an agreement between Ms. DiValerio and Ms. Patel, Ms. Patel would not need to guess that the manufacturer that was launching in the coming weeks was Lannett.  But more importantly, she would have conveyed that information *before Teva decided not to exercise its right of first refusal* – not as an afterthought.  Ms. DiValerio and Nisha Patel did not speak the day of market entry, did not exchange several phone calls while relaying the same information internally via email, did not confirm whether one another would "follow" or concede business, and, consequently, the States have failed to show how the communications they reference plausibly suggest that they had come to an agreement.

Ms. DiValerio should not need to defend herself against the Teva-centric allegations in the Complaint that are irrelevant to her state of mind and conduct. The imprecise and insufficient pleadings here do not show that there was an agreement between Ms. DiValerio and Ms. Patel.

All of the allegations for each of the two drug products discussed above are similarly insufficient to plead that Ms. DiValerio was part of any "overarching conspiracy."  The States fail to plead any particularized facts to suggest that Ms. DiValerio was aware of or committed to a larger common goal that transcended these two drug products, *see Kelly*, 892 F.2d at 258-59, or any "embrace of [an] overarching conspiracy." *Processed Egg*, 821 F. Supp. 2d at 721.

### iii. The Remaining Allegations Related to Ms. DiValerio Do Not Plausibly Suggest that Ms. DiValerio Agreed to a Conspiracy.

The allegations about Ms. DiValerio's attendance at "women in the industry" or "Girls Night Out" events are insufficiently pled and should be dismissed from the Complaint.  As this Court recognized in *In re Pharmaceuticals Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 439 (E.D. Pa. 2018),  "participation in a trade group association and/or attending trade group

9

meetings, even those meetings where key facets of the conspiracy allegedly were adopted or advanced, are not enough on their own to give rise to the inference of agreement to the conspiracy." *Id.*, quoting *In re Processed Egg*, 821 F. Supp. 2d at 722; *see also In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("Attendance at industry trade shows and events is presumed legitimate and is not a basis from which to infer a conspiracy, without more."). The Complaint does not allege that any key facet of any conspiracy was adopted or advanced at an industry women event or Girls Night Out. The Complaint does not pair the communications about the industry events with any relationship with a particular alleged competitor. Ms. DiValerio's attendance at these events should thus be presumed legitimate and those allegations should be dismissed from the Complaint.

  Likewise, the general allegations related to communications with others in the industry are nothing more than insinuation without any substance. The States allege that Ms. DiValerio exchanged 495 phone calls and text messages with twenty-four different people over a five-year period. ¶ 1079. On average, that amounts to about <u>four</u> calls <u>or</u> texts, <u>per year</u>, <u>per person</u>. The complaint does not contain any specific allegation about the substance of these phone calls or how many of the calls connected (their use of the term "exchanging" communications, means a phone call that does not connect is counted). Most of the communications in the States' chart are not referenced for any claim against Ms. DiValerio and are not mentioned again in the Complaint. Of the twenty-four people in the chart, only the communications with Nisha Patel are part of any substantive allegation. ¶¶ 1079, 498-501.

  A plain reading of these allegations does not reveal a single direction to others at Lannett to communicate with competitors, does not show Ms. DiValerio ever tacitly approved of any communications with competitors by anyone at Lannett, and does not reference a single

communication with a competitor about loss of exclusivity, price increase, supply disruption, or any other significant market event. Barebone conclusions, with nothing more, do not satisfy the States' burden.

### C. The States' Claims Against Ms. DiValerio are Time-Barred.

A four-year statute of limitations applies to civil claims under the Sherman Act. *See* 15 U.S.C. § 15b; *In re Aspartame Antitrust Litig.*, 416 F. App'x 208, 211 (3d Cir. 2011). The States filed their Complaint on May 10, 2019. (Dkt. No. 1). The fraudulent concealment and continuing violation exceptions to the Sherman Act are inapplicable here, and because the States' cause of action accrued more than four years before the Complaint was filed, the Complaint should be dismissed with prejudice.

#### i. The Allegations Fall Outside the Limitations Period.

The Complaint is facially untimely because, aside from conclusory recitations, it does not allege within the limitations period any sale of any drug to any plaintiff at a price that was higher as a result of price-fixing conspiracy, let alone a sale related to any alleged conduct undertaken by Ms. DiValerio. The date of the last substantive allegation directly attributed to Ms. DiValerio is July 11, 2014, when the States allege that Nisha Patel called Ms. DiValerio on the phone.[5] Compl. ¶ 500. All of the allegations occurred more than four years before the Complaint was filed on May 10, 2019.

#### ii. The "Fraudulent Concealment" Doctrine is Inapplicable.

The States may attempt to avoid the undisputed fact that the alleged conduct falls outside of the four-year statute of limitations period by arguing that the "fraudulent concealment" doctrine applies. That argument is inapposite in that the doctrine only tolls the applicable statute

---

[5] The last allegation related to Ms. DiValerio's actions regarding Levothyroxine was a text message exchange that occurred on April 25, 2014. Compl. ¶ 1030.

11

of limitations where a plaintiff alleges "particularized facts sufficient to suggest (1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *In re Processed Egg Prods. Litig.*, MDL No. 2002, No. 08-md-02002, 2011 WL 5980001, at *3 (E.D. Pa. Nov. 30, 2011) (dismissing Sherman Act price-fixing claim as time-barred where plaintiffs were aware of high prices but failed to exercise due diligence in uncovering the circumstances surrounding the price increases). Moreover, the States bear the burden of proving fraudulent concealment., *see, e.g.*, *Forbes v. Eagleson*, 228 F.3d 471, 486-87 (3d Cir. 2000), and "must show *active misleading* by the defendant." *Id.* (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 n.10 (3d Cir. 1994)). The States "must further show that [they] exercised reasonable diligence in attempting to uncover the relevant facts," *id.* at 487 (citing *Oshiver*, 38 F.3d at 1390), and "that [they] actually [were] 'misled into thinking that [they] did not have a cause of action.'" *Id.* (quoting *Davis v. Grusemeyer*, 996 F.2d 617, 624 (3d Cir. 1993)). Thus, the tolling "lasts only 'until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action . . . .'" *Id.* (quoting *Oshiver*, 38 F.3d at 1392).

