**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | : : : : | MDL NO. 2724 16-MD-2724 |
| | : : | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | : : : | Civil Action No.: 19-cv-2407-CMR |
| *State of Connecticut, et al., v. Teva Pharmaceuticals USA Inc., et al.* | : : : | |

**<u>DEFENDANT DAVID REKENTHALER'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO DISMISS THE PLAINTIFF STATES' AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.     Any Alleged Anticompetitive Conduct Occurred Outside of the Applicable Statute of Limitations. ........................................................................ 2

    II.    No Tolling Doctrine Saves the Plaintiff States' Sherman Act Claim. ................... 3

          A.     The Plaintiff States Cannot Avail Themselves of the "Fraudulent Concealment" Doctrine. ............................................................................... 3

                 1.     The Plaintiff States Were Aware of Their Claims. ........................ 4

                 2.     The Plaintiff States Have Not Alleged that Rekenthaler Fraudulently Concealed Any Supposedly Anticompetitive Conduct. ........................................................................................... 5

          B.     The "Continuing Violation" Doctrine Does Not Apply Here. .................... 6

CONCLUSION ...................................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aspartame Antitrust Litig.*,
   416 F. App'x 208 (3d Cir. 2011) ................................................................................................2

*Davis v. Grusemeyer*,
   996 F.2d 617 (3d Cir. 1993)................................................................................................. 4, 6

*Forbes v. Eagleson*,
   228 F.3d 471 (3d Cir. 2000).................................................................................................4, 5

*In re High Fructose Corn Syrup Antitrust Litig.*,
   293 F. Supp. 2d 854 (C.D. Ill. 2003) ........................................................................................7

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997)..................................................................................................................6

*Krause v. Perryman*,
   827 F.2d 346 (8th Cir. 1987) ....................................................................................................7

*In re Magnesium Oxide Antitrust Litig.*,
   No. 10-5943 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20, 2011) .............................................4

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999) ..............................................................................................6, 7

*In re Processed Egg Prod. Antitrust Litig.*,
   No. 08-MD-02002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) ...................................3, 4, 6

*Pope v. Bond*,
   641 F. Supp. 489, 497 (D.D.C. 1986) .......................................................................................7

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
   No. 20-CV-00363-BLF, 2020 WL 3969064 (N.D. Cal. July 8, 2020) .....................................4

*SD3, LLC v. Black & Decker (U.S.), Inc.*,
   215 F. Supp. 3d 486, 495 (E.D. Va. 2016) ...............................................................................5

*United States v. Antar*,
   53 F.3d 568 (3d Cir. 1995)...................................................................................................3, 7

*United States v. Steele*,
   685 F.2d 793 (3d Cir. 1982).....................................................................................................7

# TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

15 U.S.C. § 1 ...................................................................................................................1

15 U.S.C. § 15b ...............................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 9(b) .....................................................................................................3, 8

**INTRODUCTION**

Defendant David Rekenthaler ("Rekenthaler") joins, adopts, and incorporates by reference as though fully set forth herein the three motions to dismiss filed by Defendants on the grounds that (1) the Plaintiff States[1] lack standing to bring their federal law claims, (2) the state law claims fail for a variety of reasons, and (3) the Plaintiff States have engaged in impermissible claim splitting.[2] Further, for the reasons set forth in detail below, the Plaintiff States' claim against Rekenthaler under Section 1 of the Sherman Act, 15 U.S.C. § 1, must be dismissed as time-barred by the applicable four-year statute of limitations.

The Plaintiff States first named Rekenthaler as a defendant in their "Teva-centric" Complaint filed May 10, 2019. Dkt. 1. They later filed an Amended Complaint ("AC") in November 2019. Dkt. 106. The Amended Complaint alleges that Rekenthaler participated in a conspiracy to allocate markets and to fix prices as to certain generic pharmaceutical products while employed by Teva Pharmaceuticals USA Inc. ("Teva"), in violation of, *inter alia*, Section 1 of the Sherman Act.

