# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br>*The State of Connecticut, et al. v.*<br>*Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE<br><br>19-cv-2407-CMR |

**DEFENDANT LANNETT COMPANY, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS INDIVIDUAL MOTION TO DISMISS
THE STATE PLAINTIFFS' OVERARCHING CONSPIRACY CLAIMS**

Defendant Lannett Company, Inc. ("Lannett") submits this memorandum of law in support of its motion to dismiss the overarching conspiracy claims set forth in Count Fourteen in State Plaintiffs' November 1, 2019 Amended Complaint ("Second Complaint"), Dkt. 106.[1]

## I.   PRELIMINARY STATEMENT

In their Second Complaint, the Plaintiff States assert two categories of claims with respect to Lannett.

*First*, Plaintiff States claim that Lannett entered into two product-specific conspiracies to allocate markets and fix prices for Baclofen Tablets and Levothyroxine. *See* Compl. ¶ 1239. The *only* product-related factual allegations that the Plaintiff States assert specifically regarding Lannett relate to these two products. *See id.* ¶¶ 496-502, 1012-30.

*Second*, Plaintiff States also claim that Lannett participated in an "overarching conspiracy" in the "generic pharmaceutical industry" through an agreement to restrain trade and "control the prices for generic drugs." *Id.* at ¶ 1244. Plaintiff States seek to hold Lannett "jointly and severally liable for any harm caused as a result" of that overarching conspiracy. *Id.* Notably, the specific "generic drugs" subject to the alleged overarching conspiracy are undefined, but according to Plaintiff States include *at a minimum the 116* generic products named in the Second Complaint, even though Lannett sold only *two* of them. *See id.*

Lannett's Motion here focuses exclusively on Plaintiff States' claim that Lannett participated in an alleged overarching conspiracy. It is not about whether Plaintiff States have

---

[1]   Plaintiff States sought leave to file a consolidated amended complaint alleging an "overarching conspiracy" among generic manufacturers in November 2017 ("First Complaint"). That action remains pending. Plaintiff States started a new action by filing the Second Complaint approximately one and a half years later, and then amended the Second Complaint in November 2019. This Motion relates solely to the Second Complaint.

alleged the existence of an overarching conspiracy generally.[2] Nor is it about the sufficiency of Plaintiff States' pleadings regarding alleged individual drug conspiracies as to Baclofen Tablets or Levothyroxine. Rather, Lannett moves to dismiss Plaintiff States' claim that it participated in the alleged overarching conspiracy because Plaintiff States have failed to allege sufficient facts demonstrating that Lannett was aware of, and consciously committed to participate in, any such conspiracy.

Holding Plaintiff States to well-established pleading standards is critically important here, where they seek to subject Lannett to joint and several liability not just for claimed conspiracies related to two products that Lannett actually sold, but also for the claimed overarching conspiracy including at least[3] the 114 drugs identified in the Second Complaint that Lannett never sold. The prospect of joint and several liability coupled with treble damages can have a substantial *in terrorem* effect, even in ordinary conspiracy cases, creating risks disproportionate to the actual merits of a case. *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-897, 1995 WL 221853, at *2 (N.D. Ill. April 11, 1995). Thus, in any antitrust conspiracy case, the potential scope

---

[2] The Court denied certain Defendants' joint motion to dismiss the Plaintiff States' First Complaint on May 19, 2019. *See* Opinion, Dkt. 1070. In that Opinion, the Court found that Plaintiff States in their First Complaint had plausibly alleged the existence of an overarching, industry-wide conspiracy. Lannett here is not again asking the Court to determine whether Plaintiff States have plausibly alleged the existence of such a conspiracy.

In its Opinion, however, the Court was clear that it was not deciding whether Plaintiff States had plausibly alleged that any particular Defendant—including Lannett—joined such an overarching conspiracy. *See id*. at 3 n.8. Lannett had also filed an individual motion to dismiss the claim in the First Complaint that Lannett participated in the alleged overarching conspiracy, and that motion remains pending.

[3] The Plaintiff States' claimed overarching conspiracy is theoretically boundless, "includ[ing]" but not explicitly limited to the generic products identified in the Second Complaint.

of joint and several liability must be commensurate with, and limited by, well-pleaded factual allegations regarding a defendant's participation in the claimed conspiracy.

