# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL 2724<br>Civil Action No.: 16-md-2724-CMR |
| **THIS DOCUMENT RELATES TO:**<br>*State of Connecticut, et al. v.*<br>*Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE<br>Civil Action No.: 19-cv-2407-CMR |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARC FALKIN'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

JAMES A. BACKSTROM
*Of this Bar and Pennsylvania 24523*
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
Tel: (215) 864-7797
jabber@backstromlaw.com

Dated: November 2, 2020         *Counsel for Defendant Marc Falkin*

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. OVERVIEW ...........................................................................................................2

    A. **Plaintiffs' General Sherman Act and State Law Allegations** ............2

    B. **Plaintiffs' Claims About Falkin** ...........................................................2

III. ARGUMENT ..........................................................................................................3

    A. **Plaintiffs Fail to Set Forth a Sherman Act Conspiracy Claim Against Falkin** .........................................................................3

        1. **Applicable Legal Standard** .........................................................3

        2. **Plaintiffs Fail to Set Forth a Plausible Claim That Falkin Joined and Participated in a Conspiracy** ...................5

            a. **Legal Conclusions Do Not Plead a Sherman Act Conspiracy** ...............................................................5

            b. **Averments That Falkin Connected With a Competitor Do Not Establish Joinder or Participation in a Conspiracy** ......................................6

            c. **The Complaint Describes no Statement or Act of Falkin in Furtherance of a Conspiracy** ...................7

            d. **Disparate Claims Relying on the Same Contacts Discredit Themselves** .....................................................9

            e. **Averments in the Complaint Are Ambiguous and Not a Plain Statement** .........................................10

            f. **Even as a Pattern, Falkin's Alleged Contacts do not Plausibly Suggest Agreement** ........................11

            g. **Count Twenty-Three Should be Dismissed for Including Drugs Without Factual Averments** ……..12

    B. **Plaintiffs' Sherman Act Conspiracy Claim is Time-Barred** ...........13

    C. **Plaintiffs' Derivative State-Law Claims Must Be Dismissed** ..........14

IV. CONCLUSION ....................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvord-Polk, Inc. v. F. Schumacher & Co.,*
37 F.3d 996, 1013 (3d Cir. 1994)............................................................................... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................ 3, 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................... 3, 5, 11

*Burtch v. Milberg Factors, Inc.*
662 F.3d 212 (3d Cir. 2011)................................................................................ 5, 6, 11

*Finkelman v. Nat'l Football League*,
810 F.3d 187, 201 (3d Cir. 2016)............................................................................... 4

*In re Aspartame Antitrust Litig.,*
416 F. App'x 208 (3d Cir. 2011)............................................................................... 13

*In re Baby Food Antitrust Litig.,*
166 F.3d 112 (3d Cir. 1999)....................................................................................... 6

*In re Generic Pharm. Pricing Antitrust Litig.*,
386 F. Supp. 3d 477(E.D. Pa. 2019) ........................................................................... 4

*In re K-Dur Antitrust Litig.,* **No. 01-1652,**
2016 WL 755623, at *18 (D.N.J. Feb. 25, 2016) ....................................................... 5

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F. 3d 1186 (9th Cir. 2015) .................................................................................. 6

*In re Niaspan Antitrust Litig.*,
42 F. Supp. 3d 735 (E.D. Pa. 2014) ....................................................................... 4, 11

*In re OSB Antitrust Litig.*, **No. 06-826,**
2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) .............................................................. 3

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
566 F. Supp. 2d 363 (M.D. Pa. 2008) ........................................................................ 5

*In re Processed Egg Prod. Antitrust Litig.*,
821 F. Supp. 709, 719 (E.D. Pa. 2011) ............................................................... 4, 5, 10

*Ins. Brokerage Antitrust Litig.,*
618 F.3d at 300 (3d Cir. 2019)................................................................................... 5

*Invamed, Inc. v. Barr Labs, Inc.*,
22 F. Supp.210 (S.D.N.Y. 1998)..................................................................................14

