**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL No. 2724<br>Civil Action No.: 16-md-2724-CMR<br><br>HON. CYNTHIA M. RUFE |
| **THIS DOCUMENT RELATES TO:** | |
| *State of Connecticut, et al., v.*<br>*Teva Pharmaceuticals USA Inc., et al.* | Civil Action No.:  19-cv-2407-CMR |

---

**DEFENDANT JAMES BROWN'S
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Defendant James Brown, by and through his undersigned counsel, Krantz & Berman LLP, hereby moves this Court for the entry of an order dismissing with prejudice all claims against him in Plaintiffs' Amended Complaint (Dkt. No. 106, Counts 21 and 35) pursuant to Federal Rule of Civil Procedure 12(b)(6). The grounds for this Motion are set forth more fully in the accompanying Memorandum of Law.


Dated: November 2, 2020                    Respectfully Submitted,

                              /s/ Larry H. Krantz
                              Larry H. Krantz
                              Jerrold L. Steigman
                              KRANTZ & BERMAN LLP
                              747 Third Avenue, 32nd Floor
                              New York, New York 10017
                              lkrantz@krantzberman.com
                              jsteigman@krantzberman.com

                              *Counsel for Defendant James Brown*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL No. 2724<br>Civil Action No.: 16-md-2724-CMR<br><br>HON. CYNTHIA M. RUFE |
| **THIS DOCUMENT RELATES TO:**<br><br>*State of Connecticut, et al., v.*<br>*Teva Pharmaceuticals USA Inc., et al.* | Civil Action No.:  19-cv-2407-CMR |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAMES BROWN'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
 (212) 661-0009

*Attorneys for Defendant James Brown*

## <u>TABLE OF CONTENTS</u>

Introduction ...................................................................................................................... 1

Argument ......................................................................................................................... 1

   A.  This Court Should Dismiss Count Twenty-One For Failure to State a Claim .................. 1

       1.  Step One – Identifying  The Relevant Elements of A Sherman Act Claim ............... 2

       2.  Step Two – Identifying Conclusory Allegations ........................................................ 6

       3.  Step Three – Evaluating the Non-Conclusory Allegations ........................................ 8

   B.  In the Alternative, Count Twenty One Must Be Dismissed As To At Least Six
      of the Drugs Listed Therein .......................................................................................... 10

   C.  The Statute of Limitations Has Run on the Sherman Act Claim ...................................... 11

   D.  The State Law Claims Should Also Be Dismissed ............................................................ 13

   E.  The Amended Complaint Should Be Dismissed With Prejudice ....................................... 13

Conclusion ....................................................................................................................... 14

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                              <u>Pages</u>

*Array Holdings Inc. v. Safoco, Inc.*,
    2013 WL 2617965 (S.D. Tex. June 11, 2013) ........................................................ 6

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................... 2

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................... *Passim*

*Borough of West Mifflin v. Lancaster*, 45 F.3d 780 (3d Cir. 1995) ...................................... 13

*Brown v. Donco Enterprises Inc.,* 783 F.2d 644 (6th Cir. 1986) ........................................... 2, 5, 6

*Burtch v. Milberg Factors, Inc.,* 662 F.3d 212 (3d Cir. 2017) ............................................. 2, 7

*Churchill Downs Inc. v. Thoroughbred Horsemen's Group, LLC,*
    605 F.Supp.2d 870 (W.D. Ky. 2009) .......................................................... 6

*Concord Associates LP v. Entertainment Properties Trust,*
    2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) ...................................................... 5

*Coulter v. Unknown Probation Officer,*
    562 Fed. Appx. 87 (3d Cir. 2014) ............................................................. 4

*Georgandellis v. Holzer Clinic, Inc.,*
    2009 WL 1585772 (S.D. Ohio June 5, 2009) ...................................................... 6

*Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*,
    602 F.3d 237 (3d Cir. 2010) ................................................................ 6

*In re Allergan ERISA Litig.*, 975 F.3d 348 (3d Cir. 2020) ................................................... 7

