**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-md-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*The State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE<br><br>Civil Action No.<br><br>2:19-cv-02407-CMR |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR JOINT MOTION TO
<u>DISMISS PLAINTIFFS' STATE-LAW CLAIMS</u>**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................1

ARGUMENT .............................................................................................................3

I.     CERTAIN STATES LACK STANDING OR AUTHORITY TO SUE
UNDER VARIOUS STATE LAWS ............................................................3

        A.     New York Does Not Have Standing To Sue On Behalf of
Governmental Entities .......................................................................3

        B.     Certain States Do Not Have Authority To Seek Damages As
*Parens Patriae* On Behalf Of Injured Citizens.................................5

II.    THE STATES CANNOT SEEK DISGORGEMENT AS A PENALTY....................9

III.   CERTAIN STATES' CLAIMS FOR DAMAGES AND OTHER
RELIEF ALSO FAIL..................................................................................12

        A.     Certain States Do Not Have Standing To Bring Antitrust
Claims for Monetary Recovery as Indirect-Purchasers ...................12

        B.     Certain States Are Not Entitled To Damages ..................................13

        C.     Puerto Rico's Unjust Enrichment Claim is Prohibited By
Puerto Rico Law ..............................................................................14

IV.   CERTAIN STATE CONSUMER-PROTECTION CLAIMS FAIL ..........................15

CONCLUSION.........................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Alaska v. Chevron Chem. Co.*,
   669 F.2d 1299 (9th Cir. 1982) ..............................................................................2, 3

*Anadarko Petroleum Corp. v. Commonwealth*,
   206 A.3d 51 (Pa. Commw. Ct. 2019) ..............................................................15, 16

*Belknap v. Schild*,
   161 U.S. 10, 16 S. Ct. 443, 40 L. Ed. 599 (1896) .................................................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................3

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013)...................................................................................15

*Berghausen v. Microsoft Corp.*,
   765 N.E.2d 592 (Ind. Ct. App. 2002)...............................................................12, 15

*California v. Frito-Lay, Inc.*,
   474 F.2d 774 (9th Cir. 1973) ...........................................................................2, 5, 6

*California v. Infineon Tech.*,
   531 F. Supp. 2d 1124 (N.D. Cal. 2007) ...........................................................6, 8, 9

*Dabbs v. Anne Arundel Cnty.*,
   182 A.3d 798 (Md. 2018) ......................................................................................13

*Davidson v. Microsoft Corp.*,
   792 A.2d 336 (Md. 2002) ......................................................................................12

*F.T.C. v. Mylan Labs, Inc.*,
   99 F. Supp. 2d 1 (D.D.C. 1999) .............................................................................12

*F.T.C. v. Vyera Pharma, LLC*,
   No. 20-cv-706 (S.D.N.Y. Aug 18, 2020)...............................................................16

*Free v. Abbott Labs., Inc.*,
   176 F.3d 298 (5th Cir. 1999) .................................................................................12

*Georgia v. Penn. R.R. Co.*,
   324 U.S. 439 (1945)................................................................................................5

<u>**TABLE OF AUTHORITIES**</u>—**Continued**

<u>**Page(s)**</u>

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
    995 F.2d 425 (3d Cir. 1993)............................................................................12

*Hawaii v. Standard Oil Co.*,
    405 U.S. 251 (1972)...........................................................................................5

*Herrig v. Herrig*,
    844 P.2d 487 (Wyo. 1992).................................................................................17

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977).......................................................................................2, 13

*In re Aggrenox Antitrust Litig.*,
    No. 3:14-MD-2516 (SRU), 2016 WL 4204478 (D. Conn. Aug. 9, 2016)................12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. M 02-1486 PJH, 2007 WL 2517851 (N.D. Cal. Aug. 31, 2007)....................4, 8

*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
    336 F. Supp. 3d 1256 (D. Kan. 2018)..................................................................12

*In re K-Dur Antitrust Litig.*,
    No. CIV.A. 01-1652 (JAG), 2008 WL 2660776 (D.N.J. Feb. 21, 2008)................12

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014)....................13

*In re Opana ER Antitrust Litig.*,
    162 F. Supp. 3d 704 (N.D. Ill. 2016)....................................................................13

*In re Packaged Seafood Prod. Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017)................................................................12

*In re Pool Prod. Distrib. Mkt. Antitrust Litig.*,
    946 F. Supp. 2d 554 (E.D. La. 2013)...................................................................13

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008).................................................................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009)...............................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    787 F. Supp. 2d 1036 (N.D. Cal. 2011)...............................................................12

iii

**TABLE OF AUTHORITIES**—Continued

**Page(s)**

*Johnson v. Microsoft Corp.*,
    834 N.E.2d 791 (Ohio 2005)..............................................................13

*Kokesh v. S.E.C.*,
    137 S. Ct. 1635 (2017).....................................................................10

*Liu v. S.E.C.*,
    __ U.S. __, 140 S. Ct. 1936, 207 L. Ed. 2d 401 (2020)............................2, 9, 10, 11

*Lupin Pharm., Inc. v. Richards*,
    No. CIV.A. RDB-15-1281, 2015 WL 4068818 (D. Md. July 2, 2015)....................6

*Mack v. Bristol-Myers Squibb Co.*,
    673 So. 2d 100 (Fla. Dist. Ct. App. 1996) .............................................12

*Major v. Microsoft Corp.*,
    60 P.3d 511 (Okla. Civ. App. 2002) ....................................................13

*New York ex rel. Abrams v. Seneci*,
    817 F.2d 1015 (2d Cir. 1987)..............................................................5

*New York v. Cedar Park Concrete Corp.*,
    665 F. Supp. 238 (S.D.N.Y. 1987) .....................................................2, 3

*Schoenbaum v. E.I DuPont De Nemours & Co.*,
    517 F. Supp. 2d 1125 (E.D. Mo.), *vacated in part on other grounds*,
    No. 4:05CV01108 ERW, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007) ...............12

*Sickles v. Cabot Corp.*,
    877 A.2d 267 (N.J. Super Ct. App. Div. 2005)........................................13

*Staley v. Gilead Scis., Inc.*,
    446 F. Supp. 3d 578 (N.D. Cal. 2020) ..................................................13

*State v. Marsh & McLennan Cos., Inc.*,
    944 A.2d 315 (Conn. 2008) ................................................................7

*State ex rel. Hood v. AU Optronics, Corp.*,
    701 F.3d 796 (5th Cir. 2012), *reversed and remanded on other grounds*,
    571 U.S. 161 (2014)..........................................................................7

*State ex rel. Leech v. Levi Strauss & Co.*,
    No. 79-722-III, 1980 WL 4696 (Tenn. Chancery Sept. 25, 1980) ....................8

*West Virginia ex rel. McGraw v. Comcast Corp.*,
    705 F. Supp. 2d 441 (E.D. Pa. 2010) ....................................................5

# TABLE OF AUTHORITIES—Continued

Page(s)

*Westernbank Puerto Rico v. Kachkar,*
   No. 07-1606, 2009 WL 6337949 (D.P.R. Dec. 10, 2009) ......................................................14

## CONSTITUTIONAL PROVISIONS:

U.S. Const. Art. III ...........................................................................................................................6

## STATUTES:

15 U.S.C. § 15c ...............................................................................................................................6

73 Pa. Stat. Ann. and Cons. Stat. Ann. § 201-2(4)(i)-(xxi) .........................................................15

73 Pa. Stat. Ann. and Cons. Stat. Ann. § 201-3.1 ........................................................................16

73 Pa. Stat. Ann. and Cons. Stat. Ann. § 201-8(b) ......................................................................16

6 R.I. Gen. Laws § 6-36-12(a) ........................................................................................................8

6 R.I. Gen. Laws § 6-36-11(a) ........................................................................................................8

6 R.I. Gen. Laws § 6-36-11(b) ........................................................................................................8

6 R.I. Gen. Laws § 6-13.1-5 ............................................................................................................8

6 R.I. Gen. Laws § 6-13.1-8 ............................................................................................................8

Alaska Stat. Ann. § 45.50.501(a) ....................................................................................................6

Alaska Stat. Ann. § 45.50.551(b) ....................................................................................................6

Alaska Stat. Ann. § 45.50.577(b) ....................................................................................................6

Alaska Stat. Ann. § 45.50.582 .........................................................................................................6

Ariz. Rev. Stat. Ann. § 44–1407 .....................................................................................................7

Ariz. Rev. Stat. Ann. § 44–1408 .....................................................................................................7

Conn. Gen. Stat. § 35-32(c)(2).........................................................................................................7

Del. Code Ann. Title 6, § 2113 .....................................................................................................12

Ind. Code Ann. § 24-5-0.5-3 .........................................................................................................15

Ind. Code Ann. § 24-1-1-5.1 .........................................................................................................12

