**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:  GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | * | MDL No. 2724 |
| | * | 16-MD-2724 |
| THIS DOCUMENT RELATES TO | * | |
| *STATE AG ACTIONS* | * | HON. CYNTHIA M. RUFE |
| | | Civil Action No.: 19-cv-2407-CMR |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**STATE OPPOSITION TO DEFENDANTS'
JOINT MOTION TO DISMISS THE STATES'
FEDERAL LAW CLAIMS FOR LACK OF STANDING**

# TABLE OF CONTENTS

Page

ARGUMENT ..............................................................................................................3

I.     THIS COURT HAS BROAD POWERS TO ORDER EQUITABLE RELIEF IN GENERAL AND
       DISGORGEMENT IN PARTICULAR. ...............................................................................3

II.    SECTION 16 AUTHORIZES DISGORGEMENT AND OTHER EQUITABLE REMEDIES. .................6

III.   "INDIRECT" PURCHASER *DAMAGES* JURISPRUDENCE IS INAPPLICABLE TO THE
       STATES' REQUEST FOR *EQUITABLE* RELIEF, INCLUDING EQUITABLE MONETARY
       RELIEF. ....................................................................................................................10

IV.    STATES HAVE ADEQUATELY ASSERTED *PARENS PATRIAE* STANDING TO PROTECT
       THEIR GENERAL ECONOMIES AND THEIR POPULATIONS....................................................12

       A.     States Have *Parens* Standing to Seek Redress for Harm to Their General
              Economies.................................................................................................................14

       B.     States Have *Parens* Standing to Protect Their Citizens from Harm to
              Competition...............................................................................................................16

CONCLUSION..............................................................................................................17

# TABLE OF AUTHORITIES

Page

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982) ........................................ passim

*Ambler v. Whipple*, 87 US 546 (1874) ....................................................................................... 8

*AMG Capital Management LLC v. FTC*, 913 F.3d 417 (9th Cir. 2018),
    *cert. granted*, 141 S.Ct. 194 (2020) ...................................................................................... 4

*Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982) ..................................................... 15

*Broselow v. Fisher*, 319 F.3d 605 (3d Cir. 2003) .................................................................... 16

*Burch v. Goodyear Tire & Rubber Co.,* 554 F.2d 633 (4th Cir. 1977)....................................... 14

*California v. American Stores,* 495 U.S. 271 (1990)......................................................... 5, 6, 7, 8

*Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986)................................................. 15

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ..................................................................... 5

*Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211 (7th Cir. 1979) ............................ 5

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)............................................................... 9

*F. Hoffman-La Roche Ltd*, 542 U.S. 155 (2004) ........................................................................ 7

*Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (1992) ....................................................... 9

*FTC v. Bronson Partners, LLC*, 654 F.3d 359 (2d Cir. 2011)....................................................... 7

*FTC v. Cephalon, Inc.*, 100 F. Supp. 3d 433 (E.D. Pa. 2015) ...................................................... 4

*FTC v. Com. Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016) ......................................................... 3, 8

*FTC v. Credit Bureau Ctr. LLC,* 937 F. 3d 764 (7th Cir. 2019)..................................................... 3

*Georgia v. Pennsylvania R. Co.,* 324 U.S. 439 (1945)................................................... 13, 14, 17

*Hood ex rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537 (S.D. Miss. 2006) ................ 14

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)....................................................... 1, 10, 11, 15

*Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047 (C.D. Ill. 2009) ............................................ 14

*In re Cathode Ray Tube Antitrust Litig.,* No. C-07-5944 JST, 2016 WL 3648478
(N.D. Cal. July 7, 2016) ................................................................................ 5

*In re Generic Pharm. Pricing Antitrust Litig.,* 368 F. Supp. 3d 814 (E.D. Pa. 2019) ........... 11, 12

*In re G-Fees Antitrust Litigation,* 584 F. Supp. 2d 26 (D.D.C. 2018)................................. 3, 9, 11

*In re Multidistrict Vehicle Air Pollution,* 538 F.2d 231 (9th Cir. 1976)...................................... 10

*In re TFT-LCD Antitrust Litig.,* MDL No. 1827, 2011 WL 2790179
(N.D. Cal. July 12, 2011) ............................................................................ 4, 5

*In re Warfarin Sodium Antitrust Litig.,* 214 F.3d 395 (3d Cir. 2000)......................................... 11

*Indirect Purchaser Plaintiffs v. Toshiba Corp.,* No. 16-16427 (9th Cir. Aug. 12, 2016).............. 5

*Instant Air Freight v. CF Air Freight Inc.* 872 F.2d  797 (3d Cir. 1982) ...................................... 6

*Int'l Boxing Club of N.Y., Inc. v. United States,* 358 U.S. 242 (1959) ......................................... 8

*Kansas v. Nebraska,* 574 U.S. 445 (2015)................................................................................... 4

*Koresh v. SEC,* 137 S. Ct. 1635 (2017) ...................................................................................... 4

*Liu v. Securities and Exchange Commission,* 140 S. Ct. 1936 (2020) ........................................ 8

*Louisiana v. Borden, Inc.,* 1995 WL 59548 (E.D. La. Feb. 10, 1995 .......................................... 14

