# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br>*The State of Connecticut, et al. v.*<br>*Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE<br><br>19-cv-2407-CMR |

**DEFENDANT LANNETT COMPANY, INC.'S REPLY
IN SUPPORT OF ITS INDIVIDUAL MOTION TO DISMISS
THE STATE PLAINTIFFS' OVERARCHING CONSPIRACY CLAIMS**

Defendant Lannett Company, Inc. ("Lannett") submits this reply in support of its motion to dismiss ("Motion") the overarching conspiracy claims set forth in Count Fourteen in State Plaintiffs' November 1, 2019 Amended Complaint ("Second Complaint"), Dkt. 106.

## I. PRELIMINARY STATEMENT

The question presented in Lannett's Motion is not whether Plaintiff States have plausibly alleged the existence of an overarching conspiracy in general or as to any other Defendants. Nor is it whether Plaintiff States have sufficiently alleged Lannett's participation in individual drug conspiracies involving Baclofen Tablets or Levothyroxine, the only two drugs at issue in the Second Complaint sold by Lannett.[1]  Rather, the question is whether Plaintiffs States have pleaded sufficient facts to support a claim that Lannett was aware of and committed to participating in an overarching conspiracy involving over 100 drug products that it did not sell. They have not.

Plaintiff States fail to confront this fundamental pleading defect. Instead, they ask the Court to permit them to allow them two pleading shortcuts. First, the Plaintiff States argue that allegations regarding Lannett's participation in two individual drug conspiracies make it "reasonable to conclude" that Lannett is "firmly enmesh[ed] in the overarching conspiracy" involving an additional [114] drugs. *See* Opp. at 10. Second, Plaintiff States assert that general allegations regarding interactions between Lannett and other Defendants—none of which involve any reference to the claimed overarching conspiracy—"support the [Plaintiff] States' allegation that Lannett was part of the overall scheme." Opp. at 9. Neither shortcut, however, substitutes for

---

[1]   Specifically, Plaintiff States claim that Lannett entered into two product-specific conspiracies to allocate markets and fix prices for Baclofen Tablets and Levothyroxine. The *only* product-related factual allegations that the Plaintiff States assert specifically regarding Lannett relate to these two products. *See id.* ¶¶ 496-502, 1012-31.

the "factual matter" required by *Twombly* to demonstrate that Lannett was aware of, and consciously committed to participate in, any such overarching conspiracy.

And this is certainly not the case for shortcuts. The Plaintiff States seek to expose Lannett to the risk of potential joint and several liability for an alleged overarching conspiracy involving at least ***116*** generic products based on allegations that Lannett participated in individual conspiracies involving only ***two*** of those products. *See id*. Such a massive, and unprecedented, expansion of potential exposure makes it particularly important to hold Plaintiff States to the requirement that they support their claims with allegations of fact.

For the reasons described herein and in Lannett's Motion, the Plaintiff States' overarching conspiracy claims against Lannett should be dismissed.

## II.     ARGUMENT

Plaintiff States attempt a sleight of hand in their Opposition, arguing that they need not plead "specific" facts demonstrating that Lannett participated in the claimed overarching conspiracy. This argument is, at best, a misleading effort to sidestep their pleading burden. But the law is clear: To plausibly allege that Lannett was a member of an overarching conspiracy, Plaintiff States must plead facts—not just conclusions—suggesting that Lannett was aware of, and consciously committed to, the common purpose of the overarching conspiracy. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 348–51 (3d Cir. 2010); *see also* Mot. at 3-6 (collecting cases). The reason for this burden is clear; "[o]nly after a defendant agrees to the common purpose [of the overarching conspiracy] may it be held responsible for the conduct of co-conspirators." *In re Auto. Parts Antitrust Litig*., No. 12-203, 2016 WL 8200512, at *4 (E.D. Mich. Apr. 13, 2016); *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1515 (N.D. Ill. 1990) ("In order to properly plead a conspiracy, the plaintiff must allege facts which evince each defendant's agreement to participate in what he or it knew to be a collective venture toward a common goal."

(internal quotation marks omitted)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (explaining that plaintiffs must allege "enough factual matter (taken as true) to ***suggest that an agreement was made***" (emphasis added)).  Plaintiff States fail to meet this burden.  *See* Mot. at 3-6.

Plaintiff States fail to direct the Court to a single factual allegation mentioning, referencing, or suggesting that Lannett knew of and committed to an industry-wide, overarching conspiracy.  Nowhere do the Plaintiff States plead facts suggesting that Lannett was aware of, let alone committed to, an overarching "fair share" agreement.  Nowhere do the Plaintiff States plead facts suggesting that Lannett communicated with another Defendant related to products Lannett did not sell.  Indeed, there are no references to Lannett with respect to products other than the two that Lannett sold and regarding which Lannett is specifically alleged to have participated in individual-drug conspiracies.

Instead, in their Opposition Plaintiff States point only to: (1) allegations regarding Lannett's supposed participation in two individual-drug agreements; and (2) generalized allegations regarding participation in industry events and communications with other Defendants.  But these allegations make no reference to any facts suggesting Lannett was even aware of a broader 116-drug conspiracy.  They cannot satisfy Plaintiff States' burden of pleading facts plausibly suggesting Lannett's commitment to that broader conspiracy.  *See Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 160–61 (D.D.C. 2004) (holding that plaintiffs must allege, "in the context of the larger conspiracy alleged," that "each defendant knowingly joined or agreed to participate in the conspiracy"); *see also* Mot. at 5-6.

