IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL No. 2724<br>Civil Action No. 16-md-2724-CMR<br><br>HON. CYNTHIA M. RUFE |
| **THIS DOCUMENT RELATES TO:**<br><br>*State of Connecticut, et al. v. Teva Pharmaceuticals USA Inc., et al.* | Civil Action No. 19-cv-2407-CMR |

### DEFENDANT TRACY DIVALERIO'S REPLY IN SUPPORT OF HER <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

|  |  |
|---|---|
|  | WELSH & RECKER, P.C.<br>Amy Carver<br>306 Walnut Street<br>Philadelphia, PA 19106<br>(215) 972-6430<br>abcarver@welshrecker.com |
| Dated: February 26, 2021 | *Counsel for Tracy Sullivan DiValerio* |

**TABLE OF CONTENTS**

Table of Authorities .................................................................................................................. ii

I.   Introduction ........................................................................................................................ 1

II.  Argument ........................................................................................................................... 2

  A.  The States Fail to Allege that Ms. DiValerio Agreed to Any Drug-Specific Conspiracy... 2

  B.  The States' Claims Against Ms. DiValerio are Time-Barred. ............................................. 4

    i.   The Allegations Fall Outside the Limitations Period. ....................................................... 5

    ii.  The "Fraudulent Concealment" Doctrine is Inapplicable. ................................................ 5

    iii. The States Do Not Address the Complaint's Failure to Allege Illegal Actions Designed to Implement and Effectuate an Initial Violation of the Securities Laws. ............................. 6

III. CONCLUSION .................................................................................................................. 7

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Forbes v. Eagleson*,
   228 F.3d 471 (3d Cir. 2000) ................................................................................................ 6

*In re Aspartame Antitrust Litig.*,
   416 F. App'x 208 (3d Cir. 2011) ...................................................................................... 4, 5

*In re Fasteners Antitrust Litig.*,
   No. 08-md-1912, 2011 WL 3563989 (E.D. Pa. Aug. 12, 2011) ........................................ 2, 3

*In re Generic Pharma. Pricing Antitrust Litig.*,
   338 F. Supp. 3d 404 (E.D. Pa. 2018) ................................................................................ 2, 4

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................................................ 4

*In re Processed Egg Prods. Antitrust Litig.*,
   821 F. Supp. 2d 709 (E.D. Pa. 2011) ................................................................................ 4, 6

*Midwestern Mach. Co. v. Northwest Airlines, Inc.*,
   392 F.3d 265 (8th Cir. 2004) ................................................................................................ 6

**Statutes**

15 U.S.C. § 15b ..................................................................................................................... 4, 5

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1

## I. Introduction

Plaintiffs' Response to Defendant Tracy DiValerio's Motion to Dismiss Plaintiffs' Amended Complaint (the "Response"), Dkt. No. 208, lays bare the structural insufficiency of the States' pleadings. Fundamental to the survival of a claim of an antitrust conspiracy is the existence of an agreement. Without an agreement, there is no claim. Because the Complaint fails to allege any agreement by Ms. DiValerio, and the factual assertions taken as a whole do not rise to the level of showing an agreement, the Complaint must be dismissed.

As stated in Ms. DiValerio's Motion to Dismiss, the allegations against Ms. DiValerio do not satisfy the requisite pleading standards for alleging that an individual defendant participated in an antitrust conspiracy. Background facts, legal conclusions, or allegations that Ms. DiValerio merely had communications with colleagues in the industry, without any allegation as to the substance of any such communications does not satisfy Plaintiffs' burden. Plaintiffs fail to allege with specificity and particularity that Ms. DiValerio purposefully joined and participated in an antitrust conspiracy. The States' Response points to no legal standard that can fix the deficient Complaint. The pleadings are not sufficient to state a claim for relief and should be dismissed with prejudice under Rule 12(b)(6).

Moreover, the Complaint should be dismissed as time-barred because the allegations concern conduct that is alleged to have happened, at the latest, in 2014, and the States were on notice of their claims by July of 2014, or shortly thereafter, once their investigation was underway. Nothing in the Response changes those basic facts.

