# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL 2724<br>Civil Action No. 16-md-2724-CMR |
| **THIS DOCUMENT RELATES TO:**<br>*State of Connecticut, et al. v.*<br>*Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE<br><br>Civil Action No. 19-cv-2407-CMR |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MARC FALKIN'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

JAMES A. BACKSTROM
*Of this Bar and Pennsylvania 24523*
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
Tel: (215) 864-7797
jabber@backstromlaw.com

Dated: February 26, 2021                *Counsel for Defendant Marc Falkin*

## **TABLE OF CONTENTS**

Page

I. The Legal Basis to Dismiss the Complaint against Falkin is Compelling....1

II. The Gravamen of Falkin's Rule 12(b) (6) Motion to Dismiss is Undisputed ...............................................................................................2

III. Plaintiff's Opposition Relies on Constructive Amendment of the Complaint ...................................................................................................3

IV. Plaintiff's Cannot State a Claim Against Falkin Based on Alleged Conduct of Others........................................................................................5

V. Conclusory Observations About Falkin's Relationships Do Not Make a Sherman Act Conspiracy...............................................................6

VI. Plaintiffs Cannot Relieve Themselves of the Obligation to Plead Knowing Joinder..........................................................................................8

VII. Plaintiffs' Sherman Act Conspiracy Claim Still is Time-Barred .................9

VIII. Plaintiffs' State-Law Claims Are Derivative and Must Be Dismissed.......10

IX. Conclusion .................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)……………………………………………………………….8, 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007……………………………………………………………...8

*Burtch v. Milberg Factors, Inc*.
662 F.3d 212 (3d Cir. 2011)…………………………………………………….9

*In re Fasteners Antitrust Litig., No. CIV A 08-MD-1912*
2011 WL 3563989 (E.D. Pa. Aug. 12, 2011) ........................................................9

*In re Generic Pharm. Pricing Antitrust Litig.*,
338 F. Supp. 3d 404 (E.D. Pa. 2018) ....................................................................8

*In re Generic Pharm. Pricing Antitrust Litig.*,
386 F. Supp. 3d 477 (E.D. Pa. 2019)…………………………………………...1, 4, 7

*In re OSB Antitrust Litig*., **No. 06-826,**
2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) ..........................................................3

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
566 F. Supp. 2d 363 (M.D. Pa. 2008)………………………………………….....4

*In re Processed Egg Prod. Antitrust Litig.,*
821 F. Supp. 709 (E.D. Pa. 2011)……………………………………………….1, 8

*In re TFT-LCD Antitrust Litig.,*
586 F. Supp. 2d 1109 (N.D. Ca. 2008)………………………………………….8

*Kendall v. Visa U.S.A., Inc.,*
518 F.3d 1042 (9th Cir. 2008)…….……………………………………………...1

*Rick-Mik Enters. v. Equilon Enters., LLC*,
532 F.3d 963 (9th Cir. 2008) ...............................................................................10

*St. Clair v. Citizens Fin. Grp.,*
340 F. App'x 62 (3d Cir. 2009) ............................................................................10

**Statutes**

15 U.S.C. § 1 ................................................................................................................. 1

15 U.S.C. § 15b…………………………………………………………......1, 9, 10

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 4

Fed. R. Civ. P. 12(b)(6)…………………………………………………….2, 4, 8, 10

Local R. Civ. P. 7.1(f) …………………………………………………………….10

**I.        The Legal Basis to Dismiss the Complaint against Falkin is Compelling.**

To state a claim against Defendant Marc Falkin under the Sherman Act count, Plaintiffs must plausibly allege that he purposefully joined and participated in a conspiracy. *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 386 F. Supp. 3d 477 482 (E.D. Pa. 2019).[1] In their opposition[2] to Falkin's Motion to Dismiss Plaintiffs' Amended Complaint, Plaintiffs fail to demonstrate how mere toll records plausibly state a conspiracy claim under 15 U.S.C. § 1. Absent direct proof that Falkin joined a price-fixing and market allocation conspiracy, Plaintiffs strain to portray their bare collection of contacts between Falkin and an executive of Teva Pharmaceuticals as a plausible circumstantial case against Falkin by constructively amending the Complaint to include new averments and citing allegations against others. The result is calamitous for their case, suggesting Falkin's involvement in a conspiracy before he even joined Actavis. And, as Plaintiffs now admit, as to two drugs in the count against him, the Complaint makes no factual averments about him. If anything, the opposition shows the Complaint to be a conclusory, contradictory and roving accusation impossible to defend against.[3]

