IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>Civil Action No.: 16-md-2724-CMR<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*State of Connecticut, et al.*, v.<br>*Teva Pharmaceuticals USA Inc., et al.* | Civil Action No.:  19-cv-2407-CMR |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT JAMES BROWN'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
 (212) 661-0009

*Attorneys for Defendant James Brown*

TABLE OF CONTENTS

A.  Count 21 Should Be Dismissed For Failure to State a Claim ................................................. 1

B.  In the Alternative, Count 21 Must Be Dismissed As to At Least 6 Drugs Therein ................ 5

  1.  Dismissal is Plainly Warranted For 5 Drugs ........................................................................ 5

  2.  Dismissal of Count 21 as to Pravastatin is Plainly Warranted ............................................. 6

C.  The States' Claims Against Brown Are Time Barred ............................................................ 7

  1.  The States Have Not Alleged Any Acts In Furtherance of Count 21 Within The Limitations Period ................................................................................................................ 7

  2.  The AC Is Not Saved By the Fraudulent Concealment Doctrine ........................................ 8

CONCLUSION ................................................................................................................................ 10

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-6, 570 (2007)...................................... 4, 6

*Chandler v. Phoenix Svcs.*, 419 F.Supp.3d 927, 988-9 (N.D. Tex. 2019)...................... 6

*Davis v. Grusemeyer*, 996 F.2d 617, 624 (3d Cir. 1993)............................................... 8

*Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016)........................ 4

*Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000)................................................... 9

*Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*,
   602 F.3d 237, 256-7 (3d Cir. 2010)............................................................................. 1

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*,
   338 F.Supp.3d 404, 437 (E.D. Pa. 2018) ..................................................................... 2

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*,
   338 F.Supp.3d at 404, 419, 454 (E.D. Pa. 2018)......................................................... 5

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*,
   386 F.Supp.3d 477, 484 (E.D. Pa. 2019) ..................................................................... 4

*In re Processed Egg Prods. Antitrust Litig.*,
   2011 WL 5980001, *9 (E.D. Pa. Nov. 30, 2011)......................................................... 9

*In re Publ'n Paper Antitrust Litig.*,
   2005 WL 2175139, *4 (D.Conn. Sept. 7, 2005) ......................................................... 9

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
   38 F.3d 1380, 1390 (3d Cir. 1994).............................................................................. 10

*Penn. ex rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173, 181 (3d Cir. 1988)................................................................................ 1

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
   873 F.3d 185, 193 (3d Cir. 2017)................................................................................ 3

*White v. PNC Fin. Servs. Grp. Inc.*,
   2013 WL 3090823, *7 (E.D. Pa. Jun. 20, 2013) ......................................................... 9

*Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Coop.*,
   2019 WL 130535, *5 (E.D. Pa. Jan. 8, 2019) ............................................................................. 6

Count 21 must be dismissed because (1) it fails to state a claim, (2) in the alternative, the claim as to at least 6 drugs is deficient, and (3) the claim is time barred. Nothing in the States' opposition brief changes this.

### A. Count 21 Should Be Dismissed For Failure to State a Claim

The AC does not contain factual allegations that Brown conspired vis-à-vis the various drugs listed therein. The parties agree on much of the basic law applicable here:

- conclusory allegations and the "summary" allegations set forth in Count 21 do not state a claim. Brown Brief ("Br.") 2-7, States' Opposition Brief ("Opp.") 12.
- the Court must look to the remainder of the AC to determine if it "delineates to some sufficient specific degree that [Brown] *purposefully joined and participated"* in the subject conspiracies. Br. 2, 3; Opp. 3 (emphasis added to both).
- the AC must set out *factual* allegations that Brown *personally* joined the alleged conspiracies, and knowingly participated in antitrust conduct.[1] Br. 2, Opp. 3.

Unfortunately, the States pay only lip service to these obligations and then employ a host of questionable tactics to evade them. For example, under the guise of summarizing the AC's allegations, the States mischaracterize it and add new allegations against Brown in an impermissible attempt to amend the AC to plug its holes, and when that fails, they suggest *new rules of law* to avoid dismissal. The States' purported "amendments" to the AC through briefing are insufficient to save their claims, and each time the States deploy these tactics, they actually highlight the very deficiencies that call for dismissal of the AC.[2]

---

[1] *See also* States' Brief in 2:19-CV-02407, Doc. #137, pp. 10-11 ("It is also well established that a corporate officer or director can be held personally liable for damages arising out of an anti-trust violation when [s]he participated in the unlawful acts, or where [s]he has acquiesced or ratified the actions of other officers or agents of the corporation which were in violation of anti-trust laws."). Here, the AC alleged no *direct evidence* that Brown joined any conspiracies; rather the AC relies on inferences that he did so.

