**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | : : : : | MDL 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: | : : | 19-cv-2407-CMR |
| *State of Connecticut, et.al v. Teva Pharmaceuticals USA Inc. et al.* | : : | HON. CYNTHIA M. RUFE |

**JAMES GRAUSO'S REPLY IN SUPPORT OF**
**HIS MOTION TO DISMISS THE AMENDED COMPLAINT**

Robert E. Connolly
Law Office of Robert Connolly
301 N. Palm Canyon Drive
Palm Springs, California
Pennsylvania Bar No. 32341
bob@reconnollylaw.com
(215) 219-4418

Dates: February 26, 2021

*Counsel for Defendant James Grauso*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. PLAINTIFFS IMPROPERLY EQUATE TOLL RECORDS "IN CONTEXT" TO GROUP PLEADING .......... 2

III. THERE ARE NO FACTS THAT PLAUSIBLY SUGGEST GRAUSO FIXED PRICES OR ALLOCATED CUSTOMERS FOR ANY OF THE DRUGS ALLEGED IN COUNT TWENTY-FOUR .......... 3

A. THERE IS NO PARALLEL CONDUCT TO SUPPORT ALLEGED PRICE-FIXING .......... 3

B. NO FACTUAL ALLEGATIONS PLAUSIBLY SUGGEST GRAUSO PARTICIPATED IN MARKET ALLOCATION .......... 6

IV. THE OBSTRUCTION ALLEGATION HIGHLIGHTS THE MISUSE OF THE TOLL RECORDS .......... 8

V. THE STATES' CLAIMS AGAINST GRAUSO ARE UNTIMELY .......... 9

VI. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ……………………………………………………………...…...3

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007). ……………………………………………………………………3, 10

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011) ........................................................................................ ……… 9

*In re Generic Pharm. Pricing Litig.(McKesson)*,
386 F. Supp. 3d 477 (E.D. Pa. 2019)……………………………………………………...1

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*,
338 F. Supp. 3d 404 (E.D. Pa. 2018) ......................................................................... . 2, 4

*In re German Automotive Manufacturers Antitrust Litig.*,
2020 WL 1542373 (N.D. Cal Mar.31, 2020)................................................................ … 8

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010)……………………………………………………………… 8

*Mullin v. Balicki*,
875 F.3d 140 (3d Cir. 2017)……………………………………………………………...10

*In re Processed Egg Prod. Antitrust Litig.*,
821 F. Supp. 2d 709 (E.D. Pa. 2011) ………………………………………….…………9

*Schuylkill Energy Res. v. Pa. Power Light.*,
113 F.3d 405, 417 (3d Cir. 1997) ………………………………………………………5

**Other Authorities**

Fed. R. Civ. P. 8……………………………………………………………………………….2

## I. Introduction

Count Twenty-Four of the States' Amended Complaint ("AC") alleges James Grauso participated in market allocation and price fixing agreements on three drugs: Kariva, Gabapentin and Combivir. *Id.* at ¶ 132. As set forth in his opening brief, the AC fails to plausibly state a claim against Grauso, which in any event, is time-barred. First, no allegation is supported by direct evidence. Second, there are no allegations that any agreement by Grauso resulted in parallel pricing by his corporate employers, a fatal pleading defect: "For circumstantial evidence of an agreement,…a plaintiff must allege both parallel conduct and something "more" [a 'plus factor']." *In re Generic Pharm. Pricing Antitrust Litig. (McKesson)*, 386 F. Supp. 3d 477, 483 n.42 (E.D. Pa. 2019) (citations omitted). Without parallel conduct, there are no "plus factors" to weigh. Moreover, there isn't a solitary factual allegation of what Grauso said or what was said to Grauso.[1] While acknowledging that the only allegations against Grauso are contentless toll records, Plaintiffs claim the AC against Grauso is sufficient because they "are not relying solely on the phone records but are instead relying on *all* of the evidence *in context*, including the timing of the calls and other communications, and the timing of price increases or customer allocation decisions." Opposition Memorandum, Dkt # 210 at 33. (Opp. Mem.) All of the evidence against Grauso *is* toll records from which Plaintiffs make conclusory assertions about what might have been said. "[S]prinkling a complaint with conclusory assertions that a party was a 'participant in coordinated conduct' or a 'conspirator' or acted in 'concert' with others

[1] The AC, under the heading "Individual Defendant Relationships," contains a chart showing contacts between Grauso and other industry executives, the majority with his good friend, David Berthold. *Id.* at ¶¶1067, 1068 These contacts are not "plus factors" because they are not tied to any parallel conduct, moreover no reasonable inference can be drawn from toll records where the parties could have been speaking about anything.

does not make the requisite showing of entitlement to relief mandated by Rule 8(a)(2)." *Id. at* 484 (citation omitted).

