# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*State of Connecticut, et al., v. Teva Pharmaceuticals USA, Inc., et al.* | No. 19-CV-2407 |

**REPLY IN SUPPORT OF DEFENDANT
KONSTANTIN OSTAFICIUK'S MOTION TO DISMISS
<u>THE AMENDED COMPLAINT</u>**

David Schertler
Schertler Onorato Mead & Sears, LLP
901 New York Avenue, N.W.
Suite 500 West
Washington, DC 20001
(202) 628-4199
(202) 628-4177 (fax)
dschertler@schertlerlaw.com

*Attorney for Defendant Konstantin Ostaficiuk*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. ii

INTRODUCTION ..................................................................................................................................1

ARGUMENT ...........................................................................................................................................3

    I.     Plaintiffs' allegations against Mr. Ostaficiuk do not cross the line from conceivable to plausible ..................................................................................................3

          A.  The Amended Complaint itself presents "obvious alternative explanations" for the factual allegations involving Mr. Ostaficiuk ..................................................3

          B.  Plaintiffs do not demonstrate the plausibility of their allegation that Mr. Ostaficiuk entered an illegal agreement ........................................................................6

          C.  The allegations regarding generic Combivir are independently deficient ...............8

    II.    Plaintiffs' claims against Mr. Ostaficiuk are time-barred ...............................................8

CONCLUSION .......................................................................................................................................9

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 2-4, 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................... 2-5, 8

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ...................................................... 6

*Harold Friedman, Inc. v. Thorofare Markets, Inc.*, 587 F.2d 127 (3d Cir. 1978) ......................... 9

*In re Allergan ERISA Litig.*, 975 F.3d 348 (3d Cir. 2020) ........................................................ 2, 3

*In re Baby Food Antitrust Litig.*, 166 F.3d 112 (3d Cir. 1999) .............................................. 3, 5, 6

*In re Blood Reagents Antitrust Litig.*, 266 F. Supp. 3d 750 (E.D. Pa. 2017) ............................ 5, 7

*In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404 (E.D. Pa. 2018) .................. 3

*In re Generic Pharm. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477 (E.D. Pa. 2019) .................. 2

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) ....................................... 2, 3, 5

*Venture Tech., Inc. v. Nat'l Fuel Gas Co.*, 685 F.2d 41 (2d Cir. 1982) ........................................ 6

<u>Statutes</u>

15 U.S.C. § 15b ............................................................................................................................. 9

<u>Rules</u>

Federal Rule of Civil Procedure 12(b)(6) .................................................................................... 2

## INTRODUCTION

The scant 14 paragraphs of the Amended Complaint ("AC") that pertain to Konstantin Ostaficiuk do not plausibly suggest that Mr. Ostaficiuk entered into an illegal agreement with Teva Pharmaceuticals ("Teva") or any other competitor to allocate markets for Raloxifene or generic Combivir.[1]  Camber Pharmaceuticals ("Camber"), the company for which Mr. Ostaficiuk serves as President, is approximately 2% the size of Teva and was "one of the lowest ranked of all of Teva's competitors" (AC ¶ 1085).  The AC alleges that:

- Upon its entry to the Raloxifene market in September 2014, Camber competed for and took one of Teva's large Raloxifene customers, Econdisc.  AC ¶¶ 1093, 1095, 1103.

- That same month, Camber "gather[ed] market intelligence" on other potential Raloxifene customers for which it could compete.  AC ¶ 1100.

- David Rekenthaler of Teva expressed to Mr. Ostaficiuk "that Teva did not want Camber challenging for any more of its customers[.]" AC ¶ 1102.

- Mr. Ostaficiuk informed his Camber colleagues that Teva was "upset." AC ¶ 1102.

- Mr. Ostaficiuk directed Camber colleagues to refrain, for the time being, from further challenges to Teva and Lupin customer accounts so as not to "antagonize either of them and start a war . . .." AC ¶ 1103.

- By mid-December 2014, Camber was "gather[ing] information" for a potential additional incursion on one of Teva's Raloxifene customers to take advantage of a Teva supply shortage.  AC ¶ 1106.

