### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | : : | MDL NO. 2724 16-MD-2724 |
| | : | |
| | : | HON. CYNTHIA M. RUFE |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | Civil Action No.: 19-cv-2407-CMR |
| *State of Connecticut, et al., v.* | : | |
| *Teva Pharmaceuticals USA Inc., et al.* | : | |
| | : | |

### DEFENDANT DAVID REKENTHALER'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE STATES' AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    REKENTHALER WITHDREW FROM THE ALLEGED CONSPIRACY AND THE STATES FAIL TO REBUT THIS SHOWING. ................................. 2

    A.    Rekenthaler Established A Prima Facie Showing Of Withdrawal. ........... 3

    B.    The States Cannot Meet Their Burden To Prove That Rekenthaler Did Not Withdraw From The Alleged Conspiracy.................................... 3

        1.    Contrary To The States' Assertion, Rekenthaler Did Not Leave Teva To Work At Another Allegedly Conspiring Company. ..................................................................................... 4

        2.    The States Err In Contending That Rekenthaler Participated In Any Alleged Conspiracy After Leaving Teva. ......................... 5

II.    THE STATES' FRAUDULENT CONCEALMENT ARGUMENTS FAIL. ............................................................................................................. 8

CONCLUSION..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bethlehem Steel Corp. v. Fischbach & Moore, Inc.*,
  641 F. Supp. 271 (E.D. Pa. 1986) ...........................................................................10

*In re Elec. Carbon Prods. Antitrust Litig.*,
  333 F. Supp. 2d 303 (D.N.J. 2004) ..........................................................................10

*In re Fasteners Antitrust Litig.*,
  No. 08-md-1912, 2011 WL 3563989 (E.D. Pa. Aug. 12, 2011)...............................10

*Food Lion LLC v. Dean Foods Co.*,
  No. 2:07-CV-188, 2016 WL 5951792 (E.D. Tenn. Jan. 19, 2016) ...........................3

*Forbes v. Eagleson*,
  228 F.3d 471 (3d Cir. 2000)....................................................................................8, 9

*Grunewald v. United States*,
  353 U.S. 391 (1957)................................................................................................5, 6

*In re High Fructose Corn Syrup Antitrust Litig.*,
  293 F. Supp. 2d 854 (C.D. Ill. 2003) ........................................................................5

*In re Magnesium Oxide Antitrust Litig.*,
  No. CIV. 10-5943 DRD, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ......................10

*Pension Benefit Gaur. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993).....................................................................................4

*Pope v. Bond*,
  641 F. Supp. 489 (D.D.C. 1986) ...............................................................................5

*In re Processed Egg Prods. Antitrust Litig.*,
  No. 08-md-02002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011)......................7, 8, 9

*In re Publ'n Paper Antitrust Litig.*,
  No. 304MD1631SRU, 2005 WL 2175139 (D. Conn. Sept. 7, 2005)......................10

*Pyramid Sec. Ltd. v. IB Res., Inc.*,
  924 F.2d 1114 (D.C. Cir. 1991) ................................................................................6

*Rock the Vote v. Trump*,
  No. 20-cv-06021-WHO, 2020 WL 6342927 (N.D. Cal. Oct. 29, 2020) ..................4

**TABLE OF AUTHORITIES**
(continued)

**Page**

*SD3 II LLC v. Black & Decker (U.S.) Inc.*,
  888 F.3d 98 (4th Cir. 2018) ......................................................................................9

*United States v. Antar*,
  53 F.3d 568 (3d Cir. 1995)......................................................................................2, 3

*United States v. Bornman*,
  559 F.3d 150 (3d Cir. 2009)......................................................................................6

*Young v. Greystar Real Estate Partners, LLC*,
  No. 3:18-cv-02149-BEN-MSB, 2019 WL 4169889 (S.D. Cal. Sept. 3, 2019) ........................5

*Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988)....................................................................................4, 7

**Other Authorities**

Fed. R. Civ. P. 9 ..................................................................................................7, 8, 9

