# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-md-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*The State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE<br>Civil Action No.<br>2:19-cv-02407-CMR |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION TO <u>DISMISS PLAINTIFFS' STATE-LAW CLAIMS</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

    I.    STATES CANNOT SEEK DAMAGES AS PARENS PATRIAE WITHOUT EXPLICIT STATUTORY AUTHORIZATION. ....................................................1

    II.    ONLY STATES WITH EXPRESS AUTHORITY UNDER STATE LAW MAY ASSERT INDIRECT PURCHASER CLAIMS FOR MONETARY RELIEF. ......3

    III.    THE STATES' DISGORGEMENT CLAIMS VIOLATE THE PRINCIPLES THAT GOVERN EQUITABLE RELIEF. ............................................................4

    IV.    STATE SPECIFIC ARGUMENTS .........................................................................6

CONCLUSION.....................................................................................................................38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aggrenox Antitrust Litig.*,
94 F. Supp. 3d 224 (D. Conn. 2015) ....................................................................32

*Aikens v. Microsoft Corp.*,
159 F. App'x. 471 (4th Cir. 2005) ......................................................................14

*Aladdins Lights Inc. v. Eye Lighting Int'l*,
96 N.E.3d 864 (Ohio Ct. App. 2007) ..................................................................27

*Anadarko Petroleum Corp. v. Commonwealth*,
206 A.3d 51 (Pa. Commw. Ct. 2019) ..................................................................28

*Baker v. Family Credit Counseling Corp.*,
440 F. Supp. 2d 392 (E.D. Pa. 2006) .......................................................28, 29, 31

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................31

*California v. ARC America Corp.*,
490 U.S. 93 (1989) ........................................................................................2, 4

*California v. Frito-Lay, Inc.*,
474 F.2d 774 (9th Cir. 1973) .....................................................................1, 2, 24, 35

*California v. Infineon Techs. AG*,
531 F. Supp. 2d 1124 (N.D. Cal. 2007) ......................................................... *passim*

*In re Cardizem CD Antitrust Litig.*,
391 F.3d 812 (6th Cir. 2004) ............................................................................35

*Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*,
35 So. 3d 1053 (La. 2010) ................................................................................15

*Chesnut v. Roof*,
665 N.E.2d 7 (Ind. App. 1996) ..........................................................................12

*In re Chocolate Confectionary Antitrust Litig.*,
749 F. Supp. 2d 224 (M.D. Pa. 2010) .................................................................26

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011) ...............................................................3, 9

*In re DRAM Antitrust Litig.*,
No. M 02-1486 PJH, 2007 WL 2517851 (N.D. Cal. Aug. 31, 2007) ...............................24, 25

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
 516 F. Supp. 2d 1072 (N.D. Cal. 2007) ...................................................................38

*E.L.A. v. Cole*,
 164 P.R. Dec. 608 (2005)..........................................................................................37

*F.T.C. v. Indiana Fed'n of Dentists*,
 476 U.S. 447 (1986)...................................................................................................37

*F.T.C. v. Mylan Labs., Inc.*,
 99 F. Supp. 2d 1 (D.D.C. 1999) ....................................................................16, 17, 27

*F.T.C. v. Vyera Pharm., LLC*,
 479 F. Supp. 3d 31 (S.D.N.Y. 2020).................................................................27, 29

*State ex rel. Fitch v. Yazaki N. Am., Inc.*,
 294 So.3d 1178 (Miss. 2020) ....................................................................................19

*In re Flonase Antitrust Litig.*,
 610 F. Supp. 2d 409 (E.D. Pa. 2009) ........................................................................14

*In re Flonase Antitrust Litig.*,
 692 F. Supp.2d 524 (E.D. Pa. 2010) .............................................................3, 9, 14, 26

*Free v. Abbott Labs, Inc.*,
 176 F.3d 298 (5th Cir. 1999), *aff'd*, 529 U.S. 333 (2000) ...........................3, 14, 15

*G.G. & Supp. Corp. v. S. & F. Sys., Inc.*,
 153 D.P.R. 861 (P.R. 2001) ......................................................................................32

*Hatton v. Mun. de Ponce*,
 134 P.R. Dec.. 1001 (1994)........................................................................................33

*Herrig v. Herrig*,
 844 P.2d 487 (Wyo. 1992) .........................................................................................37

*Houghton v. Franscell*,
 870 P.2d 1050 (Wyo. 1994) .......................................................................................37

*State ex rel. Inman v. Brock*,
 622 S.W.2d 36 (Tenn. 1981).......................................................................................35

*Illinois Brick Co. v. Illinois*,
 431 U.S. 720 (1977).......................................................................................... *passim*

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Jennings v. Carson*,
  8 U.S. 2 (1807) ....................................................................................................................4

*Johnson v. Microsoft Corp.*,
  834 N.E.2d 791 (Ohio 2005) ..............................................................................................27

*State ex rel. Leech v. Levi Strauss & Co.*,
  No. 79-722-III, 1980 WL 4696 (Tenn. Ch. Sept. 25, 1980) ...............................................35

*Liu v. Sec. & Exch. Comm'n.*,
  140 S. Ct. 1936 (2020) ..................................................................................................4, 5, 6

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C. 2002) ................................................................................22, 25, 35

*Lupin Pharm., Inc. v. Richards*,
  No. RDB-15-1281, 2015 WL 4068818 (D. Md. July 2, 2015) ...............................................6

*Louisiana Power and Light Co. v. United Gas Pipe Line Co.*,
  493 So.2d 1158 (La. 1986) ..................................................................................................15

*Mack v. Bristol-Myers Squibb Co.*,
  673 So. 2d 100 (Fla. Dist. Ct. App. 1996) ...........................................................................10

*Maine v. M/V Tamano*,
  357 F. Supp. 1097 (D. Me. 1973) ........................................................................................16

*Major v. Microsoft Corp.*,
  60 P.3d 511 (Okla. Civ. App. 2002) ....................................................................................27

*Meghrig v. KFC Western, Inc.*,
  516 U.S. 479 (1996) .............................................................................................................21

*Mississippi ex rel. Hood v. AU Optronics, Corp.*,
  701 F.3d 796 (5th Cir. 2012) .........................................................................................18, 19

*Mississippi ex rel. Hood v. Entergy Mississippi, Inc.*,
  No. 3:08-CV-780-CWR-LRA, 2019 WL 1433772 (S.D. Miss. Mar. 30, 2019) ...................19

*In re Mississippi Medicaid Pharm. Average Wholesale Price Litig.*,
  190 So. 3d 829 (Miss. 2015) .........................................................................................19, 20

*New Mexico v. Scott & Fetzer Co.*,
  No. 81-cv-054, 1981 WL 2167 (D.N. M. Dec. 22, 1981) .....................................................22

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    350 F. Supp. 2d 160 (D. Maine 2004) ...................................................................26

*New York v. Cedar Park Concrete Corp.*,
    665 F. Supp. 238 (S.D.N.Y. 1987) .......................................................................25

*In re Nexium Esomeprazole Antitrust Litig.*,
    968 F. Supp. 2d 367 (D. Mass. 2013) ..................................................................33

*In re Niaspan Antitrust Litig.*,
    42 F. Supp. 3d 735 (E.D. Pa. 2014) ....................................................................26

*State ex rel Nixon v. Am. Tobacco Co.*,
    34 S.W.3d 122 (Mo. 2000) .................................................................................20

*Missouri ex rel. Nixon v. Consumer Auto. Res., Inc.*,
    882 S.W.2d 717 (Mo. Ct. App. 1994).................................................................20

*O'Connell v. Wynn Las Vegas, LLC*,
    134 Nev. 550 (Aug. 30, 2018) ............................................................................21

*State ex rel. Office of the AG v. NOS Communs., Inc.*,
    120 Nev. 65 (2014) .............................................................................................20

*Oklahoma v. Cook*,
    304 U.S. 387, 396 (1938).....................................................................................16

*In re Opana ER Antitrust Litig.*,
    162 F. Supp. 3d 704 (N.D. Ill. 2016) ..................................................................33

*Ortiz Andujar v. E.L.A.*,
    122 P.R. Dec. 817 (1988).....................................................................................33

*P.R. Fuels, Inc. v. Empire Gas Co.*,
    149 P.R. Dec. 691 (1999).....................................................................................32

*In re Paoli R. Yard PCB Litigation*,
    No. 86-2229, 1992 WL 323589 (E.D. Pa. Oct. 21, 1992) ....................................21

*People v. Liberty Mut. Ins. Co.*,
    No. 2008-03972, 2008 WL 5934817 (N.Y. App. Div. Apr. 2, 2008).....................24

*In re Pre-Filled Propane Tank Antitrust Litig.*,
    893 F.3d 1047 (8th Cir. 2018) .........................................................................9, 15

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Pressure Vessels of P.R., Inc. v. Empire Gas de P.R.,*
    137 P.R. Dec. 497 (1994) ........................................................................32

*In re Processed Egg Prods. Antitrust Litig.,*
    851 F. Supp. 2d 867 (E.D. Pa. 2012) ..............................................13, 30, 37

*Rivera-Muñiz v. Horizon Lines, Inc.,*
    737 F. Supp. 2d 57 (D.P.R. 2010) ..........................................................32

*Russello v. United States,*
    464 U.S. 16 (1983) ..................................................................................11

*New York ex rel. Schneiderman v. Intel Corp.,*
    No. 09-827-LPS, 2011 WL 6100446 (D. Del. Dec. 7, 2011) ................24

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,*
    737 F. Supp. 2d 380 (E.D. Pa. 2010) ......................................................15

*Showpiece Homes Corp. v. Assurance Co. of America,*
    38 P.3d 47 (Colo. 2001) ..........................................................................37

*Hood ex rel. State v. BASF Corp.,*
    No. 56863, 2006 WL 308378 (Miss. Ch. Jan. 17, 2006) ......................19

*State v. Health,*
    806 S.W.2d 535 (Tenn. Ct. App. 1990) ..................................................35

*State v. Liberty Mut. Holding Co.,*
    No. X09CV064023087, 2009 WL 943094 (Conn. Super. Ct. Mar. 20, 2009) .........................9

*State v. Marsh & McLennan,*
    2006 WL 4494614 (Conn. Super. Ct. Sept. 27, 2006) ............................8

*State v. Marsh & McLennan Cos., Inc.,*
    944 A.2d 315 (Conn. 2008) ..................................................................7, 8

*State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.,*
    87 Wash. 2d 298 (1976) ..........................................................................35

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ....................................................37

*In re Terazosin Hydrochloride Antitrust Litig.,*
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ..................................................27

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
No. C 11-00711 SI, 2011 WL 3475408 (N.D. Cal. Aug. 2011) ..............................................24

*In re Wellbutrin XL Antitrust Litig.,*
260 F.R.D. 143 (E.D. Pa. 2009) ........................................................................................10

*Westernbank Puerto Rico v. Kachkar,*
No. 07-cv-1606, 2009 WL 6337949 (D.P.R. Dec. 10, 2009) ..................................................33

*Lund ex rel. Wilbur v. Pratt,*
308 A.2d 554 (Me. 1973) ................................................................................................17

*Pennsylvania, ex rel. Zimmerman v. PepsiCo, Inc.,*
836 F.2d 173 (3d Cir. 1988)............................................................................................18

**Statutes**

10 L.P.R.A. § 258 ...........................................................................................................33

10 L.P.R.A. § 259(c) ........................................................................................................34

10 L.P.R.A. § 259(i).........................................................................................................34

10 L.P.R.A. § 268(a) ........................................................................................................33

73 P.S. § 201-2(4)(v) .......................................................................................................29

73 P.S. § 201-2(4)(vii) .....................................................................................................29

15 U.S.C. § 15c ...........................................................................................................2, 23

15 U.S.C. § 45(a) ...........................................................................................................36

Alaska Stat. Ann. § 45.50.501(a)........................................................................................7

Alaska Stat. Ann. § 45.50.577(b)........................................................................................6

Alaska Stat. Ann. § 45.50.582 ...........................................................................................6

Conn. Gen. Stat. Ann. § 35-32(c) ....................................................................................8, 9

Fl. Stat. Ann. § 501.204 ...............................................................................................13, 30

Ind. Code § 24-1-1-5.1 ....................................................................................................10

Ind. Code § 24-5-0.5-3(b) ................................................................................................12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Ind. Code § 24-5-0.5-4(a) ...................................................................................11

Ind. Code § 24-5-0.5-4(c) ...................................................................................11

2011 Ind. Legis. Serv. P.L. 226-2011, § 14 (West) ...........................................12

2013 Ind. Legis. Serv. P.L. 273-2013, § 31 (West) ...........................................12

2014 Ind. Legis. Serv. P.L. 65-2014, § 7 (West) ...............................................12

2017 Ind. Legis. Serv. P.L. 118-2017, § 1 (West) .............................................12

2017 Ind. Legis. Serv. P.L. 170-2017, § 119 (West) .........................................12

2019 Ind. Legis. Serv. P.L. 242-2019, § 6 (West) .............................................12

2019 Ind. Legis. Serv. P.L. 280-2019, § 5 (West) .............................................12

2019 Ind. Legis. Serv. P.L. 281-2019, § 4 (West) .............................................12

Ky. Rev. Stat. Ann. § 367.110 ............................................................................13

Ky. Rev. Stat. Ann. § 367.200 ............................................................................13

La. Stat. Ann. § 51:137 .......................................................................................15

Md. Code Ann. § 11-209(b)(2)(i) (2017)............................................................18

