UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*The State of Connecticut, et al. v.*<br>*Teva Pharmaceuticals USA, Inc., et al.* | HON. CYNTHIA M. RUFE<br><br>19-cv-2407-CMR |

**REPLY IN FURTHER SUPPORT OF DEFENDANT DAVID BERTHOLD'S MOTION
TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2
    I.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. BERTHOLD. ............................................................................................................ 2
    II.   THE COMPLAINT IS BARRED BY STATUTE OF LIMITATIONS. ............... 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2008) ............................................................................................................. 2, 3, 5

*Alvord-Polk, Inc. v. F. Schumacher & Co.*,
　37 F.3d 996 (3d Cir. 1994) ........................................................................................................ 2

*Atl. Richfield Co. v. USA Petroleum Co.*,
　495 U.S. 328 (1990) .................................................................................................................. 2

*In re Baby Food Antitrust Litig.*,
　166 F.3d 112 (3d Cir. 1999) ...................................................................................................... 2

*Bell Atlantic Corp v. Twombly*,
　550 U.S. 544 (2007) ............................................................................................................. 2, 4

*In re Blood Reagents Antitrust Litig.*,
　266 F. Supp. 3d 750 (E.D. Pa. 2017) ...................................................................................... 10

*NYNEX Corp. v. Discon, Inc.*,
　525 U.S. 128 (1998) .................................................................................................................. 2

*In re OSB Antitrust Litig.*,
　No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) ......................................................... 9

*Philadelphia Taxi Ass'n v. Uber Techs.*,
　886 F.3d 332 (3d Cir. 2018) ...................................................................................................... 2

*In re Processed Egg Prod. Antitrust Litig.*,
　No. 08-MD-02002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) ..................................... 9, 10

**STATUTES**

21 U.S.C. § 355(j) ............................................................................................................................ 7

**RULES**

Federal Rule of Civil Proceudre 12(b)(6) ....................................................................................... 3

**OTHER AUTHORITIES**

Katie Thomas, *20 States Accuse Generic Drug Companies of Price Fixing, N.Y. Times*, Dec. 15, 2016, at B2 ...................................................................................................... 10

Case 2:19-cv-02407-CMR Document 230 Filed 02/26/21 Page 4 of 14

Defendant David Berthold ("Mr. Berthold") respectfully submits this Reply Memorandum of Law in further support of his Motion to Dismiss the Amended Complaint, ECF No. 184 ("Motion").

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition brief, ECF No. 210, ("Opposition") fails to rebut any of Mr. Berthold's dispositive arguments. Rather, the Opposition simply restates the same threadbare allegations included in the Amended Complaint, ECF No. 106 ("Complaint"). Because the Motion is effectively unrebutted, the Court should grant it in its entirety.

*First*, the Opposition admits that the only facts pled in the Complaint against Mr. Berthold are that he placed and received telephone calls to colleagues at other generic pharmaceutical companies. Plaintiffs admit that they do not know what Mr. Berthold said on those calls and alleged no plausible facts that he entered into an agreement to fix prices, rig bids, or allocate customers.

*Second*, the Complaint pleads circumstantial evidence that Mr. Berthold entered into such agreements, but those allegations fall far short of plausibly alleging that Mr. Berthold agreed with competitors to enter into a collusive agreement. Indeed, for most of the eleven drugs at issue as to Mr. Berthold, there literally are no facts pled with respect to him at all.

*Third*, Plaintiffs fail to identify any fact pled in the Complaint showing that Mr. Berthold engaged in any act in furtherance of the alleged conspiracy within the four-year statute of limitations. Plaintiffs rely on a vague allegation that Mr. Berthold placed and received phone calls after 2015, but fail to identify the substance of those calls or how they related to a particular drug, let alone to an unlawful agreement. Such vague and conclusory allegations do not satisfy Plaintiffs' burden to allege that Mr. Berthold engaged in an act in furtherance of the conspiracy within the limitations period. Absent such allegations, the Court should dismiss the Complaint.

