**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | * | MDL No. 2724 |
| | * | 16-MD-2724 |
| THIS DOCUMENT RELATES TO | * | |
| *STATE AG ACTIONS* | | HON. CYNTHIA M. RUFE |
| | * | |
| | | Civil Action No.: 19-cv-2407-CMR |

\* \* \* \* \* \* \* \* \* \* \* \* \*
**STATES' SUR-REPLY TO DEFENDANTS'
JOINT MOTION TO DISMISS THE STATES'
FEDERAL LAW CLAIMS FOR LACK OF STANDING**

## TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................................................2

I. SUPREME COURT PRECEDENT SUPPORTS THIS COURT'S AUTHORITY UNDER SECTION 16 OF THE CLAYTON ACT TO ORDER MONETARY EQUITABLE RELIEF, INCLUDING DISGORGEMENT. ........................................................................................2

II. EQUITABLE RELIEF FOR HARMS TO THE STATES' GENERAL ECONOMIES WILL NOT RISK DUPLICATIVE RECOVERIES. ..................................................................................6

III. STATES ADEQUATELY ASSERTED THEIR *PARENS PATRIAE* STANDING. ..................7

IV. *ILLINOIS BRICK* IS NO BAR TO EQUITABLE MONETARY RELIEF. ............................8

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

Page

## Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982). ........................... 7

*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959) ............................................................... 6

*Broselow v. Fisher*, 319 F.3d 605 (3d Cir. 2003) ........................................................................... 7

*California v. Am. Stores Co.*, 495 U.S. 271 (1990) ........................................................................ 5

*Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404 (1st Cir. 1985) ....................... 5

*Connecticut v. Physicians Health Servs. of Connecticut, Inc.*, 103 F. Supp. 2d 495 (D. Conn. 2000) ............................................................................................................................................ 8

*F.T.C. v. AMG Capital Mgmt., LLC*, 910 F.3d 417 (9th Cir. 2018) ................................................ 5

*Federal Trade Commission v. AbbVie*, 976 F3d 327 (3d Cir. 2020) .............................................. 4

*FTC v. Bronson Partners, LLC*, 654 F.3d 359 (2d Cir. 2011) ........................................................ 6

*In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814 (E.D. Pa. 2019) ................ 8, 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-4346 SI, 2011 WL 2790179 (N.D. Cal. July 12, 2011) ................................................................................................................................ 3

*In re Warfarin Sodium Antitrust Litigation*, 214 F.3d 395 (3d Cir. 2000) .................................... 9

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) .................................................... 7

*Mitchell v. Robert deMario Jewelry, Inc.,* 361 U.S. 288 (1960) ..................................................... 4

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) .................................................................. 2, 6

*SEC v. Fischbach Corp.,* 133 F.3d 170 (2d Cir.1997) .................................................................... 6

*U.S. v. Lane Labs-USA*, 427 F3d 219 (3d Cir. 2005) ............................................................. 2, 3, 6

*United States v. Keyspan Corp.*, 763 F. Supp. 2d 633 (S.D.N.Y. 2011) ........................................ 3

*W. Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441 (E.D. Pa. 2010) .................. 7

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969) ........................................... 5

**Statutes**

15 U.S.C. §26 ................................................................................................................................. 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | * MDL No. 2724 |
| | * 16-MD-2724 |
| THIS DOCUMENT RELATES TO | * |
| *STATE AG ACTIONS* | HON. CYNTHIA M. RUFE |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**STATES' SUR REPLY TO DEFENDANTS'**
**JOINT MOTION TO DISMISS THE STATES'**
**FEDERAL LAW CLAIMS FOR LACK OF STANDING**

The Defendants continue to push the same false narrative—that injunctive relief cannot include an equitable remedy, such as disgorgement, that requires the Defendants to give up the ill-gotten gains they reaped from their antitrust violations. This constricted interpretation of the authority of a court sitting in equity is simply not supported by case law. The Defendants press their erroneous theory further, by conflating jurisprudence relating to damages, a remedy available at law, with disgorgement, an equitable remedy, to assert *Illinois Brick* concerns where none exist. Because the Defendants' narrative is wholly inaccurate and the case law does not support their position, their motion to dismiss the States' Federal Law Claims for Lack of Standing, 19-cv-2407, Dkt.193, must be denied.