Any allegation of fraudulent concealment is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Third Circuit requires that a plaintiff "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). To do so, a

12

plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*; s*ee also White v. PNC Fin. Servs. Grp.*, No. 11-7928, 2013 WL 3090823, at *2 (E.D. Pa. June 20, 2013).

The States have not met their high burden for pleading a claim of fraudulent concealment in that they have not alleged it at all. The States allege that several other defendants did destroy documents or attempt to conceal conduct; however, there is no allegation of concealment against Ms. DiValerio. The remaining fraudulent concealment analysis thus becomes nonsensical and irrelevant. The States cannot use the fraudulent concealment exception to toll the statute of limitations allegations and the Complaint should be dismissed as time-barred. Put simply, the States fail to show that Ms. DiValerio misled them into thinking they did not have a claim.

Nevertheless, the States' own Complaint underscores that the States should have (or did know) about the conduct underling their Complaint well before it was filed in May 2019. According to the Connecticut Attorney General's own press release and the Complaint, the States began their investigation in July of 2014.[6] Indeed, tolling "lasts only 'until the Plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action.'" *Forbes*, 228 F.3d at 487. Particularly in the absence of any alleged concealment, the States should reasonably be expected to have known the facts supporting this cause of action when they were investigating alleged price-fixing in the generics pharmaceutical industry in July 2014. They had ample opportunity to discover the facts supporting the cause of action against

---

[6] *A.G. Jepsen Leads Coalition in New, Expanded Complaint in Federal Generic Drug Antitrust Lawsuit*, Oct. 31, 2017, Connecticut Office of the Attorney General Press Release Archives (*available at* https://portal.ct.gov/AG/Press-Releases-Archived/2017-Press-Releases/AG-Jepsen-Leads-Coalition-in-New-Expanded-Complaint-in-Federal-Generic-Drug-Antitrust-Lawsuit); *see also* Compl. ¶ 4.

Ms. DiValerio in time to file a Complaint within the limitations period. They failed to do so and, accordingly, the Complaint should be dismissed with prejudice.

### iii. The "Continuing Violation Exception" is Inapplicable.

The continuing violation exception to the Sherman Act's statute of limitations cannot be used to toll the statute where the States have not alleged any overt acts sufficient to find that Ms. DiValerio purposefully joined and participated in a price-fixing conspiracy. The "continuing violation theory is based on an initial action that violates the antitrust laws followed by injuries caused by illegal actions designed to implement and effectuate the initial violation." *Midwestern Mach. Co. v. Northwest Airlines, Inc.*, 392 F.3d 265, 275 (8th Cir. 2004) (affirming dismissal of antitrust suit where the complaint included "unabated inertial consequences of the initial violation" and not independent overt acts violating the antitrust laws). As discussed above, the States' allegations as to Ms. DiValerio do not include any initial action that violates the antitrust laws, and they do not allege that Ms. DiValerio committed any illegal overt acts designed to implement and effectuate it.

### D. The States' Pendent State Law Claims Must be Dismissed.

The States' failure to state a claim under federal law also warrants dismissal of their state claims in Count 35, because those claims are derivative of the federal claim. *See, e.g.*, *St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 65 n.2 (3d Cir. 2009) (dismissing New Jersey state law claims with federal claims because the New Jersey statute mirrored the Sherman Act); *Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 976 n.5 (9th Cir. 2008) (dismissing California state law claims with federal claims because California antitrust law mirrors the Sherman Act).

### E. The Complaint Should Be Dismissed with Prejudice.

The States have had ample opportunity to assert viable allegations but have failed to do so – even after amending their complaint once already. If the States had facts to support

14

allegations against Ms. DiValerio, they would have pled them by now.  Allowing them to amend at this stage would result in severe prejudice to Ms. DiValerio, who has already suffered negative consequences simply by being named as a defendant in this wide-ranging, multi-billion dollar and highly publicized proceeding.  *See, e.g., Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (affirming denial of leave to amend where "[m]ost of the facts were available to plaintiff [] before she filed her original complaint"). Therefore, the Complaint should be dismissed with prejudice.

### IV.   CONCLUSION

It is puzzling why Ms. DiValerio was named as an individual in the States' Complaint at all.  The damage this Complaint has done to Ms. DiValerio's career and reputation likely will never be repaired.  After a years-long investigation conducted by several states, the facts alleged in the Complaint come nowhere close to being sufficient to state a claim against Ms. DiValerio for a violation of Section 1 of the Sherman Act under *Twombly* and *Iqbal*.  The alleged conduct that forms the basis for the States' claims falls well outside of the statute of limitations period for violations of Section 1 of the Sherman Act.  For all of the reasons stated herein, the claims against Ms. DiValerio should be dismissed with prejudice.


Date: November 2, 2020                         BY:     /s/ Amy B. Carver
                                                      Amy B. Carver, Esquire
                                                      Welsh & Recker, P.C.
                                                      306 Walnut Street
                                                      Philadelphia, PA 19106
                                                      (215) 972-6430
                                                      abcarver@welshrecker.com

                                                      *Counsel for Tracy Sullivan DiValerio*