Rekenthaler resigned from Teva in April 2015. (AC ¶¶ 585, 589). The Amended Complaint contains no allegations of any anticompetitive conduct or any acts by Rekenthaler in

---

[1] The Plaintiff States are Alabama, Alaska, the Territory of American Samoa, Arizona, Arkansas, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, the Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

[2] The memoranda of law in support of these three motions are entitled (1) Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss Plaintiffs' Federal-Law Claims for Lack of Standing, (2) Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss Plaintiffs' State-Law Claims, and (3) Certain Defendants' Memorandum of Law in Support of Motion to Dismiss.

furtherance of the alleged conspiracy to allocate markets and to fix prices after he left Teva in April 2015.  It also fails adequately to allege fraudulent concealment by Rekenthaler.  More importantly, any supposed concealment failed to prevent the Plaintiff States from recognizing their claims during the limitations period as the Amended Complaint specifically alleges that the State of Connecticut "initiated a non-public investigation into suspicious price increases" in **July 2014** (AC ¶ 4), almost five years before the initial complaint against Rekenthaler was filed.  Therefore, having first sued Rekenthaler more than four years after he resigned from Teva and almost five years after first becoming aware of a potential claim, the Sherman Act claim (Count Thirty-Two, AC ¶¶ 1390-1398) against Rekenthaler is barred by the Sherman Act's four-year statute of limitations.

## ARGUMENT

### I. ANY ALLEGED ANTICOMPETITIVE CONDUCT OCCURRED OUTSIDE OF THE APPLICABLE STATUTE OF LIMITATIONS.

The Plaintiff States' claim against Rekenthaler under the Sherman Act fails in its entirety because it is time-barred by the Sherman Act's four-year statute of limitations.  *See* 15 U.S.C. § 15b ("Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued."); *In re Aspartame Antitrust Litig.*, 416 F. App'x 208, 211 (3d Cir. 2011) ("A suit under the Sherman Act must be 'commenced within four years after the cause of action accrued.'  '[A]n antitrust cause of action generally accrues . . . when a defendant commits an act that injures a plaintiff's business.'" (alteration and omission in original) (citations omitted)).

 The Amended Complaint's allegations against Rekenthaler relate exclusively to his actions while employed by Teva and to drugs manufactured and sold by Teva.  As specifically alleged in the Amended Complaint, Rekenthaler resigned from and left Teva in April 2015.  (AC

2

¶¶ 585, 589). Significantly, the Amended Complaint fails to allege any conduct by Rekenthaler in furtherance of the alleged conspiracy after he left Teva in April 2015. Because the Plaintiff States' initial complaint against Rekenthaler was not filed until May 2019—more than four years after he left Teva—the Plaintiff States' Sherman Act claim against him is barred by the four-year statute of limitations. *See United States v. Antar*, 53 F.3d 568, 582 (3d Cir. 1995) ("[I]f a defendant properly and adequately terminates his or her involvement with the conspiracy [such as by resigning from the conspiracy], he or she no longer can be held responsible for acts of his or her co-conspirators and the statute of limitations begins to run in his behalf."), *overruled on other grounds by Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001); *infra* Section II.B (discussing Rekenthaler's withdrawal from the alleged conspiracy by resigning from Teva).

## II.     NO TOLLING DOCTRINE SAVES THE PLAINTIFF STATES' SHERMAN ACT CLAIM.

Not only is the Plaintiff States' Sherman Act claim against Rekenthaler untimely on its face, the Plaintiff States do not even attempt to plead in the Amended Complaint that the fraudulent concealment or continuing violation doctrines save their claims. Even if they made such an argument, neither doctrine applies here.

### A.     The Plaintiff States Cannot Avail Themselves of the "Fraudulent Concealment" Doctrine.

Under the fraudulent concealment doctrine, the statute of limitations may be equitably tolled where the plaintiff alleges "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *In re Processed Egg Prod. Antitrust Litig.*, No. 08-md-02002, 2011 WL 5980001, at *3 (E.D. Pa. Nov. 30, 2011) (quoting *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006)). Plaintiffs bear "the burden of proving fraudulent

3

concealment," *Forbes v. Eagleson*, 228 F.3d 471, 486–87 (3d Cir. 2000), and under Federal Rule of Civil Procedure 9(b), fraudulent concealment must be alleged with particularity, *Processed Egg*, 2011 WL 5980001, at *4.

        1.        The Plaintiff States Were Aware of Their Claims.

First and foremost, the Plaintiff States plainly cannot satisfy the second or third element of the test for fraudulent concealment: that the defendant's supposed concealment "prevented the plaintiff from recognizing the validity of her claim within the limitations period," and that "the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *Id.* at *3.

"The doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *Davis v. Grusemeyer*, 996 F.2d 617, 624 (3d Cir. 1993), *overruled on other grounds by Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644 (3d Cir. 1998). Therefore, "[a] key aspect of a plaintiff's case alleging fraudulent concealment is . . . proof that the plaintiff was not previously on notice of the claim he now brings." *Id.* "[T]o establish the [successful concealment and] due diligence prong[s] of fraudulent concealment, a plaintiff must affirmatively show that he was *not* on inquiry notice of the alleged antitrust conspiracy." *In re Magnesium Oxide Antitrust Litig.*, No. 10-5943 (DRD), 2011 WL 5008090, at *23 (D.N.J. Oct. 20, 2011) (emphasis added) (citing *Davis*, 996 F.2d at 624).