For the reasons described herein, the Plaintiff States' overarching conspiracy claims against Lannett should be dismissed.

## II.     ARGUMENT

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere "labels and conclusions" do not suffice. *Id.* at 545. Nor do speculative theories, absent supporting facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 556 U.S. at 555–57. Moreover, to state a claim under Section 1 of the Sherman Act, it is not enough to allege, in conclusory fashion, that a defendant participated in a conspiracy. *See Twombly* 550 U.S. at 570. "Conspiracy is a legal conclusion." *In re Musical Instruments and Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015) (citing *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)). "A bare allegation of conspiracy is almost impossible to defend against, particularly where the defendants are large institutions . . . ." *Kendall*, 518 F.3d at 1047 ("To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove" that a defendant entered into an illegal conspiracy.).

### A.     Plaintiff States Must Plead Facts Showing that Lannett Was Aware of, and Consciously Committed to, the Overarching Conspiracy They Allege.

To plausibly allege that Lannett committed to an overarching conspiracy, Plaintiff States must plead facts suggesting that Lannett consciously committed to the common purpose of the alleged conspiracy. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 348–51 (3d Cir. 2010). Thus, Plaintiff States must plead facts showing that Lannett "was aware of and committed to the essential purpose of the ***overarching*** conspiracy." *Precision Assocs. v. Panalpina World Transp.*

*(Holding) Ltd.*, No. 08-42, 2011 WL 7053807, at *30 (E.D.N.Y. Jan. 4, 2011) (emphasis added); *In re Auto. Parts Antitrust Litig.*, No. 12-203, 2016 WL 8200512, at *4 (E.D. Mich. Apr. 13, 2016) ("Only after a defendant agrees to the common purpose [of the overarching conspiracy] may it be held responsible for the conduct of co-conspirators.").[4] Lannett cannot be subject to the risk of joint and several liability for allegedly participating in an overarching conspiracy absent factual allegations demonstrating that it was aware of, and committed to, that common purpose. *See Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 513 (S.D.N.Y. 2009) ("To state a claim against each Defendant," a plaintiff "must make allegations that plausibly suggest that each Defendant participated in the alleged conspiracy"); *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1515 (N.D. Ill. 1990) ("In order to properly plead a conspiracy, the plaintiff must allege facts which evince each defendant's agreement to participate in what he or it knew to be a collective venture toward a common goal." (internal quotation marks omitted)); *see*

---

[4] While the Court distinguished the 2016 *Auto Parts* decision in its earlier Opinion, the principle for which Lannett cites it here—that, to state a claim for an overarching conspiracy, the plaintiffs "must allege facts creating at least an inference as to *each Defendant's* knowing participation in" such a conspiracy—is well established. 2016 WL 8200512, at *4 (emphasis added).

As the Court recognized in its earlier Opinion, the *Auto Parts* court later denied a motion to dismiss a complaint in which plaintiffs alleged an overarching conspiracy to fix the price of component parts for a specific automotive system. *In re Auto. Parts Antitrust Litig.*, No. 13-2702, 2018 WL 1138422, at *4–5 (E.D. Mich. 2018). The issues discussed in that decision, however, are very different from those raised by Lannett's motion in this case. The 2018 *Auto Parts* decision rejected defendants' argument that plaintiffs were "overreaching" by claiming a conspiracy involving multiple distinct but related components used in the same automotive system. *Id.* at *4. The court held that a plaintiff need not "plead the precise boundaries of a product market prior to discovery" and the "question as to which parts [the defendant] manufactured and for which models will be determined through discovery." *Id.* Here, the boundaries between the uses of various generic drugs identified in the Second Complaint are quite clear, and Plaintiff States do not allege facts to the contrary. The individual drugs at issue are *not* sub-components of a larger product or system. Rather, it is clear from the Plaintiff States' allegations that each generic product is unique and used for different and distinct purposes.

-4-

*also Twombly*, 550 U.S. at 556 (explaining that plaintiffs must allege "enough factual matter (taken as true) to suggest an agreement was made").