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042, 1047 (9th Cir. 2008) .........................................................................5, 6

*Lorenz v. CSX Corp.*,
1 F.3d 1406, 1414 (3d Cir. 1993)................................................................................13

*Midwestern Mach. Co. v. Northwest Airlines, Inc.*,
392 F.3d 265 (8th Cir. 2004) ......................................................................................14

*Rick-Mik Enters. v. Equilon Enters., LLC*,
532 F.3d 963(9th Cir. 2008....................................................................................... 14

*St. Clair v. Citizens Fin. Grp.*,
340 F. App'x 62, 65 n. 2 (3d Cir. 2009) .....................................................................14

*United States v. Kelly*,
892 F.2d 255 (3d Cir. 1989).........................................................................................5

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
627 F.3d 85, 98 (3d Cir. 2010).....................................................................................4

**Statutes**

15 U.S.C. § 1................................................................................................................2

15 U.S.C. § 15b......................................................................................................2, 13

**Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................................5

Fed. R. Civ. P. 12(b)(6)...............................................................................................2

I.     INTRODUCTION

This action must be dismissed as to Defendant Marc Falkin ("Falkin") because Plaintiffs'[1] Amended Complaint ("the Complaint" or "AC") fails to contain facts sufficient to establish that Falkin engaged in the "overarching conspiracy" alleged and, in any event, is untimely on its face. Derivative pendant state law claims against Falkin likewise should be dismissed as a consequence of defective pleading of the conspiracy count. Further, Falkin joins, adopts, and incorporates by reference as though fully set forth herein the three joint motions to dismiss and memoranda of law in support thereof filed by Certain Defendants on grounds that (1) Plaintiffs in this action lack standing to bring their federal law claims, (2) the state law claims fail for a variety of reasons, and (3) Plaintiffs have engaged in impermissible claims splitting.

As to Falkin, the Complaint amounts entirely to pleading by toll record. It fails to actually describe a single conversation between him and anyone else, let alone about a competitive issue. Neither does it describe any act or decision of his in furtherance of a conspiracy. In the complete absence of direct evidence of any misconduct by Falkin, Plaintiffs resort to extracting, from years of telephone connections with one person, selected unelaborated contacts to link Falkin to a conspiracy among a host of others to fix prices and allocate customers for scores of pharmaceuticals. Reciting the dates, number and duration of contacts is no substitute for pleading an antitrust conspiracy. Even if it could be, this Complaint is barred by the applicable four-year statute of limitations. 15

---

[1] Alabama Alaska, the Territory of American Samoa, Arizona, Arkansas, Colorado, Connecticut, Delaware, Columbia, Florida, Georgia, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, the Northern Mariana Islands, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia Wisconsin, and Wyoming.

U.S.C. §15b. Corporate defendants have years and means to defend against the blunderbuss at bar. This Court should exercise its proper gate-keeping role under Rule 12(b)(6) to remove this jeopardy to Falkin's living and reputation now.

II. OVERVIEW

A. Plaintiffs' General Sherman Act and State Law Allegations

The Complaint alleges that, since 2012, 21 generic pharmaceutical manufacturers and 16 individuals, including Falkin, engaged in a horizontal price-fixing and market allocation conspiracy that, with other drug-specific schemes, was tied to a vast "overarching" industry conspiracy. Falkin is obliged to respond to a Sherman Act (15 U.S.C. § 1) conspiracy count (Count 23) and state law claims collected in a succeeding count (Count 35). *See AC* ¶¶ 1309-1317, 1417-1726. Except for a non-exclusive list of 20 molecules about which he is alleged to have conspired, these counts indiscriminately parrot those against others.