*In re California Bail Bond Antitrust Litig.,*
    2020 WL 3041316 (N.D. Cal. April 13, 2020) ..................................................... 5

*In re Elevator Antitrust Litig.,* 502 F.3d 47 (2d Cir. 2007) ................................................... 6, 7

*In re Generic Pharmaceuticals Pricing Antitrust Litig.,*
    338 F.Supp.3d 404 (E.D. Pa. Oct. 16, 2018) ..................................................... 5, 10

*In re Generic Pharmaceuticals Pricing Antitrust Litig.,*
    368 F.Supp.3d 814 (E.D. Pa. 2019) ........................................................... 12

*In re Generic Pharmaceuticals Pricing Antitrust Litig.,*
    386 F.Supp.3d 477 (E.D. Pa. 2019) ........................................................... 3

*In re Insurance Brokerage Antitrust Litig.,*
    618 F.3d 300 (3d Cir. 2010) ................................................................ *Passim*

ii

*In re Mushroom Direct Purchasers Antitrust Litig.*,
    2017 WL 895582 (E.D. Pa. Mar. 6, 2017)................................................. 5

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    566 F.Supp.2d 363 (M.D. Pa. 2008).....................................................4, 5

*In re Processed Egg Prod. Antitrust Litig*.,
    821 F.Supp.2d 709 (E.D. Pa. 2011) ............................................. *Passim*

*In re: Interest Rate Swaps Antitrust Litig.*,
    261 F.Supp.3d 430 (S.D.N.Y. 2017)....................................................... 4, 6

*Klehr v. A.O. Smith Corp*., 521 U.S. 179 (1997) ...................................11

*Lorenz v. CSX Corp*., 1 F.3d 1406 (3d Cir. 1993)………………………………… 13

*Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752 (1985)............................................ 3

*MVConnect, LLC v. Recovery Database Network, Inc.*,
    2011 WL 13128799 (N.D. Tex. May 27, 2011) ...................................... 6

*Tera Group, Inc. v. Citigroup, Inc.*,
    2018 WL 4732426 (S.D.N.Y. Sept. 28, 2018)......................................... 5

*Tera Group, Inc. v. Citigroup, Inc.,*
    2019 WL 3457242 (S.D.N.Y. July 30, 2019) ......................................... 3, 5

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)......................................... 13

*West Penn Allegheny Health System, Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010)................................................................ 11, 12

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Coop.*,
    2019 WL 130535 (E.D. Pa. Jan. 8, 2019) .............................................. 6

*Zenith Radio Corp. v. Hazeltine Research, Inc*.,
    401 U.S. 321 (1971)......................................................................... 11

## **Statutes**

Fed. R. Cr. P. 12(b)(6) ......................................................... *Passim*

15 U.S.C. § 15b.................................................................... 11

28 U.S.C. § 1367(c) ................................................................ 13

## INTRODUCTION

Defendant James Brown moves pursuant to Rule 12(b)(6) to dismiss with prejudice Count 21 of the Amended Complaint ("Amended Complaint" or "AC") – the sole federal count levied against him – and the supplemental state law count set out in Count 35. These counts fail to state a claim against Brown, and the federal count, in any event, is untimely.

Although the Amended Complaint alleges an overarching conspiracy against the corporate defendants involving hundreds of drugs, the States seek to draw Brown into this vast case by alleging participation in a much narrower, 10-drug conspiracy. AC ¶ 1294. However, even these narrow allegations against Brown fail to state a claim against him. Among the 1726-paragraph Amended Complaint, the core of the States' allegations concerning Brown is set out in *one* paragraph. AC ¶ 486. The States' conclusory allegations against Brown, however, fail to plausibly allege that he joined or participated in an antitrust conspiracy. In fact, there are no allegations that Brown *said* anything indicating his agreement to join a conspiracy, nor that he *did* anything to further any anticompetitive conspiracy. Accordingly, Brown moves to dismiss Count 21 in its entirety, or in the alternative, to dismiss Count 21 as to some of the drugs listed therein. Brown also moves to dismiss the federal count as time barred, and to dismiss the supplemental state count.[1]