# TABLE OF AUTHORITIES—Continued

**Page(s)**

Ind. Code Ann.§ 24-1-1-5.1(a) .....................................................................7

Ind. Code Ann.§ 24-1-2-7(b) .....................................................................12

Ind. Code Ann.§ 24-5-0.5-4(c) ...................................................................7

Ky. Rev. Stat. Ann. § 367.190 ...................................................................13

Me. Rev. Stat. Ann. Title 10, § 1104(2) .....................................................7

Me. Rev. Stat. Ann. Title 7, § 209 ..............................................................7

Md. Code Regs. § 11-209(b)(2)(i) (2017) .................................................12

Miss. Code Ann. § 75-21-1 ..........................................................................7

Miss. Code Ann. § 75-21-7 ..........................................................................7

Miss. Code Ann. § 75-24-5(1) ...................................................................17

Miss. Code Ann. § 75-24-5(2) ...................................................................17

Miss. Code Ann. § 75-24-9 5(1) ................................................................14

Mo. Rev. Stat. § 407.100(1) .........................................................................7

Mo. Rev. Stat. § 416.051 .............................................................................7

Nev. Rev. Stat. Ann. § 598.0963 ...............................................................14

Nev. Rev. Stat. Ann. § 598.0973 ...............................................................14

N.J. Stat. Ann. § 56:9-12(b) .........................................................................7

N.M. Stat. Ann. § 57-1-1.2 ...........................................................................8

N.M. Stat. Ann. § 57-1-3(A) .........................................................................8

N.M. Stat. Ann. § 57-1-3(B) .........................................................................8

N.M. Stat. Ann. § 57-1-8 ..............................................................................8

N.M. Stat. Ann. § 57-12-8 ............................................................................8

N.Y. Exec. Law § 63(12) ..............................................................................4

N.Y. Gen. Bus. Law § 342 ............................................................................8

## <u>TABLE OF AUTHORITIES</u>—Continued

**Page(s)**

N.Y. Gen. Bus. Law § 342-a ............................................................................8

N.Y. Gen. Bus. Law § 342-b ....................................................................3, 4, 8

N.C. Gen. Stat. § 75-15 .................................................................................8

S.C. Code § 39-5-50 ...................................................................................13

Wash. Rev. Code 19.86.080 ...........................................................................9

Wash. Rev. Code 19.86.090 ...........................................................................9

Wash. Rev. Code 19.86.140 ...........................................................................9

Wyo. Stat. Ann. § 40-4-101 .........................................................................17

Wyo. Stat. Ann. § 40-12-105(a)(xv) ...............................................................16

**LEGISLATIVE MATERIALS:**

H.R. Rep. No. 94-499(I) (1975), reprinted in 1976 U.S.C.C.A.N. 2572 .........................6

**OTHER AUTHORITIES:**

Brief of *Amici Curiae* Law Professors in Support of Petitioners, *Liu v. S.E.C.*,
No. 18-1501, 2019 WL 7209871 (U.S. Dec, 23, 2019) .......................................9, 11

Walter Ashburner, Principles of Equity 53 (1902) ............................................11

## INTRODUCTION

The States' Second Complaint, filed May 10, 2019 (Dkt. 1) and amended on November 1, 2019 (Dkt. 106) ("Sec. Am. Compl." or "Second Complaint"), asserts a single count of supplemental state-law claims under the laws of 48 States, the District of Columbia, Puerto Rico, the Territory of Guam, and the Commonwealth of the Northern Mariana Islands (collectively, the "States").[1]   This Court has already ruled on the viability of many state-law antitrust and consumer-protection claims in its Memorandum and Opinion granting in part motions to dismiss state-law claims brought by EPPs and IRPs in connection with the Group 1 drugs.  Opinion, *In re Generic Pharm. Pricing Antitrust Litig.*, No. 16-md-2724 (E.D. Pa. Feb 15, 2019), Dkt. 857. This narrow motion to dismiss addresses only certain state-law specific claims brought under unique state-law theories that this Court has yet to address.[2]

The States appear to pursue relief in various capacities, including as enforcement authorities, purchasers of generic drugs, and *parens patriae.*  In those various capacities, the States seek different forms of relief under federal and/or state law.  Relevant here, the States purport to seek relief under various state laws for civil penalties, damages for purchases made by state entities, damages on behalf of consumers in the various States, disgorgement, restitution, restoration, and other monetary relief.  Each State asserts these supplemental state-law claims under its state antitrust laws, state consumer-protection laws, or both.[3]

---

[1]  Although the Territory of American Samoa was a part of the Second Complaint, it voluntarily dismissed with prejudice its claims against all defendants on July 14, 2020. Dkt. 168.

[2]  Many of the arguments made in this motion are similar to grounds for dismissal raised in Defendants' Joint Motion to Dismiss Plaintiffs' State Law Claims, *In re Generic Pharm. Pricing Antitrust Litig.*, No. 17-cv-3768 (E.D. Pa. May 31, 2019). Dkt. 157.  That motion remains pending. This motion to dismiss is filed without waiver of any other pending motions to dismiss.

[3]  Nineteen States appear to bring their state claims under only their state *antitrust* statutes: Colorado, Delaware, the District of Columbia, Hawaii, Idaho, Illinois, Kansas, Maine, Maryland, Michigan, Ohio, Oklahoma, Oregon, Puerto Rico, Tennessee, Utah, Virginia, West Virginia, and Wisconsin.  Six States appear

Defendants bring this motion to dismiss certain States' claims both for lack of standing and for failure to plead those claims.

*First*, some States do not have standing—or otherwise lack authority—to seek relief in the capacity they assert.  Certain state laws, for example, do not permit the State Attorney General to sue on behalf of state governmental entities.  *See Alaska v. Chevron Chem. Co.*, 669 F.2d 1299, 1302 (9th Cir. 1982); *New York v. Cedar Park Concrete Corp.*, 665 F. Supp. 238, 241 (S.D.N.Y. 1987).  Similarly, a State must have authority to pursue damages claims on behalf of injured citizens, *see California v. Frito-Lay, Inc.*, 474 F.2d 774, 777 (9th Cir. 1973), but some state laws provide no such authorization.

*Second*, the States' claim for disgorgement when acting in *parens patriae* capacity and on a joint and several basis is not permitted as a form of equitable relief.  The Supreme Court recently outlined the appropriate guidelines for equitable relief and made clear that the remedy requires a return of a defendant's gains to identifiable victims.  *Liu v. S.E.C.*, __ U.S. __, 140 S. Ct. 1936, 207 L. Ed. 2d 401 (2020).  Accordingly, States suing for disgorgement in *parens patriae* capacity who do not identify any alleged victims cannot do so.

*Third*, certain States' claims for damages and other relief also fail for lack of authority under their state laws.  Because the States sue as indirect purchasers, monetary-relief claims brought under state laws that have not repealed *Illinois Brick* (by enacting a "repealer statute" authorizing indirect purchaser claims) must be dismissed.  *See Illinois Brick Co. v. Illinois,* 431

to bring claims under only their state *consumer-protection* statutes: Alabama, Kentucky, Massachusetts, Pennsylvania, South Carolina, and Wyoming.  Twenty-five States appear to bring claims under *both* their state antitrust and consumer-protection statutes, or a single statute covering both antitrust and consumer-protection: Alaska, Arizona, Arkansas, Connecticut, Florida, Indiana, Iowa, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Northern Mariana Islands, Rhode Island, South Dakota, Vermont, and Washington.

U.S. 720 (1977).[4]  Several of the States' laws also limit the available remedy to injunctive relief, making any requests for damages inappropriate.

*Fourth*, the conduct alleged in the Second Complaint is insufficient to plausibly allege a violation of several of the States' consumer-protection laws.  Those state-law consumer-protection claims should also be dismissed.

For the reasons set out below, certain supplemental state-law claims asserted in the Second Complaint should be dismissed with prejudice.

## ARGUMENT

## I.   CERTAIN STATES LACK STANDING OR AUTHORITY TO SUE UNDER VARIOUS STATE LAWS.

### A.   New York Does Not Have Standing To Sue On Behalf of Governmental Entities.

To the extent Plaintiffs seek relief on behalf of governmental entities, they have standing to sue only to the extent state law permits it.  *Alaska v. Chevron Chem. Co.*, 669 F.2d 1299, 1302 (9th Cir. 1982); *New York v. Cedar Park Concrete Corp.*, 665 F. Supp. 238, 241 (S.D.N.Y. 1987).  The antitrust laws of New York[5] do not authorize the State's Attorney General to sue on behalf of governmental entities.  As such, these claims should be dismissed.