*Maine v. Data Gen. Corp.,* 697 F. Supp. 23 (D. Me. 1988) ........................................................ 14

*Maryland v. Louisiana,* 451 U.S. 725 (1981) ............................................................................ 16

*Merican, Inc. v. Caterpillar Tractor Co.,* 713 F.2d 958 (3d Cir. 1983) ...................................... 10

*Miller v. French,* 530 U.S. 327 (2000) ....................................................................................... 3

*Mississippi v. Microsoft,* 428 F. Supp. 2d 537 (S.D. Miss. 2006) ................................................ 14

*Missouri ex rel. Koster v. Harris,* 847 F.3d 646 (9th Cir. 2017)................................................. 12

*Missouri v. Freedom Fin. Corp.,* 727 F. Supp. 1313 (W.D. Mo. 1989)....................................... 14

*Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288 (1960).................................................. 6

*New York v. General Motors Corp.,* 547 F. Supp. 703 (S.D.N.Y. 1982) ...................................... 14

*Pennsylvania v. Harbour Portfolio Capital, LLP,* 2018 WL 5994985
(W.D. Pa. Nov. 15, 2018) ............................................................................ 13, 14

*Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404 (1st Cir. 1985)............................ 6

*Pfizer Inc. v. Government of India,* 434 U.S. 308 (1978) ............................................... 10

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946)........................................... passim

*Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. 2013)................................... 13

*SEC v. Tome*, 883 F.2d 1086 (2d Cir. 1987)...................................................... 8

*SEC v. Whittemore*, 691 F. Supp. 2d 198 (D.D.C. 2010) ..................................... 8

*Stanton v. Texaco, Inc.*, 289 F. Supp. 884 (D.R.I. 1968) ................................... 10

*Table Bluff Reservation v. Philip Morris, Inc.*, 256 F.3d 879 (9th Cir. 2001).............................. 12

*U.S v. KeySpan Corp.,*763 F. Supp. 2d 633 (S.D.N.Y. 2011) ................................ passim

*U.S. v. Lane Labs-USA Inc.*, 427 F.3d 219 (3rd Cir. 2005) ................................. 4

*U.S. v. Morgan Stanley*, 881 F. Supp. 2d  563 (S.D.N.Y. 2012) ...................................... 4

*Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515 (1937)........................................ 5

*Wisconsin v. Abbott Labs*., 341 F. Supp. 2d 1057 (W.D. Wis. 2004)........................................... 14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969).......................................... 8

## Statutes

15 U.S.C. § 15............................................................................... 8

15 U.S.C. § 15c............................................................................... 12

15 U.S.C. § 26............................................................................... 2

15 U.S.C. § 53(b) .......................................................................... 3

## Rules

Fed. Rule App. Proc. 4(a) ............................................................. 9

Fed. Rule Civ. Pro. 54(b) .............................................................. 9

## Miscellaneous

Einer Elhauge, *Disgorgement as an Antitrust Remedy*, 76 Antitrust L.J. 79 (2009) ..................... 5

Phillip E. Areeda et al., *Antitrust Law* ¶ 325a (3d ed. 2007) .......................................................... 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:  GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | * | MDL No. 2724 |
| | * | 16-MD-2724 |
| THIS DOCUMENT RELATES TO | * | |
| *STATE AG ACTIONS* | * | HON. CYNTHIA M. RUFE |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**STATE OPPOSITION TO DEFENDANTS'
JOINT MOTION TO DISMISS THE STATES'
FEDERAL LAW CLAIMS FOR LACK OF STANDING**

The Defendants seek to retain the fruits of their multi-year anticompetitive conspiracy by denying well-settled law: the States have standing to pursue equitable disgorgement of Defendants' unlawful gains and to protect their economies and citizens from the harms Defendants inflicted. Defendants' argument that the States lack standing under federal law to pursue disgorgement or any relief under federal *parens patriae* authority misstates the law and, if accepted by the Court, would strip the States of their right to seek full redress of harm resulting from the Defendants' unlawful conduct.   In conflating damages with equitable relief, Defendants erroneously argue that (i) disgorgement (and indeed any form of monetary relief) is merely damages relabeled; (ii) only a "direct" purchaser can pursue disgorgement (misapplying the damages analysis derived from *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)); and (iii) the States as "indirect" purchasers are not entitled to any form of monetary relief.[1]  Defendants also

---

[1] Defendants ignore the fact that not all of the States' claims are indirect.  For example, Florida has assignment clauses that may give rise to "direct purchaser" claims under federal antitrust laws.  Am. Compl. ¶ 1451.  State purchases on the MMCAP platform also may give rise to "direct purchaser" claims. *Id.*  ¶¶1135-1139.

incorrectly assert that the States do not have standing to sue to protect their general economies or their citizens and that their *parens* claims are merely a "guise" States use seeking to duplicate the claims asserted by others. These arguments are meritless, and the Defendants' Joint Motion to Dismiss the States' Federal Law Claims 19-cv-2407, ECF 193 (Def. Mot.) must be denied.