### A. Alleged Participation in Individual Drug Conspiracies Does Not Plausibly Suggest that Lannett Was Aware of, and Consciously Committed to, the Claimed Overarching Conspiracy.

Plaintiff States' primary argument is that their allegations regarding Lannett's alleged participation in individual drug conspiracies related to two drugs (Baclofen and Levothyroxine) make it "***reasonable to conclude*** that Lannett's anticompetitive agreement extended beyond those drugs" to include 114 drugs Lannett does not sell. Opp. at 10. Plaintiff States, however, offer no logic or authority supporting such an extraordinary inferential leap.

The law is to the contrary: Even if the Plaintiff States plausibly alleged that Lannett participated in two individual-drug conspiracies, those allegations do not, by themselves, plausibly suggest Lannett consciously committed to a sweeping, industry-wide conspiracy involving drugs it never made or sold. *See In re Optical Disk Drive Antitrust Litig.*, No. 10-2143, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) ("Even assuming [certain] auctions, and perhaps others, were rigged, that is a far cry from establishing plausibility for a broad six year continuing agreement among all defendants to fix the prices of all ODDs sold through innumerable other channels."); *see also Ins. Brokerage*, 618 F.3d at 350–51 (explaining that plaintiffs cannot satisfy their pleading burden by merely asserting an overarching conspiracy consisting of individual conspiracies of a "similar nature"). Such "[s]peculative or conjectural assertions are not sufficient" to state a claim. *In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 524 (E.D. Pa. 2019) (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that speculative theories, unsupported by factual allegations, are insufficient to state a claim).

Plaintiff States also argue that their "explanation of the 'fair share' concept at the beginning of [their Second Complaint]" coupled with their unsupported assertion that "Lannett acted consistently with" this "fair share concept" satisfies their burden. Opp. at 8. But that argument is

merely another way of suggesting that Lannett's alleged participation in two individual drug conspiracies should be a shortcut to showing Lannett's awareness of, and commitment to, an overarching conspiracy, and fails for the same reason.

> **B.     Alleged Employee Communications and Participation in Industry Events Are Insufficient to Plausibly Allege Lannett Committed to the Overarching Conspiracy Alleged.**

The Plaintiff States' only allegations related to Lannett beyond those related to the two drug-specific conspiracies involve allegations that Lannett employees attended and participated in industry events such as trade associations, golf outings, dinners, or "Women in the Industry" events and that Lannett employees exchanged phone calls and text messages with certain employees of other generic manufacturers.  *See* Opp. at 4-7; Second Compl. ¶¶ 108, 110-112, 14.  None of these allegations suggest that any aspect of the overarching conspiracy was discussed with Lannett personnel at the industry events or in the phone calls or text messages.

It is well settled that alleged attendance at industry events and communications at most show an opportunity to conspire and, absent additional facts demonstrating that Lannett actually discussed the subject matter of the alleged overarching conspiracy, are insufficient to survive a motion to dismiss.  *See Twombly*, 550 U.S. at 567 n.12 (rejecting argument that a defendant should be forced to "devote financial and human capital to hire lawyers, prepare for depositions, and otherwise fend off allegations of conspiracy . . . just because he belonged to the same trade guild as one of his competitors); *see also Resco Prods., Inc. v. Bonsai Minerals Grp. Co., Ltd.*, 158 F. Supp. 3d 406, 425–26 (W.D. Pa. 2016); *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 963–64 (N.D. Cal. 2007); *In re Ins. Brokerage Antitrust Litig.,* No. 04-5184, 2006 WL 2850607, at *12 (D.N.J. Oct. 3, 2006); *In re Elevator Antitrust Litig.,* No. 04-1178, 2006 WL 1470994, at *11 (S.D.N.Y. May 30, 2006), *aff'd*, 502 F.3d 47 (2d Cir. 2007).  Further, Plaintiff

States have failed to plead any facts suggesting that Lannett "took advantage" of any communication to further the alleged overarching conspiracy. *See generally* Second Compl.

### III. CONCLUSION

The only connection between Lannett and the overarching conspiracy the Plaintiff States claim is their own say-so. Unsupported conclusions and speculation, however, are disregarded at the motion to dismiss stage, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *Twombly*, 550 U.S. at 545. Accordingly, for the reasons stated herein and in Lannett's Motion, Lannett respectfully requests that the Court dismiss the overarching conspiracy claims in the Plaintiff States' Second Complaint.

Dated: February 26, 2021

Respectfully submitted,

/s/ *Gerald E. Arth*
Gerald E. Arth
Ryan T. Becker
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel: (215) 299-2000
Fax: (215) 299-2150
garth@foxrothschild.com
rbecker@foxrothschild.com

George G. Gordon
Julia Chapman
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel:  (215) 994-2000
Fax: (215) 994-2222
george.gordon@dechert.com
stephen.brown@dechert.com
julia.chapman@dechert.com

*Counsel for Defendant
   Lannett Company, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify on this 26th day of February 2021, a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the Court's ECF System.  Notice of this filing will be sent to all counsel of record by operation of the ECF System.

                                                  /s/ *Julia Chapman*
                                                Julia Chapman

Dated:     February 26, 2021