II.     Argument

   A. The States Fail to Allege that Ms. DiValerio Agreed to Any Drug-Specific Conspiracy.

While the Response notes that this Court stated in *In re Generic Pharma. Pricing Antitrust Litig.* that pleadings cannot be "compartmentalized," even when taken as a whole, the allegations in the Complaint fail to do more than merely make "repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect" Ms. DiValerio "to an actual agreement in an antitrust conspiracy." 338 F. Supp. 3d 404, 438 (2018).  Indeed, Plaintiffs use the conclusory verb form "resulted in" to connect Ms. DiValerio to alleged agreements.  Her alleged conduct, outlined in her Motion to Dismiss, is not part of any agreement or any conspiracy.  But Plaintiffs attempt to loop her into their complaint, alleging that her conduct "resulted in" agreements rather than allege that she agreed to any conspiracy herself.[1] In their Response, Plaintiffs double down on this idea, alleging that Ms. DiValerio "engaged in discussions leading to agreements regarding customer allocation and prices." Resp. at 17.  That allegation does not satisfy the legal standard necessary to state a claim for a violation of Section 1 of the Sherman Act which mandates that the States allege facts sufficient to show that **she** actively participated in a conspiracy.  It is not enough that **others** agreed, there has to be a showing that Ms. DiValerio as an individual joined in as well.

Plaintiffs rely on *In re Fasteners* to argue that they are somehow relieved of the requirement to allege with particularity precisely how each Defendant participated in the

---

[1] *See* Compl. ¶ 1411 (Ms. DiValerio's conduct "resulted in agreements between Defendant Lannett and various competitors to allocate and divide customers and markets for various generic drugs in accordance with the fair share principles discussed above, and to fix and raise prices, and rig bids, for certain generic drugs.  The generic drugs subject to these market allocation and price-fixing agreements include at least the following: Baclofen Tablets [and] Levothyroxine[.]").

conspiracy, citing it for the proposition that "the law does not require [the States] to allege with particularity precisely how each Defendant participated in the conspiracy." Resp. at 19 (citing *In re Fasteners Antitrust Litig.*, No. 08-md-1912, 2011 WL 3563989, at *9 (E.D. Pa. Aug. 12, 2011)). But the very next sentence in *Fasteners* mandates that the Plaintiffs nonetheless "must allege that each individual defendant joined the conspiracy and played some role in it." *Id.* The States are still required to allege in the first instance that she joined in and played a role in the conspiracy, and they have failed to do so.

The States repeat the allegations from the Complaint in their Response. *See* Resp. at 16-17. Ms. DiValerio addressed those allegations in her Motion to Dismiss. Even taking the allegations as a whole, the Complaint does not sufficiently allege any agreement to allocate the Baclofen or Levothyroxine market, and actually suggests that no agreement was reached between Ms. DiValerio and Ms. Patel. While the Complaint includes allegations about conduct by Teva, other employees at Lannett, and Ms. Patel, those allegations do not support the allegations against Ms. DiValerio. The alleged conduct of other people does not relieve the States of their burden to state a claim against Ms. DiValerio.

Plaintiffs attempt to save their unsupported claims against Ms. DiValerio by stating that she is "very well-connected with competitor contacts in the generic pharmaceutical industry and had many contacts with competitors" and that she "participated in events in which competitor generic pharmaceutical sales representatives met and discussed competitively sensitive information." Resp. at 15. Notably, they do not allege that Ms. DiValerio was personally involved in these discussions of competitively sensitive information – just that she attended events where such things were discussed. But as this Court recognized in *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, "participation in a trade group association and/or

3

attending trade group meetings, even those meetings where key facets of the conspiracy allegedly were adopted or advanced, are not enough on their own to give rise to the inference of agreement to the conspiracy." 338 F. Supp. 3d at 439 (E.D. Pa. 2018) (quoting *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 722 (E.D. Pa. 2011)); *see also In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("Attendance at industry trade shows and events is presumed legitimate and is not a basis from which to infer a conspiracy, without more."). The Court should not infer an agreement from Ms. DiValerio's attendance at industry events because Plaintiffs have not sufficiently pled associated facts. Ms. DiValerio's attendance at these events should not be presumed illegitimate and those allegations should not be viewed as furthering the States' substantive claim against her.

In addition, and as discussed in Ms. DiValerio's Motion to Dismiss, the States' allegations that Ms. DiValerio communicated with individual competitors at a rate of four times per year, without any other allegation, do not plausibly suggest that she was engaging in illegal acts and continuing to violate antitrust laws. Nor does it demonstrate that she was embracing any overarching conspiracy. Without any specific allegation about the substance of these phone calls, the toll records of telephone calls do not help the States meet their burden.

### B. The States' Claims Against Ms. DiValerio are Time-Barred.

A four-year statute of limitations applies to civil claims under the Sherman Act. *See* 15 U.S.C. § 15b; *In re Aspartame Antitrust Litig.*, 416 F. App'x 208, 211 (3d Cir. 2011). The States filed their Complaint on May 10, 2019, yet the last substantive allegation related to Ms. DiValerio relates to conduct in 2014. The States attempt to rely on the fraudulent concealment and continuing violation exceptions to the Sherman Act, but they are inapplicable here. The math is simple: because the States' cause of action accrued more than four years before the Complaint was filed, the States' claims are time-barred.