For good reason, the law requires Plaintiffs at least to describe with specificity each defendant's purposeful role in conduct that is not merely parallel and could just as well be independent action, but "a context that, raises a suggestion of a preceding agreement…."[4] As defects in the Complaint itself show, context does not convert a collection of unelaborated toll records into a "proxy" for direct evidence of agreement. Separately, Plaintiffs' odd contention that a plot they investigated in 2014 was concealed from them through 2015 warrants summary rejection. 15 U.S.C. §15b. Accordingly, the

---

[1] Citing *In re Processed Egg Prod. Antitrust Litig.,* 821 F. Supp. 709, 720 (E.D. Pa. 2011).
[2] Plaintiff States' Consolidated Memorandum in Opposition to Various Individual Defendants' Motion to Dismiss the Plaintiff States' Amended Complaint, Dkt. No. 208 (hereinafter "Opposition" or "Opp.").
[3] *See Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1047 (9th Cir. 2008).
[4] *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 386 F. Supp. 3d at 483-4.

1

antitrust count[5] and derivative state claims[6] against Falkin should be dismissed with prejudice[7] before they cloud his life and livelihood another day.

**II.     The Gravamen of Falkin's Rule 12(b) (6) Motion to Dismiss is Undisputed.**

In their Opposition, Plaintiffs do not dispute that:

- The Amended Complaint[8] includes no statement reflecting anything Falkin said or did, even within his company, to convert his contacts into illicit conduct or that furthered a conspiracy. Opp. at 25-26.

- Unlike other defendants, Falkin features and figures in no email, documents or statements of confidential informants. Opp. at 26

- The Complaint relies on the very same calls between Falkin and Teva's David Rekenthaler variously as price fixing or market allocation of completely unrelated molecules.[9] Opp. at 27. Unlike the opposition, the drug-specific Complaint itself does not state that Falkin and Teva's Rekenthaler made disparate agreements simultaneously.

- The Sherman Act count naming Falkin includes two drugs[10] for which the Complaint sets forth no factual support at all.  Opp. at 28.

- Permitting pleading by toll record would subject Falkin to any and every claim Plaintiffs decide to assign to his contacts, which Plaintiffs now admit. Opp. at 12, 29.

---

[5] Count Twenty-Three, AC ¶¶ 1309-1317.
[6] Count Thirty-Five, AC ¶¶ 1417-1726.
[7] Plaintiffs do not appear to dispute that, if the Court finds for Falkin, dismissal with prejudice is warranted.
[8] Hereinafter "the Complaint" or "AC".
[9] *See* Memorandum in Support of Defendant Marc Falkin's Motion to Dismiss Amended Complaint (hereinafter "Br.") at III. (A)(2)(d).
[10] Buspirone Hydrochloride Tablets and Drospirenone and ethinyl estradiol (Ocella).

### III. Plaintiffs' Opposition Relies on Constructive Amendment of the Complaint.

Plaintiffs introduce a defense of their deficient Complaint by claiming that "Falkin and (Actavis' Rick) Rogerson were frequently part of interwoven discussions and decisions *when Actavis* and its competitors were discussing and making decisions about allocating drug markets among competitors and fixing drug prices" (emphasis supplied). Opp. at 19. This confusing claim appears nowhere in the Complaint. Neither does the Complaint aver that Falkin endorsed, directed or furthered any specific action of Rogerson or vice versa. Conclusions in Count Twenty-Three that Falkin directed "others" or "tacitly" approved their communications[11] simply are copied from counts against co-defendants.[12] As it is, none of the averments cites a "decision" or agreement *by either Falkin or Rogerson.* Opp. at 20. Still, Plaintiffs attempt to make up for this essentially by combining averments against each. But none implicates either defendant in an actual agreement. They simply suggest that contacts between Falkin and Rekenthaler on the one hand, and Rogerson and Teva's Nisha Patel on the other somehow "led to" price increases[13] or customer allocations[14] by Teva and Actavis. But, as noted in the opening brief, an antitrust "plaintiff must allege that each defendant joined the conspiracy and played some role in it. *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007). None of the averments repeated in the opposition does this.

Likewise, sporadic suggestions that Falkin (and Rogerson) were involved in "coordination" with competitors[15] are no substitute for factual pleading. Dismissing a corporate defendant in this litigation, this Court quoted a fitting observation by another that, "sprinkling a complaint with conclusory assertions that a party was 'a participant in

---

[11] AC ¶ 1311. *See* discussion in Br. at II. (B).
[12] *Id.*
[13] AC ¶¶ 769, 885-86, 890-91, 896-901, 746 and 749.
[14] AC ¶¶ 336-39, 340-42, 343-51, 352-55, 356-62, 411-28, 564.
[15] AC ¶¶ 847-48, 877-82, 902-10, 911-14 and 1091-92.