[2] *See Penn. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (internal citations omitted); *Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 256-7 (3d Cir. 2010) (same regarding antitrust complaint). For the same reason, the States cannot "reserve the right to" amend the AC further. Opp. 29. Obviously, the States have an obligation not

As to Moexipril, the AC alleges that Patel and CW-5 (formerly of Glenmark) conspired in May 2013, AC ¶ 483, but *does not allege that Brown joined or participated in this alleged agreement. Id.;* Br. 8-10. The AC then alleges that in August 2013 Patel perceived that Glenmark violated that agreement by submitting a low Moexipril bid to ABC, AC ¶¶ 483-4, and that Patel spoke separately to CW-5 and Brown. AC ¶¶ 485-6. The AC refers collectively to these conversations and alleges that Patel "reminded Brown and CW-5 of their prior agreement not to poach each other's customers after a price increase"; as a result, Glenmark withdrew its bid. AC ¶¶ 486-7. Rather than address Brown's legal arguments, Br. 8-10, the States mischaracterize the AC and claim (incorrectly) that the AC alleged an express Moexipril agreement between Brown and Patel.³ *The AC alleges no such thing, and later in their brief, the States affirmatively concede that Brown did not coordinate with Patel in May 2013*.⁴ The States' mischaracterization of the AC merely highlights the AC's critical missing allegation: that Brown joined a Moexipril conspiracy.

---

to mischaracterize the AC, yet, they do just that. For example, they contend that "[m]uch of the [AC] is focused on relationships among Defendant Teva and its competitors, including Defendant Glenmark,…[and] Brown…was *the* Glenmark representative in *many* of these relationships." Opp. 9 (emphasis added). To the extent this suggests Brown was involved in Teva's other relationships or it suggests that he was "the" Glenmark contact for Teva, this not supported by the AC. *See e.g.,* AC ¶¶ 970-1 (identifying CW-5 as Patel's "most valuable relationship" at Glenmark). And their reference to allegations in another case (in which Brown is not even named), Opp. 14, n.5 is irrelevant. *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 338 F.Supp.3d 404, 437 (E.D. Pa. 2018) ("…it is not appropriate to consider allegations in [another complaint] in determining [the present motion to dismiss]…" because they "are just that – allegations – and are not facts 'whose accuracy cannot reasonably be questioned.'").

³ Opp. 10 (claiming that the AC alleged that "Patel reminded Brown of **their** prior agreement not to poach each other's customers after a price increase.") (emphasis added).

⁴ Opp. 14, n.5 ("Brown, in May 2013, was not the Glenmark representative directly coordinating price increases with Patel at Teva"); *see also* AC ¶ 483 ("When…Patel colluded with CW-5, a senior-most executive at Glenmark to raise prices on Moexipril…."); *id*. (referring to others' May 2013 fair share agreement in § IV.C.2.f.i.). The States' summary further mischaracterizes the AC by surgically removing collective pleading. *Compare* AC ¶ 486 (collective allegations about a group of calls) *with* Opp. 10 ("…Brown and Patel had multiple phone conversations…during which Patel reminded Brown of…").

2

This deficiency is particularly telling because the States worked with CW-5 (an architect of this alleged conspiracy), yet the AC does not contain *a single factual allegation* that CW-5 drew Brown into it, let alone that Brown joined and participated in, this alleged conspiracy.

As to Kariva, the AC does not allege any Glenmark-Teva antitrust agreement. Rather, all the AC alleges is telephone calls around the time Publix was entertaining bids on Kariva. But the mere existence of phone calls among competitors is not enough to state a claim, Br. 3-4, particularly where there is no parallel conduct alleged (such as here).[5] Moreover, even if a Kariva conspiracy can be eked out of the AC, the AC is devoid of any factual allegation that Brown joined it, or what role he played in it. This is the missing *sine qua non* of a Sherman Act claim against him.