## II. Plaintiffs Improperly Equate Toll Records "In Context" To Group Pleading

This lawsuit is the result of the States' multiyear investigation that began in July 2014. The Attorney General of the State of Connecticut has stated:

> "We have hard evidence that shows the generic drug industry perpetrated a multi-billion dollar fraud on the American people. We have emails, text messages, telephone records, and former company insiders that we believe will prove a multi-year conspiracy to fix prices and divide market share for huge numbers of generic drugs."[2]

The AC cites five confidential witnesses ("CW") who are relied upon 198 times. No CW implicates Grauso. There are 70 text messages referenced in the AC. None reference Grauso. There are over 207 e-mails referenced in the AC. No email references Grauso. There is no mention of Grauso in the "Industry Dinners and Private Meetings" section of the AC. ¶¶ 106-114. Finally, in the AC there are over 1,000 quotations taken from documents, spreadsheets, emails and texts. None refer to Grauso.[3]

To be sure, the States' public relations campaign does not change the standard for judging a motion to dismiss. But it does highlight why the toll record allegations in the AC against Grauso must be scrutinized for sufficiency. In order to empower district courts as gatekeepers and prevent unmeritorious claims from dragging a defendant through extensive,

---

[2] See, State of Connecticut Press Release, May 12, 2019, Attorney General Tong Leads 44-State Coalition inn Antitrust Lawsuit Against Teva Pharmaceuticals, 19 Other Generic Drug manufacturers, 15 Individuals In Conspiracy to Fix Prices and Allocate Markets For More Than 100 Different Generic Drug Manufacturers, https://portal.ct.gov/AG/Press-Releases/2019-Press-Releases/TONG-LEADS-LAWSUIT-AGAINST-GENERIC-DRUG-MANUFACTURERS-IN-CONSPIRACY-TO-FIX-PRICES-FOR-OVER-100-DRUGS.

[3] These distinctions are important as the Court noted in dismissing Plaintiffs' claims against Teligent for similar reasons in *In re Generic Pharm. Pricing Antitrust Litig.,* 338 F. Supp. 3d 404, 451 (E.D. Pa. 2018).

expensive and reputationally damaging litigation, *Twombly* increased the burden antitrust plaintiffs bear under Rule 8(a).[4] The AC makes a significant distinction between individual defendants like Grauso who is alleged to have colluded on three drugs and the corporate defendants who are alleged to have participated (through various employees) in the alleged overarching conspiracy. ("These agreements were part of an overarching conspiracy among all of the corporate Defendants…." Count Six Glenmark AC ¶1188; Count Ten Aurobindo ¶1216). Examination of the factual allegations in the AC against Grauso, however, and putting aside the embellishments contained in Plaintiffs' Opp. Mem., shows that the AC lacks sufficient "factual matter accepted as true to state a claim against Grauso that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Each instance of Grauso's collusion alleged in Count Twenty-Four is discussed below to demonstrate the insufficiency of the allegations to state a claim.

## III. There Are No Facts That Plausibly Suggest Grauso Fixed Prices or Allocated Customers For Any Of The Drugs Alleged In Count Twenty-Four[5]

### A. There Is No Parallel Conduct to Support Alleged Price-Fixing

The AC allegations against Grauso do not plausibly plead that Grauso participated in any price fixing agreement. In support of Grauso's alleged price fixing, Plaintiffs state in their Opp. Mem. at 32 that, "In July 2013, as Teva developed its next price increase list, Defendant Patel (Teva) spoke directly with multiple competitors, *including Grauso (Aurobindo) Id.* at 663-65." (emphasis in Opp. Mem.). There is a toll record on July 8, 2013 of one call between Nisha Patel

[4] It will likely be several years before Grauso can again challenge the charges against him in a motion for summary judgment. The impact, however, on his credit rating, reputation and family is felt now.