---

[1] Plaintiffs concede that their allegations involving Mr. Ostaficiuk relate solely to alleged "market allocations for Raloxifene and generic Combivir, *not coordinated price increases*." *Plaintiff States' Consolidated Memorandum in Opposition to Various Individual Defendants' Motions to Dismiss the Plaintiff States' Amended Complaint* ("Pl. Opp.") at 41 (emphasis added).  This concession underscores the implausibility of Plaintiffs' allegations against Mr. Ostaficiuk.  On the one hand, Plaintiffs allege that "[t]he concept of 'fair share' and price increases went hand in hand." AC ¶ 1082.  As to Mr. Ostaficiuk, however, they disaggregate the two.  As shown below, Plaintiffs' allegations against Mr. Ostaficiuk defy their own theory of the case.  See *infra* p. 4.  On that basis alone, they are implausible.

As Mr. Ostaficiuk demonstrated in his motion to dismiss and as common sense confirms, these allegations do not plausibly support a reasonable inference that Mr. Ostaficiuk entered into an illegal agreement. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (evaluating sufficiency of complaint is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The "obvious alternative explanation" is that Mr. Ostaficiuk made independent business decisions in a market in which his company faced much larger competitors. *See In re Ins. Brokerage Antitrust Litigation*, 618 F.3d 300, 322-23 (3d Cir. 2010) ("allegations of conspiracy are deficient if there are 'obvious alternative explanation[s]' for the facts alleged") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007)).

Plaintiffs' Opposition fails to address the crux of Mr. Ostaficiuk's argument that the facts alleged in the AC "[do] not plausibly suggest an illicit accord because [they are] not only compatible with, but indeed [are] more likely explained by, lawful, unchoreographed free-market behavior." *Iqbal*, 556 U.S. at 680. Plaintiffs instead rehash allegations of the AC, embellish them with liberal use of conclusory "c" words ("collude," "collaborate," "cartel," and "conspiracy"), and declare their pleading burden satisfied. Pl. Opp. at 36-39. Conclusory, formulaic assertions of illegality pled in a complaint are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. *See Ins. Brokerage*, 618 F.3d at 326; *In re Allergan ERISA Litig.*, 975 F.3d 348, 355 (3d Cir. 2020); *In re Generic Pharm. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477, 484 (E.D. Pa. 2019). They warrant no more credence in an adversarial court pleading. The Court must look solely to the factual allegations set forth in the AC.[2] Those allegations do not plausibly suggest that "*an*

---

[2] Plaintiffs' Opposition alludes to "evidence" that Plaintiffs claim to have discovered since the filing of the AC. Pl. Opp. at 39 n.10. Plaintiffs have not sought leave to further amend the AC, and they concede that their un-pled allegations are irrelevant to the Court's adjudication of Mr. Ostaficiuk's motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id*.

*agreement was made"* by Mr. Ostaficiuk. *Twombly*, 550 U.S. at 556 (emphasis added). They plausibly suggest the opposite – that Camber and Mr. Ostaficiuk competed vigorously, while engaging in permissible "strategic planning as to whether and when to pursue particular business opportunities." *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 127 (3d Cir. 1999). Mr. Ostaficiuk (Count 30) should be dismissed from this antitrust action with prejudice.

## ARGUMENT

I. Plaintiffs' allegations against Mr. Ostaficiuk do not cross the line from conceivable to plausible.

To survive dismissal, the AC must contain factual allegations that cross "the line from conceivable to plausible" for each defendant. *Twombly*, 550 U.S. at 570. "Considered holistically," the factual allegations must suggest plausibly – and not just raise a mere *possibility* – that Mr. Ostaficiuk "actually joined and participated in" a conspiracy to allocate markets for Raloxifene and generic Combivir. *Allergan*, 975 F.3d at 354; *Iqbal*, 556 U.S. at 678; *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 438 (E.D. Pa. 2018). If there are "obvious alternative explanations" for the facts alleged against Mr. Ostaficiuk, then the "allegations of conspiracy are deficient." *Ins. Brokerage*, 618 F.3d at 322-23.

A. The Amended Complaint itself presents "obvious alternative explanations" for the factual allegations involving Mr. Ostaficiuk.

The Court need look no further than the AC itself to find "obvious alternative explanations" for the facts alleged against Mr. Ostaficiuk. As Mr. Ostaficiuk emphasized in his motion to dismiss, Plaintiffs allege that Camber was consistently "*one of the lowest ranked of all of Teva's competitors*" in Teva's system for rating potential collusion partners. AC ¶ 1085 (emphasis added). Throughout the AC, Plaintiffs' allegations showcase Teva's ranking system as the playbill for the cast of the alleged "overarching conspiracy," *i.e.*, "an agreed-upon code that each

3

competitor is entitled to its 'fair share' of the market" (AC ¶ 116) and "will not seek to compete or take advantage of a competitor's price increase by bidding a lower price to take that business" (AC ¶ 136).  The AC alleges that adjustments to the list over time "demonstrate that Teva's quality competitor rankings were, in reality, a list of co-conspirators that Teva could trust to adhere to the illegal agreements."  AC ¶ 916.