## INTRODUCTION

The States' claims against Defendant David Rekenthaler should be dismissed as time-barred and nothing in the States' opposition undercuts that conclusion.  The States' own Amended Complaint (the "Complaint" or "AC") alleges that Rekenthaler left Teva in April 2015, and they use his departure as the end point for his communications with other Defendants.[1] Rather than acknowledging that Rekenthaler withdrew from any alleged conspiracy when he left Teva, as their Complaint suggests, the States offer a litany of arguments that lack factual or legal support.  For instance, they pluck a single paragraph—the only one of the more than 1,700 paragraphs in the Complaint that mentions Rekenthaler's conduct after his departure from Teva—and recast supposed *post-conspiracy* conduct as conduct *in furtherance of* the conspiracy. They also flatly mischaracterize the burden shifting framework from *United States v. Antar*, 53 F.3d 568 (3d Cir. 1995), and, to top it off, improperly rely on a fraudulent concealment theory to try to toll the Sherman Act's four-year statute of limitations.

In short, the States had to file their initial complaint as to Rekenthaler by April 2019 but waited until May 10, 2019 to do so.  This delay is fatal to their claims, and their attempt to rescue their time-barred claims is unavailing.  The Complaint should be dismissed with prejudice as to Rekenthaler.[2]

---

[1] AC ¶¶ 585 (describing the number of calls between Rekenthaler and Defendant Nesta from December 2013 "through the time that Defendant Rekenthaler left Teva in April, 2015"), 589 (describing the number of calls and texts between Rekenthaler and Defendant Falkin from August 7, 2013 "through the date that Rekenthaler left Teva in April, 2015").

[2] The States cryptically admonish Rekenthaler because he supposedly did not "further develop" arguments in the Defendants' jointly filed motions.  To be clear, as Rekenthaler unequivocally asserted in his motion, he adopts Defendants' arguments that the claims against him must also be dismissed because (1) the States lack standing to bring their federal law claims, (2) the state-law claims fail for a variety of reasons, and (3) the States have engaged in impermissible claim splitting.  *See* Def. Rekenthaler's Mem. In Support of Mot. Dismiss at 7-8, ECF No. 188-1 (hereafter "Mem.").  To the extent the States contend that Rekenthaler is not entitled to

## ARGUMENT

## I.   REKENTHALER WITHDREW FROM THE ALLEGED CONSPIRACY AND THE STATES FAIL TO REBUT THIS SHOWING.

In their Opposition, the States do not—and cannot—dispute the well-established proposition that a conspirator is not liable for the acts of his or her co-conspirators when he or she withdraws from the conspiracy, States' Consol. Opp'n to Various Individual Defs.' Mot. Dismiss at 46-47, ECF No. 208 ("Opp'n"), or that withdrawal may be accomplished by an "abandon[ment of] the enterprise and its goals," *id.* at 47 (citation omitted).  Instead of applying these basic principles, the States twist the holding of *United States v. Antar*, 53 F.3d 568 (3d Cir. 1995), a seminal case upon which both the States and Rekenthaler rely.  They wrongly insist that Rekenthaler must prove that he withdrew from the conspiracy, *including* that he communicated his withdrawal to the authorities or co-conspirators.  Opp'n at 61.  *Antar* says the very opposite, imposing the ultimate burden on the party opposing withdrawal (here, the States):

> if the defendant completely severs his or her relationship with the enterprise, he or she has established a prima facie showing of withdrawal from the conspiracy *without showing any other affirmative act inconsistent with the conspiracy and without giving any further notice to his or her co-conspirators*.  Once the defendant makes this showing, *the burden shifts* to the government either to rebut the defendant's showing or to establish that the defendant continued to participate as a co-conspirator.

53 F.3d at 583 (emphases added).  Thus, under the *Antar* framework, to successfully link Rekenthaler to the alleged conspiracy after April 2015, the States must rebut Rekenthaler's prima

---

incorporate these motions, such an argument is a nonstarter.  Incorporating codefendants' arguments by reference promotes judicial efficiency, particularly in a multi-district litigation of this breadth and scope, and for that reason is well-accepted by this Court and under the rules. *See, e.g.*, *Payton v. Horn*, 49 F. Supp. 2d 791 (E.D. Pa. 1999) (dismissing all claims based on motions to dismiss incorporating by reference other defendants' motions).

facie showing of withdrawal or show that he continued to participate as a co-conspirator.  The States can do neither.