Miss. Code Ann. § 75-24-9 5(1) .........................................................................19

Miss. Code Ann. § 75-24-11 ...............................................................................19

Miss. Code Ann. § 75-24-19 ...............................................................................19

Miss. Code Ann. § 75-24-23 ...............................................................................19

N.J. Stat. Ann. § 56: 9-1......................................................................................21

N.M. Stat Ann. § 57-1-1.2 ..............................................................................22, 23

N.M. Stat. Ann. § 57-1-15 ..................................................................................23

N.M. Stat Ann. § 57-12-8(B)...............................................................................24

Nev. Rev. Stat. Ann. § 41.1399(3).......................................................................21

Nev. Rev. Stat. Ann. § 41.1399(4).......................................................................21

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Nev. Rev. Stat. Ann. § 598.0963(3)...........................................................................................................20, 21

Nev. Rev. Stat. Ann. § 598.0973 ...........................................................................................................21

79 Okla. St. Ann. § 212 ...........................................................................................................27

R.I. Gen. Laws Ann. § 6-36-10(a) ...........................................................................................................34

R.I. Gen. Laws Ann. § 6-36-10(b)(1) ...........................................................................................................34

R.I. Gen. Laws Ann. § 6-36-11(b) ...........................................................................................................34

R.I. Gen. Laws Ann. § 6-36-12(a) ...........................................................................................................34

Tenn. Code Ann. § 8-6-109 ...........................................................................................................35

Tenn. Code Ann. § 47-25-103(c) ...........................................................................................................35

Tenn. Code Ann. § 47-25-106 ...........................................................................................................35

Wash. Rev. Code Ann. § 19.86.080 ...........................................................................................................36

Wash. Rev. Code Ann. § 19.86.090 ...........................................................................................................36

Wyo. Stat. Ann. § 40-12-105 ...........................................................................................................36

**Other Authorities**

*Testimony of Attn'y Gen. George Jepsen Before the S. Judiciary Comm. on H.B. 5252*, 115th ...........................................................................................................3

## INTRODUCTION

The Plaintiff States assert a plethora of arguments in opposition to Defendants' motion to dismiss multiple state-law claims in the Second Complaint (Mem. in Opp'n, Dkt. 207) ("Opp'n"), but not one is tenable. Most of the States' arguments do not address Defendants' reasons for dismissal, and instead rely on vague assertions of broad authority that, if adopted, would give state attorneys general virtually unfettered power. But state attorneys general do not get to define their own power; they must abide by the limited grants of authority afforded them by statute. For example, the States argue that a federal law providing standing for state attorneys general to bring *parens patriae* claims under enumerated sections of a specific federal antitrust statute should be expanded by this Court to apply to *all* antitrust and consumer protection laws in *all* states, regardless of whether any particular state has authorized, prohibited, or otherwise limited such standing. As explained below, that argument—and other arguments like it—cannot overcome express legislation and controlling precedent to the contrary.

## ARGUMENT

## I.   STATES CANNOT SEEK DAMAGES AS PARENS PATRIAE WITHOUT EXPLICIT STATUTORY AUTHORIZATION.

A state cannot assert claims for monetary recovery on behalf of injured citizens without explicit authorization under state law. *California v. Frito-Lay, Inc*., 474 F.2d 774, 775-77 (9th Cir. 1973) ("[p]*arens patriae* has received no judicial recognition in this country as a basis for recovery of money damages for injuries suffered by individuals…[*parens patriae*] authority must come not through judicial improvisation but by legislation and rule making."). The laws of Alaska, Arizona, Connecticut, Indiana, Maine, Mississippi, Missouri, New Jersey, New Mexico, New York, Rhode Island, Tennessee, and Washington do not authorize their Attorneys General to seek

monetary recovery here as *parens patriae* on behalf of their citizens, and those states therefore lack authority to bring such claims.  Mot. Dkt. 192-1 ("Mot.") at 5-6.

These states do not dispute that they lack explicit authority under state law.  Instead, they argue (at 2) that Congress "rejected" *Frito-Lay*'s holding by subsequently granting states the right, under *federal law*, to sue for monetary relief "as parens patriae on behalf of natural persons for any violation of sections 1 to 7 *of this title*."  15 U.S.C. § 15c; *see also* Mot. at 6 n.6.  But the States are not seeking relief under 15 U.S.C. § 15c for violations of sections 1 to 7 of Title 15; they are proceeding under *state* laws that do not authorize the claims or forms of relief they seek.  Moreover, the States' argument does not demonstrate that Congress "rejected" *Frito-Lay*.  The fact that Congress enacted a federal statute providing for specific forms of *parens patriae* relief under *federal* law only reinforces the principle that a state cannot pursue such relief under *state* law without explicit statutory authorization.  Mot. at 5-8.

The States also selectively quote *California v. ARC America Corp.*, 490 U.S. 93 (1989), for the uncontroversial proposition that "Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies."  Opp'n at 2 (quoting *ARC America*, 490 U.S. at 102).  *ARC America* is no lifeline for the States: where, as here, certain states do not *have* state laws authorizing *parens patriae* remedies, there is nothing that federal antitrust laws could displace or preempt.  *Id.*  Those states are simply not authorized to bring such claims at all.[1]

---

[1] The States also argue that an Oregon statute purportedly authorizing the Oregon Attorney General to seek monetary relief as *parens patriae* somehow "illustrate[s]" that *every* plaintiff-state is authorized to seek monetary relief as *parens patriae*.  Opp'n at 2 n.1.  But the States fail to explain how an Oregon statute relates at all to the *parens patriae* authority of other states' attorneys general under those other states' laws.

## II.      ONLY STATES WITH EXPRESS AUTHORITY UNDER STATE LAW MAY ASSERT INDIRECT PURCHASER CLAIMS FOR MONETARY RELIEF.

An indirect purchaser, like the States here, can only sue for monetary relief when authorized by state law.[2] Mot. at 12-13; *see also Free v. Abbott Labs, Inc.*, 176 F.3d 298, 301 (5th Cir. 1999), *aff'd*, 529 U.S. 333 (2000) (holding that Louisiana could not assert indirect purchaser claims under state law because its state legislature had not authorized such claims); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413 (S.D.N.Y. 2011) ("any state that has not expressly passed *Illinois Brick* repealer legislation or interpreted its law in such a way as to override the rule of *Illinois Brick* is presumed to have decided to follow federal law, including the *Illinois Brick* limitation on indirect purchaser claims").  The States do not contest this principle, but instead respond to Defendants' arguments on a state-by-state basis.  *See* Opp'n at 5-42.  To the extent that the states in question argue that *Illinois Brick* does not bar indirect purchaser claims in the absence of contrary state law because the state is seeking disgorgement rather than damages, those states are incorrect.  *See, e.g.*, *In re Flonase Antitrust Litig.*, 692 F. Supp.2d 524, 542 (E.D. Pa. 2010) ("The policy of *Illinois Brick* prohibits indirect purchasers from suing the manufacturer to recover *any ill-gotten gains* the manufacturer has obtained by violating antitrust laws." (emphasis added)).  Permitting such relief would constitute an "end run" around *Illinois Brick's* bright-line rule.  *See* Defs.' Joint Mot. to Dismiss Pls.' Federal-Law Claims at 7-8 (Dkt. 193).  Defendants further address each state-specific argument below.[3]  *See infra* Section IV.

---

[2] Notably, the Connecticut Attorney General who initiated this litigation has testified before Congress that Delaware, Louisiana, Maryland, New Jersey, Ohio, Oklahoma, and Virginia do not permit indirect purchaser standing. *Testimony of Attn'y Gen. George Jepsen Before the S. Judiciary Comm. on H.B. 5252*, 115th Cong., at 4 (2018) (map showing each state's treatment of indirect purchaser standing and labeling those states as having "no indirect purchaser standing"), *available at* https://www.cga.ct.gov/2018/JUDdata/Tmy/2018HB-05252-R000309-Jepsen,%20George,%20Office%20of%20Attorney%20General-TMY.PDF.

[3] The following states lacking requisite authorization for indirect purchaser claims under state law: Delaware, Florida, Indiana, Louisiana, Maryland, Missouri, New Jersey, Ohio, Oklahoma, Puerto Rico, and Virginia.

The States also argue generally that state antitrust laws are not preempted by federal antitrust law, citing *ARC America*.  Opp'n at 3.  This uncontroversial assertion is irrelevant to Defendants' indirect purchaser arguments.  *ARC America* held only that federal law does not preempt state laws that provide *express statutory authority to bring indirect purchaser claims*. *ARC America*, 490 U.S. at 100.  If, as here, no such state law exists, then there is nothing federal law could preempt, and *ARC America* has no bearing.  A state can bring indirect purchaser claims for monetary relief only if it has state law authorization to do so.

## III.   THE STATES' DISGORGEMENT CLAIMS VIOLATE THE PRINCIPLES THAT GOVERN EQUITABLE RELIEF.

The States' disgorgement claims should be dismissed because they run afoul of the longstanding principle that disgorgement cannot be construed to permit punitive recovery.  *Liu v. Sec. & Exch. Comm'n.*, 140 S. Ct. 1936, 1940 (2020); *see also*, *Jennings v. Carson*, 8 U.S. 2, 11 (1807).  In *Liu*, the Supreme Court identified three circumstances that would improperly transform an equitable claim to disgorge funds into a punitive sanction: when the remedy sought (1) does not return the disgorged funds to identifiable alleged victims; (2) imposes joint-and-several liability on defendants, rather than limiting each defendant's liability to the alleged wrongful gains of that defendant; and (3) exceeds that defendant's net profits allegedly gained from wrongful activity. *Liu*, 140 S. Ct. at 1946.  The States' disgorgement claims are precisely the type of disguised punitive sanctions proscribed by the Supreme Court.  *Id*.  The States seek monetary recovery for their own treasuries and do not claim that they will disburse recovered funds to particular, alleged victims; the States seek to impose joint-and-several liability; and the States seek to recover amounts from defendants in excess of the net profits from a given defendant's respective alleged wrongful activity.  Mot. at 10-11.

The States' argument that *Liu* is inapplicable because it is "nuanced" and did not analyze the specific statutes at issue here is contradicted by the Supreme Court's broad analysis, which discussed a number of statutes and was expressly based on "longstanding principles of equity." *Liu*, 140 S. Ct. at 1945-47.  The *Liu* Court explained that when interpreting statutes "that provide for 'equitable relief,' [a court] analyzes whether a particular remedy falls into 'those categories of relief that were *typically* available in equity."  *Id.* at 1942 (emphasis in original).  Far from focusing narrowly on the SEC statute at issue in the case, the *Liu* Court went to great lengths to address the "principles" that guide "equity jurisprudence."  *Id.*  The "scope of equitable relief under federal law," therefore, does *not* necessarily "depend[] on the specific statute" at issue.  Opp'n at 5.

Further, *Liu* undermines the States' argument that their disgorgement claims can be applied jointly and severally.  *See, e.g., Liu*, 140 S. Ct. at 1945 ("[t]he rule against joint-and-several liability for profits that have accrued to another appears throughout equity cases awarding profits"); *id.* at 1949; Mot. at 10.  While the *Liu* Court recognized certain exceptions to the rule against joint-and-several liability for disgorgement, those examples are inapposite here: defendants whose wrongful profits could not be segregated, such as partners in a single business or joint beneficiaries of a fraudulent patent.  *Id.* at 1949.  The conduct alleged here does not fit that mold.[4]  The States can— and must—delineate the allegedly wrongfully gained profits by defendant, product, and geography.  The rule against joint-and-several liability for disgorgement claims cannot be circumvented simply because doing so may be easier for the States.  Accordingly, the Court should dismiss the States' requests for disgorgement.[5]

---

[4] The States do not cite a single case to support the new exception they ask this Court to adopt.

[5] Even though Defendants did not make any Oregon-specific arguments, and did not argue that Oregon is not authorized to seek disgorgement, the States nevertheless appear to argue that because Oregon's antitrust statute generally authorizes equitable and monetary remedies, that all States are authorized to assert disgorgement claims on a joint and several basis without identifying alleged victims.  Opp'n at 43–44.  The Oregon Antitrust

## IV.     STATE SPECIFIC ARGUMENTS

The States' opposition asserts state-specific arguments separately for each state. Defendants address each of those arguments in turn.[6]

**Alaska**:  Alaska's antitrust statute unambiguously requires that all claims by the Alaska Attorney General under the state's antitrust statute be brought in Alaska state court, not federal court.  *See* Alaska Stat. Ann. § 45.50.582 ("An action arising under AS 45.50.562 – 45.50.596 [Alaska's antitrust statute] *shall be brought in the superior court*." (emphasis added)); Alaska Stat. Ann. § 45.50.577(b) (authorizing the Alaska Attorney General to bring "civil action[s] in superior court in the name of the state, as parens patriae … by reason of any violation of AS 45.50.562 - 45.50.570.").  Tellingly, Alaska fails to address the case that Defendants cite, Mot. at 6 n.7, which held that a petition authorized by Alaska law to be filed in "superior court" cannot instead be filed in federal court for another state.  *See Lupin Pharm., Inc. v. Richards*, No. RDB-15-1281, 2015 WL 4068818, at *6 (D. Md. July 2, 2015) (finding that "the context of the [Alaska antitrust] statute indicates contemplation of a 'superior court,' the common denomination of an intermediate court in Alaska, not a federal court established under Article III of the U.S. Constitution").  Nor does Alaska cite any authority of its own suggesting a contrary interpretation of the Alaska antitrust statute; Alaska instead reaches for a case interpreting a New York statute.  *See* Opp'n at 5.  Because Alaska did not comply with its own state antitrust statute in initiating its lawsuit, its claims under that statute should be dismissed.