1

**ARGUMENT**

I. **THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. BERTHOLD.**

Plaintiffs concede that they must allege "enough factual matter (taken as true) to suggest that an agreement was made." (Opp'n at 3.) Plaintiffs' attempt to satisfy this standard by citing telephone calls Mr. Berthold placed and received, without any evidence of what Mr. Berthold said or heard in those calls. Plaintiffs speculate on the substance of those calls, but that is insufficient to bear their burden because "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). Although the court must assume all reasonable factual inferences in the light most favorable to Plaintiffs, the Court is "not bound to accept as true" unsupported and conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

Plaintiffs also cannot satisfy their burden by relying on Mr. Berthold's communications with competitors. Section 1 of the Sherman Act "prohibits only agreements that *unreasonably* restrain trade." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133 (1998) (emphasis in original). Communications among competitors alone are insufficient to plead an agreement because they do not rise to the level of the "'competition-*reducing* aspect or effect . . .' that antitrust laws seek to curtail." *See Philadelphia Taxi Ass'n v. Uber Techs.*, 886 F.3d 332, 338 (3d Cir. 2018) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). The Third Circuit has held "that communications between competitors do not permit an inference or an agreement to fix prices unless 'those communications rise to the level of an agreement, tacit or otherwise.'" *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) (quoting *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1013 (3d Cir. 1994)).

2

Mr. Berthold's Motion showed that the allegations against him in the Complaint are so threadbare that they do not come close to satisfying Plaintiffs' burden. *See Iqbal*, 556 U.S. at 678. Plaintiffs' Opposition does not bother to address most of Mr. Berthold's arguments and instead merely restates the Complaint's conclusory allegations. Most egregiously, for several drugs, Plaintiffs make no factual allegations at all about Mr. Berthold. There is no conceivable way a party can plead no factual allegations and still satisfy Federal Rule of Civil Procedure 12(b)(6). Mr. Berthold responds below to Plaintiffs' arguments as to each of the eleven drugs at issue.

**Pravastatin.** Mr. Berthold demonstrated that Plaintiffs' allegations are fundamentally implausible. They allege that Mr. Berthold's employer, Defendant Lupin Pharmaceuticals, Inc. ("Lupin") entered into a price fixing agreement with four other competitors, but did not raise price until three months after the first generic (Glenmark) raised its price, and approximately three weeks after the second-to-last generic (Teva) raised its Pravastatin price. (*See* Compl. ¶¶ 682-703.) It simply is not plausible that Lupin entered into a price fixing agreement with four other generic manufacturers and then waited so long to act on the terms of that agreement. Plaintiffs' Opposition fails to address any of these arguments. Indeed, their argument regarding their allegations against Mr. Berthold does not even mention Pravastatin. (*See* Opp'n at 17-18.) Therefore, Plaintiffs have conceded Mr. Berthold's arguments, and the Court must dismiss this claim.

**Cefdinir Capsules, Cefdinir Oral Suspension, and Cefprozil Tablets.** The Motion showed that there are literally no allegations in the Complaint that Mr. Berthold took any action regarding these drugs. The only allegation relating to Lupin and these drugs does not even mention Mr. Berthold, and is merely a legal conclusion: "[I]n 2013 – after Defendant Patel joined Teva – Teva and Lupin conspired to fix and raise prices on . . . Cefinir Oral Suspension, Cefdinir Capsules, [and] Cefprozil Tablets . . . ." (Compl. ¶ 940.) Yet there is no discussion anywhere in the Complaint

3

about Mr. Berthold's conduct regarding these three drugs. Plaintiffs' Opposition argues that the Complaint adequately alleges wrongdoing by Mr. Berthold because Teva raised the price of these drugs. (Opp'n at 9.) Plaintiffs do not explain how Teva's actions have anything to do with Mr. Berthold. In the absence of any facts showing that he colluded with Teva, therefore, the Court must dismiss this claim. *Twombly*, 550 U.S. at 564.

**Cephalexin Oral Suspension.** Plaintiffs allege that Mr. Berthold "notified" Teva of Lupin's price increase on October 30, 2013, only one day before Lupin's price increase took effect. (Compl. ¶ 755.) This claim is implausible on its face. Plaintiffs do not allege a single communication between Mr. Berthold and Teva regarding *Teva's* price increase. Nor do Plaintiffs allege that Mr. Berthold agreed with Teva employees on a price, only that he notified Teva of Lupin's increase. Plaintiffs ignore that providing notice of a price increase alone is not illegal, or that, by the day beforehand, Lupin already would have set its price and notified its customers about the increase—so any discussion with Teva could not have impacted Lupin's plans. And as Plaintiffs acknowledge throughout the Complaint, manufacturers often learn about price increases (legally) from their customers. (*See, e.g.*, Compl ¶¶ 147, 155, 339, 886, 1017.)