**ARGUMENT**

I. **SUPREME COURT PRECEDENT SUPPORTS THIS COURT'S AUTHORITY UNDER SECTION 16 OF THE CLAYTON ACT TO ORDER MONETARY EQUITABLE RELIEF, INCLUDING DISGORGEMENT.**

Under longstanding Supreme Court precedent, a district court's equitable jurisdiction is extremely broad. The seminal case outlining that jurisdiction explained, "unless otherwise provided by statute, *all* inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction…." *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) (emphasis added). This equitable jurisdiction is comprehensive. It may not be limited without a clear legislative command, and "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts [that jurisdiction]" courts are to recognize it to the fullest." *Id.* The Defendants, however, would have this Court hold the complete opposite—a court's equitable powers are limited to remedies specifically stated in a statute and may include nothing more. That is simply not what the case law holds. The law is clear—unless expressly precluded by the statute itself, a court of equity has the full range of traditional equitable tools at its disposal. *Id.*

Based on the language in *Porter*, the Third Circuit has made clear that "a district court sitting in equity may order restitution unless there is an explicit statutory limitation on the district court's equitable jurisdiction and powers." *U.S. v. Lane Labs-USA*, 427 F.3d 219, 224 (3d Cir. 2005). In *Lane*, the FTC and FDA filed complaints against Lane Labs for violations of the Federal Trade Commission Act and the Food, Drug and Cosmetic Act related to its sale of shark cartilage products not approved by the FDA, and touted as treatment for cancer and other diseases. The FTC sought refunds for consumers and disgorgement of the company's ill-gotten monies. The company and the FTC entered into a Consent Decree whereby the company paid $1 million in monetary equitable relief. *Id*. at 222. The FDA separately sought, among other relief, restitution

for purchasers (and disgorgement of profits to the extent those profits were not exhausted by restitution). *Id.* Lane Labs argued that the district court did not have the authority to order restitution under the FDCA because the FDCA does not expressly provide for restitution and restitution is inconsistent with the policy, purpose and legislative history of the FDCA. *Id*. at 223.

The district court based its power to order restitution on the FDCA's statutory language which stated a court has jurisdiction "to restrain violations" of the Act. *Id*. The court found that this language undisputedly invoked its equitable jurisdiction. *Id*. On review, the Third Circuit agreed. While the "FDCA does not specifically authorize restitution, such specificity is not required where the government properly invokes a court's equitable jurisdiction…." *Id*. In coming to that conclusion, the court acknowledged that the relevant analysis begins with *Porter,* and that *Porter* lays out a straightforward "analytical course" for a district court to follow when determining if restitution [or any other equitable remedy] is available under the court's equitable jurisdiction. *Id.* Under the course set forth in *Porter,* (1) a district court may order restitution unless there is a clear statutory limitation on the district court's equitable jurisdiction and powers; and (2) restitution is permitted only where it furthers the purpose of the statute. *Id*. at 225. In affirming the order of restitution, the Third Circuit found that the language of the FDCA properly authorized the court's equitable jurisdiction, and that Congress intended the FDA to "protect the financial interest of consumers as well as their health." *Id*. at 227. Like the FDCA in *Lane*, Section 16 places no clear limitation on this Court's equitable jurisdiction, and disgorgement—confiscating ill-gotten gains from the Defendants—clearly furthers the purpose of the Sherman Act. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-4346 SI, 2011 WL 2790179, at *4 (N.D. Cal. July 12, 2011) (citing *United States v. Keyspan Corp.*, 763 F. Supp. 2d 633, 642 (S.D.N.Y. 2011) (disgorgement comports with established principles of antitrust law)).

The Third Circuit further acknowledges that numerous courts follow the *Porter* two-step approach outlined above when opining about a court's ability to order restitution or disgorgement under statutes granting open-ended enforcement powers. The court noted for example, that the DC Circuit relied on *Porter* to order disgorgement under the Securities and Exchange Act of 1934, and the Ninth and Seventh Circuits relied on *Porter* to order disgorgement under the Commodity Exchange Act. *Id at 225*. Although the Defendants claim that the States' reliance on a court's "broad discretion to award … equitable disgorgement" is "unremarkable," Defs' Reply in Supp. of Joint Mot. to Dismiss, Dkt. 228 ("Reply") at 3, this is precisely what Supreme Court precedent holds.

The 2020 case *Federal Trade Commission v. AbbVie*, 976 F.3d 327 (3d Cir. 2020), does not change this. In *AbbVie*, the court followed the same *Porter* two-step analytical course described in *Lane*. Under this analysis, the court found that the language in §13(b) of the FTC Act did not empower the district court to order disgorgement. It also recognized that 13(b)'s language was distinguishable from that in the statutes analyzed in *Lane*, *Porter* and *Mitchell*,[1] which did empower the district court to order equitable monetary relief. The Third Circuit contrasted 13(b)'s *enjoin* language with that of the statutes in *Porter* ("permanent or temporary injunction, restraining order, or other order"), *Mitchell* ("restrain violation"), and *Lane* ("restrain violation") and found that 13(b)'s *enjoin* language in fact limited the form of equitable relief a court may order. *Id* at 379. Additionally, however, the court found that the *combination* of 13(b)'s language and the FTC Act's broad statutory scheme (including Sections 5, 13(b), and 19 of the FTC Act) supported the "necessary and inescapable inference" that district courts lack the power to order disgorgement

---

[1] *Mitchell v. Robert deMario Jewelry, Inc.,* 361 U.S. 288 (1960). *Porter* and *Mitchell* are the backbone Supreme Court cases that stand for the proposition that a court's equity jurisdiction is broad and circumscribed only by ***express*** limitations in a statute's language.