The Plaintiff States started investigating the generic pharmaceuticals industry for potential anticompetitive conduct no later than July 2014. (AC ¶ 4). Therefore, nearly **five years** before they brought their first complaint against Rekenthaler, the Plaintiff States indisputably had inquiry or constructive notice of their claims, at which point the statute of limitations began to run. *See Reveal Chat Holdco, LLC v. Facebook, Inc.*, No. 20-cv-00363-

4

BLF, 2020 WL 3969064, at *4 (N.D. Cal. July 8, 2020) ("The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." (quoting *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988)); *SD3, LLC v. Black & Decker (U.S.), Inc.*, 215 F. Supp. 3d 486, 494 (E.D. Va. 2016) (finding plaintiff could not prove fraudulent concealment for antitrust claims because "[t]he statutory clock starts to run when a plaintiff is on inquiry notice" such that he is charged to investigate); *see also Forbes*, 228 F.3d at 487 (affirming summary judgment because "the plaintiffs knew of sufficient facts to support their claim at least 6 years before they filed this case").

Accordingly, the Plaintiff States cannot credibly argue that they were not and could not have been aware of the alleged conspiracy that they now claim exists. Rather than instituting any proceedings before the statute of limitations expired or seeking a tolling agreement, the Plaintiff States sat on their hands and watched as the period during which they could have brought their Sherman Act claim against Rekenthaler came and went. The Plaintiff States cannot now complain that they lacked notice of Defendants' supposed conspiracy or that any such conspiracy was concealed from them. Further, the Plaintiff States make no allegation that, notwithstanding their investigation, they were unable to bring their Sherman Act claim prior to the expiry of the statute of limitations. Any argument under the doctrine of fraudulent concealment thus fails.

### 2. The Plaintiff States Have Not Alleged that Rekenthaler Fraudulently Concealed Any Supposedly Anticompetitive Conduct.

Moreover, the Plaintiff States have not alleged with particularity that Rekenthaler engaged in any acts to conceal from them his supposedly anticompetitive conduct, and therefore

5

they cannot even meet the first element of fraudulent concealment.[3]  Assuming *arguendo* that Defendants engaged in anticompetitive conduct, the Plaintiff States allege, at best, that Rekenthaler did not put market information in writing or used a private email address to communicate.  (*See* AC ¶¶ 213, 261, 648, 693, 931, 1118).  However, the Plaintiff States have wholly failed to plead with the required particularity that these supposed acts were calculated to, or actually did, prevent the Plaintiff States from discovering their claims.  *See Processed Egg*, 2011 WL 5980001, at *12 & n.17.

Therefore, any fraudulent concealment argument fails.

### B. The "Continuing Violation" Doctrine Does Not Apply Here.

The Plaintiff States also cannot rely on the "continuing violation" or "continuing conspiracy" doctrine to extend the statute of limitations.

> [I]n the case of a "continuing violation," say, a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, "each overt act that is part of the violation and that injures the plaintiff," *e.g.*, each sale to the plaintiff, "starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times."

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (citation omitted).  However, if an alleged conspirator withdraws from the conspiracy, the statute of limitations begins to run, and he is not liable for any acts taken during his participation in the conspiracy, nor the acts of his co-conspirators after his withdrawal from the conspiracy, after the statute of limitations expires. *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 837 & n.22 (11th Cir. 1999).

---

[3] The Plaintiff States allege that in early 2015, "Rekenthaler warned Patel to be careful about communicating with competitors."  (AC ¶ 1129).  This allegation, even if true, does not toll the statute of limitations under a fraudulent concealment theory because by that time, the Plaintiff States' investigations were well underway and therefore they were already on notice of their Sherman Act claim.  *Davis*, 996 F.2d at 624 ("The doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim."); *see supra* Section II.A.1 (discussing the Plaintiff States' awareness of their claims).