Moreover, Plaintiff States cannot satisfy their pleading burden with respect to Lannett by relying on general, sweeping allegations attributing awareness, conduct, and motivations to "Defendants" as a group or with allegations regarding Defendants other than Lannett.  *See In re Processed Eggs Antitrust Litig.*, 821 F. Supp. 2d 709, 719–20 (E.D. Pa. 2011) (collecting cases); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("[T]he complaint must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a ***conscious decision by each defendant to join it***." (emphasis added) (internal quotation marks omitted)).

Rather, to state a claim that Lannett participated in the claimed overarching conspiracy, Plaintiff States must plead "allegations specific to [Lannett] alleging [Lannett's] role in the alleged conspiracy," and "that plausibly suggest that [Lannett] participated in th[at] conspiracy."  *In re Optical Disk Drive Antitrust Litig.*, No. 10-2143, 2014 WL 3378336, at *4 (N.D. Cal. July 10, 2014) (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010)); *see also Precision Assocs.*, 2011 WL 7053807, at *30; *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 160–61 (D.D.C. 2004) (holding that plaintiffs must allege, "in the context of the larger conspiracy alleged," that "***each defendant knowingly joined or agreed to participate in the conspiracy***" (emphasis added)); *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 15-6480, 2019 WL 130535, at *3–5 (E.D. Pa. Jan. 8, 2019) (dismissing claim where plaintiffs alleged only that "defendants" participated in a conspiracy but did not provide "further factual matter specifying [each defendant's] participation" in the alleged scheme).

The Plaintiff States' sprawling Second Complaint, spanning 1,661 paragraphs, contains no such allegations specific to Lannett.

**B.      Plaintiff States Have Failed To Plead Facts Plausibly Suggesting that Lannett Was Aware of, and Consciously Committed to, the Claimed Overarching Conspiracy.**

At the motion-to-dismiss stage, the Court must separate the factual and legal arguments of a claim and "may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  Likewise, the Court must disregard speculation.  *Twombly*, 550 U.S. at 545.  Well-pleaded factual allegations must supply the "who, what, where, when, how or why" of a claimed conspiracy.  *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008) (citing *Twombly*, 550 U.S. at 565 n. 10).  But when it comes to the overarching conspiracy claim against Lannett, that is all Plaintiff States offer—unsupported legal conclusions and speculation.

A close examination of Plaintiff States' ***factual allegations as to Lannett*** reveals no facts suggesting that Lannett was aware of, let alone committed to participate in, a conspiracy involving products that it did not even sell.  Rather, Plaintiff States' factual allegations regarding Lannett can be categorized as follows:

- Allegations specific to Lannett's sales and pricing of the specific generic pharmaceutical product Baclofen, a muscle relaxant used to treat muscle spasms caused by certain conditions such as multiple sclerosis and spinal cord injury or disease.  *See* Compl. ¶¶ 496-502, 828.

- Allegations specific to Lannett's sales and pricing of the specific generic pharmaceutical product Levothyroxine, a synthetic form of the thyroid hormone thyroxine used to treat hypothyroidism, goiter, thyroid cancer, and cretinism.  *See* Compl. ¶¶ 1012-31.

- Generalized allegations that Lannett employees attended and participated in industry events such as trade associations, golf outings, dinners, or "Women in the Industry" events.  *See id*. ¶¶ 108, 110-112, 114.

-6-

- Allegations that Lannett employees exchanged phone calls and text messages with certain employees of other generic pharmaceutical manufactures. *See id*. ¶¶ 1062-66, 1069, 1072-79.

- The allegation that Lannett is "headquartered in close proximity" to other generic pharmaceutical companies. *Id*. ¶ 107.

Notably absent are any factual allegations of the type that could plausibly suggest Lannett in particular (as opposed to any other Defendant) consciously committed to the claimed overarching conspiracy. *See generally* Compl.