B. Plaintiffs' Claims About Falkin

Plaintiffs allege that, "[a]t all times relevant, to the [Complaint], Falkin was the Vice President, Marketing, Pricing and Contracts at Defendant Actavis." AC ¶ 40. No other description of his position or authority at Actavis is set forth. The Complaint alleges no act, statement or involvement on his part after February 2015 (AC ¶ 355, 900). Every substantive averment in which Falkin is identified relies on content-less contacts with an employee at Teva Pharmaceuticals USA, Inc. ("Teva"), whom he has known for years and counts as a personal friend.

Twenty-five of the 1,726 paragraphs of the Complaint purport to connect Falkin to collusion concerning specific pharmaceuticals. All the others may be ignored as irrelevant or mere insinuation. For example, one paragraph recites that Falkin attended a dinner with competitors "when the prices of a number of drugs were reportedly soaring",

2

but no plot is described. AC¶ 108.  Paragraphs indicating the number of his contacts with individuals at Teva and other competitors are but innuendo.[2] Much of Count Twenty-Three, such as claims that Falkin directed "others" or "tacitly" approved their communications (AC ¶ 1311) and even "personally enjoyed ill-gotten gains from the sales of … generic drugs" at "supra-competitive prices"(AC ¶ 1316) are hypnotically rote and orphaned from facts.

Viewed individually, collectively or in the context of an alleged industry-wide combination, these averments fall far short of satisfying pleading standards for antitrust complaints. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

### III.    ARGUMENT

#### A. Plaintiffs Fail to Set Forth a Sherman Act Conspiracy Claim Against Falkin

#### 1.  Applicable Legal Standard

The Complaint fails to state a claim of any kind because, as to Falkin, its "plain statement" yet lacks the substance to show that Plaintiffs are entitled to relief. In an antitrust case under Section 1 of the Sherman Act, a complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly,* 550 U.S. at 556. Despite its volume and sweep, this one does not.

Of particular import to a natural person named as a defendant in a vast conspiracy with major corporations, an antitrust "plaintiff must allege that each individual defendant joined the conspiracy and played some role in it". *See In re OSB Antitrust Litig.,* No. 06-

---

[2] An averment that Falkin "had a very strong relationship" with a second Teva employee, Maureen Cavanaugh, is particularly unworthy. AC ¶ 590. No anticompetitive agreement between them is described in the Complaint, and Plaintiffs include contacts during a period in when each had duties integrating Actavis' operations with Teva's.  (AC ¶ 28).

826, 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007). If a complaint fails to "delineate [ ] to some sufficiently specific degree that a defendant purposefully joined and participated in the conspiracy", it must be dismissed. *In re Generic Pharm. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477, 482 (E.D. Pa. 2019)(quoting *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 2d. 709, 720 (E.D. Pa. 2011)).

To give practical expression to this requirement, plaintiffs are bound to fulfill their "pleading burden to offer allegations that plausibly suggest that the defendant agreed to the conspiracy"; that is, that Falkin made "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Processed Egg.*, 821 F. Supp. 2d. at 719 (E.D. Moreover, where a complaint alleges a larger "overarching conspiracy," the plaintiff must allege "particularized facts that each Defendant undertook certain acts, or engaged in certain conduct… that plausibly suggest that particular Defendant's embrace of that overarching conspiracy." 821 F. Supp. 2d at 721. An antitrust plaintiff's allegations are weighed for sufficiency in context,[3] and plaintiffs are not required to "plead facts that, if true, definitely rule out all possible innocent explanations."[4] "But there is a difference between allegations that stand on well-pleaded facts and allegations that stand on nothing more than supposition"[5] The mere existence of telephone connections is insufficient to allege a single conspiracy, let alone a constellation.

Moreover, plaintiffs must plead facts showing that (1) each alleged conspirator was aware of, and committed to, a common goal that transcended the individual agreements in which he or she is specifically alleged to have participated; (2) the individual conspiracies were interdependent; and (3) there was sufficient overlap among

---

[3] *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).
[4] *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 753 (E. D. Pa. 2014).
[5] *Finkelman v. Nat'l Football League*, 810 F.3d 187, 201 (3d Cir. 2016).

the participants in the individual conspiracies. *United States v. Kelly*, 892 F.2d 255, 258-59 (3d Cir. 1989); *Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 348–51 (3d Cir. 2019); *In re K-Dur Antitrust Litig.*, No. 01-1652, 2016 WL 755623, at *18 (D.N.J. Feb. 25, 2016). The allegations against Falkin fail to satisfy even the first of these factors, which is an essential ingredient in requiring him to answer about any conspiracy.