## ARGUMENT

### A.  This Court Should Dismiss Count Twenty-One For Failure to State a Claim

Count 21 – the only Sherman Act claim against Brown – should be dismissed under Rule 12(b)(6) because the States fail to assert well-pled allegations that Brown joined and participated

---

[1]     Brown also joins the motions to dismiss filed on November 2, 2020 based upon claim splitting and lack of standing.

in an antitrust conspiracy.[2] To decide a Rule 12(b)(6) motion, courts engage a three step process: identify the elements of the claim, set aside conclusory allegations to which no presumption of truth attaches, and assess whether the factual allegations state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2017) (following three-step process); *In re Insurance Brokerage Antitrust Litig.,* 618 F.3d 300, 315-326 (3d Cir. 2010) (same) ("*Ins. Brokerage*"). A court must determine whether the complaint sets forth "enough factual matter (taken as true) to suggest that an agreement [to engage in anticompetitive conduct] was made," nudging allegations from "conceivable to plausible." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 570 (2007).

### 1.   Step One – Identifying  The Relevant Elements of A Sherman Act Claim

It is well settled that the first element – indeed, the linchpin – of a Sherman Act claim is that the defendant agreed and participated in an antitrust conspiracy. *Ins. Brokerage,* 618 F.3d at 315 ("First, the plaintiff must show that the defendant was a party to a 'contract, combination...or conspiracy").

Given that anticompetitive conduct "is often difficult to distinguish 'from the gray zone of socially acceptable and economically justifiable business conduct,'" *Brown v. Donco Enterprises Inc.,* 783 F.2d 644 (6th Cir. 1986), courts are vigilant – even at the motion to dismiss stage – to ensure that each defendant is sufficiently alleged to have joined an antitrust conspiracy. In *Twombly,* the Supreme Court rejected as insufficient allegations which rested on "mere[] legal conclusions resting on the prior allegations," or boilerplate claims of an anti-competitive "contract, combination or conspiracy." *Twombly,* 550 U.S. at 564-5. Since *Twombly*, courts have eschewed

---

[2]      In addition, since the States have not alleged a single purchase of Moexipril or any other drug at a supracompetitive price, they have also failed to allege injury. *See* Section C, *infra.*

flimsy, conclusory allegations that a defendant joined and participated in an antitrust conspiracy, and have ensured that pleadings "delineate[] to some sufficiently specific degree that a defendant purposefully joined and participated in the conspiracy." *In re Processed Egg Prod. Antitrust Litig.*, 821 F.Supp.2d 709, 720, 752-4 (E.D. Pa. 2011) ("*In re Egg*") (dismissing claim against trade association where the plaintiffs failed to connect it with any actions alleged to have advanced the conspiracy); *In re Generic Pharmaceuticals Pricing Antitrust Litig.,* 386 F.Supp.3d 477, 483-4 (E.D. Pa. 2019) (quoting *In re Egg* and dismissing claim against McKesson) ("*McKesson Decision*").

To properly allege that a defendant joined an antitrust conspiracy, a plaintiff must present well-pled facts that the defendant made a "conscious commitment to a common scheme designed to achieve an unlawful purpose." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1985); *Ins. Brokerage,* 618 F.3d at 318 (a plaintiff must point to "some form of concerted action, in other words, a unity of purpose or a common design and understanding or a meeting of minds or a conscious commitment to a common scheme") (internal quotes and citations omitted).