---

[4] Certain States are pursuing monetary recovery based on alleged harm to governmental entities, but other than Colorado, none of those States have identified any such entity in the Second Complaint that has allegedly suffered any harm, which is an independent grounds for dismissal.  *Cedar Park Concrete Corp.*, 665 F. Supp. at 242 ("[i]n view of the need early in the litigation to identify State-affiliated purchasers, we believe the complaints should be dismissed insofar as they purport to state treble damages claims on behalf of unidentified state subdivisions."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (plaintiffs' complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (citation omitted)).  However, the States that failed to identify entities on whose behalf they seek relief in the Second Complaint have subsequently done so through interrogatory responses and email correspondence with Defendants.  Should those States seek recovery for agencies or entities beyond those they have identified in those representations, Defendants reserve the right to raise this argument at the appropriate time.

[5] Under New York law, the Attorney General "may also bring action on behalf of any political subdivision or public authority of the state *upon the request of* such political subdivision or public authority to recover damages."  N.Y. Gen. Bus. Law § 342-b (emphasis added).  Plaintiffs do not allege that they received such a

3

New York's allegations fail to meet the applicable pleading requirements because the New York Attorney General does not have statutory authority to bring claims on behalf of unidentified governmental entities. Neither the New York Executive Law section 63(12) nor the Donnelly Act vests the State Attorney General with authority to bring representative claims on behalf of *unnamed* governmental entities. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2007 WL 2517851, at *7, *9 (N.D. Cal. Aug. 31, 2007) (explaining that both New York Executive Law section 63(12) and "the Donnelly Act contemplates that these government entities must be specifically identified").

The Donnelly Act specifically limits the Attorney General to bringing actions on behalf of a New York "political subdivision or public authority" only if it does so at the request of that entity. N.Y. Gen. Bus. Law § 342-b. New York law in fact *requires* the Attorney General to identify the state entity on whose behalf she seeks remedies and, to the extent that she seeks remedies on behalf of a "political subdivision or public authority," must further plead that the entity has made a specific request for the Attorney General to bring suit. *See In re DRAM Antitrust Litig.*, 2007 WL 2517851, at *7 (dismissing New York's antitrust claims, explaining that "while the Donnelly Act does provide express statutory authority for the State Attorney General to sue on behalf of 'any political subdivision or public authority of the state,' the Donnelly Act contemplates that these government entities must be *specifically identified*, and it must affirmatively be *demonstrated* that they have requested that the Attorney General bring suit on their behalf." (emphasis added)). Nowhere in the Second Complaint does New York meet either requirement. Accordingly, New York's claims fail and must be dismissed with prejudice.

---

request. As a result, any New York claim on behalf of governmental entities should be dismissed. *See In re DRAM Antitrust Litig.*, 2007 WL 2517851, at *5.

**B.      Certain States Do Not Have Authority To Seek Damages As *Parens Patriae* On Behalf Of Injured Citizens.**

A number of States purport to seek damages as *parens patriae* on behalf of injured citizens under state law.  "A state may acquire *parens patriae* standing (i.e., the right to bring an action) either through a grant of statutory authority or by meeting the requirements of the common law." *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 451 (E.D. Pa. 2010) (citation omitted).  A state has a common-law right to sue "to prevent or repair harm to its 'quasi-sovereign' interests."  *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 258 (1972).  A "quasi-sovereign" interest is "an interest apart from that of particular individuals who may be affected" by the actions that form the basis of the suit.  *Georgia v. Penn. R.R. Co.*, 324 U.S. 439, 451 (1945).

Although a State may seek "recovery for an injury to a quasi-sovereign interest of the state itself," a State "cannot merely litigate as a volunteer the personal claims of its competent citizens."  *New York ex rel. Abrams v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987).  "Where the complaint only seeks to recover money damages for injuries suffered by individuals, the award of money damages will not compensate the state for any harm done to its quasi-sovereign interests.  Thus, the state as *parens patriae* lacks standing to prosecute such a suit."  *Id*.  Indeed, under the common law, "[*p*]*arens patriae* has received no judicial recognition in this country as a basis for recovery of money damages for injuries suffered by individuals."  *Frito-Lay,* 474 F.2d at 775 (ruling on the nature of *parens patriae* standing without invoking a distinction between state and federal law).  "Judicial recognition of such authority would be a substantial departure from the scope of *parens patriae* authority as it has been recognized in this country to date."  *Id*.

Instead, courts require explicit statutory authorization before allowing a State to pursue damages claims on behalf of injured citizens.  *Id*. at 777 ("[I]f the state is to be empowered to act

in the fashion here sought we feel that authority must come not through judicial improvisation but by legislation and rule making, where careful consideration can be given to the conditions and procedures that will suffice to meet the many problems posed by one's assertion of power to deal with another's property and to commit him to actions taken in his behalf."). Due process principles animate this rule. *Id*. at 777 n.11 (common-law *parens patriae* standing for damages relief absent statutory authorization would "disregard all of Rule 23's safeguards" and leave defendants facing the potential for "two massive actions based on identical claims").[6]

None of the following States has the right to seek damages as *parens patriae* under their respective state laws: Alaska,[7] Arizona,[8] Connecticut,[9] Indiana,[10] Maine,[11] Mississippi,[12]

---

[6] In response to "the judicial invitation extended in Frito-Lay," H.R. Rep. No. 94-499(I), at 8 (1975), reprinted in 1976 U.S.C.C.A.N. 2572, 2578, Congress gave the State Attorneys General authority under federal law to sue "as parens patriae on behalf of natural persons residing in [their respective States] . . . to secure monetary relief . . . by reason of any violation of sections 1 to 7 of this title." 15 U.S.C. § 15c. This does not provide the States authority to seek damages as parens patriae under their state laws. And unless "there exists controlling legal authority specifically indicating that monetary damages—as opposed to other types of relief—may be sought through a parens patriae claim," *California v. Infineon Tech*., 531 F. Supp. 2d 1124, 1164–65 (N.D. Cal. 2007), Plaintiffs' damages claims are beyond the scope of their common-law sovereign power, and are thus improper, *Frito-Lay*, 474 F.2d at 777.

[7] Alaskan law authorizes the Attorney General to seek monetary relief "as parens patriae on behalf of governmental entities or persons doing business or residing in this state," but expressly limits such actions to suits brought in superior court in the state of Alaska, not in federal court in the first instance, as was done here. Alaska Stat. Ann. § 45.50.577(b) ("The attorney general may bring a civil action *in superior court* in the name of the state, as parens patriae on behalf of governmental entities or persons doing business or residing in this state, to secure monetary relief as provided in this section for injuries directly or indirectly sustained by persons by reason of any violation of AS 45.50.562--45.50.570." (emphasis added)); *see also* Alaska Stat. Ann. § 45.50.582 ("An action arising under AS 45.50.582 - 45.50.596 *shall be brought in the superior court*." (emphasis added)); *Lupin Pharm., Inc. v. Richards*, No. CIV.A. RDB-15-1281, 2015 WL 4068818, at *6 (D. Md. July 2, 2015) (finding that "the context of the [Alaska antitrust] statute indicates contemplation of a 'superior court,' the common denomination of an intermediate court in Alaska, not a federal court established under Article III of the U.S. Constitution"). The same is true of Alaska's consumer protection statute: the Alaska Attorney General must bring any claims under that statute in "superior court." *See* Alaska Stat. Ann. § 45.50.501(a) ("[T]he attorney general may bring an action . . . *in the superior court in the judicial district in which the person resides or is doing business or has the person's principal place of business in the state*, or, with the consent of the parties, in any other judicial district *in the state*." (emphasis added)); Alaska Stat. Ann. § 45.50.551(b) ("*In an action brought under AS 45.50.501*, if the court finds that a person is using or has used an act or practice declared unlawful by AS 45.50.471, the attorney general" may recover civil penalties (emphasis added)).

Missouri,[13] New Jersey,[14] New Mexico,[15] New York,[16] North Carolina,[17] Rhode Island,[18]

---

[8] Although Arizona's statute authorizes the attorney general to bring actions "in the name of the state," actions for damages can only be brought by a state, a political subdivision or any public agency "when suing on its own behalf." Ariz. Rev. Stat. Ann. § 44–1407 (permitting the attorney general to bring an action for injunctive or equitable relief, civil penalties, costs and fees "in the name of the state"); Ariz. Rev. Stat. Ann. § 44–1408 (permitting "[t]he state, a political subdivision or any public agency" to bring an action for "damages," but only when suing on its own behalf).