The States' federal disgorgement claim, brought pursuant to their *parens* authority, is wholly appropriate.  As sovereigns in our federal system, the States have *parens* and other authority to pursue injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26.  *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 261-64 (1972) (holding Hawaii is a person under [Sections 4 and 16 of the Clayton Act] and can sue in its proprietary capacity or as *parens patriae*). The States rightfully invoke their *parens* authority to seek disgorgement and other remedies, to restore honesty to the markets harmed by the Defendants' anticompetitive activities.

Contrary to Defendants' argument, the States' equitable claim of disgorgement under Section 16 is not duplicative of, or inconsistent with, damages claims.  Disgorgement is an equitable remedy, whereas damages is a legal remedy.  Rather than being a substitute for the legal remedy of damages suffered by market participants, disgorgement is available when a legal remedy is inadequate, under well-settled law.

Indeed, the limitations of *Illinois Brick* and the States' potential downstream purchaser status are precisely why disgorgement is appropriate here.  Without federal equitable remedies, like disgorgement, the States as indirect purchasers harmed by Defendant's anticompetitive conduct would have no adequate remedy at law.  States would not be able to seek redress for economic harm suffered because of the Defendants' illegal conduct and the Defendants would profit handsomely from their violations of the antitrust laws.  Such an outcome would fly in the

face of the long-established equitable and public policy principle that wrongdoers should not benefit from their wrongdoing.

## ARGUMENT

I. **THIS COURT HAS BROAD POWERS TO ORDER EQUITABLE RELIEF IN GENERAL AND DISGORGEMENT IN PARTICULAR.**

Under clear Supreme Court and other precedent, this Court has broad discretion to award the States equitable disgorgement under the Clayton Act. The Supreme Court's framework for construing a statute providing for equitable relief is contained in *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), and its progeny.  In *Porter*, the Court held "[u]nless otherwise provided by statute, *all* inherent equitable powers of the District Court are available for the proper and complete exercise of [the court's] equitable jurisdiction" (emphasis added) and "the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command." *Id*. at 398.  Put another way, where a statutory scheme provides for compensatory legal damages under one provision and equitable relief under another, the full range of traditional equitable relief, including disgorgement, is available unless expressly precluded by the statute itself.  *Id.* at 398-99.  In sum, *Porter* and the cases interpreting it stand for the proposition that "federal statutes should not be construed to displace a court's traditional equitable jurisdiction absent 'the clearest command or an inescapable inference to the contrary.'"  *In re G-Fees Antitrust Litigation*, 584 F. Supp. 2d 26, 46 (D.D.C. 2018) (quoting *Miller v. French,* 530 U.S. 327, 336, (2000) (internal quotations and citation omitted))[2].  Even beyond considering the appropriateness

---

[2]   Recently litigants have disputed *Porter's* applicability to §13(b) of the FTC Act, 15 U.S.C. §53(b).  This section authorizes the FTC to seek "injunctive relief", which has historically been held by eight Circuits to implicitly include all inherent equitable powers of the District Court. *See e.g. FTC v. Commercial Planet, Inc.,* 815 F.3d 593 (9th Cir. 2016). The Seventh Circuit, however, created a circuit split by rejecting that position. *FTC v. Credit Bureau Ctr. LLC,* 937 F. 3d 764 (7th Cir. 2019). It has held that "section 13(b)'s grant of authority to order injunctive relief does not

of disgorgement as an equitable remedy, the Supreme Court has employed the *Porter* framework in considering, for example, whether disgorgement is a penalty for purposes of a statute of limitations[3] and when one state is entitled to disgorgement from another state.[4]

Many lower courts have applied the Supreme Court's *Porter* framework to uphold federal disgorgement claims.   *E.g., U.S v. KeySpan Corp.,* 763 F. Supp. 2d 633, 639-41 (S.D.N.Y. 2011)(applying *Porter* and holding federal government's disgorgement claims viable under federal antitrust law); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* MDL No. 1827, 2011 WL 2790179, at **3-4 (N.D. Cal. July 12, 2011) (adopting *KeySpan*'s application of *Porter* and concluding "that disgorgement is available to Oregon"); *U.S. v. Morgan Stanley*, 881 F. Supp. 2d  563, 568 (S.D.N.Y. 2012) (adopting *KeySpan* in approving disgorgement to deter future anticompetitive behavior); *FTC v. Cephalon, Inc.*, 100 F. Supp. 3d 433, 437-39 (E.D. Pa. 2015) (providing disgorgement unless the court's equitable jurisdiction is clearly limited).   Importantly, the Third Circuit acknowledges the importance of *Porter* when discussing the broad equitable powers of courts, noting that many follow this Supreme Court holding when "opining about a court's power to order…[equitable remedies including disgorgement] under…statutes that grant[] open ended enforcement powers…." *U.S. v. Lane Labs-USA Inc.*, 427 F.3d 219, 225 (3d Cir. 2005) (citing

---

implicitly authorize an award of restitution." *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 767 (7th Cir. 2019) The question whether § 13(b) of the FTC Act, by authorizing "injunction[s]," also authorizes the Commission to demand monetary relief such as restitution—and if so, the scope of the limits or requirements for such relief," is currently before the Supreme Court.  *See  AMG Capital Management LLC v. FTC*, 913 F.3d 417 (9th Cir. 2018), *cert. granted*, 141 S.Ct. 194 (2020), *oral argument* Jan. 13, 2021.