4

### i. The Allegations Fall Outside the Limitations Period.

In the Response, Plaintiffs acknowledge that there are no substantive allegations of "conspiratorial activities" related to a specific drug after 2014 and points to its listing of toll records to argue that they did in fact allege conduct within the statute of limitations period. *See* Resp. at 54. However, as noted above, there are no allegations related to the **substance** of these communications. They cannot use phone calls to simply "bolster" their claims. The Complaint must adequately allege that the defendants performed injurious acts in furtherance of the conspiracy within the limitations period (s*ee* 15 U.S.C. § 15b; *In re Aspartame Antitrust Litig.*, 416 F. App'x at 211), and these bare toll records do not save the Complaint from dismissal.

### ii. The "Fraudulent Concealment" Doctrine is Inapplicable.

The acts of defendants who allegedly destroyed documents or concealed their conduct do not apply to Ms. DiValerio in part because she never joined and participated in the conspiracy in the first instance. In any case, the States do not adequately respond to the fact that the Complaint gives the Court enough information to find that the States should have (or did know) about the basis for their Complaint well before it was filed in May 2019. According to the Connecticut Attorney General's own press release and the Complaint, the States began their investigation in July of 2014,[2] yet they waited five years to bring the claim. Any tolling "lasts only 'until the Plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action.'" *Forbes v. Eagleson,* 228 F.3d 471, 487 (3d Cir. 2000). The States should reasonably be expected to have known the facts supporting this cause of action when they began

---

[2] *A.G. Jepsen Leads Coalition in New, Expanded Complaint in Federal Generic Drug Antitrust Lawsuit*, Oct. 31, 2017, Connecticut Office of the Attorney General Press Release Archives (*available at* https://portal.ct.gov/AG/Press-Releases-Archived/2017-Press-Releases/AG-Jepsen-Leads-Coalition-in-New-Expanded-Complaint-in-Federal-Generic-Drug-Antitrust-Lawsuit); *see also* Compl. ¶ 4.

investigating alleged price-fixing in the generics pharmaceutical industry in July 2014. They fail to effectively address this point in their response with respect to Ms. DiValerio.

### iii. The States Do Not Address the Complaint's Failure to Allege Illegal Actions Designed to Implement and Effectuate an Initial Violation of the Securities Laws.

The Response ignores that the Complaint fails to allege that Ms. DiValerio participated in an "overarching conspiracy," while relying on the existence of one as a defense to statute of limitations arguments. But the States fail to plead any particularized facts to suggest that Ms. DiValerio was aware of or committed to a larger common goal that transcended the two drug products at issue, *see United States v. Kelly*, 892 F.2d 255, 258-59 (3d Cir. 1989), or any "embrace of [an] overarching conspiracy." *Processed Egg*, 821 F. Supp. at 721.

Moreover, the Response mischaracterizes Ms. DiValerio's continuing violation exception argument. The Response claims that its "detailed" allegations involving Baclofen and Levothyroxine constitute an initial violation of the antitrust laws, but for the reasons set forth in her motion to dismiss and discussed herein, the allegations against Ms. DiValerio are insufficient. The Complaint fails to allege any initial action that violates the antitrust laws and certainly does not allege injuries caused by further independent illegal actions designed to implement and effectuate any initial violation. The States must plead "illegal actions designed to implement and effectuate the initial violation" but have failed to do so. *See Midwestern Mach. Co. v. Northwest Airlines, Inc.*, 392 F.3d 265, 275 (8th Cir. 2004) (affirming dismissal of antitrust suit where the complaint included "unabated inertial consequences of the initial violation" and not independent overt acts violating the antitrust laws). Therefore, the continuing violation exception does not apply.

6

### III.   CONCLUSION

It has been almost 7 years since the States began their investigation of the generic pharmaceutical industry and the alleged price fixing at issue here. Despite all of that time, and the mountain of documents, data and other evidence at their disposal, the States have failed to articulate a sufficient, timely claim against Ms. DiValerio for a violation of Section 1 of the Sherman Act. For all of the reasons stated herein and in Ms. DiValerio's Motion to Dismiss, the claims against Ms. DiValerio should be dismissed with prejudice.


Date: February 26, 2021              BY:     /s/ Amy B. Carver
                                                                                             Amy B. Carver, Esquire
                                                                                             Welsh & Recker, P.C.
                                                                                             306 Walnut Street
                                                                                             Philadelphia, PA 19106
                                                                                             (215) 972-6430
                                                                                             abcarver@welshrecker.com

                                                                                             *Counsel for Tracy Sullivan DiValerio*