3

coordinated conduct' or a 'conspirator' or acted 'in concert' with others does not make the requisite showing of entitlement to relief mandated by Rule 8(a) (2)."[16]

Plaintiffs attempt to bolster their Complaint by restating allegations therein against Falkin that do not "expressly mention Rogerson" (Opp. at 20-22) and against Rogerson that do not "expressly mention Falkin" (Opp. at 22-23). They do not explain why averments in a conspiracy complaint would omit references to co-defendants at the same company. Likely, it is because the Complaint contains absolutely no averment that Falkin and Rogerson even communicated *with each other* about alleged contacts with acquaintances at rival firms.

Plaintiffs contend that Falkin's motion compartmentalizes the allegations and ignores the context in which they are to be weighed for sufficiency under Rule 12(b) (6). But the contextual inquiry works both ways. Plaintiffs' recitations from the Complaint include significant omissions. For example, at AC ¶¶ 338-339, Plaintiffs associate phone connections between Falkin and Rekenthaler in March of 2014 with somehow trading customers who bought Amphetamine/Dextroamphetamine IR. Other averments, however, state that Teva conceded a customer's account to Actavis *because Actavis offered a lower price*. AC ¶ 339. Elsewhere, at AC ¶¶ 740-50 and 779, connections on the same dates, March 17 and April 4, 2014, are cited as Falkin's complicity with Teva in price increases for five completely unrelated drugs on April 4, 2014. Since no content of any call on any day is described, let alone any action on Falkin's part, these allegations state no claim.

Plaintiffs' inclusion of Falkin in an alleged three-way "coordination" among Teva, Camber Pharmaceuticals, Inc. and Actavis about the latter's entry into the market for Raloxifene illustrates another defect in their averments. The opposition claims that Rekenthaler learned the timing of Actavis' entry from "discussions with Actavis,

---

[16] *In re Generic Pharmaceuticals Pricing Antitrust Litig*. 386 F. Supp. 3d 477, 483-4 (E.D. Pa. 2019) quoting *In re Pressure Sensitive Labelstock Antitrust Litig.,* 566 F. Supp. 2d 363, 376 (M.D. Pa. 2008).

*including Falkin"*. But the Complaint alleges specifically that a number of different Teva and Actavis personnel were in contact with each other before the launch. AC ¶¶ 1092. There is no factual basis to single out Falkin as a conspirator. Evidently appreciating this, Raloxifene is not even among the molecules included in the Sherman Act count against him. AC ¶ 1312. Even Plaintiffs appear to understand that contacts do not equal collusion. Yet, they conclude that Falkin conspired concerning at least 18 other drugs on grounds no more factually-based than this one. Plaintiffs' allegations, on the whole, are both arbitrary and insufficient as a matter of law.

**IV.  Plaintiffs Cannot State a Claim Against Falkin Based on Alleged Conduct of Others.**

Evidently recognizing that their pleading against Falkin is inadequate, Plaintiffs' opposition gratuitously injects him into allegations about Rogerson as if Falkin was mentioned in those allegations. But, as the Complaint avers elsewhere, Falkin joined Actavis in *August 2013*,[17] months after a number of Rogerson's contacts are alleged to have occurred.

- Contacts between Teva's Patel and Rogerson about Nabumetone are alleged to have occurred in May 2013 (AC ¶ 604) before Falkin was employed by Actavis. The single conspiracy count against Falkin understandably omits this molecule. AC ¶ 1312.

- Plaintiffs' opposition appears to suggest Falkin is connected with discussions about Ocella in April and May 2013 (Opp. at 22), again, months before Falkin even joined Actavis. Elsewhere in their opposition, Plaintiffs admit that their inclusion of Ocella in the count against Falkin was inadvertent. Opp. at 28.

---

[17] AC ¶¶ 589, 1066.

- Likewise misleading is Plaintiffs' suggestion that Falkin had anything to do with Patel's contacts with competitors in July 2013, again before Falkin joined Actavis.