As to Gabapentin tablets ("Gabapentin"), the AC alleges that Patel attended a conference at which she obtained information about Glenmark's impending Gabapentin price increase, but *does not allege that Brown attended that conference, or was Patel's source.* AC ¶ 493. Patel then shared the information with her colleagues, and "[a]t around the time…Patel exchanged two (2) text messages with Defendant Brown…" AC ¶ 494. *That's the sum of the allegations against Brown on this issue.* Since this is obviously insufficient to state a claim, the States embellish to add the following highlighted text: "At around the time [Patel] notified her colleagues of the Glenmark pricing plans, she exchanged two text messages with Brown…***likely continuing to exchange information on the price increase or to confirm information she had already learned.***

---

[5] The AC alleges that after Glenmark's competitive bid at Publix, Teva re-evaluated its own bid, and that after various calls between Teva and Glenmark (including Brown), Teva marginally reduced its bid, but Glenmark's competitive bid stood unchanged, and won. AC ¶¶ 489-491. Since the AC does not rely on either direct evidence of a Kariva conspiracy, or parallel conduct, these calls alone are insufficient to allege a claim against Brown. *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 193 (3d Cir. 2017) (inferring a conspiracy from circumstantial evidence begins with evidence of parallel conduct).

3

***Based on this competitively sensitive information Patel had obtained, including from Brown,*** Teva picked up 'a bit of [market] share'…." Op. 10. Not only are these new allegations irrelevant because they are not contained in the AC, *see supra* n.3, but they are in any event merely speculative allegations of what "likely" could have happened, which do not nudge the allegations from "conceivable to plausible."[6]

As to Norethindrone Acetate ("Norethindrone"), the allegations upon which the States rely are set out under the "Teva/Amneal" section of the AC. AC p. 139. This is a strong indication that they do not state a claim against Brown (who did not work for Amneal), which indication is only confirmed on closer inspection. The AC alleges that after Patel spoke with two Amneal executives, Teva provided a nominal price decrease to a customer so as not to disrupt the 3-way market for Norethindrone, and on "that same day" Brown spoke several times with S.R.(1), one of the Amneal executives. AC ¶¶ 504-5. *This is all that is alleged as to Brown.*[7] Left with these deficient allegations against Brown, the States (again) mischaracterize the AC and contend that it alleged that Patel's pricing decision was "[a]s a result of this web of competitor communications – *including between S.R.(1) (Amneal) and Brown (Glenmark)* - …" Opp. 11 (emphasis in original). Of course, the AC alleges no such thing, nor could such an inference be reasonably drawn from the AC.[8] Accordingly, Count 21 should be dismissed as to Brown.

---

[6] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-6, 570 (2007)*; Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016); *In re Generic Pharmaceuticals Pricing Antitrust Litig.,* 386 F.Supp.3d 477, 484 (E.D. Pa. 2019) (rejecting bare allegations of what might be "likely").

[7] The AC does not allege what was said between Brown and S.R.(1), that their calls preceded S.R.(1)'s call with Patel, or that the Brown/S.R.(1) calls are at all relevant.

[8] The States also claim Brown was "frequently in contact with … Falkin, Patel, Berthold, Green, Ostaficiuk, and Rekenthaler," Opp. 15, but the AC refers to a paltry number of contacts between Brown and these individuals **in a 6 year period**: Patel (36), Berthold (19), Green (4), Ostaficiuk (1) and Rekenthaler (1). AC ¶ 1064. The States' inclusion of Falkin (270) in this list is dubious since the AC *does not allege that Brown conspired with him*. Opp. 9-10 (no allegations against Brown relating to Falkin).

**B. In the Alternative, Count 21 Must Be Dismissed As to At Least 6 Drugs Therein**

Alternatively, at least 6 drugs must be dismissed from Count 21 because the AC makes *no allegations* against Brown concerning these drugs. Br. 10-11. The States *concede* that there are *no* allegations against Brown as to 5 of these drugs, and refer to a lone attenuated reference to Brown on Pravastatin. Opp. 13.

### 1. Dismissal is Plainly Warranted For 5 Drugs

Since the States concede that the AC contains *no* allegations against Brown concerning 5 specified drugs, Opp. 13, dismissal is warranted here. As this Court did in *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 338 F.Supp.3d at 404, 419, 454 (E.D. Pa. 2018), the Court must undertake a drug-by-drug and defendant-by-defendant analysis on a motion to dismiss.[9] To avoid such individualized scrutiny, the States argue that these drugs were "part of the larger group of price increases that Teva coordinated with its competitors, including Glenmark, in and around May 2013," Opp. 13, but this argument does nothing to state a claim against *Brown* because (a) the argument makes no specific allegations against Brown, (b) the States expressly state that Brown was *not* involved with this May 2013 activity, Opp. 14, n.5, (c) the cited paragraphs of the AC make *no* reference to Brown, Opp. 13 (referring to AC ¶¶ 604-13), and (d) the AC does *not* allege an overarching Sherman Act conspiracy claim against Brown. *Compare* AC ¶ 1188 *with* Count 21.