[5] Grauso was a Senior Vice President, Commercial Operations at Aurobindo from December 2011 through January, AC ¶ 42. Grauso was Executive Vice President, N.A. Commercial Operations at Glenmark from February 2014 to August 2017.

and Grauso. AC ¶ 665. But reading the AC in context shows that this toll record does not support a plausible inference that Grauso entered into an illegal agreement.

The AC allegations regarding price fixing are collected in 121 pages under the heading "Taking the Overarching Conspiracy to A New Level: Price Fixing 2012-2015. ¶¶ 536-914. Grauso is mentioned in just 1 of the 378 price-fixing paragraphs, under the subheading "August 9, 2013 Price Increases (Round 2)." There is no allegation of Grauso's knowledge of or participation in "Round 1" price fixing. As to Round 2, there is no allegation of parallel conduct to which the solitary Grauso toll record could be a "plus factor." The AC ¶ 663 states: "These [August 9, 2013 Teva] increases were coordinated with a number of Teva's competitors, including Defendants Mylan, Sandoz, Taro, Lupin, Glenmark and Apotex." Aurobindo, where Grauso was in Commercial Operations, is not alleged to have participated. Further reinforcing Grauso's absence, the AC ¶ 668 shows a "spreadsheet includ[ing] competitively sensitive information about certain competitors' plans regarding future price increases that Defendants Patel and/or Green could have only learned from directly colluding with those competitors…." There is no allegation regarding Grauso. The AC ¶ 670 further states, "The following graphic details some of the call with competitors in the days and weeks leading up to the increases." There is no call listed with Grauso, because there was no parallel conduct [price increase] by Aurobindo. While there is no set time frame in which a rival must follow to be considered parallel conduct, to not follow at all is fatal to the parallel conduct that must be shown. *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d at 441 (Plaintiffs must allege price increases that are "reasonably proximate in time and value."). Besides the absence of an allegation of parallel conduct, the AC gives no factual substance to base a plausible inference that this lone toll record satisfies Plaintiffs burden under Rule 8(a) to "delineate[] to some

sufficiently specific degree that a defendant purposefully joined and participated in the conspiracy." *Id.* at 483 (citations omitted).

The AC also fails to plausibly allege Grauso's participation in price fixing while at Glenmark. The AC identifies the alleged Glenmark contacts:

> In addition to CW-5 [who left Glenmark just before Grauso joined], Defendant Patel also had other contacts at Glenmark--which is why Glenmark did not fall dramatically in the quality competitor rankings when CVW-5 left the company. For instance, Patel exchanged 44 phone calls or text messages with J.C., a sales and marketing executive at Glenmark, between May 2013 and July 2015. Similarly, Defendant Patel exchanged 36 calls with Defendant Jim Brown, the Vice President of Sales at Glenmark, between August 2013 and October 2014. As discussed more fully above, Defendant Patel continued to coordinate with JC and Defendant Brown throughout 2014 on several drugs, including **Kariva and Gabapentin Tablets**--demonstrating that Glenmark remained a quality competitor even after CW-5 left the company." AC ¶972. (emphasis added).

There is no allegation regarding Grauso, yet Count-Twenty Four alleges Grauso colluded on Kariva and Gabapentin. Again, according to the AC, "Glenmark was one of Teva's highest-ranked competitors primarily because Defendant Patel had very significant relationships with several different individuals at Glenmark, including CW-5, Defendant Brown and J.C., a sales and marketing executive at Glenmark." AC ¶ 594. Grauso's absence is telling.

The repeated absence of Grauso from Plaintiffs' enumeration of the alleged conspiratorial contacts at Glenmark is the pleading equivalent of a "Kinsley Gaffe" --when a politician reveals some truth that the politician did not intend to admit.[6] The specific factual allegations in AC that identify Teva's alleged conspirators renders even more implausible the conclusory allegations that Grauso participated in the alleged collusion. See, e.g., *Schuylkill Energy Res. v. Pa. Power Light*., 113 F.3d 405, 417 (3d Cir. 1997) (in affirming decision

[6] The term comes from journalist Michael Kinsley who said, "A gaffe is when a politician tells the truth – some obvious truth he isn't supposed to say." See https://en.wikipedia.org/wiki/Political_gaffe#Kinsley_gaffe.

granting motion to dismiss, finding that the court was not required to accept as true internally contradictory allegations).