In their opposition, Plaintiffs note that as part of the allegations against Mr. Ostaficiuk, the AC carves out an exception to the central theory of their lawsuit that "high quality competitors" were the ones that could be "trusted" to adhere to the conspiracy (AC ¶ 916) and that, in that conspiracy, "[t]he concept of 'fair share' and price increases went hand in hand" (AC ¶ 1082). Pl. Opp. at 41-42.  Indeed, more than 300 pages and 1000 paragraphs into the AC, the AC zigzags and alleges that even "low quality competitors" that could not be trusted to lead or follow price increases "consistently complied with the principles of 'fair share' and 'playing nice in the sandbox.'"  AC ¶ 1084.  According to the AC, though, this alleged exception is a subset of just one:  Camber and Mr. Ostaficiuk.  Not a single additional company or individual is identified in this section of the AC.  In other words, Plaintiffs retrofit their entire theory of the case to wedge Mr. Ostaficiuk – but no one else – into their conspiracy allegations.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  Here, the stark *inconsistency* between the allegations against Mr. Ostaficiuk and the conspiracy alleged in the AC as a whole is reason enough to deem the allegations against Mr. Ostaficiuk "implausible."

Nor can Plaintiffs save the AC from dismissal by myopically focusing on an internal September 2014 Camber email in which Mr. Ostaficiuk informs his colleagues that Teva was

4

"upset" about Camber targeting a large Teva customer and that attempts to take more customers could "antagonize" Teva and "start a war" (AC ¶¶ 1102, 1103). Pl. Opp. at 38. The "obvious alternative explanation" for that email is that, faced with a larger competitor "upset" because Camber had stolen its large customer (AC ¶ 1102), Mr. Ostaficiuk rationally adjusted Camber's business strategy to avoid further "antagonizing" the industry behemoths – at least temporarily until December 2014, when he "optimistically, but cautiously" instructed a colleague to "gather information" regarding another Teva Raloxifene client in need of a new supplier (AC ¶ 1106). Plaintiffs fail to meaningfully rebut case law cited in Mr. Ostaficiuk's motion to dismiss establishing that this constitutes permissible "strategic planning as to whether and when to pursue particular business opportunities" and thus does not state a plausible antitrust claim against Mr. Ostaficiuk. *See Baby Food*, 166 F.3d at 127; *see also In re Blood Reagents Antitrust Litig.*, 266 F. Supp. 3d 750, 783 (E.D. Pa. 2017) (finding that defendant's expressed concern with "upsetting" a competitor and "averting price wars" did "not raise an inference of collusion").[3]

---

[3] Plaintiffs sweep aside, as "inapplicable," *Baby Food* and other summary-judgment stage case law addressing the elements of Sherman Act liability, the distinction between direct and circumstantial evidence of Sherman Act liability, and inferences that can or cannot reasonably be drawn from evidence under the Sherman Act. Pl. Opp. at 40 & n.11. Plaintiffs' approach sidesteps their burden to respond to defense arguments, but it is wrong as a matter of law. Mr. Ostaficiuk does not suggest that this case law alters the "plausibility" standard that applies to his motion to dismiss. Rather, in evaluating the sufficiency of the AC under the plausibility standard, the Court must consider whether there are "obvious alternative explanations" – *i.e.*, explanations other than antitrust conspiracy – for those allegations. *See Ins. Brokerage*, 618 F.3d at 322-23. Here, as in *Twombly*, "the question of the sufficiency of the complaint . . . turn[s] largely on the doctrinal fact that antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case." *Ins. Brokerage*, 618 F.3d at 320 n.18 (internal quotation marks and citation omitted). Antitrust case law describing that "range of permissible inferences" is therefore relevant to the Court's evaluation of the AC. *See id.* at 322 ("*Twombly* aligns the pleading standard with the summary judgment standard in at least one important way" by requiring "a showing at both stages . . . of something plausibly suggestive of (not merely consistent with) agreement" (internal quotation marks, brackets, and citations omitted)).