> ### A.      Rekenthaler Established A Prima Facie Showing Of Withdrawal.

Rekenthaler has easily made a prima facie showing of withdrawal.  When Rekenthaler resigned from Teva in April 2015, he completely severed his relationship with the company, as well as the alleged "Teva-centric" conspiracy at the heart of the States' Complaint.  *See* Mem. at 7-8.  Nowhere in the Complaint do the States allege that Rekenthaler continued to receive compensation from Teva, had any continued affiliation with Teva, or had any incentive to stay in the supposed conspiracy.  *Cf. Antar*, 53 F.3d at 583; *see also Food Lion LLC v. Dean Foods Co.*, No. 2:07-CV-188, 2016 WL 5951792, at *3 (E.D. Tenn. Jan. 19, 2016) (allegations of continued financial interest from conspiracy were "completely unavailing" and "nothing more than rank speculation").[3]  In sum, Rekenthaler established that he withdrew from the alleged conspiracy, and the burden shifts to the States to show otherwise.

> ### B.      The States Cannot Meet Their Burden To Prove That Rekenthaler Did Not Withdraw From The Alleged Conspiracy.

The States' efforts to rebut Rekenthaler's withdrawal fail because the States never allege that he left Teva to work for another conspiring company (and, in any event, he never engaged in other conspiratorial acts after leaving Teva).

---

[3] Although Rekenthaler's complete separation from Teva is sufficient to satisfy his burden under *Antar*, his departure from Teva also would have been well known to Rekenthaler's coworkers at Teva, competitors, contacts at customers, and others within the industry, to the extent communication of Rekenthaler's withdrawal could possibly be required.  *Cf.* Opp'n at 61.  The States can hardly dispute the point that others in the industry would have been aware of Rekenthaler's departure from Teva in light of their allegations of a supposed "cozy" generic drugs industry in which everyone knew each other.  *See, e.g.*, AC, Section IV.B.4, ¶¶ 101-114.

1.  <u>Contrary To The States' Assertion, Rekenthaler Did Not Leave Teva To Work At Another Allegedly Conspiring Company.</u>

According to the States, "all Rekenthaler did was go from one member of the conspiracy (Teva) to another member of the conspiracy (Apotex)," and therefore he did not withdraw from the supposed conspiracy.  Opp'n at 61.  The Complaint is devoid of any such assertion.  The States never plead where Rekenthaler worked immediately after he left Teva in April 2015, let alone that he went to work for Apotex or another alleged co-conspirator , as they now argue in their brief.  Put bluntly, the States do not get to amend their complaint by dredging up new (and unfounded) allegations for the first time in their brief opposing Rekenthaler's motion to dismiss.  *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quotations marks and citations omitted)).  The Court should therefore ignore the States' newly minted allegations, which dooms their contention that Rekenthaler remained in the conspiracy based on his immediate post-Teva employment.

The States' bald assertion about Rekenthaler's employement history is even more inexcusable because it is false and again fatal to their argument.  Rekenthaler left Teva to work for over a year at Wilshire Pharmaceuticals, Inc., a company that is not a Defendant, is not alleged to have been involved in the conspiracy, and is not once mentioned in the States' 471-page Complaint.[4]  Rekenthaler could not have continued to participate in and benefit from the

---

[4] *See* David Rekenthaler, LinkedIn, www.linkedin.com/in/david-rekenthaler-5331387a (last visited Feb. 24, 2021).  Rekenthaler respectfully requests that the Court take judicial notice of this employment history because not only is it a matter of public record and is available on a publicly accessible website, but also because the States have incorporated his employment history in the Complaint and their opposition brief yet have mischaracterized it to try to save their time-barred claims.  *See Pension Benefit Gaur. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."); *see also Rock the Vote v. Trump*, No. 20-cv-06021-WHO, 2020 WL 6342927,

alleged price-fixing conspiracy when he left Teva to work at a company that the States agree did

nothing wrong.  *See* Mem. at 7.[5]  Even so, Rekenthaler's later employment at Apotex is entirely

irrelevant because the States' only allegations about Rekenthaler *exclusively* concern his

involvement in the marketing, sale, and pricing of *Teva* products while *at Teva*—not Apotex.