---

Act, however, does nothing to rebut the law as described in *Liu*.  Defendants' position is not that disgorgement may never be sought as equitable relief.  Rather, as explained in *Liu*, Defendants maintain that the States cannot seek disgorgement on a joint-and-several liability basis, particularly without identifying alleged victims, because doing so would impermissibly transform disgorgement from an equitable remedy into a punitive sanction.

[6] Defendants withdraw their arguments with respect to Arkansas' antitrust and consumer protection claims.

Alaska's claims under its consumer protection statute should also be dismissed for the same reason. Alaska's consumer protection statute provides that the Attorney General "may bring an action" and then specifies that the action must be brought in certain "superior courts," all of which are state courts in Alaska. Alaska Stat. Ann. § 45.50.501(a). It further provides that if the Attorney General brings a claim, then it must be "in the judicial district in which the person resides or is doing business or has the person's principal place of business." *Id.* The Attorney General has no authority to choose a different forum unless the parties consent, in which case the claim may be brought "in any other judicial district *in the state*." *Id.* (emphasis added). Alaska's request that the Court read into the statute an implied grant to sue in federal court "or anywhere else" is unreasonable and unsupported by the plain text of the statute.

**Arizona**: Arizona now concedes that it is not pursuing damages claims of any nature— whether on behalf of any governmental entity or as *parens patriae* on behalf of individual consumers or the general economy of the State. Opp'n at 5-6. Accordingly, Arizona's claims for damages should be dismissed with prejudice.

**Connecticut**: As Defendants addressed in their opening brief, the States fail to allege how the "damage to Connecticut's general economy is separate and apart from the direct damage [consumers] sustained by payment of [the defendants' allegedly] inflated price," as required by Connecticut law. *State v. Marsh & McLennan Cos., Inc.*, 944 A.2d 315, 328 (Conn. 2008). Without citing any legal authority, the States respond that "no such specificity is required under Connecticut law." Opp'n at 6. That is false.

The governing statute states that if the Attorney General brings an action as "parens patriae with respect to damages to the general economy of the state or any political subdivision thereof[,]" "such damages shall not be duplicative of those recoverable" as "parens patriae for persons

residing in the state."  Conn. Gen. Stat. Ann. § 35-32(c); *see also Marsh & McLennan*, 944 A.2d

at 322 ("The plain language of § 35–32(c)(2) read by itself clearly permits the attorney general to

bring a parens patriae action for 'damages to the general economy of the state,' so long as those

damages are 'not ... duplicative of those recoverable' under subdivision (1), which are by the state

on behalf of 'persons residing in the state with respect to damages sustained by such persons,' or

'as a representative of a class or classes consisting of persons residing in the state who have been

damaged'").  Connecticut's effort to obtain *parens patriae* damages both for its general economy

and on behalf of individual Connecticut citizens violates this law, and the state's claims for

damages as *parens patriae* should therefore be dismissed.[7]  *See* Mot. at 7, n.9.

Although Connecticut argues that *Marsh & McLennan* supports its position that the law

does not require Connecticut to distinguish between *parens patriae* and general economic damages

in its pleadings, Opp'n at 7, that is not what the case held.  The plaintiff in *Marsh & McLennan*

sought both general economic damages and *parens patriae* damages under different theories.  944

A.2d at 327-28.  Although the defendants in that case argued that those types of damages were not

factually distinguishable, the court found that the plaintiff had adequately pled "general economy"

damages "separate and apart from the direct damage" suffered by consumers, and the factual

accuracy of the plaintiff's distinction was not appropriate for the pleading stage.  *Id.*  Connecticut's

recovery theories here, by contrast, are based on *identical* allegations and lumped together with no

effort to distinguish them.  *Compare* Third Amended Compl. ¶ 107, *State v. Marsh & McLennan*,

2006 WL 4494614 (Conn. Super. Ct. Sept. 27, 2006) (No. FST-CV-05-4004360-S (X05)) ("This

damage to Connecticut's general economy is separate and apart from the direct damage companies

---

[7] If Connecticut is permitted to re-assert a *parens patriae* claim for damages, it must claim either general economic damages or damages on behalf of individual Connecticut citizens, not both.  Conn. Gen. Stat. Ann. § 35-32(c).

sustained by payment of Marsh's inflated price."), *with* Sec. Am. Compl. ¶ 1419 ("Defendants' actions as alleged herein have damaged, directly and indirectly, the prosperity, welfare, and general economy of the State of Connecticut and the economic well being of a substantial portion of the People of the State of Connecticut and its citizens and businesses at large.")  While Connecticut need not demonstrate that it can prove its entitlement to relief at the pleading stage, it nonetheless must sufficiently plead a theory upon which relief can be granted.  Connecticut has simply failed to do so here.  Because those damages, as alleged, cannot be separated or proven distinctly, the claim for *parens patriae* damages should be dismissed as duplicative pursuant to Conn. Gen. Stat. Ann. § 35- 32(c).[8]

**Delaware**: Nothing in the States' Opposition salvages Delaware's indirect purchaser claims, which should be dismissed because, as explained above and in the opening brief, Delaware is not expressly authorized under state law to assert indirect purchaser antitrust claims.  *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413 (S.D.N.Y. 2011).  Delaware argues that it is not an indirect purchaser because it is seeking disgorgement for alleged violations of Delaware's Antitrust Act, not other monetary damages.  Opp'n at 9.  But Delaware cannot use disgorgement to circumvent the indirect purchaser rule to seek monetary recovery for alleged antitrust violations. *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1059 (8th Cir. 2018) (holding that "indirect purchasers cannot pursue disgorgement, [because doing so would be] an impermissible attempt to circumvent Supreme Court precedent" established in *Illinois Brick*); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010) ("The policy of *Illinois Brick* prohibits

---

[8] Connecticut also relies on *State v. Liberty Mut. Holding Co.*, but in that case the state only sought damages to its general economy, not, as here, to both its general economy and on behalf of individuals in Connecticut.  No. X09CV064023087, 2009 WL 943094, at *3 (Conn. Super. Ct. Mar. 20, 2009) ("The only *parens patriae* claim asserted by the state is one based on its claim of damage to the state's general economy from the defendants' conduct; *see* § 35-32(c)(2); and the defendants explicitly eschew any intent to address that claim in this motion.").

indirect purchasers from suing the manufacturer to recover *any ill-gotten gains* the manufacturer has obtained by violating antitrust laws." (emphasis added)); *see also, e.g.*, Defendants' Motion to Dismiss Plaintiffs' Federal-Law Claims at 7-8 (Dkt. 193).   Delaware concedes that its disgorgement claims are based on alleged "violations of the DAA [Delaware Antitrust Act]," and does not dispute that it lacks authority to assert indirect purchaser claims under state law.  Opp'n at 9.  Delaware's indirect purchaser claims for monetary relief should therefore be dismissed.

**Florida**:  Defendants seek dismissal of Florida's state antitrust claims to the extent that they are predicated on indirect purchases because Florida does not have standing to pursue relief based on indirect purchases under its state antitrust statute, Florida Antitrust Act, Section 542.18. *See Mack v. Bristol-Myers Squibb Co.,* 673 So. 2d 100, 103 (Fla. Dist. Ct. App. 1996); *see also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 160-61 (E.D. Pa. 2009) ("The Florida courts have interpreted the Florida Antitrust statute to prohibit suits brought by indirect purchasers consistently with the federal antitrust policy enunciated in *Illinois Brick Co. v. Illinois.*" (internal citations omitted)).  In opposition, Florida does not dispute that the Florida Antitrust Act prohibits suits brought by indirect purchasers.  Instead, Florida argues that it has standing to pursue claims as a direct purchaser by assignment.  Accordingly, the Court should dismiss Florida's state antitrust claims to the extent that it rests on indirect purchases, and permit only claims based on a valid express assignment of *direct* purchaser antitrust claims.  Finally, Defendants did not seek dismissal of Florida's indirect purchaser claims brought under the Florida Unfair and Deceptive Trade Practices Act; therefore, there is no dispute to resolve concerning those consumer protection act claims.

**Indiana**:  Indiana remains without express authorization to bring a *parens patriae* action for damages under the Indiana Antitrust Act.  Ind. Code § 24-1-1-5.1 (authorizing the attorney

general to bring actions "on behalf of the state or a political subdivision," not consumers). The States' citation of two cases addressing the attorney general's ability to seek general *parens patriae* relief does not help Indiana because the attorney general needs specific statutory authority to seek *parens patriae* damages for alleged antitrust violations. *See* Opp'n at 11; *cf. California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1164-65 (N.D. Cal. 2007) (requiring "controlling legal authority specifically indicating that monetary damages—as opposed to other types of relief—may be sought through a parens patriae claim").

Indiana's insistence that the Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code § 24-5-0.5-4(c), grants *parens patriae* authority is misplaced because that statute's plain text only authorizes the Attorney General to bring an action to enjoin deceptive practices. This IDCSA provision makes clear that the award of restitution is at the court's discretion, and not the kind of relief that the Indiana Attorney General can affirmatively seek on its own. Ind. Code § 24-5-0.5-4(c) ("The attorney general may bring an action to *enjoin* a deceptive act … . [T]he court *may* … order the supplier" to provide restitution (emphases added)). This is in stark contrast to other subsections of the same IDCSA provision that authorize private plaintiffs to "bring an action for the *damages* actually suffered as a consumer." Ind. Code § 24-5-0.5-4(a) (emphasis added). The fact that the Indiana legislature specifically authorized private parties to bring suits for damages in subsection 4(a), but did not expressly authorize damages actions for the Indiana Attorney General in subsection 4(c), demonstrates that the legislature did not intend for the Indiana Attorney General to bring a *parens patriae* action under the IDCSA for damages. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally

and purposely in the disparate inclusion or exclusion.").  Indiana therefore does not have the requisite authority to maintain *parens patriae* claims for damages.

Nor are anticompetitive acts that violate the Indiana Antitrust Act construed as deceptive acts under the IDCSA, as Indiana maintains.  *See* Opp'n at 11-12 (citing Ind. Code § 24-5-0.5-3). Indiana points out that the IDCSA now applies to implicit misrepresentations,[9] yet does nothing to show that an anticompetitive act can violate the IDCSA at all.  *Cf.* Opp'n at 12 ("Indiana courts have not addressed whether the IDCSA encompasses anticompetitive behavior.").  Nor could it so argue: of the *forty* enumerated deceptive acts within Ind. Code § 24-5-0.5-3(b), none concerns "anticompetitive acts."  Even if subsection 3(b) is "not intended to be an exhaustive" list of deceptive acts as the States argue, *see* Opp'n at 11, it is telling that the Indiana legislature has not added "anticompetitive acts" to the otherwise lengthy list,[10] which has been amended time and time again in the last decade to add over 20 enumerated deceptive acts.

Finally, the States' claim that the IDCSA might encompass anticompetitive behavior because "Indiana courts would look to federal courts interpreting the Federal Trade Commission Act" ("FTC Act") when interpreting the IDCSA cannot hold absent a showing of intent by the

---

[9] In doing so, Indiana effectively concedes that it cannot recover under the IDCSA for any damages allegedly sustained upon implicit misrepresentations occurring prior to the effective date of the controlling legislative amendment—*i.e.*, July 1, 2014.  *See* 2014 Ind. Legis. Serv. 65-2014, § 7 (West).  The Indiana legislature did not signal expressly that the amendment would be retroactive, and it thus applies prospectively under Indiana law. *See Chesnut v. Roof*, 665 N.E.2d 7, 9 (Ind. App. 1996) ("Whether a statute or amendment is to be applied retroactively to pending cases or only prospectively depends upon the legislature's intent … . Case law teaches us that the legislature must explicitly provide for retroactive application.").

[10] In just the past decade, the Indiana legislature has substantively amended or added to the list of deceptive acts under Ind. Code § 24-5-0.5-3(b) at least *eight* times.  *See, e.g.*, 2011 Ind. Legis. Serv. P.L. 226-2011, § 14 (West) (adding 17 new deceptive acts to subsection 3(b)); 2013 Ind. Legis. Serv. P.L. 273-2013, § 31 (West) (adding one new deceptive act to subsection 3(b)); 2014 Ind. Legis. Serv. P.L. 65-2014, § 7 (West) (adding implicit misrepresentations to the scope of the IDCSA); 2017 Ind. Legis. Serv. P.L. 170-2017, § 1 (West) (amending one deceptive act in subsection 3(b)); 2017 Ind. Legis. Serv. P.L. 118-2017, § 119 (West) (amending two deceptive acts in subsection 3(b)); 2019 Ind. Legis. Serv. P.L. 242-2019, § 6 (West) (adding one new deceptive act to subsection 3(b)); 2019 Ind. Legis. Serv. P.L. 280-2019, § 5 (West) (adding one new deceptive act to subsection 3(b)); 2019 Ind. Legis. Serv. P.L. 281-2019, § 4 (West) (adding one new deceptive act to subsection 3(b)).