Teva did not ultimately increase its price until April 4, 2014, more than five months after Lupin raised its price. (*Id*. ¶ 760.) It simply is not plausible that an agreement to raise price would involve no discussions of a coordinated increase and would provide for a five-month gap between the parties' price increases.

Plaintiffs' Opposition does not address this implausibility and instead invents details for which the Complaint offers no factual support. For example, Plaintiffs cite Paragraph 756 of the Complaint as evidence that Teva had advance notice of Lupin's price increase, citing an email in which a Teva employee referred to a rumor that Lupin was raising its price that very day. (Opp'n

4

at 6.) That hardly qualifies as evidence of collusion, and Plaintiffs pled no facts showing that Mr. Berthold provided this information to Teva, that he did so pursuant to an agreement to fix prices, or that Teva could not have learned the information from another, perfectly legitimate source, such as its own customers. Therefore, the Court must dismiss this claim.

**Drospirenone and Ethinyl Estradiol (Ocella).** The Motion showed that Plaintiffs' allegations are implausible because they are internally inconsistent. Plaintiffs allege that Mr. Berthold had been negotiating market entry of Lupin's generic Ocella with Teva for months, yet an internal Teva email reveals that Lupin's entry so surprised Teva that "Defendant Green announced to his colleagues: 'Lupin has entered and we need to evaluate.'" (Compl. ¶ 289.) It is hard to fathom a conspiracy in which Teva did not know when Lupin would launch. If Mr. Berthold had been coordinating entry with Teva, it would not have been surprised and would not have needed to "evaluate" the consequences of Lupin's entry. The only plausible conclusion from this email is that Lupin and Teva were not coordinating strategy in advance of Lupin's entry.

Plaintiffs' Opposition provides no explanation for their conflicting allegations that Teva both knew and did not know of Lupin's impending entry. Instead, it merely cites telephone calls between Mr. Berthold and Teva employees and invents the substance of those calls. (Opp'n at 5.) Plaintiffs cite no evidence supporting these conclusory allegations, and they fail to address the one actual communication that proves conclusively that Lupin and Teva were not colluding. Plaintiffs' factual allegations are construed in their favor; their fictional and conclusory allegations, no matter how creative, are not entitled to that construction. *See Iqbal*, 556 U.S. at 678. Therefore, the Court must dismiss this claim.

**Fenofibrate.** Plaintiffs allege that Mr. Berthold colluded with colleagues twice on this drug, but the Motion showed that Plaintiffs never allege that he did anything that was collusive.

5

*First*, they inexplicably allege that Mr. Berthold colluded on Teva's alleged 2013 decision to concede business to Mylan. (Compl. ¶ 177.) Plaintiffs do not plead how Mr. Berthold did or said anything of any consequence that would affect Teva's decision to concede business to a third-party manufacturer, Mylan. (*Id.*) None of this had anything to do with Lupin, and Mr. Berthold could not have entered into an alleged "collusive" agreement that did not require that he collude.

*Second*, Plaintiffs' allegation that Mr. Berthold colluded in 2014 with Teva and Zydus again has nothing to do with him. (*Id.* ¶¶ 432-33.) Plaintiffs allege that Teva conceded business to Zydus, not Lupin. (*Id.* ¶¶ 434-47.) Instead of addressing these arguments, Plaintiffs merely restate the Complaint's allegations. (Opp'n at 5-6.) They do not explain how Mr. Berthold could have colluded in a negotiation between Teva and other generic manufacturers involving the market entry of those generics, not Lupin. For these reasons, the Court should dismiss this claim against Mr. Berthold.

**Irbesartan.** The Motion showed that while Plaintiffs allege a number of calls between Mr. Berthold and Teva, they do not allege any conduct resulting from those calls. Plaintiffs allege an information exchange, which, again, is not itself illegal. Plaintiffs plead that a Teva employee called Mr. Berthold, who allegedly disclosed that Lupin was seeking a 15 percent share, that Lupin had already entered an agreement with "ABC" (AmerisourceBergen), and that "Zydus is out." (Compl. ¶ 273.) All of that was publicly available information, especially since Lupin had, according to the Complaint, already contacted customers; all Teva had to do to learn that information was contact those customers itself. Plaintiffs do not allege that Mr. Berthold communicated any additional information to Teva. (*See id.* ¶ 275.) Nor do Plaintiffs allege that Mr. Berthold did anything as a result of these communications. The Complaint thus does not allege an agreement between Mr. Berthold and Teva to do anything regarding Irbesartan.