4

under Section 13(b). The Defendants have not made a similar argument regarding Section 16 of the Clayton Act.

Section 16 of the Clayton Act does not limit the type of relief that is available under the statute. Under Section 16, a person is entitled to sue for injunctive relief against threatened loss or damage by a violation of the antitrust laws. 15 U.S.C. §26. The Supreme Court has said "§16 'states **no restrictions or exceptions** to the forms of injunctive relief a … plaintiff may seek, or that a court may order… [and] the statutory language indicates Congress' intention that **traditional principles of equity govern** the grant of injunctive relief.'" *California v. Am. Stores Co.*, 495 U.S. 271, 281-82 (1990) (quoting *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 415 -16 (1st Cir. 1985)(emphasis added). Indeed, injunctive relief can take on different forms. For example, injunctive relief under Section 16 could be in the form of divestiture, *California v. Am. Stores Co.*, 495 U.S. 271, or a requirement to withdraw from patent pools, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969). The language of Section 16 of the Clayton Act therefore is more like that of the statutes in *Porter, Mitchell* and *Lane* than Section 13(b). Fundamentally, Defendants miss an essential point in their argument that analysis of FTCA §13(b) necessarily leads to unavailability of disgorgement under Clayton §16. The court in *AbbVie* and *AMG*[2] explicitly applied the principles of *Porter, Mitchell* and *Lane* to hold that, in the absence of a *express* statutory limitation to the contrary, a court of equity may grant all available equitable remedies. *AbbVie's* §13(b) analysis therefore is inapposite because Section 16 of the Clayton Act contains no limitations, restrictions or exceptions.

Defendants' argument that disgorgement is not available under Section 16 of the Clayton Act because it is "backward looking" is equally inapposite. Reply at 2. Courts have long

---

[2] *F.T.C. v. AMG Capital Mgmt., LLC*, 910 F.3d 417, 430 (9th Cir. 2018).

recognized that "**future compliance** may be more definitely assured if one is compelled to restore one's illegal gains." *Porter v. Warner Holding Co.,* 328 U.S. at 400 (emphasis added). Furthermore, disgorgement not only "forc[es] the defendant to give up the amount by which he was unjustly enriched," but also deters similar conduct in the future. *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 372 (2d Cir. 2011) ("the primary purpose of disgorgement orders is to deter violations of the [ ] laws by depriving violators of their ill-gotten gains") (quoting *SEC v. Fischbach Corp.,* 133 F.3d 170, 175 (2d Cir. 1997)). As the *Lane* court noted when it affirmed the lower court's order of restitution, "the restitution ordered by the District Court will deter future violations of the FDCA…." *United States v. Lane Labs-USA Inc.*, 427 F.3d at 229–30. Despite Defendants' argument to the contrary, disgorgement is not solely a "backward-looking" remedy.

## II. EQUITABLE RELIEF FOR HARMS TO THE STATES' GENERAL ECONOMIES WILL NOT RISK DUPLICATIVE RECOVERIES.

Defendants argue that States have no standing to seek redress for harms to their general economies and that States seek monetary remedy for the "*exact same injuries*" as other plaintiffs, thus risking duplicative recoveries, Reply at 9. Defendants are wrong. There is no risk of potential duplication because States' disgorgement claims focus on ill-gotten gains remaining after legal remedies have been awarded. Disgorgement does not overlap with the legal remedy of damages. Disgorgement and other equitable remedies are proper when the legal remedy (*i.e.* damages) is inadequate. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508-09 (1959) (in the federal courts equity has always acted only when legal remedies were inadequate). Adequacy is what matters when considering equitable remedies, and the question of adequacy is not yet ripe. State Opp'n to Defs' Joint Mot. to Dismiss ("Opp'n"), Dkt. 203 at 9. At the end of the litigation, the Court will consider appropriate remedies. At that time, the Court will avoid duplicative recoveries by weighing evidence in support of both damages, and the equitable remedy of disgorgement. That

6

time has not yet come. The only issue currently before the Court relates to the States' *standing* to seek disgorgement, and the States have shown they have standing. *See* Opp'n at 12-15.

### III. STATES ADEQUATELY ASSERTED THEIR *PARENS PATRIAE* STANDING.

The States have established the constitutional requirements to maintain suit against the Defendants and have met the additional requirements for *parens patriae* standing—being the real party in interest and expressing a quasi-sovereign interest. It is widely accepted that a state is the real party in interest when it brings a claim for injunctive relief. *W. Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 447 (E.D. Pa. 2010). A state is also the real party in interest *when* it has a "quasi-sovereign interest" in the litigation that stands apart "from the interests of particular private parties." *Broselow v. Fisher*, 319 F.3d 605, 609 (3d Cir. 2003) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982)). The quintessential example of a state protecting a quasi-sovereign interest is a state's action to protect "the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 697.