According to Third Circuit precedent, resignation and a "total severing of ties with the enterprise may constitute withdrawal from the conspiracy," provided that the defendant does not "continue[] to do acts in furtherance of the conspiracy and continue[] to receive benefits from the conspiracy's operations." *Antar*, 53 F.3d at 583.  Accordingly, "[c]ases involving corporate conspiracies have routinely held that an employee's resignation or termination from the conspiring business constitutes an effective withdrawal absent the introduction of some evidence indicating continued participation or acquiescence in the goals of the conspiracy." *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 860–61 (C.D. Ill. 2003).  In *Pope v. Bond*, for example, the court granted a motion to dismiss allegations of a conspiracy by employees of the FAA, finding the "Plaintiff has not alleged any involvement in the conspiracy by [the defendant FAA employees] following their resignations," and therefore, "as a matter of law, resignation from the FAA indicates a complete withdrawal from any conspiracy within the FAA against plaintiff, just as it would in a criminal case."  641 F. Supp. 489, 497 (D.D.C. 1986); *see United States v. Steele*, 685 F.2d 793, 804 (3d Cir. 1982) (defendant withdrew from the conspiracy when he "resigned and permanently severed his employment relationship with" the company); *see also Morton's*, 198 F.3d at 839 (withdrawal effective when corporate defendant "'retired' and totally severed its ties to the milk price-fixing conspiracy"); *Krause v. Perryman*, 827 F.2d 346, 351 (8th Cir. 1987) (president of company withdrew from alleged conspiracy when he resigned and sold his stock in the company); *High Fructose Corn Syrup*, 293 F. Supp. 2d at 860–61 (holding that "the cessation of [two executives'] employment . . . and the subsequent expiration of [one executive's] independent consulting agreement" with the company would have ended their ability to act on behalf of [the company] as a practical matter, which gives rise to a rebuttable presumption that they effectively withdrew from any conspiracy").

Here, the Amended Complaint's conspiracy allegations relate *exclusively* to Rekenthaler's tenure with Teva and his alleged involvement in the marketing, sale, and pricing of Teva products. When he resigned from Teva in April 2015, he effectively withdrew from any conspiracy. The Amended Complaint fails adequately to allege any conduct by Rekenthaler in furtherance of the conspiracy **after** he left Teva in April 2015.[4] Indeed, having resigned from the company, Rekenthaler had no role or responsibility in the marketing, sale, or pricing of Teva products after April 2015. The Amended Complaint also fails to allege that Rekenthaler continued receiving any benefit from the alleged conspiracy. Accordingly, even if the Plaintiff States have adequately alleged a continuing conspiracy, they were required to bring their Sherman Act claim against Rekenthaler by April 2019, four years after he resigned from Teva and withdrew from any alleged conspiracy. Because the Plaintiff States have not done so, their Sherman Act claim is time-barred and must be dismissed.

## **CONCLUSION**

The Plaintiff States should have brought their Sherman Act claim against Rekenthaler within the statute of limitations, but they did not. Because the Plaintiff States' Sherman Act claim against Rekenthaler is time-barred, and because the Plaintiff States have otherwise failed to state a claim for the reasons set forth in Defendants' motions to dismiss on the grounds that (1)

---

[4] The Plaintiff States allege that Rekenthaler spoke with Patel on June 21, 2016 (erroneously alleged as 2017 in the Complaint) to "coordinate her response to the government" after a search warrant was executed against her. (AC ¶ 1133). This allegation, however, does not negate the fact that Rekenthaler left Teva and cut all ties with the company in April 2015, thus withdrawing from any supposed conspiracy. Moreover, bereft of *any* supporting facts, the allegation is insufficient under the heightened pleading burden of Rule 9(b) if the Plaintiff States intend to establish that this phone call constituted conduct in furtherance of a conspiracy. The Plaintiff States do not allege that Rekenthaler encouraged Patel to lie, cover up, or be anything other than completely truthful to the government, nor do they even allege what the result of the "coordination" was. The Plaintiff States allege no facts beyond the mere existence of a phone call at some point in time, and their unwarranted speculation and leap to a suggestion of nefarious intent should not be entertained.

the Plaintiff States lack standing to bring their federal law claims, (2) the state law claims fail for a variety of reasons, and (3) the Plaintiff States have engaged in impermissible claim splitting, the Plaintiff States' claims must be dismissed with prejudice.

Dated: November 2, 2020                                     Respectfully submitted,

<u>*/s/ Thomas H. Lee, II*</u>
Thomas H. Lee, II (Pa. Bar No. 49867)
Jeffrey J. Masters (Pa. Bar No. 322439)
Carla G. Graff (Pa. Bar No. 324532)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
Fax: (215) 994-2222
thomas.lee@dechert.com
jeffrey.masters@dechert.com
carla.graff@dechert.com

*Attorneys for Defendant David Rekenthaler*