First, there are no factual allegations that Lannett had ***any communications*** with another Defendant related to products Lannett did not sell. Nor are there any factual allegations suggesting that Lannett engaged in ***any conduct*** regarding products it did not sell. There are no factual allegations at all regarding Lannett—or even mentions of Lannett—in the context of products other than the two that Lannett is alleged to have sold and regarding which Lannett is specifically alleged to have participated in individual-drug conspiracies. Even if the Plaintiff States have plausibly alleged that Lannett participated in individual-drug conspiracies involving those two drugs, which Lannett is not challenging in this motion, that does not plausibly suggest Lannett consciously committed to a sweeping, industry-wide conspiracy involving drugs it never made or sold. *See In re Optical Disk Drive Antitrust Litig.*, No. 10-2143, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) ("Even assuming [certain] auctions, and perhaps others, were rigged, that is a far cry from establishing plausibility for a broad six year continuing agreement among all defendants to fix the prices of all ODDs sold through innumerable other channels."); *see also Ins. Brokerage*, 618 F.3d at 350–51 (explaining that plaintiffs cannot satisfy their pleading burden by merely asserting an overarching conspiracy consisting of individual conspiracies of a "similar nature").

Importantly, the Court will not find in the Second Complaint any factual allegations mentioning, referencing, or suggesting that Lannett knew of and committed to such an overarching,

industry-wide conspiracy.  Plaintiff States characterize their "overarching conspiracy" as follows: "The overarching conspiracy among generic manufacturers []—which ties together all of the agreements on individual drugs identified in this Complaint—is an agreed upon code that each competitor is entitled to its 'fair share' of the market."  Compl. ¶ 116.  Nowhere do Plaintiff States plead facts suggesting that Lannett in particular committed or agreed to such a "fair share" code (or even used the term "fair share").  And nowhere do the Plaintiff States plead facts suggesting that Lannett was even aware of any such code or the claimed overarching, multi-drug agreement.

In the end, all that Plaintiff States offer are (1) general, conclusory, and speculative allegations regarding the existence of an overarching conspiracy and how such a conspiracy may have operated, *see* Compl. ¶¶ 114 *et seq*., and (2) allegations regarding the communication or conduct of Defendants ***other than*** Lannett.  The naked assertion that Lannett joined such a conspiracy is insufficient to survive a motion to dismiss.  *In re Musical Instruments and Equip.*, 798 F.3d at 1194 n.6 ("Conspiracy is a legal conclusion."); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 904–05 (6th Cir. 2009) (explaining assertion that an "agreement" exists among defendants "is nothing more than a legal conclusion masquerading as a factual allegation" and is insufficient to state a claim for violation of Section 1); *Advanced Tech. Corp., Inc. v. Instron, Inc.*, 925 F. Supp. 2d 170, 179 (D. Mass. 2013) ("[The] complaint contains a number of legal conclusions, including allegations that Defendants 'conspired,' 'agreed,' and 'colluded.' While these allegations can provide a framework for the complaint, they are not entitled to an assumption of truth. As a result, these allegations do not bring [the] conspiracy claim any closer to plausibility.").

## III.    CONCLUSION

The question presented by this Motion is not whether Plaintiff States have plausibly alleged the existence of an overarching conspiracy in general, but whether Plaintiffs States have pleaded

the necessary factual allegations supporting a claim that Lannett was aware of and committed to participating in such an overarching conspiracy involving well over 100 drug products that it did not sell. They have not.

    Accordingly, for the reasons stated herein, Lannett respectfully requests that the Court dismiss the overarching conspiracy claims in the Plaintiff States' Second Complaint.

|  |  |
|---|---|
| Dated: November 2, 2020 | Respectfully submitted, |
|  | /s/ *Gerald E. Arth* |
|  | Gerald E. Arth |
|  | Ryan T. Becker |
|  | FOX ROTHSCHILD LLP |
|  | 2000 Market Street, 20th Floor |
|  | Philadelphia, PA 19103 |
|  | Tel: (215) 299-2000 |
|  | Fax: (215) 299-2150 |
|  | garth@foxrothschild.com |
|  | rbecker@foxrothschild.com |
|  |  |
|  | George G. Gordon |
|  | Stephen D. Brown |
|  | Julia Chapman |
|  | DECHERT LLP |
|  | 2929 Arch Street |
|  | Philadelphia, PA 19104 |
|  | Tel: (215) 994-2000 |
|  | Fax: (215) 994-2222 |
|  | george.gordon@dechert.com |
|  | stephen.brown@dechert.com |
|  | julia.chapman@dechert.com |
|  |  |
|  | *Counsel for Defendant Lannett Company, Inc.* |