The standard found in *Twombly* and *Iqbal* requires "more than a sheer possibility that a defendant has acted unlawfully", and a complaint that pleads facts "merely consistent with a defendant's liability stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (quoting *Iqbal,* 556 U.S. at 678). The averments on their face not only fail to connect Falkin to a conspiracy but, when considered together, disclose that Plaintiffs have absolutely no basis to impute any content to any of the contacts on which the entire Complaint is founded.

> **2.    Plaintiffs Fail to Set Forth a Plausible Claim That Falkin Joined and Participated in a Conspiracy**
>
> **a.    Legal Conclusions Do Not Plead a Sherman Act Conspiracy**

A series of conclusory averments that Falkin joined a Sherman Act conspiracy (AC ¶¶ 14, 1301-08) does not carry Plaintiffs' pleading burden. From *Twombly*, it is "clear that sprinkling the complaint with conclusory assertions that a party was a 'participant in coordinated conduct' or a 'conspirator' or acted in concert' with others does not make the requisite showing of entitlement to relief mandated by Rule 8(a)(2)." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 376 (M.D. Pa. 2008). *Compare, e.g.*, AC ¶¶ 909, 912 (defendants spoke or communicated to "coordinate the increase"). "The Court properly looks for more than mere repetitive generic reference to "Defendants" tacked on to a conclusory verb form to connect an

individual defendant to an actual agreement in an antitrust conspiracy". *In re Processed Egg Prod. Antitrust Litig.,* 821 F. Supp. 2d at 721 (ED. Pa. 2011) (citations omitted). "Conspiracy is a legal conclusion. Rather, plaintiffs must plead evidentiary facts: 'who did what, to whom (or with whom, where and when.'" *In re Musical Instruments & Equip. Antitrust Litig.,* 798 F.3d 1186, 1194 n.6 (9th Cir. 2015) (citing *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1047 (9th Cir. 2008)). "A bare allegation of conspiracy is almost impossible to defend against, particularly where the defendants are large institutions . . . ." *Kendall,* 518 F.3d at 1047.  In this case, it is equally impossible for a natural person to defend.

        **b.**      **Averments That Falkin Connected With a Competitor Do Not Establish Joinder or Participation in a Conspiracy**

Each drug-specific allegation against Falkin in the Complaint consists essentially of citation to the existence of telephone contacts between Falkin and one individual at Teva over 16 months of their acquaintance. None of these averments quotes, paraphrases or conveys the substance of what Falkin or his correspondent actually said. *See* AC ¶¶338, 341, 345, 347, 354, 355, 362, 417, 419, 427, 746, 749, 779, 780, 846, 847, 881, 885, 891, 896, 897, 900, 909, 912 and 1092.  Assigning an agreement or conspiracy to any contact, without more, plainly is inadequate for a Sherman Act complaint.

Our Circuit has "held previously that communications between competitors do not permit an inference or an agreement to fix prices unless 'those communications rise to the level of an agreement, tacit or otherwise.'" *In re Baby Food Antitrust Litig.,* 166 F.3d 112, 126 (3d Cir. 1999) (quoting *Alvord-Polk, Inc. v. F. Schumacher & Co.,* 37 F.3d 996, 1013 (3d Cir. 1994)). On the contrary, the very absence of substance of any individual communication, out of hundreds not specified, permits the conclusion that there is an alternative, entirely lawful explanation for such communication. Fortunately, social

discourse, even between commercial rivals, is not a cognizable offense. *See, e.g., Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 228 (3d Cir. 2011) ("Conversations between [the Defendants] do not alone raise an inference of agreement.") Nor does the Complaint include statements in any form reflecting anything Falkin himself said or did even in his own company that might convert his contacts to illicit conduct.