These allegations must be supported by sufficient facts and not mere supposition or speculation. For example, courts reject allegations based solely upon meetings among competitors, *i.e.*, opportunities to conspire. *Twombly,* 550 U.S. at 567, n.12 (rejecting allegation of conspiracy based upon a mere opportunity to conspire via membership in a trade union); *Ins. Brokerage*, 618 F.3d at 349 (same) (citing cases). Likewise, adding conclusory allegations as to what a plaintiff *speculates* transpired during meetings is also insufficient. *See Tera Group, Inc. v. Citigroup, Inc.,* 2019 WL 3457242, *13, *15, n.14 (S.D.N.Y. July 30, 2019) (Sullivan, C.J., sitting by designation) (dismissing claims against five corporate defendants noting that inter-firm communications could be about "who knows what," and rejecting "bald assertion" that the defendants "communicated

regarding their conspiracy in secret via telephone, email, instant messaging, and Bloomberg messaging"). The reason for this is simple – making conclusory accusations about the content of a conversation based simply upon its mere existence is the quintessential conclusory allegation devoid of sufficient facts to survive a motion to dismiss. *Coulter v. Unknown Probation Officer,* 562 Fed. Appx. 87, 89 (3d Cir. 2014) (affirming dismissal of claims against corporate defendants because drawing an inference of a conspiracy from the existence of conversations "do[es] not satisfy the plausibility standard of Rule 12(b)(6)"); *In re: Interest Rate Swaps Antitrust Litig.*, 261 F.Supp.3d 430, 484, 486 (S.D.N.Y. 2017) (with respect to defendant ICAP, rejecting as conclusory the allegation that two corporate defendants met and "agreed to a détent," and with respect to defendant Tradeweb, rejecting conclusory allegations that the dealers used trade meetings to arrange collusive conduct). Indeed, if a plaintiff were only required to combine a specific "opportunity to conspire" with a speculative allegation of what was said at a meeting, the Court's opinion in *Twombly* (and Rule 8) would be turned on its head.

It is also insufficient to allege a defendant's knowledge of others' antitrust conspiracy, *i.e.*, presence in conversations where an alleged conspiracy was discussed. *In re Egg*, 821 F.Supp.2d at 722 ("Certainly, pertinent legal authority is clear that participation in a trade group association and/or attending trade group meetings, even those meetings where key facets of the conspiracy allegedly were adopted or advanced, are not enough on their own to give rise to the inference of agreement to the conspiracy"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F.Supp.2d 363, 376 (M.D. Pa. 2008) (dismissing claim against parent corporation based upon conduct of its subsidiary because "[k]nowledge of the existence of an agreement by [others] to restrain competition does not support an inference that [defendant] was a co-conspirator").

4

In addition to alleging that each defendant *joined* a conspiracy, a plaintiff must also allege with sufficient specificity that the defendant *participated* in the conspiracy, for example, by exerting influence over corporate intentions.[3] *Brown*, 783 F.2d at 646 (affirming dismissal of claim, and holding that individual liability hinges upon proof of participation through conduct which "exerted…influence so as to shape corporate intentions"); *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 338 F.Supp.3d 404, 439 (E.D. Pa. Oct. 16, 2018) (holding that "to withstand dismissal on the basis of direct evidence, more is required than non-specific allegations of attendance or participation").

Also, a plaintiff may not rely solely on collective pleading that attributes to various defendants conduct that advances a conspiracy. *In re Egg,* 821 F.Supp.2d at 746-7 (declining group pleading where complaint did not link each defendant directly to the conspiracy); *In re Pressure Sensitive Labelstock,* 566 F.Supp.2d at 376 (dismissing defendant Bemis, and holding that the plaintiff cannot "attribute to [one defendant] the conduct of [another defendant]")*; see also Tera Group,* 2019 WL 3457242, * 11 (rejecting pervasive reliance on group allegations, and requiring "specific allegations that link an individual" to the alleged misconduct); *Tera Group, Inc. v. Citigroup, Inc.*, 2018 WL 4732426, *2 (S.D.N.Y. Sept. 28, 2018) (same); *Concord Associates LP v. Entertainment Properties Trust,* 2014 WL 1396524, *23-24 (S.D.N.Y. Apr. 9, 2014) (same).