[9] Although a state statute authorizes Connecticut to bring damages claims as *parens patriae* "with respect to damages to the general economy," those damages cannot be "duplicative of" *parens patriae* claims on behalf of state citizens. Conn. Gen. Stat. § 35-32(c)(2). Despite this statute, Connecticut seeks duplicative "damages as *parens patriae* on behalf the State of Connecticut *and the People for the State of Connecticut*." Sec. Am. Compl. ¶ 1419 (emphasis added). The State fails to allege how "damage to Connecticut's general economy is separate and apart from the direct damage [consumers] sustained by payment of [the defendants' allegedly] inflated price[s]." *State v. Marsh & McLennan Cos., Inc.*, 944 A.2d 315, 328 (Conn. 2008) (reversing dismissal of complaint whose allegations, unlike those here, plausibly made this distinction) (quotation marks omitted). In *Marsh*, the Complaint specifically detailed how actions by the defendants caused a tangible harm to Connecticut's economy, which adversely affected "economic growth and activity in Connecticut," as opposed to state citizens, by specifically detailing how the alleged conspiracy impacted the flow of money in the state, and positing how the money would have benefitted Connecticut. *Id.* In contrast, here, Connecticut makes an entirely conclusory allegation that "Defendants' actions as alleged herein have damaged . . . the prosperity, welfare, and general economy of the State of Connecticut" and then immediately goes on to allege the actions also harm the "economic wellbeing of a substantial portion of the People" of Connecticut. Sec. Am. Compl. ¶ 1419. Connecticut makes no attempt to distinguish the alleged injuries to Connecticut's general economy from alleged injuries to Connecticut's citizens, as required under Connecticut state law. The *parens patriae* damages claims should therefore be dismissed.

[10] Ind. Code Ann. § 24-1-1-5.1(a) ("The attorney general may bring an action *on behalf of the state or a political subdivision* . . . for injuries or damages sustained directly or indirectly as a result of a violation of this chapter." (emphasis added)); *id.* § 24-5-0.5-4(c) (Attorney General may "bring an action to *enjoin*" (emphasis added)).

[11] Maine's statute only allows for equitable relief and expressly limits the State to "temporary or permanent injunction" when bringing an action "in the name of the State." Me. Rev. Stat. Ann. tit. 10, § 1104(2) (Attorney General may only "institute proceedings in equity"); *id.* tit. 5, § 209 (Attorney General has power to "bring an action in the name of the State . . . to restrain *by temporary or permanent injunction*" (emphasis added)).

[12] Mississippi's statute only allows the State to sue for injunctive relief and for restitution insofar as that restitution is for injuries the State—not other parties—suffered. *State ex rel. Hood v. AU Optronics, Corp*., 701 F.3d 796, 801 (5th Cir. 2012) ("the MAA allows the State to sue for injunctive relief and civil penalties, see Miss. Code Ann. §§ 75-21-1; 75-21-7, but not for restitution for injuries suffered by parties other than the State"), *reversed and remanded on other grounds,* 571 U.S. 161 (2014).

[13] Missouri's statute only authorizes the attorney general to seek an injunction, not damages as parens patriae. Mo. Rev. Stat. § 407.100(1) ("[T]he attorney general may seek and obtain . . . *an injunction* prohibiting such person from continuing such methods, acts, uses, practices, or solicitations, or any combination thereof, or engaging therein, or doing anything in furtherance thereof." (emphasis added)); *id.* § 416.051 ("The attorney general . . . shall investigate suspected *criminal* violations of [antitrust laws] and shall commence and try all *criminal* [antitrust] prosecutions." (emphasis added)).

[14] New Jersey seeks "treble damages for New Jersey consumers," Sec. Am. Compl. ¶ 1575, pursuant to N.J. Stat. Ann. § 56:9-12(b), but that statute only authorizes recovery on behalf of the state, its political

Tennessee,[19] and Washington.[20] These States *parens patriae* claims for damages must therefore

---

subdivisions, or its agencies, not on behalf of the consumers.  N.J. Stat. Ann. § 56:9-12(b) ("The Attorney General, *on behalf of the State or any of its political subdivisions or public agencies*, . . . may institute an action to recover . . . damages . . . ." (emphasis added)).

[15] New Mexico's statute expressly excludes the state from its definition of persons authorized to sue for treble damages and subsequent case law has rejected, in the absence of authority to the contrary, the Attorney General's ability to sue in its parens patriae capacity on behalf of natural persons for damages.  N.M. Stat. Ann. § 57-1-8 ("The attorney general may bring an action in the name of the state against any person *to enjoin, restrain and prevent* the doing in this state of any act declared unlawful under [the New Mexico antitrust laws]." (emphasis added)); *id.* § 57-12-8 (permitting the Attorney General to sue for injunctive relief under the New Mexico Unfair Practices Act); *id.* § 57-1-3(A) granting "any person" injured or threatened with injury" the right to sue for treble damages; *id.* § 57-1-1.2 defining "person" in the antitrust act as "an individual, corporation, business trust, partnership, association, or any governmental or other legal entity *with the exception of the* state" (emphasis added).  The Antitrust Act separately authorizes the attorney general to "bring an action [] on behalf of the state, a political subdivision thereof or any public agency."  *Id.* § 57-1-3(B); *accord Infineon Techs. AG*, 531 F. Supp. 2d at 1168 (dismissing *parens patriae* damages claim under New Mexico law "in the absence of any authority specifically indicating or implying that the New Mexico Attorney General's suit for damages may go forward in a *parens patriae* capacity on behalf of natural persons")

[16] New York's statutes only authorize the Attorney General to sue "on behalf of the people of the state" for injunctive relief and civil penalties, not damages.  N.Y. Gen. Bus. Law § 342 (permitting Attorney General to sue "[o]n behalf of the people of the state . . . *to restrain and prevent*" an antitrust violation and permitting court to award plaintiffs "an additional allowance" of no more than $20,000 (emphasis added)); *id.* § 342-a (permitting Attorney General to recover civil penalties); *id.* § 342-b (permitting Attorney General to sue for damages "on behalf of the state and public authorities" as well as "on behalf of any political subdivision or public authority of the state"); *accord In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2517851, at *8 ("Presumably, the legislature knew how to include language granting the Attorney General the right to sue '[on] behalf of the people of the state' in the [Donnelly] Act's damages relief provision, as it did so with respect to the provisions allowing actions for injunctive relief and civil penalties.  Accordingly, the court concludes that the legislature's failure to include similar language in the provision authorizing damages suits was deliberate.").

[17] N.C. Gen. Stat. § 75-15 (permitting the Attorney General to sue only "in the name of the State, or any officer or department thereof").

[18] Under Rhode Island's antitrust law, its attorney general is authorized to bring a civil action as *parens patriae* only "in superior court." 6 R.I. Gen. Laws § 6-36-12(a); *see also id.* § 6-36-11(b) (authorizing attorney general to institute action for violations of state antitrust law "in superior court" and to institute action for violations of federal antitrust laws "in federal court").  Moreover, Rhode Island's *parens patriae* authority only extends to recovery of "monetary relief as provided in this section," *id.* § 6-36-12(a), i.e., "threefold the damages" actually suffered by Rhode Island residents, plus attorney's fees and reasonable costs of suit, *id.* § 6-36-11(a).  But Rhode Island has represented during discovery that it is *not* seeking damages—whether for harm to its general economy or to its residents—only disgorgement and civil penalties.  Under Rhode Island's deceptive trade practices law, the attorney general, "acting in the name of the state, may petition for recovery of civil penalties" only upon a violation of an injunction "issued by the superior court of a county," which is not alleged here.  *Id.* § 6-13.1-8.  A related provision authorizes Rhode Island to seek injunctive relief, and authorizes the Court to award restitution to injured parties, *id.* § 6-13.1-5, but Rhode Island has represented that it is not seeking restitution.

[19] *State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III, 1980 WL 4696, at *5 (Tenn. Chancery Sept. 25, 1980) (authorizing *parens patriae* damages claim on behalf of individual citizens would be to endorse "a

be dismissed.

## II.    THE STATES CANNOT SEEK DISGORGEMENT AS A PENALTY.

Certain States purport to seek disgorgement as a form of relief.  Sec. Am. Compl., Prayer for Relief ¶ D.  To the extent the States are able to seek disgorgement as a form of equitable relief under state law, they cannot do so acting in *parens patriae* capacity or on a joint and several liability basis because doing so would transform an equitable remedy into an impermissible penalty.[21]

In *Liu v. S.E.C.*, the Supreme Court recently discussed the bounds of equitable remedies and stated that an equitable remedy like disgorgement cannot be a "punitive sanction" and instead is limited to compensating alleged victims by "strip[ping] wrongdoers of their ill-gotten gains" and awarding those gains to identifiable victims.  __ U.S. __, 140 S. Ct. at 1942; *see also* Brief of *Amici Curiae* Law Professors in Support of Petitioners at 20, *Liu v. S.E.C.*, No. 18-1501, 2019 WL 7209871 (U.S. Dec, 23, 2019) (explaining that a request for disgorgement is "incompatible with the traditional understanding of equity" if it fails to ensure individual victims

---

drastic departure from accepted practice" and must "result from acts of the Legislature where the underlying public policy issues can be resolved and where essential procedural safeguards can be established"); *Infineon Techs. AG*, 531 F. Supp. 2d at 1170–71 (dismissing *parens patriae* damages claim under Tennessee law).