[3] *Koresh v. SEC*, 137 S. Ct. 1635 (2017).

[4] *Kansas v. Nebraska*, 574 U.S. 445, 461-65 (2015).

*Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1222-23 (7th Cir. 1979) (*Porter* authorizes disgorgement under the Commodity Exchange Act).

There is in fact little disagreement among commentators about the propriety of disgorgement as an equitable antitrust remedy. *KeySpan Corp.*, 763 F. Supp. 2d at 642 (citing Phillip E. Areeda et al., Antitrust Law ¶ 325a (3d ed. 2007) ("[E]quity relief may include, where appropriate, the disgorgement of improperly obtained gains."); Einer Elhauge, <u>Disgorgement as an Antitrust Remedy</u>, 76 Antitrust L.J. 79, 79 (2009) ("One's first reaction might well be that perhaps the rare usage reflects some underlying insecurity about whether disgorgement really is a permissible antitrust remedy. But there is surprisingly little doubt that equitable antitrust remedies include requiring violators to disgorge any illegally obtained profits.").

Where the public interest is implicated, the equitable powers of a district court are especially broad and flexible. *Porter,* 328 U.S. at 398. In that context, "[c]ourts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552, (1937); *California v. American Stores,* 495 U.S. 271, 295 (1990). Courts have agreed that broader relief is available to a governmental plaintiff than to a private one. The claims for disgorgement in *KeySpan* and *In re TFT-LCD (Flat Panel) Antitrust Litigation* for example, were permissible "because they were brought by the Government instead of private party." *In re Cathode Ray Tube ("CRT") Antitrust Litig.,* No. C-07-5944 JST, 2016 WL 3648478, at *13 n.26 (N.D. Cal. July 7, 2016), appeal filed sub nom., *Indirect Purchaser Plaintiffs v. Toshiba Corp.*, No. 16-16427 (9th Cir. Aug. 12, 2016). Indeed, the Supreme Court regularly applies this "public" framework to provide broader equitable relief when the public interest is implicated. See, e.g. *City of Los Angeles v. Lyons*, 461 U.S. 95, 136 (1983) (courts of

equity have more latitude in granting injunctive relief when public versus only private interests are involved) (citation omitted); *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 290-91 (1960)(same). The Third Circuit has likewise acknowledged that broader equitable relief is available where the public interest is at issue. See *Instant Air Freight v. CF Air Freight Inc*. 872 F.2d 797, 80 (3d Cir. 1982)(considerations for equitable relief might be different were the public interest directly affected).

## II.   SECTION 16 AUTHORIZES DISGORGEMENT AND OTHER EQUITABLE REMEDIES.

In *California v. American Stores Co*., the Supreme Court unanimously, clearly, and decisively applied the *Porter* framework to a state's claim under Section 16.  There the Court found:

> [Section] 16 'states no restrictions or exceptions to the forms of injunctive relief a private plaintiff may seek, or that a court may order. . . . Rather, the statutory language indicates Congress' intention that traditional principles of equity govern the grant of injunctive relief.'

495 U.S. at 282 (quoting *Petrolera Caribe, Inc. v. Arco Caribbean, Inc*., 754 F.2d 404, 416 (1st Cir. 1985)).  The Court went on to note "*the plain text of §16 authorizes divestiture decrees*" even though the text of the statute mentions only "injunctive relief." *Id*. (emphasis added).  It is without doubt that courts have wide latitude, constrained only by the contours of their equity powers, to determine equitable remedies under Section 16.  As is a divestiture decree, disgorgement is a well-established equitable remedy.  *U.S. v. Keyspan Corp*, 763 F. Supp 2d at 638.

Section 16 permits broad injunctive relief.  Finding that divestiture is a form of injunctive relief within the meaning of Section 16 of the Clayton Act, the Court recognized that the principles governing courts of equity require that Section 16 be "construed generously and flexibly."

*American Stores,* 495 *U.S.* at 295. The States seek disgorgement under Section 16 of the Clayton

Act, which provides:

> Any person . . . shall be entitled to sue for and have injunctive relief . . . against threatened
> loss or damage by a violation of the antitrust laws . . . when and under the same conditions
> and principles as injunctive relief against threatened conduct that will cause loss or damage
> is granted by courts of equity, under the rules governing such proceedings….

Disgorgement under Section 16 of the Clayton Act is a particularly important equitable

remedy to vindicate the public interest.  Indeed, the States, as sovereign governments with *parens*

authority, are the most suitable plaintiffs to seek disgorgement here.  As the Supreme Court has

said, "[a] Government plaintiff, unlike a private plaintiff, must seek to obtain the relief necessary

to protect the public from further anticompetitive conduct and to redress anticompetitive harm.

And a Government plaintiff has legal authority broad enough to allow it to carry out this mission."

*F. Hoffman-La Roche Ltd*, 542 U.S. 155, 170 (2004).  The States have the standing and authority,

and seek, to restore honest marketplaces, protect the public from the harms of the Defendants'

anticompetitive conduct, and ensure that Defendants are deprived of their ill-gotten gains and

cannot profit from their wrongdoing[5].