Finally, Plaintiffs attempt to use their opposition to amend the Complaint to implicate Falkin in an agreement with Actavis that Teva would lead a price increase for a number of drugs in February of 2014.[18] Neither Falkin nor Rogerson is mentioned in the first cited paragraph. The second consists of a color chart listing price increases[19] and a miniscule notation of dates (but neither times nor durations) of phone contacts between Rogerson and Patel, or Falkin and Rekenthaler. Presumably, if Plaintiffs could have alleged Falkin had a role in a price-fixing agreement about this increase, they would have described what he said or a decision he made. The Complaint sets forth neither.

The Complaint does not plausibly allege that any contact between Falkin and a competitor concerned one molecule or another, let alone furthered a conspiracy. Nothing in the opposition changes that. Plaintiffs have this burden in pleading, and it is not met.

**V.    Conclusory Observations About Falkin's Relationships Do Not Make a Sherman Act Conspiracy.**

As in the Complaint, Plaintiffs' opposition seeks to fortify their inadequate claims against Falkin personally by invoking conclusions rather than facts. What factual averments they do cite are at war with each other. For example, Teva's Patel is alleged to have ranked Actavis as a "high quality" competitor because of relationships including hers with Rogerson and Rekenthaler's with Falkin. However, in the opening pages of the Complaint,[20] Plaintiffs aver that Teva selected a core group of "high quality" competitors by 2012, *before* Falkin even joined Actavis. The citation to the Complaint, "reporting that after Falkin started at Actavis, he communicated with great frequency with Rekenthaler

---

[18] AC ¶ 748- 749.
[19] Following an earlier Actavis increase on three molecules and leading an increase on another.
[20] AC ¶ 2.

6

and [Maureen] Cavanaugh"[21] implies that Falkin's contacts with the pair signaled his joining a conspiracy. The suggested inference is baseless because the Complaint refers to no telephone records earlier than November 10, 2013. AC ¶¶ 417, 1078. There is no factual basis to infer that Falkin's acquaintance with Rekenthaler or Cavanaugh was illicit. Contrary to Plaintiffs' claim, this selection of connections is anything but sufficient to plausibly allege joinder in a conspiracy.

Selectively invoking context is no remedy for the absence of content of communications between business rivals. References to a dinner and other events Falkin attended with competitors add nothing in the absence of a specific allegation of agreement.[22] Moreover, the suggestion that competitors had "strong relationships" with Falkin without indications of conspiratorial agreement does not make out a Sherman Act cause.[23]

Finally, the fallacy of using the existence of unelaborated telephone connections to implicate Falkin in a conspiracy is evident in the Complaint's description of Actavis' entry into the market for Clonidine-TTS.[24] Plaintiffs cite calls between Falkin and Rekenthaler coinciding with the entry as factually plausible indications that the two plotted what market share Actavis should have. From their opposition, Plaintiffs omit a portion of the Complaint that avers that Rekenthaler's subordinates "bemoaned" Actavis' "ridiculous" low pricing on entry. AC ¶ 346. Some conspiracy. While the Complaint alleges that Actavis rescinded and increased its pricing later, it only quotes Teva's Patel as saying she found this out. *Id.* There is no indication from whom she received her information. This is a completely insufficient basis to allege that Actavis changed anything because of an agreement between Falkin and anyone. As noted, there is no

---

[21] Opp. at 23.
[22] *See* discussion in Br. at 2-3.
[23] *See In re Generic Pharmaceuticals Pricing Antitrust Litig.* 386 F. Supp. 3d 477, 485 (E.D. Pa. 2019).
[24] Misidentified in the Opposition as Clonidine-TSS.

7

averment in the Complaint that Falkin and Rogerson even conferred about anything in this episode.

### VI. Plaintiffs Cannot Relieve Themselves of the Obligation to Plead Knowing Joinder.

In their opposition, Plaintiffs disclaim pleading obligations under Rule 12 (b) (6). They say that the fact that the Complaint does not quote or paraphrase the content of Falkin's calls with competitors does not mean that it is not plausible that that he joined and participated in a conspiracy. But authority they cite hardly endorses pleading by phone record. "To provide reasonable notice to a specific defendant of the claim(s) against it, a complaint must plausibly suggest that the individual defendant actually joined and participated in the conspiracy…[t]he Court properly looks for more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy"[25]

Plaintiffs dismiss the numerous conflicting attributions in the Complaint by asserting that there is nothing "to suggest that Defendants could not and did not talk about multiple drugs on one call or that the States cannot use one call to support the allegations related to more than one drug." Opp. at 27. Not only is this not what the Complaint alleges about the specified drugs,[26] but it turns the law on its head and converts the Complaint into indefensible quicksilver. The standard in controlling authority,[27] not cited by Plaintiffs, requires "more than a sheer possibility that a defendant has acted unlawfully", and a complaint that pleads facts "merely consistent with a defendant's liability stops short of the line between possibility and plausibility of

---

[25] *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 438 (ED Pa. 2018), quoting *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Ca. 2008) and *In re Processed Egg Prod. Antitrust Litig.*, 821 F. Supp. 709, 719 (E.D. Pa. 2011).
[26] *See* AC ¶¶ 338-39, 354-55, 362, 740-50, 779, 846, 885, 900, 909.
[27] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

'entitlement to relief.'"[28]  Plaintiffs have no factual basis to claim that any call concerned one molecule or another or any at all. Count Twenty-Three should be dismissed with prejudice.