Next, the States urge a new (and unfounded) rule of law: that referring to a person's job title, which may indicate a theoretical ability to direct antitrust conduct, is sufficient to state a claim

---

[9] Since Count 21 alleges drug-specific conspiracies, it must be dismissed as to each drug for which there are insufficient allegations.

against him.[10] The States cite no support for this, and their legal supposition is contrary to established law which requires a plaintiff to assert factual allegations that a defendant joined and participated in each drug-specific conspiracy – not merely that his job title might indicate that he *could possibly* have done so.[11] The States' argument (again) flies directly in the face of *Twombly*'s requirement that allegations must be plausible (not merely conceivable), and flirts with the notion of imposing strict antitrust liability against all corporate insiders who were upstream of a wrongdoer. This is obviously contrary to antitrust jurisprudence, and seeks a bold expansion of traditional rules of individual liability.

### 2. Dismissal of Count 21 as to Pravastatin is Plainly Warranted

As to Pravastatin, the States fare no better. Since the AC does not allege that Brown was involved in any Pravastatin conspiracy concerning *Glenmark's* price increase, the States try a new tact and argue that the AC contains "specific allegations of Brown participating in the price increase for Pravastatin…in August 2013, when Teva followed Glenmark's price increase. Am. Comp. ¶ 670 (identifying, in the 'Follow Glenmark, Zydus and Apotex' box on page 195, that Patel (Teva) spoke with Brown twice, *allegedly* regarding Pravastatin, just three days before

---

[10] Opp. 13 ("as the Vice President of Sales…Brown was in the position to direct and approve the conduct of others…including those Glenmark employees who communicated with Patel (Teva) regarding the coordinated price increases for the six drugs in question").

[11] *See* Br. 5-6 and n.4 (citing cases dismissing similarly sparse antitrust claim – under a motion to dismiss standard – against corporate presidents, CEOs and Chairmen); *supra* n.2 (acknowledging standard for individual liability); *see, e.g., Winn-Dixie Stores, Inc. v. Eastern Mushroom Marketing Coop.*, 2019 WL 130535, *5 (E.D. Pa. Jan. 8, 2019) (rejecting claim that job title alone permitted claims to proceed against corporate presidents and CEO); *Chandler v. Phoenix Svcs.*, 419 F.Supp.3d 927, 988-9 (N.D. Tex. 2019) (same against CEO because such argument "is a mere suggestion of what [he] *likely knew or should have known* – not a factual allegation of his 'direct role'"). Nor does the AC allege Brown supervised or directed the subject Glenmark employees, or the subject conduct. Notably, the States make this argument only as to Brown. *See e.g.*, 2:17-CV-3768, Doc. # 170 (not raising argument in response to "founder, Managing Director, and CEO" in Heritage case). We respectfully submit that the lengths to which the States have gone to evade dismissal here highlight the tenuous thread by which Count 21 hangs.

[Teva's] Pravastatin price increase)." Opp. 13 (emphasis added). *But the AC contains no allegations that Brown "participated" in Teva's price increase in August 2013, let alone what such "participation" entailed.* The States rely on two Brown-Patel phone calls on August 6, 2013, which they contend – for the first time – were "allegedly" related to Pravastatin. *Id.* This new and speculative allegation cannot fill the AC's holes, and fails to nudge their claim from the conceivable to the plausible. *See, supra* n.7. Since the AC makes no claim that Teva's price increase as to Pravastatin was based on any contact with Brown, it is legally deficient.[12]

### C. The States' Claims Against Brown Are Time Barred

#### 1. The States Have Not Alleged Any Acts In Furtherance of Count 21 Within The Limitations Period

Count 21 is also time barred as to Brown. The latest event alleged in Count 21 is unspecified "continued [] coordination" that occurred at the end of 2014.[13] Because Count 21 was first filed in May 2019 – more than 4 years after the last alleged act in furtherance thereof – the claim must be dismissed.[14]

In opposition, the States obfuscate and mislead, claiming (incorrectly) that the AC alleges a Sherman Act overarching conspiracy claim against Brown, and that acts in furtherance thereof extend the limitations period as to him. Opp. 46-50, 53. *But the AC alleges no such claim against*