**B. No Factual Allegations Plausibly Suggest Grauso Participated in a Market Allocation Scheme**

Count Twenty-Four the AC alleges Grauso participated in a market allocation scheme on three drugs: Desogestrel/Ethinyl Estradiol Tablets (Kariva), Gabapentin Tablets, and Lamivudine/Zidovudine (generic Combivir). AC ¶ 1321. There are insufficient factual allegations from which to plausibly infer that Grauso colluded on any of these drugs.

**Kariva:** As noted, the paragraphs alleging collusion on Kariva specifically identify two other Glenmark executives as Teva's alleged conspiratorial contacts. Despite Grauso's absence as a contact, the States point to a toll record from Patel to Grauso of 0:00:00, characterize it as a "communication" and infer Grauso colluded on Kariva. AC. ¶ 490; Opp. Mem. at 32. This is not a reasonable inference. Dismissal is warranted on this drug.

**Gabapentin:** *The AC contains no allegation whatsoever*, not even an unconnected toll record, alleging how Grauso participated in a fix on this drug. The AC identifies Teva's alleged Glenmark contacts on Gabapentin. *Id.* ¶ 494. The contacts did not include Grauso. Dismissal is warranted on this drug.

**Combivir:** Under the heading "Teva/Lupin" the AC alleges collusion in May 2012 on Combivir. ¶¶ 257-269. While there are toll records of Grauso calls during this period of time, the States fail to allege any parallel conduct by Grauso/Aurobindo for which Grauso's toll records are a "plus factor." The AC never alleges that Aurobindo entered the market for Combivir. This is a prerequisite to determining whether any conduct was "parallel conduct." And since there is no allegation Aurobindo entered the market, there is likewise no allegation

what customers were allocated to Aurobindo or how Aurobindo's pricing was parallel conduct. In short, without parallel conduct, there is no inference to be drawn from toll records.

The States implicitly recognize that the Combivir allegations against Grauso are deficient. The Opp. Mem. at 31 states that the competitors reached an agreement and "the new entrants (Lupin and Aurobindo) were able to enter the market without significantly eroding the price…." The AC contains no such allegation. Instead, the AC ¶ 269 actually alleges, "Lupin was able to enter the market and obtain more than a 30% market share without significantly eroding the price…" There is no similar allegation regarding Aurobindo. There is no allegation Grauso took any action in parallel with Teva or Lupin on Combivir.

There is also no factual allegation of what Grauso said or was said to him. Plaintiffs do not show but simply assert that "During this four-day period, the three individuals [including Mr. Grauso] were negotiating and discussing the specific customers that Teva would concede and retain in order to make Lupin and Aurobindo's entry into the generic Combivir market as seamless as possible." AC ¶ 264. This conclusory allegation is based on toll records which do not contain any content. The only Teva-Aurobindo call with any alleged content about Combivir was a call between Teva and their "good friend" at Aurobindo" who is identified as "RC." *Id.* at ¶ 261. RC had previously worked at Teva. Even though RC was a "good friend" and a contact at Aurobindo, his phone calls are conspicuously absent from Plaintiffs' phone chart.

The allegation of collusion on Combivir in May 2012 is well outside the statute of limitations. Even if the AC can be generously read to plausibly allege that Grauso colluded on

this one drug, this one episode is insufficient to allege that he participated in an "overarching conspiracy" which, in any event, the AC does not allege.[7]

**IV. The Obstruction Allegation Highlights the Misuse of the Toll Records**

Under the heading "Obstruction of Justice" Plaintiffs state "[m]any of the Defendants have been coordinating consistently to obstruct the ongoing government investigation…." AC ¶1131. Grauso is named as an alleged obstructor. This is a serious allegation. But the AC alleges no facts from which it can be plausibly inferred Grauso obstructed justice. Plaintiffs' Opp. Mem. at 56 bases the obstruction on toll records between Grauso and Defendant Aprahamian at the same time Defendants' attorneys had conversations with the States. Toll records do not speak, leave a record of what was said or provide any more information than a call between two people was connected on a certain/date/time. This is another example of the States' "per se" use of toll records--they contend the toll records raise a plausible inference that the conversation was obstruction. From the toll records Plaintiffs conclude that the AC "describe[es] Grauso's coordination with Aprahamian." *Id.* The AC does no such thing.[8] Tolls records do not describe coordination to obstruct justice. What did they talk about? How did they obstruct? What did they coordinate? Toll records cannot speak to this because they do not speak at all. Grauso may have said he is cooperating, being completely truthful/nothing to hide, or not have spoken about this matter at all. While casting the aspersion that Grauso obstructed justice, the States do not allege that Grauso and Aprahamian encouraged each other to lie, cover up or