5

B. Plaintiffs do not demonstrate the plausibility of their allegation that Mr. Ostaficiuk entered an illegal agreement.

To defend the plausibility of their allegations against Mr. Ostaficiuk, Plaintiffs claim that Mr. Ostaficiuk was "a frequent collaborator with competitors." Pl. Opp. at 36. By this, they mean only that Mr. Ostaficiuk communicated by telephone with other executives in his industry and attended two industry events in 2014 – a dinner and a golf trip. *Id*. Mere "communications between competitors do not permit an inference of an agreement[,]" and Plaintiffs offer no factual basis whatsoever for their claim that Mr. Ostaficiuk's communications constituted "collaboration," much less that they "r[o]se to the level of an agreement, tacit or otherwise." *See Baby Food*, 166 F.3d at 126 (internal quotation marks and citation omitted).[4] In fact, the only telephone communication for which the AC alleges content is one in which Mr. Rekenthaler allegedly "expressed to Defendant Ostaficiuk that Teva did not want Camber challenging for any more of its customers, on Raloxifene or generic Combivir." AC ¶ 1102. That sounds like intimidation, not collaboration. That alleged message, in both substance and tone, also renders implausible

---

[4] Plaintiffs take issue with Mr. Ostaficiuk's prior citation of *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011), for the proposition that conversations between defendants, standing alone, do not raise an inference of an illegal agreement. Pl. Opp. at 40-41. Plaintiffs do not appear to contest the validity of that proposition, but they claim that *Burtch* recites it only in the context of a special rule regarding creditworthiness. *Id*. (citing *Burtch*, 662 F.3d at 222). Plaintiffs' "gotcha" drama is both irrelevant and wrong. On the page of *Burtch* that Mr. Ostaficiuk cited (*Burtch*, 662 F.3d at 228), the Third Circuit supported its statement regarding the failure of conversations alone to raise an inference of an agreement with a citation to *Venture Tech., Inc. v. Nat'l Fuel Gas Co.*, 685 F.2d 41 (2d Cir. 1982), in which the Second Circuit stated, outside any special "creditworthiness" context, that "frequent meetings between the alleged conspirators . . . will not sustain a plaintiff's burden absent evidence which would permit the inference that those close ties led to an illegal agreement." *Id*. at 45 (internal quotations marks and citation omitted). Incidentally, *Venture Tech.* is one of the cases that Plaintiffs dismiss as "inapplicable," because it evaluated the sufficiency of trial evidence rather than the plausibility of a complaint. Pl. Opp. at 40 n.11. The fact that the Third Circuit favorably cited *Venture Tech.* in upholding dismissal of the complaint in *Burtch* demonstrates, once again, that antitrust case law outside the motion-to-dismiss context is relevant to evaluating the adequacy of the AC even though distinct standards of proof apply in the various settings. See *supra* note 3.

Plaintiffs' claim that a Kentucky golf outing a week or so earlier teed off any "collusive" or "collaborative" relationship between Mr. Ostaficiuk and Mr. Rekenthaler.  Pl. Opp. at 36-37.

In response to Mr. Ostaficiuk's argument that the factual allegations of the AC – stripped of conclusory labels – demonstrate that Mr. Ostaficiuk operated Camber as an upstart competitor to Teva rather than as a party to any illegal agreement, Plaintiffs note that "the use of cover bids was a common tactic used by Teva and other Defendants to feign the appearance of competition."  Pl. Opp. at 44.  But the AC contains no allegation of any "cover bid" – *i.e.*, a bid intended to be unsuccessful – involving Camber.  For Camber, there was allegedly a *successful* Raloxifene bid (for Econdisc) in September 2014 (AC ¶ 1103), a warning from Teva not to "challenge" for additional Teva customers (AC ¶ 1102), an unfounded rumor of another Raloxifene bid (AC ¶¶ 1104-05), and a December 2014 directive by Mr. Ostaficiuk to "gather information" regarding a potential new Raloxifene bid (AC ¶ 1106).  Even assuming the truth of Plaintiffs' suggestion that Mr. Rekenthaler tried to get Mr. Ostaficiuk to enter a "fair share" conspiracy and that Teva submitted a "cover bid" of some sort as an incentive, the AC contains no factual allegations that plausibly show that Mr. Ostaficiuk *agreed to participate in that alleged conspiracy*.  The "obvious alternative explanation" is that Mr. Ostaficiuk paused Camber's efforts to challenge Teva's business to let the dust settle but, by December 2014, was preparing to resume those efforts by "go[ing] fishing and gather[ing] information before we commit."  AC ¶ 1106.[5]  Because Plaintiffs