> 2.     The States Err In Contending That Rekenthaler Participated In Any
>        Alleged Conspiracy After Leaving Teva.

Having failed to plead that Rekenthaler engaged in anticompetitive conduct after he left

Teva and within four years of their May 2019 Complaint, the States point to a single

paragraph—of a 1,726-paragraph, 471-page complaint—to try to establish conduct by

Rekenthaler within the statute of limitations.  *See* Opp'n at 60 (citing AC ¶ 1133).  Paragraph

1133, describing telephone calls between Rekenthaler and former Teva employees in June 2016,

falls flat and is insufficient to rebut Rekenthaler's withdrawal from the supposed conspiracy for

at least two reasons.

*First*, as often arises in both criminal and civil cases, alleged post-hoc acts of

concealment distinct from the conspiracy itself, like the calls described in Paragraph 1133,

cannot save time-barred claims.  *See Grunewald v. United States*, 353 U.S. 391, 405-06 (1957)

(explaining that "the acts of covering up [a crime] can by themselves indicate nothing more than

that the conspirators do not wish to be apprehended—a concomitant, certainly, of every crime

---

at *4 n.2 (N.D. Cal. Oct. 29, 2020) (taking judicial notice of "Tweets"); *Young v. Greystar Real Estate Partners, LLC*, No. 3:18-cv-02149-BEN-MSB, 2019 WL 4169889, at *2 (S.D. Cal. Sept. 3, 2019) (taking notice of Facebook and Instagram posts).  Notably, the Complaint also relies on LinkedIn messages.  *See* AC ¶¶ 366, 576.

[5] *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 860-61 (C.D. Ill. 2003) (explaining "an employee's resignation or termination from the conspiring business constitutes an effective withdrawal absent" evidence of "continued participation of acquiescence in the goals of the conspiracy"); *Pope v. Bond*, 641 F. Supp. 489, 496-97 (D.D.C. 1986) (absent allegations of involvement in conspiracy after employees' resignation, "as a matter of law, resignation . . . indicates a complete withdrawal from any conspiracy").

since Cain attempted to conceal the murder of Abel from the Lord"); *United States v. Bornman*, 559 F.3d 150, 153 (3d Cir. 2009) (holding that the object of the conspiracy was enrichment by "corruptly soliciting and accepting payments from contractors" in connection of a government roofing program, so once those payments were solicited and accepted, the "government cannot extend the limitations period by insisting that there was an implicit agreement to conceal the conspiracy"); *Pyramid Sec. Ltd. v. IB Res., Inc.*, 924 F.2d 1114, 1117-18 (D.C. Cir. 1991) (applying *Grunewald* conspiracy concealment analysis to RICO claims).

The foregoing authority is squarely applicable here.  In fact, the States' Complaint (as opposed to their opposition brief) does not plead that Rekenthaler's calls were overt acts in furtherance of the conspiracy.  Rather, under the Complaint's own terms, these calls are supposedly evidence of consciousness of guilt.  Section IV.C of the Complaint, entitled "The Illegal Schemes," sets forth the alleged conspiracy.  This section, spanning 956 paragraphs over 287 pages, broken down into nine subsections (with subsections within) in roughly chronological order, meticulously describes the enterprise in its entirety.  Rekenthaler's alleged calls in 2016 are not mentioned once in this comprehensive recitation of the alleged schemes.

Conversely, the allegations in Paragraph 1133 appear in Section IV.D of the Complaint, entitled "Consciousness of Guilt," and specifically, under the subsection entitled "Obstruction of Justice," which describes what the States allege is the Defendants' coordinated effort to avoid government investigation.  By the time the calls described in Paragraph 1133 took place in June 2016, drug prices and market shares were allegedly already fixed and the anticompetitive conduct had ceased—*i.e.*, they were not part of or contemporaneous with "The Illegal Schemes" covered in Section IV.C.  Indeed, the calls could not have been part and parcel of any underlying conspiratorial conduct because they never would have even occurred but for an intervening event

by an intervening actor: a search warrant by federal authorities.  Though Rekenthaler strenuously

disputes allegations that he engaged in any wrongdoing, it's clear that, by the States' own design,

the allegations in Paragraph 1133 are merely an effort—a failed one—to show that Rekenthaler

was aware of and tried to conceal his previous alleged conduct before his departure from Teva.