Indiana legislature to conform the IDCSA with the FTC Act.  *See* Opp'n at 12.  To support this curious position, the States cite *In re Processed Egg Products Antitrust Litigation*, a case about a Florida statute that the court found to be consistent with the FTC Act because the Florida statute in question explicitly required that "'due consideration and great weight shall be given to the interpretations of the Federal Trade Commission.'"  851 F. Supp. 2d 867, 900 (E.D. Pa. 2012) (quoting Fla. Stat. § 501.204(2)).  Indiana identifies no comparable provision in the IDCSA, nor does it cite any cases concerning any relationship between the IDCSA and FTC Act.  *See* Opp'n at 12 (speculating that "*if considered*, Indiana courts would *likely* hold" that violations of the FTC Act also violate the IDCSA (emphases added)).  Without any indication from the legislature that it intended to so expand the IDCSA, the court should decline to do so here.

**Kentucky**:  Kentucky's claims for disgorgement and attorneys' fees and costs[11] under the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110 *et seq.* ("KCPA"), fail because the KCPA does not provide the Attorney General with an affirmative right to seek such remedies. Rather, the KCPA provides only that "[t]he *court* may make such additional orders or judgments as may be necessary to restore any person in interest any moneys or property . . . which have been paid out as a result of any practice declared to be unlawful by KRS 367.130 to 367.300."  Ky. Rev. Stat. Ann. § 367.200 (emphasis added).  Contrary to Kentucky's misrepresentation of the KCPA, the statute does not authorize the Kentucky Attorney General to affirmatively seek "disgorgement

---

[11] The States cite Kentucky's "Answers to Questions informally recommended by Special Master Marion for Connecticut served to Defendants on November 16, 2020," which claimed that, in addition to seeking civil penalties and disgorgement (and fees and costs), "Kentucky seeks an injunction and disgorgement of all revenues, profits, and gains through its claim for unjust enrichment." Opp'n at 13. To the extent Kentucky's claim for unjust enrichment is different from or on top of its claims for an injunction and disgorgement, the unjust enrichment claim is also barred for the reasons set forth in this section.  To be sure, Defendants have never disputed that Kentucky is authorized under the KCRA to seek civil penalties.

of all revenues, profits, and gains," Opp'n at 13—it merely permits the court, in its discretion, to issue orders for such relief.

**Louisiana**: Louisiana cannot recover monetary damages of any kind under the Louisiana Unfair Trade Practices Act ("LUTPA"), and the Louisiana Monopolies Act does not give the state a license to circumvent the *Illinois Brick* prohibition on indirect purchaser standing. Mot. at 12 n.27; *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010).

The Fifth Circuit has explicitly held that Louisiana indirect purchasers lack standing to assert antitrust claims—and that decision was affirmed by the U.S. Supreme Court. *Free v. Abbott Labs*, 176 F.3d 298, 301 (5th Cir. 1999), *aff'd*, 529 U.S. 333 (2000). Despite this clear precedent, Louisiana argues that *Free* "is not a source of law in Louisiana" because it supposedly reflects "a principle of law announced and applied on a single occasion in the past" and "was an instance of a federal court engaging in guesswork to apply a Louisiana law." Opp'n at 15. But *Free* is not an isolated case—many other courts, including the Fourth Circuit and the Eastern District of Pennsylvania, have reached the same conclusion. *See In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 414 (E.D. Pa. 2009); *Aikens v. Microsoft Corp.*, 159 F. App'x. 471, 477 (4th Cir. 2005). Moreover, *Free* is "the opinion [of] the highest federal court of appeals with jurisdiction over Louisiana [and] is well-versed in applying Louisiana law." *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1147 (N.D. Cal. 2007). And, as Louisiana concedes, no Louisiana court has directly addressed the standing of indirect purchasers under the Louisiana Monopolies Act. Opp'n at 14. Because the Fifth Circuit and numerous other courts agree with Defendants' position, and no Louisiana court has decided this issue in conflict with those decisions, this Court should grant Defendants' motion to dismiss.

*Free* also expressly rejects Louisiana's argument that the phrase "any person" in Louisiana's Monopolies Act, La. Stat. Ann. § 51:137, means that indirect purchasers can recover damages. *Free*, 176 F.3d at 299, 301. The *Free* court explained that the Louisiana Monopolies Act's "any person" language comes from a section "virtually identical to the federal antitrust enforcement provision [the Clayton Act]," and the Louisiana Supreme Court has held that "the United States Supreme Court's interpretation [of the Clayton Act] . . . should be a persuasive influence on the interpretation of our own state enactment." *Id.* at 299 (citing *Louisiana Power and Light Co. v. United Gas Pipe Line Co.*, 493 So.2d 1149, 1158 (La. 1986)). Further, as Louisiana admits, the Monopolies Act statute was passed in the 19th century, well before *Illinois Brick* was decided, so it cannot be reasonably interpreted as an *Illinois Brick*-repealer statute. Opp'n at 14.[12]

Finally, as Defendants have explained, Louisiana cannot circumvent the indirect purchaser rule by seeking the same relief under LUTPA instead. Mot. at 12 n.27. Nor can Louisiana seek monetary relief for indirect purchasers by calling it equitable relief under the guise of "disgorgement." *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1059 (8th Cir. 2018) ("indirect purchasers cannot pursue disgorgement" under the federal antitrust laws because to hold otherwise would sanction "an impermissible attempt to circumvent Supreme Court precedent"); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 425 (E.D. Pa. 2010) (dismissing Louisiana's equitable claims under the LMA and LUTPA where indirect purchasers had no standing and collecting cases holding same); *see also* Defs.' Joint Mot. to Dismiss State-Law Claims, *Connecticut et al. v. Aurobindo et al.*, No.

---

[12] Louisiana's reliance on *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053 (La. 2010), is also misplaced. *Cheramie* answers the question of whether "plaintiffs other than business competitors and consumers" may sue under the LUTPA, but it does not address the question of whether either LUTPA or the Monopolies Act permit indirect purchaser recovery in the face of *Illinois Brick*. *Id.* at 1058.

17-cv-03768, E.D. Pa. (Dkt. 74-1 at 5-7); Defs.' Reply in Supp. of Joint Mot. to Dismiss State-Law Claims, No. 17-cv-03768, E.D. Pa. (Dkt. 164 at 2-6).  Accordingly, Louisiana's indirect purchaser claims should be dismissed.

**Maine**:  Maine does not have statutory authority to assert claims for monetary recovery as *parens patriae* on behalf of its citizens because it seeks recovery for the benefit of individuals who are the real parties in interest and has not shown a direct interest of its own.  Maine can only sue to recover as *parens patriae* on behalf of its citizens if the state has some "quasi-sovereign interest" separate and apart from the interest of its citizens. *Maine v. M/V Tamano*, 357 F. Supp. 1097, 1100 (D. Me. 1973).  "[T]hat is, in order to maintain a *parens patriae* suit, the State 'must show a direct interest of its own and not merely seek recovery for the benefit of individuals who are the real parties in interest.'" *Id.* (citing *Oklahoma v. Cook*, 304 U.S. 387, 396 (1938)).  Here, Maine has not articulated any quasi-sovereign interest that it can assert on behalf of its citizens apart from the interests of the parties that actually purchased the pharmaceutical products at issue.  Any *parens patriae* interest that Maine could conceivably assert can already be achieved by the numerous other plaintiffs in this case.  Maine's claims for recovery as *parens patriae* on behalf of Maine citizens should thus be dismissed.

Rather than try to articulate a quasi-sovereign interest justifying its claims as *parens patriae* on behalf of Maine citizens, Maine points to *F.T.C. v. Mylan Labs, Inc.*, an out-of-district case that stated "[i]t is difficult to see why Maine has an independent state interest in this action when the goals of compensation and deterrence can already be achieved—for both direct and indirect purchasers—under the private right of action established by 10 M.S.R.A. § 1104(1) [(Maine's antitrust statute)]." 99 F. Supp. 2d 1, 7 (D.D.C. 1999).  Despite explaining that rationale, the *Mylan Labs* court inexplicably decided to allow Maine's *parens patriae* claims to survive based on an

incredibly broad and generalized statement of the Maine Attorney General's authority from a Maine state court in a case entirely unrelated to whether the Maine Attorney General is authorized to seek monetary recovery as *parens patriae* on behalf of its citizens.  *Id.* (allowing Maine's *parens patriae* claims to survive based on one Maine court's statement that: "As the chief law officer of the State, [the Maine Attorney General] may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may, from time to time require, and may institute, conduct, and maintain all such actions and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order, and the protection of public rights." (quoting *Lund ex rel. Wilbur v. Pratt*, 308 A.2d 554, 558 (Me. 1973))).  The *Mylan Labs* decision is not a controlling statement of Maine law, and is not binding on this Court. And the sole case it relied on in reaching that holding, *Pratt*, was entirely unrelated to the issue at hand; *Pratt* addressed the issue of whether the defendant was "entitled to hold simultaneously the office of municipal assessor of the Town of Parsonsfield and that of Representative to the Legislature of the State of Maine."  *Lund ex rel. Wilbur v. Pratt*, 308 A.2d 554, 556 (Me. 1973). *Pratt* did not relate to the issue of whether the Maine Attorney General is authorized to seek monetary recovery as *parens patriae* on behalf of Maine citizens when it does not have a separate quasi-sovereign interest in the case.  *Id.*  Defendants urge this Court to follow precedent from the District of Maine, as laid out in *State of Maine v. M/V Tamano*, rather than the decision in *Mylan Labs*, which provided a rationale for ruling against Maine before ultimately ruling for Maine based on a case entirely unrelated to the issue at hand.

**Maryland**:  Maryland's position that it "is not seeking damages," Opp'n at 17, contradicts its November 16, 2020 supplemental discovery responses, which state that "[t]hrough its *parens patriae* authority, Maryland seeks damages on behalf of persons residing in Maryland. This is

Maryland's sole compensatory claim." Ex. 1 (Maryland's Supplemental Response to Defendants' Interrogatories (November 16, 2020). Defendants will credit Maryland's latest position as stated in the Opposition and request that the Court dismiss Maryland's damages claims with prejudice. In addition, Maryland fails to respond to—and therefore concedes—Defendants' position that Maryland's *Illinois Brick* repealer statute, Md. Code Ann. § 11-209(b)(2)(i) (2017), does not apply retroactively and, thus, Maryland may not recover damages for alleged conduct that occurred prior to May 27, 2017.

**Michigan**:  In the States' First Complaint, Michigan brought claims under both the Michigan Antitrust Reform Act and the Michigan Consumer Protection Act. *See* State CAC ¶ 708. In the States' Second Complaint, Michigan brought claims exclusively under the Michigan Antitrust Reform Act. *See* Sec. Am. Compl. ¶ 1521. Because Michigan dropped its consumer protection claims in the States' Second Complaint, Defendants did not seek dismissal of those claims (or any other Michigan claims) in their motion to dismiss state-law claims. For this reason, Defendants were surprised by Michigan's *non sequitur* argument in its Opposition that it had adequately pled claims under the Michigan Consumer Protection Act. Opp'n at 17. To the extent that Michigan seeks through its Opposition to amend the States' Second Complaint and add Michigan Consumer Protection Act claims, the Court should deny that request. *See e.g., Pennsylvania, ex rel. Zimmerman v. PepsiCo, Inc*., 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss" (internal citations omitted)).

**Mississippi**:  Mississippi cannot sue for injuries to parties other than the state, and the States cite no case holding otherwise. While *Mississippi ex rel. Hood v. AU Optronics, Corp.*, 701 F.3d 796 (5th Cir. 2012), was reversed on other grounds—as Defendants acknowledged, Mot. at

7 n.12—the Supreme Court left intact the holding that Mississippi cannot sue "for restitution for injuries suffered by parties other than the State."  Similarly, despite a district court finding that *AU Optronics* is "idiosyncratic," *Mississippi ex rel. Hood v. Entergy Mississippi, Inc.*, it remains good law.  No. 3:08-CV-780-CWR-LRA, 2019 WL 1433772, at *1 (S.D. Miss. Mar. 30, 2019).  The single unpublished, state trial court decision that the States cite—*Hood ex rel. State v. BASF Corp.*, No. 56863, 2006 WL 308378, at *3 (Miss. Ch. Jan. 17, 2006)—was criticized by the Fifth Circuit as not "authoritative precedent" and "not provid[ing] the State with the power it seeks to assert 'ownership' over all individualized claims in the name of the State."  *AU Optronics,* 801 F.3d at 801.

While the States chide Defendants for not citing caselaw for the proposition that Mississippi is limited to injunctive relief under its consumer protection statute, a plain reading of the statute supports Defendants' position.  Miss. Code Ann. § 75-24-9 5(1) (Attorney General "may bring an action in the name of the state … to restrain by temporary or permanent injunction the use of such method, act, or practice" prohibited under the statute).  None of the other provisions or cases cited by Mississippi permit the state to recover damages.  Miss. Code Ann. § 75-24-11 (restitution); Miss. Code Ann. § 75-24-19 (statutory penalties); Miss. Code Ann. § 75-24-23 (additional remedies under law); *State ex rel. Fitch v. Yazaki N. Am., Inc.*, 294 So.3d 1178, 1184 (Miss. 2020) (allowing civil penalties).[13]

Finally, the Mississippi Consumer Protection Act ("MCPA") does not authorize Mississippi to assert antitrust claims under state law either.  While Mississippi cites *In re Mississippi Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829, 841 (Miss. 2015),

---

[13] The States argue at length that Mississippi may seek damages under its antitrust statute, but Defendants' argument is limited to Mississippi's consumer protection statute, not its antitrust statute.

for support, that case involved no allegations of price-fixing, market allocation, or any other anticompetitive conduct. Rather, the allegation was that a defendant's "unfair reporting of fictitious AWPs caused the substantial injury of $23,661,618 in overpayments to pharmacies participating in Medicaid." *Id.* Mississippi has not and cannot point to any Mississippi case sustaining an antitrust claim under the MCPA. For these reasons, Mississippi's claims for monetary relief should be dismissed.