Plaintiffs argue that the information Mr. Berthold allegedly provided Teva was "competitively sensitive." (Opp'n at 5.) It was not. Teva would already have known the generics in the market because only manufacturers with FDA-approved ANDAs[1] could market Irbesartan to customers. And because Teva was already talking with customers, it would have matched customers with manufacturers bidding for their business. That Lupin was allegedly seeking a 15 percent market share gave Teva no useful information because Lupin had already signed a contract that equaled about 15 percent of the market.[2] Therefore, the Opposition does not rebut Mr. Berthold's argument, and the Court must dismiss this claim against him.

**Lamivudine/Zidovudine (Generic Combivir).** The Motion showed that Plaintiffs identify many phone calls involving Mr. Berthold, but they do not allege that he did anything as a result of those calls. Plaintiffs emphasize that Teva knew when Lupin would enter the market, but that information was publicly available because Lupin had an approved ANDA and was already negotiating its entry with customers. (Compl. ¶¶ 259-269.) By the time Lupin entered, Teva had already negotiated all of its customer contracts. (*Id*. ¶¶ 266-68.) Plaintiffs allege that the calls allowed Lupin to obtain a 30 percent market share without "significantly" reducing price. (*Id*. ¶ 269.) Plaintiffs merely assume that the parties discussed entry and that Lupin's resulting market share was a result of the telephone calls. Yet, Plaintiff pled no facts supporting any of those conclusions, because none exist.

The Opposition asserts that the Mr. Berthold reached an agreement with Teva on the specific customers each would obtain, but no fact in the Complaint supports that allegation. (Opp'n at 4-5.) Plaintiffs offer only conclusory allegations that assume the contents of calls without

---

[1] Abbreviated New Drug Application. 21 U.S.C. § 355(j).
[2] As one of the three largest purchasers of generic drugs, Lupin's business with AmerisourceBergen would have been equal to at least 15 percent of the market. (Compl. ¶ 93.)

7

supplying a factual basis for that conclusion. Without such facts, the Complaint plausibly alleges only that Teva knew that Lupin was entering and was negotiating contracts with its customers. (*See* Compl. ¶¶ 259-269.) An exchange of that information does not adequately allege an antitrust claim against Mr. Berthold.

**Niacin ER Tablets.** The Motion showed that Plaintiffs' allegations concern actions by Teva, not Lupin. Plaintiffs suggest it was somehow unlawful that Teva knew that Lupin planned to enter on March 20, 2014, but that was because Teva's exclusivity ended on March 20th, which everyone in the market knew because Teva was the first ANDA filer. (Compl. ¶ 462.) Teva knew that Lupin was entering because it had an approved ANDA and had been contacting potential customers. (*Id.* ¶ 463.) Plaintiffs allege that Teva raised price before Lupin entered (*id.* ¶ 464), which Teva was free to do unilaterally. Plaintiffs also allege that Mr. Berthold discussed customer allocation with Teva and Zydus, but allege only that Teva conceded a customer to Zydus. (*Id.* ¶ 468.) They do not allege that Teva conceded business to Lupin. There simply are no allegations of any wrongdoing by Mr. Berthold. This claim against him therefore must be dismissed.

**Norethindrone/Ethinyl Estradiol (Balziva).** The Motion showed that Plaintiffs make the barest of allegations against Mr. Berthold on this drug. They allege that a customer (not Mr. Berthold) informed Teva on January 23, 2014, that a new market entrant had attempted to win its business and Teva "surmised" that Lupin was that new entrant. (*Id.* ¶ 294.) Thus, Lupin was already planning its market entry and negotiating contracts with customers without Teva's input. Plaintiffs allege that Teva then had internal discussions of its plans, and that Teva employees spoke with Mr. Berthold, but they have no evidence of the content of those calls. (*Id.* ¶¶ 295-96). Instead, they speculate without any factual support that Teva and Mr. Berthold coordinated Lupin's entry. (*Id.* ¶ 297-98.) As Lupin was already executing its entry plans, Plaintiffs' speculation is without

8

any factual basis. Plaintiffs' Opposition does not address any of these points. Instead, it merely repeats the Complaint's allegations verbatim. (Opp'n at 6.) Since Mr. Berthold's motion essentially is unopposed, the Court should dismiss this claim against him.