Despite Defendants' protestations otherwise, there is no specific formula or percent of a state's population that must be affected to perfect *parens* standing. There is no magic number, and there are no "definitive limits on the proportion of the population of the State that must be adversely affected." *Snapp*, 458 U.S. at 607. The only requirement is that the number affected must be "substantial", and "more must be alleged than injury to an identifiable group of individual residents." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017) (citation omitted).

In *Koster, parens* standing was rejected where the affected citizens were a very limited and identifiable number of egg farmers. That is obviously not the case with the States' claims in this MDL—millions of citizens in the States use generic drugs and under any metric, that would be

7

considered a "substantial portion" of the States' populations. Additionally, Defendants cite to no in-circuit precedent that supports their argument that *parens* standing is inappropriate where an "aggrieve party could seek private relief." Reply at 11-12. Neither of the cases Defendants cite for that proposition, *Koster* or *Connecticut v. Physicians Health Servs. of Connecticut, Inc.*, 103 F. Supp. 2d 495 (D. Conn. 2000), aff'd on other grounds, 287 F.3d 110 (2d Cir. 2002), hold this. In *Koster*, *parens* standing failed because there was no specific allegation beyond impact to an "identifiable group of individual" farmers, *Koster*, 847 F.3d at 652 (citing *Snapp,* 458 U.S. at 607), and in *Physicians Health*, the court denied *parens* standing because of an ERISA preemption issue. *Physicians Health Servs. of Connecticut, Inc.*, 103 F. Supp. 2d at 507. These cases *do not* stand for the proposition that individual residents *must be unable* to pursue a claim on their own behalf in order for the state to have *parens* standing. States have an undeniable interest in protecting the health and safety, financially an otherwise, of their residents. States here have clearly asserted those interests and those interests make each State more than a nominal party. For the reasons noted therefore, the plaintiff States have properly asserted their *parens patriae* standing.

### IV.     *ILLINOIS BRICK* IS NO BAR TO EQUITABLE MONETARY RELIEF.

Remarkably, the Defendants completely ignore the Court's prior ruling in this MDL on the *Illinois Brick* issue. Turning a blind eye however will not make it go away. The Court has already stated, "[n]o reason or logic supports a conclusion that a state's adherence to the rule of *Illinois Brick* dispossesses a person not only of a statutory legal remedy for an antitrust violation, but also dispossesses the same person of his right to pursue a common law equitable remedy." *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 849–50 (E.D. Pa. 2019). In the private class action cases there, like in the States' case here, "*Illinois Brick* does not require

dismissal of [equitable remedy] claims at this time." *Id.* The Court has spoken and that should settle the matter.

The Third Circuit's decision in *In re Warfarin Sodium Antitrust Litigation* confirms the Court's decision rests on solid ground. 214 F.3d 395 (3d Cir. 2000). In *Warfarin*, the pronouncement was clear on its face: "[i]ndirect purchaser status … is not fatal to a plaintiff's request for injunctive relief under section 16 of the Clayton Act." *Id.* at 399. Moreover, *American Stores* observed that **Section 16 states no restrictions or exceptions on the form of injunctive relief a plaintiff may seek or that a court may order**. 495 U.S. at 282 (emphasis added). This Circuit's binding precedent could not be clearer and the *Warfarin* court did not, as Defendants suggest in their Reply at eight, qualify *Warfarin's* holding to exclude all monetary relief.

## CONCLUSION

The States have adequately asserted standing sufficient to seek the equitable remedies sought under federal antitrust laws. The Court should deny with prejudice Defendants' Joint Motion to Dismiss States' Federal Law Claims for Lack of Standing.

Respectfully submitted,

STATE OF MARYLAND

BRIAN E. FROSH
MARYLAND ATTORNEY GENERAL

| | |
|---|---|
| */s/ Schonette J. Walker* | */s/W. Joseph Nielsen* |
| SCHONETTE J. WALKER | W. Joseph Nielsen |
| GARY HONICK | Assistant Attorney General |
| Assistant Attorneys General | 165 Capitol Avenue |
| 200 Saint Paul Place, 19th Floor | P.O. Box 120 |
| Baltimore, Maryland 21202 | Hartford, CT 06141-0120 |
| swalker@oag.state.md.us | Tel:  (860)808-5040 |
| ghonick@oag.state.md.us | Fax:  (860)808-5391 |
| (410) 576-6470 | Joseph.Nielsen@ct.gov |
| | |
| | Liaison Counsel for the States |