### c. The Complaint Describes no Statement or Act of Falkin in Furtherance of a Conspiracy

The Complaint makes creative use of telephone toll records to inject Falkin into various price increases and customer shifts in the generic pharmaceutical industry. Unlike other defendants, he features and figures in no email, documents or the statements of confidential informants. Permitting pleading by toll record would subject Falkin to any and every claim Plaintiffs decide to assign to his contacts, which they do.

1. At AC ¶¶ 417-419, the earliest cited connections between Falkin and Teva's David Rekenthaler, in November 2013, are used to claim that Falkin agreed with Teva to relinquish shares of the market for a single drug, Nortriptyline Hydrochloride Capsules ("Nortriptyline"), to make way for a new entrant.  As with every other citation to calls between the men, the substance is neither quoted nor paraphrased. Significantly, nothing in the claim distinguishes events from independent reaction to a new competitor. A passing reference to the existence of two holiday-week text messages between Falkin, and another Teva employee a year apart is unexplained and gratuitous.  AC ¶ 419.

2. At AC ¶ 847, phone connections between Falkin and Rekenthaler in August 2014 are alleged to concern price increases for four drugs.[7] Unlike other averments, the actual call records are not even included, and, as will be seen, Plaintiffs rely on connections as short as zero seconds to suggest a pattern.  As in all other

---

[7]Desmopressin Acetate Tablets, Flutamide Capsules, Disopyramide Phosphate Capsules and Topiramate Sprinkle Capsules

averments about Falkin in reference to specific drugs, the Complaint does not set forth anything Falkin allegedly said or did. This paragraph recites that Falkin connected with Rekenthaler on August 18, 24, 26 and 28, after which Teva raised prices on these molecules on August 28.  The imputation of collusion about the Teva price increase to these particular contacts is anything but a plain statement for Rule 12(b)(6) purposes.

        3.      In two colorful charts at AC ¶¶ 890-891, Plaintiffs describe Teva's price increase on January 28, 2015, and allege that a galaxy of competitors including Actavis agreed to increase prices on a variety of molecules.  The central claim as to Actavis is that Rekenthaler colluded to raise prices for five drugs[9] through "constant communication" with Falkin. But the phone connections cited with Falkin occurred in just four days in January 2015. The content of none is described. Neither is any act in furtherance of a conspiracy on Falkin's part. AC ¶ 890. An internal Teva document indicating that the reason for the increases is to "[f]ollow competitor-Actavis" hardly is proof of collusion in itself. AC ¶ 810.

        4.      In separate averments, the Complaint alleges that Rekenthaler obtained from Falkin Actavis' targets for shares of the market for two different drugs[10] as part of an allocation scheme. Not only is there no reference to anything Falkin said, but the shares Rekenthaler describes, the same for each drug, 25%, are not hard for a sophisticated executive to reckon on his own.

        5.      Tellingly, the Complaint uses the same approach to imply Falkin's involvement in collusion on two drugs[11] in which he is not even named in Count Twenty-Three. AC ¶¶ 846, 1092.  It is evident that assigning him complicity as to any drug is arbitrary and, of course, fails as a matter of pleading under Rule 12.

---

[9] Griseofulvin Suspension, Estradiol Tablets, Ciprofloxacin HCL Tablets, Nortriptyline and Propranolol HCL Tablets.
[10] Clonidine TTS Patch (AC ¶¶ 346-351) and Dextroamphetamine Sulfate ER (AC ¶ 341).
[11] Fluocinonide (AC ¶ 846) and Raloxifene Hydrochloride Tablets (AC ¶ 1092).