Courts have dismissed claims that fail to sufficiently allege that a defendant knowingly joined and participated in an antitrust conspiracy, even where the complaint sufficiently identifies

---

[3]     While "[t]he Court of Appeals for the Third Circuit has not decided a case involving the appropriate standard for individual liability under the antitrust laws," *In re Mushroom Direct Purchasers Antitrust Litig.*, 2017 WL 895582, *9 (E.D. Pa. Mar. 6, 2017), we submit that regardless of whether the States must show that Brown "directly participated in or knowingly approved or ratified 'inherently wrongful' conduct," *In re California Bail Bond Antitrust Litig.,* 2020 WL 3041316, *17 (N.D. Cal. April 13, 2020), or that he influenced corporate decision-making, *see Brown*, 783 F.2d at 646, the Amended Complaint does not state a claim against Brown.

a pre-existing conspiracy among other defendants. *See* cases cited *supra; Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 254-7 (3d Cir. 2010) (affirming dismissal of Sherman Act claims for failure to allege that particular defendants agreed and participated in alleged conspiracy); *Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Coop.,* 2019 WL 130535, \*5 (E.D. Pa. Jan. 8, 2019) (dismissing without prejudice antitrust claims against individual defendants because the complaint did not allege each defendant's role); *see also In re Elevator Antitrust Litig.,* 502 F.3d 47 (2d Cir. 2007) (affirming dismissal of antitrust claims, and rejecting conclusory allegations); *Brown*, 783 F.2d 644 (affirming pre-discovery grant of summary judgment under a 12(b)(6) standard because plaintiffs failed to allege active participation and policy decision-making by attorney); *In re: Interest Rate Swaps Antitrust Litig.*, 261 F.Supp.3d 430, 483 (S.D.N.Y. 2017) (dismissing claims against HSBC where the complaint made "no allegation that HSBC took any action" evidencing an antitrust conspiracy).[4]

## 2. Step Two – Identifying Conclusory Allegations

Conclusory allegations are not presumed to be true and are insufficient to state a claim. *Twombly*, 550 U.S. at 555 (holding that a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do"); *Ins. Brokerage,* 618 F.3d at

---

[4]  *See also  Array Holdings Inc. v. Safoco, Inc.*, 2013 WL 2617965, \*8 (S.D. Tex. June 11, 2013) (dismissing antitrust claims against an attorney); *MVConnect, LLC v. Recovery Database Network, Inc.,* 2011 WL 13128799, \*10 (N.D. Tex. May 27, 2011) (dismissing antitrust claim against individual defendants because the complaint failed to allege that they "personally undertook any actions," and rejecting conclusory allegations that they were the "masterminds and facilitators"  and the "guiding spirit" of the alleged conspiracy); *Georgandellis v. Holzer Clinic, Inc.,* 2009 WL 1585772, \*17 (S.D. Ohio June 5, 2009) (dismissing antitrust claims against individual defendants due to "lack of specification as to how each Individual Defendant allegedly violated the anti-trust laws"); *Churchill Downs Inc. v. Thoroughbred Horsemen's Group, LLC,* 605 F.Supp.2d 870, 889 (W.D. Ky. 2009) (dismissing with prejudice antitrust claims against individual defendants where the complaint "provide[d] no facts that suggest the role these individuals played in the decision making process").

326 (rejecting conclusory allegations of an agreement because they "do not 'show[]' but merely 'assert[]'"); *In re Egg,* 821 F.Supp.2d at 720 ("Conclusory, collective language is too convenient, too undisciplined, and too unfocused in light of exposures to litigation expense and disruption (even without ultimate liability) that are so great in antitrust (and other) cases").

As the Second Circuit held in *In re Elevator Antitrust Litigation,* where a complaint enumerates "basically every type of conspiratorial activity that one could imagine .... The list is in entirely general terms without any specification of any particular activities by any particular defendant[; it] is nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatever." *In re Elevator Antitrust Litig.,* 502 F.3d at 50-61, n. 5.