[20] Washington's statutes only authorize the attorney general to sue as *parens patriae* on behalf of persons residing in the state for injunctive relief, costs, and restitution, not damages. Wash. Rev. Code 19.86.080 (authorizing the attorney general to "bring an action in the name of the state, or as parens patriae on behalf of persons residing in the state," only to seek injunctive relief, costs, and restitution, not damages); Wash. Rev. Code 19.86.140 (authorizing the attorney general to seek civil penalties).  Although not cited in the complaint, Washington state law also authorizes the state to bring a "civil action for damages," but only for the "actual damages sustained by [the state of Washington]."  Wash. Rev. Code 19.86.090.  This is separate from the *parens patriae* statute.  *See also Infineon Techs. AG*, 531 F. Supp. 2d at 1153–54  ("[Washington] has the express authority to bring parens patriae actions *for equitable relief* on behalf of natural persons in the state; and (2) the state has the authority to institute suits for damages *whenever it is injured* by violations of" the Consumer Protection Act. (emphasis added)).

[21] To be sure, the States also cannot seek disgorgement under federal law. *See* Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss Plaintiffs' Federal Law Claims for Lack of Standing (Nov. 2, 2020) at 4–8.

are compensated and if there is "no requirement that an award be reduced to account for the 'defendant's expenses that reduced the amount of illegal profit.'").  The Supreme Court explained that the SEC's disgorgement authority "seemed to exceed the bounds of traditional equitable principles" because it would fail to return funds to victims and because it would impose joint and several liability on the defendants.  *Id.* at 1946.  The Court remanded for the lower courts to address those issues because the parties had not fully briefed them, but nevertheless provided several principles to "guide the lower courts' assessment of these arguments on remand."  *Id.* at 1947–48.

First, as to the disposition of proceeds, the Court noted that the "equitable nature" of the remedy requires the "return [of] a defendant's gains" to victims.  *Id.* at 1948.  The remedy "must do more than simply benefit the public at large by virtue of depriving a wrongdoer of ill-gotten gains."  *Id.*  That, however, is precisely what the States seek to do here.  The States identify no victims[22] that would be compensated by any disgorged profits.  Instead, purportedly acting as *parens patriae*, the States seek a financial judgment not on behalf of known victims but in their "sovereign or quasi-sovereign capacities."  Sec. Am. Compl. ¶ 26.  Imposing sanctions on a defendant in favor of (or in the execution of) the functions of a sovereign entity, and failing to compensate victims, is the very definition of a penalty, and not in the least remedial, thus falling outside the equitable authority of the Court.  *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1644 (2017)

---

[22] Indeed, in Defendants' recently-briefed discovery dispute with Pennsylvania, Pennsylvania repeatedly took the position that it had not identified, and need not identify, any alleged victims to prove its antitrust or state consumer protection claims for disgorgement because it is purportedly suing in its sovereign capacity.  *See, e.g.,* Plaintiff Commonwealth of Pennsylvania's Objections to Special Master Marion's Amended Fourth Report and Recommendation Relating to Defendants' Motion to Compel Pennsylvania to Produce Certain Documents, Dkt. 1482 (Aug. 12, 2020) at 2.

("When [a defendant] is made to pay a noncompensatory sanction to the Government as a consequence of a legal violation, the payment operates as a penalty.").

Second, to the extent that the States purport to apply disgorgement jointly and severally, they are prohibited from doing so.  As the Court in *Liu* made clear, "[t]hat practice could transform any equitable profits-focused remedy into a penalty" and runs squarely against the rule to not impose joint liability in favor of holding defendants "'liable to account for such profits only as have accrued to themselves.'"  *Id.* at 1949 (*quoting Belknap v. Schild*, 161 U.S. 10, 25–26, 16 S. Ct. 443, 40 L. Ed. 599 (1896); *see also* Brief of *Amici Curiae* Law Professors in Support of Petitioners at 9, *Liu v. S.E.C.*, 2019 WL 7209871 ("Indeed, it is antithetical to equity to punish."); Walter Ashburner, Principles of Equity 53 (1902) ("A court of equity has no punitive jurisdiction.").  By contrast, the States here explicitly seek to hold each corporate defendant liable for alleged profits that have accrued to every other defendant for all pharmaceutical products in the Second Complaint, regardless of whether—or to what extent—the defendant manufactured or sold those products.  Sec. Am. Compl. at 343–374.  In other words, the States are asking each Defendant to "disgorge" other Defendants' alleged "ill-gotten" gains.  Such claims for relief extend far beyond the principles of equity.

As emphasized in the Supreme Court's recent pronouncements in *Liu* regarding the proper parameters of equitable relief, the States' claims for disgorgement in a State's *parens patriae* capacity or on a joint and several basis should be dismissed.

## III.   CERTAIN STATES' CLAIMS FOR DAMAGES AND OTHER RELIEF ALSO FAIL.

### A.   Certain States Do Not Have Standing To Bring Antitrust Claims for Monetary Recovery as Indirect-Purchasers.

Certain States do not allege that they themselves—or any of the government entities or citizens they claim to represent—directly bought any of the drugs at issue from any Defendant. Because these States only seek relief as indirect purchasers, their antitrust claims for monetary relief for the following States are therefore barred: Arkansas,[23] Delaware,[24] Florida,[25] Indiana,[26] Louisiana,[27] Maryland,[28] Missouri,[29] New Jersey,[30] Ohio,[31] Oklahoma,[32] Puerto Rico,[33] and

---

[23] *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1070 (S.D. Cal. 2017) (dismissing indirect-purchaser claims under Arkansas consumer-protection statute); *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1312 (D. Kan. 2018) (same).

[24] Delaware has not statutorily abrogated the *Illinois Brick* rule, and its antitrust laws are generally interpreted to follow federal law.  Del. Code Ann. tit. 6, § 2113.

[25] *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 103 (Fla. Dist. Ct. App. 1996) (no indirect-purchaser standing under the Florida Antitrust Act).  Florida alleges that it has an assignment "for violations of federal and/or state antitrust laws that MMCAP and/or Cardinal may have" such that it can assert direct-purchaser claims under federal and state law.  Sec. Am. Compl. ¶ 1451.  But "any assignment of antitrust claims, as a matter of federal common law, must be an express assignment; general assignments, without specific reference to antitrust claims, cannot validly transfer the right to pursue those claims."  *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 440 (3d Cir. 1993).  To the extent the State's claim relies on the vendor-assignment allegation, it has not been adequately pleaded and should be dismissed.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1040–41 (N.D. Cal. 2011).  And without a plausible allegation that the vendor was a direct purchaser in Florida, the State also lacks standing to sue under state law. *Id.* at 1041 n.3.

[26] Indiana is not authorized to sue on behalf of indirect purchasers other than government entities. Ind. Code Ann. §§  24-1-1-5.1 ("The attorney general may bring an action on behalf of *the state or a political subdivision* [] for injuries or damages sustained directly or indirectly as a result of a violation of this chapter." (emphasis added)); 24-1-2-7(b) ("The attorney general may bring an action under this section *on behalf of the state or a political subdivision* if the state or political subdivision has been directly or indirectly injured by a violation of this section" (emphasis added)); *see Berghausen v. Microsoft Corp.*, 765 N.E.2d 592, 599 (Ind. Ct. App. 2002) (plaintiff "lacked standing to bring the antitrust claim against Microsoft because he was an indirect purchaser"); *see also Schoenbaum v. E.I DuPont De Nemours & Co.*, 517 F. Supp. 2d 1125, 1150 n.23 (E.D. Mo.), *vacated in part on other grounds*, No. 4:05CV01108 ERW, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007).

[27] Louisiana seeks injunctive relief, civil penalties, damages, disgorgement, and other equitable remedies under Sections 1407 and 1408 of LUTPA only. *See* Sec. Am. Compl., ¶ 1508. Louisiana does not seek any relief under the Monopolies Act. *Id.* Nevertheless, both claims are based on the same alleged anticompetitive conduct and, therefore, Louisiana cannot recover damages, disgorgement, restitution, or other monetary relief on behalf of itself or its citizens because such recovery would be an end-run around the *Illinois Brick* prohibition on recovery of antitrust damages by indirect purchasers.  *See, e.g.*, *Free v. Abbott Labs., Inc.*, 176

Virginia.[34]  The monetary-relief claims under these state laws should be dismissed.[35]  *Illinois*

*Brick*, 431 U.S. at 733.