Disgorgement not only "forc[es] the defendant to give up the amount by which he was

unjustly enriched," but also deters similar conduct in the future.  *FTC v. Bronson Partners, LLC*,

654 F.3d 359, 372 (2d Cir. 2011) (disgorgement of profits divests a wrongdoer of ill-gotten gains

---

[5] Defendants' argument that disgorgement is unavailable those acting in a *parens patriae* capacity,
Def. Mem. at 6 n. 4 (citing *Liu*, 140 S.Ct at 1942), is wrong.  *Liu* did not involve a state acting in
its *parens* capacity. Defendants' argument that *Liu* requires disgorgement be returned to specific
victims, otherwise it is unavailable, is also wrong.  The return of disgorged gains to victims arises
from specific language in the Securities and Exchange Act requiring that disgorgement sought by
the SEC is "for the benefit of investors." *Id.* at 1947-1949.  There is no analogous requirement in
Clayton Act.  Moreover, the *Liu* Court confirms application of the *Porter* framework as argued by
the States here.

to ensure they will not profit from their wrongdoing and to deter similar conduct); *SEC v. Whittemore*, 691 F. Supp. 2d 198, 204 (D.D.C. 2010) ("The paramount purpose of…ordering disgorgement is to make sure that wrongdoers will not profit from their wrongdoing.")(quoting *SEC v. Tome*, 883 F.2d 1086, 1096 (2d Cir. 1987). Co-conspirators are "liable for the unjust gains the defendants <u>collectively</u> received, even if that amount exceeds (as it usually will) what any one defendant pocketed from the unlawful scheme." *FTC v. Com. Planet, Inc.,* 815 F.3d 593, 601 (9th Cir. 2016) (emphasis in the original).   That courts will award remedies against *all* partners "engaged in concerted wrongdoing" demonstrates continued adherence to longstanding equitable principles which are keenly applicable in this MDL given the massive and pernicious overarching conspiracy alleged.  *Liu v. Securities and Exchange Commission,* 140 S. Ct. 1936, 1949 (2020) (citing *Ambler v. Whipple*, 87 US 546 (1874)).

Although Defendants emphasize the word *threatened* in Section 16 to argue the statute provides only limited remedies, Def. Mem. at 5, the Supreme Court in *American Stores* has held the opposite: "the evident import of Congress's reference to '*threatened* loss or damage' is not to constrict the availability of injunctive remedies against violations that have already begun or occurred, but rather to expand their availability against harms that are as yet unrealized." *American Stores Co*., 495 U.S. at 282 n.8 (emphasis in original) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 & n.24 (1969)).  "Antitrust law is both forward-<u>and</u> backward-looking."  *United States v. KeySpan Corp*., 763 F. Supp. 2d at 641 (citing *Int'l Boxing Club of N.Y., Inc. v. United States*, 358 U.S. 242, 252 (1959).

Unlike the Defendants, the Clayton Act does not conflate damages with equitable remedies. In fact, it provides separate sections for each distinct type of relief. Despite the Defendant's assertions otherwise, the States' equitable claim for disgorgement is not a backward-looking legal

8

claim for damages and does not duplicate a damages claim.  Damages are addressed under Section 4 of the Clayton Act, 15 U.S.C. § 15.  Despite Defendants' efforts to conflate anything providing monetary relief with Section 4, Section 4 legal remedy analysis does not apply to Section 16, which addresses equitable remedies.  Disgorgement and other equitable relief is proper when the legal remedy (damages) is inadequate.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (granting equitable relief requires "that remedies available at law, such as monetary damages, are inadequate to compensate for [the] injury").  Adequacy is what matters when considering equitable remedies and the question of adequacy is not yet ripe.  Adequacy is analyzed much later in a litigation, when the legal remedy has been decided or otherwise comes into focus.[6]  Indeed, the typical convention is for the court to first inquire "whether monetary damages provide an *adequate* remedy" and if not, then "whether equitable relief would be appropriate." *Franklin v. Gwinnett County Pub. Sch*., 503 U.S. 60, 76 (1992) (emphasis added). Asserting both equitable and legal claims is perfectly appropriate, regardless of whether both implicate monetary recovery. And asserting equitable and legal claims, as the States have done, is what plaintiffs often do, regardless of whether both are "monetary." *In re G-Fees Antitrust Litig*., 584 F. Supp. 2d 26, 46 (D.D.C. 2008) ("Unjust enrichment is a common law equitable claim, available only where there is no adequate remedy at law.  Rule 8, however, expressly permits pleading in the alternative of the sort employed by plaintiffs here, even where they appear to have an adequate remedy at law.").

---

[6]  Completely resolving a civil action requires entering a judgment appealable as of right under Fed. Rule App. Proc. 4(a).  Such a judgment resolves all legal and equitable claims and the Federal Rules prefer that complete resolution.  *See* Fed. Rule Civ. Pro. 54(b) ("When an action presents more than one claim for relief . . . , the court may direct entry [as to fewer than all claims], only if the court expressly determines that there is no just reason for delay…[o]therwise any order…that adjudicates fewer than all claims…does not end the action as to any of the claims and may be revised …before the entry of a judgment adjudicating all the claims….").