### VII. Plaintiffs' Sherman Act Conspiracy Claim Still is Time-Barred.

Plaintiffs' opposition advances two reasons that the Complaint against Falkin is timely under 15 U.S.C. § 15b, although it was filed well over four years after the final conspiratorial "act" attributed to him.  One ground is specious, and the other finds no support in the Complaint.

First, Plaintiffs argue that "the fact that Connecticut began an investigation in July 2014 does not mean that the States, before May 10, 2015, were 'aware of "red flags" that definitively apprise[d] [them] of the cause of action' against Falkin." Opp. at 55. The single case upon which they rely is completely inapposite. In *Fasteners*[29], plaintiffs contended that they could not have known of a cause of action until the European Commission disclosed enforcement action against defendants. Here, of course, Plaintiffs themselves are law enforcement authorities that directed a non-public investigation of suspicious drug pricing in mid-2014. The Complaint itself describes a parade of "red flags", including public outrage, that prompted it,[30] evidently *while* the alleged scheme still was in progress.[31] Even if the alleged plot was self-concealing, no further record is needed to dismiss the Complaint against Falkin as untimely.

Second, Plaintiffs assert that their May 10, 2019 complaint was timely because of evidence of telephone calls between Falkin and seven defendants after May 2015.[32] But

---

[28] *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 220-21 (3d Cir. 2011), quoting *Ashcroft v. Iqbal*, 556 U.S. 662 at 678 (2009).
[29] *In re Fasteners Antitrust Litig.,* No. CIV A 08-MD-1912 2011, WL 3563989 (E.D. Pa. Aug. 12, 2011).
[30] *See* AC ¶¶ 4, 11.
[31] Moreover, the Complaint identifies *Falkin* in no act of concealment. Likewise it does not explain *how* any alleged act of concealment impeded Plaintiffs' 2014 investigation.  *See* Opp. at 50.
[32] Opp. at 56.

9

the Complaint assigns no conspiratorial conduct to any of those contacts. No cognizable exception saves the Complaint from dismissal under 15 U.S.C. § 15b.

## VIII. Plaintiffs' State-Law Claims Are Derivative and Must Be Dismissed.

In their opposition, Plaintiffs dispute that failure to state a Sherman Act claim warrants dismissal of assorted state causes of action.[33] Aside from insisting that the antitrust count is sufficient, they suggest only that "many of the state claims do not derive from federal claims".[34] Plaintiffs fail to specify which state claims do not arise directly from the antitrust count against Falkin or how they stand on their own. Neither do they distinguish cited authority.[35] This Court should follow settled law to dispose of all claims against Falkin based on their inadequacy under Rule 12(b) (6).

## IX. Conclusion

As to Marc Falkin, Plaintiffs' action remains indefensible supposition upon supposition, not a timely factual statement permitting an inference that he conspired with anyone. Both counts against him should be dismissed with prejudice now.

Pursuant to Local Rule of Civil Procedure 7.1(f), oral argument is requested.

Dated:  February 26, 2021              Respectfully submitted,

                                       JAMES A. BACKSTROM, COUNSELLOR

                                       *s/ James A. Backstrom*

                                       James A. Backstrom
                                       *Of this Bar and Pennsylvania 24523*
                                       1515 Market Street, Suite 1200
                                       Philadelphia, PA 19102-1932
                                       Tel: (215) 864-7797
                                       jabber@backstromlaw.com

                                       *Counsel for Defendant Marc Falkin*

---

[33] Count Thirty-Five. AC ¶¶ 1417-1726.
[34] Opp. at  65.
[35] *See, e.g.*, *St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 65 n. 2 (3d Cir. 2009) (state law antitrust claims are only viable if corresponding Sherman Act claims are sufficient*); Rick-Mik Enters v. Equilon Enters., LLC*, 532 F.3d 963, 976 n. 5 (9th Cir. 2008).