---

[12] These calls are listed on AC page 195 based solely on their temporal proximity to Teva's August 2013 price increase, and the AC (tellingly) does *not* allege that these calls related to Pravastatin, nor do the AC's allegations concerning Teva's price increase rest on Patel having received non-public information from Glenmark. AC ¶ 670.
[13] AC ¶ 972; Opp. 9-10 (recounting specific allegations against Brown, the last of which allegedly occurred in October 2014). The States do not address Brown's argument (Br. 12) that the AC does not allege a relevant sale within the limitations period (let alone one at supra-competitive prices), and it is thus implicitly conceded.
[14] While each drug listed in Count 21 must be considered individually, dismissal of Count 21 is warranted because the States have not filed a timely claim as to *any* of those drugs.

7

*Brown.*[15] The operative question then is whether the AC alleges conduct in furtherance of *the drug-specific* conspiracies in Count 21 within the four-year limitations period. The AC does not identify *any* such acts, and *the States do not claim otherwise in their responsive brief*.[16] Thus, the AC must be dismissed as time barred.

### 2. The AC Is Not Saved By the Fraudulent Concealment Doctrine

The States argue extensively that the limitations period is tolled under the fraudulent concealment doctrine. *This entire argument is a red herring*, because the doctrine does not apply here: the States were on notice of their claims by July 2014, yet they did not file the Original Complaint until May 2019 – more than 4 years after that notice.[17]

---

[15] The only federal count against Brown (Count 21) alleges that he engaged in several drug-specific conspiracies. *See* AC ¶¶ 1291-99; Opp. 9-10 (referring to drug-specific conspiracies). The States therefore miss the mark when they argue that the AC alleges against Brown "a conspiracy," "the conspiracy," or "the overarching conspiracy" continuing into the limitations period. Opp. 46. Accordingly (and quite expectedly), none of the acts cited by the States *have anything to do with Brown, or the drug-specific conspiracies alleged in Count 21. Id.* (citing AC ¶¶ 159, 256, 1130, 1133-34). Paragraph 159 refers to an internal Taro note, but the AC does not allege Brown *ever* conspired with Taro. *Compare* ¶ 1176 *with* ¶ 1294 (only overlapping drug between Taro and Brown is Adapalene; as set forth *supra* at 5 the States concede the AC contains no allegations involving Brown and this drug). The allegations in ¶ 256 do not relate to *any* drug at issue in Count 21, the allegations in ¶ 1130 about Apotex custodial files are far too vague and remote to have *anything* to do with Brown, and ¶¶ 1133-34 refer to conversations *not involving Brown* after subpoenas and warrants were issued, but do not allege that these conversations related to Brown or the drugs listed in Count 21, let alone that they were in furtherance of conspiracies alleged in Count 21. Similarly, the States' reference to the mere existence of telephone calls within the limitations period fails for the same reasons. Opp. 46.

[16] Instead, they claim the AC alleges that "Brown's competitor communications **in furtherance of the overarching conspiracy** continued *beyond* May 10, 2015 – including communications with S.R.(1) … [citing AC ¶ 1064] with whom Brown engaged in specific conspiratorial acts such as in the [Norethindrone] price increase." Opp. 53 (citing AC ¶¶ 504-05) (bolding added). However, this new allegation cannot cure the AC's deficiencies, *supra* at 4-5: (a) Count 21 does not allege an overarching conspiracy as to Brown, (b) the only allegation that Brown conspired with S.R.(1) is limited to September 9, 2014, and (c) after that there are only unspecified and irrelevant communications alleged between them.

[17] *Davis v. Grusemeyer*, 996 F.2d 617, 624 (3d Cir. 1993) ("The doctrine of fraudulent concealment does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, *if a plaintiff is on notice of a potential claim*") (internal citations omitted) (emphasis added).