---

[7] *See In re German Automotive Manufacturers Antitrust Litig.*, 2020 WL 1542373, at *4-5 (N.D. Cal. Mar. 31, 2020) ("While the [narrow] agreements are plausibly alleged, Plaintiffs do not adequately plead the existence of a broader conspiracy….").

[8] "It is an axiom of antitrust law [] that merely saying so does not make it so for pleading-sufficiency purposes." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l Inc.* 602 F.3d 237, 258 (3d Cir. 2010).

obstruct in any way.[9] Plaintiffs' misuse of these tolls records as describing coordination in response to the States investigation by Grauso/Aprahamian isn't a logical inference; it is pure and prejudicial speculation.[10] The Third Circuit has stated "conversations between [the Defendants] do not alone raise an inference of agreement." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228 (3d Cir. 2011). Neither do they give rise to an inference of the serious allegation of obstruction. The "obstruction" allegation is another example of where, when you strip away the States nefarious speculation about *what might have been said*, there is no factual material to support the inference the States ask the Court to draw.

## V. The States' Claims Against Grauso Are Untimely

Grauso is charged in Count Twenty-Four with collusion on 3 drugs. While each episode of collusion is deficient as matter of pleading, the claims are also time-barred. Incredibly, the States describe a May 19, 2014 toll record of 0:00:00 as a "conspiratorial communication" Opp. Mem. at 58, but in any event, the toll record is well outside the statute of limitations. The alleged obstruction is an unfortunate and failed effort by the States to cure their statute of limitations problem that warrants dismissal of the case against Grauso.[11] Fraudulent concealment was not pled, as it should not have been given that the States' opened their investigation in July 2004. Grauso is not alleged to have participated in the "overarching conspiracy" and there are no allegations to support a plausible inference that he knowingly participated in such a conspiracy.[12]

---

[9] Grauso and Aprahamian are not even alleged to have colluded with one another on any drug.

[10] In ¶1067, the AC alleges that Grauso was still with Glenmark at the time of the filing of the Complaint. This is undoubtedly an honest error but it is wrong. Grauso left Glenmark in August 2017.

[11] The States' also point to the number of toll records Grauso has, some of which are in the statutory period, but make no attempt of factual allegations that these were conspiratorial calls. The majority of the calls were to his good friend Dave Berthold.

[12] Conclusory, collective language is too convenient, too undisciplined and too unfocused in light of exposure to litigation expense….that are so great in antitrust (and other cases." *In re Processed Egg Prod. Antitrust Litig.*, 821

## V. Conclusion

*Twombly* empowered district courts "to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558. For all the foregoing reasons set forth in Grauso' opening brief and above, the Amended Complaint should be dismissed against James Grauso in its entirety with prejudice.[13]

Respectfully submitted,

/s/ Robert E. Connolly

Robert E. Connolly
Law Office of Robert Connolly
301 N. Palm Canyon Drive
Palm Springs, California 92262
Pennsylvania Bar No. 32341
bob@reconnollylaw.com
(215) 219-4418

F. Supp. 2d 709, 721 (E.D. Pa. 2011). Plaintiffs must allege "particularized facts that each Defendant undertook certain acts, or engaged in certain conduct, when viewed in the context of the entire SAC, that plausibly suggest that particular Defendant's embrace of that overarching conspiracy." *Id.* at 721.

[13] "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017) (citation omitted).

**CERTIFICATE OF SERVICE**

I, Robert E. Connolly, hereby certify that Defendant James Grauso's Reply Brief in Support of Motion to Dismiss the Plaintiff States' Amended Complaint was filed via the Court's electronic filing system on February 26, 2021 and was served on all counsel of record via electronic service.

*/s/ Robert E. Connolly*

Robert E. Connolly