---

[5] With respect to this internal Camber email exchange, Plaintiffs claim that a Camber employee's observation that "fair share only applies when there is not supply constraints" (AC ¶ 1106) was a "suggestion" that Mr. Ostaficiuk "had a 'fair share' agreement with Teva." Pl. Opp. at 39. That interpretation is implausible. As explained more fully in Mr. Ostaficiuk's motion to dismiss, the email exchange, viewed in its entirety, does not remotely suggest that an "agreement" was in place. Instead, it is another example of Camber planning its competitive strategy mindful of how its larger competitors could respond, *i.e.*, with awareness of the "nature of the [] market." *See Blood Reagents*, 266 F. Supp. 3d at 783.

7

"have not nudged their claims [against Mr. Ostaficiuk] across the line from conceivable to plausible," he should be dismissed from this litigation. *See Twombly*, 550 U.S. at 570.

  C. The allegations regarding generic Combivir are independently deficient.

For the reasons set forth above and in Mr. Ostaficiuk's motion to dismiss, the AC does not plausibly suggest that Mr. Ostaficiuk entered an illegal agreement to allocate markets for Raloxifene or any drug. Plaintiffs' factual allegations specific to generic Combivir suffer an additional defect: They are not only implausible, but also virtually invisible. Stripped of conclusory allegations that "are not entitled to be assumed true," *Iqbal*, 556 U.S. at 681, the AC alleges no facts to support their claim that Mr. Ostaficiuk agreed to allocate the market for Combivir. Rather, the AC relies largely on bald and unspecific assertions that Combivir was addressed in phone calls Mr. Ostaficiuk had with executives at two competitors (AC ¶¶ 1098, 1102).[6] "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). The AC's bare-bones allegations relating to Mr. Ostaficiuk and Combivir stall at the speculative level and require dismissal.

  II. Plaintiffs' claims against Mr. Ostaficiuk are time-barred.

Count 30 must also be dismissed as untimely. The latest allegation against Mr. Ostaficiuk is an email exchange in December 2014. Camber is not a named corporate defendant alleged to have participated in any "overarching conspiracy," nor does Count 30 allege that Mr. Ostaficiuk participated in an "overarching conspiracy." The applicable statute of limitations therefore expired

---

[6] Otherwise, with respect to Combivir, the AC alleges only a single instance where, in response to a Camber employee reporting to Mr. Ostaficiuk that Camber was not seeking certain Teva and Lupin customer accounts, Mr. Ostaficiuk responded that "[w]e don't want to antagonize either of them and start a war." AC ¶ 1103. As explained above, this exchange reflects permissible strategic planning as to whether and when to pursue particular business opportunities and does not support an inference of wrongdoing. See *supra* pp. 4-5.

four years after Mr. Ostaficiuk took an action that allegedly harmed Plaintiffs, *i.e.*, in December 2018. *See* 15 U.S.C. § 15(b); *Harold Friedman, Inc. v. Thorofare Markets, Inc.*, 587 F.2d 127, 137 (3d Cir. 1978). Because Plaintiffs did not file their Complaint until May 2019, it is untimely as to Mr. Ostaficiuk.

## CONCLUSION

For the reasons set forth above and any others that appear to the Court, Mr. Ostaficiuk should be dismissed from this litigation with prejudice. Dismissal should apply to all claims against Mr. Ostaficiuk, *i.e.*, federal law claims as well as derivate state law antitrust and consumer protection claims.

February 26, 2021                                  Respectfully submitted,


*/s/ David Schertler*
David Schertler
Schertler Onorato Mead & Sears, LLP
901 New York Avenue, N.W.
Suite 500 West
Washington, DC 20001
(202) 628-4199
(202) 628-4177 (fax)
dschertler@schertlerlaw.com

*Attorney for Defendant Konstantin Ostaficiuk*

9

## CERTIFICATE OF SERVICE

I, David Schertler, hereby certify that Defendant Konstantin Ostaficiuk's Reply in Support of Motion to Dismiss Plaintiffs' Amended Complaint was filed via the Court's electronic filing system this 26th day of February, 2021.

                                          */s/ David Schertler*
                                          David Schertler