Again, the States cannot now constructively amend their Complaint to suggest that these

allegations describe anything but *post*-conspiracy conduct.  *See PepsiCo, Inc.*, 836 F.2d at 181.

 *Second*, the concealment allegations in Paragraph 1133 also fail because they do not

satisfy Rule 9(b)'s heightened pleading burden.  *See In re Processed Egg Prods. Antitrust Litig.*,

No. 08-md-02002, 2011 WL 5980001, at *4 (E.D. Pa. Nov. 30, 2011) ("[I]n pleading fraudulent

concealment the strictures of Rule 9(b) apply.").[6]  "To satisfy the pleading requirements of Rule

9(b), a complaint may either describe 'the circumstances of the alleged fraud with precise

allegations of date, time, or place' or may use 'some [other] means of injecting precision and

some measure of substantiation into their allegations of fraud.'"  *Id.* (alteration in original)

(quoting *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172

n.10 (3d Cir. 2002)).  Although the Rule 9(b) standard may be "somewhat relaxed" in this

context, that "does not translate into, or otherwise authorize, boilerplate and conclusory

allegations, and plaintiffs must accompany their legal theory with factual allegations that make

their theoretically viable claim plausible."  *Id.* at *5 (quotation marks and citation omitted).

 Here, Paragraph 1133 fails to describe with sufficient particularity a coordinated cover-up

of price-fixing activity, as the States claim.  For example, the States do not allege what was said

during these phone calls or even the result of the alleged coordination.  They do not allege that

---

[6] The States refer to Paragraph 1133 to exemplify Rekenthaler's alleged concealment.  Opp'n at 63 (citing Paragraph 1133 as one of "several steps to conceal" for fraudulent concealment).

Rekenthaler instructed Patel to lie to the government, be untruthful, or conceal information—they allege only that *Patel* called Rekenthaler with the goal of coordinating (and not even that Rekenthaler agreed to do so).  The States offer nothing to support an inference of nefarious conduct from calls with Rekenthaler's former coworkers.  These allegations, devoid of particular facts as to the substance of the conversations, fall far short of what is required by Rule 9(b).

Therefore, the States have not met their burden because they have not established that Rekenthaler engaged in any anticompetitive conduct or remained tied to the alleged conspiracy after he left Teva in April 2015.

## II.    THE STATES' FRAUDULENT CONCEALMENT ARGUMENTS FAIL.

There are multiple infirmities with the States' position that the doctrine of fraudulent concealment should toll the statute of limitations for their Sherman Act claims.

*First*, the States barely mention that they investigated the underlying conduct for nearly *five years* before filing the Complaint.  Tolling for fraudulent concealment "lasts only until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action."  *Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000) (quotation marks and citations omitted).  The States' fraudulent concealment argument therefore fails unless the Complaint alleges they "actually or constructively knew of no facts or information that might have alerted a reasonable person to investigate the claim."  *Processed Egg*, 2011 WL 5980001, at *8.  Here, the States began looking into suspicious drug pricing in the generic pharmaceutical industry in 2014, prompted by rising drug prices "for hundreds of generic drugs" that sparked "growing outrage and public reports" among "politicians, payers and consumers."  AC ¶¶ 4, 11.  Therefore, even if Defendants attempted to fraudulently conceal their supposed conduct, any such concealment was evidently unsuccessful.  *See In re Processed Egg*, 2011 WL 5980001, at *3 (concealment must have "prevented the plaintiff from recognizing the validity of her claim

within the limitations period").  The States were certainly aware of "red flags" well before May

2019 that could have warranted claims against the largest generic drug manufacturers and their

employees that the States eventually sued, and this standard does not entitle the States to perfect

knowledge or complete information.  *See, e.g.*, AC ¶¶ 648 (describing emails between personal

accounts), 1118 (same).  *Accord Forbes*, 228 F.3d at 487 (tolling applicable limitations period

until plaintiff had "sufficient facts" to support claim); *SD3 II LLC v. Black & Decker (U.S.) Inc.*,

888 F.3d 98, 109 (4th Cir. 2018) (plaintiff on notice of antitrust claim, ending tolling of

limitations, once plaintiff has "sufficient facts to identify" cause of action).