**Missouri**: Missouri does not dispute Defendants' argument that Missouri law does not authorize damages. *See* Mot. at 7 n.13; Opp'n at 20. Similarly, Missouri concedes that it is not seeking recovery under Missouri antitrust law. *See* Opp'n at 20–21. Thus, the Court should grant Defendants' motion to dismiss Missouri's (1) general damages claims and (2) claims under the Missouri antitrust statute.[14]

**Nevada**: Nevada asks this Court to infer that Nev. Rev. Stat. Ann. § 598.0963(3) provides for monetary relief because that statute authorizes Nevada to seek "a temporary restraining order, a preliminary injunction, *or other appropriate relief*." (emphasis added). Yet Nevada precedent confirms that the statute provides only for injunctive relief, making no mention of a monetary relief remedy. *See, e.g., State ex rel. Office of the AG v. NOS Communs., Inc.*, 120 Nev. 65, 66 (2014) ("NRS 598.0963(3) provides that the Attorney General's Office may bring an *action for injunctive relief* against a person engaging in a deceptive trade practice." (emphasis added)). Other portions of the Nevada Code provide for both equitable relief, actual damages, compensatory damages,

---

[14] Although Missouri argues that restitution—not damages—is available under the Missouri Merchandising Practices Act ("MMPA"), Missouri never sought restitution in its complaint. Damages are different than restitution because the latter is an equitable remedy, *see* Section II, *supra*, and no case cited by Missouri authorizes damages under the MMPA. *See State ex rel Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 130 (Mo. 2000) (explaining that statute allows the attorney general "to seek injunctive relief or restitution" but never extending to damages); *Missouri ex rel. Nixon v. Consumer Auto. Res., Inc.*, 882 S.W.2d 717, 721 (Mo. Ct. App. 1994).

punitive damages, "or any other appropriate relief," which demonstrates that the Nevada legislature does not use the phrase "any other appropriate relief" to indicate that it intends to authorize monetary relief in addition to expressly identified non-monetary relief.  *See, e.g.,* Nev. Rev. Stat. Ann. § 41.1399(3),(4) (providing that "the court may award such injunctive relief as the court deems appropriate" and that "[a] plaintiff who prevails in an action . . . may recover actual damages, compensatory damages, punitive damages or any other appropriate relief").  In other words, had the legislature intended for monetary damages to be available under Section 598.0963(3), it knows how to say so and would have said so.  *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) ("[Congress] knew how to provide for the recovery of cleanup costs, and . . . the language used to define the remedies under RCRA does not provide that remedy.").

Moreover, Nevada completely ignores Defendants' argument that, because there are no allegations in the Second Complaint regarding elderly or disabled persons, it cannot recover under Nev. Rev. Stat. Ann. § 598.0973.  Because Nevada failed to address these arguments, the Court should treat them as conceded.  *See O'Connell v. Wynn Las Vegas, LLC*, 134 Nev. 550, 555 n.3 (Aug. 30, 2018) (determining that a failure to address an argument was a concession of the point); *see also In re Paoli R. Yard PCB Litigation*, No. 86-2229, 1992 WL 323589, at *6 (E.D. Pa. Oct. 21, 1992) ("Plaintiffs' response to this motion completely fails to address Defendants' position with respect to tin tetraphenyl and is therefore deemed to admit and concede its correctness.").

**New Jersey**:  New Jersey does not oppose Defendants' motion.  In response, it merely confirms that it "does not seek to recover damages for 'indirect' purchasers.'"  Opp'n at 23. Because there is no dispute that New Jersey cannot pursue *parens patriae* claims or recover damages for "indirect" purchasers, the Court should dismiss New Jersey's claims brought under its antitrust statute, N.J. Stat. Ann. § 56: 9-1 *et seq*.

**New Mexico**:  New Mexico's Attorney General has no authority to bring a *parens patriae* claim for damages on behalf of New Mexico citizens.  Although New Mexico disagrees, the three reasons it offers in support are each flawed.

First, New Mexico cites two unpublished decisions for the proposition that it may "bring *parens patriae* actions to enforce antitrust laws on behalf of the states' citizens."  *See* Opp'n at 23 (citing *New Mexico v. Scott & Fetzer Co.*, No. 81-cv-054, 1981 WL 2167, at *1-*2 (D.N. M. Dec. 22, 1981)); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 386 (D.D.C. 2002). While New Mexico may bring suit to enforce the federal antitrust laws, it may not, as Defendants maintain, "sue in its *parens patriae* capacity on behalf of natural persons for damages."  Mot. at 8 n.15.  The cases New Mexico cites do not suggest otherwise.  *Scott & Fetzer*, for example, does not concern or even use the word "damages," and instead establishes only that the Attorney General can bring suit under the statute.  *See generally* No. 81-054-JB, 1981 WL 2167, at *1 (D. N.M. Dec. 22, 1981); *see also Lorazepam*, 205 F.R.D. at 386.  The question here is not whether the Attorney General can bring suit, but whether it may bring a suit for damages in the state's capacity as *parens patriae*.  The Attorney General may not bring such a suit.  *Infineon Techs. AG*, 531 F. Supp. 2d at 1168.

Second, New Mexico claims authority to "seek damages on behalf of the state's residents" under §57-1-3(B) and §57-1-14, Opp'n at 23, but also claims that the definition of "person" in Section 57-1-1.2 does not apply to Section 57-1-3(A).  *See id.*  These arguments do not hold. "Person" is defined, "[a]s used in the antitrust act," to expressly exclude the state "except as used in Subsection B of Section 57-1-3."  N.M. Stat Ann. § 57-1-1.2.  Section 57-1-3(A) of the statute allows "any person threatened with injury or injured in his business or property. . . to bring an action for appropriate injunctive relief, up to threefold damages sustained and costs and reasonable

attorneys' fees." *Id.*  This does not include the state, because the state is not a person under the statute.  *See* N.M. Stat Ann. § 57-1-1.2.  Section 57-1-3(B) of the statute—in which the state is a "person"—only gives the Attorney General power to bring suit "on behalf of the state, a political subdivision thereof, or any public agency," not on behalf of the states' residents.  *Id*; *accord California v. Infineon Technologies, AG,* 531 F. Supp. 2d 1124, 1168 (N.D. Cal. 2007) (dismissing New Mexico's claim for damages on behalf of natural persons in a *parens patriae* capacity under Section 57-1-3 after finding no "authority specifically indicating or implying that the New Mexico Attorney General's suit for damages may go forward in a parens patriae capacity on behalf of natural persons").

Finally, New Mexico suggests it has *parens patriae* authority to seek damages on behalf of consumers based on Section 57-1-15, which requires New Mexico's antitrust laws to be "construed in harmony" with federal antitrust laws.  *See* Opp'n at 23 (citing N.M. Stat. Ann. § 57-1-15).  New Mexico then claims that because 15 U.S.C. § 15c gives the state Attorney General "authority to seek damages on behalf of State residents under federal law . . .  state law would be interpreted to extend the same capacity under state law." *Id.*  But Section 57-1-15 only requires that the state Antitrust Act "be construed in harmony with judicial interpretations of the federal antitrust laws."  In other words, it instructs courts to interpret parallel terms of parallel New Mexico and federal antitrust statutes similarly.  It does *not* allow courts to import federal antitrust statutes wholesale into the New Mexico statute, thereby expanding the Attorney General's authority.  Unsurprisingly, New Mexico cites no case law in support of its extraordinary interpretation.  And, as explained above, "[*parens patriae*] authority must come not through judicial improvisation but by legislation

and rule making." *California v. Frito-Lay, Inc.*, 474 F.2d 774, 775-77 (9th Cir. 1973).  The Court should therefore reject New Mexico's unsupported argument.[15]

**New York**: First, New York cannot seek monetary damages as *parens patriae* under the Donnelly Act.  Opp'n at 24; Sec. Am. Compl. ¶ 1584.  In arguing to the contrary, New York disregards *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, which explains that "the [New York] legislature knew how to include language granting the Attorney General the right to sue 'in behalf of the people of the state' in the [Donnelly] Act's damages relief provision. . .[and] the legislature's failure to include [such] language in the provision authorizing damages suits was deliberate."  No. M 02-1486 PJH, 2007 WL 2517851, at *8, *9 (N.D. Cal. Aug. 31, 2007).  New York instead relies on *People v. Liberty Mutual Insurance Co.*, No. 2008-03972, 2008 WL 5934817 (N.Y. App. Div. Apr. 2, 2008), but that is misplaced.  Numerous federal courts have adhered to *DRAM* after *Liberty Mutual* was decided. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-00711 SI, 2011 WL 3475408, at *6 (N.D. Cal. Aug. 2011); *New York ex rel. Schneiderman v. Intel Corp.*, No. 09-827-LPS, 2011 WL 6100446, at *4 (D. Del. Dec. 7, 2011).  Indeed, in rejecting New York's reliance on *Liberty Mutual*, the courts in both *TFT-LCD* and *Schneiderman* noted that "*Liberty Mutual*'s treatment of the issue is 'exceeding[ly] brief' and 'does not discuss what relief would be available' in a *parens patriae* damages suit on behalf of individuals."  *Schneiderman*, 2011 WL 6100446, at *4 (quoting *TFT-LCD*, No. C 11-00711 SI, 2011 WL 3475408, at *6)).

New York's claims on behalf of unidentified governmental entities also fail.  New York Executive Law § 63(12) "does not vest the State Attorney General with authority to bring

---

[15] New Mexico also claims authority to seek restitution on behalf of consumers under N.M. Stat Ann. § 57-12-8(B).  Defendants do not dispute this claim.  Defendants dispute only that New Mexico has the right to seek "damages as *parens patriae*."

representative claims on behalf of unnamed government entities." *See In re DRAM Antitrust Litig.*, 2007 WL 2517851, at *12. Nor does New York identify any other basis for such authority. Opp'n at 24-26. New York, through its Attorney General, may seek remedies under the Donnelly Act on behalf of "a political subdivision or public authority of the state" only where the subdivision or authority so requests. N.Y. Gen. Bus. Law § 342-b. New York must plead that the political subdivision or public authority has specifically authorized the Attorney General to bring suit. *In re DRAM Antitrust Litig.*, 2007 WL 2517851, at *7; *New York v. Cedar Park Concrete Corp.*, 665 F. Supp. 238, 242 (S.D.N.Y. 1987). The *DRAM* court rejected the New York Attorney General's Donnelly Act claims brought on behalf of unidentified government entities because New York failed to "specifically identif[y]" and "affirmatively . . . demonstrate[]" that the agencies authorized the Attorney General to assert claims on their behalf. *In re DRAM Antitrust Litig.*, 2007 WL 2517851, at *7. New York filed this claim nearly two years ago and still fails to allege—both in the Second Complaint and in the present briefing—that any such authorization was made here (and, if so, by which entities). Accordingly, any claim brought by New York on behalf of governmental entities should be dismissed with prejudice.

*In re Lorazepam & Clorazepate Antitrust Litigation*, which New York cites for support, is equally unpersuasive. 205 F.R.D. 369 (D.D.C. 2002). In that case, without any analysis or context, the court held that North Carolina had authority to settle consumers' state antitrust claims. *Id.* That decision did not find that North Carolina had *parens patriae* authority, but rather only held that it had the functional equivalent of *parens patriae* authority in the limited context at issue. *See id.* at 386; *Infineon Techs. AG*, 531 Supp. 2d at 1165 ("[This case] … deal[s] with the ability of State Attorneys General to settle and release *parens patriae* claims on behalf of consumers, not

the ability of State Attorneys General to bring *parens patriae* claims for damages on behalf of consumers"). Thus, *In re Lorazepam* is inapposite, and New York's claims should be dismissed.

**Ohio**:  Ohio neither disputes that it is an indirect purchaser, nor that it has no *Illinois Brick* repealer statute.  Opp'n at 27-28.  Nevertheless, Ohio tries to circumvent *Illinois Brick*'s indirect purchaser bar by claiming that the bar applies only to claims for *compensatory* monetary damages, and not to claims for *equitable* monetary relief—in this case, disgorgement or restitution.  *Id.*  Ohio is wrong.  *See, e.g.*, *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 763 n.26 (E.D. Pa. 2014).

The reasoning in *Illinois Brick* against indirect purchasers' standing to seek compensatory damages applies equally to equitable remedies like disgorgement and restitution:

In *Illinois Brick*, the Supreme Court held that *any benefit* gained by the defendant manufacturer through anticompetitive conduct which violates the federal antitrust laws is to be taken away solely by the direct purchaser.  This follows from the holding in *Illinois Brick* that indirect purchasers are precluded from recovery under Section 4 of the Clayton Act; only the overcharged direct purchaser, 'and not others in the chain of manufacture or distribution, is the party 'injured in his business' within the meaning of the section.'

*In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 541 (E.D. Pa. 2010) (quoting *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-29 (1977)) (emphasis added).  Indeed, the majority of federal courts, including in this Circuit, have applied *Illinois Brick*'s indirect purchaser bar to dismiss state law claims for disgorgement or restitution.  *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 239 (M.D. Pa. 2010) ("[I]t would improperly displace the legislative prerogative to allow indirect purchasers … to vindicate antitrust injury via equitable relief in jurisdictions where the legislative body has not adopted an *Illinois Brick* repealer"); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 209-212 (D. Maine 2004).