## II.     THE COMPLAINT IS BARRED BY STATUTE OF LIMITATIONS.

The Motion showed that all of the alleged facts Plaintiffs pled against Mr. Berthold occurred more than four years before Plaintiffs filed their first complaint against him. The Opposition concedes this. Each one of the "conspiratorial acts" the Opposition cites occurred well before May 10, 2015, the date four years before Plaintiffs' initial complaint against Mr. Berthold. (Compl. ¶¶ 172, 177, 260, 263, 273, 275, 279, 282, 286, 288.)

Plaintiffs make several arguments to excuse the untimeliness of their Complaint against Mr. Berthold. *First*, they argue that they alleged facts showing that Mr. Berthold engaged in acts in furtherance of the conspiracy within the limitations period. (Opp'n at 46-47.) That is false. Plaintiffs alleged that Mr. Berthold placed and received telephone calls from others in the industry. (Compl. ¶¶ 1063-75.) But Plaintiffs plead no facts showing that these calls were collusive or even what Mr. Berthold discussed in any of them. Plaintiffs cannot satisfy their burden of pleading an act in furtherance of the conspiracy within the limitations period by speculating what Mr. Berthold might have said in a telephone call. *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, at *5 (E.D. Pa. Aug. 3, 2007) (an antitrust "plaintiff must allege that each individual defendant joined the conspiracy and played some role in it").

*Second*, they argue that Mr. Berthold fraudulently concealed his conduct. This is absurd. Plaintiffs claimed to know of price fixing among generic manufacturers in July 2014, when they opened their investigation. (Compl. ¶ 4, 11.) Plaintiffs indisputably had inquiry notice of their claims, at which point the statute of limitations began to run. *See In re Processed Egg Prod.*

9

*Antitrust Litig.*, No. 08-MD-02002, 2011 WL 5980001, at *8 (E.D. Pa. Nov. 30, 2011) ("The [complaint] also fails to plausibly suggest that Plaintiffs actually or constructively knew of no facts or information that might have alerted a reasonable person to investigate the claim."); *see also In re Blood Reagents Antitrust Litig.*, 266 F. Supp. 3d 750, 786 (E.D. Pa. 2017) (concluding that the announcement of a Department of Justice investigation of the relevant market is a "clear triggering event" to impute knowledge to plaintiffs).

Plaintiffs boasted of their knowledge that the industry was rife with collusion. Plaintiffs filed their first complaint against generic manufacturers (including Teva) on December 14, 2016. Plaintiffs asserted then that they had gathered evidence against "many more" companies in the industry. In an interview with the *New York Times*, George Jepsen, Attorney General for the Plaintiff State of Connecticut, stated that his investigation "goes way beyond the two drugs in this lawsuit, and it involves many more companies than are in this lawsuit." Katie Thomas, *20 States Accuse Generic Drug Companies of Price Fixing, N.Y. Times*, Dec. 15, 2016, at B2. Yet, Plaintiffs waited almost three more years to file their claim against Mr. Berthold.

It simply is not plausible that Mr. Berthold did anything to prevent Plaintiffs from learning of his alleged conduct. Indeed, given that Plaintiffs base their allegations on telephone call logs that they could have obtained when they opened their investigation in 2014, Mr. Berthold did nothing to delay Plaintiffs from filing a complaint against him.

## CONCLUSION

For the foregoing reasons, Defendant David Berthold respectfully requests that the Court grant his Motion to Dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

DATED: February 26, 2021

*s/ Leiv Blad*
Leiv Blad
Zarema Jaramillo
Meg Slachetka
**LOWENSTEIN SANDLER LLP**
2200 Pennsylvania Avenue
Washington, DC 20037
Tel.: (202) 753-3800
Fax: (202) 753-3838
lblad@lowenstein.com
zjaramillo@lowenstein.com
mslachetka@lowenstein.com

*Counsel for Defendant David Berthold*