### d. Disparate Claims Relying on the Same Contacts Discredit Themselves

The Complaint indiscriminately draws on sets of connections to implicate Falkin in collusion concerning completely unrelated drugs and thoroughly different market offenses. Plaintiffs cite the *very same* calls variously as price fixing *and* market allocation on different drugs. To be clear, the Complaint does *not* state that Falkin and his confederate made a number of agreements in the same call. Rather, it refers to the same calls in different chapters and without cross reference to make a bevy of claims. This is a profound indication that the entire basis for suing Falkin is not only deficient but defective. Examples abound.

1. At AC ¶¶ 338-339 Plaintiffs associate phone connections between Falkin and Rekenthaler in March of 2014 with market allocation of Amphetamine / Dextroamphetamine IR. The substance of surrounding averments, however, is that Teva conceded a customer's account to Actavis *because Actavis offered a lower price*. AC ¶339. Elsewhere, at AC ¶¶ 740-50 and 779, connections on the same dates, March 17 and April 4, 2014, are cited as Falkin's complicity with Teva in price increases for five other molecules on April 4, 2014.[12] Since no content of any call on any day is described, let alone any action on Falkin's part, these allegations state no claim.

2. At AC ¶¶ 354-355, a contact between Falkin and Rekenthaler on February 16, 2015 is blamed for market share collusion concerning Budesonide. Elsewhere, at AC ¶ 900, the very same call is cited, without cross-reference, as collusion on an increase in the price of Propranolol. Apart from the absence of any averment containing a statement by Falkin, let alone a commitment to anything, the averments in the Complaint illustrate that, in pleading, Plaintiffs consider all telephone connections fungible to prove anything.

---

[12] Budesonide Inhalation, Clarithromycin ER Tablets, Estazolam Tablets, Tamoxifen Citrate Tablets, Hydroxyzine Pamoate Capsules.

9

3. Under the heading "Competitors Follow Teva", the averment at AC ¶ 885 purports to distinguish collusion from lawful price followership. The pleading fails. The actual averment is only that Rekenthaler and Falkin connected "frequently" including calls on three days before Actavis followed Teva's December 19, 2014 price increase on Desmopressin. One of these calls, on November 25, 2014, is used in AC ¶ 362 to claim Falkin colluded about Teva's launch of Celecoxib, a completely different drug.

4. At AC ¶ 846, the Complaint includes records of 14 telephone calls between Falkin and Rekenthaler alleging collusion about Celecoxib and Fluocinonide from December 3 through 18, 2014. AC ¶ 909 refers to the *same* calls on December 17 and 18 as proof of discussion of Ciprofloxacin. To allege price collusion in reference to three drugs, Plaintiffs make similar use of telephone connections between Falkin and Rekenthaler with respect to a litany of drugs on which Falkin is supposed to have conspired. AC ¶ 362.[14] In no case is there any basis to connect any call to any drug, let alone any statement or act in furtherance of a conspiracy.

Plaintiffs not only fail to "offer allegations that plausibly suggest Falkin agreed to the conspiracy"[15], the Complaint's internal contradictions reduce its drug-specific to supposition.

  e. **Averments in the Complaint Are Ambiguous and Not a Plain Statement**

At various points, the Complaint imputes to Falkin actions clearly initiated by others, particularly customers. These attributions are not supported by any statement or act of Falkin in furtherance of a conspiracy.

---

[14] This averment illustrates a proclivity to convert connections into conversations. The Complaint rounds a 16-second connection between Falkin and Rekenthaler to a whole minute in which two drugs are alleged to have been discussed. (AC ¶ 363).
[15] *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 709, 719 (E.D. Pa. 2011).

1.  At AC ¶¶ 345-351, Falkin is alleged to have connected by phone with Rekenthaler a number of times on May 6-8, 2014 concerning Teva's conceding customers for Clonidine to Actavis. But other averments assert that Actavis planned to undercut Teva's pricing to achieve 25% of the market. Internal statements about Actavis' aspirations to take business from Teva (AC ¶¶ 348-49) are not attributed to Falkin and actually are consistent with a unilateral decision. While Actavis rescinded its offer letters in favor of higher prices than Teva's, the Complaint fails to connect Falkin to either of these actions save by bare implication. This is inadequate to plead a conspiracy.