Here, the States have alleged in boilerplate fashion that Brown: "took active steps to facilitate market allocation and price fixing," "participated directly or indirectly in these conspiracies by communicating with competitors, directing others at Glenmark to communicate with competitors, or tacitly approving of those communications," and that these communications "allocate[d] and divide[d] customers and markets…fix[ed] and raise[d] prices, and rig[ged] bids…" AC ¶¶ 1292-1295. Because the AC includes no well-pled allegations that would give substance to these conclusory allegations as to Brown, they are insufficient to state a claim. These allegations are at least as conclusory (if not more so) than the allegations rejected by the Supreme Court in *Twombly*, *i.e.,* defendants "agreed not to compete with one another and otherwise allocated customers and markets to one another," or those rejected by the Third Circuit in *Insurance Brokerage*, *i.e.,* defendants entered into an "agreement," and in *Burtch, i.e.*, defendants "regularly and unlawfully shared highly confidential information" and "conspired," and recently in *In re Allergan ERISA Litig.,* 975 F.3d 348, 355 (3d Cir. 2020), *i.e.*, defendant colluded to fix prices, or those rejected by the Second Circuit in *In re Elevator, i.e.*, defendants "participated in

7

meetings…to discuss pricing and market division, … agreed to fix prices…rigged bids...exchanged price quotes…allocated markets.."), or those rejected by this Court against McKesson, *i.e.*, McKesson was "enlisted" as a co-conspirator. Accordingly, none of these conclusory allegations states a claim, and the Court must turn its attention to any well-pled *factual* allegations in the Amended Complaint.

### 3.  Step Three – Evaluating the Non-Conclusory Allegations

The final, critical step is to determine whether the complaint alleges "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, in light of the legal requirements set forth *supra*. Here, the Court need only consider a few paragraphs of the 1726 paragraph AC to see that the allegations against Brown are insufficient to state a claim.

The most specific allegations related to Brown are in paragraphs 483-487. The States allege that Nisha Patel (of Teva) and CW-5 (a former Glenmark executive) conspired to raise prices on Moexipril and not poach each other's customers. *See* AC ¶¶ 483-5. The States further allege that on August 5 and 6, 2013, Patel and CW-5 spoke in furtherance of their alleged pre-existing Moexipril conspiracy, and that Patel and Brown spoke twice on August 6. AC ¶ 486. From these calls, the States allege – collectively – "[d]uring these calls, Defendant Patel reminded Brown and CW-5 of their prior agreement not to poach each other's customers after a price increase," and "[a]s a result of these communications, Glenmark decided to withdraw its offer to ABC and honor the agreement it had reached with Teva not to compete on Moexipril." AC ¶¶ 486-7. These are the entirety of the allegations against Brown with respect to Moexipril, and they do not come close to stating a claim against him.

*First*, the States' conclusory allegation as to the *content* of the August 2013 Brown/Patel calls (in which CW-5 was not a party) appears to be pure speculation. As discussed above, alleging

the contents of conversations from the mere fact of their existence is insufficient to allege that Brown entered into a Moexipril conspiracy. *See supra* cases cited pp. 3-4.

*Second,* the speculative allegation as to the substance of the Brown-Patel calls in August 2013 – that Patel referred to a "prior agreement not to poach" – does not even make sense as to Brown, and thus cannot support a reasonable inference against Brown. There are no allegations that Brown and Patel previously agreed to anything, or that Brown was aware of any alleged prior agreement between CW-5 and Patel. Rather, there are allegations that Patel *and CW-5* had previously entered into an improper conspiracy. Thus, the allegation about these collective "calls" in early August makes no sense (and no reasonable inference can be drawn) as to Brown, and instead appear to describe the nature of the calls between Patel and CW-5.[5]

*Third*, since the linchpin of a conspiracy allegation is a meeting of the minds, and mere passive presence does not suffice, even the speculative allegation of what Patel said to Brown in August 2013 does not state a claim against Brown. *See* cases cited pp. 3-4. Notably, Brown is not alleged to have *said anything* in these two conversations, let alone words indicating that he assented to join a conspiracy. Thus, the Amended Complaint fails to allege that Brown joined a Moexipril conspiracy.