### B.   Certain States Are Not Entitled To Damages.

The States are limited to the remedy of injunctive relief under at least the consumer-

protection statutes of Kentucky, Mississippi, and Nevada.[36]  Ky. Rev. Stat. Ann. § 367.190 (The

---

F.3d 298, 301 (5th Cir. 1999) (finding that, like in *Illinois Brick*, indirect purchasers have no standing under the Monopolies Act); *see also In re Aggrenox Antitrust Litig.*, No. 3:14-MD-2516 (SRU), 2016 WL 4204478, at *4 (D. Conn. Aug. 9, 2016) (dismissing a LUTPA claim because "even [assuming that] any antitrust claim can also be brought under consumer-protection law, that [claim] cannot avoid the rule of *Illinois Brick*."); *F.T.C. v. Mylan Labs, Inc.*, 99 F. Supp. 2d 1, 6–8 (D.D.C. 1999) (declining to reinstate a LUTPA claim after declining to reinstate a Monopolies Act claim for lack of standing, as allowing a LUTPA claim to stand "would provide an end run around the Fifth Circuit's decision in *Free*."); *In re K-Dur Antitrust Litig.*, No. CIV.A. 01-1652 (JAG), 2008 WL 2660776, at *6 (D.N.J. Feb. 21, 2008) (same).  Moreover, during discovery negotiations, Louisiana abandoned any claims for damages, disgorgement, restitution, or other monetary relief stating that it was an "enforcement-only state" and was only seeking to recover civil penalties.

[28] Maryland enacted an *Illinois Brick* repealer statute that became effective on May 27, 2017.  Md. Code Regs. § 11-209(b)(2)(i) (2017).  Prior to that amendment, indirect purchasers were unable to recover damages under Maryland law.  *See Davidson v. Microsoft Corp.*, 792 A.2d 336, 342 (Md. 2002).  Nonetheless, because Maryland's *Illinois Brick* repealer does not apply retroactively, indirect purchasers, including the State, still may not recover damages under Maryland law prior to May 27, 2017.  *Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 629–30 (N.D. Cal. 2020) (dismissing the antitrust claim based on Maryland law for damages claimed prior to May 27, 2017); *see also Dabbs v. Anne Arundel Cnty.*, 182 A.3d 798, 816 (Md. 2018) ("Statutes are given presumptively purely prospective effect.").

[29] "Missouri's antitrust laws follow *Illinois Brick* and prohibit recovery by indirect purchasers."  *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *19 (N.D. Cal. Oct. 2, 2014); *In re Pool Prod. Distrib. Mkt. Antitrust Litig.*, 946 F. Supp. 2d 554, 570 (E.D. La. 2013) (same).

[30] *Sickles v. Cabot Corp.*, 877 A.2d 267, 275 (N.J. Super. App. Div. 2005).

[31] *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 798 (Ohio 2005).

[32] *Major v. Microsoft Corp.*, 60 P.3d 511, 513 (Okla. Civ. App. 2002).

[33] *E.g., In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016) (dismissing indirect-purchaser claims under Puerto Rico law and collecting cases).

[34] *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1186 (N.D. Cal. 2009) (interpreting Virginia law).

[35] The monetary-relief claims include both damages and disgorgement under various state laws.  Plaintiffs' disgorgement claims should be dismissed in at least those States that follow the *Illinois Brick* rule, for the same reasons set out in Defendants' Motion to Dismiss for Lack of Standing.  Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss Plaintiffs' Federal Law Claims for Lack of Standing (Nov. 2, 2020) at 4–8.

[36] South Carolina withdrew its claims for ascertainable damages under South Carolina Code Section 39-5-50 by letter dated Nov. 22, 2019.

Attorney General may seek "a restraining order or temporary or permanent injunction," which "shall be granted whenever it reasonably appears that any person will suffer immediate harm, loss or injury from a method, act or practice prohibited by [the Kentucky Consumer Protection Act]"); Miss. Code Ann. § 75-24-9 5(1) (Attorney General "may bring an action in the name of the state . . . to restrain by temporary or permanent injunction the use of such method, act, or practice" prohibited under the statute); Nev. Rev. Stat. Ann. § 598.0963 ("If the Attorney General has reason to believe that a person has engaged or is engaging in a deceptive trade practice, the Attorney General may bring an action in the name of the State of Nevada against that person to obtain a temporary restraining order, a preliminary or permanent injunction, or other appropriate relief.").[37]   To the extent Kentucky, Mississippi, and Nevada bring claims for monetary relief, those claims should be dismissed.

## C.     Puerto Rico's Unjust Enrichment Claim is Prohibited By Puerto Rico Law.

Puerto Rico's antitrust statute precludes Puerto Rico's unjust enrichment claim under Puerto Rico law.  Puerto Rico law allows an unjust enrichment claim "*only* when there is *no applicable statute*" covering the conduct alleged.  *Westernbank Puerto Rico v. Kachkar*, No. 07-1606 (ADC/BJM), 2009 WL 6337949, at *29 (D.P.R. Dec. 10, 2009) (emphasis modified).  In *Westernbank*, the District of Puerto Rico dismissed the counterclaim-plaintiffs' unjust enrichment claim because that party also asserted statutory claims that "employ[ed] the same set of facts as the unjust enrichment claim," and "an unjust enrichment claim may stand only where no other law applies to the case."  *Id.*  Here, Puerto Rico asserts statutory claims under Puerto Rico law for damages "and all such other relief as may be authorized," but also asserts an unjust

---

[37] Nevada also seeks recovery under Nevada Revised Statutes Annotated Section 598.0973, which permits a court to impose an additional penalty not to exceed $12,500 for each violation if there is a finding that a deceptive trade practice was directed toward an elderly person or person with a disability.  There are no allegations in the Teva complaint regarding elderly or disabled persons.

enrichment claim based on the exact same factual allegations.  Sec. Am. Compl. ¶ 1662–1674.
Accordingly, Puerto Rico's unjust enrichment claim must be dismissed.

## IV.    CERTAIN STATE CONSUMER-PROTECTION CLAIMS FAIL.

The States' claims under the consumer-protection statutes of Indiana, Mississippi, Pennsylvania, and Wyoming should be dismissed because those state statutes do not address the antitrust conduct Plaintiffs allege.  Plaintiffs' consumer-protection claims are premised on allegations of price fixing and market allocation.  Such allegations, without more, are insufficient to state a claim under each of these states' consumer-protection statutes.

**Indiana:** The Indiana Deceptive Consumer Sales Act ("IDCSA") prohibits "unfair, abusive, or deceptive" acts, omissions, or practices.  Ind. Code Ann. § 24-5-0.5-3.  The States' allegations do not match any of the prohibited practices discussed in the statute, *see id*., and Indiana courts have rejected IDCSA claims based on allegations similar to those here.  *See Berghausen*, 765 N.E.2d at 598 (affirming dismissal of IDCSA claim based on allegation of monopolistic pricing).

**Pennsylvania:** Pennsylvania asserts claims for monetary relief pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. and Cons. Stat. Ann. § 201, *et seq.*, which "is designed to protect the public from fraud and deceptive business practices." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 497 (3d Cir. 2013).  To state a claim under the UTPCPL, Pennsylvania must allege conduct that constitutes "unfair methods of competition" or "unfair or deceptive acts or practices" as those terms are expressly defined in the statute.  73 Pa. Stat. Ann. and Cons. Stat. Ann. § 201-2(4)(i)-(xxi);

*Anadarko Petroleum Corp. v. Commonwealth*, 206 A.3d 51, 60 (Pa. Commw. Ct. 2019).[38]  But many antitrust violations, including alleged market allocation, are not covered by the violations defined in the UTPCPL.  *Anadarko,* 206 A.3d at 60 (explaining that "the scope of actionable antitrust behavior under the UTPCPL is narrower than under federal antitrust law").  Indeed, none of Pennsylvania's allegations constitute a violation of the UTPCPL. *See, e.g.*, Sec. Am. Compl. ¶ 1625 ("agree[ing] to participate in the overarching conspiracy," "agree[ing] to allocate markets and fix prices," "declin[ing] to bid or otherwise bid high so as to not take market share," and "breach[ing] a legal or equitable duty"); *see also Anadarko,* 206 A.3d at 60  ("neither the Attorney General nor the General Assembly has thus far used their powers to expressly define monopolistic behavior, joint ventures, or market sharing agreements as examples of 'unfair methods of competition' or 'unfair or deceptive acts or practices' . . . such activities are not per se unlawful for purposes of the UTPCPL.").  Thus, Pennsylvania's state-law claims must be dismissed.

Pennsylvania also seeks civil penalties under the UTPCPL of up to $3,000 for each alleged violation willfully perpetrated against an alleged victim age 60 or older.  73 Pa. Stat. Ann. and Cons. Stat. Ann. § 201-8(b).  However, Pennsylvania does not allege any UTPCPL violations against alleged victims age 60 or older.  Further, Pennsylvania has represented that it will not seek recovery based on Medicaid data or other state agency data, and has repeatedly refused to produce any discovery suggesting the existence of any alleged victims age 60 or older.