III.   "INDIRECT" PURCHASER *DAMAGES* JURISPRUDENCE IS INAPPLICABLE TO
THE STATES' REQUEST FOR *EQUITABLE* RELIEF, INCLUDING EQUITABLE
MONETARY RELIEF.

Defendants incorrectly argue that *Illinois Brick* provides the standard for considering any federal "monetary" relief and that the Court should therefore dismiss the States' equitable disgorgement claims as inconsistent with *Illinois Brick*.   Ignoring the *Porter* framework for analyzing equitable relief, Defendants muddle remedies by relying on cases that interpret *Illinois Brick* to argue that the States' disgorgement claims are bare "monetary" claims that should be evaluated under a damages paradigm.[7]   Defendants misread the law in this area and miss what the Supreme Court and numerous other courts recognize—disgorgement and damages are not synonymous.   The former is an equitable remedy and the latter is a legal one.   *U.S. v. Keyspan Corp.*, 763 F.Supp 2d at 638.   The purpose of damages is to "compensate victims of antitrust violations for their injuries" and this is not so for equitable relief.   *Merican, Inc. v. Caterpillar Tractor Co.,* 713 F.2d 958, 962–63 (3d Cir. 1983)(citing *Pfizer Inc. v. Government of India,* 434 U.S. 308, 314 (1978)); *see also Stanton v. Texaco, Inc.*, 289 F. Supp. 884, 889 (D.R.I. 1968)(the purpose of damages is to compensate the injured party; one-third of treble damages award is to restore the plaintiff).   In contrast to damages, which focus on compensating the victim, disgorgement seeks to deny the wrongdoer the profits of its wrongdoing.   *Illinois Brick,* with its principle that only plaintiffs who are direct purchasers have standing to recover damages, is

---

[7] *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231 (9th Cir. 1976) predates *Illinois Brick* and Defendants mischaracterize that case by editing the court's discussion of a restitution claim to be a disgorgement claim.  Def. Mem. at 5.   Disgorgement seeks to deprive the defendant of ill-gotten gains, and the *Multidistrict Vehicle* court actually endorsed that as a proper purpose of injunctive relief in its discussion of the retrofit remedy, after the court had rejected the restitution claim.  538 F.2d at 234 ("There are three major antitrust functions which injunctive relief granted under § 16 might serve: (1) putting an end to the illegal conduct, (2) *depriving violators of the benefits of their illegal conduct*, and (3) restoring competition in the market place.") (emphasis added).

inapplicable where, as here, the plaintiffs are not seeking damages.  Disgorgement is an equitable remedy available when damages are inadequate.**8**  And as noted above, the question of whether a legal remedy is adequate is not yet ripe here.

Indeed, Defendants' insistence that "*Illinois Brick* presents a separate and independent bar to the States' disgorgement claims" because "a plaintiff who does not purchase directly from a defendant cannot recover monetary *damages* under the Clayton Act" (quoting *Illinois Brick*)(emphasis added), Def. Mem. at 6, underscores the possibility that there may not be an adequate remedy at law.  This supports the States' standing to pursue equitable remedies.  And, contrary to Defendants' argument, "[n]o reason or logic supports a conclusion that…the rule of *Illinois Brick* dispossesses a person not only of a statutory legal remedy for an antitrust violation, but also dispossesses the same person of his right to pursue a common law equitable remedy."  *In re G-Fees Antitrust Litig.*, 584 F. Supp. at 46.  Indirect purchaser status therefore is not fatal to a plaintiff's request for equitable relief under Section 16 of the Clayton Act.  *In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 399 (3d Cir. 2000).

Furthermore, this Court has already addressed the applicability of *Illinois Brick* to equitable claims in this MDL.  When Defendants sought dismissal of certain private plaintiffs' state law unjust enrichment claims (based on lack of *Brick* repealers), this Court said "the concerns that motivate *Illinois Brick*…are not implicated in the context of unjust enrichment claims because the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs…*Illinois Brick* does not require dismissal of the unjust enrichment claims at this time."  *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 850 (E.D. Pa. 2019).  That

---

8 Accordingly, the court might consider disgorgement being offset by a damages awarded.

same reasoning applies to the States' disgorgement claims, which are likewise focused on Defendants' unlawful gains

## IV.   STATES HAVE ADEQUATELY ASSERTED *PARENS PATRIAE* STANDING TO PROTECT THEIR GENERAL ECONOMIES AND THEIR POPULATIONS.

States asserting *parens patriae* standing must meet the basic requirements of Article III standing and the unique requirements of the *parens patriae* doctrine.  *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017)(citing *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001).  That is, in addition to meeting Article III standing requirements, the States also must meet two additional conditions: (1) articulation of interests apart from those of particular private parties; and (2) expression of quasi-sovereign interests.  *Id.* (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607(1982)).

The States do this.  First, the States established standing under Article III, by alleging that as a direct and proximate cause of the Defendants' unlawful conduct, their citizens and general economies have sustained injury and are threatened with ongoing injury unless the Defendants are enjoined from continuing their unlawful conduct.  Am. Compl.¶¶ 1140-1146.[9]  As Defendants correctly note, "the States do not …proceed under the specific [antitrust] federal *parens patriae* statute, 15 U.S.C. §15c" Def. Mem. at 8.  This is for good reason— *parens* authority under that section of federal antitrust law relates to damages and the States do not seek damages under federal antitrust law.[10]  Defendants' conflation of all monetary remedies as damages is erroneous.  The

_____

[9] To allege constitutional standing sufficiently, plaintiffs must allege: (1) injury-in-fact; (2) causation; and (3) redressability.  *In re Generic Pharm. Pricing Antitrust Litig*., 368 F. Supp. 3d at 828.