8

Moreover, the States' fraudulent concealment argument is specious because the States have not (and cannot) satisfy the three elements of that doctrine.[18] As to the first element – that the defendant actively misled the plaintiff – the States argue that they have alleged a "self-concealing conspiracy." However, suspicious prices that sparked national outrage prompting the States' investigations and a Congressional inquiry cannot, *at the same time*, reflect a "self-concealing" conspiracy.[19] The States fare no better under the doctrine's second and third elements, which collectively provide that "[t]olling under the fraudulent concealment doctrine lasts only *until* the plaintiff knows, or should reasonably be expected to know, in the exercise of due diligence, the concealed facts supporting the cause of action."[20] Here, the AC expressly alleges that the States were on notice of their claims by July 2014, when they commenced *law enforcement, regulatory investigations* after "unexplained" "skyrocket[ing]" prices for generic drugs that "spark[ed] outrage from politicians, payers and consumers across the country[,]" AC ¶ 11, and even proudly

---

[18] The States must allege with particularity "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable diligence in attempting to uncover the relevant facts." Opp. 49. The States cite this standard, disregard its conjunctive requirement, *id.* (arguing that "because the States have alleged an inherently self-concealing conspiracy, the States have satisfied the requirements for the fraudulent concealment doctrine"), and do not attempt to satisfy the second or third elements of the doctrine – implicitly conceding that they cannot do so.

[19] *In re Publ'n Paper Antitrust Litig.*, 2005 WL 2175139, *4 (D.Conn. Sept. 7, 2005) (dismissing Sherman Act claims as time-barred where plaintiffs had not adequately alleged a self-concealing conspiracy; "[i]n a competitive, well-regulated industry it will often be the case that a price-fixing conspiracy, if not concealed, would immediately fail because of governmental or private legal action").

[20] *In re Processed Egg Prods. Antitrust Litig.*, 2011 WL 5980001, *9 (E.D. Pa. Nov. 30, 2011) (dismissing Sherman Act claims as time-barred; plaintiffs failed to sufficiently allege second and third elements) (citing *Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000)). Despite the States' focus on fraudulent concealment, *nowhere* do they cite this critical, controlling, and *dispositive* aspect of the doctrine. *See also White v. PNC Fin. Servs. Grp. Inc.*, 2013 WL 3090823, *7 (E.D. Pa. Jun. 20, 2013) (dismissing complaint where second and third elements of fraudulent concealment were not adequately alleged).

touts the States' efforts to develop their claims after that date. AC ¶ 4. By pinpointing July 2014 as the time by which the States were on notice of their claims, fraudulent concealment must – under any set of facts – end by that date. Since the original complaint was not filed until more than four years later, Count 21 is plainly time barred.[21]

## **CONCLUSION**

For all the reasons set forth in Brown's moving brief and above, the Amended Complaint should be dismissed with prejudice against James Brown.

Dated: February 26, 2021           Respectfully Submitted,
New York, New York

                                    */s/ Larry H. Krantz*
                                    Larry H. Krantz
                                    Wendy Gerstmann Powell
                                    Jerrold L. Steigman
                                    KRANTZ & BERMAN LLP
                                    747 Third Avenue, 32nd Floor

---

[21] The States tellingly ignore this gaping hole in their fraudulent concealment argument. The law they do cite actually compels dismissal: they argue that dismissal should not be granted unless a defendant points to "undisputed facts…which demonstrate conclusively" that a plaintiff had notice, or reasonably should have discovered "adequate grounds for filing this antitrust lawsuit during the limitations period." Opp. 51. Brown has done just that – he has pointed to undisputed allegations in the AC that demonstrate conclusively that the notice date is, at best for the States, July 2014. The States also argue that July 2014 is not the operative date because "[t]here is nothing showing that the States, before May 10, 2015, were 'aware of 'red flags' that definitively apprise[d] [the States] of the cause of action' against *any* of the Individual Defendants." Opp. 52 (emphasis in original). This is unsupported and nonsensical: the red flags *before July 2014* – namely, alleged unexplained, suspicious, skyrocketing prices – are what prompted the States to investigate, and the doctrine does not require notice of the identity of each participant. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1390 (3d Cir. 1994) ("Equitable tolling [] keys on a plaintiff's cognizance, or imputed cognizance, of the facts supporting the plaintiff's cause of action").

Count 35, asserting supplemental state law claims, should also be dismissed for failing to state a claim and being untimely. *See e.g.*, *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 386 F.Supp.3d 477, 488, n.83 (E.D. Pa. 2019) (dismissing Illinois antitrust claim); *see* 2:16-PV-27242, Doc. # 114-2, App'x B (Oct. 16, 2017) (list of state antitrust laws interpreted consistently with federal law) *and* App'x G (statute of limitations for state claims, all of which are *shorter* than a federal antitrust claim). In the alternative, this Court should decline to exercise jurisdiction over Count 35. Br. 13.

10

                                        New York, New York 10017
                                        lkrantz@krantzberman.com
                                        wpowell@krantzberman.com
                                        jsteigman@krantzberman.com

*Counsel for Defendant James Brown*