     *Second*, the States fail to plead with particularity, as is required by Rule 9(b), that

Rekenthaler engaged in affirmative acts of concealment that "actively misled" the States to

warrant tolling the statute of limitations.  *Processed Egg*, 2011 WL 5980001, at *3, *8.  The

States cherry-pick facially ambiguous communications and two-to-three-word soundbites that

are an inadequate basis on which to assume that Rekenthaler was actively concealing his

communications from the States.  *See, e.g.*, AC ¶ 261 (suggesting reference to information from

a "good friend" was indicative of an effort to conceal).  Many of these pre-resignation allegations

suggest, at most, that Rekenthaler preferred to have verbal conversations with customers and

other manufacturers, had a sensitivity toward commercial information, or wanted to *avoid*

engaging in wrongful communications with competitors.  *See, e.g.*, AC ¶¶ 213 (describing a

preference to discuss over the phone rather than by email), 931 (describing frequent debriefs

between Rekenthaler and Patel), 1128-29 (warning Patel to be careful about communicating with

competitors).

     *Third*, the States' argument that the alleged conspiracy here was inherently self-

concealing is unconvincing.  As an initial matter, the Third Circuit has never held that a

conspiracy can be "inherently self-concealing."  But even if such a theory is viable (and it is not), it does not apply here because the States allege *nothing* about the nature of the generic pharmaceutical industry that would make any supposed conspiracy inherently self-concealing. "[M]erely alleging a price-fixing conspiracy, and nothing more, does not establish the existence of a 'self-concealing' violation."  *In re Publ'n Paper Antitrust Litig.*, No. 304MD1631SRU, 2005 WL 2175139, at *5 (D. Conn. Sept. 7, 2005) ("no basis" to toll the statute of limitations where plaintiffs failed to "allege any circumstances surrounding the announcement of that increase permitting an inference of concealment").  Rather, the States must "allege particular circumstances surrounding the . . . market indicating that the alleged conspiracy was self-concealing."  *In re Magnesium Oxide Antitrust Litig.*, No. CIV. 10-5943 DRD, 2011 WL 5008090, at *22 (D.N.J. Oct. 20, 2011); *see In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 316 (D.N.J. 2004); *Bethlehem Steel Corp. v. Fischbach & Moore, Inc.*, 641 F. Supp. 271, 275 (E.D. Pa. 1986).  Lastly, the theory cannot apply because, as discussed above, the States were indisputably aware of "'red flags' that definitively apprise[d] [them] of the cause of action," *In re Fasteners Antitrust Litig.*, No. 08-md-1912, 2011 WL 3563989, at *5 (E.D. Pa. Aug. 12, 2011), thus precluding the application of any tolling theory.

## CONCLUSION

The States failed to bring their claims against Rekenthaler within the Sherman Act's four-year statute of limitations and they failed to plead any reason the statute of limitations should be tolled.  Accordingly, the States' claims against him must be dismissed with prejudice as time-barred, and also because the States lack standing, have brought unmeritorious state law claims, and have engaged in improper claim splitting.

Dated: February 26, 2021                    Respectfully submitted,

                                            */s/ Sozi Pedro Tulante*
                                            Sozi Pedro Tulante (Pa. Bar No. 202579)
                                            Jeffrey J. Masters (Pa. Bar No. 322439)
                                            Carla G. Graff (Pa. Bar No. 324532)
                                            DECHERT LLP
                                            Cira Centre
                                            2929 Arch Street
                                            Philadelphia, PA 19104
                                            Tel: (215) 994-4000
                                            Fax: (215) 994-2222
                                            sozi.tulante@dechert.com
                                            jeffrey.masters@dechert.com
                                            carla.graff@dechert.com

                                            *Attorneys for Defendant David Rekenthaler*