Nothing in Ohio law requires a different result.  Ohio claims that the Attorney General is authorized by statute to seek "equitable relief" for alleged antitrust violations.  Opp'n at 27.  That is true—but only on behalf of direct purchasers, not indirect purchasers like Ohio in this case, because, "consistent with long-standing Ohio jurisprudence, which has followed federal law in antitrust matters, we adopt and follow *Illinois Brick*'s direct-purchaser requirement and hold that an indirect purchaser of goods may not assert a Valentine Act claim for alleged violations of Ohio antitrust law."  *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 798 (Ohio 2005).[16]  And the Ohio Supreme Court made clear in *Johnson* that equitable relief cannot be used to circumvent *Illinois Brick*.  *Id.* at 799 (dismissing indirect purchaser's restitution claim and stating "we are mindful of the court's concerns expressed in the case of *In re Terazosin Hydrochloride Antitrust Litigation*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001), where the court noted that '[s]tate legislatures and courts that adopted the *Illinois Brick* rule against indirect purchaser antitrust suits did not intend to allow an end run around the policies allowing only direct purchasers to recover.'" (alteration in original) (citation and internal quotation marks omitted)).[17]

**Oklahoma**:  Oklahoma law requires that its claims be dismissed.  Oklahoma courts are statutorily required to apply *Illinois Brick* and dismiss indirect purchaser claims brought under the Oklahoma Antitrust Reform Act.  *Major v. Microsoft Corp.*, 60 P.3d 511, 513 (Okla. Civ. App. 2002) (citing 79 Okla. St. Ann. § 212).  Here, too, the *Illinois Brick* indirect purchaser bar applies equally in Oklahoma to claims for monetary damages and equitable relief.  *California v. Infineon*

---

[16] *See also Aladdins Lights Inc. v. Eye Lighting Int'l*, 96 N.E.3d 864, 868 (Ohio Ct. App. 2007) ("In sum, an indirect purchaser of goods may not assert a Valentine Act claim for alleged violations of Ohio antitrust law.").

[17] Ohio's reliance on *F.T.C. v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1, 8 (D.D.C. 1999), does not save Ohio's claim from dismissal because *Mylan Labs* was decided before the Ohio Supreme Court's decision in *Johnson*.  Nor does *F.T.C. v. Vyera Pharm., LLC*, 479 F. Supp. 3d 31, 51-53 (S.D.N.Y. 2020), prevent dismissal here, because the *Vyera* court failed to consider or apply the Ohio Supreme Court's decision in *Johnson*, and it is in the minority of federal courts in permitting equitable relief despite *Illinois Brick*'s indirect purchaser bar. *Vyera* is also not binding on this Court.

*Techs. AG*, 531 F. Supp. 2d 1124, 1150 (N.D. Cal. 2007) (*all indirect purchaser claims, regardless whether they seek monetary or equitable relief,* are barred pursuant to Oklahoma's antitrust and consumer protection statutes.") (emphasis added).  Oklahoma's naked assertion to the contrary, with no citation to supporting precedent, *see* Opp'n at 28, should be rejected.

**Pennsylvania**:   None of Pennsylvania's claims for relief are cognizable.   First, Pennsylvania argues that its antitrust claims can somehow be transformed into fraud claims under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") by simply calling allegations of price-fixing and market allocation "fraudulent" and "deceptive." Opp'n at 28-30 (arguing that "Defendants' violation of the Sherman Act and Pennsylvania antitrust common law is substantially unfair and fraudulent in violation of the UTPCPL's catchall").  But that argument has been expressly rejected by Pennsylvania courts.  *See, e.g. Anadarko Petroleum Corp. v. Commonwealth*, 206 A.3d 51, 60 (Pa. Commw. Ct. 2019).  In *Anadarko*—a case that Pennsylvania relies on heavily—the Pennsylvania Attorney General *lost* on a nearly identical argument, where it asserted that the defendants' "market sharing agreements violated the UTPCPL through 'impairment of choice and the competitive process' … [which] 'created the likelihood of confusion and misunderstanding'" regarding the existence of competition and competitive prices in the market.  *Id*.  In rejecting that argument, the *Anadarko* court held that "the Attorney General's claim that the mere existence of these [market allocation] business dealings created 'impairment of choice and the competitive process' is insufficient" to state a UTPCPL claim, and that market sharing agreements, monopolistic behavior, and anticompetitive joint ventures "are not per se unlawful for purposes of the UTPCPL."  *Id*. at 60-61.  While Pennsylvania argues that its UTPCPL claims are different from those rejected in *Anadarko*, Opp'n at 28-29, n.9, they are, in fact, not.  The UTPCPL claims that survived a motion to dismiss in *Anadarko* specifically alleged that the

defendants deceived private landowners by "giving them misleading information," and making other false representations to the alleged victims, which those victims relied on to their detriment. *Anadarko*, 206 A.3d at 61. Here, Pennsylvania does not allege that any false representations were made to alleged victims, or that any alleged victims relied on misleading or false representations to their detriment, as is required for any UTPCPL claim. *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 412 (E.D. Pa. 2006) (holding that "in order to allege a violation of any provision of the UTPCPL, a plaintiff must allege that she justifiably relied on defendant's act or practice, and that she suffered an ascertainable loss as a result…plaintiffs must allege both reliance and causation"). For those reasons, and the reasons explained in Defendants' opening brief, Mot. at 15-17, Pennsylvania's UTPCPL claims should be dismissed.[18]

Pennsylvania's arguments that Defendants' alleged price-fixing and market allocation agreements are covered by other provisions of the UTPCPL are also without merit. Pennsylvania asserts that Defendants' alleged conduct violates the UTPCPL's prohibition on "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status affiliation or connection that he does not have," 73 P.S. § 201-2(4)(v), and "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they

---

[18] Pennsylvania recently lost another attempt to assert antitrust allegations as UTPCPL claims under the UTPCPL's "catchall" provision in *F.T.C. v. Vyera Pharmaceuticals*, 479 F. Supp. 3d 31, 50-52 (S.D.N.Y. 2020). In *Vyera*, much like this case, Pennsylvania argued that the defendants' alleged anticompetitive conduct was constructive fraud, and that the UTPCPL must be construed broadly to include antitrust violations, but the *Vyera* court held that "[w]hile the plaintiffs argue that they have pleaded 'constructive fraud,' they do not explain how the conduct at issue qualifies as constructive fraud, nor do they provide any authority suggesting that the reference to fraudulent conduct in the catchall provision of the UTPCPL should be interpreted to encompass constructive fraud." *Id*. at 51, n.13. Pennsylvania's bare assertions of constructive fraud based on alleged antitrust violations fail here for the same reason. Sec. Am. Compl. ¶ 1628 (asserting that Defendants' alleged price-fixing and market allocation agreements violate the UTPCPL's catchall provision because they constitute "constructive fraud").

are of another," 73 P.S. § 201-2(4)(vii). Sec. Am. Compl. ¶ 1643.  As this Court has explained, 73 P.S. § 201-2(4)(v) "prohibit[s] false advertising." *Baker*, 440 F. Supp. 2d at 412.  Allegations of price fixing and market allocation can hardly be considered false advertising.  Nor can those allegations reasonably be considered representations about the standard, quality, grade, style, or model of the pharmaceutical products Defendants sold.  Accordingly, Pennsylvania's claims that Defendants violated 73 P.S. § 201-2(4)(v) and (vii) should be dismissed.

Pennsylvania also argues that its allegations fit the defined prohibitions of the UTPCPL by citing every allegation it made in the Second Complaint, but none of Pennsylvania's allegations suffice to state a UTPCPL claim.  For example, Pennsylvania specifically cites paragraphs 1625(g) and 1628 of the Second Complaint, which allege that Defendants violated the UTPCPL by "[v]iolating Section 1 of the Sherman Act," "[v]iolating Pennsylvania antitrust common law," and "[e]ngaging in any conduct which causes substantial injury to consumers," and further violated the UTPCPL "[e]ach time Defendants knowingly breached a legal or equitably [sic] duty, justly reposed, within the generic pharmaceutical drug market."  Opp'n at 30.  Those allegations are a literal recitation of antitrust laws, combined with a vague assertion that breaching a legal or equitable duty constitutes a violation of the UTPCPL.  As explained above, a UTPCPL claim cannot be stated by merely alleging antitrust violations, and if any breach of a legal or equitable duty constitutes a UTPCPL violation—as Pennsylvania claims—then virtually any unlawful behavior would be covered by the UTPCPL.[19]

---

[19] Pennsylvania also cites *In re Processed Egg Prods. Antitrust Litigation*, 851 F. Supp. 2d 867, 900 (E.D. Pa. 2012), to argue that its antitrust allegations are covered by the UTPCPL, but that case addressed a Florida statute that differs from the UTPCPL on this exact issue. *Id.*  Unlike the UTPCPL—which provides a long list of fraudulent and deceptive conduct declared illegal but does not reference the FTC Act—the Florida statute at issue did not provide any examples of proscribed conduct; rather, the Florida statute explicitly stated that "great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act."  Fl. Stat. Ann. § 501.204.

Pennsylvania also fails to rebut Defendants' arguments that Pennsylvania's state-law claims should be dismissed because Pennsylvania has consistently and repeatedly refused to provide any information identifying or describing alleged victims,[20] and has not even alleged that such victims *exist* within the contours of its UTPCPL claims.  Not only does that refusal deprive Defendants of their right to "fair notice" of Pennsylvania's claims and grounds upon which they rest, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007), it also means that Pennsylvania's allegations cannot satisfy the requirements of reliance and causation that must be alleged to assert a valid UTPCPL claim.  *Baker*, 440 F. Supp. 2d at 412.  Pennsylvania further argues that that "Defendants have equal access to third parties from whom they can get the information," but third-party information does not provide any information as to whom Pennsylvania alleges Defendants caused harm.  Opp'n at 31 n.19.  Nor has Pennsylvania cooperated with Defendants' repeated requests to identify the third parties that would have information about alleged victims, leaving Defendants completely in the dark as to whom Defendants allegedly caused harm or how that harm was allegedly caused, and thus unable to prepare a proper defense.[21]

---

[20] Pennsylvania claims that it has "described" alleged victims, Opp'n at 31, n. 19, but it has *not* provided *any* such description other than vague references to "Pennsylvania consumers" and "the Commonwealth." Defendants do not know if "Pennsylvania consumers" refers to wholesalers, resellers, retail pharmacies, group purchasing organizations, pharmacy benefits managers, privately insured end-consumers, publicly insured end-consumers, uninsured end-consumers, hospitals, employers, penitentiaries, schools, some other party, or some combination of parties. That information is critical, because different defenses apply to different alleged victims. Nor can Defendants determine what "the Commonwealth" means in the context of Pennsylvania's claims, since Pennsylvania has represented that it is not seeking recovery for payments made by Pennsylvania agencies, and Defendants are unaware of how "the Commonwealth" pays for or reimburses pharmaceuticals other than through its agencies.

[21] Pennsylvania has further added to the confusion by making contradictory representations about what it is claiming and on whose behalf.  For example, Pennsylvania seeks recovery for each time the Commonwealth allegedly "paid supra-competitive, artificially inflated" prices, and "paid an unfairly or unconscionably inflated price," *see, e.g.*, Sec. Am. Compl. ¶ 1625, but Pennsylvania also represented (in multiple briefs in relation to the parties pending discovery dispute) that it is not seeking recovery for product purchases made by Pennsylvania's agencies. *See, e.g.,* Commw. Obj., Dkt. 1482 at 7. Pennsylvania's product purchases are made through Pennsylvania agencies, so both of those representations cannot be true.

At bottom, Pennsylvania is attempting to assert quintessential antitrust claims (price-fixing and market allocation) as consumer protection fraud claims to avoid the pleading and standing requirements of its antitrust claims (and in furtherance of its attempt to avoid producing *any* discovery in this case), but has not even alleged the most basic requirements of the consumer protection claims it seeks to assert.  Pennsylvania has not alleged that victims or categories of victims exist, or that any relevant transactions took place in Pennsylvania; it has not identified any representations from Defendants that allegedly constitute fraud under the UTPCPL, nor alleged that any victims or categories of victims relied on those unidentified representations; and it has not alleged that particular conduct by Defendants proximately caused harm.  Pennsylvania has not alleged or otherwise suggested the existence of any evidence to support its claims and has unequivocally refused all requests for information related to its claims.  When Defendants point out those deficiencies and the general lack of substance in Pennsylvania's claims, Pennsylvania's response is that it used the words "fraudulent" and "deceptive" to describe alleged antitrust violations, and that the UTPCPL should be "liberally construed."  Opp'n at 29.  Those responses do not come close to rectifying the fatal defects in Pennsylvania's claims.   Accordingly, Pennsylvania's state-law claims should be dismissed.

**Puerto Rico**:  Puerto Rico's arguments on standing and unjust enrichment are meritless.  First, even though Puerto Rico has no *Illinois Brick*-repealer legislation or specific authorization to pursue damages for indirect purchases, the States nevertheless maintain that Puerto Rico is not limited by *Illinois Brick* and may thus sue on behalf of indirect purchasers.  Opp'n at 32.  On top

of citing two irrelevant cases as "controlling,"[22] Opp'n at 33, Puerto Rico cites just one federal

district court decision that allowed indirect purchaser damages by incorrectly applying precedent.