2.  In relation to Desmopressin, the Complaint plainly does not set forth what Falkin said or did. Moreover, taken as true, AC ¶ 886 establishes Teva learned of pricing action by Actavis on the drug from a customer, not Falkin.

### f. Even as a Pattern, Falkin's Contacts do not Plausibly Suggest Agreement

Plaintiffs rely on a selection of telephone connections culled from many more to suggest specific conspiratorial agreements. As noted, in the absence of substantive allegations about individual contacts, Plaintiffs are not obliged to plead facts that, if true, rule out all possible innocent explanations,"[16] such as friendship and innocent interests. But it is submitted that allegations standing on nothing more than supposition about a relative handful of calls long enough to constitute conversations do not "contain enough factual matter (taken as true) to suggest that an agreement was made."[17] Significantly, there is no allegation that Falkin conspired with *anyone* at Teva after February of 2015, although he remained at Actavis through the company's acquisition by Teva in 2016.[18] Presumably, the alleged conspiracy operated without him. Where an innocent alternative

---

[16] *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 753 (E.D. Pa. 2014).
[17] *Twombly,* 550 U.S. at 556.
[18] AC ¶ 28.

11

is evident, contacts between competitors cannot be presumed illegal. *See, e.g., Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 228 (3d Cir. 2011).

1.     At AC ¶ 589, the Complaint lists 433 connections between Falkin and Rekenthaler between August 7, 2013 and April, 2015, when the latter left Teva. Only 83 are alleged as collusive. Of those, less than half include detailed time and duration data that might have some significance.

2.     Numerous connections have no circumstantial significance at all, although Plaintiffs contend they comprise a pattern. For example, of 22 calls they cite as conspiratorial conversations in March 2014 and December 2014, four were zero seconds duration, three lasted less than 10 seconds and three are less than 20 seconds. (AC ¶¶ 427 and 846).

3.     While the Complaint contains tables detailing many records of calls of Falkin and others including dates, times and duration down to the second, it omits that information about calls tied to allegedly significant market events. *See* discussion *supra* Part III (A)( d.) 2. - 3.

4.     The Complaint refers to a "flurry" of telephone calls about Actavis' launch of Amphetamine/Dextroamphetamine, including a contact between Falkin and Rekenthaler on March 20, 2014. AC ¶ 338. Yet, no toll records even are included. *See also* AC ¶ 341 (alleged market share discussion about Dextroamphetamine on June 19, 2014); and AC ¶ 847 (Teva price increases on four drugs on August 28, 2014).

    g.  **Count Twenty-Three Should be Dismissed for Including Drugs Without Factual Averments**

The inclusion in Count 23 of Buspirone Hydrochloride Tablets and Drospirenone and Ethinyl Estradiol ("Ocella") among products on which Falkin is alleged to have colluded is inexplicable. AC ¶ 1312. The sole reference to Buspirone in substance is the

single assertion that Teva raised the price in concert with Actavis predecessor Watson and a third firm in 2012. If true, this was an entire year *before* Falkin joined Actavis and the generic sales business. AC ¶ 540  Likewise, Falkin is not mentioned in reference to alleged May 2013 negotiations of market shares for Ocella between Actavis and Teva, AC ¶¶ 280-285, again *before* Falkin joined Actavis. Naming him in a Sherman Act count including these drugs is baseless and  arbitrary.