*Fourth*, the States have not sufficiently alleged that Brown *participated* in an alleged Moexipril conspiracy. The States offer only one allegation in this regard – that as a result of the collective August 2013 "communications Glenmark decided to withdraw its offer to ABC and honor the agreement it had reached with Teva not to compete on Moexipril." AC ¶ 487. This allegation does not suffice for a host of reasons. For example, the allegation is speculative and

---

[5]    The States refer to allegations "discussed more fully below in Section IV.2.c.f.i," AC ¶ 483 (referring to ¶¶ 607-614), but that section makes no reference whatsoever to Brown.

conclusory, and is collectively pled – referring to all of the August communications without delineation as to Brown's involvement – and (again) does not even make sense as to Brown because he did not have a prior agreement not to compete on Moexipril. In addition, this allegation fails to carry the claim from possible to plausible as to Brown because the States do not allege that *Brown had anything to do with Glenmark's decision to withdraw the ABC bid*. Thus, the States have not alleged that Brown *participated* in any alleged conspiracy.

For all of these reasons, we respectfully ask the Court to "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed" against Brown, and because this specificity is lacking here, to dismiss Count 21 in its entirety.[6] *McKesson Decision,* at 486-7 (*quoting Twombly,* 550 U.S. at 558).

**B.     In the Alternative, Count Twenty One Must Be Dismissed As To At Least Six of the Drugs Listed Therein**

In the alternative, we move pursuant to Rule 12(b)(6) to dismiss the allegations as to at least six drugs in Count 21. As this Court recognized in its earlier decisions in this MDL, allegations as to *each* drug must be sufficient to state a claim. *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 338 F.Supp.3d 404 (undertaking a drug-by-drug analysis, and finding that the plaintiffs had not pled sufficient direct evidence regarding the regular release of Doxycycline).

---

[6]     The States also refer to Brown in paragraphs 490, 494, and 504 with respect to Kariva, Gabapentin, and Norethindrone Acetate, respectively. As to each of these drugs, the States merely speculate that Brown joined a conspiracy based on his telephone or text contact on particular days. These conclusory, speculative allegations fail to allege any words or deeds evidencing Brown's *assent to join* any conspiracy, nor any *action* taken by him in furtherance thereof. In addition, the allegations against Brown regarding Norethindrone are even more attenuated and fail to state a claim. The States also refer to other calls between Brown and competitors, *see e.g.,* AC ¶¶ 594, 596, 848, 972, 1064, but they do not make any substantive allegations against Brown based upon these calls, and, in fact, in some instances do not even connect these calls to drugs listed in Count 21. *Compare* AC ¶ 847 *with* AC ¶ 1294.

Here, a drug-by-drug analysis reveals an even greater paucity of allegations – in fact, it reveals no allegations against Brown vis-à-vis six drugs.

Count 21 alleges that Brown conspired with respect to ten enumerated drugs, AC ¶1295, which includes every drug about which the States allege that Glenmark conspired. AC ¶ 1183. However, there are simply *no allegations* regarding Brown and six of these drugs: Adapalene Gel, Fluconazole Tablets, Moexipril HCL/HCTZ Tablets, Nabumetone Tablets, Pravastatin Sodium Tablets, and Ranitidine HCL Tablets. Accordingly, Count 21 must dismissed as to these six drugs. Moreover, for the reasons discussed above in footnote 6, the allegations relating to three of the remaining drugs – Kariva, Gabapentin, and Norethindrone Acetate – are insufficient to state a claim against Brown. Accordingly, we seek dismissal of these drugs from Count 21.

## C.    The Statute of Limitations Has Run on the Sherman Act Claim

The Amended Complaint is also untimely as to Brown and should be dismissed for this reason as well.