---

[38] The Pennsylvania Attorney General also may promulgate definitions of the UTPCPL terms "unfair methods of competition" and "unfair or deceptive acts or practices" through administrative rulemaking.  73 Pa. Stat. Ann. and Cons. Stat. Ann. § 201-3.1.   However, "the Pennsylvania Attorney General, like the Pennsylvania General Assembly, has declined to expand the definition of these terms to cover the full panoply of conduct deemed unlawful under the federal antitrust laws."  Ex. A, Opinion and Order, *F.T.C. v. Vyera Pharma, LLC* at 38 n.12, No. 20-cv-706 (S.D.N.Y. Aug 18, 2020), ECF No. 229 (citing *Anadarko,* 206 A.3d at 60–61).

Accordingly, Pennsylvania has failed to state a claim under Section 201-8(b) that permits recovery of civil penalties up to $3,000, and those claims must also be dismissed.

**Mississippi:** The Mississippi Consumer Practices Act ("MCPA") prohibits "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce." Miss. Code Ann. § 75-24-5(1). The States' allegations do not match any of the prohibited practices discussed in the statute, *see id*. § 75-24-5(2), and no Mississippi court has held that conduct such as that alleged here results in liability under the MCPA.

**Wyoming:** The Wyoming Consumer Protection Act prohibits "unfair" or "deceptive" trade practices. Wyo. Stat. Ann. § 40-12-105(a)(xv). The Wyoming Supreme Court has held, however, that this statute "'was drafted primarily to protect consumers from unscrupulous and fraudulent marketing practices' and declined to extend the reach of the WCPA where the legislature has elsewhere addressed the problems identified by a plaintiff." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 909–10 (N.D. Cal. 2008) (quoting *Herrig v. Herrig*, 844 P.2d 487, 495 (Wyo. 1992)) (dismissing WCPA claims because "the act does not extend to antitrust violations"). The States' allegations do not concern Defendants' marketing practices, and Wyoming has a separate antitrust statute. Wyo. Stat. Ann. § 40-4-101 (prohibiting agreements "to prevent competition or to control or influence production or prices"). As a result, the claims under the Wyoming Consumer Protection Act should be dismissed.

The Court should dismiss the States' consumer-protection claims under Indiana, Pennsylvania, Mississippi, and Wyoming law.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss certain of the States' state-law antitrust and consumer-protection claims with prejudice.

17

Dated: November 2, 2020

Respectfully submitted,

*/s/ Sheron Korpus*
Sheron Korpus
Seth A. Moskowitz
Seth Davis
David M. Max
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
skorpus@kasowitz.com
smoskowitz@kasowitz.com
sdavis@kasowitz.com
dmax@kasowitz.com

*Counsel for Defendants Actavis Elizabeth,*
*LLC, Actavis Holdco U.S., Inc., and Actavis*
*Pharma, Inc.*

*/s/ Steven A. Reed*
R. Brendan Fee
Steven A. Reed
Melina R. DiMattio
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile:  (215) 963-5001
brendan.fee@morganlewis.com
steve.reed@morganlewis.com
melina.dimattio@morganlewis.com

Wendy West Feinstein
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre
Thirty-Second Floor
Pittsburgh, PA 15219
Telephone: (412) 560-7455
Facsimile:  (415) 560-7001
wendy.feinstein@morganlewis.com

*Counsel for Defendant Glenmark*
*Pharmaceuticals, Inc., USA*

*/s/ Benjamin F. Holt*
Benjamin F. Holt
Adam K. Levin
Justin W. Bernick
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
benjamin.holt@hoganlovells.com
adam.levin@hoganlovells.com
justin.bernick@hoganlovells.com

Jasmeet K. Ahuja
**HOGAN LOVELLS US LLP**
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

*Counsel for Defendant Mylan Pharmaceuticals Inc.*

/s/ Saul P. Morgenstern
Saul P. Morgenstern
Margaret A. Rogers
**ARNOLD & PORTER KAYE SCHOLER
LLP**
250 W. 55th Street New
York, NY 10019
Telephone: (212) 836-8000
Facsimile:  (212) 836-8689
margaret.rogers@arnoldporter.com
saul.morgenstern@arnoldporter.com

Laura S. Shores
**ARNOLD & PORTER KAYE SCHOLER
LLP**
601 Massachusetts Avenue
Washington, DC 20001
Telephone: (202) 942-5000
laura.shores@arnoldporter.com

*Counsel for Defendants Sandoz Inc. and
Fougera Pharmaceuticals Inc.*

/s/ Leiv Blad
Leiv Blad
Zarema Jaramillo
Meg Slachetka
**LOWENSTEIN SANDLER LLP**
2200 Pennsylvania Avenue
Washington, D.C. 20037
Telephone: (202) 753-3800
lblad@lowenstein.com
zjaramillo@lowenstein.com
mslachetka@lowenstein.com

*Counsel for Defendant Lupin Pharmaceuticals,
Inc.*

/s/ John E. Schmidtlein
John E. Schmidtlein
Sarah F. Kirkpatrick
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W. Washington,
D.C. 20005
Telephone: (202) 434-5000
Facsimile:  (202) 434-5029
jschmidtlein@wc.com
skirkpatrick@wc.com

*Counsel for Defendant Par Pharmaceutical
Inc.*

| | |
|---|---|
| */s/ Raymond A. Jacobsen, Jr.* | */s/ Jay P. Lefkowitz, P.C.* |
| Raymond A. Jacobsen, Jr. | Jay P. Lefkowitz, P.C. |
| Paul M. Thompson (Pa. Bar No. 82017) | Devora W. Allon, P.C. |
| Lisa (Peterson) Rumin | Alexia R. Brancato |
| **MCDERMOTT WILL & EMERY LLP** | **KIRKLAND & ELLIS LLP** |
| 500 North Capitol Street, NW | 601 Lexington Avenue |
| Washington, D.C. 20001 | New York, NY 10022 |
| Telephone: (202) 756-8000 | Telephone: (212) 446-4800 |
| rayjacobsen@mwe.com | jay.lefkowitz@kirkland.com |
| pthompson@mwe.com | devora.allon@kirkland.com |
| lrumin@mwe.com | alexia.brancato@kirkland.com |

Nicole L. Castle
**MCDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, NY 10173
Telephone: (212) 547-5400
ncastle@mwe.com

*Counsel for Defendant Upsher-Smith*
*Laboratories, LLC*

*/s/ Wayne A. Mack*

Wayne A. Mack
Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1152
wamack@duanemorris.com
spmcconnell@duanemorris.com
sckulik@duanemorris.com

*Counsel for Defendants Amneal*
*Pharmaceuticals, Inc., Amneal*
*Pharmaceuticals LLC*

*Counsel for Defendant Aurobindo Pharma*
*USA, Inc.*

*/s/ J. Gordon Cooney, Jr.*

J. Gordon Cooney, Jr.
John J. Pease, III Alison
Tanchyk William T.
McEnroe
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile:  (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 739-3000
Facsimile:  (202) 739-3001
amanda.robinson@morganlewis.com

*Counsel for Defendant Teva*
*Pharmaceuticals USA, Inc.*

*/s/ James W. Matthews*

James W. Matthews
Katy E. Koski
John F. Nagle
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, Massachusetts 02199
Telephone: (617) 342-4000
jmatthews@foley.com
kkoski@foley.com
jnagle@foley.com

James T. McKeown
Elizabeth A. N. Haas
Kate E. Gehl
**FOLEY & LARDNER LLP**
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 271-2400
jmckeown@foley.com
ehaas@foley.com
kgehl@foley.com

Steven F. Cherry
April N. Williams
Claire Bergeron
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
steven.cherry@wilmerhale.com
april.williams@wilmerhale.com
claire.bergeron@wilmerhale.com

Terry M. Henry
Melanie S. Carter
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA  19103
Telephone: (215) 569-5644
THenry@blankrome.com
MCarter@blankrome.com

*Counsel for Defendant Apotex Corp.*

/s/ Damon W. Suden
William A. Escobar
Damon W. Suden
Clifford Katz
**KELLEY DRY & WARREN LLP**
101 Park Ave
New York, New York 10178
Telephone: (212) 808-7800
Facsimile:  (212) 808-7987
wescobar@kelleydrye.com
dsuden@kelleydrye.com
ckatz@kelleydrye.com

*Counsel for Defendant Wockhardt*
*USA LLC and Morton Grove*
*Pharmaceuticals, Inc.*


/s/ Ilana H. Eisenstein
Ilana H. Eisenstein
Ben C. Fabens-Lassen
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com