[10] Again, Florida and certain state MMCAP purchases may be the exception.

States proceed under their common law *parens* authority to seek equitable remedies, among which is disgorgement of ill-gotten gains.

Second, as discussed below, the States bring this action broadly on behalf of their citizenry and seek to vindicate their quasi-sovereign interests in protecting the health and safety of their populations and their general economies. Protecting the faithful operation of state economies is a key aspect of antitrust enforcement, and a state's ability as *parens patriae* to sue to redress a violation of the antitrust laws is well established. *Georgia v. Pennsylvania R. Co.,* 324 U.S. 439, 450–51 (1945) (conspiracy in violation of antitrust laws is a wrong "of grave public concern in which Georgia has an interest apart from that of particular individuals who may be affected").

Typically, a state will file suit in a federal court in its proprietary, sovereign, or *parens patriae* capacity (or some combination thereof). *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 215 (2d Cir. 2013). A state's proprietary interest is one in which the "[s]tate sues much like a private party" having suffered "direct, tangible injury." *Id*. In a sovereign capacity, a state may sue, for example, to enforce its legal codes and to maintain recognition of its [geographical] borders. *Snapp,* 458 U.S. at 600. A state brings a suit in its *parens* capacity to protect its "quasi sovereign interests." *Purdue Pharma,* 704 F.3d at 215; *Pennsylvania v. Harbour Portfolio Capital, LLP,* 2018 WL 5994985, *2 (W.D. Pa. Nov. 15, 2018)(state can bring a suit pursuant to its *parens* authority when it has "a 'quasi-sovereign interest' in the litigation."). Quasi-sovereign interests are "the set of interests that the State has in the well-being of its populace." *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 602.

### A.    States Have *Parens* Standing to Seek Redress for Harm to Their General Economies.

A state suing "to protect 'the health and well-being—both physical and economic—of its residents'" is the quintessential example of a state protecting its quasi-sovereign interests. *Harbour Portfolio Capital, LLC,* 2018 WL 5994985 at *2 (quoting *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 697). States protecting their quasi-sovereign interests includes "securing the integrity of [their] marketplace[s]." *Hood ex rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537, 545 (S.D. Miss. 2006).

The Supreme Court's analysis in *Snapp* supports the States' standing here. The *Snapp* Court held that, to demonstrate Article III *parens patriae* standing, the State must articulate an interest apart from the interest of a particular private party. *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 607. That is, "the State must be more than a nominal party…[and] must express a quasi-sovereign interest . . . . *Id.* Here the States have unqualified quasi-sovereign interests in redressing injury to their general economies. *See Burch v. Goodyear Tire & Rubber Co.,* 554 F.2d 633, 634-35 (4th Cir. 1977) (Maryland Attorney General pursuant to his/her *parens patriae* authority has standing to bring a claim for injunctive relief to address injury to the State's general economy). The States have asserted a well-established quasi-sovereign interest: securing honest marketplaces in their jurisdictions. *See* Am. Compl. ¶¶ 1-21, 1141-1146. Cf. *Georgia v. Pennsylvania R.R.,* 324 U.S. 439, 450-51 (1945); *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1050-51 (C.D. Ill. 2009); *Mississippi v. Microsoft*, 428 F. Supp. 2d 537, 545 (S.D. Miss. 2006); *Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1062-63 (W.D. Wis. 2004); *Missouri v. Freedom Fin. Corp.*, 727 F. Supp. 1313, 1317 (W.D. Mo. 1989); *Maine v. Data Gen. Corp.*, 697 F. Supp. 23, 25 (D. Me. 1988); *New York v. General Motors Corp.*, 547 F. Supp. 703, 705-06 (S.D.N.Y. 1982); *Louisiana v. Borden, Inc.*, 1995 WL 59548, * 2 (E.D. La. Feb. 10, 1995).

Defendants incorrectly argue that, "To the extent that the States seek relief for purported injuries to their 'general economies'…they lack authority to do so." Def. Mem. at 10. While in *Hawaii v. Standard Oil Co*., the Supreme Court made clear that Section 4 of the Clayton Act does "not authorize a state to sue in its *parens patriae* capacity for *damages* to its 'general economy'" it also noted the key distinction between seeking recovery of *damages* to their general economy and seeking *injunctive relief* to enjoin the same. 405 U.S. at 260-261. The Court distinguished the damages provision of Section 4 from the injunctive relief provision of Section 16 noting, "there is a striking contrast between the potential impact of suits for injunctive relief [Section 16] and suits for damages [Section 4]." [11]

The mere fact that States seek redress for injury to their general economies does not make their claim one for damages. Defendants repeatedly misconstrue any remedy related to money (here, injury to the States' economies), as a damages claim. That is incorrect—the States do no seek any *damages* related to injury to their general economies under federal law, only injunctive relief.