*Rivera-Muñiz v. Horizon Lines, Inc.*, 737 F. Supp. 2d 57 (D.P.R. 2010).[23]  But Courts have since

uniformly rejected *Rivera-Muñiz* and consistently found that Puerto Rico law precludes indirect

purchaser damages.  *See In re Aggrenox Antitrust Litig*., 94 F. Supp. 3d 224, 252 (D. Conn. 2015)

(dismissing indirect purchaser claims under Puerto Rico law, rejecting *Rivera-Muñiz*); *In re*

*Nexium Esomeprazole Antitrust Litig*., 968 F. Supp. 2d 367, 410 (D. Mass. 2013) (same); *In re*

*Opana ER Antitrust Litig*., 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016) (same).  Puerto Rico's

antitrust damages claims should therefore be dismissed.

Second, Plaintiffs' unjust enrichment argument for Puerto Rico fails to address why Puerto

Rico is entitled to unjust enrichment damages for the same factual allegations that Puerto Rico

asserts in their claims for statutory damages.[24]  Under Puerto Rico law, unjust enrichment claims

are available only if there is "no applicable statute" permitting remedy.  *Westernbank Puerto Rico*

*v. Kachkar*, No. 07-cv-1606 (ADC/BJM), 2009 WL 6337949, at *29 (D.P.R. Dec. 10, 2009).

Puerto Rico's antitrust statute is an "applicable statute," thus precluding Puerto Rico's unjust

---

[22] *See G.G. & Supp. Corp. v. S. & F. Sys., Inc.,* 153 D.P.R. 861, 874 (P.R. 2001) (concerning applicability of per se and rule of reason categories); *P.R. Fuels, Inc. v. Empire Gas Co*., 149 P.R. Dec. 691, 711-712 (1999) (concerning contribution under Puerto Rico antitrust law).

[23] Specifically, the decision relied on by *Rivera-Muñiz* turned on an issue of causation, and whether Puerto Rico law required proof of antitrust injury; it did not concern indirect purchaser standing.  *See Pressure Vessels of P.R., Inc. v. Empire Gas de P.R.*, 137 P.R. Dec. 497 (1994).

[24] Puerto Rico curiously cites two cases that support Defendants' argument.  *See Hatton v. Mun. de Ponce*, 134 P.R. Dec.. 1001 (1994); *Ortiz Andujar v. E.L.A*., 122 P.R. Dec. 817 (1988).  As the Puerto Rico Supreme Court explained in *E.L.A. v. Cole*, "[u]njust enrichment is properly spoken of when the law has not provided for a situation in which a patrimonial displacement occurs that does not find a reasonable explanation in the current legislation." 164 P.R. Dec. 608, 632-33 (2005) (citing *Ortiz Andujar v. E.L.A*., 122 P.R. Dec. 817, 822 (1988)); *see also Ortiz Andujar*, 122 P.R. Dec. at 822 (applying unjust enrichment doctrine when the court faced a "novel controversy" that the "legislator has not expressly foreseen or provided a solution."); *Hatton v. Mun. de Ponce*, 134 P.R. Dec. 1001, 1010 (1994) ("When defining [the unjust enrichment] contours we have clarified that it will not be applied when it is contrary to a clear public policy, embodied in a statute or in the Constitution.") (emphasis added).

enrichment claim because it provides Puerto Rico a cause of action.  *See* 10 L.P.R.A. §§ 258, 268(a).  In a last-ditch effort to overcome that reality, Puerto Rico selectively misquotes its own statute to argue that Puerto Rico law allows "the court to determine what remedy to require." Opp'n at 34-35.  But the statute that Puerto Rico cites for that argument only authorizes the Department of Consumer Affairs to hold hearings and issue administrative remedies—it does *not* authorize a court to "prescribe" unjust enrichment when that remedy is not otherwise authorized under Puerto Rico law.  *Compare* Opp'n at 34-35 ("Sections 259(c) and (i) allow the court to prescribe 'the most appropriate remedy.'"), *with* 10 L.P.R.A. § 259(c) and (i) (granting the *Department of Consumer Affairs* the power to adjudicate administrative complaints and "grant[] the most appropriate remedy") (emphasis added).  Puerto Rico's unjust enrichment claim should be dismissed.

**Rhode Island**:  Rhode Island does not have the requisite statutory authority to pursue its claims in federal court under its state antitrust law and its claims should be dismissed.  First, Rhode Island confuses its own statutory authority to pursue these claims with the Court's undisputed supplemental jurisdiction to hear them.  *See* Opp'n at 35-36.  Next, it asserts broadly that it has "clear statutory authority to pursue its requested relief," ignoring the crucial question of *where* it may pursue that relief.  *Id.* at 35.  As Defendants explained, Mot. at 8 n.18, that statutory authority unambiguously limits Rhode Island to pursuing its state law claims "in superior court."  R.I. Gen. Laws Ann. § 6-36-12(a); *id.* § 6-36-11(b); *id.* § 6-36-10(a)–(b)(1).  Rhode Island argues that these provisions do not "strip" its authority to pursue state law claims in federal court, Opp'n at 36, but that gets it precisely backwards: these provisions set out Rhode Island's *only* authority to pursue these state law claims, *i.e.*, "in superior court."  Tellingly, Rhode Island fails to offer a single case in which a court found otherwise, and thus it relies on inapposite statutes and cases involving other

34

states.  Opp'n at 36.  Rhode Island also acknowledges that it is "no longer seeking compensatory damages on behalf of the state's economy or consumers under the [Rhode Island Antitrust Law], nor is the State pursuing its claims under Rhode Island Deceptive Trade Practices Act."  Opp'n at 25.  As such, Defendants request an order dismissing those claims with prejudice.

**Tennessee**:  Tennessee asks the Court to ignore relevant state precedent holding that *parens patriae* damages claimed on behalf of individual citizens constitute "a drastic departure from accepted practice" in Tennessee.  *State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III, 1980 WL 4696, at *5 (Tenn. Ch. Sept. 25, 1980).  Instead, Tennessee points to a single non-binding federal decision that upheld a district court's imposition of an appeal bond and that mentioned, but did not review, a district court's conclusion that the State had the *parens patriae* authority it sought on the facts of that case.  *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 814 (6th Cir. 2004).  Tennessee also cites *In re Lorazepam & Clorazepate Antitrust Litigation*, a case that only addressed whether Tennessee had authority to settle a claim on behalf of Tennessee consumers, not its ability to bring *parens patriae* claims for damages.  205 F.R.D. 369 (D.D.C. 2002).[25]  Neither case provides Tennessee authority to sue for damages *parens patriae*.[26]  As explained above, a state cannot assert claims for monetary recovery on behalf of injured citizens without explicit authorization under state law.  *California v. Frito-Lay, Inc.*, 474 F.2d 774, 775-77 (9th

---

[25] Moreover, the statute and case law cited by the court in that decision make no reference to *parens patriae* standing.  *See* Tenn. Code Ann. § 8-6-109; *State v. Health*, 806 S.W.2d 535 (Tenn. Ct. App. 1990); *State ex rel. Inman v. Brock*, 622 S.W.2d 36 (Tenn. 1981).

[26] Likewise, Tennessee's attempted reliance upon Tennessee statutes falls flat. In fact, Tennessee statutes demonstrate that Tennessee does not have the right to seek damages *parens patriae*. *Compare* Tenn. Code Ann. § 47-25-106 (providing that a "*person* who is injured or damaged . . . may sue for and recover . . . the full consideration or sum paid by the person . . . ." (emphasis added)) *with* Tenn. Code Ann. § 47-25-103(c) ("The attorney general and reporter has the power to institute *criminal* [as opposed to *civil*] proceedings against persons and corporations for violations of § 47-25-101 or § 47-25-102 [sections on lessening competition and price-fixing], that involve the award of a contract by the state . . . ." (emphases added)).

Cir. 1973).  Therefore, Tennessee's claims for damages asserted as *parens patriae* on behalf of Tennessee citizens should be dismissed.

**Virginia**:  Virginia has finally clarified its ambiguous pleadings and discovery responses, and confirmed that it is not seeking any damages in this litigation, Opp'n at 38–39.  Accordingly, Defendants request that the Court dismiss Virginia's damages claims with prejudice.

**Washington**:  To the extent Washington maintains that it may seek damages in its capacity as *parens patriae*—which remains unclear from the Opposition—it is wrong.  The governing statute and case law plainly establish that Washington's *parens patriae* authority does not include the power to recover damages.  Wash. Rev. Code Ann. § 19.86.080; *see also, e.g.*, *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 87 Wash. 2d 298, 319-20 (1976) (holding in context of approving a restitution order with a claims process for harmed consumers that "the legislature did not contemplate that the courts should inquire into the question of damages in an injunction action by the attorney general").[27]  The Washington statute provides only that the attorney general "may restrain prohibited acts"; even the "restoration" order in Wash. Rev. Code 19.86.080 is equitable in nature—it is not damages.  The Washington state legislature is well equipped to authorize damages should it choose to.  *Compare* Wash. Rev. Code Ann. § 19.86.080 *with* Wash. Rev. Code Ann. § 19.86.090 (authorizing suit by "any person injured" to "recover … actual damages").  It has not done so here.

**Wyoming**:  Wyoming's claim under the Wyoming Consumer Protection Act ("WCPA") remains deficient because that statute applies to "deceptive trade practice[s]," which do not include price fixing or market allocation.  *See* Wyo. Stat. Ann. § 40-12-105 (listing fourteen examples of

---

[27] Washington also claims that Defendants are misguided for "suggesting Washington seeks damages for state agencies under its *parens patriae* authority." Opp'n at 39.  Defendants have made no such argument.

false representations and misleading advertising, none of which are price fixing or market allocation).  Indeed, the States have not pointed to any case applying the WCPA to alleged claims of price fixing or market allocation.  The States' speculation that the Wyoming Supreme Court would adopt their expansive reading of the WCPA depends on courts treating the WCPA like statutes such as the FTC Act, which is not only broader in scope but also contains no specific guidance regarding "deceptive trade practices" like the WCPA does.[28]  Nor should the States' characterization of the statute as "remedial" enlarge the scope of the statute.[29]  Again, the Wyoming Supreme Court specifically weighed in on the WCPA's scope in *Herrig v. Herrig*: it was "drafted primarily to protect consumers from unscrupulous and fraudulent *marketing* practices."[30]  844 P.2d 487, 495 (Wyo. 1992) (emphasis added).  In light of *Herrig*, courts have

---

[28] The States argue that the WCPA should be interpreted in accordance with the FTC Act.  Opp'n at 41-42.  But, unlike the WCPA, the FTC Act is highly general and does not list specific examples.  *See* 15 U.S.C. § 45(a).  As such, courts analyzing the FTC Act have adopted a correspondingly broad interpretation of "unfairness."  *See F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 454 (1986) ("The standard of 'unfairness' under the [FTC] Act[, 15 U.S.C.S. § 45,] is by necessity, an elusive one").  Furthermore, the cases that the States cite to support application of the FTC Act to state laws do not address Wyoming law.  *See In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 900 (E.D. Pa. 2012); *F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. at 454.

[29] The States cite cases not relevant to the WCPA.  *See Showpiece Homes Corp. v. Assurance Co. of America*, 38 P.3d 47, 50-51 (Colo. 2001) (interpreting Colorado law); *Houghton v. Franscell*, 870 P.2d 1050, 1052 (Wyo. 1994) (interpreting the Wyoming Public Records Act).

[30] Wyoming also argues that Wyoming's antitrust law does not provide the exclusive remedy for antitrust conduct, Opp'n at 41, but Defendants have not argued that antitrust law is the exclusive remedy, nor does the *Herrig* holding rely on an exclusive remedy theory.  *See* 844 P.2d at 495.

routinely dismissed claims brought under the WCPA for alleged anticompetitive conduct.[31]   The

same result should follow here.[32]

## CONCLUSION

For the reasons described above and in Defendants' November 2, 2020 Motion to Dismiss

Plaintiffs' State-Law Claims, the state-law claims identified should be dismissed with prejudice.[33]

---

[31] *See In re Static Random Access Memory (SRAM) Antitrust Litig*., 580 F. Supp. 2d 896, 909-10 (N.D. Cal. 2008) (dismissing WCPA claims because "the act does not extend to antitrust violations" (citing *Herrig*, 844 P.2d at 495)); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig*., 516 F. Supp. 2d 1072, 1119-20 (N.D. Cal. 2007) ("In the court's view, the Wyoming Supreme Court would be of a similar mind set here [as in *Herrig*], and if given the opportunity, would hold that plaintiffs' claim pursuant to the [W]CPA, which is based on allegations of antitrust violations, is not cognizable under the statute. The [W]CPA is targeted at 'unscrupulous and fraudulent marketing practices' that are distinguishable from allegations of antitrust violations.").

[32] In a final effort to survive dismissal, Wyoming suggests that it may "ultimately prove a consumer protection claim separate and apart from [its] antitrust claim."  Opp'n at 42.   However, Wyoming's WCPA claim is inextricable from its underlying price fixing and market allocation allegations.  *See* Sec. Am. Compl. ¶¶ 1724-1725 (alleging deceptive acts or practices based on price fixing and anticompetitive conduct).

[33] For a concise listing of Defendants' dismissal requests, please see Appendix A.