Plaintiffs are obliged to plead a sufficient basis to sue each party, in this case, a natural person, as a defendant. After years in official investigation, and an amendment that addresses none of its defects, their Complaint fails utterly as a claim for relief against Falkin. In these circumstances, it should be dismissed with prejudice.[19]

### B. Plaintiffs' Sherman Act Conspiracy Claim is Time-Barred

Alternatively and additionally, Plaintiffs' Sherman Act claim against Falkin is time-barred.  The Complaint, amended on November 1, 2019, first was filed on May 10, 2019. The latest anticompetitive "act" Falkin is alleged to have performed is dated February 16, 2015. The Complaint must adequately allege that the defendants performed injurious acts in furtherance of the conspiracy within the limitations period. *See* 15 U.S.C. §15b; *In re Aspartame Antitrust Litig.*, 416 F. App'x 208, 211 (3d Cir. 2011). Each specific event attributed to Falkin was over four years old when he first was named as a defendant. AC ¶¶ 585, 589.  Aside from rote recitations, the Complaint does not effectively allege that Falkin conspired about drugs for which sales occurred within the four years preceding the original filing. No cognizable exception saves the Complaint from dismissal under 15 U.S.C. 15b.

1. The Complaint does not and cannot affirmatively allege fraudulent concealment. With apparent pride, Plaintiffs claim the State of Connecticut, which

---

[19] *See, e.g., Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

possesses subpoena power by the way, "initiated a non-public investigation into suspicious price increases in July 2014" (AC ¶ 4), *during* the alleged conspiracy and seven months *before* Falkin's alleged final act in it. That there is no averment that Falkin communicated with anyone at Teva or any other competitor to carry on suggests that innocent explanations for his contacts with acquaintances at competitors abound. No fact in the Complaint elevates the possibility of collusion on his part to the plausible.

2.       Nor does a "continuing violation exception" avail Plaintiffs. That theory is based on the existence of an "initial action that violates the antitrust laws followed by injuries caused by illegal action *designed to implement and effectuate* the initial violation." *Midwestern Mach. Co. v. Northwest Airlines, Inc.*, 392 F.3d 265, 275 (8th Cir. 2004) (emphasis in original) (affirming dismissal of antitrust suit where plaintiff only alleged "unabated inertial consequences of the initial violation" and not independent overt acts violating the antitrust laws). In this case, Plaintiffs fail to describe Falkin's joinder in the conspiracy, "in the first instance". *See, e.g., Invamed, Inc. v. Barr Labs, Inc.*, 22 F. Supp.2d 210, 222 (S.D.N.Y. 1998).

The allegation-by-toll record approach Plaintiffs have taken fails to plead such joinder. Accordingly, the Sherman Act claim (Count Twenty-Three, ¶¶1309-1317) against Falkin is foreclosed by the four-year statute of limitations.

C.       **Plaintiffs' Derivative State-Law Claims Must Be Dismissed**

Plaintiffs' failure to state a Sherman Act claim likewise warrants dismissal of their various and intriguing antitrust and consumer protection causes set forth in Count Thirty-Five. AC ¶¶1417-1726. These claims are wholly derivative of the defective action-by-phone record allegations in Count Twenty-Three and in the Complaint as a whole. Courts dismiss derivative claims in such situations. *See, e.g.*, *St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 65 n. 2 (3d Cir. 2009) (state law antitrust claims are only viable if

14

corresponding Sherman Act claims are sufficient); *Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 976 n. 5 (9th Cir. 2008). Falkin should not be called to answer state law claims when the federal action from which they derive are inadequate under Rule 12(b)(6).

## IV. CONCLUSION

After investigating the generic pharmaceutical industry for over five years, Plaintiffs plead compounded supposition, rather than well-plead facts, to connect Falkin to a massive conspiracy. Through innuendo and guilt by association, they already have injured him in his living and reputation in a way from which he is entitled to relief now. All claims against him should be dismissed with prejudice.

Dated: November 2, 2020               Respectfully submitted,

                                      JAMES A. BACKSTROM, COUNSELLOR

                                      *s/ James A. Backstrom*

                                      James A. Backstrom
                                      *Of this Bar and Pennsylvania 24523*
                                      1515 Market Street, Suite 1200
                                      Philadelphia, PA 19102-1932
                                      Tel: (215) 864-7797
                                      jabber@backstromlaw.com

                                      *Counsel or Defendant Marc Falkin*