A four-year statute of limitations applies to the States' Sherman Act claims. *See* 15 U.S.C. §15b. An antitrust cause of action accrues and the statute of limitations begins to run when a defendant commits an act that injures the plaintiff's business. *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 105-6 (3d Cir. 2010). For an alleged continuing antitrust conspiracy, each time a plaintiff is allegedly injured by an act of a defendant, a cause of action accrues to the plaintiff to recover the damages caused by that act and the statute of limitations runs from the commission of the act. *Id*. at 106 (*citing Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 338 (1971)); *Klehr v. A.O. Smith Corp*., 521 U.S. 179, 189 (1997) ("in the case of a continuing violation, say, a price–fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, *e.g*.,

each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times") (internal quotation marks and citations omitted). A complaint may be dismissed as untimely if the "plaintiff's tardiness in bringing the action [is] apparent from the face of the complaint." *West Penn*, 627 F.3d at 105, n.13 (citations omitted); *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 368 F.Supp.3d 814, 852 n.182 (E.D.Pa. 2019).

Here, the Amended Complaint is facially untimely against Brown because it does not allege within the limitations period *any* sale of *any* drug to *any* plaintiff at a supracompetitive price, let alone a sale related to any alleged conduct undertaken by Brown.

The States allege that prices of "many" of the drugs discussed in the Amended Complaint (whose prices had allegedly increased in 2013 and 2014) "remain[ed] at significantly inflated, anti-competitive levels" at the time of the filing of the initial complaint, on May 10, 2019. AC ¶¶ 1122, 1119-21. But this catch-all allegation cannot satisfy the States' burden to allege an antitrust injury relating to Brown within the limitations period because it does not identify the sale of any drug to any plaintiff, let alone any drug impacted by Brown's alleged conduct. *In re Egg*, 821 F.Supp.2d at 721 (rejecting conclusory collective language). Accordingly, the Amended Complaint is untimely on its face.

Moreover, the Amended Complaint does not allege that Brown undertook any acts within the limitations period in furtherance of an alleged conspiracy. *West Penn*, 627 F.3d at 105 ("the statute of limitations begins to run when a defendant commits an act that injures a plaintiff's business"). As set forth above, the States' main allegation is that Brown conspired with Patel regarding Moexipril during two calls on August 6, 2013. AC ¶ 486. The AC also includes passing reference to Brown's alleged involvement with three other drugs, based on three calls with Patel

in May 2014 regarding Kariva (AC ¶¶489-90); one call with someone who spoke with Patel in September 2014 regarding Norethindrone Acetate (AC ¶ 504); two texts with Patel in October 2014 regarding Gabapentin (AC ¶ 494); and some unspecified "continued [] coordinat[ion]" between Patel and J.C. (a Glenmark employee) and/or Patel and Brown "throughout 2014 [.]" *Id*. Even assuming *arguendo* that the four-year limitations period runs from the latest of these acts – December 31, 2014 – the initial complaint is untimely on its face because it was not filed until May 10, 2019.

**D.    The State Law Claims Should Also Be Dismissed**

The States' failure to allege Brown's involvement in any misconduct also warrants dismissal of the state law claims in Count 35.  Moreover, if this Court dismisses the Sherman Act claim, the Court should decline to exercise jurisdiction over these supplemental state law claims. *See, e.g., Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 787-8 (3d Cir. 1995) (where federal claims are dismissed, district court has discretion under 28 U.S.C. § 1367(c) to dismiss supplemental state law claims; *quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial … the state claims should be dismissed as well")).

**E.    The Amended Complaint Should be Dismissed With Prejudice**

The Amended Complaint should be dismissed with prejudice as to Brown because the States have had ample opportunity to assert sustainable allegations against him but have failed to do so. The States have been investigating the generic drug industry for many years armed with subpoena power and other coercive means to obtain information in support of their claims.  They have already amended this complaint once; any future amendment would prejudice Brown. *See, e.g., Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (affirming denial of leave to amend where "[m]ost of the facts were available to plaintiff [] before she filed her original complaint").

## **CONCLUSION**

For all the reasons set forth in this memorandum, the Amended Complaint should be dismissed with prejudice against James Brown.

Dated: November 2, 2020                                    Respectfully Submitted,

*/s/ Larry H. Krantz*
Larry H. Krantz
Wendy Gerstmann Powell
Jerrold L. Steigman
KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
lkrantz@krantzberman.com
wpowell@krantzberman.com
jsteigman@krantzberman.com

*Counsel for Defendant James Brown*