Edward S. Scheidman
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
Edward.scheideman@dlapiper.com

*Counsel for Defendant Pfizer Inc. and*
*Greenstone, LLC*

/s/ Jason R. Parish
Jason R. Parish
Martin J. Amundson
**BUCHANAN INGERSOLL & ROONEY**
**PC**
1700 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 452-7900
Facsimile:  (202) 452-7989
jason.parish@bipc.com
martin.amundson@bipc.com

Bradley Kitlowski
**BUCHANAN INGERSOLL & ROONEY**
**PC**
Union Trust Building
Pittsburgh, PA 15219
Telephone: (412) 562-8800
Facsimile:  (412) 562-1041
bradley.kitlowski@bipc.com

*Counsel for Defendant Zydus*
*Pharmaceuticals (USA) Inc.*

/s/ Roger B. Kaplan
Roger B. Kaplan
Jason Kislin
Aaron Van Nostrand
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone: (973) 360-7957
Facsimile:  (973) 295-1257
kaplanr@gtlaw.com
kislinj@gtlaw.com
vannostranda@gtlaw.com

Brian T. Feeney
**GREENBERG TRAURIG, LLP**
1717 Arch St.
Suite 400
Philadelphia, PA 19103
Telephone: (215) 988-7812
Facsimile:  (215) 717-5265
feeneyb@gtlaw.com

*Counsel for Defendant Dr. Reddy's*
*Laboratories, Inc.*

/s/ Stacy Anne Mahoney
_____
Stacey Anne Mahoney
**MORGAN LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
stacey.mahoney@morganlewis.com

*Counsel for Defendant Breckenridge*
*Pharmaceutical, Inc.*

/s/ Gerald E. Arth
_____
Gerald E. Arth
Ryan T. Becker
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2000
Facsimile:  (215) 299-2150
garth@foxrothschild.com
rbecker@foxrothschild.com

George G. Gordon
Stephen D. Brown
Julia Chapman
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2382
Facsimile: (215) 994-2382
george.gordon@dechert.com
stephen.brown@dechert.com
julia.chapman@dechert.com

*Counsel for Defendant Lannett Company, Inc.*

/s/ Erik T. Koons
_____
John M. Taladay
Erik T.Koons
Stacy L. Turner
Christopher P. Wilson
**BAKER BOTTS LLP**
700 K Street, NW
Washington, DC 20004
Telephone: (202) 639-7700
Facsimile:  (202) 639-7890
erik.koons@bakerbotts.com
john.taladay@bakerbotts.com
stacy.turner@bakerbotts.com
christopher.wilson@bakerbotts.com

Lauri A. Kavulich
Ann E. Lemmo
**CLARK HILL PLC**
2001 Market St, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
Facsimile:  (215) 640-8501
lkavulich@clarkhill.com
alemmo@clarkhill.com

Lindsay S. Fouse
**CLARK HILL PLC**
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7711
Facsimile:  (412) 394-2555
lfouse@clarkhill.com

*Counsel for Defendants Taro*
*Pharmaceuticals U.S.A., Inc.*

/s/ G. Robert Gage, Jr.
G. Robert Gage, Jr.
**GAGE SPENCER & FLEMING LLP**
410 Park Avenue
New York, New York 10022
Telephone: 212-768-4900
grgage@gagespencer.com

*Counsel for Ara Aprahamian*

s/ Henry E. Klingeman
Henry E. Klingeman
Ernesto Cerimele
James Crudele
**KLINGEMAN CERIMELE,
ATTORNEYS**
60 Park Place, Suite 1100
Newark, NJ 07102
henry@klingemanlaw.com
ernesto@klingemanlaw.com
james@klingemanlaw.com

*Counsel for Defendant David Berthold*

*s/ Larry H. Krantz*
Larry H. Krantz
Jerrold L. Steigman
**KRANTZ & BERMAN LLP**
747 Third Avenue, 32nd Floor
New York, NY 10017
Telephone: (212) 661-0009
Facsimile:  (212) 355-5009
lkrantz@krantzberman.com
jsteigman@krantzberman.com

*Counsel for Defendant James Brown*

*/s/ Thomas H. Suddath, Jr.*
Thomas H. Suddath, Jr.
Anne E. Rollins
Thomas P. Reilly
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
tsuddath@reedsmith.com
arollins@reedsmith.com
treilly@reedsmith.com

Michael E. Lowenstein
**REED SMITH LLP**
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
mlowenstein@reedsmith.com

*Counsel for Defendant Maureen Cavanaugh*

*/s/ Amy B. Carver*
Amy B. Carver
**WELSH & RECKER, P.C.**
306 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 972-6430
abcarver@welshrecker.com

*Counsel for Tracy Sullivan DiValerio*

*s/ James A. Backstrom*
James A. Backstrom
**JAMES A. BACKSTROM,
COUNSELLOR AT LAW**
1515 Market Street, Suite 1200
Philadelphia, PA 19102-
1923
Telephone: (215) 864-7797
jabber@backstromlaw.com

*Counsel for Defendant Marc Falkin*

s/ Robert E. Connolly
Robert E. Connolly
**LAW OFFICE OF ROBERT CONNOLLY**
301 N. Palm Canyon Dr.
Palm Springs, CA 92262
Telephone: (215) 219-4418
bob@reconnollylaw.com


*Counsel for Defendant James Grauso*

/s/ Robert E. Welsh, Jr.
Robert E. Welsh, Jr.
Alexandra Scanlon Kitei
**WELSH & RECKER, P.C.**
306 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 972-6430
Facsimile: (215) 972-6436 (fax)
rewelsh@welshrecker.com
akitei@welshrecker.com


*Counsel for Defendant Kevin Green*

/s/ Jeffrey D. Smith
Jeffrey D. Smith
Alice Bergen
**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
61 South Paramus Road
Paramus, New Jersey 07652
Telephone: (201) 907-5228
jsmisth@decotiislaw.com
abergen@decotiislaw.com


*Counsel for Defendant Robin Hatosy*

s/ Erica S. Weisgerber
Erica S. Weisgerber
Erica S. Weisgerber (N.Y. Bar No. 4647749)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
Facsimile: 212-909-6836
eweisgerber@debevoise.com


Edward D. Hassi (D.C. Bar No. 1026776)
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202-383-8000
Facsimile: 202-383-8118
thassi@debevoise.com


*Counsel to Armando Kellum*

/s/ Michael G. Considine
Michael G. Considine
Laura E. Miller
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, NY 10004
considine@sewkis.com
millerl@sewkis.com


*Counsel for Jill Nailor*

/s/ L. Barrett Boss
L. Barrett Boss
Peter M. Ryan
S. Rebecca Brodey
Thomas J. Ingalls
**COZEN O'CONNOR P.C.**
1200 19th Street NW
Suite 300
Washington, DC 20036
Telephone: (202) 912-4814
Facsimile:  (866) 413-0172 (fax)
bboss@cozen.com
pryan@cozen.com
rbrodey@cozen.com
tingalls@cozen.com


*Counsel for Defendant James Nesta*

*/s/ Bradley Love*
Bradley Love
Larry Mackey
Neal Brackett
Alyssa C. Hughes
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
bradley.love@btlaw.com
larry.mackey@btlaw.com
neal.brackett@btlaw.com
alyssa.hughes@btlaw.com

*Counsel for Defendant Nisha Patel*

*/s/ David Schertler*
David Schertler
Lisa Manning
**SCHERTLER ONORATO MEAD & SEARS, LLP**
901 New York Avenue, N.W.
Suite 500 West
Washington, DC 20001
Telephone: (202) 628-4199
Facsimile:  (202) 628-4177 (fax)
dschertler@schertlerlaw.com
lmanning@schertlerlaw.com

*Counsel for Defendant Konstantin Ostaficiuk*

*/s/ Thomas H. Lee, II*
Thomas H. Lee, II
Jeffrey J. Masters
Carla G. Graff
**DECHERT LLP**
Cira Centre Suite 500 West
Philadelphia, PA 19104
Telephone: (202) 994-4000
Facsimile:  (202) 994-2222
thomas.lee@dechert.com
jeffrey.masters@dechert.com
carla.graff@dechert.com

*Counsel for Defendant David Rekenthaler*

*/s/ David Reichenberg*
David Reichenberg
**COZEN O'CONNOR P.C.**
277 Park Avenue, 20th Floor
New York, NY 10172
Telephone: (212) 883-4956
dreichenberg@cozen.com

Stephen A. Miller
Calli Jo Padilla
**COZEN O'CONNOR P.C.**
1650 Market Street
Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-6938
Facsimile:  (215) 253-6777 (fax)
samiller@cozen.com
cpadilla@cozen.com

*Counsel for Defendant Richard Rogerson*

26