---

[11]*Id.* at 262.   In addition to the longstanding distinction between Section 4 and Section 16, the Supreme Court has rejected extending *Illinois Brick*. *Cargill, Inc. v. Monfort of Colorado, Inc*., 479 U.S. 104, 112-13 (1986) (noting more lenient standing requirements for Section 16, than for Section 4); *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 474-75 (1982) (limiting the antitrust injury element of *Illinois Brick* to instances when there is a risk of duplicative recovery). The Supreme Court's reluctance to extend *Illinois Brick* was illustrated recently in a case in which 31 states urged the Court to overrule *Illinois Brick*. *Apple Inc. v. Pepper*, No. 17-204, Transcript of Oral Argument at 18 (U.S. Nov. 26, 2018) ("But why should we build on *Illinois Brick*? Shouldn't we question *Illinois Brick*?") (Gorsuch, J.).

### B.     States Have *Parens* Standing to Protect Their Citizens from Harm to Competition.

The States seek to protect their citizens and economies by securing honest marketplaces, free from anticompetitive collusion. Despite the States' clear interest in securing such honest marketplaces, Defendants make two incorrect arguments to the contrary.  First, Defendants claim that the "States have not alleged an injury apart from the interests of particular private parties . . . individual consumers who purchased, or were reimbursed for purchases of, particular identified products." Def. Mem. at 11.  Distorting the *Snapp* requirement that a state asserting a *parens* claim be more than a nominal party and listing only some of the many harms that the States allege the Defendants have caused, Defendants appear to argue that a state lacks *parens* standing if the defendant identifies harms inflicted on *individua*l consumers.  Of course, many individual parties are harmed when Defendants act dishonestly in the marketplace, and merely identifying such parties in no way negates a state's interest to protect its citizens.  Indeed, a quasi-sovereign interest must affect "a 'sufficiently substantial' segment of [a state's] residents."  *Broselow v. Fisher*, 319 F.3d 605, 609 (3d Cir. 2003) (quoting *Alfred L. Snapp & Son, Inc*., 458 U.S. at 607). The States have alleged that interest, *e.g*., Am. Compl. ¶¶ 1-21, 1140-1146, and more than a "sufficiently substantial segment" of the States' residents use generic drugs.

Defendants' second assertion that "*parens patriae* standing exists only when 'individual consumers cannot be expected to litigate' the claims a state purports to assert on their behalf," Def. Mem. at 11, derives from their erroneous analysis of *Maryland v. Louisiana*, 451 U.S. 725 (1981). Nothing in the case law requires that individual consumers be unable to litigate a claim for the state to have *parens* standing.  First, that case considered ***original*** jurisdiction in the Supreme Court, which is significantly more limited than the Court's jurisdiction here.  Second and importantly, the Court granted *parens patriae* jurisdiction without the limitation urged by

16

Defendants and drew the line between the State being a nominal party and the State representing its citizens:

> Jurisdiction is also supported by the States' interest as *parens patriae*. A State is not permitted to enter a controversy as a nominal party in order to forward the claims of individual citizens. But it may act as the representative of its citizens in **origina**l actions where the injury alleged affects the general population of a State in a substantial way.

Id. at 737 (citations omitted).

The *Snapp* Court noted that an interstate price-fixing conspiracy (such as the States allege here) "may cause a blight no less serious than the spread of noxious gas over the land or the deposit of sewage in the streams. They may affect the prosperity and welfare of a State as profoundly as any diversion of the waters from the rivers[.]" *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 605 (quoting *Georgia v. Penn R.R. Co.*, 324 U.S. at 450-51). Here the "noxious gases" are the Defendants' anticompetitive activities. These activities increase prices of prescription drugs, limit availability of those drugs, and harm the States' economies, as well as governmental entities, consumers, and businesses forced to endure the "noxious gases." The Defendants must not be permitted to keep the profits of the blight they have spread. The States are wholly entitled to assert the equitable claim of disgorgement in the quest to eliminate that blight.

## CONCLUSION

The States have adequately asserted standing sufficient to seek the equitable remedies requested under federal antitrust laws. The Court should deny with prejudice Defendants' Joint Motion to Dismiss States' Federal Law Claims for Lack of Standing.

Respectfully submitted,

STATE OF MARYLAND

BRIAN E. FROSH
MARYLAND ATTORNEY GENERAL


/s/ Schonette J. Walker
SCHONETTE J. WALKER
GARY HONICK
Assistant Attorneys General
200 Saint Paul Place, 19th Floor
Baltimore, Maryland 21202
swalker@oag.state.md.us
ghonick@oag.state.md.us
(410) 576-6470


W. Joseph Nielsen
Assistant Attorney General
State of Connecticut
55 Elm Street
P.O. Box 120
Hartford, Connecticut 06141-0120
joseph.nielsen@ct.gov
(860) 808-5040

Liaison Counsel for the States

STATE OF NEW YORK

LETITIA JAMES
NEW YORK ATTORNEY GENERAL


/s/ Robert L. Hubbard
ROBERT L. HUBBARD
Assistant Attorney General
Antitrust Bureau
28 Liberty Street, 20th Floor
New York, New York 10005
robert.hubbard@ag.ny.gov
(212) 416-8267

18