Dated: February 26, 2021

Respectfully submitted,

/s/ Sheron Korpus
Sheron Korpus
Seth A. Moskowitz
Seth Davis
David M. Max
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
skorpus@kasowitz.com
smoskowitz@kasowitz.com
sdavis@kasowitz.com
dmax@kasowitz.com

*Counsel for Defendants Actavis Elizabeth, LLC,*
*Actavis Holdco U.S., Inc., and Actavis Pharma,*
*Inc.*

/s/ Steven A. Reed
R. Brendan Fee
Steven A. Reed
Melina R. DiMattio
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile:  (215) 963-5001
brendan.fee@morganlewis.com
steve.reed@morganlewis.com
melina.dimattio@morganlewis.com

Wendy West Feinstein
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219
Telephone: (412) 560-7455
Facsimile:  (415) 560-7001
wendy.feinstein@morganlewis.com

*Counsel for Defendant Glenmark Pharmaceuticals,*
*Inc., USA*

/s/ Jasmeet K. Ahuja
Jasmeet K. Ahuja
**HOGAN LOVELLS US LLP**
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

Benjamin F. Holt
Adam K. Levin
Justin W. Bernick
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
benjamin.holt@hoganlovells.com
adam.levin@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Defendant Mylan Pharmaceuticals Inc.*

/s/ Saul P. Morgenstern
Saul P. Morgenstern
Margaret A. Rogers
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 W. 55th Street
New York, NY 10019
Telephone: (212) 836-8000
Facsimile:  (212) 836-8689
margaret.rogers@arnoldporter.com
saul.morgenstern@arnoldporter.com


Laura S. Shores
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue
Washington, DC 20001
Telephone: (202) 942-5000
laura.shores@arnoldporter.com


*Counsel for Defendants Sandoz Inc. and Fougera Pharmaceuticals Inc.*


/s/ Leiv Blad
Leiv Blad
Zarema Jaramillo
Meg Slachetka
**LOWENSTEIN SANDLER LLP**
2200 Pennsylvania Avenue
Washington, D.C. 20037
Telephone: (202) 753-3800
Fax: (202) 753-3838
lblad@lowenstein.com
zjaramillo@lowenstein.com
mslachetka@lowenstein.com


*Counsel for Defendants Lupin Pharmaceuticals, Inc. and David Berthold*


/s/ John E. Schmidtlein
John E. Schmidtlein
Sarah F. Kirkpatrick
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile:  (202) 434-5029
jschmidtlein@wc.com
skirkpatrick@wc.com


*Counsel for Defendant Par Pharmaceutical Companies, Inc.*

/s/ Raymond A. Jacobsen, Jr.
Raymond A. Jacobsen, Jr.
Paul M. Thompson (Pa. Bar No. 82017)
Lisa (Peterson) Rumin
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, NW
Washington, D.C. 20001
Telephone: (202) 756-8000
rayjacobsen@mwe.com
pthompson@mwe.com
lrumin@mwe.com

Nicole L. Castle
**MCDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, NY 10173
Telephone: (212) 547-5400
ncastle@mwe.com

*Counsel for Defendants Amneal*
*Pharmaceuticals, Inc. and Amneal*
*Pharmaceuticals LLC*

/s/ Jay P. Lefkowitz, P.C.
Jay P. Lefkowitz, P.C.
Devora W. Allon, P.C.
Alexia R. Brancato
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jay.lefkowitz@kirkland.com
devora.allon@kirkland.com
alexia.brancato@kirkland.com

*Counsel for Defendant Upsher-Smith*
*Laboratories, LLC*

/s/ Wayne A. Mack
Wayne A. Mack
Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1152
wamack@duanemorris.com
spmcconnell@duanemorris.com
sckulik@duanemorris.com

*Counsel for Defendant Aurobindo Pharma*
*USA, Inc.*

41

/s/ J. Gordon Cooney, Jr.
J. Gordon Cooney, Jr.
John J. Pease, III
Alison Tanchyk
William T. McEnroe
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile:  (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 739-3000
Facsimile:  (202) 739-3001
amanda.robinson@morganlewis.com

*Counsel for Defendant Teva Pharmaceuticals
USA, Inc.*

/s/ James W. Matthews
James W. Matthews
Katy E. Koski
John F. Nagle
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, Massachusetts 02199
Telephone: (617) 342-4000
jmatthews@foley.com
kkoski@foley.com
jnagle@foley.com

James T. McKeown
Elizabeth A. N. Haas
Kate E. Gehl
**FOLEY & LARDNER LLP**
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 271-2400
jmckeown@foley.com
ehaas@foley.com
kgehl@foley.com

Steven F. Cherry
April N. Williams
Claire Bergeron
**WILMER CUTLER PICKERING HALE
AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
steven.cherry@wilmerhale.com
april.williams@wilmerhale.com
claire.bergeron@wilmerhale.com

Terry M. Henry
Melanie S. Carter
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA  19103
Telephone: (215) 569-5644
thenry@blankrome.com
mcarter@blankrome.com

*Counsel for Defendant Apotex Corp.*

/s/ Damon W. Suden
William A. Escobar
Damon W. Suden
Clifford Katz
**KELLEY DRY & WARREN LLP**
101 Park Ave
New York, New York 10178
Telephone: (212) 808-7800
Facsimile:  (212) 808-7987
wescobar@kelleydrye.com
dsuden@kelleydrye.com
ckatz@kelleydrye.com

*Counsel for Defendants Wockhardt USA LLC
and Morton Grove Pharmaceuticals, Inc.*

/s/ Ilana H. Eisenstein
Ilana H. Eisenstein
Ben C. Fabens-Lassen
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com

Edward S. Scheidman
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
edward.scheideman@dlapiper.com

*Counsel for Defendants Pfizer Inc. and
Greenstone, LLC*

/s/ Jason R. Parish
Jason R. Parish
Martin J. Amundson
**BUCHANAN INGERSOLL & ROONEY
PC**
1700 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 452-7900
Facsimile:  (202) 452-7989
jason.parish@bipc.com
martin.amundson@bipc.com

Bradley Kitlowski
**BUCHANAN INGERSOLL & ROONEY
PC**
Union Trust Building
Pittsburgh, PA 15219
Telephone: (412) 562-8800
Facsimile:  (412) 562-1041
bradley.kitlowski@bipc.com

*Counsel for Defendant Zydus Pharmaceuticals
(USA) Inc.*

/s/ Roger B. Kaplan
Roger B. Kaplan
Jason Kislin
Aaron Van Nostrand
**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone: (973) 360-7957
Facsimile:  (973) 295-1257
kaplanr@gtlaw.com
kislinj@gtlaw.com
vannostranda@gtlaw.com

Brian T. Feeney
**GREENBERG TRAURIG, LLP**
1717 Arch St., Suite 400
Philadelphia, PA 19103
Telephone: (215) 988-7812
Facsimile:  (215) 717-5265
feeneyb@gtlaw.com

*Counsel for Defendant Dr. Reddy's Laboratories, Inc.*

/s/ Stacy Anne Mahoney
Stacey Anne Mahoney
**MORGAN LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
stacey.mahoney@morganlewis.com

*Counsel for Defendant Breckenridge Pharmaceutical, Inc.*

/s/ Ryan T. Becker
Gerald E. Arth
Ryan T. Becker
Nathan M. Buchter
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2000
Facsimile:  (215) 299-2150
garth@foxrothschild.com
rbecker@foxrothschild.com
nbuchter@foxrothschild.com

George G. Gordon
Julia Chapman
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2382
Facsimile: (215) 655-2240
george.gordon@dechert.com
julia.chapman@dechert.com

*Counsel for Defendant Lannett Company, Inc.*

*/s/ Erik T. Koons*
John M. Taladay
Erik T.Koons
Stacy L. Turner
Christopher P. Wilson
**BAKER BOTTS LLP**
700 K Street, NW
Washington, DC 20004
Telephone: (202) 639-7700
Facsimile:  (202) 639-7890
erik.koons@bakerbotts.com
john.taladay@bakerbotts.com
stacy.turner@bakerbotts.com
christopher.wilson@bakerbotts.com

Lauri A. Kavulich
Ann E. Lemmo
**CLARK HILL PLC**
2001 Market St, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
Facsimile:  (215) 640-8501
lkavulich@clarkhill.com
alemmo@clarkhill.com

Lindsay S. Fouse
**CLARK HILL PLC**
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7711
Facsimile:  (412) 394-2555
lfouse@clarkhill.com

*Counsel for Defendant Taro Pharmaceuticals U.S.A., Inc.*

*/s/ G. Robert Gage, Jr.*
G. Robert Gage, Jr.
**GAGE SPENCER & FLEMING LLP**
410 Park Avenue
New York, New York 10022
Telephone: 212-768-4900
grgage@gagespencer.com

*Counsel for Defendant Ara Aprahamian*

*/s/ Larry H. Krantz*
Larry H. Krantz
Jerrold L. Steigman
**KRANTZ & BERMAN LLP**
747 Third Avenue, 32nd Floor
New York, NY 10017
Telephone: (212) 661-0009
Facsimile:  (212) 355-5009
lkrantz@krantzberman.com
jsteigman@krantzberman.com

*Counsel for Defendant James Brown*

/s/ Thomas H. Suddath, Jr.
Thomas H. Suddath, Jr.
Anne E. Rollins
Thomas P. Reilly
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
tsuddath@reedsmith.com
arollins@reedsmith.com
treilly@reedsmith.com

Michael E. Lowenstein
**REED SMITH LLP**
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
mlowenstein@reedsmith.com

*Counsel for Defendant Maureen Cavanaugh*

/s/ Amy B. Carver
Amy B. Carver
**WELSH & RECKER, P.C.**
306 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 972-6430
abcarver@welshrecker.com

*Counsel for Defendant Tracy Sullivan DiValerio*

/s/ James A. Backstrom
James A. Backstrom
**JAMES A. BACKSTROM, COUNSELLOR AT LAW**
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1923
Telephone: (215) 864-7797
jabber@backstromlaw.com

*Counsel for Defendant Marc Falkin*

/s/ Robert E. Connolly
Robert E. Connolly
**LAW OFFICE OF ROBERT CONNOLLY**
301 N. Palm Canyon Dr.
Palm Springs, CA 92262
Telephone: (215) 219-4418
bob@reconnollylaw.com

*Counsel for Defendant James Grauso*

/s/ Robert E. Welsh, Jr.
Robert E. Welsh, Jr.
Alexandra Scanlon Kitei
**WELSH & RECKER, P.C.**
306 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 972-6430
Facsimile: (215) 972-6436
rewelsh@welshrecker.com
akitei@welshrecker.com

*Counsel for Defendant Kevin Green*

/s/ Jeffrey D. Smith
Jeffrey D. Smith
Alice Bergen
**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**
61 South Paramus Road
Paramus, New Jersey 07652
Telephone: (201) 907-5228
jsmisth@decotiislaw.com
abergen@decotiislaw.com

*Counsel for Defendant Robin Hatosy*

/s/ Erica S. Weisgerber
Erica S. Weisgerber
Erica S. Weisgerber (N.Y. Bar No. 4647749)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212-909-6000
Facsimile: 212-909-6836
eweisgerber@debevoise.com

Edward D. Hassi (D.C. Bar No. 1026776)
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: 202-383-8000
Facsimile: 202-383-8118
thassi@debevoise.com

*Counsel to Defendant Armando Kellum*

/s/ Michael G. Considine
Michael G. Considine
Laura E. Miller
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, NY 10004
considine@sewkis.com
millerl@sewkis.com

*Counsel for Defendant Jill Nailor*

/s/ L. Barrett Boss
L. Barrett Boss
S. Rebecca Brodey
Thomas J. Ingalls
**COZEN O'CONNOR P.C.**
1200 19th Street NW, Suite 300
Washington, DC 20036
Telephone: (202) 912-4814
Facsimile: (866) 413-0172
bboss@cozen.com
rbrodey@cozen.com
tingalls@cozen.com

Peter M. Ryan
**COZEN O'CONNOR P.C.**
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2130
Facsimile: (215) 701-2157
pryan@cozen.com

*Counsel for Defendant James Nesta*

/s/ Bradley Love
Bradley Love
Larry Mackey
Neal Brackett
Alyssa C. Hughes
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
bradley.love@btlaw.com
larry.mackey@btlaw.com
neal.brackett@btlaw.com
alyssa.hughes@btlaw.com

*Counsel for Defendant Nisha Patel*

/s/ David Schertler
David Schertler
Lisa Manning
**SCHERTLER ONORATO MEAD &
SEARS, LLP**
901 New York Avenue, N.W.
Suite 500 West
Washington, DC 20001
Telephone: (202) 628-4199
Facsimile:  (202) 628-4177 (fax)
dschertler@schertlerlaw.com
lmanning@schertlerlaw.com

*Counsel for Defendant Konstantin Ostaficiuk*

/s/ Sozi Pedro Tulante
Sozi Pedro Tulante
Jeffrey J. Masters
Carla G. Graff
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile:  (215) 994-2222
sozi.tulante@dechert.com
jeffrey.masters@dechert.com
carla.graff@dechert.com

*Counsel for Defendant David Rekenthaler*

/s/ David Reichenberg
David Reichenberg
**COZEN O'CONNOR P.C.**
277 Park Avenue, 20th Floor
New York, NY 10172
Telephone: (212) 883-4956
dreichenberg@cozen.com

Stephen A. Miller
Calli Jo Padilla
**COZEN O'CONNOR P.C.**
1650 Market Street
Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-6938
Facsimile:  (215) 253-6777
samiller@cozen.com
cpadilla@cozen.com

*Counsel for Defendant Richard Rogerson*